Request for Proposals for a Coordinated Street Furniture Franchise

**6.4    Proposer's Affidavit**    The Proposer's Affidavit attached as Appendix 11 must be signed and submitted as part of the Proposal Package.

**7.    Acknowledgment of Addenda**        The Proposer shall complete and submit the Acknowledgment of Addenda form, attached as Appendix 7, as part of the Proposal Package. This form serves as the Proposer's acknowledgment of the receipt of Addenda that may have been distributed by the Department prior to the Proposal Due Date and Time.

**B.    PROPOSAL PACKAGE SUBMISSION REQUIREMENTS**

**1.    Delivery**

Proposal Packages must be received by the Department's Contracts Division, 40 Worth Street, Room 824A, on or before **June 30, 2004 at 2:00 p.m..**  Proposals received after the Proposal Due Date and Time are late and shall not be considered.  Instructions for delivery of scale models will be distributed at the Preproposal Conference.

**2.    Copies and Format**

Proposers shall hand deliver one signed original and twenty (20) copies of the Proposal Package, except that Proposers need provide only two complete sets of the drawings mounted on foam-core boards described in Section 3.2, only one of each of the scale models described in Section 3.3, and only one original and two copies of the "Required City Documents" described in Section 6.

A proposal may include information on CD-ROM or comparable media; however, such submissions may only be submitted as supplements to the material required by this RFP, which must be provided on paper and in the form of models.  Any submission in alternative media must include instructions on how to run the program.

**3.    Length of Proposal**

Proposers are advised that while there is no page limitation for Proposals, discretion should be used.

**4.    Labeling**

The outer envelope enclosing any materials submitted in response to this RFP shall be addressed as follows:

|  |  |
|---|---|
| From: | Proposer Name/Address |
| To: | New York City Department of Transportation |
|  | Contracts Division |
|  | 40 Worth Street, Room 824A |
|  | New York, NY  10013 |
| RFP Title: | Request for Proposals for a Franchise to install, operate, and maintain Bus Stop Shelters, Self-Cleaning Automatic Public Toilets, and Public Service |

NYC005949

Request for Proposals for a Coordinated Street Furniture Franchise

Structures and to install and maintain Newsstands in the boroughs of the Bronx, Brooklyn, Manhattan, Queens, and Staten Island

PIN:    **84104MBAD689**

Proposal Due Date and Time:    **June 30, 2004 at 2:00 p.m.**

## 5.    <u>Delivery Services</u>

Proposers shall be responsible for informing any commercial delivery service, if used, of all delivery requirements and for ensuring that the information required in item 4, above, appears on the outer envelope used by such service.

## 6.    <u>Proposal Package Checklist</u>

Appendix 8, Proposal Package Checklist, which itemizes each component/document that is to be submitted as part of the Proposal Package, has been attached for the Proposer's convenience.

## C.    PROPOSAL EVALUATION PROCEDURES

**1.    <u>Evaluation Committee</u>    1.1**    Proposals shall be evaluated by an Evaluation Committee that shall be comprised of a minimum of three (3) persons qualified to evaluate the components of this solicitation. Members of the Committee will likely include representatives of the Departments of Transportation, Design and Construction, and City Planning. The Evaluation Committee also will have technical advisors who may include representatives of other public entities such as the Art Commission, the Mayor's Office for People with Disabilities, the Landmarks Preservation Commission, the Department of Parks and Recreation, the Department of Environmental Protection, the Department of Buildings, the Department of Information Technology and Telecommunications, the Department of Homeless Services, the Police Department, the Fire Department, the MTA New York City Transit, the Community Assistance Unit and the Office of Management and Budget.

1.2    In addition, the City will present some or all of the design proposals received pursuant to this RFP to a Design Advisory Committee that may include representatives of civic organizations with expertise in architecture and urban design, the real estate industry, the Newsstand industries, and the Business Improvement Districts. Any recommendations made by this Design Advisory Committee will be reviewed and may be considered by members of the Evaluation Committee.

1.3    Rating sheets or other written evaluation forms shall be used to evaluate Proposals and shall be signed and dated by all members of the Evaluation Committee reviewing the Proposal. Initial ratings may be amended, and the amended ratings shall be recorded on amended rating sheets. Copies of all initial and amended rating sheets or evaluation forms shall be maintained as part of the Department's files.

## 2.    <u>Evaluation Procedures</u>

- 23 -

NYC005950
NYC005950

Request for Proposals for a Coordinated Street Furniture Franchise

Proposals received in response to this RFP will be reviewed and evaluated in four phases, three phases on a point scale providing for a maximum point total of 145, with points assigned as follows:

| Phase I | Pass/Fail |
|---|---|
| Phase II | 25 |
| Phase III | 60 |
| Phase IV | 55 |
| Preference Points | 5 |

If interviews, presentations, and/or demonstrations are conducted in accordance with Section IV, L, of this RFP, the Evaluation Committee may use any information from those interviews, presentations, and/or demonstrations in evaluating a Proposal.

### 2.1    Phase 1:  Responsiveness Determination

The Department's Auditor General will review each Proposal to ensure that it includes and addresses each item or document required by this RFP.  Failure to provide a complete responsive submission may result in the Proposal receiving no further review.

### 2.2    Phase 2:  Assessment of Proposer's Ability to Provide Required Services

Each Proposal that is deemed responsive by the Auditor General will be forwarded to the Evaluation Committee for its review.  The Committee will examine and evaluate each Proposer's business organization, financial fitness and experience with street furniture and the sale and maintenance of outdoor advertising in urban environments.  Each Proposer will receive a numerical score after this Phase.  The Committee will recommend the three Proposers receiving the highest scores, plus any Proposer whose score is within 5% of the lowest of these three scores, for further review and consideration by the Evaluation Committee.  All Proposals with scores lower than those satisfying the criteria above will receive no further review.

### 2.3    Phase 3:  Assessment of the Technical Proposals

The Committee will examine and evaluate the technical proposals of each of the Proposers selected in accordance with Phase 2 of the Evaluation Procedures.  The factors to be considered by the Committee in Phase 3 include but are not limited to: the Proposer's plans to fulfill and, if applicable, exceed the terms and conditions of the Franchise as described in Section II of this RFP; any commitments to improve design, technology and/or services during the term of the Franchise Contract; the Proposer's plans pertaining to design, manufacture, installation, maintenance and operation of each of the types of Franchise Structures, including the Proposer's plan for the replacement of existing Newsstands; the Proposer's plans for administering the Franchise, including the Proposer's computerized inventory and information sharing system; and the Proposer's plans for marketing the Franchise Structures and the advertising thereon.  Each Proposer will receive a numerical score after this Phase.

### 2.4    Phase 4:  Assessment of the Compensation Package

NYC005951
NYC005951

Request for Proposals for a Coordinated Street Furniture Franchise

The Committee will review and evaluate the compensation to be paid to the City proposed by each Proposer. Each Proposer will receive a numerical score after this Phase.

### 2.5    Final Selection

The Committee will total all scores derived from Phases 2, 3 and 4, apply any applicable bonus points, and recommend one or more Proposers who may be invited to enter into negotiations with the City for Best and Final Offers for the Franchise.

### 3.    **Evaluation Criteria**    The Evaluation Committee will review and evaluate Proposals according to the following criteria, which are listed in relative weight order for each phase:

### 3.1    Phase 1: Responsiveness Determination

Proposers will either pass or fail this Phase, based on whether or not their Proposals are responsive to the RFP.

### 3.2    Phase 2: Assessment of Proposer's Ability to Provide Required Services

The following evaluation criteria will be applied:

a) The Proposer's business integrity and financial soundness, including without limitation adequate access to sources of capital and operating funds and the demonstrated ability to maintain books and records adequately.
b) The Proposer's experience and demonstrated ability in the design, installation, operation, and maintenance of Franchise Structures in an urban environment.
c) The Proposer's experience in the sale and maintenance of outdoor advertisements in an urban environment.
d) The skill and capabilities of the Proposer's management, technical staff, and field personnel.

### 3.3    Phase 3: Assessment of the Technical Proposals

The following evaluation criteria will be applied:

a) The designs of the Franchise Structures, including functional efficiency, aesthetics, security, durability, adaptability for various built environments around the City and accommodation for people with disabilities.
b) The Proposer's plans for installing, maintaining, and operating the Franchise Structures, including proposed time limits for construction, replacement and relocation of Newsstands.
c) The Proposer's plan for marketing the Franchise Structures and the advertising thereon, including without limitation attention to borough and neighborhood needs and the consideration of both local and national advertisers.
d) The Proposer's plans for administering the Franchise, including the allocation of resources (*i.e.*, staff, materials, equipment, administrative overhead, etc.) for providing each element of the Scope of Services described in Section II of the RFP.

- 25 -

NYC005952
NYC005952

Request for Proposals for a Coordinated Street Furniture Franchise

e)  The Proposer's operational plan to meet or exceed the build-out schedule specified in the RFP.
f)  The adequacy of the Proposer's computerized information sharing system.
g)  The Proposer's ability to maintain the property of the City in good condition throughout the term of the Franchise.
h)  The Proposer's commitments to improve design, technology, and/or services during the term of the Franchise Contract.

In addition, a preference shall be granted to any Proposal which commits to manufacture and assemble the Franchise Structures in the City of New York in accordance with Section III, A, 3.1 of this RFP; to any Proposal which commits to manufacture and assemble the Franchise Structures in the United States of America in accordance with Section III, A, 3.1 of this RFP. These preferences will be granted in the form of bonus points to be applied to each qualifying Proposer's numerical score from this Phase.

### 3.4     Phase 4:  Assessment of the Compensation Package

The following evaluation criterion will be applied:

The adequacy of the proposed compensation to be paid to the City.   A preference shall be granted to proposals that provide a greater compensation to the City in the initial period of the agreement provided that the total proposed compensation over the term of the franchise is determined to be in the best financial interest of the City.

### 4.     <u>Prototype Structures</u>

Proposers should be aware that prior to awarding the Franchise Contract, the Department will require the selected Proposer to provide and install prototypes of each Franchise Structure proposed at a location within the City of New York which will be designated by the Department. Failure to provide prototype structures that meet with the approval of the Department shall be grounds for the Department to select another Proposer.

NYC005953
NYC005953

Request for Proposals for a Coordinated Street Furniture Franchise

## SECTION IV -- GENERAL INFORMATION

### A.    STATUS OF INFORMATION

1.    The Department shall not be bound by any oral or written information released prior to the issuance of the RFP.

2.    The Department shall not be bound by any oral or written representations, statements or explanations other than those made in this RFP, in Department-written responses to Proposer inquiries or in a formal written addendum to this RFP.

### B.    COMMUNICATION WITH THE DEPARTMENT

Proposers are advised that from the date this RFP is issued until the award of the Franchise Contract, no contact with Department personnel related to this solicitation is permitted, except as shall be authorized by the Department Contact.

Proposers are hereby directed that from the date this RFP is issued until the award of the Franchise contract, they and their key people as defined in Appendix 11, consultants, agents or representatives, lobbyists or lawyers are not to contact any employee in any City agency, other than the Department contact, with regard to this RFP or any addenda thereto.

Each proposer shall sign a Proposer's Affidavit regarding contact with the Department that is attached as Appendix 11.  The affidavit shall be submitted with the proposal package.  Failure to complete the affidavit may result in the proposal being disqualified as not responsive.

### C.    PROPOSER INQUIRIES

1.    All inquiries regarding this solicitation shall be submitted in writing to the Department Contact, who shall respond in writing to all potential Proposers.

2.    Proposers are advised that the Department cannot ensure a response to inquiries received later than ten (10) calendar days prior to the Proposal Due Date.

### D.    ADDENDA TO THE RFP

1.    The Department shall issue responses to inquiries related to substantive issues and any other corrections or amendments to the RFP it deems necessary prior to the Proposal Due Date in the form of written addenda.

2.    It is the Proposer's responsibility to assure receipt of all addenda by verifying with the Department Contact prior to submitting a Proposal that all addenda have been received. Proposers shall acknowledge the number of addenda received as part of their Proposals on the Acknowledgment of Addenda form (Appendix 7).

- 27 -

NYC005954
NYC005954

Request for Proposals for a Coordinated Street Furniture Franchise

**E.     PREPROPOSAL CONFERENCE**

1.     A Preproposal Conference will be held on April 27, 2004 at 10:00 a.m. at 40 Worth Street, Room 814, New York, New York.  The conference will be conducted by Department personnel to assist Proposers in understanding the RFP and Franchise requirements. Nothing stated at the conference shall change this RFP unless the change is made in writing in addenda issued by the Department Contact.  A written summary of the Conference, including the names and affiliations of all attendees, shall be maintained by the Department in its files. Attendance at the Preproposal Conference is strongly recommended, but is not mandatory.

2.     Questions about the RFP should be submitted in writing to the Department Contact at least one week prior to the Conference.

3.     Proposers should notify the Department Contact of whom, if anyone, will represent their company at the Conference at least one week in advance.  The Department Contact will provide specific scheduling and location information.

4.     If any Proposer needs a sign language interpreter or other special accommodation for the Preproposal Conference, they must request such accommodation from the Department Contact no later than 24 hours before the scheduled date.

**F.     LOCATION LISTINGS**

1.     Proposers may request from the Department Contact a list of the locations of all existing Bus Stop Shelters and sidewalk Newsstands.

2.     Proposers are advised to visit a substantial number of these locations, as well as a substantial number of bus stops that do not currently have Bus Stop Shelters, to become familiar with the wide variety of built contexts and topographical conditions in which the Franchise Structures will be located.

**G.     MODIFIED PROPOSALS**

1.     A Proposer may submit a modified Proposal to replace all or any portion of a previously submitted Proposal until the Proposal Due Date and Time and, if applicable, until the due date and time set for the submission of Best and Final Offers, if Best and Final Offers are required by the Department.

2.     The Evaluation Committee shall consider only the latest timely version of the Proposal.

**H.     WITHDRAWAL OF PROPOSALS**

A Proposal may be withdrawn only in writing and only prior to the Proposal Due Date and Time or, if applicable, until the due date and time set for the submission of Best and Final Offers.

NYC005955
NYC005955

Request for Proposals for a Coordinated Street Furniture Franchise

## I.   LATE PROPOSALS AND MODIFICATIONS

Proposals, modifications and, if applicable, Best and Final Offers received after the applicable due date and time are late and shall not be considered.

## J.   CONFIDENTIAL AND/OR PROPRIETARY INFORMATION

1.    The Department will endeavor to protect from disclosure any confidential and/or proprietary information of the Proposer submitted to the Department pursuant to this RFP in accordance with applicable law, provided that the Proposer shall specifically identify those portions of the Proposal deemed to be confidential, proprietary information or trade secrets.

2.    Such information deemed by the Proposer to be confidential and/or proprietary shall be easily separable from the non-confidential/non-proprietary sections of the Proposal. Marking the entire Proposal as confidential or proprietary will result in the Proposal being rejected and returned to the Proposer unread.

3.    Proposers should be aware that the Department may be required, pursuant to the New York State Freedom of Information Law ("FOIL") (New York Public Officers Law Section 87 *et seq.*), to disclose to the public a written Proposal or portion thereof submitted in connection with this RFP. In the event that such disclosure is requested by a third party, the Department will provide notice to the Proposer as far in advance as practicable of any deadline for response and shall consult with the applicant to evaluate the extent to which such information may be withheld from disclosure under provisions of FOIL. Consistent with the requirements of FOIL, the final determination whether such information may be withheld from disclosure shall be made by the Department. In the event that the Department determines that information may not be withheld, the Department will attempt to provide the Proposer with timely notice of intent to disclose in order that the Proposer may invoke any rights or remedies to prevent disclosure to which it believes it may be entitled under the law.

4.    Proposers expressly acknowledge and agree that neither the Department nor the City of New York will have any obligation or liability to any Proposer in the event of disclosure of materials designated as confidential or proprietary.

## K.   COSTS INCURRED BY PROPOSERS

The Department shall not be liable for any costs incurred by Proposers in the preparation of Proposals or for any work performed in connection therewith.

## L.   SUPPLEMENTAL INFORMATION, PRESENTATIONS, AND DEMONSTRATIONS

1.    The Department may require Proposers to submit supplemental or explanatory information regarding their Proposals.

2.    The Department may require Proposers to attend interviews, to give oral or visual presentations in support of their Proposals or to exhibit or otherwise demonstrate the information contained therein.

- 29 -

NYC005956
NYC005956

Request for Proposals for a Coordinated Street Furniture Franchise

## M.    NEGOTIATIONS, BEST AND FINAL OFFERS

1.    The Department reserves the right to award a Franchise Contract on the basis of initial offers received, without negotiation.  Therefore, each initial offer should contain the Proposer's best terms from a programmatic and cost standpoint.

2.    The Department reserves the right to enter into negotiations with one or more Proposers and subsequently to request the submission of Best and Final Offers from those Proposers who, after the conclusion of such negotiations, are still under consideration for award. No Proposer shall have any rights against the Department arising from an invitation to enter into negotiations or to submit a Best and Final Offer.

## N.    PROPOSER ACCEPTANCE OF RFP AND FRANCHISE PROVISIONS

Submission of a Proposal signifies to the Department the Proposer's intention to compete for the award of the particular Franchise Contract.  By submitting a Proposal, Proposers understand and accept that at a minimum the terms and conditions specified in this RFP, in Resolution No. 1004 adopted by the New York City Council on August 19, 2003, and in the Investigation Clause attached as Appendix 10 will become part of any Franchise granted.

## O.    FRANCHISE CONTRACT AWARD

1.    A Franchise Contract will be issued, if at all, to the responsible Proposer who submits the most beneficial Proposal in the interest of the City and who demonstrates the required skills and resources for the service required by the Franchise Contract.  The City reserves the right to reject any and all Proposals in the best interests of the City.

2.  Pursuant to the New York City Charter the Franchise Contract award will not take effect until the following have occurred:

a)  The proposed contract is the subject of a public hearing; and,
b)  The proposed contract is approved by the Franchise and Concession Review Committee; and,
c)  The contract receives the separate and additional approval of the Mayor; and,
d)  The contract is registered with the Comptroller.

3.    Contract award is subject to all required approvals, applicable provisions of federal, state and local laws and executive orders, rules or regulations in effect.

## P.    DETERMINATION OF PROPOSER RESPONSIBILITY

1.    A Franchise Contract will be awarded only to a Proposer deemed responsible by the Committee.  Factors that are considered in making a determination of responsibility include, but are not limited to:  financial resources; technical qualifications; experience; organization, material, equipment, facilities and personnel resources and expertise (or the ability to obtain them) necessary to carry out the work and to comply with the Franchise Contract requirements, taking into consideration other business commitments; satisfactory record of performance;

NYC005957

Request for Proposals for a Coordinated Street Furniture Franchise

satisfactory record of business integrity; VENDEX information; and administrative (*e.g.*, record of past performance) and other appropriate information.

2.    A Franchise Contract may not be issued to any Proposer who is in arrears or default upon any debt, contract, obligation, or taxes to the City of New York. In addition, a Franchise Contract may not be issued to any Proposer until all outstanding adjudicated fines and/or liens owed to the City of New York are paid in full.

3.    After the opening of the Proposals, a Proposer may be asked to submit sworn statements and supporting documentation setting forth such information as the Committee may require including, but not limited to, the Proposer's financial condition, present and proposed plant and equipment, the personnel and qualifications of its working organization, prior experience and performance record.

4.    Failure of a Proposer to provide information specifically requested by the Committee may be grounds for a determination of non-responsibility. If a Proposer who otherwise would have been awarded a Franchise Contract is found non-responsible, a written determination of non-responsibility setting forth in detail and with specificity the reasons for the finding of non-responsibility will be immediately sent to the non-responsible Proposer.

## Q.    RFP POSTPONEMENT/CANCELLATION

The Department reserves the right to postpone or cancel this RFP and to reject any and all Proposals at any time.

## R.    COMPLAINTS

The New York City Comptroller is charged with the audit of contracts in New York City. Any proposer who believes that there has been unfairness, favoritism or impropriety in the proposal process should inform the Comptroller, Office of Contract Administration, 1 Centre Street, Room 835, New York, NY 10007; the telephone number is (212) 669-3000. In addition, the New York City Department of Investigation should be informed of such complaints at its Investigations Division, 80 Maiden Lane, New York, NY 10038; the telephone number is (212) 825-5959.

NYC005958
NYC005958

Request for Proposals for a Coordinated Street Furniture Franchise

**APPENDIX 1**
**Authorizing Resolution**

**THE CITY COUNCIL OF THE CITY OF NEW YORK**
**RESOLUTION NO. 1004**
**L.U. NO. 226-A**

**CITYWIDE**                                                       **20035026 GFY**

**Resolution authorizing the Department of Transportation to grant nonexclusive franchises
for the installation, operation, and maintenance of coordinated franchise structures.
By City Council Member(s) Katz and Avella (by request of the Mayor):**

Material to be added is underlined; material to be deleted is in [brackets].

**WHEREAS**, by Executive Order No. 25, dated August 23, 1995, the Mayor has designated the
Department of Transportation ("DOT") as the responsible agency for the granting of franchises
for Bus Stop Shelters ("BSSs"), self-cleaning Automatic Public Toilets ("APTs"), Newsstand
structures ("NSs"), and any combination thereof; and

**WHEREAS**, the Executive Order further provides that franchises authorized may include
additional public service structures ("PSSs") that shall include and be limited to trash
receptacles, multi-rack news racks and information/computer kiosks; and

**WHEREAS**, pursuant to Section 363 of Chapter 14 of the Charter of the City of New York
("Charter"), the Commissioner of Transportation ("Commissioner") has made the initial
determination of the need for a nonexclusive combined franchise for BSSs, APTs, NSs, and
PSSs in the City of New York ("City") and for allowing the placement of advertising thereon.
Such BSSs, APTs, NSs, and PSSs shall hereinafter be known collectively as the "franchise
structures;" and

**WHEREAS**, the City Council of the City of New York ("City Council") has determined that the
granting of such franchises will be in the public interest by enhancing the health, welfare,
convenience, and safety of the public;

**NOW THEREFORE, BE IT RESOLVED,**

**FIRST**, that the City Council hereby authorizes DOT to grant nonexclusive franchises that
utilize the inalienable property of the City for installing, operating, and maintaining franchise
structures in the five Boroughs of the City and that allow the placement of advertising thereon.
All franchises granted pursuant to this resolution shall be subject to the approval of the Franchise
and Concession Review Committee ("FCRC") and the separate and additional approval of the
Mayor. For purposes of this resolution, "inalienable property of the City" shall mean the
property designated in Section 383 of the Charter. The authorization to grant franchises pursuant
to this resolution shall expire on the fifth anniversary of the date on which this resolution is
adopted by the City Council ("Expiration Date"). No franchise shall be granted pursuant to this
resolution by DOT, nor approved by the FCRC or the Mayor, after the Expiration Date.

- 32 -

NYC005959
NYC005959

**SECOND**, that prior to the granting of any such franchise, one or more Request(s) for Proposals ("RFP") or other solicitation shall be issued by DOT for the franchise structures. Prior to issuing any such RFP or other solicitation, all necessary environmental and land use review shall be conducted in accordance with the New York State Environmental Quality Review Act ("SEQRA"), the regulations set forth in Volume 6 of the New York Code of Rules and Regulations, Section 617.00 *et seq.*, the City Environmental Quality Review ("CEQR") Rules of Procedure of 1991, Executive Order No. 91 of 1977, as amended, and Sections 197-c and 197-d of the Charter.

**THIRD**, that DOT shall develop siting criteria for the franchise structures be included in any RFP or other solicitation that shall address, but not be limited to, the following matters:

    1.     adequate sidewalk clearance to assure reasonable pedestrian flow;

    2.     proximity to other street furniture, sidewalk obstructions, and franchise structures;

    3.     permitted uses on adjacent zoning lots;

    4.     visual impact on vehicular traffic;

    5.     impact on designated landmarks and historic districts;

    6.     proximity to required water, sewer, and electrical connections; and

    7.     relative location of curb cuts.

**FOURTH**, that DOT shall develop design criteria for the franchise structures to be included in any RFP or other solicitation that shall address, but not be limited to, the following matters:

    1.     a requirement that all new franchise structures reflect a citywide coordinated design scheme;

    2.     a requirement that the design scheme take into account compatibility with special contexts, such as historic districts, including the ability to incorporate site specific design components;

    3.     the maximum envelope of the franchise structures;

    4.     the maximum number and area of the advertising panels on each type of franchise structure;

    5.     the number and placement of side enclosures for the BSSs so as to provide meaningful protection from the elements;

    6.     possible variation of footprints of the franchise structures as related to service needs; [and]

    7.     seating for the BSSs[.] ; and

NYC005960
NYC005960

Request for Proposals for a Coordinated Street Furniture Franchise

<u>8.</u>       <u>interior design criteria for newsstands.</u>

**FIFTH**, that DOT shall develop a process to be included in any RFP or other solicitation for consultation with City Council members and Community Boards regarding the selecting of sites for the installation of franchise structures and for responding to complaints[.] <u>and requests for removal,  provided, however, that a site for installation of an APT shall be subject to the approval of the Mayor and the Speaker of the Council.</u>

**SIXTH**, that in reviewing and evaluating responses to any such RFP or other solicitation, DOT shall apply the evaluation criteria listed below uniformly to all such responses and shall review and evaluate all such responses within the same time period.  The evaluation criteria to be used in evaluating the responses to such an RFP or other solicitation shall include, but not be limited to, the following:

1.       the design of the franchise structures, including security, aesthetic and functional aspects, accommodation of persons with disabilities, and design flexibility so as to enable the franchise structures to relate to various built environments around the city;

2.       an assessment of the fitness of the respondent with regard to:

a.       experience and demonstrated ability in the design, installation, operation, and maintenance of franchise structures in an urban environment;

b.       experience in the sale and maintenance of outdoor advertisements in an urban environment;

c.       skill and capabilities of management, technical staff, and field personnel; and

d.       business integrity and financial soundness, including, without limitation, adequate access to sources of capital and operating funds, and the demonstrated ability to maintain books and records adequately;

3.       the adequacy of the proposed compensation to be paid to the City; <u>provided, however, that a preference shall be granted to proposals that provide a greater compensation to the City in the initial period of the agreement provided that the total proposed compensation over the term of the franchise is determined to be in the best financial interest of the City;</u>

4.       the ability of the applicant to maintain the property of the City in good condition throughout the term of the franchise;

5.       whether the place of manufacture and assembly for such franchise structures is in the City of New York, in which case a preference shall be granted to said applicant; and

NYC005961
NYC005961

Request for Proposals for a Coordinated Street Furniture Franchise

> 6.      whether the place of manufacture and assembly for such franchise structures is in
> the United States of America, but not in the City of New York, in which case a
> preference shall be granted to said applicant.

The failure of an applicant to qualify for [either] any of the preferences set forth in evaluation
criteria designated three (3), five (5) and six (6) above shall not preclude further review and
evaluation of such applicant or the award of a franchise to such applicant.

**SEVENTH**, that DOT shall apply the MacBride principles when granting franchises pursuant to
this resolution.

**EIGHTH**, that any franchise granted pursuant to this authorizing resolution shall include the
entire City.

**NINTH**, that in the event that any of the franchise structures include newspaper or periodical
dispensers, boxes, or racks, such dispensers, boxes, or racks shall be installed, maintained, and
removed in accordance with all laws, rules, and regulations adopted by the City of New York.

**TENTH**, that in the event that any of the franchise structures include public pay telephones,
such public pay telephones shall be installed, maintained, and removed in accordance with all
laws, rules, and regulations adopted by the City of New York. Public pay telephone service in
the franchise structures shall be provided only by a person or entity franchised by the City of
New York to provide such service.

**ELEVENTH**, that any franchise granted pursuant to this authorizing resolution shall be by
written agreement that shall, without limitation, provide that:

> 1.      the term of such franchise, including any option(s) to renew, shall not exceed
> twenty (20) years;

> 2.      no direct public subsidy shall be made available to any franchisee;

> 3.      the compensation to be paid to the City shall be a percentage of any gross
> revenues derived by the franchisee as a result of the installation of the franchise
> structures and the display of advertising thereon, or a guaranteed minimum annual
> amount, whichever is greater. Such compensation shall not be considered in any manner
> in the nature of a tax, but such payments shall be made in addition to any and all taxes of
> whatever kind or description that are now or at any time hereafter may be required to be
> paid pursuant to any local law of the City or any law of the State of New York;

> 4.      a franchise may be terminated or canceled by the Commissioner in the event of
> the franchisee's failure to comply with the material terms and conditions of the
> agreement;

> 5.      there shall be a requirement for providing free space for public service
> advertisements on the franchise structures. Said space shall represent a minimum of
> 2.5% of the total number of advertising panels on the franchise structures. Such public
> service advertisements shall be equitably distributed among the various types of franchise

NYC005962
NYC005962

Request for Proposals for a Coordinated Street Furniture Franchise

structures. DOT shall be responsible for informing all agencies of City government of such free advertising space for public service announcements. In order to ensure wide and fair distribution of such free advertising space, DOT shall develop a plan for coordinating requests by said agencies for the use of such space[;]. At the request of the City, additional advertising space shall be set aside for other City purposes;

6.      advertising for tobacco products shall be prohibited;

7.      the design and placement of franchise structures shall be subject to the review and approval of the Landmarks Preservation Commission and the Art Commission, to the extent required by law;

8.      the design and placement of the franchise structures shall not result in an installation that causes the destruction or damage of any part of a [distinctive] sidewalk or historic pavement. Nothing herein shall preclude the franchisee from installing franchise structures, including utility connections appurtenant thereto, on a [distinctive] sidewalk or historic pavement by any means necessary; provided, however, that prior to such installation, the franchisee shall:

   a.      post a performance bond adequate to protect the adjacent property owner against any loss related to the condition of the [distinctive] sidewalk or historic pavement that may be occasioned by the installation, operation, maintenance, or removal of a franchise structure;

   b.      make a good faith effort to procure sufficient quantities of those materials of which the [distinctive] sidewalk or historic pavement is comprised to repair, replace, or restore it to its original condition;

In the event that the placement of any franchise structure results in damage to a [distinctive] sidewalk or historic pavement, such sidewalk or pavement shall be restored to its original condition at the sole expense of the franchisee using in-kind materials.

9.      the franchisee shall be required to maintain complete and accurate books of account and records in compliance with any and all specific requirements for record keeping, as shall be established by DOT. Such books and records shall be made available to the City for inspection on demand;

10.     the franchisee shall be required to maintain an office in the City where the above books and records shall be maintained and where the franchisee's accounting, billing, and clerical functions pertaining to the franchise operation shall be performed;

11.     there shall be provisions containing the agreements required pursuant to paragraph 6 of subdivision (h) of Section 363 of the Charter, relating to collective bargaining and other matters;

12.     there shall be provisions requiring the franchisee to comply with all applicable City laws, regulations, and policies related, but not limited, to employment, purchasing, and investigations;

NYC005963

13.     there shall be provisions to require the franchisee to comply with the applicable provisions of the Americans with Disabilities Act and any additional applicable federal, state, and local laws relating to accessibility for persons with disabilities;

14.     there shall be provisions to restrict the assignment or other transfer of the franchise or portions thereof without the prior written consent of the City and provisions to restrict changes in control of the franchisee without the prior written consent of the City;

15.     the franchisee shall submit to the City's Vendor Information Exchange System ("VENDEX") ;

16.     the franchisee shall obtain all required permits and comply with all applicable rules of government agencies having jurisdiction over the franchise structures;

17.     the franchisee shall at all times maintain on file with DOT a complete and accurate listing of sites, by borough and community district, at which franchise structures are located;

18.     the franchisee shall establish and maintain prompt and efficient consumer complaint handling procedures including, but not limited to, the posting of a complaint phone number and instructions for filing a complaint on all franchise structures;

19.     there shall be one or more security funds established to ensure the performance of the franchisee's obligations under the agreement;

20.     there shall be adequate insurance and indemnification requirements to protect the interests of the public and the City;

21.     there shall be other remedies, including liquidated damages, to protect the City's interests in the event of a franchisee's failure to comply with the terms and conditions of the agreement;

22.     there shall be provisions to ensure quality workmanship and construction methods, and to encourage state-of-the-art building materials to be integrated into the franchise structures as they become available;

23.     there shall be provisions for preventive maintenance, prompt repairs, and the removal of snow and ice, and provisions for the assessment of monetary damages if the franchisee fails to so maintain, repair, or remove;

24.     there shall be provisions for inspecting and cleaning of the franchise structures and for the prompt removal of graffiti; such inspecting, cleaning, and graffiti removal shall be done not less than twice a week;

25.     there shall be provisions preserving the right of the City to perform public works or improvements in and around those areas occupied by the franchise structures;

NYC005964
NYC005964

Request for Proposals for a Coordinated Street Furniture Franchise

26.    the City shall have the right to inspect the franchise structures and to order compliance with installation, maintenance, operational, and repair requirements set forth in the agreement;

27.    there shall be provisions to minimize the extent to which the [public] use of the streets of the City is disrupted in connection with the construction, installation, operation, maintenance, repair, removal, or deactivation of the franchise structures;

28.    all franchisees shall comply with all applicable sections of the building, plumbing, and electrical codes of the City of New York, and where the work to be done in connection with the installation, operation, maintenance, repair, removal, or deactivation of the franchise structures requires that such work be performed by a plumber or electrician, the franchisee shall employ and utilize only licensed plumbers and/or electricians;

29.    the franchisee, at the request of the City, shall be required to remove franchise structures that interfere with the construction, maintenance, or repairs of public utilities, public works, or public improvements, or that the City otherwise deems to be inappropriate at a particular location. At the request of the City, franchise structures so removed shall be reinstalled when construction, maintenance, or repairs are completed, or shall be relocated to sites approved by the City[;]. All such removals, reinstallations, and/or relocations shall be at the sole expense of the franchisee.

30.    the franchisee shall have the following specific obligations regarding the BSSs:

    a.    the design of the BSSs must include some form of passenger seating, such as a bench that may or may not be installed in every BSS, but which the City may require to be installed;

    b.    the franchisee shall be required to provide an area or areas on the BSSs for bus route maps, street maps, bus stop name identification, Guide-a-Ride canisters and other information, and shall be required to produce and install such signage as the City requests;

    [c.    the franchisee, at the request of the City, shall be required to remove, replace, and relocate BSSs;]

31.    the franchisee shall have the following specific obligations regarding the APTs:

    a.    the maximum charge to the public for use of the APTs shall be a material term of the agreement to be approved by the FCRC;

    b.    the APTs must be open to the public at least between 8:00 A.M. and 8:00 P.M. daily;

32.    the franchisee shall have the following specific obligations regarding the NSs:

NYC005965
NYC005965

Request for Proposals for a Coordinated Street Furniture Franchise

a.      the franchisee shall be required to cooperate with the operator of the newsstand regarding maintenance and repair of the newsstand structures[;] while the operation of the newsstand shall be solely the responsibility of the newsstand operator who shall be subject to all applicable laws, rules, and regulations governing newsstands;

b.      the franchisee shall be responsible for all installation and costs associated with any necessary electric and telephone hook-ups to the newsstand structures;

c.      the franchisee shall be responsible for arranging and paying for the installation of any infrastructure required by the appropriate utility to establish a separate account for the newsstand operator's usage of electricity at the newsstand structure;

33.    the franchisee shall not be responsible for cleaning the interiors of newsstands, for the cost of any telephone or electricity use by a newsstand operator or for any other utility cost which is not necessary to the franchise;

[33.]34.    the franchisee shall have the following specific obligation regarding the PSSs: the public service provided shall be immediately apparent to the passerby and shall not be obscured physically or visually by advertising.

**TWELFTH**, that DOT shall file with the City Council the following documents:

1.      within fifteen (15) days of issuance, a copy of each RFP or other solicitation issued pursuant to this resolution;

2.      within fifteen (15) days of approval by the Mayor, a copy of the agreement for each franchise granted pursuant to this resolution and any subsequent modification thereof;

3.      on or before July 1 of each year, for the preceding calendar year, a report detailing the revenues received by the City from each franchise granted pursuant to this resolution; and

4.      on or before July 1 of each year, a report detailing the location of each franchise structure installed or removed during the preceding calendar year.

Adopted.


Office of the City Clerk, }
The City of New York,  } ss.:

        I hereby certify that the foregoing is a true copy of a Resolution passed by The Council of The City of New York on August 19, 2003, on file in this office.

        City Clerk, Clerk of the Council


- 39 -

NYC005966
NYC005966

Request for Proposals for a Coordinated Street Furniture Franchise

NYC005967
NYC005967

Request for Proposals for a Coordinated Street Furniture Franchise

**APPENDIX 2**
**Summary Chart: Dimensions and Clearances**
**(For Informational Purposes Only)**

| | Clear Path | Curb setback | Maximum Size | | | | Maximum Advertising | |
|---|---|---|---|---|---|---|---|---|
| | | | Area | Length | Width | Height | Area | Height |
| Shelter | 7 ft | 3 ft | 150 sq ft | 30 ft | 5 ft | 9 ft | 55 sq ft | 7 ft |
| APT | 8 ft | 1.5 ft | 78 sq ft | 12.5 ft | 8 ft | 12 ft | 82.5 sq ft | 9 ft |
| Pillar | 8 ft | 1.5 ft | | 8 ft | 8 ft | 14 ft | 82.5 sq ft | 12 ft |
| Newsstand | 9.5 ft | 1.5 ft | 72 sq ft | 14 ft | 6.5 ft | 9 ft | 82.5 sq ft | 9 ft |
| Information/computer kiosks | 9.5 ft | 1.5 ft | 16 sq ft | 4 ft | 4 ft | 9 ft | None* | None* |
| Trash receptacle | 9.5 ft | 1.5 ft | 6.25 sq ft | 2.5 ft | 2.5 ft | 4 ft | None* | None* |
| Multi-rack Newsrack | 8 ft | 1.5 ft to 2 ft | 22.5 sq ft | 3 ft | 7.5 ft | 5 ft | None** | None** |

* The name or logo of a sponsoring entity, covering an area not to exceed 2 square feet, shall be permitted.
** The name or logo of a sponsoring entity shall not be permitted.

- 41 -

NYC005968
NYC005968

Request for Proposals for a Coordinated Street Furniture Franchise

**APPENDIX 3**
**Siting Criteria**

The general provisions contained in the first section of these criteria apply to all Franchise Structures, except Newsstands, trash receptacles, and multi-rack newsracks. Newsstands shall be sited in accordance with the criteria in section 20-231 of the Administrative Code and any rules promulgated by the Department of Consumer Affairs pursuant thereto. Trash receptacles shall be sited in accordance with relevant Department of Sanitation regulations and guidelines. Copies of the referenced documents may be requested from the Department contact. Multi-rack newsracks shall be sited in accordance with section 19-128.1 of the New York City Administrative Code and section 2-08 of Chapter 2 of Title 34 of the Rules of the City of New York, attached as Appendix 13. Additional requirements applying to particular types of structures are stated in the sections that follow. These additional requirements are designed to accommodate differences in the structures' function, appearance, and use and to ensure appropriate and consistent locational opportunities.

**A.      General Provisions**

1.      Clear Path. All Franchise Structures shall be installed so as to allow a straight unobstructed path ("clear path") for pedestrian circulation on the sidewalk. The dimensions of the clear path for each type of structure are specified in the subsequent sections. No grates or cellar doors shall be included as a part of the clear path directly in front of or behind a Franchise Structure.

2.      Sight Lines. The placement of the Franchise Structures shall not interfere with pedestrian or motorist sight lines necessary for traffic safety.

3.      Minimum Distance Requirements. Unless otherwise stated, distances shall be measured between the nearest points, viewed in plan, of the Franchise Structure and the specified object or element. Where a distance is required to be measured parallel to the curb line, the measurement shall be taken between the two lines perpendicular to the curb line, one touching the Franchise Structure and the other touching the specified object or element, that are closest to each other.

   a)      The following minimum distances shall be required between the Franchise Structure and the specified element or object:

      i)      Fifteen feet, measured parallel to the curb line, from Bus Stop Shelters; Automatic Public Toilets; Newsstands; information/computer kiosks; enclosed or unenclosed sidewalk cafes; subway entrances or exits.
      ii)     Ten feet from: Fire hydrants; standpipes; Siamese connections; driveways (which distances must also meet the Department's safety and operational requirements); building lines extended at the intersection of two streets, in accordance with Executive Order No. 22 of 1995 (see Figure 1).
      iii)    Five feet from: The trunk of any tree; canopies; information kiosks.
      iv)     Three feet from: Streetlights and traffic signal poles.

- 42 -

NYC005969
NYC005969

Request for Proposals for a Coordinated Street Furniture Franchise

    v)      Two feet from: Ventilation or other grills; manholes; access plates; street signs; parking meters; fixed litter baskets; tree pits; valve boxes; telephones; cellar doors; mailboxes.

    vi)     One and one-half feet from the curb of any street, except for Bus Stop Shelters (see below).

b)     In addition to the above distance requirements, for any Franchise Structure where access for the public is provided from a side of the structure other than that adjacent to the clear path, the following minimum distances shall be required between each such side of the Franchise Structure and the specified element or object:

    i)      Five feet from any above-ground structure (*e.g.*, street lights, traffic signal poles, street signs, parking meters, fixed litter baskets, telephones, mail boxes)

    ii)     Three feet from any element or object that is flush with the sidewalk (*e.g.*, ventilation or other grills, manholes, access plates, tree pits, valve boxes)

c)     No Franchise Structure may be installed directly in front of a building entrance or exit without written permission from the abutting property owner. No Franchise Structure shall be installed within 5 feet (measured parallel to the curb line) of a building entrance except where the Department determines that this requirement cannot be reasonably met.

d)     No Franchise Structure may be installed within 3 feet of the property line of a residential or commercial structure without written permission from the abutting property owner.

e)     No Franchise Structure may be located under a fire escape.

f)     Except for Bus Stop Shelters, no Franchise Structure may be located within a bus stop zone or a taxi stand.

4.    <u>Vaults</u>. Where a vault is present, the Franchisee shall submit certification from an engineer that the installation of the Franchise Structure will in no way damage the vault.

5.    <u>Electrical Sources</u>. Franchise Structures should be as close as possible, subject to all other distance requirements, to the source of electricity, if required for the operation of the Franchise Structure. Such Franchise structures may not be sited farther than 150 feet from the nearest available electric power source, unless otherwise directed by the City. The Franchisee is prohibited from using a traffic signal or Con Edison type #12 post, or any power source across a major or protected roadway, unless authorized to do so by the Department.

6.    <u>Landmarks and Historic Districts</u>. The placement of the Franchise Structures will be subject to the review and approval of the Landmarks Preservation Commission to the extent required by law.

- 43 -

NYC005970
NYC005970

Request for Proposals for a Coordinated Street Furniture Franchise



Figure 1.  Clear Corner Policy (Executive Order No. 22 of 1995)

**B.    Bus Stop Shelters**

1.    <u>Clear Path</u>.  In general, Bus Stop Shelters shall be installed to allow a minimum clear path of 7 feet in width.  However, a reduced clear path may be permitted by the Department if necessary to allow the installation of a Bus Stop Shelter.  In no case shall such clear path be less than 5 feet in width.  The clear path for a Bus Stop Shelter may include the area covered by the Bus Stop Shelter's roof overhang, provided such overhang is a minimum of 7 and 1/2 feet high.

2.    <u>Clearance from Curb</u>.  All Bus Stop Shelters shall be installed to allow a straight unobstructed path a minimum of 3 feet in width between the Shelter and the curb.  Viewed in plan, the roof of a Bus Stop Shelter including any overhang shall be set back from the curb line a minimum distance of 2 feet.

3.    <u>Relation to the Bus Stop</u>

    a)    All Bus Stop Shelters shall be located as close as possible to the head of the bus stop, but no less than 10 feet from the head of the bus stop at locations where parking is permitted immediately adjacent to the head of the bus stop.
    b)    If a Bus Stop Shelter has only one enclosed end, it should be situated toward the head of the bus stop.

**C.    Automatic Public Toilets, Public Service Structures**

1.    <u>Clear Path</u>

    a)    All APTs shall be installed to allow a minimum clear path of 8 feet in width.

- 44 -

NYC005971

Request for Proposals for a Coordinated Street Furniture Franchise

b)  All information/computer kiosks shall be installed to allow a minimum clear path of 9 and 1/2 feet in width.

c)  The clear path for an information/computer kiosk may include an area up to 3 feet in width covered by the structure's roof overhang, provided such overhang is at a minimum height of 7.5 feet above the sidewalk.

d)  The clear path shall extend 15 feet to each side of the Franchise Structure.

e)  Franchise Structures on sidewalks shall be located either within 2 and 1/2 feet of the curb line or within 1 foot of the building line.

2.  <u>Minimum Distance Requirements</u>.  A minimum 15-foot distance, measured parallel to the curb, is required upon installation between the Franchise Structure and:

a)  Entrances to houses of worship.

b)  Any entrance to the elevator lobby of a building having non-residential uses above the street-level floor and having 16 floors in height or more with a frontage of at least 100 feet on narrow streets or 140 feet on wide streets (as defined in Section 12-10 of the New York City Zoning Resolution).

c)  Any entrance to the lobby of a hotel.

d)  Any entrance to a bank from the street that serves the public, including ATM entrances.

e)  Entrances to theaters and box offices.

**D.  Additional Requirements for Automatic Public Toilets**

1.  <u>Permissible Locations</u>.  APTs shall be located only:

a)  On wide streets, as defined in Section 12-10 of the New York City Zoning Resolution, only in commercial, manufacturing or mixed use districts.

b)  On sidewalks or plazas adjacent to property owned or leased by a government agency or public authority or under the jurisdiction of the Economic Development Corporation.

c)  On traffic islands or public places bounded on all sides by mapped streets under the jurisdiction of the Department.

d)  On or adjacent to parks property or playgrounds, subject to the approval of the Department of Parks and Recreation.

2.  <u>Utilities</u>.  The siting of APTs shall be subject to consideration of the economic feasibility of making necessary utility connections.  All APT sites are subject to the additional approval of the Department of Environmental Protection.

**E.  Special Circumstances**

The Commissioner may waive or modify the above criteria in specific cases, except where prohibited by law, if, in his or her opinion, such waiver or modification is consistent with the public health, safety and general welfare.  No such waiver or modification shall be granted without prior consultation with the affected Council Member, Borough President, and Community Board.  Similarly, the Department may refrain from siting a Franchise Structure at a

- 45 -

NYC005972
NYC005972

Request for Proposals for a Coordinated Street Furniture Franchise

particular location that in the opinion of the Commissioner would result in an over-concentration of Franchise Structures.

Notwithstanding anything contained herein, the siting of Franchise Structures shall be subject to any applicable requirements of the New York City Administrative Code. Notwithstanding anything contained herein, trash receptacles may be replaced at their existing locations in accordance with the Department of Sanitation's Operation Order for the placement of litter baskets and the Mayor's Clear Corner Policy (Exec. Order No. 22 of 1995).

A newsstand required by the provisions of paragraph five of subdivision k of section 20-231 of the New York City Administrative Code to be relocated at any time shall be eligible to be relocated to a site within a radius of five hundred feet from its licensed location, the "catchment area", provided such site is identified by the licensee and meets the siting criteria applicable to the renewal of licenses in subparagraph a of paragraph two of subdivision d of section 20-231.

If the department of transportation determines that there is no site within such catchment area to which a newsstand may be relocated in accordance with subparagraph (a) of paragraph five of subdivision k of section 20-231, the licensee of such newsstand may apply for a license for a new newsstand in accordance with the applicable provisions of law.

A newsstand shall not be eligible for a renewal if the area of the sidewalk occupied by it exceeds seventy-two square feet or such newsstand exceeds nine feet in height or the department of transportation determines that the newsstand poses an obstruction to the free use of sidewalks by pedestrians at the time of review.

(a) A newsstand that was first licensed on or after the first day of August, nineteen hundred ninety-one shall not pose an obstruction to the free use of the sidewalks by pedestrians if the location of such newsstand does not

(i) reduce the area maintained on the sidewalk for pedestrian movement below a width of nine and one-half feet.

(ii) place the proposed newsstand within five feet of a fire hydrant.

(iii) create a level of service at the proposed location for the peak fifteen minutes of the peak hour of a pedestrian flow rate equal to or greater than eleven people per minute per linear foot of clear path, as determined by the department of transportation.

(iv) place the proposed newsstand within fifteen feet of an entrance to or exit from a subway.

(v) extend into the area encompassed by the extension of the property lines from the buildings to the curb at the intersection of two streets and the area ten feet on either side of such lines.

(vi) extend into a bus stop.

(vii) otherwise create a hazardous condition. For purposes of this subparagraph, a hazardous condition shall include, but not be limited to, the location of a newsstand less than one foot, six inches from the curb, under a fire escape, within ten feet of a driveway or parking lot or within two feet from underground access points, such as utility access openings, ventilation grills, or cellar doors.

NYC005973
NYC005973

Request for Proposals for a Coordinated Street Furniture Franchise

(b) A newsstand that was first licensed prior to the first day of August, nineteen hundred ninety-one shall not pose an obstruction to the free use of the sidewalks by pedestrians if the location of such newsstand does not

(i) reduce the area maintained on the sidewalk for pedestrian movement below a width of nine and one-half feet.

(ii) place the proposed newsstand within five feet of a fire hydrant.

(iii) create a level of service at the proposed location for the peak fifteen minutes of the peak hour of a pedestrian flow rate equal to or greater than eleven people per minute per linear foot of clear path, as determined by the department of transportation.

(iv) violate the restrictions on the location of newsstands in subdivision f of this section, if such newsstand is located at the rear or side of a subway entrance or exit kiosk.

(v) extend into the area encompassed by the extension of the property lines from the buildings to the curb at the intersection of two streets.

(vi) otherwise create a hazardous condition. For purposes of this subparagraph, a hazardous condition shall include, but not be limited to, the location of a newsstand less than one foot, six inches from the curb, under a fire escape, within ten feet of a driveway or parking lot or within two feet from underground access points, such as utility access openings, ventilation grills, or cellar doors.

NYC005974
NYC005974

Request for Proposals for a Coordinated Street Furniture Franchise

**APPENDIX 4**
**Proposal Cover Sheet**

| | |
|---|---|
| 1.   Name of Proposer: | |
| 2.   Address: | |
| | STREET |
| CITY                          STATE                          COUNTRY<br>ZIP+FOUR | |
| 3.   Telephone: | |
| 4.   Fax: | |
| 5.   Employer ID# (EIN) or Social Security Number: | |
| 6.   Contact Person: | |
| 7.   Title: | |
| 8.   Telephone: | |
| 9.   Fax: | |
| 10.   Name of Person Completing Proposal: | |
| 11.   Title: | |
| 12.   Signature of Person Completing Proposal: | |

## CERTIFICATION BY CORPORATE OFFICER OR PARTNER

I hereby certify that I have reviewed the attached Proposal and that the information presented therein is accurate and complete as of this date.

Signature: _____

Name: _____

Title: _____

Date: _____

A SEPARATE COVER SHEET MUST BE COMPLETED AND SUBMITTED FOR EACH FIRM THAT IS A PARTY TO THE PROPOSAL.

- 48 -

NYC005975
NYC005975

Request for Proposals for a Coordinated Street Furniture Franchise

**APPENDIX 5**
**Cash Flow Analysis**

Proposers must use this form to submit the cash flow analysis required in Section III, A, 4. Additional cash flow analyses may also be provided.

State all costs in thousands of US dollars. Do not increment for inflation. Attach additional sheets and provide footnotes as needed.

Abbreviations: BSS = Bus Stop Shelter; APT = Automatic Public Toilet; NS = Newsstand; TR = Trash receptacle; I/CK = Information/Computer kiosk; NR = Multi-rack news rack

**I.   REVENUE ESTIMATES**

*Table A—Projected Revenue by Type of Franchise Structure*

|  | ITEM | AMOUNT |
|---|---|---|
|  | **Projected Average Annual Ad Revenue Per Ad Panel Citywide** |  |
| a | **BSS** |  |
| b | **APT** |  |
| c | **NS** |  |
|  |  |  |
|  | **Projected Average Annual Corporate Sponsorship Revenue Per Franchise Structure Citywide** |  |
| d | **TR** |  |
| e | **I/CK** |  |
|  |  |  |
|  | **Projected Average Annual User and Other Fees Per Franchise Structure Citywide** |  |
| f | **APT** |  |
| g | **I/CK** |  |
|  |  |  |
|  | **Other Revenue (specify):** |  |
|  |  |  |

**Table B—Number of Franchise Structures in Service in Each Year**

Complete Table B as per the Proposal. For the purposes of this analysis, assume that the minimum number of BSSs in service will be 3300 and that the maximum number of APTs will be 20.

| Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10-20 |
|---|---|---|---|---|---|---|---|---|---|---|
| BSS |  |  |  |  |  |  |  |  |  |  |
| NS |  |  |  |  |  |  |  |  |  |  |
| APT |  |  |  |  |  |  |  |  |  |  |

**Table C—Projected Total Number of Ad Panels in Service in Each Year**

- 49 -

NYC005976
NYC005976

Request for Proposals for a Coordinated Street Furniture Franchise

For the purposes of this analysis, assume that there will be 2 ad panels on each BSS. Provide the number of ad panels on each NS and APT as per the Proposal:

NS = _____          APT = _____

In Table C, below, provide the total number of ad panels that will be in service and producing revenue for each type of Franchise Structure in each year. Assume that an ad panel will begin producing revenue in the year after the construction of the appurtenant Franchise Structure (see Table K). For the purposes of this table, deduct 22.5% of the total number of ad panels for each type of Franchise Structure required as the City's set aside for public service advertisements and marketing partnership advertisements.

| Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10-20 |
|------|---|---|---|---|---|---|---|---|---|-------|
| BSS  |   |   |   |   |   |   |   |   |   |       |
| NS   |   |   |   |   |   |   |   |   |   |       |
| APT  |   |   |   |   |   |   |   |   |   |       |

### Table D—Revenue Forecast, Year by Year

Calculate revenue forecasts using the following formulas. List the results in Table D, below.

For BSSs: Revenue = (projected revenue per ad panel from Table A, line a) x (total number of ad panels in service in each year from Table C)

For NSs: Revenue = (projected revenue per ad panel from Table A, line c) x (total number of ad panels in service in each year from Table C)

For APTs: Revenue = [(projected revenue per ad panel from Table A, line b) x (number of ad panels in service in each year from Table C)] + [(projected revenue from Table A, line f) x (the number of structures in service in each year from Table B)]

| Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|------|---|---|---|---|---|---|---|---|---|----|
| BSS  |   |   |   |   |   |   |   |   |   |    |
| NS   |   |   |   |   |   |   |   |   |   |    |
| APT  |   |   |   |   |   |   |   |   |   |    |
| Other Revenue |   |   |   |   |   |   |   |   |   |    |
| Total |   |   |   |   |   |   |   |   |   |    |

| Year | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|------|----|----|----|----|----|----|----|----|----|----|
| BSS  |    |    |    |    |    |    |    |    |    |    |
| NS   |    |    |    |    |    |    |    |    |    |    |
| APT  |    |    |    |    |    |    |    |    |    |    |
| Other Revenue |    |    |    |    |    |    |    |    |    |    |
| Total |    |    |    |    |    |    |    |    |    |    |

NYC005977

Request for Proposals for a Coordinated Street Furniture Franchise

## II.    ANNUAL OPERATING AND OVERHEAD EXPENSES

**Table E— Annual Maintenance Expenses**

**For the purposes of this analysis, assume that the build-out of the Franchise Structures (other than PSSs) has been completed.  Answer all questions in full regardless of whether these operations will be performed by the Proposer's employees or by subcontractors.**

|   | ITEM | AMOUNT |
|---|------|--------|
| 1 | **Yearly projected costs for all maintenance staff (including salaries, benefits/unemployment insurance) to perform cleaning, posting, repair and replacement of parts, electrical and plumbing work, etc.** | |
| 2 | **Yearly projected maintenance vehicle costs (including purchase/lease, fuel, insurance, maintenance/repair, etc).** | |
| 3 | **Yearly projected electricity costs (including alternative power sources)** | |
| 4 | **Yearly projected water and sewer costs** | |
| 5 | **Yearly cost for supplies for all franchise structures** | |
| 6 | **Yearly cost for replacement parts for all franchise structures** | |
| 7 | **Other maintenance costs (specify):** | |
| 8 | **Maintenance Subtotal (Add Lines 1 through 7)** | |

**Table F -- Cost of Removal of Structures**

List the removal cost for a single structure of each type.

| Type | $ Amount | Type | $ Amount |
|------|----------|------|----------|
| **BSS** | | **TR** | |
| **APT** | | **I/CK** | |
| **NS** | | **NR** | |

**Table G --Maintenance Expenses, Year by Year**

For the purposes of this analysis, assume that maintenance expenses will not reach the total from Table E until the build-out of the Franchise Structures (other than PSSs) has been completed.

| **Year** | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|------|---|---|---|---|---|---|---|---|---|----|
| Am't | | | | | | | | | | |

| **Year** | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|------|----|----|----|----|----|----|----|----|----|----|
| Am't | | | | | | | | | | |

- 51 -

NYC005978

Request for Proposals for a Coordinated Street Furniture Franchise

### Table H—Annual Overhead Expenses

For the purposes of this analysis, assume that the build-out of the Franchise Structures (other than PSSs) has been completed.  Answer all questions in full regardless of whether these expenses will be incurred by the Proposer or by its subcontractors.

| | ITEM | AMOUNT |
|---|---|---|
| 1 | **Projected yearly cost for the use and maintenance of all necessary facilities (office, plant, storage facility, garage, utilities, etc.)** | |
| 2 | **Projected yearly cost for office supplies** | |
| 3 | **Projected yearly cost for office staff (including salaries, benefits/unemployment insurance) to perform in-house marketing, clerical, sales, accounting, administration, legal functions, etc.** | |
| 4 | **Commissions.  Anticipated fees for an agency to place ads. (Include here and not on line 3).** | |
| 5 | **Other overhead (explain):** | |
| 6 | **Overhead expenses subtotal (Add Lines 1, 2, 3, 4 & 5)** | |

### Table I—Overhead Expenses, Year by Year

Complete this table only if overhead expenses are expected to vary until the build-out of the Franchise Structures has been completed.

| **Year** | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| Am't | | | | | | | | | | |

| **Year** | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|
| Am't | | | | | | | | | | |

### III.    CAPITAL COSTS

### Table J—Capital Costs of Franchise Structures

| | ITEM | AMOUNT |
|---|---|---|
| | **BUS STOP SHELTERS** | |
| 1 | **Manufacture and assembly of one BSS** | |
| 2 | **Installation of one BSS (including permits, utility hook-ups, labor, delivery, set-up)** | |
| 3 | **Other costs (specify):** | |
| 4 | **Unit cost (Add Lines 1 through 3)** | |
| 5 | **Proposed number of BSSs (3300 minimum)** | |
| 6 | **Total construction cost for BSSs (Line 4 x Line 5)** | |

NYC005979
NYC005979

Request for Proposals for a Coordinated Street Furniture Franchise

**Table J—Capital Costs, continued**

|     | AUTOMATIC PUBLIC TOILETS |     |
| --- | --- | --- |
|     | **AUTOMATIC PUBLIC TOILETS** |     |
| 7   | Manufacture and assembly of one APT: above-ground structure |     |
| 8   | Manufacture and assembly of one APT: functional unit |     |
| 9   | Installation of one APT: (including foundation, permits, utility hook-ups, labor, delivery, set-up) |     |
| 10  | Other costs (specify): |     |
| 11  | Unit cost (Add Lines 7 through 10) |     |
| 12  | Proposed number (20 maximum) |     |
| 13  | Total construction cost for APTs (Line 11 x Line 12) |     |
|     |     |     |
|     | **NEWSSTANDS** |     |
| 14  | Manufacture and assembly of one NS |     |
| 15  | Installation of one NS (including permits, utility hook-ups, labor, delivery, set-up) |     |
| 16  | Other costs (specify): |     |
| 17  | Unit cost (Add Lines 14 through 16) |     |
| 18  | Proposed number (330 minimum) |     |
| 19  | Total construction cost for NSs (Line 17 x Line 18) |     |

|     |     |     |
| --- | --- | --- |
| 20  | **TOTAL CONSTRUCTION COSTS (Add Lines 6, 13, & 19)** |     |
|     |     |     |
|     | **FINANCING** |     |
| 21  | Amount of construction costs to be borrowed |     |
| 22  | Typical number of years over which Line 21 amount will be financed |     |
| 23  | Estimated interest rate |     |

|     |     |     |
| --- | --- | --- |
|     | **PUBLIC SERVICE STRUCTURES** |     |
|     | **TRASH RECEPTACLES** |     |
| 24  | Manufacture and assembly of one TR |     |
| 25  | Installation of one TR (including labor, delivery, set-up) |     |
| 26  | Other costs (specify): |     |
| 27  | Unit cost (Add Lines 24 through 26) |     |
|     |     |     |
|     | **INFORMATION/COMPUTER KIOSKS** |     |
| 28  | Manufacture and assembly of one I/CK |     |
| 29  | Installation of one I/CK (including permits, utility hook-ups, labor, delivery, set-up) |     |
| 30  | Other costs (specify): |     |
| 31  | Unit cost (Add Lines 28 through 30) |     |
|     |     |     |
|     | **MULTI-RACK NEWSRACKS** |     |
| 32  | Manufacture and assembly of one NR |     |
| 33  | Installation of one NR (including permits, labor, delivery, set-up) |     |

- 53 -

NYC005980
NYC005980

Request for Proposals for a Coordinated Street Furniture Franchise

| 34 | Other costs (specify): | |
|---|---|---|
| 35 | Unit cost (Add Lines 32 through 34) | |

### Table K—Construction Schedule

List the number of Franchise Structures proposed to be installed in each year.

| Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BSS | | | | | | | | | | | |
| NS | | | | | | | | | | | |
| APT | | | | | | | | | | | |

### Table L—Capital Costs, Year by Year

Calculate the capital costs for each year by multiplying the unit cost for each type of Franchise Structure (from Table J) by the number of Franchise Structures to be constructed in each year (from Table K). Do not include financing costs.

| Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| BSS | | | | | | | | | | |
| NS | | | | | | | | | | |
| APT | | | | | | | | | | |

| Year | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|
| BSS | | | | | | | | | | |
| NS | | | | | | | | | | |
| APT | | | | | | | | | | |

### Table M--Summary and Cash Flow Analysis

Complete this table based on the previous tables.

Table M, below, to be based on control of 80% of the advertising space.

| Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | Subtotal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue Projections** | | | | | | | | | | | |
| BSS Ad revenue | | | | | | | | | | | |
| NS  Ad revenue | | | | | | | | | | | |
| APT Ad revenue | | | | | | | | | | | |
| APT User Fees | | | | | | | | | | | |
| Other Revenue | | | | | | | | | | | |
| A. Total Gross Revenue | | | | | | | | | | | |
| | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | |
| Maintenance Expenses | | | | | | | | | | | |
| Overhead Expenses | | | | | | | | | | | |
| B. Total Operating Expenses | | | | | | | | | | | |
| | | | | | | | | | | | |
| C. Operating Income (A - B) | | | | | | | | | | | |

- 54 -

NYC005981
NYC005981

Request for Proposals for a Coordinated Street Furniture Franchise

| Capital Costs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BSS | | | | | | | | | | | |
| NS | | | | | | | | | | | |
| APT | | | | | | | | | | | |
| Finance Costs (if any) | | | | | | | | | | | |
| D. Total Capital Costs | | | | | | | | | | | |
| | | | | | | | | | | | |
| E. Net Income  (C - D) | | | | | | | | | | | |
| **Year** | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | **Total** |
| **Revenue Projections** | | | | | | | | | | | |
| BSS Ad revenue | | | | | | | | | | | |
| NS  Ad revenue | | | | | | | | | | | |
| APT Ad revenue | | | | | | | | | | | |
| Other Revenue | | | | | | | | | | | |
| A. Total Gross Revenue | | | | | | | | | | | |
| | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | |
| Maintenance Expenses | | | | | | | | | | | |
| Overhead Expenses | | | | | | | | | | | |
| B. Total Operating Expenses | | | | | | | | | | | |
| | | | | | | | | | | | |
| C. Operating Income (A - B) | | | | | | | | | | | |
| | | | | | | | | | | | |
| **Capital Costs** | | | | | | | | | | | |
| BSS | | | | | | | | | | | |
| NS | | | | | | | | | | | |
| APT | | | | | | | | | | | |
| Finance Costs (if any) | | | | | | | | | | | |
| D. Total Capital Costs | | | | | | | | | | | |
| | | | | | | | | | | | |
| E. Net Income  (C - D) | | | | | | | | | | | |

NYC005982
NYC005982

Request for Proposals for a Coordinated Street Furniture Franchise

**APPENDIX 6**
**Affirmation**

Proposer's Name: _____

The above named Proposer affirms, declares, and certifies:

1.      That such Proposer, or if the Proposer is a corporation any person signing on behalf of such Proposer who is of lawful age, is the only one interested in this Proposal; and that no person, firm or corporation other than herein above named has any interest in this Proposal, or in the  Franchise Contract proposed to be taken.

2.      By submission of this Proposal, each Proposer and each person signing on behalf of any Proposer certifies, and in the case of a joint Proposal each party thereto certifies as to its own organization, under penalty of perjury, that to the best of its knowledge and belief:
        (a)     The terms of this Proposal have been arrived at independently without collusion, consultation, communication or agreement, for the purpose of restricting competition, as to any matter relating to such terms with any other Proposer prior to the opening, directly or indirectly, to any other Proposer or to any competitor; and
        (b)     Unless otherwise required by law, the terms that have been quoted in this Proposal have not been knowingly disclosed by the Proposer and will not knowingly be disclosed by the Proposer prior to opening, directly or indirectly, to any other Proposer or to any competitor; and
        (c)     No attempt has been made or will be made by the Proposer to induce any other person, partnership, or corporation to submit or not to submit a Proposal for the purpose of restricting competition.

3.      That no Council Member or other officer or employee or person whose salary is payable in whole or in part from the City treasury is directly or indirectly interested in this Proposal, or to the agreement to which it its related, or in any of the profits thereof.

4.      That such Proposer is not in arrears with the City of New York upon any debt, obligation, or taxes and is not a defaulter, as surety or otherwise, upon any obligation to the City of New York, and has not been declared not responsible, nor disqualified by any Department of the City of New York or State of New York, nor is there any proceeding pending relating to the responsibility or qualification of the Proposer to receive a public Franchise Contract except as is indicated in an attachment hereto.

5.      That from the date of the issuance of the RFP, neither Proposer nor any of its Key People[1], or any consultant, agent or representative, lobbyist or lawyer on Proposer's behalf, will

---

[1] References to **Key People** throughout this Affidavit include, but are not limited to, proprietors, owners, partners, directors, officers; shareholders of five percent (5%) or more of Proposer's issued stock, including owners of other securities (e.g., stock options, warrants and rights, etc.) that can be converted to stock that, if exercised, would constitute five percent (5%) of the firm's issued stock; any group, individual and/or entity with the right to acquire ownership of an amount of Proposer's stock, pursuant to any stock option, arrangement, warrant, right, or otherwise, which if combined with the current holdings of such group, individual and/or entity, would constitute five percent (5%) or more of the outstanding stock;  each manager or individual participating in overall policy-making or financial decisions for the firm; and each person in a position to control and/or direct the firm's overall operations.

NYC005983
NYC005983