Request for Proposals for a Coordinated Street Furniture Franchise

contact any employee in any City agency with respect to any aspect of this RFP other than the official Department Contact as set forth in the RFP or any addenda thereto.

_____

(Signature of the person who signed the Proposal)

_____

(Title of the person who signed the Proposal)

Subscribed and sworn to before me
this _____ day of _____, 20___

_____

Notary Public

NYC005984

Request for Proposals for a Coordinated Street Furniture Franchise

**APPENDIX 7**
**Acknowledgment of Addenda**

**THIS PAGE MUST BE SUBMITTED WITH YOUR PROPOSAL.**

**DIRECTIONS**:  COMPLETE PART I OR PART II, AS APPLICABLE.

**PART I**: Listed below are the dates of issue for each addendum received.
ADDENDUM # 1, DATED _____, 20__
ADDENDUM # 2,  DATED _____, 20__
ADDENDUM # 3,  DATED _____, 20__
ADDENDUM # 4,  DATED _____, 20__
ADDENDUM # 5,  DATED _____, 20__
ADDENDUM # 6,  DATED _____, 20__
ADDENDUM # 7,  DATED _____, 20__
ADDENDUM # 8,  DATED _____, 20__
ADDENDUM # 9,  DATED _____, 20__
ADDENDUM # 10, DATED _____, 20__
ADDENDUM # 11, DATED _____, 20__
ADDENDUM # 12, DATED _____, 20__

**PART II**:  ___  NO ADDENDA TO THIS RFP WERE RECEIVED.

_____DATE

_____          _____
PROPOSER'S NAME                         PROPOSER'S SIGNATURE

NYC005985
NYC005985

Request for Proposals for a Coordinated Street Furniture Franchise

**APPENDIX 8**
**Proposal Package Checklist**

**I.    Sealed Package**

A.  One signed original and twenty (20) copies of each of the following:

    1.  Proposal Cover Sheet(s)

    2.  Statement of qualifications for each participating firm or subcontractor including:
        a.  Narrative
        b.  Informational Videos and Photographs
        c.  References
        d.  Organization Chart and Team Members
        e.  Individual Resumes
        f.  Financial Statement

    3.  Technical Proposal including:
        a.  Narrative
        b.  Cash Flow Analysis
        c.  Acknowledgment of Addenda

B.  Required City Documents:  One signed original and two copies of the following documents:

    1.  VENDEX Business Entity Questionnaire for each participating firm
    2.  VENDEX Principal Questionnaires for each principal of each participating firm
    3.  VENDEX Subcontractor Questionnaire for each subcontractor
    4.  Affirmation for each participating firm and subcontractor
    5.  MacBride Principles signed by each participating firm and subcontractor
    6.  Proposer's Affidavit

**II.    Sealed Envelope -** One signed original and twenty (20) copies of the Compensation Proposal

**III.    Drawings -** Two (2) sets of drawings on foam-core board

**IV.    Scale Models -** One set of scale models

- 59 -

NYC005986
NYC005986

Request for Proposals for a Coordinated Street Furniture Franchise

**APPENDIX 9**
**MacBride Principles**

## MacBRIDE PRINCIPLES PROVISIONS
## FOR NEW YORK CITY CONTRACTORS

### ARTICLE I  MacBRIDE PRINCIPLES

### NOTICE TO ALL PROSPECTIVE CONTRACTORS

Local Law No. 34 of 1991 became effective on September 10, 1991 and added Section 6-115.1 to the Administrative Code of the City of New York.  The local law provides for certain restrictions on City Contracts to express the opposition of the people of the City of New York to employment discrimination practices in Northern Ireland and to encourage companies doing business in Northern Ireland to promote freedom of work place opportunity.

Pursuant to Section 6-115.1, prospective contractors for Contracts to provide goods or services involving an expenditure of an amount greater than ten thousand dollars ($10,000), or for construction involving an amount greater than fifteen thousand dollars ($15,000), are asked to sign a rider in which they covenant and represent, as a material condition of their Contract, that any business in Northern Ireland operations conducted by the Contractor that holds a ten (10%) percent or greater ownership interest and any individual or legal entity that holds a ten (10%) percent or greater ownership interest in the Contractor will be conducted in accordance with the MacBride Principles of non-discrimination in employment.

Prospective Contractors are not required to agree to these conditions.  However, in the case of contracts let by competitive sealed bidding, whenever the lowest responsible bidder has not agreed to stipulate to such conditions has submitted a bid within five (5%) percent of the lowest responsible bid for a Contract to supply goods, services or construction of comparable quality, the contracting entity shall refer such bids to the Mayor, the Speaker or other officials, as appropriate, who may determine, in accordance with applicable law and rules, that it is in the best interest of the City that the Contract be awarded to other than the lowest responsible bidder pursuant to Section 313(b)(2) of the City Charter.

In the case of Contracts let by other than competitive sealed bidding, if a prospective Contractor does not agree to these conditions, no agency, elected official or the Council shall award the contract to that bidder unless the entity seeking to use the goods, services or construction certifies in writing that the contract is necessary for the entity to perform its function and there is no other responsible Contractor who will supply goods, services or construction of comparable quality at a comparable price.

### PART A

In accordance with Section 6-115.1 of the Administrative Code of the City of New York, the Contractor stipulates that such Contractor and any individual or legal entity in which the Contractor holds ten percent (10%) or greater ownership interest and any individual or legal entity that holds a ten percent (10%) or greater ownership interest in the Contractor either:  **(a)**

- 60 -

NYC005987
NYC005987

Request for Proposals for a Coordinated Street Furniture Franchise

have no business operations in Northern Ireland, or **(b)** shall take lawful steps in good faith to conduct any business operations they have in Northern Ireland in accordance with the MacBride Principles, and shall permit independent monitoring of this compliance with such principles.

## PART B

For purposes of this section, the following terms shall have the following meanings:

A.  "*MacBride Principles*" shall mean those principles relating to non-discrimination in employment and freedom of work place opportunity which requires employers doing business in Northern Ireland to:

1. Increase the representation of individuals from underrepresented religious groups in the work force, including managerial, supervisory, administrative, clerical and technical jobs;

2. Take steps to promote adequate security for the protection of employees from underrepresented religious groups both at the work place and while traveling to and from work;

3. Ban provocative religious or political emblems from the work place;

4. Publicly advertise all job openings and make special recruitment efforts to attract applicants from underrepresented religious groups;

5. Establish layoff, recall and termination procedures which do not in practice favor a particular religious group;

6. Abolish all job reservations, apprenticeship restrictions and different employment criteria which discriminate on the basis of religion;

7. Develop training programs that will prepare substantial numbers of current employees from underrepresented religious groups for skilled jobs, including the expansion of existing programs and the creation of new programs to train, upgrade and improve the skills of workers from the underrepresented religious groups;

8. Establish procedures to assess, identify and actively recruit employees from underrepresented religious groups with potential for further advancement; and

9. Appoint a senior management staff member to oversee affirmative action efforts and develop a timetable to ensure their full implementation.

## ARTICLE II **ENFORCEMENT OF ARTICLE I**

The Contractor agrees that the covenants and representations in Article I above are material conditions to this Contract. In the event the contracting entity receives information that the Contractor who made the stipulation required by this section is in violation thereof, the

- 61 -

NYC005988
NYC005988

contracting entity shall review such information and give the Contractor an opportunity to respond. If the contracting entity finds that a violation has occurred, the entity shall have the right to declare the Contractor in default and/or terminate this Contract for cause and procure the supplies, services or work from another source in any manner the entity deems proper. In the event of such termination, the Contractor shall pay to the entity, or the entity in its sole discretion may withhold from any amounts otherwise payable to the Contractor, the difference between the Contract price for the uncompleted portion of this Contract and the cost to the contracting entity of completing performance of this Contract either itself or by engaging another Contractor or Contractors. In the case of a requirements contract, the Contractor shall be liable for such difference in price for the entire amount of supplies required by the contracting entity for the uncompleted term of the Contract. In the case of a construction contract, the contracting entity shall also have the right to hold the Contractor in partial or total default in accordance with the default provisions of the Contract, and/or may seek debarment or suspension of the Contractor. The rights and remedies of the entity hereunder shall be in addition to, and not in lieu of, any rights or remedies the entity has pursuant to this Contract or by operation of Law.

NYC005989
NYC005989

**APPENDIX 10**
**Investigation Clause**

1.      The parties to this agreement agree to cooperate fully and faithfully with any investigation, audit or inquiry relative to this agreement conducted by a State of New York (State) or City of New York (City) governmental agency or authority that is empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath, or conducted by the Inspector General of a governmental agency that is a party in interest to this agreement or when it is the subject of the investigation, audit or inquiry.

2.      A hearing shall be convened in accordance with section 3 below if:

(a)     any person who has been advised that his or her statement, and any information from such statement, will not be used against him or her in any subsequent criminal proceeding, refuses to testify concerning the award of, or performance under, this agreement, before a grand jury or other governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath; or

(b)     any person refuses to testify concerning the award of, or performance under, this agreement, for a reason other than the assertion of his or her privilege against self-incrimination in an investigation, audit or inquiry conducted by a City or State governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to take testimony under oath, or by the Inspector General of the governmental agency that is a party in interest in, and is seeking testimony.

3.      (a)     The commissioner or agency head whose agency is a party in interest to this agreement shall convene a hearing, upon not less than five (5) days' written notice to the parties involved to determine if any penalties should attach for the failure of a person to testify.

(b)     If any non-governmental party to the hearing requests an adjournment, the commissioner or agency head who convened the hearing may, upon granting the adjournment, suspend this agreement pending the final determination pursuant to section 5 below without the City incurring any penalty or damages for delay or otherwise.

4.      The penalties that may attach after a final determination by the commissioner or agency head may include but shall not exceed:

(a)     The disqualification for a period not to exceed five (5) years from the date of an adverse determination of any person, or any entity of which such person was a member at the time the testimony was sought, from submitting bids for, or transacting business with, or entering into or obtaining any contract, lease, permit or license with or from the City; and/or

(b)     The cancellation or termination of this City agreement, that the refusal to testify concerns and providing that it has not been assigned as permitted under this agreement, nor the proceeds of which pledged, to an unaffiliated and unrelated institutional lender for fair value prior to the issuance of the notice scheduling the hearing, without the City incurring any penalty or damages on account of such cancellation or termination; monies lawfully due for goods delivered, work done, rentals, or fees accrued prior to the cancellation or termination shall be paid by the City.

NYC005990
NYC005990

5.    The commissioner or agency head shall consider and address in reaching his or her determination and in assessing an appropriate penalty the factors in paragraphs (a) and (b) below.  He or she may also consider, if relevant and appropriate, the criteria established in paragraphs (c) and (d) below in addition to any other information that may be relevant and appropriate.

(a)    The parties' good faith endeavors or lack thereof to cooperate fully and faithfully with any governmental investigation or audit, including but not limited to the discipline, discharge, or disassociation of any person failing to testify, the production of accurate and complete books and records, and the forthcoming testimony of all other members, agents, assignees or fiduciaries whose testimony is sought.

(b)    The relationship of the person who refused to testify to any entity that is a party to the hearing, including, but not limited to, whether the person whose testimony is sought has an ownership interest in the entity and/or the degree of authority and responsibility the person has within the entity.

(c)    The nexus of the testimony sought to the subject entity and its contracts, leases, permits or licenses with the City.

(d)    The effect a penalty may have on an unaffiliated and unrelated party or entity that has significant interest in an entity subject to penalties under section 4 above, provided that the party or entity has given actual notice to the commissioner or agency head upon the acquisition of the interest, or at the hearing called for in section 3(a) above gives notice and proves that such interest was previously acquired.  Under either circumstance, the party or entity must present evidence at the hearing demonstrating the potential adverse impact a penalty will have on such person or entity.

6.    (a)    The term "license" or "permit" as used herein shall be defined as a license, permit, revocable consent, franchise or concession not granted as a matter of right.

(b)    The term "person" as used herein shall be defined as any natural person doing business alone or associated with another person or entity as a partner, director, officer, principal, or employee.

(c)    The term "entity" as used herein shall be defined as any firm, partnership, corporation, association, or person that receives monies, benefits, licenses, leases, or permits from or through the City or otherwise transacts business with the City.

(d)    The term "member" as used herein shall be defined as any person associated with another person or entity as a partner, director, officer, principal, or employee.

NYC005991

**APPENDIX 11**
**Proposer's Affidavit**

<u>**PROPOSER'S AFFIDAVIT**</u>

**REQUEST FOR PROPOSALS FOR A FRANCHISE TO INSTALL, OPERATE AND MAINTAIN BUS STOP SHELTERS, SELF-CLEANING AUTOMATIC PUBLIC TOILETS AND PUBLIC SERVICE STRUCTURES AND TO INSTALL AND MAINTAIN NEWSSTANDS IN THE BOROUGHS OF THE BRONX, BROOKLYN, MANHATTAN, QUEENS AND STATEN ISLAND**

**PIN # 84104MBAD689**

STATE OF NEW YORK   )
                      )   **ss.:**
COUNTY OF _____ )

_____, being duly sworn, deposes and says:

I am the _____ of _____ (Proposer Name) ("Proposer") and I am duly authorized to act on behalf of the Proposer.

I hereby agree that from the date of the issuance of the RFP, neither Proposer nor any of its Key People[2], or any consultant, agent or representative, lobbyist or lawyer on Proposer's behalf, will contact any employee in any City agency with respect to any aspect of this RFP, other than the official Department Contact as set forth in the RFP or any addenda thereto.

I further understand that a failure to comply with this Affidavit may include the rendering of the Proposer's proposal non-responsive and may result in the entry of an Advice of Caution in the City's VENDEX system.

**A false representation or violation of any of the above covenants made in connection with this Affidavit may bar Proposer and/or the undersigned officer from doing work for the City. In addition, such false representation or violation may subject**

---

[2] References to **Key People** throughout this Affidavit include, but are not limited to, proprietors, owners, partners, directors, officers; shareholders of five percent (5%) or more of Proposer's issued stock, including owners of other securities (e.g., stock options, warrants and rights, etc.) that can be converted to stock that, if exercised, would constitute five percent (5%) of the firm's issued stock; any group, individual and/or entity with the right to acquire ownership of an amount of Proposer's stock, pursuant to any stock option, arrangement, warrant, right, or otherwise, which if combined with the current holdings of such group, individual and/or entity, would constitute five percent (5%) or more of the outstanding stock; each manager or individual participating in overall policy-making or financial decisions for the firm; and each person in a position to control and/or direct the firm's overall operations.

NYC005992
NYC005992

**Proposer and the undersigned officer to criminal charges, including charges for violation of New York State Penal Law Sections 175.35 (Offering a False Statement for Filing) and 210.40 (Sworn False Statement) and/or Title 18 U.S.C. Sections 1001 (False or Fraudulent Statement) and 1341 (Mail Fraud).**

_____
Signature
Proposer Name


_____
Date


Sworn to before me this _____
day of _____, 20__


_____
Notary Public

NYC005993
NYC005993

Request for Proposals for a Coordinated Street Furniture Franchise

**Appendix 12**
**Newsstand Interior Design Criteria**

The following Newsstand criteria must be incorporated into proposed Newsstand designs. Proposers are encouraged to consultant with members of the Newsstand industry to gain further input and understanding of operational and functional needs of Newsstand operators.

1. Modular shelving, storage and display cases that can be adjusted by individual Newsstand operators to address business needs. Shelving, storage and display cases must reflect the range and variety of items operators are permitted to sell at Newsstands, including but not limited to newspapers, magazines, prepackaged food, cigarettes, film, batteries and beverages. Display cases must have appropriate options for self service and operator controlled product sales.

2. Space for standard cash box in a secure accessible location when Newsstand operator is conducting business.

3. Internal lighting that is operated by a wall switch.

4. Optional space to accommodate a commercial glass door refrigerator with a minimum width of 21" (unit provided by Newsstand operator).

5. A vent to allow circulation.

6. Optional space to accommodate a thru-wall 5,000 BTU air conditioner (unit provided by Newsstand operator).

7. Sufficient electrical outlets and amps to support appliances, including but not limited to lottery machine, refrigerator, air conditioner, and heater.

8. Sufficient counter and service hookups to accommodate Lotto machine if desired by operator.

NYC005994
NYC005994

Request for Proposals for a Coordinated Street Furniture Franchise

**Appendix 13**
**Newsrack Criteria**

§19-128.1 Newsracks. a. Definitions. For purposes of this section, the following terms shall have the following meanings:
1. "Newsrack" shall mean any self-service or coin-operated box, container or other dispenser installed, used or maintained for the display, sale or distribution of newspapers or other written matter to the general public.
2. "Person" shall mean a natural person, partnership, corporation, limited liability company or other association.
3. "Sidewalk" shall mean that portion of a street between the curb lines or the lateral lines of a roadway and the adjacent property lines, but not including the curb, intended for the use of pedestrians.
4. "Crosswalk" shall mean that part of a roadway, whether marked or unmarked, which is included within the extension of the sidewalk lines between opposite sides of the roadway at an intersection.
5. "Crosswalk area" shall mean that area of the sidewalk bounded by the extension of the lines of a crosswalk onto the sidewalk up to the building or property line.
6. "Corner area" shall mean that area of a sidewalk encompassed by the extension of the building lines to the curb on each corner.
7. "Board" shall mean the environmental control board of the city of New York.
8. "Close proximity" shall mean a distance adjacent to an area designed to facilitate safe ingress or egress that will reasonably permit and protect such safe ingress or egress.

b. Requirements. It shall be a violation for any person to place, install or maintain a newsrack on any sidewalk unless such newsrack is in compliance with the provisions of this section.
1. The maximum height of any newsrack containing a single publication shall be fifty inches. The maximum width of any such newsrack shall be twenty-four inches. The maximum depth of any such newsrack shall be twenty-four inches.
2. No newsrack shall be used for advertising or promotional purposes, other than announcing the name and/or website of the newspaper or other written matter offered for distribution in such newsrack.
3. Each newsrack used to sell newspapers or other written matter shall be equipped with a coin return mechanism in good working order so as to permit a person to secure a refund in the event that the newsrack malfunctions.
4. The owner or person in control of each newsrack shall affix his or her name, address, telephone number, and email address, if any, on the newsrack in a readily visible location. In no event shall a post office box be considered an acceptable address for purposes of this paragraph.
5. Subject to the limitations set forth in this section, newsracks shall be placed near a curb.
6. A newsrack shall not be placed, installed or maintained: (a) within fifteen feet of any fire hydrant; (b) in any driveway or within close proximity of any driveway; (c) in any curb cut designed to facilitate street access by disabled persons or within two feet of any such curb cut; (d) within close proximity of the entrance or exit of any railway station or subway station; (e) within any bus stop; (f) within a crosswalk area; (g) within a corner area or within five feet of any corner area; (h) on any surface where such installation or maintenance will cause damage to or will interfere with the use of any pipes, vault areas, telephone or electrical cables or other similar locations; (i) on any cellar door, grating, utility maintenance cover or other similar locations; (j) on, in or over any part of the roadway of any public street; (k) unless eight feet of

- 68 -

NYC005995
NYC005995

sidewalk width is preserved for unobstructed pedestrian passage; (l) in any park or on any sidewalk immediately contiguous to a park where such sidewalk is an integral part of the park design, such as the sidewalks surrounding Central Park or Prospect Park; (m) on any area of lawn, flowers, shrubs, trees or other landscaping or in such a manner that use of the newsrack would cause damage to such landscaping; or (n) where such placement, installation or maintenance endangers the safety of persons or property. Any limitation on the placement or installation of newsracks pursuant to this paragraph shall be no more restrictive than necessary to ensure the safe and unobstructed flow of pedestrian and vehicular traffic, and otherwise to assure the safety of persons and property.

7. Every newsrack shall be placed or installed in a manner that will ensure that such newsrack cannot be tipped over.

c. Notification to city of location of newsrack. 1. Where a newsrack has been placed or installed on a sidewalk before the effective date of this section, the owner or person in control of such newsrack shall, within sixty days after such effective date, submit to the commissioner a form identifying: (i) the address of such newsrack; (ii) the name of the newspaper(s) or written matter to be offered for distribution in such newsrack; and (iii) the name, address, telephone number, and email address of the owner or person in control of such newsracks; and representing that such newsracks comply with the provisions of this section.

2. Subsequent to the initial notification requirements set forth in paragraph 1 of this subdivision, the owner or person in control of any newsrack shall submit the information set forth in paragraph one of this subdivision four times a year to the commissioner in accordance with a quarterly notification schedule to be established by the commissioner.

3. Notification to the city, as required by paragraphs 1 and 2 of this subdivision, may be submitted to the department electronically.

d. Indemnification and insurance. 1. Each person who owns or controls a newsrack placed or installed on any sidewalk shall indemnify and hold the city harmless from any and all losses, costs, damages, expenses, claims, judgments or liabilities that the city may incur by reason of the placement, installation or maintenance of such newsrack, except to the extent such damage results from the negligence or intentional act of the city.

2. Each person who owns or controls a newsrack on any sidewalk shall maintain a general liability insurance policy naming the city of New York, and its departments, boards, officers, employees and agents as additional insureds for the specific purpose of indemnifying and holding harmless those additional insureds from and against any and all losses, costs, damages, expenses, claims, judgments or liabilities that result from or arise out of the placement, installation and/or the maintenance of any newsrack. The minimum limits of such insurance coverage shall be no less than three hundred thousand dollars combined single limit for bodily injury, including death, and property damage, except that any person who maintains an average of one hundred or more newsracks at any one time shall maintain such minimum insurance coverage of one million dollars. An insurance certificate demonstrating compliance with the requirements of this subdivision shall be submitted annually by December 31st to the commissioner by the person who owns or controls such insured newsracks. Should said policy be called upon to satisfy any liability for damages covered by said policy, the policy must be of such a nature that the original amount of coverage is restored after any payment of damages under the policy. Failure to maintain a satisfactory insurance policy pursuant to this subdivision, or failure to submit an annual insurance certificate to the commissioner pursuant to this subdivision, shall be deemed a violation of this section subject to subdivision f of this section.

NYC005996
NYC005996

e. Maintenance, continuous use, repair and removal. 1. Each newsrack shall be maintained in a clean and neat condition and shall be kept in good repair. Any person who owns or is in control of a newsrack shall be required to monitor each newsrack so that it is kept clean and free of graffiti and other unauthorized writing, painting, drawing, or other markings or inscriptions and is kept in good repair. Such person shall also use best efforts to ensure that each newsrack under his or her ownership or control is not used as a depository for the placement of refuse and shall be required to remove any refuse placed within such newsrack within twenty-four hours of being made aware of such condition.

2. In no event shall the owner or person in control of a newsrack fail to keep such newsrack supplied with written matter for a period of more than seven consecutive days without securing the door so as to prevent the deposit of refuse therein. In no event shall such newsrack remain empty for a period of more than twenty-one consecutive days.

3. Any newsrack that has been damaged or vandalized shall be repaired, replaced or removed by the owner or person in control of such newsrack within ten days of receipt of notice of such damage or vandalism. If such newsrack has been damaged or vandalized so as to constitute a danger to persons or property, it shall be made safe within a reasonable time following notice of such condition.

4. Any damage to city property resulting from the placement, installation, maintenance or removal of a newsrack shall be repaired promptly by the owner or person in control of such newsrack. If a newsrack is removed from its location on a sidewalk, the owner or person in control of such newsrack shall be responsible for restoring the sidewalk and any other affected city property to the condition existing prior to installation of that newsrack.

f. Enforcement. 1. (a) Whenever any newsrack is found to be in violation of this section, the commissioner shall issue a notice of correction by affixing it to such newsrack specifying the date and nature of the violation and shall send written notification, by regular mail, to the owner or person in control of the newsrack. Such person shall within seven business days from the date of receipt of notification via regular mail cause the violation to be corrected.

(b) If an owner or other person in control of a newsrack fails to comply with a notice of correction issued pursuant to subparagraph a of this subdivision or an order by the commissioner to remove served pursuant to paragraph three of this subdivision, a notice of violation returnable to the board shall be served on such owner or person in control of such newsrack. If the return date of the notice of violation is more than five business days after the service of such notice, the board shall, upon the request of the respondent, in person at the office of the board, provide a hearing on such violation prior to such return date and no later than five business days after the date of such request. At the time set for such hearing, or at the date to which such hearing is continued, the board shall receive all evidence relevant to the occurrence or non-occurrence of the specified violation(s), the compliance or noncompliance with any of the provisions of this section, and any other relevant information. Such hearing need not be conducted according to technical rules relating to evidence and witnesses. Oral evidence shall be taken only on oath or affirmation. Within five business days after the conclusion of the hearing, the board shall render a decision, based upon the facts adduced at said hearing, whether the newsrack violates this section. The decision shall be in writing and shall contain findings of fact and a determination of the issues presented. The board shall send to the owner or person in control of the newsrack by regular mail, a copy of its decision and order.

2. If the board renders a decision upholding the finding of a violation against the respondent upon default or after a hearing held pursuant to paragraph one of this subdivision, and the violation is not remedied within seven days of receipt of the decision of the board, the commissioner or his or her designee is authorized to provide for the removal of such newsrack

NYC005997
NYC005997

and any contents thereof to a place of safety. If such newsrack and any contents thereof are not claimed within thirty days after their removal by a person entitled to their return, they shall be deemed to be abandoned and may be either sold at a public auction after having been advertised in the City Record, the proceeds thereof being paid into the general fund, used or converted for use by the department or another city agency, or otherwise disposed of, and the owner or person in control shall be liable to the City for the costs of removal and storage and shall be subject to a civil penalty pursuant to paragraph five of subdivision f of this section. Newsracks and the contents thereof that are removed pursuant to this subparagraph shall be released to the owner or other person lawfully entitled to possession upon payment of the costs for removal and storage and any civil penalty or, if an action or proceeding concerning the violation is pending, upon the posting of a bond or other form of security acceptable to the department in an amount that will secure the payment of such costs and any penalty that may be imposed hereunder.

3. The commissioner may, upon notice, serve an order upon the owner or other person in control of a newsrack requiring such person to remove or cause to be removed such newsrack within seven business days of the issuance of such order where such removal is required because the site or location at which such newsrack is placed is used or is to be used for public utility purposes, public transportation, or public safety purposes, or when such newsrack unreasonably interferes with construction activities in nearby or adjacent buildings, or if removal is required in connection with a street widening or other capital project or improvement. If such person does not remove such newsrack within seven business days of the issuance of such order, the provisions contained in subparagraph b of paragraph one of this subdivision and paragraph two of this subdivision regarding issuance of a notice of violation and alternatives for removal, storage, abandonment, disposal, and release, shall apply.

4. Notwithstanding any other provision of law to the contrary, if a newsrack has been deemed to have been abandoned in accordance with this paragraph, the commissioner, his or her designee, an authorized officer or employee of any city agency or a police officer is authorized to provide for the removal of such newsrack and may either be sold at public auction after having been advertised in the City Record, the proceeds thereof being paid into the general fund, used or converted for use by the department or another city agency, or otherwise disposed of.

A newsrack shall be deemed to have been abandoned for purposes of this paragraph if the name, address or other identifying material of the owner or other person in control of such newsrack is not affixed to such newsrack as required by paragraph four of subdivision b of this section.

5. (a) Where emergency circumstances exist and the commissioner or his or her designee gives notice to the owner or other person in control of a newsrack to remove such newsrack, such person shall comply with such notice. For the purposes of this paragraph, emergency circumstances shall mean circumstances which present an imminent threat to public health or safety.

(b) If any owner or other person in control of a newsrack does not remove such newsrack when directed to do so pursuant to the provisions of subparagraph a of paragraph five of this subdivision, or if circumstances are such that public safety requires the immediate removal of a newsrack and it is not reasonable to give the owner or other person in control of such newsrack notice prior to removal, the commissioner or his or her designee may provide for the removal of such newsrack to a place of safety. Unless an administrative proceeding brought pursuant to subparagraph c of paragraph five of this subdivision has terminated in favor of such owner or other person in control of such newsrack, such owner or other person in control of such newsrack may be charged with the reasonable costs of removal and storage payable prior to the release of such newsrack and the contents thereof.

- 71 -

NYC005998
NYC005998

Request for Proposals for a Coordinated Street Furniture Franchise

(c) If an owner or other person in control of a newsrack fails to comply with a notice issued pursuant to subparagraph a of this paragraph to remove such newsrack, a notice of violation returnable to the board shall be served on such owner or person in control of such newsrack. If the newsrack has been removed by the city pursuant to subparagraph b of this paragraph, such notice of violation shall be served immediately after removal, and, if the return date of the notice of violation is more than five business days after the service of such notice, the board shall, upon the request of the respondent, in person at the office of the board, provide a hearing on such violation prior to such return date and no later than five business days after the date of such request. The hearing shall take place under the provisions set forth in subparagraph b of paragraph one of this subdivision and a decision shall be rendered by the board within five business days after the conclusion of the hearing. If a decision is rendered at such hearing that emergency circumstances did not exist, such newsrack shall be returned within ten days to the location from which it was removed by the commissioner or his or her designee. If a decision is rendered against the respondent upon default or after a hearing that such emergency circumstances existed, such newsrack and the contents thereof shall be released to the owner or other person lawfully entitled to possession  If, after a board decision that removal was proper, such newsrack and any contents thereof are not claimed within thirty days after the date of removal by a person entitled to their return, such newsrack and any contents thereof shall be deemed abandoned and may be either sold at a public auction after having been advertised in the City Record, the proceeds thereof being paid into the general fund, used or converted for use by the department or another city agency, or otherwise disposed of.

6. Any owner or person in control of a newsrack found to be in violation of any provision of this section shall, after a board decision has been issued upon default or after a hearing, be subject to a civil penalty in the amount of no less than one hundred dollars and no more than five hundred dollars for each violation.

7. The commissioner, shall remove or cause to be removed from any sidewalk for a period of three consecutive months, every newsrack and the contents thereof under the ownership or control of any person who repeatedly violates any provision or provisions of this subdivision. For purposes of this paragraph, a person shall be deemed to have repeatedly violated this section if such person has been determined by the board, upon default or after a hearing, to have violated the provisions of this section ten or more times within any-six month period and that person has failed to pay three or more civil penalties imposed during that same time period. The department shall maintain a record of all persons who repeatedly violate any provision or provisions of this subdivision. In the event that the commissioner removes or causes to be removed all newsracks and the contents thereof under the ownership or control of any person based upon this paragraph, such person shall be permitted to replace all such newsracks at the locations from which they were removed upon payment in full of all outstanding civil penalties imposed for violations of this section and the reasonable costs of removal and storage, provided that such newsracks meet the requirements of this section. If any newsracks or contents thereof removed pursuant to this paragraph are not claimed within thirty days after the expiration of the three-month removal period, such newsracks or the contents thereof shall be deemed abandoned and may be either sold at public auction after having been advertised in the City Record, the proceeds thereof being paid into the general fund, used or converted for use by the department or another city agency or otherwise disposed of.

8. In giving any notice of correction or serving any commissioners order required under this section, except as otherwise provided by law, the commissioner may rely on the validity of any address (a) posted on the newsrack pursuant to paragraph four of subdivision b of this section as the address of the owner or person in control of the newsrack, or (b) submitted to the department

NYC005999

pursuant to subdivision c of this section, and shall provide such notice by regular mail. If the owner of a newsrack or person in control of a newsrack shall have failed to comply with paragraph four of subdivision b or with subdivision c of this section, the commissioner shall make reasonable efforts to ascertain the identity and address of the owner or person in control of such newsrack for the purpose of giving any required notice, and having done so, may take action as if any required notice had been given.

9. Nothing in this section shall preclude the immediate removal of a newsrack when otherwise authorized by law.

g. Severability. If any subdivision, paragraph, subparagraph, sentence or clause of this section is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this section.

## Section 2-08
## Newsracks

(a)     **Definitions.** For purposes of this section, the following terms shall have the following meanings:

(1)     **Newsrack.** "Newsrack" shall mean any self-service or coin-operated box, container or other dispenser installed, used or maintained for the display, sale or distribution of newspapers or other written matter to the general public.

(2)     **Person.** "Person" shall mean a natural person, partnership, corporation, limited liability company or other association.

(3)     **Sidewalk.** "Sidewalk" shall mean that portion of a street between the curb lines or the lateral lines of a roadway and the adjacent property lines, but not including the curb, intended for the use of pedestrians.

(4)     **Crosswalk.** "Crosswalk" shall mean that part of a roadway, whether marked or unmarked, which is included within the extension of the sidewalk lines between opposite sides of the roadway at an intersection.

(5)     **Crosswalk area.** "Crosswalk area" shall mean that area of the sidewalk bounded by the extension of the lines of a crosswalk onto the sidewalk up to the building or property line.

(6)     **Corner area.** "Corner area" shall mean that area of a sidewalk encompassed by the extension of the building lines to the curb on each corner.

(7)     **Board.** "Board" shall mean the environmental control board of the city of New York.

(8)     **Multiple-vending newsrack.** A newsrack designed to hold two or more different publications.

(b)     **Placement.**

NYC006000
NYC006000

**(1)    Manner.**

(i)    Newsracks shall be weighted down on all sidewalks in such a way as to insure that the newsrack cannot be tipped over.

(ii)    Newsracks shall not be bolted to the sidewalk, except that multiple-vending newsracks may be bolted pursuant to a permit from the Department, except as provided in paragraph 2 of this subdivision b.

(iii)    A newsrack may not be chained to property owned or maintained by the city, except that newsracks may be chained to lampposts (except for decorative lampposts).   A newsrack so chained must not be in an unlawful location as specified in subdivision (c) of this section.   To the extent an owner or other person in control of a newsrack seeks to chain such newsrack to property not owned or maintained by the city, the consent of the owner of or person responsible for such property is required.   In all cases where the use of chains to secure newsracks is permitted, such chains shall be made of galvanized steel with a plastic or rubber protective coating, at least 0.14 inches thick, and shall allow a distance of no more than eight (8) inches between the newsrack and the street furniture to which it is chained.

**(2)    Distinctive sidewalks.**   Multiple-vending newsracks may be bolted to sidewalks comprised of distinctive material, including, but not limited to, granite, terrazzo or bluestone, pursuant to a permit from the Department and provided that the written permission of the property owner or other entity that installed the distinctive sidewalk is obtained in advance of such bolting.

**(3)    Sidewalk repair and restoration.**   An owner or other person in control of a newsrack shall be responsible for any damage caused or repairs necessitated by the installation, presence or maintenance of such newsrack.   Such owner or other person also shall be responsible for any damage caused or repairs necessitated by the removal of a newsrack by either such owner or other person or by an authorized officer or employee of the Department or of any city agency who is designated by the Commissioner, or by a police officer.   Such repairs shall be made promptly and in accordance with the Department's specifications.

**(4)    Notification to the Department of location of newsracks.**   Where a newsrack has been placed or installed on a sidewalk before the effective date of section 19-128.1 of the New York City Administrative Code, the owner or other person in control of a newsrack shall, within sixty (60) days after the effective date of section 19-128.1 of the New York City Administrative Code, notify the Department by facsimile, electronically or by other means as directed by the Commissioner and on a form approved or provided by the Commissioner, of

(i)    the location of such newsrack;

NYC006001
NYC006001

Request for Proposals for a Coordinated Street Furniture Franchise

(ii)     the name of the newspaper(s) or written matter to be offered for distribution in such newsrack; and

(iii)    the name, address, telephone number, and email address of the owner or person in control of such newsracks;

and shall represent that such newsracks comply with the provisions of this section and section 19-128.1 of the New York City Administrative Code. Subsequent to the initial notification, the owner or person in control of a newsrack shall submit the above information to the Department on March 30, June 30, September 30 and December 30 of each year. An owner or other person in control of a newsrack placed or installed on a sidewalk after the effective date of section 19-128.1 of the New York City Administrative Code shall, within sixty (60) days after the effective date of section 19-128.1 of the New York City Administrative Code or within ten (10) days of the installation of any such newsrack, whichever is later, provide to the Department the information required above and the indemnification notification and insurance certification required pursuant to subdivision f of this section. Subsequent notification shall be made on a quarterly basis as provided above.

**(c)     Unlawful locations.** No owner or person in control of a newsrack shall install, use or maintain any newsrack in any of the following locations:

**(1)**     within fifteen (15) feet of any fire hydrant;

**(2)**     in any driveway or within five (5) feet of any driveway;

**(3)**     in any curb cut designed to facilitate street access by disabled persons or within two feet of any such curb cut;

**(4)**     within fifteen (15) feet of the entrance or exit of any railway station or subway station, except that a newsrack that otherwise complies with this subdivision may be placed against the rear of the station entrance or exit, but not against the sides;

**(5)**     within any bus stop;

**(6)**     within a crosswalk area;

**(7)**     within a corner area or within five (5) feet of any corner area;

**(8)**     on any surface where such installation or maintenance will cause damage to or interference with the use of any pipes, vault areas, telephone or electrical cables or other similar locations;

**(9)**     on any cellar door, grating, utility maintenance cover or other similar locations;

**(10)**     on, in or over any part of the roadway of any public street;

**(11)**     unless eight (8) feet of sidewalk width is preserved for unobstructed pedestrian passage;

**(12)**     in any park or on any sidewalk immediately contiguous to a park where such sidewalk is an integral part of the park design;

**(13)**     on any area of lawn, flowers, shrubs, trees or other landscaping or in such a manner that use of the newsrack would cause damage to such landscaping;

**(14)**     where such placement, installation or maintenance endangers the safety of persons or property;

**(15)**     at any distance less than eighteen (18) inches or more than twenty-four (24) inches from the face of the curb, measured to the side of the newsrack closest to the curb (This paragraph shall not apply to a newsrack placed against the rear of the entrance or exit of a subway or railway as provided in paragraph 4, above.);

NYC006002
NYC006002

Request for Proposals for a Coordinated Street Furniture Franchise

**(16)**    within five (5) feet of a canopy; and

**(17)**    within fifteen (15) feet of a sidewalk newsstand.

**(d)**    **Size, shape and appearance.**

**(1)**    **Dimensions.**  No newsrack may be higher than fifty (50) inches, wider than twenty-four (24) inches or deeper than twenty-four (24) inches.  Notwithstanding the above, no multiple-vending newsrack shall be higher than sixty (60) inches, wider than ninety (90) inches or deeper than thirty-six (36) inches.

**(2)**    **Identifying information required.**  The owner or person in control of each newsrack shall affix his, her or its name, address, telephone number and email address, if any, on the newsrack in a readily visible location.  In no event shall a post office box be considered an acceptable address for purposes of this paragraph.

**(3)**    **Advertisements prohibited.**  The surfaces of the newsrack shall not include any advertisement, whether painted, posted, or otherwise affixed thereto, or be used for promotional purposes, except for announcing the name and/or website of the newspaper or other written matter offered for distribution in such newsrack.

**(4)**    **Electricity.**  No electricity shall be run into a newsrack nor shall any connection for electrical purposes be installed in or on a newsrack.

**(e)**    **Maintenance.**  The owner or person in control of a newsrack shall be responsible for the following:

**(1)**    **Cleaning.**  All newsracks shall be maintained in a clean and neat condition and shall be kept in good repair.

**(2)**    **Painting.**  All painted newsracks shall be repainted as needed.

**(3)**    **Graffiti.**  All surfaces of newsracks shall be maintained free of graffiti and other unauthorized writing, painting, drawing or other markings or inscriptions, including, but not limited to, stickers and flyers.

**(4)**    **Refuse.**  No refuse shall accumulate in a newsrack nor shall any newsrack deteriorate into an unsanitary condition.  The owner or person in control of a newsrack shall remove refuse within twenty-four (24) hours of being made aware of the condition.

**(5)**    **Damage.**  A damaged or vandalized newsrack shall be repaired, replaced or removed within ten (10) days of receipt of notice of the damage or vandalism, except that if such damaged newsrack poses a danger to persons or property, it shall be made safe within twenty-four (24) hours following notice.

**(6)**    **Continuous use.**  In no event shall the owner or person in control of a newsrack fail to keep such newsrack supplied with written matter for a period of more than seven (7) consecutive days without securing the door so as to prevent the deposit of refuse

NYC006003
NYC006003

therein. Notwithstanding the securing of the door, in no event shall such newsrack remain empty for a total period of more than twenty-one (21) consecutive days. Any newsrack empty for longer than such period shall be deemed abandoned.

**(f)      Indemnification and insurance.**

**(1)      Indemnification.**  The owner or person in control of a newsrack placed or installed on any sidewalk shall indemnify and hold the City harmless from any and all losses, costs, damages, expenses, claims, judgments or liabilities that the City may incur by reason of the placement, installation or maintenance of such newsrack, except to the extent such damage results from the negligence or intentional act of the city. In addition to the insurance certificate submitted pursuant to paragraph 3 of this subdivision f, the owner or person in control of a newsrack shall submit by regular mail an indemnification notification on a form provided by the Commissioner.

**(2)      Insurance.**  The owner or person in control of a newsrack shall procure and maintain, for as long as the newsrack remains on City property, a commercial general liability insurance policy from an insurer licensed to do business in the State of New York in his or her or its name, which names the City of New York, its departments, boards, officers, employees and agents as additional insureds for the specific purpose of indemnifying and holding harmless those additional insureds from and against any and losses, costs, damages, expenses, claims, judgments or liabilities that result from or arise out of the placement, installation and/or maintenance of such newsrack. The minimum limits of such insurance coverage shall be no less than $300,000 combined single limit for bodily injury, including death, and property damage, dedicated exclusively to the liabilities relating to such newsracks, except that any person who maintains an average of 100 or more newsracks at any one time shall maintain a minimum insurance coverage of $1 million dedicated exclusively to such liabilities. All insurance policies shall be endorsed to provide that (a) the City shall have no obligation whatever to provide notice to the insurance company of any occurrence or claim, and that the City's notice to the insurance company of the commencement of a lawsuit against the City, if required, shall be deemed timely if received within 180 days thereof; and (b) notice by any other insured of the commencement of any lawsuit against such insured shall constitute notice on behalf of the City as well.

**(3)      Insurance certificate.**  An insurance certificate shall be submitted to the Commissioner by the owner or person in control of a newsrack within sixty (60) days after the effective date of section 19-128.1 of the New York City Administrative Code, and, thereafter, by December 31 of each year or by the expiration date of the policy, whichever is earlier, certifying that the insurance required by paragraph 2 of this subdivision f is in place for all newsracks owned by such person. When a newsrack that is not covered by such insurance is placed or installed on a sidewalk after the effective date of such section 19-128.1, the owner or person in control of such newsrack shall, within sixty (60) days after the effective date of section 19-128.1 of the New York City Administrative Code or within ten (10) days of the installation of such newsrack, whichever is later, provide to the Department the insurance certification required pursuant to this subdivision f. Acceptance by the Commissioner of any insurance certificate, whether or not conforming to the requirements of paragraph 2 of this

NYC006004
NYC006004

Request for Proposals for a Coordinated Street Furniture Franchise

subdivision f, shall not relieve the owner or person in control of a newsrack of his, her or its obligation to actually provide such insurance. The certificate shall provide that no cancellation, termination or alteration shall be made without thirty (30) days' advance written notice to the Department.

**(g)    Violations and removal.**

Violations of the provisions of section 19-128.1 of the Administrative Code or these rules shall be enforced and the newsracks shall be removed by the Commissioner pursuant to provisions of subdivision f of such section 19-128.1 and any other applicable provisions of law. The City shall charge the owner or person in control of a newsrack for the cost of removal and storage. The charge for removal shall be $50 per newsrack. The storage charge shall be $1.40 per newsrack per day.

**(h)    Notices.**  All notices required to be served on the owner or person in control of a newsrack pursuant to these rules or section 19-128.1 of the Administrative Code shall be served upon the address provided pursuant to the registration provisions in these rules. In the absence of the required registration information, service shall be made on the entity identified on the newsrack or in the publication found in the newsrack.

- 78 -

NYC006005

NYC006005

**New York City
Department of Transportation**

40 Worth Street
New York, New York 10013
Tel: 212/676-0868
Fax: 212/442-7007

**Iris Weinshall, Commissioner**

Web: www.nyc.gov/dot

**Request for Proposals for a
Coordinated Street Furniture Franchise**

PIN Number: #84104MBAD689
Date of Issue: March 26, 2004

**Addendum I**
Date of Issue: June 11, 2004

Addendum I includes substantive and material changes to the Coordinated Street Furniture Request for Proposal (PIN #: 84104MBAD689). Addendum I amendments are binding changes to the RFP. All proposals must comply with these amendments. Included in Addendum I is a new Affirmation form (Appendix 6R1). Changes to this form are underlined. The amended form, as included in Addendum I, is the only affirmation form that is acceptable from respondents.

1.  **Section I, Summary (p.2)**
    **Delete final sentence of section and replace with the following** (new language is underlined):

    Proposals are due on <u>Thursday, August 5, 2004</u>, at 2:00PM, and must be submitted in accordance with the Proposal Package Submission Requirements contained herein.

2.  **Section II, A, 5: <u>Security Fund</u>, (p. 7)**
    **Delete first sentence and replace with the following** (new language is underlined):

    Prior to the execution of the Franchise Contract, the Franchisee will be required to deposit with the New York City Comptroller, an amount to be determined by the City, which will be not less than five million dollars ($5,000,000) <u>in a combination of cash and bonds as shall be determined by the parties</u>, sufficient to ensure the faithful performance by the Franchisee of all conditions, provisions, and requirements of the Franchise Contract.

3.  **Section III, B, 1: <u>Delivery</u> (p. 22)**
    **Delete first sentence and replace with the following** (new language is underlined):

    Proposal packages must be received by the Department's Contracts Division, 40 Worth Street, Room 824A, on or before <u>August 5, 2004</u> at 2:00PM.

NYC006006
NYC006006

NYCDOT Coordinated Street Furniture Franchise
Addendum I                                                            June 11, 2004

4.    **Section III, B, 1: <u>Delivery</u> (p.22)**
      **Add the following language after Sec. III, B. 1: Delivery**

      **B. 1. 1    Model Packaging**
      All models should be built to the scale of 1 inch equals 1 foot (1:12) as stipulated in the
      RFP on page 20. The models should be delivered in opaque packaging with the proposer's
      name clearly labeled on the outside. Models will be unpacked by Agency personnel so
      models should be fully assembled when delivered.

      **B. 1. 2    Scheduling Appointments**
      Scale models will be delivered by appointment. Proposers will have a one week window to
      schedule appointments. To schedule delivery appointments proposers should contact Paul
      Stanton by telephone (212-442-7749) or e-mail (pstanton@dot.nyc.gov) between Monday,
      July 19, and Thursday, July 22, 2004, during regular business hours.

      **B. 1. 3    Delivery**
      Deliveries will be scheduled between Monday, August 9, and Thursday, August 12, 2004.
      Deliveries will be made to NYCDOT, 59 Maiden Lane, New York, NY (between Nassau
      and William Streets). A representative from NYCDOT will meet delivery crews at the
      scheduled time in the lobby of 59 Maiden Lane. Delivery crews should have proper
      identification. Delivery crews will be escorted to the 34th Floor by the NYCDOT
      representative to unload their parcels in a secure location. Deliveries may be required to
      be made at the buildings loading dock. In that event the location at 59 Maiden Lane for
      meeting the NYCDOT representative will be finalized at the time the appointment is made.

      The Department strongly recommends delivery services allot enough time to arrive prior to
      your scheduled appointment. The Department cannot guarantee another delivery
      appointment if the originally scheduled appointment is missed.

5.    **Section III, B, 2: <u>Copies and Format</u> (p. 22)**
      **Add the following language after the first paragraph:**

      The "required city documents" as required above shall be submitted as a separate
      package from the proposals and should be clearly labeled.

6.    **Section III, B, 4: Labeling (pp. 22-23)**

      After Proposal Due Date and Time, delete June 30, 2004 at 2:00PM and replace with
      <u>August 5, 2004 at 2:00PM</u>.

NYC006007
NYC006007

7.    **Section III, C, 2: <u>Evaluation Procedures,</u> (p. 24)**
**Add the following language after RFP point chart:**

A total of five preference points are available in the Request for Proposal Evaluation. Preference points are allotted as follows:

| | |
|---|---|
| Manufactured and assembled in the USA, not in NYC (in accordance with Section III, A, 3.1 of the RFP, p. 19) | 2 |
| Manufactured and assembled in NYC (in accordance with Section III, A, 3.1 of the RFP, p. 19) | 2 |
| Greater compensation to the City in the initial period, provided total proposed compensation is determined to be in best financial interest to the City (in accordance with Section III, C, 3.4 of the RFP, p.26) | 1 |

8.    **Section III, C, 2.2: Phase 2:  <u>Assessment of Proposer's Ability to Provide Required Service,</u> (p. 24)**
**Delete paragraph 2.2 and replace with new paragraph 2.2R1 (new language is underlined):**

Each proposal that is deemed responsive by the Auditor General will be forwarded to the Evaluation Committee for its review. The Committee will examine and evaluate each proposers business organization, financial fitness, experience with street furniture and the sale & maintenance of outdoor advertising in urban environments. Each proposer will receive a numerical score for this phase. <u>Each proposal receiving a score of 15 or better out of a possible 25 shall advance to the next phase of evaluation. In the event that the total number of proposers achieving a score of 15 is less than three, the next highest proposals will be added in rank order to achieve a minimum pool of three proposals to advance to the next phase of evaluation.</u>

9.    **Appendix 6: Affirmation (p.56)**
**Delete Appendix 6 and replace with new Appendix 6R1 (attached)**

NYC006008
NYC006008



**New York City**
**Department of Transportation**

40 Worth Street
New York, New York 10013
Tel: 212/676-0868
Fax: 212/442-7007

Iris Weinshall, Commissioner

Web: www.nyc.gov/dot

**Request for Proposals for a**
**Coordinated Street Furniture Franchise**

PIN Number: #84104MBAD689
Date of Issue: March 26, 2004

**Addendum II**
Date of Issue: July 15, 2004

Addendum II includes substantive and material changes to the Coordinated Street Furniture Request for Proposal (PIN #: 84104MBAD689). Addendum II amendments are binding changes to the RFP. All proposals must comply with these amendments.

1.    **Section I, Summary (p.2)**
      **Delete final sentence of section and replace with the following** (new language is underlined):

      Proposals are due on <u>Tuesday, September 14, 2004</u> at 2:00PM, and must be submitted in accordance with the Proposal Package Submission Requirements contained herein.

2.    **Section III, B, 1: <u>Delivery</u> (p. 22)**
      **Delete first sentence and replace with the following** (new language is underlined):

      Proposal packages must be received by the Department's Contracts Division, 40 Worth Street, Room 824A, on or before <u>Tuesday, September 14, 2004</u> at 2:00PM.

3.    **Section III, B, 4: Labeling (pp. 22-23)**

      After Proposal Due Date and Time, delete August 5, 2004 at 2:00PM and replace with <u>Tuesday, September 14, 2004</u> at 2:00PM.

4.    **Appendix 5, Table M: Summary and Cash Flow Analysis (p.54)**
      **Delete the second sentence and replace with the following** (new language is underlined):

      Table M, below, to be based on control of <u>77.5%</u> of the advertising space.

NYCDOT Coordinated Street Furniture Franchise RFP
Addendum II
July 15, 2004

NYC006009
NYC006009

**New York City**
**Department of Transportation**

40 Worth Street
New York, New York 10013
Tel:  212/676-0868
Fax: 212/442-7007

Iris Weinshall, Commissioner

Web: www.nyc.gov/dot

**Request for Proposals for a**
**Coordinated Street Furniture Franchise**

PIN Number:  #84104MBAD689
Date of Issue: March 26, 2004

**Addendum III**
Date of Issue: August 18, 2004

Addendum III includes substantive and material changes to the Coordinated Street Furniture Request for Proposal (PIN #: 84104MBAD689). Addendum III amendments are binding changes to the RFP. All proposals must comply with these amendments.

1.  **Section II, D. 2: <u>Newsstand Build-out</u> (p.12)**
    **Add the following language at the end of Section II, D. 2, following the fifth paragraph.**

    Section 241.1 of the Administrative Code provides that a newly licensed newsstand operator (defined as an operator who is issued a license after the effective date of the franchise agreement) shall reimburse the franchisee for the costs of construction and installation of a new newsstand. The reimbursement cost will be the lesser of:

    1) the unit cost per newsstand as stated in the franchise contract; or

    2) a standard cost. The standard cost of a newsstand will be $25,000 for new licenses issued through December 31, 2005, and the standard cost of any future newsstands will adjusted annually thereafter, beginning January 1, 2006, by the rate of inflation for the previous calendar year based upon the change in the Consumer Price Index Urban (CPIU) for the New York area.

    The franchisee will also be required under the franchise agreement to provide an amortization option to said operators. The amortization agreement shall be for a duration of no less than five years and the interest rate on the amortization agreement will be the prime rate plus one percent (1%).

NYC006010
NYC006010

2.    **Section III, B. 1: Delivery  (p. 22)**
      **Delete Sec. III, B. 1.2 and B. 1.3 and replace with the Sec. III, B. 1.2R and 1.3R (new
      language is underlined)**

      **B. 1. 2R    Scheduling Appointments**
      Scale models will be delivered by appointment. Proposers will have a one week window to
      schedule appointments. To schedule delivery appointments proposers should contact Paul
      Stanton by telephone (212-442-7749) or e-mail (pstanton@dot.nyc.gov) between Monday,
      August 30, and Thursday, September 2, 2004, between 10:00AM and 5:00PM.

      **B. 1. 3R    Delivery**
      Deliveries will be scheduled between Monday, September 20, and Friday, September 24,
      2004. Deliveries will be made to NYCDOT, 59 Maiden Lane, New York, NY (between
      Nassau and William Streets). A representative from NYCDOT will meet delivery crews at
      the scheduled time in the lobby of 59 Maiden Lane. Delivery crews should have proper
      identification. Delivery crews will be escorted to the 34th Floor by the NYCDOT
      representative to unload their parcels in a secure location. Deliveries may be required to
      be made at the buildings loading dock. In that event the location at 59 Maiden Lane for
      meeting the NYCDOT representative will be finalized at the time the appointment is made.

      The Department strongly recommends delivery services allot enough time to arrive prior to
      your scheduled appointment. The Department cannot guarantee another delivery
      appointment if the originally scheduled appointment is missed.

3.    **Appendix 13: Newsrack Criteria (p.68)**
      **Delete Appendix 13 and replace with new Appendix 13R (attached)**

NYC006011
NYC006011