The Company agrees that it is fully responsible under this Agreement for the acts and omissions of the subcontractors and of persons either directly or indirectly employed by them as it is for the acts and omissions of persons directly employed by it. The Company shall not in any way be relieved of any responsibility under this Agreement by any subcontract. All subcontracts submitted by the Company to the City for approval in accordance with this Section 11.6 shall be approved (or reasons for failure to approve shall be provided) as soon as reasonably practicable in view of the time sensitive nature of the obligations of the Company under this Agreement.

11.7.  Consent Not a Waiver.  The grant or waiver of any one or more consents under this Section 11 shall not render unnecessary any subsequent consent, nor shall the grant of any such consent constitute a waiver of any other rights of the City, as required in this Section 11.

## SECTION 12

## LIABILITY AND INSURANCE

12.1.  Liability and Indemnity.

12.1.1.  Company.  The Company shall indemnify, defend and hold the City, its officers, agents and employees (the "Indemnitees") harmless from any and all liabilities, suits, damages, claims and expenses (including, without limitation, reasonable attorneys' fees and disbursements) ("Damages") that may be imposed upon or asserted against any of the Indemnitees arising out of the Company's performance of, or its failure to perform, its obligations under this Agreement, including, but not limited to the design, installation, operation and maintenance of the System, or any part thereof, provided, however, that the foregoing liability and indemnity obligation of the Company pursuant to this Section 12.1.1 shall not apply to any Damages to the extent arising out of any willful misconduct or gross negligence of the City, its officers, employees, or agents.  This Section shall supersede the indemnification provisions of section 19-128.1 of the New York City Administrative Code or any Rules promulgated thereunder, with respect to multi-rack newsracks.  Insofar as the facts and law relating to any Damages would preclude the City from being completely indemnified by the Company, the City shall be partially indemnified by the Company to the fullest extent provided by law, except to the extent such Damages arise out of any willful misconduct or gross negligence of any Indemnitee.  This indemnification is independent of the Company's obligations to obtain insurance as provided under this agreement.

12.1.2.  City.  The Company will not be liable for any Damages to the extent arising from the gross negligence or willful misconduct of any Indemnitee.

12.1.3.  No Liability for Public Work, Etc.  The Indemnitees shall have no liability to the Company for any Damages as a result of or in connection with the installation, operation and maintenance, of any part of the System by or on behalf of the Company or the City in connection with any emergency, public work, public improvement, alteration of any municipal structure, any change in the grade or line of any Inalienable Property of the City, or the elimination, discontinuation, closing or demapping of any Inalienable Property of the City, unless and to the extent such Damages are due to the gross negligence or willful misconduct of

NYC007736
NYC007736

any Indemnitee. To the extent practicable under the circumstances, the Company shall be consulted prior to any such activity and shall be given the opportunity to perform such work itself, but the City shall have no liability to the Company, except as expressly set forth above, in the event it does not so consult the Company. All costs to install, operate and maintain the System or parts thereof, damaged or removed as a result of such activity, shall be borne by the Company; except to the extent such Damages arise out of any willful misconduct or gross negligence of the Indemnitees.

12.1.4. No Liability for Damages. None of the Indemnitees shall have any liability to the Company for any Damages as a result of the proper and lawful exercise of any right of the City pursuant to this Agreement or applicable law; provided, however, that the foregoing limitation on liability pursuant to this Section 12.1.4 shall not apply to any liabilities, suits, damages (other than special, incidental, consequential or punitive damages), penalties, claims, costs, and expenses to the extent arising out of any willful misconduct or gross negligence of the Indemnitees.

12.1.5. Defense of Claim, Etc. If any claim, action or proceeding is made or brought against any of the Indemnitees by reason of any event to which reference is made in Section 12.1.1 herein, then upon demand by City, the Company shall either resist, defend or satisfy such claim, action or proceeding in such Indemnitee's name, by the attorneys for or approved by the Company's insurance carrier (if the defense of such claim, action or proceeding is provided by the insurance carrier) or by the Company's attorneys. The foregoing notwithstanding, in the event an Indemnitee believes additional representation is needed, such Indemnitee may engage its own attorneys to assist such Indemnitee's defense of such claim, action or proceeding, as the case may be, at its sole cost and expense. The Indemnitees shall not settle any claim with respect to which the Company is required to indemnify the Indemnitees pursuant to Section 12.1.1 without the prior written consent of the Company, which consent shall not be unreasonably withheld, conditioned or delayed.

12.1.6. Intellectual Property Indemnification. The Company shall defend, indemnify and hold the City harmless from and against any and all Damages, to which it may be subject because of or related to any claim that the Plans and Specifications and/or the Preliminary Plans and Specifications, the Coordinated Franchise Structures, any intellectual property of the Company incorporated in the Ad-Bearing Street Furniture/ and/or Non-Ad-Bearing Street Furniture (to the extent such are designed during the Term of this Agreement) or Software infringes, dilutes, misappropriates, improperly discloses, or otherwise violates the copyright, patent, trademark, service mark, trade dress, rights of publicity, moral rights, trade secret, or any other intellectual property or proprietary right of any third party; provided, however, that the Company shall not be obligated to indemnify the City for any Damages to the extent such Damages arise out of the gross negligence or willful misconduct of the City or the failure of the City to comply with the terms of any license or sublicense to which the City is a party applicable to the Plans and Specifications, the Preliminary Plans and Specifications, the Coordinated Franchise Structures, the Ad-Bearing Street Furniture, the Non-Ad-Bearing Street Furniture or the Software. This indemnification is independent of the Company's obligations to obtain insurance as provided under this Agreement. Furthermore, the Company shall defend and settle at its sole expense all suits or proceedings brought against Company arising out of the foregoing. No such settlement, however, shall be made that prevents the City or the Company

NYC007737
NYC007737

from continuing to use the Plans and Specifications, the Preliminary Plans and Specifications (to the extent incorporated in the Plans and Specifications), the Coordinated Franchise Structures, or Software without the City's prior written consent, which consent shall not be unreasonably withheld or delayed.  In the event an injunction or order shall be obtained against the City's use of Plans and Specifications, the Preliminary Plans and Specifications (to the extent incorporated in the Plans and Specifications), the Coordinated Franchise Structures, or Software under this Agreement by reason of the allegations, or if in the Company's opinion the Plans and Specifications, and the Preliminary Plans and Specifications (to the extent incorporated in the Plans and Specifications), the Coordinated Franchise Structures, or Software is likely to become the subject of a claim of infringement or violation of a copyright, trade secret or other proprietary right of a third party, or if the City's ability to enjoy use of the Plans and Specifications, the Preliminary Plans and Specifications (to the extent incorporated in the Plans and Specifications), the Coordinated Franchise Structures, or Software has become materially disrupted by a claim of a third party, the Company shall at its expense, and at its option: (i) procure the right to allow the City to continue using the alleged infringing material; or (ii) modify the applicable portion(s) of the Plans and Specifications, the Preliminary Plans and Specifications (to the extent incorporated in the Plans and Specifications), the Coordinated Franchise Structures, or Software so that it becomes non-infringing, or replace the infringing materials or Software with non-infringing materials or Software, but only if the modification or replacement does not materially change the design of the affected Coordinated Franchise Structures; provided, however, that the Company shall not be obligated to take the actions described in clauses (i) and (ii) if the injunction, order or claim in question arises out of the gross negligence or willful misconduct of the City or the failure of the City to comply with the terms of any license or sublicense to which the City is a party applicable to the Plans and Specifications, the Preliminary Plans and Specifications , the Coordinated Franchise Structures, the Ad-Bearing Street Furniture, the Non-Ad-Bearing Street Furniture or the Software.  The modifications discussed in the previous sentence are subject to the City's prior written approval.  The obligations to indemnify pursuant to this Section 12.1.6 shall survive the expiration or termination of this Agreement.

12.1.7.   No Claims Against Officers, Employees, or Agents.  Company agrees not to make any claim against any officer or employee of the City or officer or employee of an agent of the City, in their individual capacity, for, or on account of, anything done or omitted in connection with this Agreement.  Nothing contained in this Agreement shall be construed to hold the City liable for any lost profits, or any consequential damages incurred by Company or any Person acting or claiming by, through or under Company.

12.2.   Insurance.

12.2.1.   Types of Insurance.  The Company shall continuously maintain one or more liability insurance policies meeting the requirements of this Section 12.2 throughout the Term and thereafter until completion of removal of the System, or any part thereof, on, over, or under the Inalienable Property of the City including all reasonably associated repair of the Inalienable Property of the City or any other property to the extent such removal and or restoration is required pursuant to this Agreement.  The Company has provided Proof of Insurance pursuant to Section 12.2.3(a) hereof, and shall effect and maintain the following types of insurance as indicated in Schedule E attached hereto (with the minimum limits and special conditions specified in Schedule E attached hereto).  Such insurance shall be issued by

NYC007738
NYC007738

companies that meet the standards of Section 12.2.2(a) hereof and shall be primary (and non-contributing) to any insurance or self-insurance maintained by the City.

(a)    The Company shall provide a Commercial General Liability Insurance policy covering the Company as Named Insured and the City as an Additional Insured. Coverage for the City as Additional Insured shall specifically include the City's officials, employees and agents, and shall be at least as broad as Insurance Services Office ("ISO") Form CG 2010 (11/85 ed.) (No later edition of ISO Form CG 2010, and no more limited form or endorsement, is acceptable.) This policy shall protect the City and the Company from claims for property damage and/or bodily injury, including death, which may arise from any of the operations under this Agreement. Coverage under this policy shall be at least as broad as that provided by ISO Form CG 0001 (1/96 ed.), must be "occurrence" based rather than "claims-made", and shall include, without limitation, the following types of coverage: Premises Operations, Premises and Completed Operations, Contractual Liability (including the tort liability of another assumed in a contract), Broad Form Property Damage, Medical Payments, Independent Contractors, Personal Injury (Contractual Exclusion deleted), Cross Liability, Explosion, Collapse and Underground Property, and Incidental Malpractice. If such insurance contains an aggregate limit, it shall apply separately to this Project.

The Commercial General Liability Insurance policy provided shall contain each of the following endorsements:

(i)    The City of New York together with its officials, employees and agents is an Additional Insured with coverage as broad as ISO Forms CG 2010 (11/85 ed.) and CG 0001 (1/96 ed.); and

(ii)    The Duties in the Event of Occurrence, Claim or Suit condition of the policy is amended per the following: if and insofar as knowledge of an "occurrence", "claim", or "suit" is relevant to the City of New York as Additional Insured under this policy, such knowledge by an agent, servant, official, or employee of the City of New York will not be considered knowledge on the part of the City of New York of the "occurrence", "claim", or "suit" unless the following position shall have received notice thereof from such agent, servant, official, or employee: Insurance Claims Specialist, Affirmative Litigation Division, New York City Law Department; and

(iii)    Any notice, demand or other writing by or on behalf of the Named Insured to the Insurance Company shall also be deemed to be a notice, demand, or other writing on behalf of the City as Additional Insured. Any response by the Insurance Company to such notice, demand or other writing shall be addressed to Named Insured and to the City at the following addresses: Insurance Unit, NYC Comptroller's Office, 1 Centre Street – Room 1222, New York, N.Y. 10007; and Insurance Claims Specialist, Affirmative Litigation Division, New York City Law Department, 100 Church Street, New York, NY 10007; and

(iv)    The limit of coverage under this policy applicable to the City as Additional Insured is equal to the limit of coverage applicable to the Named Insured.

NYC007739
NYC007739

(b)    The Company shall provide, and ensure that each subcontractor provides, Workers Compensation Insurance and Disability Benefits Insurance in accordance with the Laws of the State of New York on behalf of all employees providing services under this Agreement.

(c)    The Company shall provide, and ensure that each subcontractor provides, Employers Liability Insurance affording compensation due to bodily injury by accident or disease sustained by any employee arising out of and in the course of his/her employment under this Agreement.

(d)    The Company shall provide a Comprehensive Business Automobile Liability policy for liability arising out of any automobile including owned, non-owned, leased and hired automobiles to be used in connection with this Agreement (ISO Form CA0001, ed. 6/92, code 1 "any auto").

(e)    The Company shall provide a Professional Liability Insurance Policy covering Breach of Professional Duty, including actual or alleged negligent acts, errors or omissions committed by the Company, its agents or employees, arising out of the performance of professional services rendered to or for the City. The policy shall provide coverage for Bodily Injury, Property Damage and Personal Injury. If the Professional Liability Insurance Policy is written on a claims-made basis, such policy shall provide that the policy retroactive date coincides with or precedes the Company's initial services under this Agreement and shall continue until the expiration or termination of the Agreement. The policy must contain no less than a three-year extended reporting period for acts or omissions that occurred but were not reported during the policy period.

(f)    All insurers shall waive their rights of subrogation against the City, its officials, employees and agents.

(g)    The required insurance to be carried is not limited by any limitations expressed in the indemnification language in this Agreement or any limitation placed on indemnity in this Agreement given as a matter of law.

(h)    The Company shall provide such other types of insurance, at such minimum limits, as are specified in Schedule E attached hereto.

12.2.2.    General Requirements for Insurance Policies.

(a)    All required insurance policies shall be maintained with companies that may lawfully issue the required policy and have an A.M. Best rating of at least A- VII or a Standard and Poor's rating of at least AA, unless prior written approval is obtained from the Mayor's Office of Operations.

(b)    The Company shall be solely responsible for the payment of all premiums for all required policies and all deductibles and self-insured retentions to which such policies are subject, whether or not the City is an insured under the policy. Any self-insured retention must be reasonable and is subject to approval by the City.

NYC007740

NYC007740

(c)     The City's limits of coverage for all types of insurance required pursuant to Schedule E attached hereto shall be the greater of (i) the minimum limits set forth in such schedule or (ii) the limits provided to the Company as Named Insured under all primary, excess and umbrella policies of that type of coverage.

(d)     Except for insurance required pursuant to Sections 12.2.1(b) and 12.2.1(c) herein, all policies shall be endorsed to provide that the policy may not be cancelled, terminated, modified or changed unless 30 days prior written notice is sent by the Insurance Company to the Named Insured (or First Named Insured, as appropriate), the Commissioner, and to Comptroller, attn: Office of Contract Administration, Municipal Building, Room 1005, New York, New York 10007.

(e)     Within 15 days of receipt by the City of any notice as described in 12.2.2(d) hereof, the Company shall obtain and furnish to DOT, with a copy to the Comptroller, replacement insurance policies in a form acceptable to DOT and the Comptroller together with evidence demonstrating that the premiums for such insurance have been paid.

12.2.3.    Proof of Insurance.

(a)     The Company has, for each policy required under this Agreement, filed a Certificate of Insurance with the Commissioner pursuant to Section 12.2.6 hereof.

(b)     All Certificates of Insurance shall be in a form acceptable to the City and shall certify the issuance and effectiveness of the Types of Insurance specified in Schedule E, each with the specified Minimum Limits and Special Conditions.

(c)     Certificates of Insurance confirming renewals of, or changes to, insurance shall be submitted to the Commissioner not less than 30 Days prior to the expiration date of coverage of policies required under this Agreement.  Such Certificates of Insurance shall comply with the requirements of Sections 12.2.3(a) and 12.2.3(b) herein.

(d)     The Company shall be obligated to provide the City with a copy of any policy required by this Section 12 upon the demand for such policy by the Commissioner or the New York City Law Department.

12.2.4.    Operations of the Company.

(a)     Acceptance by the Commissioner of a certificate hereunder does not excuse the Company from securing a policy consistent with all provisions of this Section 12 or of any liability arising from its failure to do so.

(b)     The Company shall be responsible for providing continuous insurance coverage in the manner, form, and limits required by this Agreement and shall be authorized to perform Services only during the effective period of all required coverage.

(c)     In the event that any of the required insurance policies lapse, are revoked, suspended or otherwise terminated, for whatever cause, the Company shall immediately

-69-

NYC007741

NYC007741

stop all Services, and shall not recommence Services until authorized in writing to do so by the Commissioner. Notwithstanding the above, if any or all of the Services are being provided by a subcontractor that maintains insurance satisfactory to the City that names the City as additional insured, and such insurance is in full force and effect and remains in full force and effect during the period of the lapse, then the Company, acting through its subcontractor, may continue to provide such Services as directed by DOT.

(d)    The Company shall notify in writing the commercial general liability insurance carrier, and, where applicable, the worker's compensation and/or other insurance carrier, of any loss, damage, injury, or accident, and any claim or suit arising under this Agreement from the operations of the Company or its subcontractors, promptly, but not later than 20 days after such event. The Company's notice to the commercial general liability insurance carrier must expressly specify that "this notice is being given on behalf of the City of New York as Additional Insured as well as the Company as Named Insured." The Company's notice to the insurance carrier shall contain the following information: the name of the Company, the number of the Policy, the date of the occurrence, the location (street address and borough) of the occurrence, and, to the extent known to the Company, the identity of the persons or things injured, damaged or lost. Additionally,

(i)    At the time notice is provided to the insurance carrier(s), the Company shall provide copies of such notice to the Comptroller and the Commissioner. Notice to the Comptroller shall be sent to the Insurance Unit, NYC Comptroller's Office, 1 Centre Street – Room 1222, New York, New York 10007. Notice to the Commissioner shall be sent to the address set forth in Schedule E attached hereto; and

(ii)    If the Company fails to provide any of the foregoing notices to any appropriate insurance carrier(s) in a timely and complete manner, the Company shall indemnify the City for all losses, judgments, settlements and expenses, including reasonable attorneys' fees, arising from an insurer's disclaimer of coverage citing late notice by or on behalf of the City.

12.2.5.    Subcontractor Insurance.    The Company shall ensure that each subcontractor name the City as Additional Insured under all policies covering Services performed by such subcontractor under this Agreement. The City's coverage as Additional Insured shall include the City's officials, employees and agents and be at least as broad as that provided to the Company. The foregoing requirements shall not apply to insurance provided pursuant to Sections 12.2.1(b) and 12.2.1(c) herein.

12.2.6.    Insurance Notices, Filings, Submissions.    Wherever reference is made in Section 12.2 to documents to be sent to the Commissioner (e.g., notices, filings, or submissions), such documents shall be sent to the address set forth in Schedule E attached hereto. In the event no address is set forth in such schedule, such documents are to be sent to the Commissioner's address as provided in Section 14.5 hereof.

12.2.7.    Disposal.    If pursuant to this Agreement the Company is involved in the disposal of hazardous materials, the Company shall dispose such materials only at sites where

NYC007742

NYC007742

the disposal site operator maintains Pollution Legal Liability Insurance in the amount of at least $2,000,000 for losses arising from such disposal site.

      12.2.8.  <u>Adjusted Insurance Coverage</u>.  The Company agrees to adjust the minimum coverage of the liability insurance policy or policies required in this Section 12.2 within three months of receiving written notice from the City that the City has reasonably determined that additional amounts or types of insurance are being commonly carried with respect to systems of a size and nature similar to the System or other circumstances have arisen which make it reasonably prudent to obtain such additional amounts or types of insurance. Such notice shall specify in reasonable detail why the City is requiring such additional amounts or types of insurance.

      12.2.9.  <u>Other Remedies</u>.  Insurance coverage in the minimum amounts provided for herein shall not relieve the Company or subcontractors of any liability under this Agreement, nor shall it preclude the City from exercising any rights or taking such other actions as are available to it under any other provisions of this Agreement or Law.

SECTION 13

<u>DEFAULTS AND REMEDIES; TERMINATION</u>

13.1.  <u>Defaults</u>.

      (a) .  In the event any requirement listed in Appendix A is not performed to the standard set forth in Appendix A and this Agreement, the Company shall be obligated to pay the liquidated damages described in Appendix A. The Company agrees that any failure to perform such requirements to such standard shall result in injuries to the City and its residents, businesses and institutions the compensation for which will be difficult to ascertain. Accordingly the Company agrees that the liquidated damages in the amounts set forth in Appendix A are fair and reasonable compensation for such injuries and do not constitute a penalty or forfeiture. Liquidated damages payable by the Company under this Agreement shall cease to accrue following expiration or termination of this Agreement for any reason, but shall accrue or be imposed during any holdover period.

      (b)  In the event of any breach of any provision by the Company or default by the Company in the performance of any obligation of the Company under this Agreement, which breach or default is not cured within the specific cure period provided for in this Agreement (each such breach or default referred to herein as a "Default"), then the City may:

          (i)  cause a withdrawal from the Security Fund, pursuant to the provisions of Section 6 herein;

          (ii)  make a demand upon the Performance Bond pursuant to the provisions of Section 7 herein;

          (iii)  draw down on the Letter of Credit pursuant to the provisions of Section 7 herein;

- 71 -

NYC007743
NYC007743

(iv)    pursue any rights the City may have under the Guaranty;

(v)    seek and/or pursue money damages from the Company as compensation for such Default (except that if the Default is one to which subsection (a) of this Section 13.1 is applicable then the liquidated damages set forth in Appendix A shall be the only damages available to the City related to such Default, subject to Section 14.9);

(vi)    seek to restrain by injunction the continuation of the Default;

(vii)    and/or pursue any other remedy permitted by law or in equity or in this Agreement provided however the City shall only have the right to terminate this Agreement upon the occurrence of a Termination Default (defined hereinafter).

(c)    In the event of any breach of any provision by the Company or default by the Company in the performance of any obligation of the Company under this Agreement for which breach or default a specific time period to cure is not expressly identified in this Agreement, and, except as provided in the last paragraph of this Section 13.1(c) below, which breach or default is not cured within ten days after notice from the City (each such breach or default also referred to herein as a "Default"), then the City may:

(i)    cause a withdrawal from the Security Fund, pursuant to the provisions of Section 6 herein;

(ii)    make a demand upon the Performance Bond pursuant to the provisions of Section 7 herein;

(iii)    draw down on the Letter of Credit pursuant to the provisions of Section 7 herein;

(iv)    pursue any rights the City may have under the Guaranty;

(v)    seek and/or pursue money damages from the Company as compensation for such Default (except that if the Default is one to which subsection (a) of this Section 13.1 is applicable then the liquidated damages set forth in Appendix A shall be the only damages available to the City related to such Default, subject to Section 14.9);

(vi)    seek to restrain by injunction the continuation of the Default;

(vii)    and/or pursue any other remedy permitted by law or in equity or in this Agreement provided however the City shall only have the right to terminate this Agreement upon the occurrence of a Termination Default (defined hereinafter).

Notwithstanding the above, the 10-day cure period is not applicable to (x) any matters contemplated by Section 2.5.4.4 herein, (y) any breach of the Company's obligations set forth in Section 3.1.5(e) herein (with respect to its obligation to remove broken glass within 24 hours), 3.1.5(f)(1) herein, or 4.4.9 herein (with respect to the obligation to remove material in violation of Section 4.4.1 herein), or (z) the breach of any other obligation of the Company which

NYC007744

NYC007744

adversely impacts public safety, and the City may exercise any of the rights enumerated in this paragraph arising from such breach.

(d)     Notwithstanding anything in this Agreement to the contrary, no Default shall exist if a breach or default is curable, and a cure period is provided therefor in this Section 13 or otherwise, but work to be performed, acts to be done, or conditions to be removed to effect such cure cannot, by their nature, reasonably be performed, done or removed within the cure period provided, so long as the Company shall have commenced curing the same within the specified cure period and shall diligently and continuously prosecute the same promptly to completion.

(e)     The rights and remedies described in the preceding subsections (b) and (c) shall not be exclusive (except as specifically set forth therein with regard to liquidated damages), but each and every right and remedy specifically provided or otherwise existing or given may be exercised from time to time and as often and in such order as may be deemed appropriate by the City, except as provided herein. The exercise of one or more rights or remedies shall not be deemed a waiver of the right to exercise at the same time or thereafter any other right or remedy nor shall any such delay or omission be construed to be a waiver of or acquiescence to any Default. The exercise of any such right or remedy by the City shall not release the Company from its obligations or any liability under this Agreement. The payment of liquidated damages pursuant to the provisions of this Agreement is intended solely to compensate the City for damages incurred from the actual failure to meet the particular obligation and not for failure to meet other obligations that may be construed as related (for example, the obligation to reimburse the City if the City, pursuant to this Agreement, performs or arranges for the performance of the obligation the failure of which gave rise to the liquidated damages obligation, indemnification obligations, and monetary consequences of termination). Nothing in this paragraph or in this Agreement is intended to authorize or shall result in double recovery of damages by the City. The provisions of this Section 13.1(e) shall at all times be subject to Section 13.5(b).

13.2.   Termination Defaults.

13.2.1.   Definition of Termination Default.

(a)     Any failure by the Company to comply with the material terms and conditions of this Agreement, as such failures are described in the following subsections (i) through (xiv) shall be a "Termination Default" hereunder:

(i)     material failure to comply with the Company's obligations to install Coordinated Franchise Structures in accordance with this Agreement (including the specified timeframes);

(ii)     material failure to comply with the Company's obligations to maintain the Coordinated Street Furniture as described in this Agreement;

(iii)     persistent or repeated failures to timely pay amounts due hereunder that are not being disputed by the Company in good faith, with such failures materially and adversely affecting the benefits to be derived by the City under this Agreement;

NYC007745
NYC007745

(iv)    persistent or repeated failures to timely abide by the Company's obligations under this Agreement, with such failures materially and adversely affecting the benefits to be derived by the City under this Agreement;

(v)    if the Company fails to maintain in effect the Letter of Credit in accordance with the provisions of Section 7 herein (subject, however, to the penultimate sentence of Section 7.5(b)), and such failure continues for ten business days after notice;

(vi)    if the Company fails to maintain in effect the Performance Bond in accordance with the provisions of Section 7 herein (subject, however, to the penultimate sentence of Section 7.1(b)), and such failure continues for ten business days after notice;

(vii)    if the Company fails to replenish the Security Fund as required under the provisions of Section 6 herein and such failure continues for ten business days after notice;

(viii)    if the Company fails to establish or maintain the Escrow Fund or to cause the establishment or maintenance of the Supplemental Escrow Fund as required under the provisions of Section 9.5 herein and such failure continues for ten business days after notice;

(ix)    if, in connection with this Agreement, the Company (x) intentionally or recklessly makes a material false entry in the books of account of the Company or intentionally or recklessly makes a material false statement in the reports or other filings submitted to the City, or (y) makes multiple false entries that are material in the aggregate in the books of account of the Company or multiple false statements that are material in the aggregate in the reports or other filings submitted to the City;

(x)    if the Company fails to maintain insurance coverage or otherwise materially breaches Section 12.2 herein and such failure continues for ten business days after notice from the City to the Company;

(xi)    if the Company engages in a course of conduct intentionally designed to practice fraud or deceit upon the City;

(xii)    if the Company, intentionally or as a result of gross negligence, engages or has engaged in any material misrepresentation to the City, either oral or written, in connection with the award of this franchise or the negotiation of this Agreement (or any amendment or modification of this Agreement) or in connection with any representation or warranty contained herein;

(xiii)    the occurrence of any event relating to the financial status of the Company which may reasonably lead to the foreclosure or other similar judicial or non judicial sale of all or any material part of the System, and the Company fails to demonstrate to the reasonable satisfaction of the Commissioner within 20 business days after notice from the City to the Company that such event will not lead to such foreclosure or other judicial or non

NYC007746
NYC007746

judicial sale. Such an event may include, without limitation: (a) default under any loan or any financing arrangement material to the System or the obligations of the Company under this Agreement; (b) default under any contract material to the System or the obligations of the Company under this Agreement; or (c) default under any lease or mortgage covering all or any material part of the System;

(xiv)    if: (aa) the Company shall make an assignment or other transfer of interest of the Company or the System, or there is any change in Control, in each case prohibited by or in violation of Section 11, or if the Company shall make an assignment for the benefit of creditors, shall become and be adjudicated insolvent, shall petition or apply to any tribunal for, or consent to, the appointment of, or taking possession by, a receiver, custodian, liquidator or trustee or similar official pursuant to state or local laws, ordinances or regulations of or for it or any substantial part of its property or assets, including all or any part of the System; (bb) a writ or warranty of attachment, execution, distraint, levy, possession or any similar process shall be issued by any tribunal against all or any material part of the Company's property or assets; (cc) any creditor of the Company petitions or applies to any tribunal for the appointment of, or taking possession by, a trustee, receiver, custodian, liquidator or similar official for the Company or of any material parts of the property or assets of the Company under the law of any jurisdiction, whether now or hereinafter in effect, and a final order, judgment or decree is entered appointing any such trustee, receiver, custodian, liquidator or similar official, or approving the petition in any such proceedings which is unstayed for 60 days (provided that the 60 day period shall not apply if as a result of such final order, judgment or decree the Company will be unable to perform  its obligations under this Agreement); or (dd) any final order, judgment or decree is entered in any proceedings against the Company decreeing the voluntary or involuntary dissolution of the Company;

(xv)    the Company sets a charge for use of the APTs that exceeds the maximum permitted charge hereunder.

(b)    Relation To Other Defaults.  The Company acknowledges that a Termination Default may exist pursuant to one or more of the provisions of the preceding subsection 13.2.1(a) even if such defaults on an individual basis have subsequently been cured after their original occurrence, were the subject of liquidated damages and such liquidated damages have been paid, or were subsequently remediated by recourse to the Security Fund, Letter of Credit, Performance Bond or Guaranty or by collection of judicially awarded damages.

(c)    Prior Notice of Certain Events.  The City shall give the Company reasonable notice of the existence of any events or circumstances  that the City reasonably believes would give rise to a Termination Default under Section 13.2(a)(i)-(iv) if such events or circumstances were to continue.

(d)    Remedies of the City for Termination Defaults.  In the event of a Termination Default, the City may (in addition to any other remedy which the City may have under Section 13.1 hereof) at its option, give to the Company a notice, in accordance with Section 14.5 hereof, stating that this Agreement and the franchise granted hereunder shall terminate on the date specified in such notice (which date shall not be less than ten days from the giving of the notice), and this Agreement and the franchise granted hereunder shall terminate on

-75-

NYC007747
NYC007747

the date set forth in such notice as if such date were the date provided in this Agreement for the scheduled expiration of this Agreement and the franchise granted herein.

13.3.   Expiration and Termination for Reasons Other Than Termination Default.

(a)   Termination for Reasons Other Than Termination Default.

(i)   In the event of the condemnation by public authority, other than the City, or sale or dedication under threat or in lieu of condemnation, of all or substantially all of the System, the effect of which would materially frustrate or impede the ability of the Company to carry out its obligations and the purposes of this Agreement and the Company fails to demonstrate to the reasonable satisfaction of the Commissioner, within 20 business days after notice that such condemnation, sale or dedication would not materially frustrate or impede such ability of the Company, then and in such event the City may, at its option, to the extent permitted by law, terminate this Agreement by notice within 60 days after the expiration of the foregoing 20 business day notice period as set forth in Section 14.5 hereof.

(ii)   In the event the Company shall fail to promptly (A) terminate its relationship with any Affiliated Person, or any employee or agent of the Company, who is convicted (where such conviction is a final, non-appealable judgment or the time to appeal such judgment has passed) of any criminal offense, including without limitation bribery or fraud, arising out of or in connection with: (i) this Agreement, (ii) the award of the franchise granted pursuant to this Agreement, (iii) any act to be taken pursuant to this Agreement by the City, its officers, employees or agents, or (iv) the business activities and services to be undertaken or provided by the Company pursuant to this Agreement or (B) suspend pending final resolution of the matter its relationship with any Affiliated Person, any employee or agent of the Company who is indicted in connection with any alleged criminal offense, including without limitation bribery or fraud, arising out of or in connection with: (i) this Agreement, (ii) the award of the franchise granted pursuant to this Agreement, (iii) any act to be taken pursuant to this Agreement by the City, its officers, employees or agents, or (iv) the business activities and services to be undertaken or provided by the Company pursuant to this Agreement, then the City may, at its option, to the extent permitted by law, terminate this Agreement immediately by notice as set forth in Section 14.5 hereof.

(iii)   In the Event that the Company is indicted in connection with any alleged criminal offense, including without limitation bribery or fraud, arising out of or in connection with: (i) this Agreement, (ii) the award of the franchise granted pursuant to this Agreement, (iii) any act to be taken pursuant to this Agreement by the City, its officers, employees or agents, or (iv) the business activities and services to be undertaken or provided by the Company pursuant to this Agreement, then the City may, at its option, to the extent permitted by law, terminate this Agreement immediately by notice as set forth in Section 14.5 hereof.

(b)   Expiration.   This Agreement, if not previously terminated pursuant to the terms of the Agreement, shall expire at the end of the scheduled Term.

- 76 -

NYC007748

NYC007748

13.4.   Disposition of System.

13.4.1.   Expiration.   Upon expiration of this Agreement, the City shall have full title, free and clear of liens and encumbrances, to any or all of the then existing Coordinated Franchise Structures and appurtenances, without payment of compensation.  At the City's option, to be exercised at least 60 days prior to the expiration, Company shall remove any or all of the Coordinated Franchise Structures (in which case the Company shall remain the owner thereof) and restore the respective sidewalks and curbs to the condition that existed immediately prior to the date of such removal and in compliance with the New York City Administrative Code at the Company's sole cost and expense within 180 days of expiration of this Agreement, which the Company agrees to undertake and complete.

13.4.2.   After Termination Upon Termination Default.   In the event of any termination of this Agreement due to a Termination Default by the Company, the City shall have full title, free and clear of liens and encumbrances, to any or all of the then existing Coordinated Franchise Structures and appurtenances, without payment of compensation.  At the City's option to be exercised within 30 days of the date of termination, the Company shall remove any or all of the Coordinated Franchise Structures (in which case the Company shall remain the owner thereof) and restore the respective sidewalks and curbs to the condition that existed immediately prior to the date of such removal and in compliance with the New York City Administrative Code at the Company's sole cost and expense within 240 days of termination of this Agreement, which the Company agrees to undertake and complete.

13.4.3.   After Termination For Reason Other Than A Termination Default.   In the event of any termination of this Agreement by the City in accordance with Section 13.3(a), within 30 days of the date of such termination, at the City's option (a) the City may purchase from the Company the System, or any portion thereof, at a purchase price determined by calculating 100% of the actual cost of fabricating and installing the structures, less depreciation on a straight line basis using an annual depreciation of 10% starting from the initial Installation Date of the applicable Coordinated Franchise Structure; or (b) the Company shall remove any or all of the Coordinated Franchise Structures (in which case the Company shall remain the owner thereof) and restore their site to the condition that existed immediately prior to the date of such removal and in compliance with the New York City Administrative Code at the Company's sole cost and expense within 240 days of termination of this Agreement, which the Company agrees to undertake and complete.

13.5.   Effect of Expiration or Termination.

(a)   For Reason Other Than A Termination Default.   Following expiration or sooner termination of this Agreement pursuant to Section 13.3(a), the Company shall not be obligated to pay the Franchise Fee, other than in accordance with Section 9.5(b) herein.  The City shall refund to the Company within 30 days of the date of such termination, any portion of the Advance Payment which, had the Advance Payment been payable over the first four years of the Term in accordance with the annual amounts set forth on Schedule C, would not yet have become payable to the City in accordance with the terms of Section 9.5 herein.

NYC007749

NYC007749

(b)   Upon a Termination Default.  Following termination of this Agreement upon a Termination Default, except with respect to the Company's indemnification obligations for third-party claims under Section 12.1, any amounts that may be owed pursuant to Section 4.7 for amounts deferred but not repaid, or any unpaid compensation accrued through the date of termination, the maximum amount of damages that the Company may be liable for in connection with this Agreement (whether as liquidated damages, actual contract damages, or under any theory of recovery whatsoever) shall be limited to, subject to the City's mitigation of damages obligations as set forth in Section 14.23 hereof, the greater of:

(i)     the Cash Component for the first three years after any judgment is entered against the Company (or what would have been the last three years of the Term if judgment is entered after what would have been the 16th year of the Term); or

(ii)    three times the cash portion of the Franchise Fee owed to the City for the last year of the Term before this Agreement was terminated after adjusting for inflation in the amount of 2.5% per year up to the date the judgment is entered,

plus the full amount of the Security Fund, recourse to the Performance Bond and the full amount of the Letter of Credit then required pursuant to this Agreement.

13.6.   Procedures for Transfer After Expiration or Termination.  Upon the acquisition of the System by the City or the City's designee pursuant to Section 13.4 herein, the Company shall:

(a)    cooperate with the City to effectuate an orderly transfer to the City (or the City's designee) of all records and information reasonably necessary to maintain and operate the System being transferred (such part of the System referred to hereafter as the "Post Term System"); and

(b)    at the City's option promptly supply the Commissioner with all existing records, contracts, leases, licenses, permits, rights-of-way, and any other materials necessary for the City or its designee to operate and maintain the Post Term System.

13.7.   Removal Upon Expiration or Termination.

13.7.1.   Removal Procedures.  If, upon expiration or any termination of this Agreement, all or any part of the Coordinated Franchise Structures is to be removed pursuant to this Section 13, the following procedures shall apply:

(a)    in removing the System, or part thereof, the Company shall restore all Inalienable Property of the City and any other property affected by the actions of the Company under this Agreement ("Other Affected Property") to its condition as it existed immediately prior to the date of such removal and in compliance with the New York City Administrative Code, and shall have received all applicable approvals from DOT and any other applicable City approvals;

(b)    the City shall have the right to inspect and approve the condition of such Inalienable Property of the City after removal and, to the extent that the City reasonably

- 78 -

NYC007750
NYC007750

determines that said Inalienable Property of the City and Other Affected Property have not been restored to its condition, as it existed immediately prior to the date of such removal and in compliance with the New York City Administrative Code, the Company shall be liable to the City for the cost of restoring the Inalienable Property of the City and Other Affected Property to said condition; and

(c) the Security Fund, Performance Bond, Letter of Credit, liability insurance and indemnity provisions of this Agreement shall remain in full force and effect during the entire period of removal of all or any of the Coordinated Franchise Structures and/or restoration and associated repair of all Inalienable Property of the City or Other Affected Property, and for not less than 120 days thereafter, or for such longer periods as set forth in this Agreement.

13.7.2.   Failure to Commence or Complete Removal.   If, in the reasonable judgment of the Commissioner, the Company fails to commence removal or if the Company fails to substantially complete such removal, including all associated repair and restoration of the Inalienable Property of the City or any other property in accordance with the time frames set forth in this Section 13, the Commissioner may, at his or her sole discretion authorize removal of the System, or part thereof, at the Company's cost and expense, by another Person or remove such System, or part thereof, at the Company's cost and expense, itself.

13.7.3.   No Condemnation.   None of the declaration, connection, use, transfer or other actions by the City or the Commissioner under this Section 13 shall constitute a condemnation by the City or a sale or dedication under threat or in lieu of condemnation.

13.7.4.   Other Provisions.   The City and the Company shall negotiate in good faith all other terms and conditions of any such acquisition or transfer, except that the Company hereby waives its rights, if any, to relocation costs that may be provided by law and except that, in the event of any acquisition of the System by the City: (i) the City shall not be required to assume any of the obligations of any collective bargaining agreements or any other employment contracts held by the Company or any other obligations of the Company or its officers, employees, or agents, including, without limitation, any pension or other retirement, or any insurance obligations; and (ii) the City may lease, sell, operate, or otherwise dispose of all or any part of the System in any manner.

## SECTION 14

### MISCELLANEOUS

14.1.   Appendices, Exhibits, Schedules.   The Appendices, Exhibits and Schedules to this Agreement, attached hereto, and all portions thereof and exhibits thereto, are except as otherwise specified in said Appendices, Exhibits and Schedules and in Schedule F, incorporated herein by reference and expressly made a part of this Agreement.   The procedures for approval of any subsequent amendment or modification to said Appendices, Exhibits and Schedules shall be the same as those applicable to any amendment or modification hereof.

-79-

NYC007751
NYC007751

14.2.  Order of Governance.  The following order of governance shall prevail in the event of a conflict between this Agreement and any attachments hereto: 1. Authorizing Resolution; 2. this Agreement; 3. the Schedules, Appendices and Exhibits attached hereto, excluding, however, the BAFO, Proposal and the RFP; 4. BAFO; 5. Proposal; 6. RFP.

14.3.  Coordination.  The Company and DOT acknowledge and agree that the nature of the relationship created by this Agreement requires extensive and ongoing long-term coordination between the parties.  Accordingly, no later than ten business days after the Effective Date, the City shall designate a director of Coordinated Franchise Structures and the Company shall designate the Director of Inter-governmental Relations, as the individual responsible for coordinating with the other party with respect to all matters that may arise from time to time, including matters arising under Section 2.4.4, in the course of the Term relating to the installation, maintenance, and operation of the System.  When at any time during the Term of this Agreement any notice is required to be sent to the Company, other than a notice pursuant to Section 14.5 hereof, such notice shall be sufficient if sent to the above designated individual or his or her representative by e-mail, facsimile, hand delivery, or mail, or to the extent oral notice is specifically permitted in this Agreement, communicated by telephone.  Any such oral notice shall only be effective if (a) given to the person identified in this Section 14.3 or a designee of such person whose designation is notified to the other party hereto in writing and (b) followed reasonably promptly by written notice, which may for such purposes be given by e-mail.

14.4.  Publicity.  The prior written approval of DOT is required before the Company or any of its employees, servants, agents or independent contractors may, at any time, either during or after completion or termination of this Agreement, make any statement to the press or issue any material for publication through any media of communication bearing on the work performed or data collected under this Agreement.  If the Company publishes a work dealing with any aspect of performance under this Agreement, or of the results and accomplishments attained in such performance, DOT shall have a royalty-free, non-exclusive and irrevocable license to reproduce, publish, or otherwise use and to authorize others to use the publication, or, in the event that only a portion of the publication deals with an aspect of performance under this Agreement, such portion of the publication.

14.5.  Notices.  All notices required to be given to the City or the Company pursuant to Sections 1.27, 6.6, 7.1, 7.2 (c), 7.7, 9.4.1, 9.4.1(d), 10.6.2, 11.3, 12.1.5, 13.2.1(b), 13.2.1(c), 13.2.1(d), 13.3(a), 13.4.1, 13.4.2, 14.10, and 14.11 shall be in writing and shall be sufficiently given if sent by registered or certified mail, return receipt requested, by overnight mail, by fax, or by personal delivery to the address or facsimile number listed below, or to such other location or person as any party may designate in writing from time to time.  Every communication from the Company shall be sent to the individual, agency or department designated in the applicable section of this Agreement, unless it is to "the City," in which case such communication shall be sent to:

If to the City:

The Commissioner of DOT at 40 Worth Street, New York, New York 10013;

NYC007752
NYC007752

with a copy to

General Counsel, New York City Department of Transportation, 40 Worth Street, New York, New York 10013

If to the Company:

CEMUSA, Inc. at 420 Lexington Avenue, Suite 2533, New York, NY 10170or fax # 212-599-7999, Attention: Director of Inter-governmental Relations;

with a copy to

DLA Piper Rudnick Gray Cary, LLP, 1251 Ave of the Americas, New York, New York, 10020, or fax # 212-835-6001, Attention: Anthony P. Coles

Except as otherwise provided herein, the mailing of such notice shall be equivalent to direct personal notice and shall be deemed to have been given when mailed or when received if transmitted by facsimile. Any notice required to be given to the Company pursuant to Section 13 herein for which a cure period is ten days or less, which requires action to be taken within ten days or less, or notifies the Company of an event or action that will occur in 10 days or less must be given by personal delivery, overnight mail service or facsimile transmission.

14.6.    General Representations, Warranties and Covenants of the Company. In addition to the representations, warranties, and covenants of the Company to the City set forth elsewhere herein, the Company represents and warrants to the City and covenants and agrees (which representations, warranties, covenants and agreements shall not be affected or waived by any inspection or examination made by or on behalf of the City), as set forth in Sections 14.6.1 and 14.6.2 as of the Effective Date.

14.6.1.    Organization, Standing and Power. The Company is an entity of the type described in Appendix E attached hereto, validly existing and in good standing under the laws of the State specified in Appendix E attached hereto and is duly authorized to do business in the State of New York and in the City. Appendix E attached hereto represents a complete and accurate description of the organizational and ownership structure of the Company and a complete and accurate list of all Persons which hold, directly or indirectly, a 10% interest in the Company, and all entities in which the Company, directly or indirectly, holds a 10% or greater interest. The Company has all requisite power and authority to own or lease its properties and assets, to conduct its business as currently conducted and to execute, deliver and perform this Agreement and all other agreements entered into or delivered in connection with or as contemplated hereby. The Company is qualified to do business and is in good standing in the State of New York.

14.6.2.    Authorization: Non-Contravention. The execution, delivery and performance of this Agreement and all other agreements, if any, entered into in connection with the transactions contemplated hereby have been duly, legally and validly authorized by all necessary action on the part of the Company and the certified copies of authorizations for the execution and delivery of this Agreement provided to the City pursuant to Section 2.2 herein are

- 81 -

NYC007753
NYC007753



true and correct. This Agreement and all other agreements, if any entered into in connection with the transactions contemplated hereby have been duly executed and delivered by the Company and constitute (or upon execution and delivery will constitute) the valid and binding obligations of the Company, and are enforceable (or upon execution and delivery will be enforceable) in accordance with their respective terms. The Company has obtained the requisite authority to authorize, execute and deliver this Agreement and to consummate the transactions contemplated hereby and no other proceedings or other actions are necessary on the part of the Company to authorize the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby. Neither the execution and delivery of this Agreement by the Company nor the performance of its obligations contemplated hereby will:

(a)     conflict with, result in a material breach of or constitute a material default under (or with notice or lapse of time or both result in a material breach of or constitute a material default under) (i) any governing document of the Company or to the Company's knowledge, any agreement among the owners of the Company, or (ii) any statute, regulation, agreement, judgment, decree, court or administrative order or process or any commitment to which the Company is a party or by which it (or any of its properties or assets) is subject or bound;

(b)     result in the creation of, or give any party the right to create, any material lien, charge, encumbrance, or security interest upon the property and assets of the Company except permitted encumbrances under Section 11.5 herein; or

(c)     terminate, breach or cause a default under any provision or term of any contract, arrangement, agreement, license or commitment to which the Company is a party, except for any event specified herein or in (a) or (b) above, which individually or in the aggregate would not have a material adverse effect on the business, properties or financial condition of the Company or the System.

14.6.3.     Fees.  The Company has paid all material franchise, permit, or other fees and charges to the City which have become due prior to the date of this Agreement pursuant to any franchise, permit, or other agreement.

14.6.4.     Criminal Acts Representation.  Neither the Company nor, any Affiliated Person or any employee or agent of the Company, has committed and/or been convicted (where such conviction is a final, non-appealable judgment or the time to appeal such judgment has passed) of any criminal offense, including without limitation bribery or fraud, arising out of or in connection with (i) this Agreement, (ii) the award of the franchise granted pursuant to this Agreement, or (iii) any act to be taken pursuant to this Agreement by the City, its officers, employees or agents, or (iv) the business activities and services to be undertaken or provided pursuant to this Agreement.

14.6.5.     Criminal Acts Covenant.  The Company shall promptly terminate its relationship with any Affiliated Person, or any employee or agent of the Company, who is convicted (where such conviction is a final, non-appealable judgment or the time to appeal such judgment has passed) of any criminal offense, including without limitation bribery or fraud, arising out of or in connection with: (i) this Agreement, (ii) the award of the franchise granted

NYC007754
NYC007754





pursuant to this Agreement, (iii) any act to be taken pursuant to this Agreement by the City, its officers, employees or agents, or (iv) the business activities and services to be undertaken or provided by the Company pursuant to this Agreement.

14.6.6.  Relationship with the City.  The Company affirms and declares that it is not in arrears to The City of New York upon any debt, contract or taxes and that it is not a defaulter, as a surety or otherwise, upon any obligation to The City of New York, and has not been declared not responsible, or disqualified, by any agency of The City of New York, nor is there any proceeding pending relating to the responsibility or qualification of the Company to receive a franchise or other public contracts.

14.6.7.  Misrepresentation.  No material misrepresentation has been made, either oral or written, intentionally or negligently, by or on behalf of the Company in this Agreement, in connection with any submission to DOT or the Commissioner, including the Proposal, in connection with the negotiation of this Agreement.

14.7.  Binding Effect.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted transferees and assigns.  All of the provisions of this Agreement shall apply to the City and the Company and their successors and assigns.

14.8.  Comptroller Rights.  Notwithstanding anything to the contrary in this Agreement, the parties acknowledge and agree that the powers, duties, and obligations of the Comptroller pursuant to the provisions of the New York City Charter shall not be diminished, compromised, or abridged in any way.

14.9.  Remedies.  The payment of liquidated damages pursuant to the provisions of this Agreement is intended solely to compensate the City for damages incurred from the actual failure to meet the particular obligation and not for failure to meet other obligations that may be construed as related (for example, the obligation to reimburse the City if the City, pursuant to this Agreement, performs or arranges for the performance of the obligation the failure of which gave rise to the liquidated damages obligation, indemnification obligations, and monetary consequences of Termination).  Nothing in this paragraph or in this Agreement is intended to authorize or shall result in double recovery of damages by the City.

14.10.  No Waiver; Cumulative Remedies.  No failure on the part of the City or the Company to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right preclude any other right, except as provided herein, subject to the conditions and limitations established in this Agreement.  The rights and remedies provided herein are cumulative and not exclusive of any remedies provided by law, and nothing contained in this Agreement shall impair any of the rights of the City or the Company, as applicable under applicable law, subject in each case to the terms and conditions of this Agreement.  A waiver of any right or remedy by the City or the Company, as applicable at any one time shall not affect the exercise of such right or remedy or any other right or other remedy by the City or the Company, as applicable at any other time.  In order for any waiver of the City or the Company, as applicable to be effective, it must be in writing.  The failure of the City to take any action regarding a Default or a Termination Default by the Company shall not

- 83 -

NYC007755
NYC007755



be deemed or construed to constitute a waiver of or otherwise affect the right of the City to take any action permitted by this Agreement at any other time regarding such Default or Termination Default.

14.11. <u>Partial Invalidity</u>.  The clauses and provisions of this Agreement are intended to be severable.  If any clause or provision is declared invalid, in whole or in part, by any court, agency, commission, legislative body, or other authority of competent jurisdiction, such provision shall be deemed a separate, distinct, and independent portion, and such declaration shall not affect the validity of the remaining portions hereof, which other portions shall continue in full force and effect, but only so long as the fundamental assumptions underlying this Agreement (not including restrictions on alcohol advertising content which are covered by Section 4.7 or any other restriction on advertising content, and not including matters that are covered by Section 9.7, as long as such Section 9.7 is not declared invalid in whole or in part) are not undermined.  If, however, the fundamental assumptions underlying this Agreement (not including restrictions on alcohol advertising content which are covered by Section 4.7 or any other restriction on advertising content, and not including matters that are covered by Section 9.7, as long as such Section 9.7 is not declared invalid in whole or in part) are undermined as a result of any clause or provision being declared invalid, in whole or in part, by any court, agency, commission, legislative body, or other authority of competent jurisdiction, and such declaration is not stayed within 30 days by a court pending resolution of a legal challenge thereto or an appeal thereof, the adversely affected party shall notify the other party in writing of such declaration of invalidity and the effect of such declaration of invalidity and the parties shall enter into good faith negotiations to modify this Agreement to compensate for such declaration of invalidity, provided, however, that any such modifications shall be subject to all City approvals and authorizations and compliance with all City procedures and processes.  If the parties cannot come to an agreement modifying this Agreement within 120 days (which 120-day period shall be tolled during any stay contemplated above) of such notice, then this Agreement shall terminate with such consequences as would ensue if it had been terminated by the City pursuant to Section 13.3(a).

In addition, in the event any applicable federal, state, or local law or any regulation or order is passed or issued, or any existing applicable federal, state, or local law or regulation or order is changed (or any judicial interpretation thereof is developed or changed) in any way which undermines the fundamental assumptions underlying this Agreement (not including restrictions on alcohol advertising content which are covered by Section 4.7 or any other restriction on advertising content, and not including matters that are covered by Section 9.7, as long as such Section 9.7 is not declared invalid in whole or in part), the adversely affected party shall notify the other party in writing of such change and the effect of such change and the parties shall enter into good faith negotiations to modify this Agreement to compensate for such change, provided, however, that any such modifications shall be subject to all City approvals and authorizations and compliance with all City procedures and processes.

14.12. <u>Survival</u>.  Any provision of this Agreement which should naturally survive the termination or expiration of this Agreement shall be deemed to do so.

14.13. <u>Headings and Construction</u>.  The headings contained in this Agreement are to facilitate reference only, do not form a part of this Agreement, and shall not in any way affect the

NYC007756
NYC007756

construction or interpretation hereof. Terms such as "hereby," "herein," "hereof," "hereinafter," "hereunder" and "hereto" refer to this Agreement as a whole and not to the particular sentence or paragraph where they appear, unless the context otherwise requires. The term "may" is permissive; the terms "shall," "must," and "will" are mandatory, not merely directive. All references to any gender shall be deemed to include both the male and the female, and any reference by number shall be deemed to include both the singular and the plural, as the context may require. Terms used in the plural include the singular, and vice versa, unless the context otherwise requires.

14.14. No Subsidy. No public subsidy is provided to the Company pursuant to this Agreement.

14.15. No Agency. The Company shall conduct the work to be performed pursuant to this Agreement as an independent contractor and not as an agent of the City.

14.16. Governing Law. This Agreement shall be deemed to be executed in the City of New York, State of New York, and shall be governed in all respects, including validity, interpretation and effect, and construed in accordance with the laws of the State of New York, irrespective of conflict of laws principles, as applicable to contracts entered into and to be performed entirely within the State.

14.17. Survival of Representations and Warranties. All representations and warranties contained in this Agreement shall survive the Term.

14.18. Claims Under Agreement. The City and the Company agree that any and all claims asserted by or against the City arising under this Agreement or related thereto shall be heard and determined either in a court of the United States located in New York City ("Federal Court") or in a court of the State of New York located in the City and County of New York ("New York State Court"). To effect this Agreement and intent, the Company agrees that:

(a) If the City initiates any action against the Company in Federal Court or in New York State Court, service of process may be made on the Company as provided in Section 14.20 hereof,

(b) With respect to any action between the City and the Company in New York State Court; the Company hereby expressly waives and relinquishes any rights it might otherwise have (i) to move or dismiss on grounds of forum non convenience; (ii) to remove to Federal Court Outside of the City of New York; and (iii) to move for a change of venue to a court of the State of New York outside New York County;

(c) With respect to any action between the City and the Company in Federal Court, the Company expressly waives and relinquishes any right it might otherwise have to transfer the action to a United States Court outside the City of New York; and

(d) If the Company commences any action against the City in a court located other than in the City, County, or State of New York, then, upon request of the City, the Company shall either consent to a transfer of the action to a court of competent jurisdiction located in the City, County or State of New York or, if the court where the action is initially

- 85 -

NYC007757
NYC007757

brought will not or cannot transfer the action, the Company shall consent to dismiss such action without prejudice and may thereafter reinstitute the action in a court of competent jurisdiction in the City, County or State of New York.

14.19. <u>Modification</u>. Except as otherwise provided in this Agreement, any Appendix, Exhibit or Schedule to this Agreement or applicable law, no provision of this Agreement nor any Appendix, Exhibit or Schedule to this Agreement shall be amended or otherwise modified, in whole or in part, except by a written instrument, duly executed by the City and the Company, and, approved as required by applicable law.

14.20. <u>Service of Process</u>. If the City initiates any action against the Company in Federal Court or in New York State Court, service of process may be made on the Company either in person, wherever such Company may be found, or by registered mail addressed to the Company at its address as set forth in this Agreement, or to such other address as the Company may provide to the City in writing.

14.21. <u>Compliance With Certain City Requirements</u>. The Company agrees to comply in all respects with the City's "MacBride Principles", a copy of which is attached at Appendix F hereto. The Company agrees to comply in all respects with VENDEX, as the same may be amended from time to time.

14.22. <u>Compliance With Law, Licenses</u>.

(a)    The Company at its sole cost and expense shall comply with all applicable City, state and federal laws, regulations and policies.

(b)    The Company at its sole cost and expense shall obtain all licenses and permits that are necessary for the provision of the Services from, and comply with all rules and regulations of any governmental body having jurisdiction over the Company with respect to the Services.

14.23. <u>Mitigation</u>. In the event of a breach of this Agreement by any of the parties hereto, the other parties will act in good faith and exercise commercially reasonable efforts to mitigate any damages or losses that result from such breach. Notwithstanding the foregoing, nothing contained in this Section 14.23 shall limit in any respect the parties' right to indemnification pursuant to Section 12 herein.

14.24. <u>Force Majeure and Other Excused Failure to Perform</u>. Neither party shall be liable (including, without limitation, for payment of liquidated damages) for failure to perform any of its obligations, covenants, or conditions contained in this Agreement when such failure is caused by the occurrence of an Event of Force Majeure, and such party's obligation to perform shall be extended for a reasonable period of time commensurate with the nature of the event causing the delay and no breach or default shall exist or liquidated damages be payable with respect to such extended period. Notwithstanding anything to the contrary set forth in this Agreement, to the extent that the Company is unable to timely perform any of its obligations, covenants, or conditions contained in this Agreement due to the fault of the City, the Company's obligation to perform shall be extended for a reasonable period of time commensurate with the

NYC007758
NYC007758

nature of the event causing the delay and no breach or default shall exist or liquidated damages be payable with respect to such extended period.

14.25. Counterparts. This Agreement may be executed in one or more counterparts which, when taken together, shall constitute one and the same.

IN WITNESS WHEREOF, the party of the first part, by its Deputy Mayor, duly authorized by the Charter of The City of New York, has caused the corporate name of said City to be hereunto signed and the corporate seal of said City to be hereunto affixed and by its Commissioner of The New York City Department of Transportation, duly authorized, has caused its name to be hereunto signed and the party of the second part, by it officers thereunto duly authorized, has caused its name to be hereunto signed and its seal to be hereunto affixed as of the date and year first above written.

THE CITY OF NEW YORK

By: _____
Deputy Mayor of The City of New York

THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION

By: _____
Commissioner

Approved as to form,
Certified as to Legal Authority

_____ CS
Acting Corporation Counsel

MAY 1 8 2006

CEMUSA, INC.

By: _____
Name:
Title:

By: _____
Name:
Title:

Attest: _____
City Clerk

**Michael McSweeney**
**1st Deputy & Acting City Clerk**

- 87 -

NYC007759
NYC007759

CITY OF NEW YORK      )
                     )   SS:
STATE OF NEW YORK     )

I, *Roxanne Gair*, a Notary Public in and for the State of New York, residing therein, duly commissioned and sworn, do hereby certify that *Daniel L. Doctoroff* _____, Deputy Mayor of the City of New York, party to the above instrument, personally appeared before me in said State on the _18_ day of _May_, 2006, the said _____ being personally well known to me and who executed the foregoing instrument and acknowledged to me that he executed the same as his free act and deed in his capacity as Deputy Mayor of the City of New York.

Given under my hand and seal, this _18_ day of _May_____, 2006.

_____
Notary Public

My Commission Expires: _____

ROXANNE GAIR
Commissioner of Deeds
City of New York No. 2-10228
Commission Expires 2-1-08

- 88 -

NYC007760
NYC007760

CITY OF NEW YORK              )
                             )      SS:
STATE OF NEW YORK            )

I, Roxanne Gair, a Notary Public in and for the State of New York, residing therein, duly commissioned and sworn, do hereby certify that  Iris Weinshall

_____, Commissioner of The New York City Department of Transportation, party to the above instrument, personally appeared before me in said State on the 18 day of May, 2006, the said _____ being personally well known to me and who executed the foregoing instrument and acknowledged to me that she executed the same as his free act and deed in her capacity as Commissioner of The New York City Department of the Transportation.

Given under my hand and seal, this 18 day of May, 2006.

                                        _____
                                        Notary Public

My Commission Expires: _____

ROXANNE GAIR
Commissioner of Deeds
City of New York No. 2-10225
Commission Expires 2-1-08

-89-

NYC007761
NYC007761

CITY OF NEW YORK        )

                              )    SS:

STATE OF NEW YORK    )

I, _Ellen Clark_, a Notary Public in and for the State of New York, residing therein, duly commissioned and sworn, do hereby certify that

_Toulla Constantinou_, _Vice President_ of CEMUSA, INC., party to the above instrument, personally appeared before me in said State on the 19 day of _MAY_ , 2006, the said _Toulla Constantinou_ being personally well known to me and who executed the foregoing instrument and acknowledged to me that he executed the same as her free act and deed in his her capacity as _Vice President_ of CEMUSA, INC.

Given under my hand and seal, this 19 day of _MAY_ , 2006.

_Ellen H. Clark_
                               Notary Public

My Commission Expires: _October 21, 2006_

ELLEN H. CLARK
Notary Public, State of New York
No. 02CL6082279
Qualified in New York County
Commission Expires Oct. 21, 2006

- 90 -

NYC007762
NYC007762

nature of the event causing the delay and no breach or default shall exist, no liquidated damages be payable with respect to such extended period.

14.25. Counterparts. This Agreement may be executed in one or more counterparts which, when taken together, shall constitute one and the same.

IN WITNESS WHEREOF, the party of the first part, by its Deputy Mayor, duly authorized by the Charter of The City of New York, has caused the corporate name of said City to be hereunto signed and the corporate seal of said City to be hereunto affixed and by its Commissioner of The New York City Department of Transportation, duly authorized, has caused its name to be hereunto signed and the party of the second part, by it officers thereunto duly authorized, has caused its name to be hereunto signed and its seal to be hereunto affixed as of the date and year first above written.

THE CITY OF NEW YORK

By:_____
        Deputy Mayor of The City of New York


THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION

By:_____
        Commissioner

Approved as to form,
Certified as to Legal Authority


_____
Acting Corporation Counsel


CEMUSA, INC.

By:_____
    Name:
    Title:

By:_____
    Name: _ERIC MARTEL_
    Title: _PRESIDENT_


Attest:_____
        City Clerk

-87-

NYC007763
NYC007763

LEGITIMACIÓN. YO, FRANCISCO JAVIER CEDRÓN LÓPEZ GUERRERO, NOTARIO DE MADRID Y DE SU ILUSTRE COLE-GIO. ------------------------------------------------

HAGO CONSTAR: Que legitimo la firma que antece-de de DON ERIC CLAUDE CHRISTIAN MAROTEL con N.I.E. núm. X-1450776-M, la cual se encuentra puesta al pie del presente documento extendido en lengua inglesa que yo el Notario conozco suficientemente, cuyo contenido es conocido del firmante y que surtirá efectos en la ciudad de Nueva York (EEUU). ---------

Dicho documento ha sido objeto del acta por mi autorizada en el día de hoy, bajo el núm. 1338 de orden de mi protocolo, formalizada en virtud de lo previsto en el artículo 207 del vigente Reglamento Notarial. ---------------------------------------------

Y para que así conste, signo, firmo, rubrico y sello la presente en Madrid a veintitres de Mayo de dos mil seis. ---------------------------------------------





A41602735

A40627046

Apostille (o legalización única)
(Convention de La Haye du 5 octobre 1961)
(Real Decreto 2433/1978, de 2 de octubre)

1.  País: *España*
    El presente documento público

2.  Ha sido firmado por *D. Francisco Javier Cedrón López-Guerrero*

3.  Actuando en calidad de *NOTARIO*

4.  Se halla sellado/timbrado con *el de su Notaría*
    CERTIFICADO

5.  En Madrid    6.    El    2 4 MAYO 2006

7.  Por el Decano del Colegio Notarial de Madrid

8.  Con el número    28244

9.  Sello/timbre:        10.    Firma:

    *Don Antonio Domínguez Mena*
    Miembro de la Junta Directiva en funciones de Decano

NYC007764
NYC007764

nature of the event causing the delay and no breach or default shall except liquidated damages be payable with respect to such extended period.

14.25. _Counterparts_. This Agreement may be executed in one or more counterparts which, when taken together, shall constitute one and the same.

IN WITNESS WHEREOF, the party of the first part, by its Deputy Mayor, duly authorized by the Charter of The City of New York, has caused the corporate name of said City to be hereunto signed and the corporate seal of said City to be hereunto affixed and by its Commissioner of The New York City Department of Transportation, duly authorized, has caused its name to be hereunto signed and the party of the second part, by it officers thereunto duly authorized, has caused its name to be hereunto signed and its seal to be hereunto affixed as of the date and year first above written.

THE CITY OF NEW YORK

By: _____
     Deputy Mayor of The City of New York

THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION

By: _____
     Commissioner

Approved as to form,
Certified as to Legal Authority

_____
Acting Corporation Counsel

CEMUSA, INC.

By: _____
     Name:
     Title:

By: _____
     Name:
     Title: _ERIC MARTEL_
         _PRESIDENT_

Attest: _____
     City Clerk

-87-

NYC007765
NYC007765

CITY OF NEW YORK        )
                        )      SS:
STATE OF NEW YORK       )

I, _____, a Notary Public in and for the State of New York, residing therein, duly commissioned and sworn, do hereby certify that

_____, _____ of CEMUSA, INC., party to the above instrument, personally appeared before me in said State on the ____ day of _____, 2006, the said _____ being personally well known to me and who executed the foregoing instrument and acknowledged to me that he executed the same as his free act and deed in his capacity as _____ of CEMUSA, INC.

Given under my hand and seal, this ___ day of _____, 2006.

_____
                                    Notary Public

My Commission Expires: _____

NYC007766
NYC007766