# EXHIBIT 26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
METRO FUEL, LLC,

                                                      Plaintiff,

                    -against-

CITY OF NEW YORK                              07-CV-8244

                                             Defendant.
------------------------------------------------------------------------ x

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST CONSOLIDATED SET OF DISCOVERY DEMANDS

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, defendant, by its attorney Michael A. Cardozo, Corporation Counsel of the City of New York, makes the following objections and responses to the Plaintiff's First Consolidated Set of Discovery Demands, dated December 7, 2007:

### GENERAL STATEMENT

1.      By responding to any request, defendant does not concede the materiality of the subject to which it refers.  Defendant's responses are made expressly subject to, and without waiving or intending to waive, any questions or objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents and information produced, or of the subject matter thereof, in any proceeding including the trial of this action or any subsequent proceeding.

2.      Defendant objects to this request to the extent that it demands information which is protected by the attorney-client or work-product privilege, or which constitutes material prepared for litigation purposes, or which constitutes material protected by the deliberative process privilege.


EXHIBIT
PIf's 1
SKA08F0

3.    Inadvertent production of any document or information which is privileged, was prepared in anticipation of litigation, or is otherwise not discoverable, shall not constitute a waiver of any privilege or of another ground for objecting to discovery with respect to that document or any other document, or its subject matter, or the information contained therein, or of defendant's right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise.

4.    Defendant reserves the right to supplement its response to each request with additional document(s) and information, if and when such document(s) or information becomes available to defendant's counsel. Defendant also reserves the right to object to future disclosure of any such document(s) and information.

5.    For the purposes of the defendant's response to these Requests:

(a)    The term "DOB" refers to the New York City Department of Buildings.

(b)    The term "DCP" refers to the New York City Department of City Planning.

(c)    The term "DOT" refers to the New York City Department of Transportation.

(d)    The term "DOITT" refers to the New York City Department of Information Technology and Telecommunications."

(e)    References to "Clear Channel Outdoor" are to the litigation brought by Clear Channel Outdoor, Inc. against the City of New York in the United States District Court for the Southern District of New York under Docket No. 06CV8193.

(f)    References to "Atlantic Outdoor" are to the litigation brought by Atlantic Outdoor Advertising, Inc. and others against the City of New York in the United States District Court for the Southern District of New York under Docket No. Docket No. 06CV8193

## RESPONSE TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify the employees, officers, or representatives of the City most knowledgeable about the Regulations.

### OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 1:

Defendant objects to this Interrogatory insofar as plaintiff's definition of "the Regulations" is vague and unclear both on its face and in combination with plaintiff's definition of "Panel Signs." However, to the extent plaintiff seeks the identity of City employees who are generally knowledgeable about the regulation of advertising signs (as the term advertising sign is defined in Section 12-10 of the New York City Zoning Resolution) in the City of New York, defendant states that Edward Fortier, Director of the Padlock & Sign Enforcement Units for the New York City Department of Buildings, David Karnovsky, General Counsel to the Department of City Planning and City Planning Commission and Tom Wargo, head of the Department of City Planning's Zoning and Urban Design Division are knowledgeable about the City's regulation of advertising signs.

### INTERROGATORY NO. 2:

Identify every Panel Sign that is currently located or has at any time from January 1, 1998 to the present been located in New York City, including the address, block, and lot of the Panel Sign.

### OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 2:

Defendant objects to this Interrogatory as it is unduly burdensome and overbroad and to the extent that it seeks information not within defendant's possession, custody or control. The Department of Buildings, which is the City agency responsible for issuing permits for signs within the City of New York does not categorize its information based upon whether a sign is a "Panel Sign." Furthermore, to the extent that a Panel Sign exists in the City of New York and no

permit was issued for that sign, information about the existence of that sign would not be in the City's control. However, to the extent it is possible for DOB to generate a spreadsheet of all sign permits issued between 1998 and 2007 (similar to the spreadsheet that was provided to plaintiff's counsel in the City's March 21, 2007 response to Interrogatory No. 17 contained in Clear Channel Outdoor, Inc.'s Second Set of Interrogatories and the <u>Atlantic Outdoor</u> plaintiffs' Second Consolidated Set of Discovery Demands), such spreadsheet will be produced to plaintiff in the near future.

## INTERROGATORY NO. 3:

Identify every Advertising Sign that is currently located or has at any time from January 1, 1998 to the present been located on zoning lots owned or controlled by the City of New York, including (a) the address, block, and lot of the Advertising Sign; (b) the square footage of the Advertising Sign; and (c) whether the Advertising Sign contains electronic, flashing, moving or scrolling copy or graphics or is equipped with Bluetooth technology.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 3:

Defendant objects to this Interrogatory insofar as it is unduly burdensome for defendant to ascertain from each and every City agency whether they are aware of any advertising sign having been located on their property at any time between 1998 and the present. Plaintiff is, however, referred to the information given to its counsel in the City's March 21, 2007, August 10, 2007 and January 11, 2008 responses to Interrogatory No. 1 contained in Clear Channel Outdoor, Inc.'s Second Set of Interrogatories and the <u>Atlantic Outdoor</u> plaintiffs' Second Consolidated Set of Discovery Demands. Defendant notes that while that Interrogatory asked for information concerning advertising signs on City-owned or controlled property in proximity to arterial highways, as noted therein, the City's response included advertising signs on City-owned or controlled property without regard to the sign's proximity to an arterial highway.

## INTERROGATORY NO. 4:

For each Advertising Sign identified in response to Interrogatory No. 3, identify (a) the City agency that is/are responsible for managing, facilitating, supervising, and/or overseeing such Advertising Sign and (b) the revenue the City has received from the advertising on the sign.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 4:

Plaintiff is referred to defendant's response to Interrogatory No. 3.

## INTERROGATORY NO. 5:

Identify every street furniture structure bearing or containing an Advertising Sign that has been erected (or that is planned or anticipated) pursuant to the Coordinated Street Furniture Franchise (including without limitation bus shelters, newsstands, and public pay toilets), including (a) the address and/or approximate location of the structure; (b) the type of structure (e.g. bus shelter, newsstand, public pay toilet, etc.); (c) the number of Advertising Signs in or on the structure; (d) the square footage of the Advertising Sign(s); (e) whether and the degree to which the Advertising Sign(s) are illuminated; and (f) whether the Advertising Sign(s) contain electronic, flashing, moving, or scrolling copy or graphics or is/are equipped with Bluetooth technology.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 5:

In response to this Interrogatory, plaintiff is referred to the following documents that were given to its counsel in the Clear Channel and Atlantic Outdoor matters: 1) the list of all the bus stop shelters within the City of New York provided as Prod No. NYC6467-NYC006596; 2) the list of all the newsstands within the City of New York provided in an Excel Spreadsheet via email on January 22, 2008; 3) documents identified as Prod. No. NYC017450-535 and NYC17813-53, and provided in the City's January 14, 2008 response to Document Request No. 1 contained in Clear Channel's Third Set of Document Requests; and 5) documents identified as Prod. No. NYC018995-19010 and provided to plaintiff's counsel on March 14, 2008.

## INTERROGATORY NO. 6:

Identify (a) the revenue that the City has derived from Advertising Signs through the Coordinated Street Furniture Franchise; and (b) the revenue that the city anticipates deriving

from Advertising Signs through the Coordinated Street Furniture Franchise for each year during the life of the Coordinated Street Furniture Franchise..

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 6:

In response to this Interrogatory, plaintiff is referred to the May 19, 2006 Coordinated Street Furniture Franchise agreement between Cemusa and the City of New York, a copy of which was provided to plaintiff's counsel in the Clear Channel and Atlantic Outdoor matters as Prod. No. NYC007667-002916. To date the City has received $118,460,000.00 from Cemusa pursuant to the terms of the Coordinated Street Furniture Franchise agreement. That amount represents Cemusa's prepayment of the first four years of the guarantee to the City ($50,000,000.00 received on June 30, 2006 and $68,460,000.00 received on April 16, 2007). The City will not receive additional compensation from Cemusa until after year 4 of the franchise unless the revenue sharing provisions of the agreement are triggered. To date, those provisions have not been triggered.

## INTERROGATORY NO. 7:

Identify every bus shelter in New York City bearing or containing an Advertising Sign that currently exists or existed at any time since January 1, 1998 and that was not erected or built by Cemusa (including bus shelters that were are or part of the "Bus Stop Shelter Franchise"), including (a) the address or approximate location of the bus shelter; (b) the number of Advertising Signs in or on the bus shelter; (c) the square footage of the Advertising Sign(s); whether and the degree to which the Advertising Sign(s) are illuminated; and (e) whether the Advertising Sign(s) contain electronic, flashing, moving or scrolling copy or graphics or is/are equipped with Bluetooth technology.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 7:

In response to this Interrogatory, plaintiff is referred to the list of all the bus stop shelters within the City of New York that was provided to plaintiff's counsel as Prod No. NYC6467-NYC006596 in the Clear Channel and Atlantic Outdoor matters.

## INTERROGATORY NO. 8:

For each year from 1998 through 2006, identify the revenue that the City derived from Advertising Signs in or on bus shelters other than bus shelters erected or built by Cemusa (including bus shelters that were or are part of the "Bus Stop Shelter Franchise").

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 8:

In response to this Interrogatory, plaintiff is referred to the following chart prepared by DOT.

**DOT collected the revenue from advertising on Bus Stop Shelters from CBS Outdoor Systems, Inc.**

| Fiscal Year | Revenue Collected |
|---|---|
| 1998 | $5,750,566.00 |
| 1999 | $6,334,196.00 |
| 2000 | $6,589,351.00 |
| 2001 | $9,546,427.00 |
| 2002 | $10,343,372.00 |
| 2003 | $12,026,989.00 |
| 2004 | $12,918,902.00 |
| 2005 | $13,750,000.00 |
| 2006 | $13,511,096.00 |

## INTERROGATORY NO. 9:

Identify every public pay telephone that is located on any sidewalk in New York City and that bears or contains and Advertising Sign, including (a) the address and/or approximate location of the public pay telephone; (b) the number of Advertising Signs in or on the structure; (c) the square footage of the Advertising Sign(s); (d) whether and the degree to which the Advertising Sign(s) are illuminated; and (e) whether the Advertising Sign(s) contain electronic, flashing, moving or scrolling copy or graphics or is/are equipped with Bluetooth technology.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 9:

In response to this Interrogatory, plaintiff is referred to 1) the Public Pay Telephone ("PPT") Advertising Notices filed with DOITT by independent PPT companies and a list of PPT panels generated by Vector Media which list all the telephone kiosks with advertising panels within the City of New York which are contained on the CD-ROM provided to plaintiff's counsel in conjunction with the City's March 21, 2007 response to Interrogatory No. 2 contained in Clear Channel Outdoor, Inc.'s Second Set of Interrogatories and the Atlantic Outdoor plaintiffs' Second Consolidated Set of Discovery Demands; and 2) documents identified as Prod. No. NYC017450-536, and provided in the City's January 14, 2008 response to Document Request No. 1 contained in Clear Channel's Third Set of Document Requests.

## INTERROGATORY NO. 10:

Identify every private outdoor advertising company or other entity with which the City has contracted with respect to the management of Advertising Signs on or in public pay telephone booths or structures.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 10:

The City has not contracted with any outdoor advertising company or other entity with respect to the management of advertising signs on or in public pay telephone booths or structures. Rather, the City has entered into franchise agreements with companies to install, operate and maintain PPTs on, over and under the City's streets in order to provide public pay telephone services. Pursuant to the terms of the franchise agreements, franchisees may enter into agreements with media representatives to place advertising on the exterior rear and side panels of its curb-line PPTs in commercial and/or manufacturing zoning districts and any other zoning districts where commercial and/or manufacturing uses are permitted as of right. A copy of a sample franchise agreement between the City and a PPT provider was provided to plaintiff's

counsel as Prod. No. NYC018609-99 in conjunction with discovery in the Clear Channel and Atlantic matters.

The names of the active PPT franchisees as of December 31, 2007 are contained in the following list compiled by the DoITT.

A. M. F. TELE-COMMUNICATIONS, INC.
ADVERTEL CORPORATION
AMERICAN PAYPHONE COMMUNICATIONS, INC.
AXIOM COMMUNICATIONS, L. L. C.
B A S COMMUNICATIONS, INC.
B. D. A. PAYPHONES, INC.
COASTAL COMMUNICATIONS SERVICE, INC.
COMET COMMUNICATIONS, INC.
CONGREGATION GMACH BNEI PINCHAS
CRESCENT STAR COMM., INC.
EAGLE WING TELECOM, INC.
EAST HARLEM UNITY COMMUNICATIONS, INC.
J & J COMMUNICATIONS SERVICES, LTD
MANNY'S TEL. SYSTEMS, INC.
MICOM USA, INC.
MIMA COMMUNICATIONS
NEW YORK TELESTONE COMMUNICATIONS CORPORATION
NEXUS CONSOLIDATED INDUSTRIES, INC.
NOBLE COMMUNICATIONS CORP.
NORTHEAST TELEPHONE, INC.
NYTEL COMMUNICATIONS, INC.
PAYCO LLC
PHONE MANAGEMENT ENTERPRISES, INC.
R & B COMM., INC.
S M D HOLDING CORP.
S. A. C. VENDING, INC.
TELEBEAM (formerly URBAN TELECOMM)
TELEBEAM TELECOMMUNICATIONS CORPORATION
TELELINK COMMUNICATIONS
TELEPLEX COIN COMM., INC.
TITAN OUTDOOR COMMUNICATIONS, INC.
TOP PHONE CORPORATION
TRI-STATE PAYPHONES, INC.
UNDERDOG COMMUNICATIONS CORPORATION
VERIZON

## INTERROGATORY NO. 11:

For each year from 1998 through 2006, identify the revenue that the City derived from Advertising Signs in or on public pay telephone booths or structures.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 11:

In response to this Interrogatory plaintiff is referred to the following chart prepared by DoITT which lists the public pay telephone advertising revenue collections for fiscal years 1999 through 2007.

| Fiscal year 1999 | Fiscal Year 2000 | Fiscal Year 2001 | Fiscal Year 2002 | Fiscal Year 2003 | Fiscal Year 2004 | Fiscal Year 2005 | Fiscal Year 2006 | Fiscal Year 2007 |
|---|---|---|---|---|---|---|---|---|
| 6,226,568 | 8,497,416 | 11,298,605 | 9,416,400 | 7,568,667 | 9,328,638 | 11,146,477 | 13,389,628 | 13,768,883 |

## INTERROGATORY NO. 12:

For each year from 1998 through 2006, identify (a) the number of street banners permitted by the New York City Department of Transportation; (b) the square footage of each such banner; and (c) the address and/or approximate location of each such banner.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 12:

In response to this Interrogatory, plaintiff is referred to the list of all the banners on lampposts on City-owned property that was compiled by DOT and contained on the CD-ROM provided to its counsel in the Clear Channel and Atlantic Outdoor matters in conjunction with the City's March 21, 2007 response to Interrogatory No. 2 contained in Clear Channel Outdoor, Inc.'s Second Set of Interrogatories and the Atlantic Outdoor plaintiffs' Second Consolidated Set of Discovery Demands.

## INTERROGATORY NO. 13:

Identify each instance since 1998 in which the City of any City agency or department has advertised itself, its programs, its services, its goals, or its accomplishments or placed public service messages on any Advertising Sign, or has in any other way caused advertising copy to be placed on any Advertising Sign.

-10-

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 13:

Defendant objects to this Interrogatory insofar as it is unduly burdensome for defendant to ascertain from each and every City agency every time between 1998 and the present that they advertised themselves, their programs, services, goals or accomplishments or placed public services messages on any advertising signs or in any other way caused advertising copy to be placed on any advertising signs. Plaintiff is, however, referred to: 1) the information given to its counsel in the City's March 21, 2007 and August 10, 2007 responses to Interrogatory No. 6 contained in Clear Channel Outdoor, Inc.'s Second Set of Interrogatories and the Atlantic Outdoor plaintiffs' Second Consolidated Set of Discovery Demands; and 2) the information given to its counsel in the City's August 10, 2007, September 27, 2007 and January 14, 2008 responses to the Atlantic Outdoor plaintiffs' Third Consolidated Set of Discovery Demands. Defendant notes that while these requests asked for information concerning City advertisements in proximity to arterial highways, as noted therein, the City's responses included information about the location of City advertisements without regard to proximity to an arterial highway.

## INTERROGATORY NO. 14:

For each instance identified in response to Interrogatory Number 13, identify (a) the City agency, division, department, and/or entity that advertised on or caused an advertisement to be placed on the Advertising Sign; (b) the location of the Advertising Sign; (c) the dates during which the advertisement ran; (d) the identity of the outdoor advertising company that owned or controlled the Advertising Sign; and (e) the cost of the advertisement to the City agency, division, department, and/or entity for each year during which the advertisement ran.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 14:

Plaintiff is referred to defendant's response to Interrogatory No. 13.

## INTERROGATORY NO. 15:

Identify each government interest served by the City's regulation of Advertising Signs.

**OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 15:**

The provisions in the Zoning Resolution related to the permissible locations for advertising signs, as well the size, height, and illumination of such signs, vary by zoning district. However, such provisions are generally designed to protect neighborhood character, consistent with zoning designations, and to address aesthetic and traffic safety concerns.

**INTERROGATORY NO. 16:**

Identify each government interest served by the City's regulation of Panel Signs.

**OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 16:**

Accepting for the purposes of responding to this interrogatory that panel signs are signs of approximately the same size as, and sited in approximately the same manner as, the advertisements on the City's bus stop shelters, defendant states that the provisions of the Zoning Resolution which restrict the permissible locations of panel signs, as well as the size, height, and illumination of such signs, are generally designed to protect neighborhood character, consistent with zoning designations, and to address aesthetic concerns.

**INTERROGATORY NO. 17:**

Identify the reason(s) why (a) the City permits Advertising Signs in C6-5, C6-7 C7 and C8 commercial districts and in M1, M2 and M3 manufacturing districts but not in other districts; (b) the City does not permit internally illuminated Advertising Signs in C8, M1, M2 or M3 districts; and (c) the City permits Panel Signs in C6-5, C6-7, and C-7 districts but not in other districts.

**OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 17:**

Advertising signs are permitted in C6-5, C6-7, C7 and C8 commercial districts and in M1, M2 and M3 manufacturing districts but not in other districts for the following reasons. C6-5, C6-7 and C7 districts are mapped in high density commercial areas (such as the Times Square and Theater Subdistrict areas of midtown Manhattan) in which advertising signs (including illuminated signage) support the distinctive neighborhood character. C8, M1, M2 and

-12-

M3 districts allow for commercial and manufacturing uses, with limited community facility and residential occupancy (such as legal non-conforming occupancies and joint living work quarters for artists). Advertising signs, subject to size and other limitations, are appropriate to these areas. Advertising signs are not appropriate to residential districts or to commercial districts (other than those specified) which permit both commercial and residential use.

Directly illuminated advertising signs are not permitted in C8, M1, M2 and M3 districts because, in contrast to C6-5, C6-7 and C7 districts, these districts are located in areas throughout the City, often in close proximity to residential districts. In addition, directly illuminated signs may have negative effects on nearby non-commercial/manufacturing uses within these districts.

Panel signs, like other internally illuminated advertising signs, are permitted in C6-5, C6-7 and C7 districts, but not in other areas of the City because those districts are mapped in limited areas of the City where directly (internally) illuminated signage supports a distinctive neighborhood character.

## INTERROGATORY NO. 18:

Identify all studies and/or analyses conducted at any time since 1940 concerning or relating to the relationship between outdoor advertising and traffic safety that have been commissioned, performed or in any way relied upon by the City of New York.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 18:

Defendant objects to this Interrogatory insofar as there is no reasonable method for defendant to obtain information about what was relied upon by the City over a sixty-eight year time span. Rather, defendant can only provide a response to this Interrogatory insofar as responsive information is within the personal knowledge of current City employees or contained in records presently maintained by the City. Subject to this objection, plaintiff is referred to the information given to its counsel in the City's March 21, 2007 response to Interrogatory No. 10

-13-

contained in Clear Channel Outdoor, Inc.'s Second Set of Interrogatories and the <u>Atlantic</u> <u>Outdoor</u> plaintiffs' Second Consolidated Set of Discovery Demands.

## INTERROGATORY NO. 19:

State whether the City sought to obtain any accident report data from the New York City Department of Transportation or the New York State Department of Transportation in connection with drafting and/or promulgating the Regulations, and describe any such accident report data obtained from either agency.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 19:

Defendant objects to this Interrogatory insofar as plaintiff's definition of "the Regulations" is vague and unclear both on its face and in combination with plaintiff's definition of "Panel Signs." In addition, various forms of sign regulation have been in effect in the City at least since 1940. Thus, defendant further objects to this Interrogatory insofar as there is no reasonable method for defendant to obtain information about what was relied upon by the City over a sixty-eight year time span. Rather, defendant can only provide a response to this Interrogatory insofar as responsive information is within the personal knowledge of current City employees or contained in records presently maintained by the City. Present City employees are unaware of the City seeking to obtain accident report data in connection with the drafting and/or promulgating of the provisions of the zoning regulation related to the placement of signage in the City.

## INTERROGATORY NO. 20:

Identify all studies and/or analyses conducted at any time since 1940 concerning or relating to the relationship between outdoor advertising and aesthetics that have been commissioned, performed or in any way relied upon by the City of New York.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 20:

Defendant objects to this Interrogatory insofar as there is no reasonable method for defendant to obtain information about what was relied upon by the City over a sixty-eight

year time span. Rather, defendant can only provide a response to this Interrogatory insofar as responsive information is within the personal knowledge of current City employees or contained in records presently maintained by the City. Subject to this objection, plaintiff is referred to the information given to its counsel in the City's March 21, 2007 response to Interrogatory No. 11 contained in Clear Channel Outdoor, Inc.'s Second Set of Interrogatories and the Atlantic Outdoor plaintiffs' Second Consolidated Set of Discovery Demands.

**INTERROGATORY NO. 21:**

Identify every Advertising Sign located at or affixed upon a street-level subway entrance in New York City, including (a) the address and/or approximate location of the Advertising Sign(s); (b) the square footage of the Advertising Sign(s); and (c) whether the Advertising Sign(s) contain electronic, flashing, moving or scrolling copy of graphics or is/are equipped with Bluetooth technology.

**OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 21:**

The City of New York does not maintain information responsive to this request. Upon information and belief, it is the Transit Authority (which is part of the Metropolitan Transit Authority, a non-City controlled agency) that might maintain information responsive to this request. Thus, defendant is unable to provide plaintiff with information responsive to this Interrogatory.

**INTERROGATORY NO. 22:**

State whether the City has the legal authority to enforce the Zoning Resolution with respect to Advertising Signs located on property owned or controlled by the MTA, and state the basis for the City's conclusion.

**OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 22:**

Defendant objects to this Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, and insofar as it calls upon defendant to render a legal conclusion. However, subject to and notwithstanding that objection, defendant states that the City has the legal authority to enforce the Zoning Resolution with respect to advertising signs

located on property owned or controlled by the MTA, except that pursuant to New York State

Public Authorities Law Section 1204, subsection 13-a, the City does not have the authority to

enforce the Zoning Resolution with respect to advertising signs located on property that is

leased, operated, or otherwise under the jurisdiction and control of the Transit Authority (which

is a subsidiary of the MTA).

## INTERROGATORY NO. 23:

Describe any efforts that the City has made at any time since 1979 to convince
and/or cause the MTA to comply with any aspect of the Zoning Resolution with respect to
Advertising Signs located on property owned or controlled by the MTA.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 23:

Defendant objects to this Interrogatory to the extent that it seeks information that

is protected by the attorney-client privilege. Defendant further objects to this Interrogatory to the

extent that it is unduly burdensome to try to ascertain whether anyone in the City of New York

has, at any time since 1979, made efforts to convince and/or cause the MTA comply with the

provisions of the Zoning Resolution that are applicable to advertising signs. However, subject to

this objection, defendant states that current employees of DOB, DCP and former Deputy Mayor

Doctoroff's Office have been unable to locate documents reflecting efforts to convince or cause

the MTA to comply with the provisions of the Zoning Resolution that are applicable to

advertising signage on its non-Transit Authority controlled properties.

Defendant further states that, with respect to DOB (the City agency charged with

enforcing the provisions of the Zoning Resolution), on March 14, 1980, DOB Deputy

Commissioner Irving Minkin issued an internal memorandum stating that signs on railroad and

Transit Authority property are not within the Department's jurisdiction [see document produced

to plaintiff's counsel in the Clear Channel and Atlantic Outdoor matters as Prod. No.

NYC006649-NYC006650]. Thus, for much of the period of time between 1979 and the present,

-17-

the DOB acted with the understanding that it did not have the ability to take steps to convince

and/or cause the MTA to comply with the provisions of the Zoning Resolution that are

applicable to advertising signs.

Finally, in response to plaintiff's counsel's inquiry as to efforts undertaken by

City Council Member Gail Brewer to cause the MTA to remove advertising panels from the

subway entrances in her district, defendant states that CM Brewer recalls participating in a press

conference with then State Assembly Member Scott Stringer about the flashing LED screens

used at either the 86th Street or 79th Street subway entrances. Council Member Brewer does not

recall going to any meetings with the MTA on this topic, but recalls that she may have signed a

letter to the MTA. The letter would have come from then State Assembly Member Stringer's

office. Council Member Brewer does not have a copy of the letter or any other documents

related to advertising at subway entrances.

**INTERROGATORY NO. 24:**

Identify any alternatives to the Regulations which were proposed, distributed,

discussed, debated or drafted by the City in order to address traffic safety and/or aesthetic issues

allegedly posed by Panel Signs. For each such alternative, provide: (a) a description of the

alternative, including a description of any proposed amendments to the Zoning Resolution and

any proposed New York City Local Laws or Department of Buildings Rules; (b) a description of

what entity(ies) within the City proposed or discussed such alternatives; and (c) a description of

the outcome of that alternative, including the reasons the alternative was not enacted.

**OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 24:**

Defendant objects to this Interrogatory insofar as plaintiff's definition of "the

Regulations" is vague and unclear both on its face and in combination with plaintiff's definition

of "Panel Signs." Moreover, the rules relating to the placement of signage in the City are

interspersed throughout the Zoning Resolution (see, e.g., Z.R. §§ 32-62 through 32-661,

pertaining to signage in commercial zoning districts and Z.R. §§ 42-52 through 42-55, pertaining

to signage in manufacturing zoning districts). Some of those rules were enacted as far back as

1961 and have been amended as recently as 2001. As a result, there is no practical way for

defendant to ascertain whether, at the time of enactment or amendment of any one of those

sections, an alternative to that which is contained in the current Zoning Resolution was proposed,

distributed, discussed, debated or drafted by the City. As a result, defendant objects to

answering this Interrogatory in its entirety.

## INTERROGATORY NO. 25:

Identify (a) the number of licensed taxi cabs with (1) scrolling or digital advertisements on top of the vehicle, (2) other advertisements on top of the vehicle, and/or (3) other advertisements on the exterior of the vehicle; (b) the size of the advertisements that are permitted; and (c) the annual revenue which the City has derived from each of these categories, including but not limited to permit fees, during the period from 1998-2006.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 25:

In response to this Interrogatory, plaintiff is referred to the City's August 10, 2007

response to Interrogatory No. 1 and Document Demand No. 1 contained in the Atlantic Outdoor

plaintiffs' Fourth Consolidated Set of Discovery Demands.

## INTERROGATORY NO. 26:

State whether the street furniture operated pursuant to the Coordinated Street Furniture Franchise is subject to the New York City Zoning Resolution, including, but not limited to §§ 32-63, 32-345, 42-52 and 42-533 of the Zoning Resolution. If the answer is "no," state the reason, including by citing any applicable statutes or authorities, and the underlying rationale for such reason or exemption.

## OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 26:

Street furniture operated pursuant to the Coordinated Street Furniture Franchise

is not subject to the New York City Zoning Resolution. The Zoning Resolution regulates the use

and development of zoning lots and, unless specifically enumerated, does not govern the use or

development of the City's streets and sidewalks. The only activities taking place on the City's

streets and sidewalks that are regulated by the Zoning Resolution are those that are directly

related to the use and development of the adjoining zoning lot. The principal instances of

-18-

sidewalk regulation contained in the Zoning Resolution relate to: 1) the siting of sidewalk cafes (see Z.R., Art. 1, Ch. 4); 2) the planting of trees on the sidewalk in conjunction with development on zoning lots in Special Transportation Districts (see Z.R., Art. IX, Ch. 5, § 95-10); and 3) the projection of signs across street lines (see, e.g., Z.R. Art. II, Ch. 2, § 22-341; Art. III, Ch. 2, §§ 32-651 through 32-653; and Art. IV, Ch. 2, §§ 42-541 and 42-542).

**INTERROGATORY NO. 27:**

Identify the monetary value of all outdoor advertising, broken down by street furniture type, provided or facilitated by New York City Marketing in 2004, 2005, 2006, and 2007 to or for the benefit of (i) City agencies, (ii) non-profits and (iii) corporate partners.

**OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 27:**

In response to this Interrogatory, plaintiff is referred to the City's January 11, 2008 response to Interrogatory No. 4 contained in Clear Channel's Fourth Set of Interrogatories.

**INTERROGATORY NO. 28:**

Identify the revenues generated by New York City Marketing in 2004, 2005, 2006 and 2007.

**OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 28:**

In response to this Interrogatory, plaintiff is referred to the City's January 11, 2008 response to Interrogatory No. 5 contained in Clear Channel's Fourth Set of Interrogatories.

**INTERROGATORY NO. 29:**

Identify each witness from whom Defendant intends to elicit testimony (whether verbal or written) during the preliminary injunction proceedings, summary judgment proceedings or trial.

**OBJECTION AND/OR RESPONSE TO INTERROGATORY NO. 29:**

Defendant objects to this request as it improperly seeks to discover lay witnesses that defendant plans to elicit testimony from during the course of the litigation of these matters. Such information is work product and need not be disclosed by defendant until it is time to

compile the pre-trial order. To the extent this Interrogatory seeks information about expert witnesses, the City will inform plaintiff of any experts that they intend to elicit testimony from during the course of the litigation of these matters as soon as that information is known to defendant. At this time, defendant had not decided if it intends to rely upon expert witnesses, and if so, who it intends to rely upon.

## RESPONSE TO DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 1:

All documents that Defendant intends to introduce into the record during the preliminary injunction or summary judgment proceedings or into evidence at the trial in the Action.

### OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 1:

To the extent this request seeks information regarding the documents that defendant intends introduce into the record during the preliminary injunction or summary judgment proceedings, defendant objects to this request as it improperly seeks to discover attorney-work product. Defendant reserves the right to introduce into the record of the preliminary injunction and summary judgment proceedings any of the documents that are being provided to plaintiff during discovery in this matter, as well as any of the documents provided by plaintiff during discovery in this matter. Defendant further reserves the right to introduce any of the documents provided to plaintiff's counsel during the course of discovery in Clear Channel and Atlantic Outdoor matters. Defendant also reserves the right to introduce affidavits and declarations that have not yet been drafted into the record of the preliminary injunction and summary judgment proceedings.

To the extent this request seeks information regarding the documents that defendant intends to introduce into evidence at the trial in this litigation, defendant objects to this

request as such information is work product and need not be disclosed by defendant until it is time to compile the pre-trial order.

## DOCUMENT REQUEST NO. 2:

All documents concerning the conception, planning, drafting, debating or enactment of the Regulations, including without limitation, all drafts, communications, memoranda, and hearing transcripts.

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 2:

Defendant objects to this Document Request insofar as plaintiff's definition of "the Regulations" is vague and unclear both on its face and in combination with plaintiff's definition of "Panel Signs." Moreover, the rules relating to the placement of signage in the City are interspersed throughout the Zoning Resolution (see, e.g., Z.R. §§ 32-62 through 32-661, pertaining to signage in commercial zoning districts and Z.R. §§ 42-52 through 42-55, pertaining to signage in manufacturing zoning districts). Some of those rules were enacted as far back as 1961 and have been amended as recently as 2001. As a result, there is no practical way for defendant to compile all documents concerning the conception, planning, drafting, debating or enactment of the provisions of the Zoning Resolution governing the placement of signage throughout the City. Moreover, the majority of the document related to conception, planning, drafting, debating or enactment of the provisions of the Zoning Resolution governing the placement of signage throughout the City are unlikely to lead to the discovery of admissible evidence. As a result, defendant objects to answering this Document Request in its entirety.

## DOCUMENT REQUEST NO. 3:

All documents concerning any alternatives to the Regulations that were proposed, discussed, debated, or drafted by the City in order to address traffic safety and/or aesthetic issues allegedly posed by Panel Signs.

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 3:

In response to this Document Request, plaintiff is referred to defendant's response to Interrogatory No. 24.

## DOCUMENT REQUEST NO. 4:

All documents concerning Advertising Signs located on property owned or controlled by the City (including without limitation Advertising Signs located in or on bus shelters, public pay telephones, and/or structures that have been or will be erected pursuant to the Coordinated Street Furniture Franchise).

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 4:

Defendant objects to this Document Request insofar as it is unduly burdensome for defendant to ascertain from each and every City agency whether they are aware of any advertising sign having been located on their property at any time between 1998 and the present. Plaintiff is, however, referred to the information given to its counsel in the City's March 21, 2007, August 10, 2007, September 27, 2007, October 18, 2007 and January 11, 2008 responses to Document Requests 4 and 6 contained in Clear Channel Outdoor, Inc.'s First Document Requests and the Atlantic Outdoor plaintiffs' First Consolidated Set of Discovery Demands.

## DOCUMENT REQUEST NO. 5:

All documents concerning whether and/or the extent to which the City analyzed or considered the impact, if any, that regulation of outdoor advertising might or would have upon traffic safety and/or aesthetics, including without limitation any and all studies, analyses, reports, impact assessments, articles or other documents or data reviewed by the City.

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 5:

In response to this Document Request, defendant refers plaintiff to the information given to its counsel in the City's March 21, 2007 response to Document Request No. 7 contained in Clear Channel Outdoor, Inc.'s First Document Requests and the Atlantic Outdoor plaintiffs' First Consolidated Set of Discovery Demands.

**DOCUMENT REQUEST NO. 6:**

All documents concerning whether an/or the extent to which the City analyzed or considered the impact, if any, that regulation of outdoor advertising might or would have upon revenues generated through the coordinated Street Furniture Franchise, including without limitation any and all studies, analyses, reports, impact assessments, articles or other documents or data reviewed by the City.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 6:**

In response to this Document Request, defendant refers plaintiff to the information given to its counsel in the City's March 21, 2007 response to Document Request No. 8 contained in Clear Channel Outdoor, Inc.'s First Document Requests and the Atlantic Outdoor plaintiffs' First Consolidated Set of Discovery Demands.

**DOCUMENT REQUEST NO. 7:**

All documents supporting, contradicting or otherwise reflecting upon the City's asserted interests in promulgating the Regulations.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 7:**

In Response to this Document Request, defendant refers plaintiff to its response to Document Request No. 2.

**DOCUMENT REQUEST NO. 8:**

All contracts entered into between the City and Cemusa relating to or reflecting the Coordinated Street Furniture Franchise.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 8:**

In response to this Document Request, defendant refers plaintiff to the May 19, 2006 Coordinated Street Furniture Franchise agreement between Cemusa and the City of New York, a copy of which was provided to plaintiff's counsel in the Clear Channel and Atlantic Outdoor matters as Prod. No. NYC007667-002916.

**DOCUMENT REQUEST NO. 9:**

All contracts entered into by the City relating to the Bus Stop Shelter Franchise.

-23-

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 9:

In response to this Document Request, defendant refers plaintiff to the March 20, 1985 agreement between the City and Miller Signs Associates, granting Miller the franchise and right to construct, maintain and operate shelters at bus stops in the Boroughs of Manhattan, Brooklyn, The Bronx, Queens and Staten Island and to display advertising materials thereon, as well as its subsequent amendments, copies of which were provided to plaintiff's counsel as Prod. No. NYC018723-887 in conjunction with discovery in the Clear Channel and Atlantic matters.

## DOCUMENT REQUEST NO. 10:

All contracts entered into between the City and any private outdoor advertising company or other entity with respect to the management of Advertising Signs on or in public pay telephone booths or structures.

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 10:

The City has not contracted with any outdoor advertising company or other entity with respect to the management of advertising signs on or in public pay telephone booths or structures. Rather, the City has entered into franchise agreements with companies to install, operate and maintain PPTs on, over and under the City's streets in order to provide public pay telephone services. Pursuant to the terms of the franchise agreements, franchisees may enter into agreements with media representatives to place advertising on the exterior rear and side panels of its curb-line PPTs in commercial and/or manufacturing zoning districts and any other zoning districts where commercial and/or manufacturing uses are permitted as of right. A copy of a sample franchise agreement between the City and a PPT provider was provided to plaintiff's counsel as Prod. No. NYC018609-99 in conjunction with discovery in the Clear Channel and Atlantic matters. Defendant objects to providing copies of all PPT franchise agreements as unduly burdensome and unlikely to lead to the discovery of admissible evidence as all such agreements take the same form as the sample previously provided.

**DOCUMENT REQUEST NO. 11:**

With respect to street furniture structure[s] bearing or containing an Advertising Sign that has been erected (or that is planned or anticipated) pursuant to the Coordinated Street Furniture Franchise (including without limitation bus shelters, newsstands, and public pay toilets), documents sufficient to identify (a) the address and/or approximate location of the structures; (b) whether the structures currently exist or are planned or anticipated; (c) the type of structure (e.g., bus shelter, newsstand and public pay toilet, etc.); (d) the number of Advertising Signs in or on the structure; (e) the square footage of the Advertising Sign(s); (e) whether the Advertising Sign(s) contain electronic, flashing, moving or scrolling copy or graphics or is/are equipped with Bluetooth technology; and (f) the revenues that have been derived or that the City anticipates deriving from Advertising Signs on or in the structure.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 11:**

In Response to this Document Request, defendant refers plaintiff to its response to Document Request No. 5. In addition, plaintiff is referred to the list of Bus Stop Shelters replaced by Cemusa to date, the list of newsstands replaced by Cemusa as of February 8, 2008 and the list of newsstands to be replaced by Cemusa in the Spring of 2008, copies of which were provided to plaintiff's counsel as Prod. No. NYC018700-22 and NYC018888, in conjunction with discovery in the Clear Channel and Atlantic matters.

**DOCUMENT REQUEST NO. 12:**

With respect to bus shelters bearing or containing [] Advertising Signs currently exists in New York City and that were not erected or built by Cemusa (including bus shelters that were or are part of the "Bus Stop Shelter Franchise"), documents sufficient to identify (a) the address and/or approximate location of the shelters; (b) the number of Advertising Signs in or on the shelters; (c) the square footage of the Advertising Sign(s); (d) whether the Advertising Sign(s) contain electronic, flashing, moving or scrolling copy or graphics or is/are equipped with Bluetooth technology; and (e) the revenues that have been derived or that the City anticipates deriving from Advertising Signs on or in the shelters.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 12:**

In Response to this Document Request, defendant refers plaintiff to its response to Document Request No. 11.

**DOCUMENT REQUEST NO. 13:**

With respect to public pay telephones located on any sidewalk in New York City and that bear or contain an Advertising Sign, documents sufficient to identify (a) the address and/or approximate location of the public pay telephone; (b) the number of Advertising Signs in or on the public pay telephone; (c) the square footage of the Advertising Sign(s); (d) whether the Advertising Sign(s) contain electronic, flashing, moving or scrolling copy or graphics or is/are equipped with Bluetooth technology; and (e) the revenues that have been derived or that the City anticipates deriving from Advertising Signs on or in the public pay telephone.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 13:**

In Response to this Document Request, defendant refers plaintiff to its response to

Interrogatory No. 9.

**DOCUMENT REQUEST NO. 14:**

All documents concerning whether and/or the extent to which the City analyzed or considered the impact, if any, that the Coordinated Street Furniture Franchise and/or advertisements on bus shelters, phone kiosks, subway entrances, taxis, buses, telephone, light or other poles, or other street furniture might or would have upon traffic safety and/or aesthetics, including without limitation any and all studies, analyses, reports, impact assessments, articles or other documents or data reviewed by the City.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 14:**

In response to this Document Request, defendant refers plaintiff to the

information given to its counsel in the City's March 21, 2007 response to Document Request No.

10 contained in Clear Channel Outdoor, Inc.'s First Document Requests and the Atlantic

Outdoor plaintiffs' First Consolidated Set of Discovery Demands.

**DOCUMENT REQUEST NO. 15:**

All documents concerning whether and/or the extent to which the City analyzed or considered the financial impact, if any, that the regulation of outdoor advertising might or would have upon the City, including documents concerning actual or potential revenues, profits, rents, taxes or other financial gains derived or loss incurred from the regulation of outdoor advertising (or in the absence of such regulation).

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 15:

DOB, DCP, DOT, the City Council, the Mayor's Office and the former New York City Marketing Office have conducted searches and have not found any documents concerning whether and/or the extent to which the City analyzed or considered the financial impact that the regulation of advertising signs might or would have upon the City, other than documents setting forth operational costs to DOB associated with its enforcement of the provisions of the zoning resolution related to outdoor advertising. Defendant objects to producing such documents as doing so is unduly burdensome and the documents are unlikely to lead to the discovery of admissible evidence.

## DOCUMENT REQUEST NO. 16:

All documents concerning actual or anticipated revenues, profits, rents, taxes or other financial gain or loss which the City has derived or will derive from Advertising Signs, including without limitation through the Coordinated Street Furniture Franchise.

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 16:

In response to this Document Request, defendant refers plaintiff to its responses to Interrogatories No. 6, 8 and 11 as well as the information provided to plaintiff's counsel in the City's March 21, 2007 response to Interrogatory No. 16 contained in Clear Channel Outdoor, Inc.'s Second Set of Interrogatories, dated November 29, 2006 and the Atlantic Outdoor plaintiffs' Second Consolidated Set of Discovery Demands, dated December 15, 2006.

## DOCUMENT REQUEST NO. 17:

All documents created at any time since 1979 concerning communications between the City, on the one hand, and the MTA on the other hand, concerning Advertising Signs, billboards, and/or any other outdoor advertising, including, without limitation advertisements on subway entrances and buses.

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 17:

In response to this Document Request, defendant refers plaintiff to its response to Interrogatory No. 23. In addition, defendant states that DOT has confirmed that it does not have any documents related to communications with the MTA concerning advertisements on subway entrances or busses.

## DOCUMENT REQUEST NO. 18:

All documents created at any time since 1979 concerning any analysis or consideration with respect to whether the city has the legal authority to compel the MTA to comply with the Regulations or any other statue, rule, or regulation promulgated or enforced by the City.

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 18:

In response to this Document Request, defendant refers plaintiff to its response to Interrogatories No. 22 and 23 as well as the information provided to plaintiff's counsel in the City's March 21, 2007, October 18, 2007 and January 11, 2008 responses to Document Request No. 15 contained in Clear Channel Outdoor, Inc.'s First Document Requests and the Atlantic Outdoor plaintiffs' First Consolidated Set of Discovery Demands.

## DOCUMENT REQUEST NO. 19:

All documents created at any time since 1979 concerning (a) the City's de facto ability to obtain compliance with its outdoor advertising regulations by the MTA; and (b) any instances in which the city has actually enforced or achieved compliance with any outdoor advertising regulation against the MTA .

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 19:

In response to this Document Request, defendant refers plaintiff to information provided to plaintiff's counsel in the City's March 21, 2007 and August 10, 2007 responses to Document Request No. 17 contained in Clear Channel Outdoor, Inc.'s First Document Requests and the Atlantic Outdoor plaintiffs' First Consolidated Set of Discovery Demands.

**DOCUMENT REQUEST NO. 20:**

        All documents concerning consideration by the Office of the Deputy Mayor for Economic Development and Rebuilding and/or by the Office of the Chief Marketing Officer with respect to Advertising Signs.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 20:**

        In response to this Document Request, defendant refers plaintiff to information provided to plaintiff's counsel in the City's March 21, 2007 and December 18, 2007 responses to Document Request No. 19 contained in Clear Channel Outdoor, Inc.'s First Document Requests and the <u>Atlantic Outdoor</u> plaintiffs' First Consolidated Set of Discovery Demands.

**DOCUMENT REQUEST NO. 21:**

        All agreements or correspondence created since 1979 between the City and the New York State Department of Transportation concerning Arterial Advertising Signs, or New York State's certification of New York City under the Highway Beautification Act.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 21:**

        In response to this Document Request, defendant refers plaintiff to information provided to plaintiff's counsel in the City's March 21, 2007, October 18, 2007 and January 11, 2008 responses to Document Request No. 21 contained in Clear Channel Outdoor, Inc.'s First Document Requests and the <u>Atlantic Outdoor</u> plaintiffs' First Consolidated Set of Discovery Demands.

**DOCUMENT REQUEST NO. 22:**

        All documents concerning the provision of Advertising Signs, billboards and/or outdoor advertising under the "Made in NY" incentive program.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 22:**

        In response to this Document Request, defendant refers plaintiff to information provided to plaintiff's counsel in the City's March 21, 2007 response to Document Request No.

27 contained in Clear Channel Outdoor, Inc.'s First Document Requests and the <u>Atlantic</u>

<u>Outdoor</u> plaintiffs' First Consolidated Set of Discovery Demands

## DOCUMENT REQUEST NO. 23:

All documents concerning consideration by the Office of the Deputy Mayor for Economic Development and Rebuilding and/or by the Office of the Chief Marketing Officer with respect to Advertising Signs, billboards and/or outdoor advertising.

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 23:

In response to this Document Request, defendant refers plaintiff to information

provided to plaintiff's counsel in the City's March 21, 2007, August 10, 2007 and October 18,

2007 responses to Document Request No. 28 contained in Clear Channel Outdoor, Inc.'s First

Document Requests and the <u>Atlantic Outdoor</u> plaintiffs' First Consolidated Set of Discovery

Demands.

## DOCUMENT REQUEST NO. 24:

All documents that are produced, whether by Defendant or by third parties, (1) to OTR Media Group., Inc in the case bearing Index Number 116293/06 in the Supreme Court of New York, County of New York; (2) to Clear Channel Outdoor, Inc. in the case bearing Index Number 06 Civ. 8193 in the United States District Court for the Southern District of New York; and (3) to any of the plaintiffs in the case bearing Index Number 06 Civ. 8219 in the United States District Court for the Southern District of New York;

## OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 24:

All documents produced in the actions referenced in this request have previously

been provided by the City to plaintiff's counsel in conjunction with plaintiff's counsel's

representation of the plaintiffs in the Atlantic Outdoor matter.

## DOCUMENT REQUEST NO. 25:

All documents relating to advertisements placed (whether directly, indirectly, through outdoor advertising companies, or otherwise) on any Advertising Sign at any time since January 1, 1998 by any City agency, division, department, and/or entity (including without limitation the New York City Police Department, the New York City Department of Corrections, the New York City Fire Department, any hospital or medical facility owned, managed, or

operated by the New York City Health and Hospitals Corporation, and/or any educational institution owned, managed, or operated by the City of New York).

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 25:**

In response to this Document Request, defendant refers plaintiff to information provided to plaintiff's counsel in the City's August 10, 2007, September 21, 2007 and January 14, 2008 responses to the Atlantic Outdoor plaintiffs' Third Consolidated Set of Discovery Demands.

**DOCUMENT REQUEST NO. 26:**

Documents sufficient to identify (a) the number of licensed taxi cabs with (1) scrolling or digital advertisements on top of the vehicle, (2) other advertisements on top of the vehicle, and/or (3) other advertisements on the exterior of the vehicle; (b) the annual revenue which the City has derived from each of these categories, including but not limited to permit fees, during the period from 1998-2006.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 26:**

In response to this Document Request, defendant refers plaintiff to information provided to plaintiff's counsel in the City's August 10, 2007 responses to Interrogatory No. 1 and Document Request No. 1 in the Atlantic Outdoor plaintiffs' Fourth Consolidated Set of Discovery Demands.

**DOCUMENT REQUEST NO. 27:**

All documents relating to any actual or contemplated advertising program with respect to municipal parking garages referenced in documents Bates stamped NYC6772-6773 produced in the *Atlantic Outdoor* litigation.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 27:**

DOT has conducted a search and was unable to locate any documents responsive to this request.

**DOCUMENT REQUEST NO. 28:**

All documents relating to any actual or contemplated advertising program relating to vehicles owned or operated by the New York City Department of Transportation.

**OBJECTION AND/OR RESPONSE TO DOCUMENT REQUEST NO. 26:**

DOT has conducted a search and was unable to locate any documents responsive to this request.

Dated:      New York, New York
            March 14, 2008

MICHAEL A. CARDOZO
Corporation Counsel of the
  City of New York
Attorney for Defendant
100 Church Street
New York, New York 10007
(212) 788-1035

By: *Sheryl R. Neufeld*
Sheryl R. Neufeld (SK 2728)
Assistant Corporation Counsel

STATE OF NEW YORK          )
                           : SS.:
COUNTY OF NEW YORK         )

GABRIEL TAUSSIG, declares under the penalty of perjury, pursuant to 28 U.S.C. §1746, as follows: I have been duly designated as Acting Corporation Counsel of the City of New York and, as such, I am an officer of the City of New York, the defendant in the within action. I have read the foregoing answers to the interrogatories and, upon information and belief, believe the contents thereof to be true. The source of this information and the basis of my belief as to all such matters is information obtained from records maintained by the City of New York and from statements made to me by certain officers or agents of The City of New York.

GABRIEL TAUSSIG