# EXHIBIT 37

Agreement (this "Agreement") between the New York City Marketing Development Corporation, a local development corporation organized pursuant to Section 1411 of the Not-for-Profit Corporation Law of the State of New York and having an address at One Liberty Plaza, New York, N.Y. 10007 ("MDC") and Snapple Beverage Corp., a business corporation organized and existing under the laws of the State of Delaware, and having an address at 709 Westchester Avenue, White Plains, New York 10604 ("Snapple").

### Recitals

Whereas, MDC was formed by the City of New York (the "City") in order to design and implement a comprehensive marketing, licensing, and corporate partnership initiative, on behalf of the entire City, in order to generate revenues for the City and resources to promote the City around the world for the growth of jobs and tourism in the City, partially through the use of City-owned or controlled assets; and

Whereas, MDC determined that it could achieve the best possible agreement for the City, while also benefiting Snapple, if Snapple were designated the exclusive provider of the Exclusive Products (as hereinafter defined) on City-owned or controlled real property, and if the parties entered into a Citywide marketing campaign; and

Whereas, MDC determined that such an approach would achieve a result that was in the City's best interest without precluding the City from engaging in similar partnerships or obtaining other valuable City opportunities; and

Whereas, Snapple values an official association with the City because of the marketing synergies and powerful packaging that can be achieved through a City-wide concession agreement combined with a City-wide marketing initiative, Snapple is prepared to pay on account of cases and units of Snapple product sold through the vending machines under a City agreement combined with a Marketing Initiative (as hereinafter defined) an amount greater than it would pay for the mere right to sell Snapple from vending machines alone not combined with a marketing initiative; and

Whereas, MDC and Snapple wish to proceed to collaborate to jointly develop an expansive Marketing Initiative that includes agreed-upon market strategies and tactics, and as an integrated component of that collaborative marketing effort MDC is prepared to sponsor Snapple's being granted the right to vend certain of its beverage products on an exclusive basis and non-exclusive basis on City-owned or controlled real property through concession agreements granted by the Department of Citywide Administrative Services ("DCAS") and any successor agency; and

Whereas, in order to promote the comprehensive, integrated, collaborative Marketing Initiative, DCAS has received the approval of the New York City Franchise Concession and Review Committee to grant concessions to Snapple to place vending

1

Clear Channel

EXHIBIT NO. 12

JINEEN PAVESI

CERTIFIED REALTIME SPECIALIST

NYC011105

machines on City Property (the "City Concessions") and to have the concession payments paid to MDC on behalf of the City; and

Whereas, MDC and Snapple now wish to set forth the terms and conditions of their arrangements with respect to Marketing Initiatives and payments to be made with respect to the City Concessions in this Agreement.

<u>Agreement</u>

**NOW, THEREFORE,** the parties hereto do hereby agree as follows:

1. <u>Term.</u> The term of this Agreement shall be a period commencing on the Commencement Date (as hereinafter defined) and ending five years from the Commencement Date (the "Expiration Date"), unless sooner terminated as hereinafter provided (the "Term"). MDC shall have the right to require Snapple to cease the Marketing Initiatives on the date that is exactly four months prior to the Expiration Date, and, if MDC so requires, (i) Snapple shall nevertheless be entitled to continue selling Snapple products at Vending Locations (as hereinafter defined) until the expiration of the Term, and (ii) the City Marketing Initiative Payment (as hereinafter defined) and the Snapple Marketing Initiative (as hereinafter defined) shall be pro-rated according to the number of days remaining in the quarter to which the last City Marketing Initiative Payment relates. Notwithstanding such requirement, the remainder of Snapple and MDC's obligations, including Snapple's obligation to pay the Sales Commissions (as hereinafter defined), shall continue in effect. For the purposes of this Agreement, "Commencement Date" shall mean the date, as set forth in a written notice from MDC to Snapple providing at least five days' notice to Snapple, on which all obligations of the parties under this Agreement are to commence; provided, (i) that if MDC shall fail to deliver such notice by April 30, 2004, and (ii) that Snapple shall have delivered a written notice to MDC that if MDC shall not deliver its notice of the Commencement Date within five days of Snapple's notice then Snapple shall exercise the right to terminate contained in this paragraph, then Snapple shall have the right at any time after the expiration of the five days to terminate this Agreement and cancel its obligations hereunder by delivering written notice of such termination to MDC (unless, prior to the date of delivery of Snapple's notice of termination, MDC shall have delivered to Snapple its notice of the Commencement Date, in which case the Term of this Agreement shall commence on the date indicated in such notice; and provided further, that MDC's right to terminate set forth above shall not accrue if MDC's failure to deliver its notice of the Commencement Date is the result of any interim judicial stay (e.g., temporary restraining order or preliminary injunction). In such event, MDC shall have 30 days following the dissolution of such stay to deliver its notice of the Commencement Date to Snapple. MDC estimates that the Commencement Date shall be approximately March 1, 2004. Furthermore, "Year One" shall mean the 365-day year beginning with the Commencement Date; "Year Two" shall mean the 365-day year following Year One; "Year Three" shall mean the 365-day year following Year Two; "Year Four" shall mean the 365-day year following Year Three; and "Year Five" shall mean the 365-day year following Year Four. Furthermore, such periods may collectively be referred to as

NYC011106

"Years" or individually as a "Year", and one-half of such a period may be referred to as a "Half Year."

2. <u>Permits and Vending Locations.</u>  This Agreement forms part of a set of agreements which include the permit agreements for City Concessions attached hereto and made a part hereof as if fully incorporated herein (the "<u>Permits</u>").  Forms of Permits are set forth in Exhibit A, which cannot be changed without Snapple's consent.  The parties acknowledge that it is their objective that the Permits and other arrangements to be made by MDC will ultimately grant Snapple the right to emplace not fewer than 3500 vending machines projected to vend at least 5.5 Cases (as hereinafter defined) per week or the equivalent thereof at locations on City-owned property, City-controlled property and property owned or controlled by any other public entity with whom the City has reached an agreement (<u>e.g.</u>, the City University of New York, New York City Housing Authority, New York City Health & Hospitals Corporation, Port Authority of New York and New Jersey), in each case within the five boroughs of the City ("<u>City Property</u>"), which locations have been or will be mutually agreed by the parties hereto, on an exclusive basis with respect to the Exclusive Products and on a non-exclusive basis with respect to Non-Exclusive Products (as hereinafter defined); provided, that MDC or the City shall be responsible for securing all permits, licenses or other authorizations to use such City Property.  For the avoidance of doubt, MDC agrees that vending machines owned or operated by third parties shall not be included in this Agreement even if such vending machines dispense Snapple products.  Wherever vending machines contemplated by this Agreement may be located on City Property, whether pursuant to the Permits or otherwise, whether on an exclusive or non-exclusive basis with respect to different beverage products as defined below, such vending machine locations shall hereinafter be referred to as "<u>Vending Locations.</u>"

3. <u>Products.</u>  MDC shall arrange for Snapple and its Affiliates ("<u>Affiliates</u>" is hereby defined as any entity controlled by or under common control with Snapple Beverage Corp. selling the brands listed on Exhibit B) to have the exclusive right to locate, maintain, and operate vending machines for the following beverage products ("<u>Exclusive Products</u>") on City Property whether pursuant to the Permits or otherwise:

Bottled water

Iced Teas

Chocolate Drinks (but not including chocolate milk as defined by the United States Food and Drug Administration)

In addition, MDC shall arrange for Snapple and its Affiliates to have the right to locate, maintain, and operate vending machines for the following additional beverage products on a non-exclusive basis ("<u>Non-Exclusive Products</u>") on City Property whether pursuant to the Permits or otherwise:

Juices

NYC011107

Juice drinks

Carbonated juice drinks

Furthermore, Snapple and MDC may agree to add other products to the list of Non-Exclusive Products, and MDC shall arrange for the Permits to be modified to allow the sale of such additional products. All Snapple beverage products sold at Vending Locations shall be subject to a price list, which must be approved by MDC in consultation with DCAS and which may vary by location; provided that prices shall not be below those specified in Exhibit C. Subject to Articles 7 and 10 below, the parties acknowledge that to the extent of existing contractual commitments on the part of the City for the emplacement of vending machines, MDC's commitments hereunder shall be subject to the rights of parties under those other agreements (such parties referred to hereinafter as "Existing Vendors"), and MDC's obligations under this Article 3 shall not apply. Notwithstanding the foregoing, MDC shall arrange, at the request of Snapple, for Snapple to have access to copies of agreements and permits of the City with Existing Vendors in order to identify opportunities for the possible emplacement of Snapple vending machines or the sale of Snapple beverage products by or through Existing Vendors whether from vending machines or otherwise, in accordance with the terms of this Agreement.

    4.  Marketing Initiatives.  MDC and Snapple shall use their reasonable best efforts and shall proceed in good faith to formulate and implement Marketing Initiatives as hereinafter provided to jointly market their respective brands, logos, trademarks and other intellectual property owned by each for the mutual benefit of each party.  The parties commit to agree to the components and value of the Marketing Initiatives fairly, equitably, and in good faith.  The Marketing Initiatives shall consist of two primary components:

    (i)  an annual marketing and communication initiative using City-owned and or controlled physical media (e.g., bus stop shelters, street furniture, street banners, signage on City-owned or controlled real and personal property, etc.), advertising and promotions sponsored by the City at City-controlled locations and events (e.g., Department of Parks and Recreation concerts and sporting events) and other marketing and communication vehicles owned by or sponsored by the City, which shall have a value of at least (A) Four Million Five Hundred Thousand Dollars ($4,500,000) for Year One, (B) Six Million Dollars ($6,000,000) for each of Years Two, Three, and Four, and (C) Seven Million Five Hundred Thousand Dollars ($7,500,000) for Year Five (this component being hereinafter referred to as  the "City Marketing Initiative"); and

    (ii)  an annual marketing and communication initiative using non-City-owned or controlled media and marketing assets (this component being hereinafter referred to as the "Snapple Marketing Initiative" and both the

NYC011108

City Marketing Initiative and the Snapple Marketing Initiative together being hereinafter referred to as the "Marketing Initiatives" and separately as a "Marketing Initiative").

(a)  Within 60 days of the Commencement Date, MDC shall deliver to Snapple a written proposal for a City Marketing Initiative, and Snapple shall deliver to MDC a written proposal for a Snapple Marketing Initiative, in each case for the first year of the Term.  If both Marketing Initiatives are satisfactory, the parties shall sign the written proposals, and both parties shall be obligated to take such steps as may be required in order to realize the Marketing Initiatives.  If MDC's proposal for the City Marketing Initiative is not acceptable to Snapple or the Snapple Marketing Initiative is not acceptable to MDC, then the parties shall proceed in good faith to resolve their differences.  The parties agree to value the marketing and communications activities fairly and equitably and agree not to frustrate the terms of this Agreement by unreasonably or in bad faith disputing the value of such activities or services.  If, within 30 days following receipt of the proposals, the parties are not able to successfully resolve their differences with respect to their respective Marketing Initiatives, then the parties shall immediately thereupon submit their dispute with respect to what constitutes an acceptable Marketing Initiative to arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association (the "AAA").  The determination of the AAA arbitrators shall be final and binding upon the parties.  The AAA shall select three arbitrators, and all such arbitrators shall be individuals with at least twenty years' experience in the field of commercial marketing and advertising.  Because of the time-sensitive nature of the annual Marketing Initiatives, the arbitrators shall be required to hold a hearing to consider the submissions of the parties within one week of the invocation of arbitration by either of the parties and to render their decision within 10 business days of the close of the arbitration hearing and final submission of all materials in support of the position of the parties.  The arbitrators shall provide a reasoned written opinion.  The arbitrators shall consider the criteria and other matters hereinafter set forth in Paragraphs (c), (d) and (e) below in determining what constitutes an acceptable Marketing Initiative.  The parties agree that in the event either party invokes arbitration, both parties shall proceed as expeditiously as possible in the circumstances to conclude the arbitration, including the timely submission of any supporting materials and appearance at arbitration hearings.  Each party shall bear its own legal fees and expenses, but the cost of the arbitration shall be borne equally by the parties.

(b)  In subsequent years of the Term, MDC shall deliver a proposal for the City Marketing Initiative to Snapple no later than May 1 of the prior year for the next succeeding year, and Snapple shall deliver to MDC a written proposal for the Snapple Marketing Initiative to MDC no later than October 1 of the prior year for the next succeeding year.  The provisions of Article 4(a) above shall apply with respect to the procedural requirements for resolving any disputes over the Marketing Initiatives and with respect to the timing for resolving any such disputes.

(c)  The criteria for acceptable Marketing Initiatives shall be: (1) that the elements thereof constitute reasonable opportunities for successful advertising by both MDC and

NYC011109

Snapple, (2) that the value ascribed by the parties respectively with respect to the Marketing Initiative of each is reasonably accurate in light of, and as measured by, then current market rates for similar advertising, marketing and communications opportunities, provided however that, pursuant to generally accepted media valuation practices, the value of the City Marketing Initiative shall be considered of greater value to Snapple if the message of the Advertising Materials (as hereinafter defined) is exclusively commercial, (3) that the Snapple Marketing Initiative has an aggregate value to the City based on the foregoing value criteria of at least the Snapple Marketing Amount (as hereinafter defined) (in the measurement of which Snapple's costs may be considered) and shall be provided through Snapple's existing and planned marketing and communications plans and assets, (4) that Snapple Marketing Initiatives be designed to promote the City's brand identity, to the extent practicable, outside the boundaries of the City, (5) that the Marketing Initiative proposed for each element is not likely to derogate from the reasonable marketing objectives of each party and, with respect to the City's objectives, such Marketing Initiative may include, without limitation, the following kinds of creative techniques: making New York City the backdrop of selected Snapple television advertisements, incorporating the City's trademarks into the marketing of Snapple product names and promotions, promoting sweepstakes and giveaways which include City focused prizes, superimposing City landmarks and other figures and features identified with the City on Snapple product container labels and on coupons issued to promote Snapple products, and advertising the City on truck backs, and (6) that the Advertising Material shall be reasonably acceptable in terms of quality, character and suitability to the other party. "Snapple Marketing Amount" means (i) for Year One, $9,000,000; (ii) for Years Two, Three, and Four, $12,000,000; and (iii) for Year Five, $15,000,000, as each may be adjusted pursuant to Article 5(f).

(d)    When MDC submits the City Marketing Initiative proposal to Snapple and when Snapple submits the Snapple Marketing Initiative proposal to MDC each shall include in the proposal for approval by the other general formats or templates of advertising proposed for the Marketing Initiative that may include the name or logo of the other or other features designed to promote the other, including but not limited to radio, television, website, newspaper, brochures, circulars, signage, banners, point-of-purchase collateral, and promotional and display material ("Advertising Material"), used by the City, MDC or Snapple in performance of this Agreement prior to any such Advertising Material's being produced, distributed, disseminated or otherwise publicly released. Approval of a sample of Advertising Material shall constitute approval of that format for other forms of Advertising Material. To facilitate approval of sample Advertising Materials, MDC and Snapple shall exchange their respective guidelines for the use of their names and logos—including City logos with respect to which MDC shall be acting as the City's representative. Advertising Material disseminated to the public pursuant to the City Marketing Initiative shall utilize Snapple's name and logo, if required by Snapple. Advertising Material disseminated to the public pursuant to the Snapple Marketing Initiative, including radio and television advertising, shall utilize the City's and MDC's name and logo, if required by the City and MDC. For purposes of this Agreement, and subject to the provisions hereof, MDC is expressly granted permission to use the Snapple name, logo and trademark in Advertising Materials in conjunction with

NYC011110

the City Marketing Initiative, but in no other context and for no other purpose. Likewise, Snapple is expressly granted permission to use the City or MDC name, logo and trademark in Advertising Materials in conjunction with the Snapple Marketing Initiative, but in no other context and for no other purpose. MDC and Snapple shall each provide to the other at no charge two (2) samples of proposed Advertising Materials for the Marketing Initiative of the other as part of the proposal of each with respect to the respective Marketing Initiative of each and thereafter following publication two (2) samples of all published Advertising Materials and two (2) copies of all video and audio and audio tapes of all electronic media Advertising Materials using the other's name, logo or trademark.

(e)   In connection with the Marketing Initiatives, the parties shall designate in Exhibits D and E hereto specific marks, logos and insignia that each shall be permitted to use, reproduce, display and perform (the "Marks"). Each party hereby grants to the other a non-exclusive, royalty-free license to use, reproduce, display and perform the designated Marks based on the terms and conditions contained herein, except that with respect to the use, reproduction, display or performance of Marks on Exclusive Products, the license by MDC hereunder shall be exclusive to Snapple. The license of such Marks shall be contemporaneous with the Term of this Agreement, shall terminate immediately upon termination of this Agreement unless otherwise terminated pursuant to this Article and shall be granted by each party to the other on the following terms:

(i)   Each party may use, reproduce, display and perform the Marks during the Term of this Agreement.   Neither party shall use the Marks, the corporate names or other intellectual property of the other party without the prior, written approval of the other party, except that the City's Marks may be used only in conjunction with the "Snapple", "Snap20" and "YooHoo" brands; provided, however, that the City Marketing Initiative shall not be limited to the "Snapple", "Snap20" and "YooHoo" brands. Snapple shall not use the names, logos or insignia of the City or any of the City's agencies or departments, without the prior written approval of MDC or of the City.   Each party shall use the other's Marks only as approved in advance in writing by the owner of the Mark.

(ii)   For purposes of this Agreement, and subject to the provisions hereof, each party is granted permission to use the names, logos, and trademarks of the other for purposes of the Marketing Initiatives and in approved Advertising Materials, but in no other context and for no other purpose. Use of the Marks shall be credited to the party owning the Mark within approved Advertising Materials in a form designed by the party owning the Mark.

(iii)   By virtue of this Agreement, neither party shall claim right, title or interest in any of the Marks of the other.   Any use by one party of the Marks of the other shall inure to the owner of the Mark.   Each party acknowledges and admits the ownership by the other of the other's Marks, names and logos, and the validity of the same and agrees not to question

NYC011111

the validity of those Marks or the respective party's rights therein. Each party recognizes that the other's Marks, names and reputation communicate to the public, world-wide, a reputation for high standards, which reputation and goodwill have been and continue to be unique to the other party. Therefore, no Mark shall be used in connection with any illegal or immoral purpose or activity, or in any manner which would be inconsistent to or damaging to the owner's name and reputation. Either party shall have the right to terminate this Agreement immediately, upon written notice, in the event that any of the Marks owned by that party are used by the other party in connection with any illegal, illicit or immoral activity. In addition, in the event that either party considers that any Marks owned by it are being used by the other party in any way in which, in the exercise of reasonable judgment, is inconsistent with or damaging to the owner's name or reputation, the aggrieved party shall so notify the other party in writing and this Agreement may be terminated by the aggrieved party for cause unless the other party ceases and halts all such uses immediately upon receipt of such notice.

(iv) Each party acknowledges and admits that its failure to cease the use of the other's Marks upon termination or expiration of this Agreement, or its use of the other's Marks for non-permitted or non-agreed upon uses, will result in immediate and irreparable harm to the owner of the Mark, that the owner of the Mark has no adequate remedy at law for the other's failure to cease use of the Mark, and the owner of the Mark shall be entitled to seek equitable or injunctive relief against the other's failure to cease such use in addition to any and all other remedies available at law.

(v) Copyright in any Advertising Materials conceived under or resulting from this Agreement, including but not limited to copyrighted materials and trademarks, trade names, service marks, trade dress and the like, whether developed separately or jointly, shall be the exclusive property of the party that commissioned, prepared or paid for the production of the Advertising Material, except to the extent that such Advertising Materials use the names or Marks of the other party.

5. Payments to MDC. Snapple shall be obligated to make payments to MDC for sales of Snapple beverage products according to the following terms and conditions:

(a) (i) On account of Snapple products sold from Snapple vending machines at Vending Locations emplaced pursuant to the Permits or pursuant to other arrangements successfully initiated and implemented by MDC, Snapple shall pay MDC thirty percent (30%) of the retail sales price (net of sales taxes) per unit sold ("Sales Commissions I"); and (ii) on account of Snapple products sold by New Customers (as hereinafter defined) on City Controlled Property (hereinafter defined), Snapple shall pay MDC seven and one half percent (7½%) of Snapple's net sales price to such New Customers of Snapple beverage products which are subsequently sold by such New Customers on City Controlled Property ("Sales

NYC011112

Commissions II"). For purposes of this Agreement, "New Customers" shall mean third parties which (A) begin (including through concession, permit or franchise renewal), after the date hereof, to sell Snapple beverage products on City Controlled Property through separate Permits or otherwise, other than through vending machines, as a result of the efforts of MDC pursuant to Article 5(j) and (B) enter into an agreement to purchase such Snapple beverage products directly from Snapple or its designee, as a result of the efforts of MDC pursuant to Article 5(j), and "City Controlled Property" shall be deemed to include solely City-owned and controlled real property within the five boroughs of the City and not City Property controlled by any other person or entity. Sales Commissions I and II are collectively referred to as "Sales Commissions".

(b) Snapple shall, subject to Article 5(f) below, make payments to MDC on account of the City Marketing Initiative in the amount of: (i) in Year One, Four Million Five Hundred Thousand Dollars ($4,500,000); (ii) in Years Two, Three, and Four, Six Million Dollars ($6,000,000.00) per year; and (iii) in Year Five, Seven Million Five Hundred Thousand Dollars ($7,500,000) (each such yearly total to be called the "City Marketing Initiative Payment").

(c) Snapple shall remit the payments prescribed by Articles 5(a) and 5(b) above as follows:

(i) Sales Commissions I and II shall be remitted to MDC as a single payment no later than the last day of the first month following the last day of each Half Year during the Term, on account of sales made during the previous Half Year; with the first payment on account of Sales Commissions for sales through May 31, 2004, to be remitted no later than June 30, 2004; and thereafter Sales Commissions shall be remitted as set forth above (with the second payment on account of Sales Commissions to cover Sales Commissions for the remainder of Year One). The payment for the last Half Year of the Term (i.e., the last half of Year Five) shall be due and payable thirty-one days following the expiration of the Term (each such date a "Sales Commission Due Date"). If a Sales Commission Due Date shall fall on a Saturday, Sunday, or legal holiday, the applicable Sales Commission shall be paid on the next business day. Payments shall be remitted by certified or bank check drawn on or paid by a New York City Clearing House Bank, or by wire transfer, in each case in immediately available funds and delivered to MDC at the address of MDC indicated herein or at such other address as MDC may hereafter instruct Snapple to deliver the check to or by wire transfer, all according to the instructions of MDC.

(ii) The City Marketing Initiative Payments shall be remitted to MDC no later than the following dates and, subject to Article 5(f)(ii), in the following amounts:

NYC011113

(A) for Year One, on the Commencement Date, One Million Dollars ($1,000,000), on the first business day no later than 90 days following the Commencement Date, One Million Two Hundred Fifty Thousand Dollars ($1,250,000), on the first business day no later than 91 days thereafter, One Million Dollars ($1,000,000), and on the first business day no later than 92 days thereafter, One Million Two Hundred Fifty Thousand Dollars ($1,250,000);

(B) for Years Two, Three, and Four, on the first business day of the Year, One Million Dollars ($1,000,000), on the first business day no later than 90 days thereafter, Two Million Dollars ($2,000,000), on the first business day no later than 91 days thereafter, Two Million Dollars ($2,000,000), and on the first business day no later than 92 days thereafter, One Million Dollars ($1,000,000); and(C) for Year Five, on the first business day of Year Five, One Million Two Hundred Fifty Thousand Dollars ($1,250,000), on the first business day no later than 90 days thereafter, Two Million Five Hundred Thousand Dollars ($2,500,000), on the first business day no later than 91 days thereafter, Two Million Five Hundred Thousand Dollars ($2,500,000), and on the date of the final Sales Commission Due Date, One Million Two Hundred Fifty Thousand Dollars ($1,250,000).

(Each such date a "City Marketing Initiative Payment Due Date"). City Marketing Initiative Payments shall be remitted on City Marketing Initiative Payment Due Dates in the same manner as Sales Commissions.

(d) Snapple shall maintain proper, orderly and adequate books and records at Snapple's headquarters or another Snapple office located within fifty (50) miles of the City of New York with respect to its sales of Snapple products at Vending Locations. Such books and records shall be organized according to location and by beverage category. Snapple shall retain such books and records for a period of at least six years after the expiration of the periods to which the books and records relate. The books and records of Snapple with respect to the sales subject to Sales Commissions hereunder shall be subject to reasonable inspection upon reasonable notice during normal business hours, and without undue interruption to the business of Snapple (but not more than three times in any calendar year) by MDC, its accountants, employees and representatives. Notwithstanding the preceding sentence, the powers, duties, and obligations of the Comptroller of the City of New York pursuant to the provisions of the New York City Charter shall not be diminished, compromised, or abridged in any way.

(e) No later than each Sales Commission Due Date, Snapple shall submit a statement from an appropriate financial officer of Snapple or its Affiliates of vice-presidential rank or higher supporting the quarterly remission of Sales Commissions to MDC. In addition, Snapple shall prepare or cause the preparation of an annual report to be submitted to MDC which shall show the net

NYC011114

sales from the sale of Snapple beverages sold at the Vending Locations, by New Customers, and such other information as may be necessary to support the Sales Commissions and sales of Cases for purposes of determining amounts owed by Snapple pursuant to Article 5(i) hereunder (the "Annual Report"). The Annual Report shall be delivered to MDC within ninety days of the end of Snapple's fiscal year. Subject to its right to audit reserved herein, MDC will rely on the reports furnished pursuant to this Article 5(e) for the truth and accuracy of the representations therein with respect to revenues supporting the calculation of Sales Commissions.

(f)  (i) In the event of any discrepancies between Sales Commissions remitted and the Annual Report which show that there has been either an underpayment or overpayment and the satisfactory resolution of any issues of underpayment or overpayment between the parties, any underpayment or overpayment shall be reconciled by (x) MDC's crediting Snapple with respect to future Sales Commissions on account of any overpayments and (y) Snapple's remitting to MDC promptly following the resolution of any underpayment the amount of any underpayment with interest at the prime rate published in the Wall Street Journal on the date of resolution of the underpayment, such interest to be calculated from the date that payment should have been made with respect to any such underpayment. If, with respect to the last Year of the Term, Snapple shall be entitled to credit for an overpayment, MDC shall promptly remit the amount of such overpayment to Snapple within ninety (90) days of the date that the parties resolve any issue with respect to overpayment. If it should be determined following an audit by MDC that Snapple has underpaid by more than 5% of the amount that should have been paid, Snapple shall reimburse MDC the cost of the audit. If it should be determined following an audit by MDC that Snapple has underpaid in consecutive audits by more than 5% of the amount that should have been paid, Snapple shall pay, in addition to the interest at the prime rate, five percent (5%) of the amount of the underpayment, except if such underpayments are related to Sales Commissions II.

(ii)     If Snapple shall fail (a) during Year One to sell at least seven hundred and fifty thousand Cases of Snapple product (a "Case" shall be defined as a twenty-four (24) bottle container of Snapple product) from all Vending Locations, (b) during each of the Years Two, Three, or Four to sell at least one million Cases from all Vending Locations, and (c) during Year Five, to sell at least one million two hundred and fifty thousand Cases from all Vending Locations (each of the Case sales set forth in (a) through (c), respectively, are hereinafter referred to as a "Baseline"), then MDC acknowledges that the full City Marketing Initiative had not been earned in that respective Year and, as a result, in the next succeeding Year of the Term, MDC shall make up the difference to Snapple of the shortfall between the Baseline and actual sales of Cases (the "Baseline Shortfall") as follows:

NYC011115

Snapple shall have the right to (x) to take a credit against the City Marketing Initiative Payment next due at a value of $3.00 times the Baseline Shortfall; and (y) reduce Sales Commission I from 30% to a level such that the percentage difference between the 30% and the reduced percentage is projected to produce within the first nine months of such Year, a dollar value which equals $3.00 times the applicable Baseline Shortfall, with such projection to be calculated using the aggregate prior Year's sales volume of Snapple products from Vending Locations. When the dollar value of (x) and (y) aggregates $6.00 times the applicable Baseline Shortfall (the "City Make Whole Amount"), then Snapple shall resume its obligation to make Sales Commission I and City Marketing Initiative Payments at the full values prescribed in Article 5(a) and (b) above.

Notwithstanding the foregoing, if there is a Baseline Shortfall for Year Five (or any unpaid City Make Whole Amount for any prior Year), then, rather than using the credit against the City Marketing Initiative Payment and reduced Sales Commission I outlined above, the City Make Whole Amount for such Year (and any unpaid City Make Whole Amount for any prior Year) shall be paid as follows: (x) first, Snapple shall be entitled to reduce the final installment of the City Marketing Initiative Payment for such Year and the final amount of Sales Commissions for such Year (collectively, the "Final Payment") by an amount equal to the City Make Whole Amount for such Year (and any unpaid City Make Whole Amount for any prior Year) and (y) next, if the amount of the City Make Whole Amount for such Year (and any unpaid City Make Whole Amount for any prior Year) shall exceed the Final Payment, then the Final Payment shall be reduced to zero and, within ninety (90) calendar days after the expiration of the Term, MDC shall pay to Snapple an amount in cash, in immediately available funds, equal to such excess.

In addition to the foregoing, in the event of a Baseline Shortfall, the applicable Snapple Marketing Amount in the succeeding Year shall be reduced to an amount equal to the Snapple Marketing Amount for such succeeding Year multiplied by a fraction the numerator of which shall be equal to the total number of Cases of Snapple products sold through vending machines at Vending Locations during the Year of the Baseline Shortfall, and the denominator of which shall be the applicable Baseline for the Year of the Baseline Shortfall.

NYC011116

The foregoing shall constitute the sole and exclusive remedy of Snapple in the event of a Baseline Shortfall unless the Baseline Shortfall is otherwise attributable to a separate Event of Default (as defined hereinafter) under this Agreement. In addition to Case sales from Vending Locations, MDC shall be entitled to include in the Baseline Case sales by New Customers on City Controlled Property at the rate of one (1) Case for every five (5) Cases sold by New Customers ("NC Case Sales Ratio"). Further, to the extent that MDC arranges for the sale of Snapple products on an exclusive or non-exclusive basis on privately controlled property within the five boroughs of the City at locations acceptable to Snapple, Cases sold from such privately controlled property shall be included in the Baseline in the same manner as set forth in the preceding sentence (i.e., 1:1 for vending machines, 5:1 for New Customer sales).

(g)  If the City is awarded the right to host the 2012 Olympics, MDC may elect to eliminate the exclusive right of Snapple and/or its Affiliates to sell bottled water at Vending Locations.  Upon the election of MDC by written notice to Snapple to eliminate the exclusive right of Snapple and/or its Affiliates to sell bottled water at Vending Locations, which notice must be sent no later than September 1, 2005, such exclusive right shall become a non-exclusive right beginning no earlier than December 31, 2005.  In addition, should MDC exercise its rights specified in this paragraph (g), MDC shall grant to Snapple a deduction from the $6,000,000 annual City Marketing Initiative Payment in the amount of the difference between the "annual average number" of Cases of bottled water sold for Years One and Two, as calculated below, and the number of Cases of bottled water sold in each subsequent Year, multiplied by $3.00 per Case for such Year.  For example, if the "annual average number" of Cases of bottled water per year in each of Years One and Two is 1,000,000 and 500,000 Cases of bottled water are sold by Snapple in Year Three, the deduction granted for Year Three shall be 1,000,000 Cases of bottled water less 500,000 Cases of bottled water (Year Three sales) multiplied by $3.00 per Case of bottled water for a total of $1,500,000, resulting in an annual City Marketing Initiative Payment of $4,500,000 for Years Three and Four ($6,000,000 minus $1,500,000) and $6,000,000 for Year Five ($7,500,000 minus $1,500,000).  Such deduction shall become effective in Year Three and any years remaining in the Term.  In the event of such deduction, Snapple shall have the right to take the Year Three deduction as a full credit against the City Marketing Initiative Payment for Year Four.  The "annual average number" of Cases of bottled water sold for Years One and Two shall be determined as follows:  (i) first, determine the total actual number of Cases of bottled water sold by Snapple through December 31, 2005; (ii) second, divide that number by the total number of actual months in the period from Commencement Date through December 31, 2005; and (iii) third, multiply the number obtained in clause (ii) by twelve (12).

(h)  Intentionally deleted.

NYC011117

(i) If, during any Year, sales of Snapple products from all Vending Locations shall exceed two million Cases (the "Break Point") then Snapple shall be required to pay to MDC, no later than thirty-one days following the commencement of the next succeeding Year, $3.00 times the number of Cases sold above the Break Point.

(j) Subject to all existing contracts, applicable laws, rules and regulations, MDC shall use good faith efforts to arrange for Snapple and/or its Affiliates to become the exclusive provider(s) of Exclusive Products and the non-exclusive provider of Non-Exclusive Products sold by New Customers. In the event MDC successfully makes such arrangements for Snapple, then Snapple and MDC shall include sales of Snapple products through such New Customers in sales subject to Sales Commissions II.

6. Intentionally Deleted.

7. Removal of Existing Vending Equipment.  MDC shall supervise and enforce the removal of all vending equipment and products from Vending Locations which equipment vends non-Snapple products that fall within the categories which are denominated "Exclusive Products" in the Permits, unless such vending equipment must be retained in accordance with valid, effective agreements with Existing Vendors as defined in the permits.  In such cases, MDC agrees to remove such equipment and products as soon as practicable upon the expiration or earlier termination of the agreements between the City and Existing Vendors.  MDC acknowledges that the failure of MDC to enforce this policy to require placement of only Snapple vending equipment in the Vending Locations for Exclusive Products and to ensure the removal of such non-Snapple equipment adversely affect Snapple's ability to realize its marketing and sales objectives under the Permits and this Agreement.  Accordingly, in the event such equipment and products are not removed as agreed upon herein, the parties agree that the parties, acting in good faith, will renegotiate and modify Snapple's monetary obligations hereunder.  If the parties cannot agree on an appropriate modification of Snapple's monetary obligations hereunder by reason of a failure on MDC's part to promptly remove the subject vending equipment and products, the dispute shall be submitted to binding arbitration through the AAA with procedures as contemplated by Article 4(a).

8. Indemnification.  Snapple hereby agrees to defend and indemnify MDC and the City and all officers, directors, employees, representatives and agents of MDC and the City (each an "MDC Indemnified Party") and to hold them harmless from and against any and all claims, demands, causes of action, liabilities, damages, loss, cost and expenses ("Exposures") which may arise as a result of (1) Snapple's installation, maintenance or operation of the vending machines in the Vending Locations, the consumption of any product of Snapple and its Affiliates purchased from such vending machines or the actions or failure to act on the part of Snapple or any Snapple employee, or the breach by Snapple of any obligation imposed on it by the Permits, except to the extent that any such Exposure arises from the negligence of any MDC Indemnified Party; and (2) the City's use of the Snapple Marks and Snapple's creation, dissemination and

NYC011118

promotion of Advertising Materials under this Agreement, except to the extent that any such Exposures may arise by reason of the negligence of any MDC Indemnified Party; and (3) the material breach of any representation of Snapple made in this Agreement.

MDC hereby agrees to defend and indemnify Snapple and all Affiliates, officers, directors, employees, representatives, and agents of Snapple (each a "Snapple Indemnified Party") and to hold them harmless from and against any Exposures which may arise as a result of (1) Snapple's use of the City's Marks by a Snapple Indemnified Party and the City's creation, dissemination and promotion of any Advertising Materials under this Agreement, except to the extent that any such exposure arises from the negligence of any Snapple Indemnified Party; (2) the material breach of any representation of MDC made in this Agreement; and (3) any arrangement between MDC and/or the City and the owner or controlling entity of City Property that is not City Controlled Property regarding the sale of Snapple products, to the extent that any such Exposure directly arises out of such arrangement itself, and not out of any Exposure for which Snapple agrees to provide defense and indemnification in the first paragraph of this Article 8.

9. Insurance. Snapple shall purchase and maintain in full force and effect without interruption during the Term an insurance policy or policies and an excess coverage policy naming MDC and the City as additional insureds which policies shall cover, through endorsement or otherwise, all Exposures with respect to which Snapple has agreed to indemnify the Indemnified Parties. The policies shall expressly include completed operations and products liability coverage and advertising coverage and such other coverage as may be necessary to cover Exposures associated with and arising out of the Marketing Initiatives. The limits of the primary liability policies covering each category of risk shall be Five Million Dollars ($5,000,000) per occurrence and Five Million Dollars ($5,000,000) aggregate per year, and the limits of the excess coverage policy shall be Ten Million Dollars ($10,000,000) for an aggregate coverage of Fifteen Million Dollars ($15,000,000) with respect to all Exposures. The policies shall be written by admitted carriers in New York State having a Best's rating of A or better. Snapple represents and warrants that on the date hereof the required policies are in full force and effect, and the parties acknowledge delivery by Snapple to MDC of certificates of insurance showing the coverages required hereunder. Snapple shall deliver or cause to be delivered to MDC certificates of insurance showing the insurance required hereunder to be in full force and effect upon request of MDC, and, in any event, as soon as practicable prior to the renewal date or dates of the policies in effect on the date hereof. The policies shall expressly provide that they cannot be cancelled without notice to the additional insureds. Each party agrees that all such insurance policies shall provide that they may not be cancelled with less than thirty (30) days' notice and that such notice shall be provided to the other party. The other party shall immediately be notified of any notices of cancellation or termination of such policies for any reason and shall be provided with a certificate of insurance identifying it as an additional named insured under all such policies. To the extent that any insurance policy may be written on a "claims made basis," such insurance coverage shall be maintained for at least six (6) years after the expiration of the Term. If at any time the insurance required hereunder shall not be in

NYC011119

full force and effect, MDC shall have the right to purchase insurance policies in the limits and for the coverages required hereunder and charge the premiums back to Snapple, and Snapple shall promptly reimburse MDC for the costs of any premiums paid by MDC for such substitute policies.

10. Mutual Support. For the mutual benefit of each party, MDC will use its best efforts at all times during the Term to maximize the sales opportunities which may be available to Snapple and/or its Affiliates on City Property. Snapple and/or its Affiliates will use their reasonable best efforts to maximize sales at all Vending Locations. The parties acknowledge that as of the date hereof MDC and the City have arranged through the Permits and otherwise for Snapple and/or its Affiliates to emplace their vending machines in approximately 1400 locations on City Property, with the acknowledged objective that, upon full implementation of this Agreement, Snapple and its Affiliates shall have the right to emplace not fewer than 3500 vending machines in mutually agreed locations on City Property (the "3500 Objective"); provided, however, that in Year One, Snapple and its Affiliates shall have the right to place not fewer than 2,625 vending machines in agreed upon locations. MDC shall use reasonable efforts to arrange for additional Vending Locations and related Permits in the event that more than 3500 locations are desired. In no event shall the mere failure to achieve the 3500 Objective be deemed to constitute a default hereunder giving rise to an Event of Default. Upon the termination or expiration of the rights of Existing Vendors, MDC shall arrange for Snapple and/or its Affiliates to become the sole purveyor(s) of Exclusive Products through vending machines at the Vending Locations. Furthermore, MDC shall arrange for Snapple and its Affiliates to install their vending machines at such locations where other vending machines are located and in such a number which shall be at least equal to all other vending machines in that location. This undertaking on the part of MDC shall be conditioned by policies and rules of the City with respect to public safety and convenience. To the extent that there may be agreements with vendors of products which fall within any of the categories of Exclusive Products, MDC will cause the City not to renew, extend or modify such agreements during the Term. Furthermore, MDC will cause the City to terminate as soon hereafter as shall be practicable, any agreement with an existing vendor of non-Snapple Exclusive Products to the extent any such agreement may by its terms be terminated without cause and without penalty to the City prior to the expiration of its term (and remove the related equipment). To the extent any such agreement may be terminated, but such termination precipitates a penalty or liquidated damages payable by the City, then MDC shall nevertheless arrange for a termination of any such agreement (and remove the related equipment), provided that Snapple first agrees to fund the amount of any such penalty in advance.

Snapple agrees that it will maintain in good working order and condition all vending machines covered hereunder and will stock such vending machines regularly with Snapple beverage products in such manner as to maximize sales opportunities at all Vending Locations. The parties further acknowledge that the Permits are necessarily terminable-at-will under the legal requirements by which the City is bound with respect to the use of City Property. Notwithstanding such necessary legal condition, MDC hereby undertakes at all times during the Term to cause the City not to terminate the

NYC011120

Permits except for cause. If for any reason a Permit should be terminated other than for cause, MDC will arrange for substitute locations for Snapple and/or its Affiliates to emplace vending machines removed by reason of the termination of a Permit or partial termination of a Permit other than for cause so that Snapple will be held harmless by reason of the loss of a location or locations by reason of the termination of a Permit or a partial termination of a Permit other than for cause.

    **11.**    Defaults. A. The following shall be deemed to constitute events of default ("Events of Default") hereunder:

    (1) Default by Snapple in remitting Sales Commissions or City Marketing Initiative Payments when due, provided Snapple has not cured such default within 30 days' written notice of default from MDC;

    (2) Default by either party in honoring its obligation to indemnify any of the Indemnified Parties pursuant to Article 8 hereof after a final, non-appealable adjudication of liability and the attribution thereof;

    (3) Any illegal or immoral activity by the City or Snapple, or any activity by the City or Snapple that would be inconsistent with or damaging to MDC's, the City's or Snapple's name or reputation, as the case may be;

    (4) The filing by the City or Snapple of a voluntary petition in bankruptcy or the filing against the City or Snapple of an involuntary petition in bankruptcy and the failure of the City or Snapple to cause said petition to be withdrawn or vacated within sixty (60) days of the filing of said petition or the voluntary dissolution of Snapple or Snapple's or the City's having been found to be unable to pay its debts in due course or a trustee having been appointed to manage its business.

    (5) Default by MDC or Snapple of any of their respective obligations or representations under this Agreement, provided that the defaulting party has not cured any such default within thirty (30) days' written notice of default, or if such cure is not reasonably possible within a thirty (30) day period, the defaulting party did not commence to cure the default within the thirty (30) day period.

    B. In the event either party successfully proves after the exhaustion of all appeals that an Event of Default hereunder has occurred, the parties shall be entitled to assert the following remedies:

    (1) The successful party shall be entitled to terminate this Agreement for cause;

    (2) The successful party shall be entitled to seek damages for its direct losses.

In the event either party terminates this Agreement for cause, Snapple shall promptly remove its equipment from City Property wherever located and repair any damages to the premises occupied by the equipment caused by Snapple's installation, operation, or

NYC011121

removal of such equipment, reasonable wear and tear excepted. Except for items B(1) and (2) above, neither party shall be obligated to pay any monetary damages to the other on account of any Event of Default, and no party shall be entitled to consequential damages, including any claim for lost profits.

C. The following provisions of this Agreement shall be deemed to survive the expiration or earlier termination of this Agreement whether by reason of a voluntary termination or on account of an Event of Default or otherwise:

(1) The obligation on Snapple's part to remit Sales Commissions through the date of termination when due pursuant to Article 5 hereof.

(2) The obligation of Snapple to pay the City Marketing Initiative Payment through the date of termination if MDC shall have terminated this Agreement for cause and, if Snapple shall have terminated this Agreement for cause, MDC shall be obligated to pay to Snapple an amount in cash equal to any unpaid City Make Whole Amount within 30 calendar days after such termination;

(3) The indemnification obligations under Article 8 hereof;

(4) The obligation of Snapple to maintain and retain adequate books and records pursuant to Article 5(c) hereof and to prepare and deliver to MDC pursuant to Article 5(d) hereof an Annual Report;

(5) The obligation of MDC to provide the City Marketing Initiatives covered by all City Marketing Initiative Payments made by Snapple; and

(6) Any other provision of this Agreement that, by its terms, extends beyond the Agreement's expiration or termination.

D. In the event of any termination of this Agreement, to the extent that Snapple has any inventory (including, without limitation, any raw materials, packaging, labeling, or finished products) which contains City Marks, Snapple shall be entitled to continue to utilize such Marks for the purpose of depleting such inventory (but not for the purpose of creating new inventory).

In all other respects, the parties shall have no further rights or obligations one to the other following termination.

12.    Intentionally deleted.

13.    Notices. Any notice required to be given in connection with this Agreement shall be in writing and delivered by overnight or same day courier service with confirmation and addressed to the following parties, or to such other address as the parties may designate in accordance with Article 13:

NYC011122

If to Snapple:

Snapple Beverage Corp.
709 Westchester Avenue
White Plains, New York 10604
Attn:  Vice President, Partner Marketing
Telephone:  (914) 397-9331
Fax:  (914) 286-4646


With a copy (which shall not be deemed to be notice) to:

Snapple Beverage Corp.
709 Westchester Avenue
White Plains, New York 10604
Attn:  General Counsel
Telephone:  (914) 397-9204
Fax:  (914) 397-9368


If to MDC:

New York City Marketing Development Corporation
One Liberty Plaza, 34th Floor
New York, New York 10006
Attn:  President and Chief Marketing Officer
Telephone:  (646) 587-5601
Fax:  (646) 587-5610


With a copy (which shall not be deemed to be notice) to:

New York City Law Department
100 Church Street
New York, New York 10007
Attn:  Chief, Economic Development Division
Telephone: (212) 788-1333
Fax: (212) 227-5648


   **14.  Snapple Representations.**  Snapple represents that it has the full power and
authority to enter into this Agreement and that it has procured all corporate approvals and

NYC011123

authorizations necessary to assume the obligations and perform or cause to be performed the requirements imposed on it by this Agreement and that it is not subject to any other agreements, corporate resolutions, court orders, judgments, laws, regulations, administrative orders or the like which would compromise, impair or prevent performance by it pursuant to this Agreement and that the action entitled McGuckin v. Snapple Distributors, Inc., et al. (the "Litigation") does not prevent Snapple from performing or causing the performance of all of its obligations under this Agreement.

15. <u>MDC Representations.</u>  MDC represents that it has the full power and authority to enter into this Agreement and that it has procured all corporate approvals and authorizations necessary to assume the obligations and perform the requirements imposed on it by this Agreement, including all necessary approvals and authorizations from the City, and that it is not subject to any other agreements, corporate resolutions, judgments, court orders, laws, regulations, administrative orders or the like which would compromise, impair or prevent performance by it pursuant to this Agreement.

16. <u>No Agency.</u>  Neither MDC nor Snapple nor any of their respective affiliates, employees, agents or subcontractors is or shall be an agent, servant or employee of the other by virtue of this contract or by virtue of any approval, permit, license, grant, right or other authorization given by MDC or the City or any of their officers, agents or employees.

17. <u>Confidentiality.</u>  Except as otherwise required by law, Snapple agrees to, and shall cause its Affiliates, agents, representatives, accountants, employees, officers and directors to: (i) treat and hold as confidential all the reports, information or data, furnished to or prepared, assembled or used by Snapple under the Agreement, and (ii) prior to publication, not disclose or provide access to such confidential information to any individual or organization without the prior written approval of MDC.

Except as otherwise required by law, MDC agrees to, and shall cause the City and each of their respective agents, representatives, accountants, employees, officers and directors to: (i) treat and hold as confidential all information relating to the sales of Snapple products at Vending Locations the City or MDC may obtain under this Agreement, including all information obtained pursuant to Article 5 of this Agreement, and (ii) not disclose or provide access to such confidential information to any individual or organization without the prior written approval of Snapple.  Notwithstanding anything in this Article, disclosure by MDC to the City shall not violate this provision.

In the event that either party, or any respective Affiliate, agent, representative, employee, officer or director, becomes legally compelled to disclose the confidential information of the other party, such party (the "Disclosing Party") must provide the other party with prompt written notice of such requirement so that the other party may seek a protective order or other remedy or waive compliance with this Article 17.  In the event that such protective order or other remedy is not obtained, or compliance with this Article 17 is waived, the Disclosing Party agrees to furnish only that portion of such confidential information which is legally required to be provided and exercise its

NYC011124

reasonable best efforts to obtain assurances that confidential treatment will be accorded such information.

Notwithstanding the foregoing, this Article 17 shall not apply to any information that, at the time of disclosure, (i) was available publicly and not disclosed in breach of this Agreement, (ii) was known to the receiving party without breach of an obligation of confidentiality or (iii) was learned from a third party who was not under an obligation of confidentiality. The parties agree and acknowledge that remedies at law for any breach of the obligations under this Article 17 may be inadequate and that in addition thereto the parties are entitled to seek equitable relief, including injunction and specific performance, in the event of any such breach.

18. Press Releases. Except as otherwise required by law, the prior written approval of the other party is required before the other party may, at any time, either during or after completion or termination of this Agreement, make any written statement to the press or issue any material for publication through any media bearing on this Agreement.

19. Compliance with Law. Snapple, its Affiliates and MDC shall perform all obligations under this Agreement in accordance with applicable provisions of federal, state and local laws, rules and regulations as are in effect from time to time.

20. No Assignment. Neither Snapple nor MDC shall assign, transfer, convey or otherwise dispose of any of its rights nor shall any other party assume or purport to perform its obligations and duties in whole or in part under this Agreement (except to an Affiliate by merger or successor by merger, where such merger does not result in a change of control of Snapple), unless the prior written consent of the other party shall have been obtained. Any such assignment, transfer, conveyance or other disposition or assumption without such consent shall be void. Notwithstanding the foregoing, this Agreement may be assigned by MDC to the City without Snapple's consent.

21. Claims and Litigation. A. No action at law or proceeding in equity against MDC, the City or Snapple shall lie or be maintained upon any claim based upon this Agreement or arising out of this Agreement or in any way connected with this Agreement unless Snapple or MDC, as applicable, shall have strictly complied with all requirements relating to the giving of notice and of information with respect to such claims, all as herein provided.

B. No action shall lie or be maintained against MDC or the City by Snapple, or against Snapple by MDC or the City, upon any claims based upon this Agreement unless such action shall be commenced within eighteen (18) months after the date of final payment hereunder, or within eighteen (18) months of the termination or conclusion of this Agreement, whichever first occurs.

C. In the event any claim is made or any action is brought against MDC or the City in any way relating to the Agreement herein on the basis of Snapple's actions and in each case by a third party, Snapple shall diligently render to MDC and/or the City

NYC011125

without additional compensation any and all assistance which MDC and/or the City may reasonably require of Snapple. In the event any claim is made or any action is brought against Snapple in any way relating to the Agreement herein on the basis of MDC's or the City's actions and in each case by a third party, MDC shall diligently render to Snapple without additional compensation any and all assistance which Snapple may reasonably require of MDC or the City. Notwithstanding the foregoing, if Snapple, on the one hand, or MDC, on the other, is required to assist the other party pursuant to this Paragraph, such assisting party shall be reimbursed for its actual, reasonable costs and expenses.

D. Either party shall report to the other party in writing within ten (10) working days of the date such party becomes aware of the initiation by or against it of any legal action or proceeding in connection with or relating to this Agreement.

E. No claim whatsoever shall be made by Snapple against any officer, agent, or employee of MDC or the City for, or on account of, anything done or omitted in connection with this Agreement. No claim whatsoever shall be made by MDC or the City against any officer, agent or employee of Snapple or an Affiliate for, or on account of, anything done or omitted in connection with this Agreement.

22. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, notwithstanding conflicts of laws principles. It is the intent and understanding of the parties to this Agreement that each and every provision of federal, state and local law, and rule or regulation thereunder required to be inserted in this Agreement shall be and is inserted herein. Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein, and if, through mistake or otherwise, any such provision is not inserted, or is not inserted in correct form, then this Agreement shall forthwith upon the application of either party be amended by such insertion so as to comply strictly with the law and without prejudice to the rights of either party hereunder. Any claim or cause of action hereunder which is not specifically provided to be arbitrated shall be brought only in Supreme Court, New York County, or if a federal question be presented, then in the United States District Court for the Southern District of New York located in New York County. If an action shall be commenced in any other court, the parties expressly agree to a change of venue to one of the courts prescribed above.

23. No Waivers. Waiver by either Snapple or MDC of a breach of any provision of this Agreement shall not be deemed to be a waiver of any other or subsequent breach and shall not be construed to be a modification of the terms of the Agreement unless and until the same shall be agreed to in writing by MDC or Snapple, as the case may be.

24. Invalidity. If any provision of this Agreement shall, to any extent, be invalid or unenforceable, then the remainder of this Agreement shall not be affected thereby, and each provision of this Agreement shall be valid and be enforceable to the fullest extent permitted by law.

NYC011126