# EXHIBIT 38




July 12, 2006

# OUTDOOR ADVERTISING REGULATIONS

# IMPLEMENTATION & ENFORCEMENT STRATEGY

## VAN WAGNER COMMUNICATIONS, LLC











# VAN WAGNER COMMUNICATIONS, LLC

## NEW YORK CITY OUTDOOR ADVERTISING REGULATIONS

## IMPLEMENTATION AND ENFORCEMENT STRATEGY

**Supplemental Information Presented to**
**Deputy Mayor Daniel Doctoroff**

**July 12, 2006**

The information in this outline is intended to supplement the presentation made on July 12, 2006 by Richard M. Schaps, Chairman and Chief Executive Officer, Robert C. Fauser, President, Eastern Division, Steven S. Pretsfelder, General Counsel, of Van Wagner Communications, LLC to Deputy Mayor Daniel Doctoroff and members of his staff.

Van Wagner would be pleased to discuss further with Deputy Mayor Doctoroff or members of his staff, any aspects of the material presented in this outline or at the meeting.

Please feel free to contact:


Richard M. Schaps
(212) 699-8400
rschaps@vanwagner.com

Robert C. Fauser
(212) 699-8420
rfauser@vanwagner.com

Steven S. Pretsfelder
(212) 699-8430
spretsfelder@vanwagner.com

## Table of Contents


1. Van Wagner Communications - A Brief History
2. The Outdoor Advertising Industry
3. The Problem
4. New York City Illegal Outdoor Signs
5. Van Wagner's Suggested Implementation and Enforcement Strategy
6. Next Steps
7. Appendix A - Brief Van Wagner Historical Timeline
8. Appendix B - List of New York City Licensed Sign Hangers
9. Appendix C - Pictures of Non-permitted Manhattan Signs
10. Appendix D - Power Point Presentation made by Van Wagner Communications to Deputy Mayor Doctoroff and Staff on July 12, 2006




NYC011497

## Van Wagner Communications

Van Wagner Communications has been a pioneer in the development of out of home communications for over 30 years. Van Wagner's predecessor was founded in 1970 by Richard M. Schaps. Today, Van Wagner is the largest privately held outdoor advertising company in the United States and is one of the largest privately held out of home advertising businesses in the world.

Van Wagner and its subsidiaries are organized into two groups: Outdoor and Sports. The Outdoor group is a leading provider of premium out of home formats with a concentrated outdoor presence in key markets in the United States, and a national aerial company. The Sports group is a leading media sales organization with teams and leagues relationships in over 200 venues across the United States.

Van Wagner's predecessor company dates back to 1970 when Richard Schaps purchased a small outdoor advertising company in New York and later merged it into Van Wagner. Mr. Schaps built the original Van Wagner by growing the New York division through product introductions such as the "neon spectacular" in Times Square, entering the Los Angeles market and expanding to sports, playground and bus advertising.

Mr. Schaps sold the original business in 1997 to Outdoor Systems, Inc. (now part of CBS Outdoor). However, Mr. Schaps retained the name "Van Wagner" and the sports group subsidiary, and, together with the former management team, launched the new Van Wagner to quickly begin rebuilding businesses in New York, Los Angeles and beyond. Since 1997, the Company has expanded its billboard business to include other markets like Washington, DC and Miami, and has established a dominant position within the New York metro phone kiosk advertising sector. Van Wagner also entered the aerial media market through the acquisition of Aerial Sign Co., Inc., the oldest and largest aerial advertising company in the United States.

The timeline on the next page highlights some of Van Wagner's transformational events over the past 36 years.

# Brief Van Wagner Historical Timeline

## The timeline below highlights some of Van Wagner's transformational events:




Broadway Times Square

Playground Program

Telephone Kiosks, NYC

New York Avenue, Washington DC

Sports Media & Sponsorship Sales

1970
Richard Schaps purchases a small wall company in New York

1980
Introduced Japanese neon spectaculars to Times Square

1988
Entered bus advertising business in Long Island, NY

1992
Established Van Wagner Playground Program, whereby corporate sponsors were featured on basketball backboards across US public school playgrounds for students to use

1997
Sold essentially all outdoor advertising assets to Outdoor Systems (now part of Viacom); retains Van Wagner name

1999
Commences payphone kiosk advertising program establishing Van Wagner Kiosk Advertising, LLC

2002
Extends presence to Washington, DC by creating a wall mural program

2005
Extends presence to Chicago, Puerto Rico and Toronto.
Established more Mixed use properties.
Extends Sports offerings to include sponsorship sales and consulting services.

2006
Extends Outdoor presence to Miami and brand spaces. Expands Sports Group to include broadcast capabilities by acquiring Premiere Sports and Entertainment..

---

1979
Purchased 14 signs (12 vacant) in New York's Times Square

1983
Launched "SuperClock", signage incorporating advertising and clock on over 5,000 displays in 40 cities nationwide, including a presence in national supermarket chains such as Kroger, Safeway and A&P

1991
Established a Los Angeles presence through acquisition

1996
Acquired Doma USA, a sports marketing company

1997
Re-organize Van Wagner with the same management team in place, and launch new effort in New York & Los Angeles

1999
Launches UK operations in London

2004
Establishes Van Wagner Aerial Media through purchase of Aerial Sign Company, the oldest & largest aerial advertising company in the US







Signage at A&P's Safeways and Krogers nationwide

Sunset Strip, Los Angeles, California

Doma USA in-game signage

M4 Purrell Tower, London, England

Aerial Display over Orange Bowl

## The Outdoor Advertising Industry

The outdoor advertising industry is a fast growing industry targeting consumers missed by traditional in-home media and distracted by DVRs and the Internet. According to the Outdoor Advertising Association of America ("OAAA"), outdoor industry revenues grew 8% year over year in 2005 and have grown consistently from $1.8 billion in 1986 to $6.3 billion in 2005, representing a 7% compounded annual growth rate.

Throughout this time period, the industry had only two years without revenue growth, 1992 and 2002. Both these years were recessionary periods that included extraordinary macro economic events, including the Gulf War and advertising recession caused by the dot.com bubble and 9/11, respectively. The industry proved resilient even with a major pullback in tobacco advertising in 1991 as a result of the new regulations restricting tobacco advertisements. With the self-imposed industry ban on tobacco advertisements in 1999, the industry has been successful in attracting new groups of advertisers to its medium. Part of this growth has been driven by the improvement in the quality and appearance of the advertisements. Today, the images on billboards and displays are high resolution and photographic quality vinyl, which have helped attract additional advertisers to the medium. The overall consolidation in the industry over the past ten years has also helped attract new segments of advertisers as the larger outdoor companies could provide national advertisers with numerous outlets for their campaigns.

## The Problem

### NEW YORK'S ARTERIAL HIGHWAYS AND STREETS ARE CLUTTERED WITH ILLEGAL ADVERTISING SIGNAGE

Over 1800 illegal outdoor advertising signs exist in the boroughs of New York City. These illegal signs provide enormous profits to major media companies while taking away valuable revenue from companies that operate by the rules and, in some cases, the City itself. More than $50 million was spent on illegal New York City outdoor media in 2005. If New York City laws had been enforced, a significant portion of that money could have been spent on forms of outdoor advertising that provide revenue for the City, such as the street furniture program.

Illegal signage is not a new problem. Regulations were first introduced in the 1960's to address the proliferation of outdoor signage. During the past 40 years, the City has passed a series of laws; promulgated various regulations and adopted different enforcement strategies in an effort to eliminate illegal outdoor signs while trying to balance community and industry needs and objectives. Attached to this outline as Appendix B is a timeline that summarizes the many attempts by past City administration to implement and enforce outdoor advertising regulations in New York City.

Unfortunately, none of these efforts has succeeded. Past City administrations have been unable to devise or implement practical and efficient programs that both address the City's enforcement objectives and achieve "buy in" from industry players. As a result, illegal outdoor advertising signs still abound.

However, the new enforcement regulations that this administration has proposed and that are about to be promulgated by the Department of Buildings are **DIFFERENT**. For the first time, the City has designed enforcement regulations that really can work – both for the City and the outdoor advertising industry. The new regulations require all outdoor advertising companies doing business in New York City

to register with the Department of Buildings. Outdoor advertising companies that fail to register or maintain their registration will be prohibited from engaging in the outdoor advertising business in New York City. Furthermore, sign hangers will be prohibited from posting signs for unregistered outdoor advertising companies. In addition, the new regulations will impose filing and other requirements that, if properly implemented and enforced, can have the effect of eliminating noncompliant permitted signs on the arterial highways within the City as well as signs that are in close proximity to City public parks. The new regulations also will require outdoor advertising companies to post letters of credit or other forms of security with the City, which may be drawn upon, if necessary, to remove illegal signs and for certain other purposes.

Van Wagner believes that these new regulations are practical and efficient for both the City and outdoor advertising companies. The City will have a tool available that can achieve its objectives in a fair manner. However, we believe that the program will succeed only if it is properly introduced to the outdoor advertising industry and then properly implemented and enforced.

In this outline, Van Wagner proposes an implementation and enforcement strategy that, we believe, will help make these regulations work. Furthermore, we believe that if the City is successful in enforcing these regulations and, as a result, eliminates illegal arterial highway signs and signs in close proximity to parks, it will have created a foundation and framework to enable the City to address illegal and unregulated outdoor signs elsewhere in the City. Towards that end, in this outline we also suggest a series of "Next Steps" that the City should consider in the future to address other illegal outdoor advertising such as noncompliant wall signs, illuminated panel displays, wild postings, and sidewalk bridges.

## New York City Illegal Signage

Generally, there are two broad categories of illegal or non-permitted outdoor advertising signs that exist within the boroughs of New York City:

- Signs that violate the requirements of an issued permit; and
- Signs that are erected without a permit

### Violation of Sign Permits

In New York City an outdoor advertising sign owner may receive a permit for an "accessory business" sign or an "advertising" sign. A permit for an accessory business sign generally allows advertisements only for a business located at the premises on which the sign is located and for no other purposes (e.g., a sign for Joe's Garage erected at the building in which the garage is located). On the other hand, an advertising sign permit allows the sign owner to post advertisements for any business, goods or services, and does not require that the advertiser be located at the place where the sign structure is erected. Generally, the requirements for obtaining a permit for an accessory sign are different and less stringent than for an advertising sign.

One way in which sign owners violate New York City outdoor sign regulations is by applying for an accessory business permit for a particular location and installing a sign for the accessory business as allowed by the permit. However, soon after the advertising for the accessory business is posted, it is removed and the sign owner then posts a new sign for a third party advertiser as if it had originally obtained an advertising permit rather than the accessory business permit (e.g., Joe's Garage sign is removed and replaced with a sign for a fashion designer, automobile manufacturer, movie studio or other third party advertiser). The sign owner continues to post third party advertisements unless the City interferes.

Many of the owners of signs on the arterial highways of New York City engage in this illegal practice. As indicated in the table below, almost 70% of the signs on arterial highways have been granted permits for accessory business signs, but instead improperly use those signs for third party advertisements.

| Operator | Advertising | Accessory Business |
|---|---|---|
| [illegible] | 19 | 32 |
| [illegible] | 1 | 59 |
| [illegible] | 0 | 30 |
| [illegible] | 67 | 29 |
| [illegible] | 26 | 13 |
| [illegible] | 20 | 2 |
| [illegible] | 0 | 7 |
| [illegible] | 12 | 126 |
| **GRAND TOTALS** | **145** | **298** |

<u>Signs Without Permits</u>

The second broad category of illegal outdoor advertising signs, includes those signs that are erected without any permit at all. Many different types of signs fall within this group, include the following:

- Non-permitted Wall Signs - these are signs that are affixed to exterior walls of buildings or other structures without any permit. The signs are usually several stories high and are visible from afar.



---

- Illuminated Panel Displays - these are advertising displays which are similar in dimension to bus shelter signs, and are affixed to the exterior of buildings and other structures. Originally, these displays were posted inside of garages and other buildings where permits generally were not required because they did not extend to the sidewalk or other public spaces. However, building owners and sign companies now affix these displays to building exteriors where permits are required because they extend into sidewalks or other public spaces.





- Sidewalk Bridges - these include sidewalk bridges, scaffolding and similar structures which are placed upon sidewalks or buildings in connection with the routine maintenance of commercial and residential buildings and around construction sites throughout New York. The building owners, and advertising companies typically place advertising on the structures without permits.



- Wild Postings - These include a random array of advertisements attached to a variety of structures, including construction bridges, buildings and other public structures, all without permits.



## Van Wagner's Suggested Implementation and Enforcement Strategy

Van Wagner believes that the new regulations will be most effective if introduced, implemented and enforced in a way that gains the attention and acceptance of key outdoor media players. We recommend incorporating the following steps into the City's implementation and enforcement program so as to ensure buy-in by important outdoor media participants.

- Educate Advertising Agencies - 86% of NYC outdoor advertising business comes directly from the top media buying agencies. Therefore, the City should make a concerted effort to educate the top media buying agencies about the new regulations. We suggest that the City hold informational meetings with, and provide written information to, outdoor advertising agencies to explain the City's new regulations, advise them of the availability of City websites which list registered outdoor advertising companies, and provide information about sign tags and other tools available to help them identify permitted advertising locations. In addition, we believe that if the City actually exercises its power to remove copy from illegal signs, top media buying agencies will eventually make certain that their clients' advertisements are posted only on permitted signs. Few media buying agencies, if any, will want to risk the embarrassment associated with a "public takedown" of their clients' advertising copy.

- Inform Licensed Sign Hangers – There are approximately 50 licensed sign hangers in New York who post substantially all of the copy on outdoor advertising structures. The City should also make efforts to contact, advise and educate the licensed sign hangers about the regulations and potential consequences to them of posting signs for unregistered outdoor advertising companies and on non-permitted locations. If the sign hangers refuse to hang signs on non-permitted locations, the advertising copy will not be posted at these sites.

- <u>Remove Illegal Advertising Copy</u> – The City should utilize its "padlock" authority and the related powers built into the new regulations to physically remove copy posted by unregistered outdoor advertising companies or at noncompliant locations. The City should ensure that takedowns are widely publicized in the press and elsewhere. This will quickly grab the attention of advertisers and media buying agencies. We believe that where possible, this should be the City's enforcement remedy of FIRST RESORT. Past practice demonstrates that violations, citations and fines are often an invitation to protracted administrative and legal battles that inevitably delay, and often avoid entirely, any meaningful punishment. Again, few media buying agencies, if any, will want to risk the embarrassment associated with a "public takedown" of their clients' advertising copy.

## <u>Next Steps</u>

The targets of the new proposed enforcement regulations are the arterial highway signs and signs that are in close proximity to public parks. Van Wagner believes that if the City achieves success in this area, it will have built a strong foundation and created a working format to expand its enforcement program to other types of illegal signs in Manhattan and the other boroughs. After achieving success in this area, the City should adopt programs to enforce other types of noncompliant outdoor signage.

In addition, Van Wagner believes that the City should consider legalizing certain types of outdoor advertising that currently are not permitted but are widely practiced. This would provide an opportunity to both enhance the "look" of the City and provide the City with an opportunity to generate revenue. For example, there are numerous sidewalk bridges that are constructed in connection with routine maintenance of commercial and residential buildings and around construction sites in New York City. Although advertising on such sites in not currently permitted, building owners and

outdoor advertising companies regularly advertise on these types of structures. The advertising placed on these structures is typically attractive and of high quality and enhances what might otherwise be a dirty and unattractive eyesore.

Van Wagner recommends that the City consider implementing a program under which owners of the sidewalk bridges and building scaffolding would be required to register these structures with the City and owners or outdoor advertising companies would be entitled to purchase permits from the City to post outdoor advertising on a sidewalk bridge or building scaffold for specified periods of time. The regulations could impose standards and other conditions on the structures to ensure certain safety standards. Such a program would recognize the "reality on the street", ensure that basic standards are maintained and, at the same time, allow the City to create another significant revenue source which would benefit all of the citizens of New York.



# Appendix A

## History of New York City Signage Enforcement