# EXHIBIT 46

NYCDOT Coordinated Street Furniture Franchise
FCRC Application
Basis for Award Attachment

FCRC Application
Recommendation for Award of Franchise

Basis for Award Narrative

RFP Point Allocation
The Coordinated Street Furniture Franchise Request for Proposals (RFP) was released on March 26, 2004. The RFP document included four phases of evaluation with accompanying evaluation criteria and point allocations for each phase.

Table 1: RFP Point Breakdown

| Phase I | Pass/Fail |
|---|---|
| Phase II | 25 points |
| Phase III | 60 points |
| Phase IV | 55 points |
| Preferences | 5 points |

The first two phases of the evaluation reviewed the submission documents and the proposing companies themselves. Phase 1 was a pass/fail responsiveness determination made by the Department's Auditor General. This review ensured that each proposal contained all required materials. Phase II assessed each Proposer's Ability to Provide Required Services and was allotted 25 points. In this review, Selection Committee members examined each proposing company's business organization, financial fitness and experience with street furniture and outdoor advertising sales. The street furniture contract has a lengthy term and an ambitious build out, so the Department wanted to ensure the company had ample experience and resources and the phase was weighted accordingly. Each proposal that received an average score of 15 or more points moved on in the evaluation process.

The later phases of the evaluation focused on the terms of the proposal from a technical and business perspective. Phase III, the evaluation of the Technical Proposal, had the highest point allocation, 60, because it included all of the operational aspects of the franchise. In Phase III, Selection Committee members evaluated street furniture design, installation methods, build out schedules, maintenance plans, staffing allocations, and computerized inventory systems, as well as marketing and sales plans for advertising. Although the franchise is ultimately a revenue contract; quality design, installation, and maintenance of the street furniture are integral to the program's success, so Phase III had a slightly higher point allocation than the compensation phase. Phase IV, the compensation package, was assigned 55 points. The main evaluative component of this phase was the guaranteed minimum payment to the City. In addition to the allocated 140 points there were five preference points in total available for manufacturing in the United States, manufacturing in New York City and committing to an upfront payment provided the overall terms of the compensation package were determined to be in the best financial interest of the City.

Evaluation Process
Before the Department received the RFP responses on September 14, 2004, an interagency Selection Committee was already appointed. The Committee was comprised of seven members, coming from the Departments of City Planning, Consumer Affairs, Design and Construction, Parks, Transportation (2) and the City's Economic Development Corporation.



NYCDOT Coordinated Street Furniture Franchise
FCRC Application
Basis for Award Attachment

All committee members were required to sign a confidentiality agreement which prohibited them from discussing any aspect of the proposals.

Once the proposals were reviewed by DOT's Chief Contracting Officer and the Auditor General's office, a determination was made that all proposals passed the Phase I Responsiveness review and could be distributed to the Selection Committee Members. The Committee received all portions of the proposals except the compensation package, which was under separate seal, along with detailed guidelines for scoring on October, 13, 2004. While Committee members were reviewing the extensive materials, DOT staff members conducted reference checks. The Department developed a standard questionnaire that was used for all reference calls. Answers were entered into a standard form and distributed to Committee members as a package. Several Committee meetings were held during November and December of 2004 and Committee members submitted scores for Phase II on January 6, 2005. As stated above, the RFP required that proposers achieve an average score of 15 or better to move onto Phase III evaluation. All proposals achieved better than a 15 point average.

Table 2: Phase II Point Totals

| Company | Total Points Received | Average Score |
|---|---|---|
| Cemusa | 154.25 | 22 |
| Clear Channel/Adshel | 162.75 | 23 |
| NBCDeCaux | 168 | 24 |
| VanWagner | 129 | 18 |
| Viacom | 156.5 | 22 |

During the month of December the Department identified individuals to serve as Technical Advisors to the Selection Committee. A Design Advisory Committee, as outlined in the RFP, was formed as well as a Compensation Advisory Committee. The Design Advisory Committee was made up of four architects and one landscape architect from outside city service, an industrial designer representing the Business Improvement Districts and representatives from the Art Commission, Landmarks Preservation Commission and Municipal Arts Society, all who have an expertise in urban design issues. The Compensation Advisors were five individuals drawn from the Economic Development Corporation, NYC Marketing and DOT's auditing staff. The Technical Advisors were invited to sit in on proposer interviews and review materials relevant to their area of expertise. Each Technical Advisory Committee wrote a single, nonbinding recommendation to be distributed to Selection Committee Members. These recommendations were written independent of the Selection Committee. All Technical Advisors signed confidentiality agreements.

On January 10, 2005, the Committee moved into Phase III and IV evaluation. At this time compensation packages were distributed and Committee members were allowed to view the scale models for the first time. The Selection Committee requested proposer interviews; a two-day format per proposer, broken down into four separate sections was agreed to. Interviews were scheduled throughout the month of February and into March and interview slots were assigned by random selection.

After the interview sessions were completed the Committee compiled follow-up questions, some specific to a particular proposal while others were general to all teams. Follow-up letters were sent to all proposing teams on March 22, 2005, and requested materials were

NYCDOT Coordinated Street Furniture Franchise
FCRC Application
Basis for Award Attachment

submitted by April 11, 2005. During the follow-up period it was articulated to all proposers that this was not a request for a "Best and Final" offer but proposers were free to adjust their compensation packages as they saw fit. The updated materials were submitted to Selection Committee members and discussion about the proposals continued.

At this time the Technical Advisory groups met separately to draft their recommendations. When completed each subcommittee delivered their recommendation memo to the Selection Committee and they were available for any follow-up questions from Committee members. Each recommendation outlined exactly what criteria or methodology the Technical Advisory Committees used in developing their recommendations. The Design Advisory Committee recommendation was narrative and ranked each design but did not assign specific point values. The Compensation Advisory Committee used a formula to assign points based on values articulated in the proposal and parameters set in the RFP, so specific point recommendations were made for each proposal. As mentioned earlier, the recommendations were nonbinding on the Selection Committee.

The Selection Committee members submitted final scores for Phases III and IV on May 25, 2005. At this point the Committee agreed to request a Best and Final Offer (BAFO) from the top three ranked proposals. On June 6, 2005, letters were sent to the top three proposers inviting them to make "Best and Final" offers. Each letter was specific to the proposal and outlined weaknesses or issues to address in the final offer.

Table 3: Overall Point Totals

| Company | Phase II (175 pts.) | Phase III (420 pts.) | Phase IV (385 pts.) | Preference (35 pts.) | Overall Total (II, III & IV & preference - 1,015 pts.) |
|---|---|---|---|---|---|
| Cemusa | 154.25 | 274.5 | 384 | 35 | 847.75 |
| NBC DeCaux | 168 | 372.5 | 223 | 35 | 798.5 |
| Van Wagner | 129 | 363.5 | 287.75 | 14 | 794.25 |
| Clear Channel/Adshel | 162.75 | 292 | 222.25 | 35 | 712 |
| Viacom | 156.5 | 250 | 179.75 | 28 | 614.25 |

Proposing teams returned BAFO materials on June 27, 2005. The Selection Committee reviewed the final submissions and reconsidered each proposer's Phase III and Phase IV scores in light of the updated materials. The Compensation Advisory Committee's formula was applied to the revised compensation proposals and point allocations were reassigned and distributed to Selection Committee members. In July of 2005 the Selection Committee members issued their final scores for the BAFO proposals.

Table 4: Best and Final Point Totals

| Company | Phase II | BAFO Phase III | BAFO Phase IV | Preference points | BAFO Overall |
|---|---|---|---|---|---|
| Cemusa | 154.25 | 336.5 | 384 | 35 | 909.75 |
| NBCDeCaux | 168 | 384 | 302.5 | 35 | 889.5 |
| Van Wagner | 129 | 379 | 258.5 | 28 | 794.5 |

NYCDOT Coordinated Street Furniture Franchise
FCRC Application
Basis for Award Attachment

On September 20, 2005, Howard Altschuler, as chairman of the Selection Committee, made a recommendation on their behalf to NYCDOT to enter into contract negotiations with the highest ranked proposer who also had the highest revenue package. Based on that recommendation NYCDOT then entered into negotiations with Cemusa, which culminated in the proposed franchise agreement.

During the course of the contract negotiations with Cemusa Inc. a minor error was discovered in the value of the cash compensation. As part of its BAFO, Cemusa offered additional compensation contingent on the placement of additional scroller ad boxes in the amount of $91,532,000 over the 20 year period with payment beginning after year two of the agreement. The committee asked Cemusa if it would increase the cash guarantee amount by this contingent compensation if the additional scrollers were allowed. The response from Cemusa was yes, but at 95% of the contingent value or $86,955,000. The BAFO scores for Phase IV indicated in Table 4 above are based on the inclusion of this value. The negotiation process indicated that Cemusa's letter agreeing to the additional guarantee commitment also included a provision that the additional cash guarantee would not begin until the 6th year of the agreement. As a result, the cash portion was overstated by approximately $12,000,000. On March 31, 2006 members of the Selection Committee were advised of the error by memo (attached) and were asked to review the information provided and their score for phase IV of the evaluation process and either confirm or modify their original score. The Selection Committee members returned the document and the revised scores are provided below and on the revised Coordinated Street Furniture Franchise Summary RFP Sheet.

Table 5: Corrected Best and Final Point Totals

| Company | Phase II | BAFO Phase III | BAFO Phase IV | Preference points | BAFO Overall |
|---|---|---|---|---|---|
| Cemusa | 154.25 | 336.5 | 384 | 35 | 909.75 |
| NBCDeCaux | 168 | 384 | 303.5 | 35 | 890.5 |
| Van Wagner | 129 | 379 | 259.5 | 28 | 795.5 |