# EXHIBIT 51



**New York City**
**Department of Transportation**

Elliot G. Sander, Commissioner

Gerard Soffian, P.E.
Assistant Commissioner
Bureau of Planning
40 Worth Street
New York, New York 10013

April 26, 1996

Ms. Annette M. Barbaccia, Director
Mayor's Office of Environmental Coordination
Municipal Building, Room 2358
New York, NY 10007

RE:    NOTICE OF LEAD AGENCY DETERMINATION, AND REVIEW FOR
COORDINATED STREET FURNITURE FRANCHISE
CEQR No. 96-DOT-010Y
ULURP No. Pending

Dear Ms. Barbaccia:

The above-referenced application includes a proposed action subject to approval by
the New York City Planning Commission and the City Council. This action is subject to
review under the City Environmental Quality Review (CEQR) procedures, Executive
Order No. 91 and the State Environmental Quality Review Act (SEQRA) 6 NYCRR Part
617.2 q(3).

Pursuant to Sections 5.03 and 5.05 of the Rules of Procedure for CEQR, as adopted
June 26, 1991, the Department of Transportation (NYCDOT), as the City agency
applicant for the proposed action, is assuming lead agency status for this application
and is initiating the CEQR review process.

NYCDOT is proposing, throughout the City of New York, the installation, operation and
maintenance of a minimum of 3,300 bus stop shelters, a minimum of 30 automatic
public toilets and an unspecified number of public service structures (e.g., newspaper
and periodical dispensers, recycling or litter bins, bicycle racks, public pay telephones),
the installation and maintenance of a minimum of 430 newsstands, and the display of
related outdoor advertising on said structures, to be granted to a selected franchisee.



NYC005743
NYC005743

The City of New York, acting through the Department of Transportation, shall invite qualified firms to submit proposals for twenty-year Franchise Contracts for the construction, maintenance and operation of the aforementioned structures in all five boroughs of the City of New York. Enclosed please find a description of each proposed use, and the siting guidelines.

For your information we anticipate the certification of our ULURP application on this proposal on May 6, 1996. We are, of course, available to discuss this proposal with you in the course of the ULURP.

Enclosed is a copy of the Environmental Assessment Statement (EAS) prepared for this project. Any questions regarding this application should be directed to Naim Rasheed, Director of the Office of Project Analysis (212-442-7707), or Wendy Goldman, Executive Director of Franchises (212-442-8040), New York City Department of Transportation, 40 Worth Street, New York, NY 10013.

Sincerely,

Gerard Soffian

Enclosures

cc:    Honorable Ruth Messinger, Manhattan Borough President
       Honorable Howard Golden, Brooklyn Borough President
       Honorable Claire Shulman, Queens Borough President
       Honorable Fernando Ferrer, Bronx Borough President
       Honorable Guy Molinari, Staten Island Borough President
       Distribution

bcc:   Commissioner Sander, First Deputy Commissioner Malchow,
       C/T/O J.McDonald, C/B/R/O R. Ronayne, B/C L. Heyward, B/C J. Foulke,
       B/C B. Baier, B/C A. Fasulo, B/C J. Larson, C.E. G. Krause,
       A/C H. Kamamis, A. Hollander, S. Schorr, P. Fleischer, S. Cummins,
       W. Goldman, P. Pennica, P. Psaltakis, N. Rasheed, M. Bryant, Files

NYC005744
NYC005744

DISTRIBUTION LIST

## Manhattan Community Boards

F. Goldstein District Manager, Community Board 1
R. Lee District Manager, Community Board 2
M. Danziger District Manager, Community Board 3
J. Greer District Manager, Community Board 4
P. Cole, District Manager, Community Board 5
C. Pieper, District Manager, Community Board 6

A. Ryan, District Manager, Community Board 7
D. Woodin, District Manager Community Board 8
L. McClean, District Manager, Community Board 9
L. Wood, District Manager, Community Board 10
J. D'Inizarry, District Manager, Community Board 11
M. Rivera, District Manager, Community Board 12

## Brooklyn Community Boards

G. Esposito, District Manager, Community Board 1
E. Williams, District Manager, Community Board 2
L. Watkins, District Manager, Community Board 3
N. Whitted, District Manager, Community Board 4
W. Campbell, District Manager, Community Board 5
C. Hammerman, District Manager, Community Board 6
E. Moore, District Manager, Community Board 7
D. Alexander, District Manager, Community Board 8

P. Miles, District Manager, Community Board 9
M. Sempepos, District Manager, Community Board 10
H. Feuer, District Manager, Community Board 11
P. Celano, District Manager, Community Board 12
C. Reichenthal, District Manager, Community Board 13
T. Rodie, District Manager, Community Board 14
B. Simmons, District Manager, Community Board 15
V. Greene, District Manager, Community Board 16
R. Tenner, District Manager, Community Board 17
D. Turano, District Manager, Community Board 18

## Queens Community Boards

G. Delis, District Manager, Community Board 1
D. Rizzotto, District Manager, Community Board 2
M. Sarro, District Manager, Community Board 3
R. Rothschild, District Manager, Community Board 4
G. Giordano, District Manager, Community Board 5
K. Reilly, District Manager, Community Board 6
R. Colletta, District Manager, Community Board 7

D. Cohen, District Manager, Community Board 8
M. Carey, District Manager, Community Board 9
A. Grossberg, District Manager, Community Board 10
A. Ryan, District Manager, Community Board 11
Y. Reddick, District Manager, Community Board 12
S. Martino-Fisher, District Manager, Community Board 13
J. Gaska, District Manager, Community Board 14

## Bronx Community Boards

R. Crespo, District Manager, Community Board 1
J. Robert, District Manager, Community Board 2
J.Dudley, District Manager, Community Board 3
H. Samuels, District Manager, Community Board 4
A. Carrion, District Manager, Community Board 5
I. Galarza, District Manager, Community Board 6

R. Kessler, District Manager, Community Board 7
G. Belkin, District Manager, Community Board 8
F. Gonzalez, District Manager, Community Board 9
J. Vacca, District Manager, Community Board 10
J. Fratta, District Manager, Community Board 11
C. Angueira, District Manager, Community Board 12

## Staten Island Community Boards

J. Carroll, District Manager, Community Board 1
K. Dodd, Community Board 2

M. Bodnar, District Manager, Community Board 3

J. Ketas (DEP)
J. Candreva (DCP)
G. Santucci (Landmarks)
P. Fleischer (MOT)

G. Benjamin ( NY City Council)
V. Warfield ( Arts Commission)
G. Silva ( BSA)

ENVIRONMENTAL ASSESSMENT STATEMENT

Part I

APPLICANT INFORMATION & ACTION SUMMARY

   A.  LEAD AGENCY

Agency:  NYC Department of Transportation

Contact:  Gerard Soffian

Address:  40 Worth Street  Room 1035

               New York , New York  10013

_____

Phone:     212- 442-7634

FAX:       212- 442-8001

   B.  PRIVATE OR NON-LEAD AGENCY APPLICANT

Applicant:_____

Contact:_____

Address:_____

_____

_____

Phone:_____

FAX:_____

   C.  APPLICATION IDENTIFICATION

Project name:  Coordinated Street  Furniture  Franchise
CEQR # (agency initials followed by year and number):  96 DOT-010Y

BSA # :    N.A.

5

NYC005746

COURT # : Pending

LEGISLATIVE INTRO # :  562-A    Resolution 1548

CAPA # :  N A

## D.  ACTION DESCRIPTION

1.  Provide a Sanborn or other land use map showing the boundaries of the directly affected area.  Citywide

2.  Describe the location of the directly affected area as follows:

Borough ___N.A.___

Community District(s) ___N.A.___

Tax block(s) and lot(s) ___N.A.___

Street address, vanity address and nearest cross streets (minimum of two) to property:  Citywide

**\*The directly affected area consists of the project site and the area subject to any change in regulatory controls that the action includes.**

NYC005747
NYC005747

If the action would apply to the entire City or to areas that are so extensive that
site-specific description is not appropriate or practicable  describe the areas
likely to be affected by the action   Citywide

3.  Describe the action for which environmental review is being performed and,
briefly, what consequences would result from or be generated by the action:

See  Attachment 1.0

7

NYC005748
NYC005748

Physical dimensions and scale of project ( fill in dimensions as appropriate )

Total contiguous square feet owned or controlled by project sponsor:

_____ square feet

Project square feet to be developed _____ square feet.
Bus shelter stops          150 square feet
Newsstands                 72 square feet
Automatic public toilets   78 square feet
Public service structures  36 square feet

Gross floor area of project, in square feet: _____

If the action is an expansion, indicate percent of expansion proposed in the number of units, square feet or other appropriate measure: <u>N.A.</u>

_____ % of _____

Dimensions ( in feet ) of largest proposed structure:
Bus Stop Shelters:    <u>9 Ft.</u> height; <u>5 Ft.</u> width; <u>30 Ft.</u> length
Newsstands:           <u>9 Ft.</u> height; <u>6.5 Ft.</u> width; <u>14 Ft.</u> length; <u>6.5 Ft.</u> Diameter
Automatic Public Toilets: <u>12 Ft.</u> height; <u>8 Ft.</u> width; <u>12.5 Ft.</u> length; <u>8 Ft.</u> Diameter
Public Service Structures: <u>7 Ft.</u> height; <u>6 Ft.</u> width; <u>6 Ft.</u> length; <u>6 Ft.</u> Diameter

Linear feet of frontage along a public thoroughfare _____
Bus Stop Shelters:        <u>30 Ft.</u> Length
Newstands:                <u>14 Ft.</u> Length
Automatic Public Toilets: <u>12.5 Ft.</u> Length
Public Service Structures: <u>6 Ft.</u> Length

5. Construction:

Will the action result in demolition of or significant physical alteration to any improvement? No

8

NYC005749
NYC005749

Will it cause involve either above ground construction resulting in any ground disturbance or in-ground construction? Yes. the proposed action will involve in-ground construction for necessary utility and sewer line connections. and above ground construction.

If single phase project: Anticipated period of construction _____ months (including demolition)

If multi-phased:

Total number of phases anticipated _____6_____ (number) (With additional optional Build-out).

Describe phases and construction schedule:

The minimum Build-Out schedule is proposed as follows:

|  | Shelters | APTs | Newsstands |
|---|---|---|---|
| Year 1 | 550 | 15 | 144 |
| Year 2 | 550 | 15 | 143 |
| Year 3 | 550 | *** | 143 |
| Year 4 | 550 | *** | *** |
| Year 5 | 550 | *** | *** |
| Year 6 | 550 | *** | *** |
| Years 7-20 | *** | *** | *** |
| Total | 3300 | 30 | 430 |

*** Additional structures as directed by the Deparment of Transportation

Anticipated date of commencement of phase <u>January</u> month <u>1998</u> year (including demolition)

Approximate completion date of final phase _____ month _____ year

9

NYC005750
NYC005750

E. APPROVALS

1. Will the action be reviewed pursuant to the Uniform Land Use Review Procedure (ULURP) set forth in section 197-c of the Charter?  Yes

---

2. Identify below and describe as appropriate all City Approvals required for the action. regardless of whether environmental review is required for any individual approval.

LAND USE APPROVALS SOUGHT (For BSA approvals, see following section):

Zoning text amendment _____NA_____

Zoning map amendment _____NA_____

City map change _____NA_____

   *Street map change:

   *Park map change:

Special permit __NA_____

   *Specify type _____

   *Specify section of Zoning Resolution _____

   *New or renewal? _____

   *Expiration date _____

Site selection for public facility __N.A___

Acquisition of real property by the City ____N.A._____

   *Public easement: _____

Franchise ___Yes_____

   *Type of franchise _Non-exclusive_____

   *New or renewal: _New____
        *Expiration date _Year 2017___

10

NYC005751
NYC005751

Urban renewal area designation or alteration _____ NA _____

Urban renewal plan _____ NA _____

    *New or amended? _____

Concession _ NA _____

Sanitary or waterfront landfill _____ NA _____

Revocable consent ___ NA _____

    *New, modified or renewal? ____ NA _____

    *Expiration date _____

City Planning authorization _ Yes _____

Charter § 197- a plan ___ No _____

Disposition of City property __ NA _____

Other (specify)
    ___ N.A. _____

## BOARD OF STANDARDS AND APPEALS APPROVALS SOUGHT:

Special permit __ NA _____

    *Type of special permit _____

    *Specify section of Zoning Resolution _____

    *New or renewal? _____

    *Expiration date _____

Variance __ NA _____

    *Type of variance, if known (use or bulk) _____

Other (specify)
    ___ N.A. _____

## OTHER CITY APPROVALS SOUGHT:

Legislation _ New York City Council
          Arts Commission
          Franchise and Concession Review Committee

NYC005752
NYC005752

Rulemaking __NA_____

*Specify agency _____

Construction of public facilities ___NA_____

*Specify

Funding of construction ___NA___

*Specify _____

Funding of programs ___N.A._____

*Specify

Policy or plan _____N.A._____

Landmarks Preservation Commission approvals (exempt from CEQR)
__Depending on site location._____

Department of Buildings approvals (exempt from CEQR) ___N.A._____

Other (specify) ___N.A._____

2. Specify all state and federal approvals, actions or funding required for the action, regardless of whether environmental review is required for any individual action.

NY State Environmental Quality Review Act
New York Code of Rules and Regulations

NYC005753
NYC005753

## F. ACTION TYPE

Is the action a Type I action or an unlisted action? Consult the Type I list in 6 NYCRR §617.12(b) and the City list at §6-15(a) of Executive Order No. 91 of 1977. (See attachments 3 and 4). Type I actions have been determined to be more likely to require preparation of an environmental impact statement than other actions. Prior to finalizing the EAS, it may be appropriate to reconsider the answer to this question in light of other parts of the EAS or supporting materials. Check below as appropriate:

Unlisted _____x_____

Type I _____
*Specify Type I category or categories _____

After completing or receiving Part I, the lead agency must send a copy of it, with any other information it deems necessary, to the Office of Environmental Coordination - 52 Chambers Street, Room 315, New York, New York, 10007. In addition, if an action includes discretionary actions/approvals by City agencies other than the lead agency, the lead agency should provide those involved agencies with notice of its lead agency status and send them Part I of the EAS.

13

NYC005754

PART II

SITE AND ACTION DESCRIPTION

This Part provides a detailed description of the proposed action and addresses the physical and socioeconomic context of the proposed action. Materials prepared for other purposes may be used to satisfy this Part where appropriate. Where appropriate, the action description should include the cumulative effects of related actions. This Part also requires applicants to submit analysis for all applicable categories of environmental impacts.

A.    CATEGORIZING YOUR ACTION

(1) LOCALIZED ACTIONS include: a) site specific actions which would result in a specific or known development at particular locations; and b) actions involving changes in regulatory controls that affect one or more sites in a well defined localized geographic area and are not associated with specific or known development on each of those sites. Localized actions may be a mix of (a) and (b).

(2) AREAWIDE/PROGRAMMATIC ACTIONS include those actions that would apply to the entire City, or to areas that are so extensive that site-specific description and/or analysis would not be appropriate or practicable.

Check the category of action that is reflective of the actions proposed:

Category 1:  (a) _____  and/or  (b) _____

Category 2:  _____x_____

14

NYC005755

For more information on categorizing your action, consult the introduction to the EAS Guidebook, at pages 8-9

Subparts B, D, E, and F of this Part should be completed for all localized actions. Subpart C, entitled "Project Description," is generally completed only for site specific actions which would result in a specific or known development at particular locations.

If your action is localized and involves changes in regulatory controls that affect one or more sites not associated with a specific development, then it is generally appropriate to include in subpart E one or more reasonable development scenarios for such sites and, to the extent possible, to provide information about such scenario(s) similar to that requested in subpart C.

If your action is areawide/programmatic, then you may generally skip subparts B through E of this Part (pages 16-25 of this form), unless completion of those subparts is helpful in describing your action, and proceed directly to subpart F on page 25. If you skip subparts B through E, be sure to attach texts and/or maps that will serve as the action description in lieu of completion of those subparts.

NYC005756
NYC005756

B    SITE DESCRIPTION   See Attachment

Except where otherwise indicated, answer the following questions with regard to the directly affected area. (The directly affected area, also called the area directly affected by the action, consists of the project site and the area subject to any change in regulatory controls that the action includes.) Indicate N.A. if not applicable.

1.    MAPS:

In addition to the Sanborn or other land use map requested in Part I, provide a tax map and zoning map showing the boundaries of the directly affected area.

2.    PHYSICAL SETTING (both developed and undeveloped areas):

Total square feet of directly affected area: _____ square feet
Current general breakdown of area:


Water surface area: _____ square feet
Roads, buildings and other paved surfaces: _____ square feet
Other: _____ square feet

3.    PRESENT LAND USE:

Residential
Total no. of dwelling units _____
Number of low-to-moderate income units _____
Gross floor area _____ sq. ft.
Number of stories _____
Describe type of residential structures:


Commercial
Retail ___ Number of buildings and gross floor area of each building __
                              (sq. ft.):

_____

*    Low-to-moderate income units are units with monthly carrying costs of not more that 30% of the median area monthly income. The Department of Housing Preservation and Development may be contacted for assistance in applying this definition.

16

NYC005757
NYC005757

Office ___ Number of buildings and gross floor area of each building
(sq. ft.):

Other ___ Number of buildings and gross floor area of each building
(sq. ft.):

Specify type(s):

Number of stories and height of each building:

Manufacturing/Industrial
Type if use(s):

Number of buildings and gross floor area of each building (sq. ft.):

Number of stories and height of each building:

Open storage area _____ sq. ft.

If any unenclosed activities, specify:

Community facility
Number of buildings and gross floor area of each building (sq. ft.):

Number of stories and height of each building:

Type of community facility:

NYC005758
NYC005758

<u>Vacant land</u>
Is there any vacant land in the directly affected area?  Describe briefly.

<u>Publicly accessible open space</u>
Is there any existing publicly accessible open space in the directly
affected area?  Describe briefly.

Does the directly affected area include any mapped City,
State or Federal parkland or any mapped or otherwise known wetland?

<u>Other land use</u>
Gross floor area _____ sq. ft.
Number of stories _____
Type of use:

4.    EXISTING PARKING:
<u>Garages</u>:
Number of spaces accessible to public: _____
Number of spaces not accessible to public: _____
Attended or non-attended? _____
Operating hours _____
Self-park _____
Non-self-park (please specify)

<u>Lots</u>:
Number of spaces accessible to public: _____
Number of spaces not accessible to public _____

NYC005759
NYC005759

NYC005760
NYC005760

Attended or non-attended? _____
Operating hours _____
Self-park _____
Non-self-park (please specify)

Other (including street parking) - please specify and provide same data
as for lots and garages, as appropriate.

5.    STORAGE TANKS:

Gas or service stations _____
Oil storage facility _____
Other, specify: _____

Size of tanks:
Last NYFD inspection date:
Location and depth of tanks:

6.    CURRENT USERS:

Number of residents: _____
Number and type of businesses:

Number and type of workers by business:

Number and type of non-residents who are not workers:

7.    HISTORIC AND ARCHAEOLOGICAL RESOURCES:
Answer the following two questions with regard to the directly affected
area, lots abutting that area, lots along the same blockfront or directly across the
street from the same blockfront, and, where the directly affected area includes a
corner lot, lots which front on the same street intersection. (See Section F of the
EAS Guidebook.)

NYC005761

Do any of the areas listed above contain an improvement, interior, landscape feature, aggregate of landscape features, or archaeological resource that:

    (a)  has been designated (or is calendared for consideration as) a New York City Landmark, Interior Landmark or Scenic Landmark;

    (b)  is within a designated New York City Historic District;

    (c)  has been listed on, or determined eligible for, the New York State or National Register of Historic Places;

    (d)  is within a New York State or National Register Historic District; or

    (e)  has been recommended by the New York State Board for listing on the New York State or National Register of Historic Places? Identify any resource.

Do any of the areas listed in the introductory paragraph to 7 on page 19 contain any historic or archaeological resource, other than those listed in response to the previous question? Identify any resource.

8.     WATERFRONT:

Is any part of the directly affected area within the City's Waterfront Revitalization Program boundaries? (A map of the boundaries can be obtained at the Department of City Planning bookstore.) If yes, append a map showing the directly affected area as it relates to such boundaries. A map requested in other parts of this form may be used. (See Section K of the EAS Guidebook.)

C.    PROJECT DESCRIPTION

    This subpart should generally be completed only if your action includes a specific or known development at particular locations.

1.    PROPOSED USES:

    <u>Residential</u>
    Total no. of dwelling units _____
    Number of low-to-moderate income units _____
    Gross floor area _____ sq. ft.

NYC005762
NYC005762

Number of stories _____
Describe type(s) of residential structures:

Commercial
Retail _____ Number of buildings and gross floor area of each building
    (sq. ft.):

Office _____ Number of buildings and gross floor area of each building
    (sq. ft.):

Other _____ Number of buildings and gross floor area of each building
    (sq. ft.):

Specify type(s):

Number of stories and height of each building:

Manufacturing/Industrial
Type of use(s):

Number of buildings and gross floor area of each building (sq. ft.):

Number of stories and height of each building:

NYC005763
NYC005763

Open storage area _____ sq. ft.

If any unenclosed activities, specify:

Community facility
Number of buildings and gross floor area of each building (sq. ft.):

Number of stories and height of each building:

Type of community facility:

Vacant land
Is there any vacant land in the directly affected area?  Describe briefly.

Publicly accessible open space
Any existing publicly accessible open space to be removed or altered?
If yes, describe:

Any publicly accessible open space to be added?  If yes, describe:

Other land use
Gross floor area _____ sq. ft.
Number of stories _____
Type of use:

2.      PROPOSED PARKING:
        Garages:
        Number of spaces accessible to public: _____

NYC005764
NYC005764

Number of spaces not accessible to public: _____
Attended or non-attended? _____
Operating hours _____
Self-parking _____
Non-self-park (please specify)

Lots:
Number of spaces accessible to public: _____
Number of spaces not accessible to public: _____
Attended or non-attended? _____
Operating hours _____
Self-park _____
Non-self-park (please specify)

Other (including street parking) - please specify and provide same data as for lots and garages, as appropriate.

Number and location of proposed curb cuts:

3.     PROPOSED STORAGE TANKS:

Gas or service stations _____
Oil storage facility _____
Other, specify:

Size of tanks:
Location and depth of tanks:

4.     PROPOSED USERS:

Number of residents: _____
Number and type of businesses:

Number and type of workers for each business:

Number and type of non-residents who are not workers:

5.     HISTORIC AND ARCHAEOLOGICAL RESOURCES:

NYC005765
NYC005765

Will the action affect any historic or archaeological resource identified in response to either of the two questions at number 7 on pages 19 and 20. Describe briefly.

6.    DISPLACEMENT:

Will the action directly displace specific business or affordable and/or low income residential units?  Describe briefly.  (See Section C of the EAS Guidebook.)

7.    CHANGES TO EXISTING COMMUNITY FACILITIES:

Will the action directly eliminate, displace or alter public or publicly funded community facilities such as educational facilities, libraries, hospitals and other health care facilities, day care centers, police stations, or fire stations?  (See Section D of the EAS Guidebook.)

D.    ZONING INFORMATION

What is the zoning classification(s) of the directly affected area?

What is the maximum amount of floor area that can be developed in the directly affected area under the present zoning?  Describe in terms of bulk for each use.

What is the proposed zoning of the directly affected area?

NYC005766
NYC005766

What is the maximum amount of floor area that could be developed in the directly affected area under the proposed zoning? Describe in terms of bulk for each use.

What are the predominant land uses and zoning classifications within a ¼ mile radius of the proposed action?

## E.    ADDITIONAL INFORMATION

Attach any additional information as may be needed to describe the action. If your action involves changes in regulatory controls that affect one or more sites not associated with a specific development, it is generally appropriate to include here one or more reasonable development scenarios for such sites and, to the extent possible, to provide information about such scenario(s) similar to that requested in subpart C on pages 20-24 above.

## F.    ANALYSES

Attach analyses for each of the impact categories listed below (or indicate where an impact category is not applicable). For localized actions, sections B through N of the EAS Guidebook set forth methodologies developed by the City to be used in analyses prepared for the listed categories. Other methodologies developed or approved by the lead agency may also be utilized. If a different methodology is contemplated, it may be advisable to consult with OEC. For areawide/programmatic actions, consult section A of the guidebook. You should also attach any other necessary analyses or information relevant to the determination whether the action may have a significant effect on the

NYC005767
NYC005767

environment, including, where appropriate, information on combined or cumulative impacts, as might occur, for example, where actions are interdependent or occur within a discrete geographical area or time frame.

If you believe that a positive declaration is appropriate because the action may have a significant effect on the environment, you may indicate that here and explain briefly. In that case, the analyses otherwise required by this subpart do not have to be submitted (unless the lead agency specifically requests them).

Neighborhood character - Section B of the EAS Guidebook

Socioeconomic analysis/displacement - Section C of the EAS Guidebook

Community facilities - Section D of the EAS Guidebook

Open Space - Section E of the EAS Guidebook

Historic and archaeological resources - Section F of the EAS Guidebook

Transportation - Section G of the EAS Guidebook

Air quality - Section H of the EAS Guidebook

Infrastructure* and energy impacts - Section I of the EAS Guidebook

Natural resources - Section J of the EAS Guidebook

Waterfront Revitalization Program - Section of K of the EAS Guidebook

Hazardous materials - Section L of the EAS Guidebook

Noise - Section M of the EAS Guidebook

Solid waste - Section N of the EAS Guidebook

---

\* For purposes of this form, infrastructure refers only to the means by which wastewater is discharged and drinking water is supplied.

NYC005768

G.    APPLICANT CERTIFICATION

Preparer name: Wendy Goldman. Naim Rasheed
Preparer signature:
Date: 4/26/96


Principal: NYC Department of Transportation
Name of principal representative: Gerard Soffian
Title of principal representative: Assistant Commissioner
Signature of principal representative:
Date: 4/26/96


NOTE: Any person who knowingly makes a false statement or who knowingly falsifies any statement on this form or allows any such statement to be falsified shall be guilty of an offense punishable by fine or imprisonment or both, pursuant to section 10-154 of the New York City Administrative Code, and may be liable under other applicable laws.

NYC005769

ATTACHMENT 1.0
PROJECT DESCRIPTION AND EFFECT

Description

The New York City Department of Transportation (the Department) has been authorized by Council Resolution No. 1548 to request proposals for a nonexclusive 20-year franchise to install, maintain and operate bus stop shelters, self-cleaning automatic public toilets (APTs) and public service structures (PSSs) and to install and maintain newsstands (collectively referred to as Franchise Structures) in the five boroughs of the City. The Authorizing Resolution also provides for the placement of advertising on the Franchise Structures.

Pursuant to this authority the Department is seeking proposals for a Coordinated Street Furniture Franchise that will provide for the following:

> The installation and maintenance of a minimum of 3,300 bus stop shelters, with amenities for the public in the form of street identification signage, seating and public service information;

> The installation, operation and maintenance of a minimum of 30 self-cleaning APTs; and,

> The installation and maintenance of a minimum of 430 newsstands.

In addition, the Department will encourage proposers to provide for the installation, operation and maintenance of PSSs, such as newspaper and periodical dispensers, recycling or litter bins, computer terminals that provide access to government or commercial activity, bicycle racks and public pay telephones.

Most of the Franchise Structures will replace and improve on existing or previously proposed sidewalk structures. The present bus stop shelter inventory will be maintained and enhanced. Existing sidewalk newsstands will be replaced at their current locations if such locations comply with the Siting Criteria (attached as Exhibit A) and complying locations will be found for other newsstands.

A previous environmental assessment and determination resulting in a negative declaration considered the installation and maintenance of 200 APTs and additional public service kiosks in accordance with comprehensive siting criteria.

- 1 -

NYC005770

In that the Coordinated Street Furniture Franchise involves far fewer APTs, subject to equally comprehensive siting criteria. the prior determination could be considered dispositive. In addition. bus stop shelters are currently being installed and maintained as a public amenity in conjunction with the public transportation system and could. therefore. be considered a Type II action. However. the Department has elected to conduct an environmental assessment of all proposed uses.

Permissible Dimensions

The maximum permissible dimensions for each of the Franchise Structures are as follows:

|  | Area | Height | Width | Length |
|---|---|---|---|---|
| **Bus Stop Shelter** | 150 sq. ft. | 9 ft | 5 ft. | 30 ft. |
| **Newsstand** | 72 sq. ft. | 9 ft. | 6.5 ft | 14 ft. |
| **APT** | 78 sq. ft. | 12 ft. | 8 ft. | 12.5 ft. |
| **PSS** | 36 sq. ft. | 7 ft. | 6 ft. | 6 ft. |

Proposers will also have the option to propose cylindrical, pillar-type structures for newsstands, APTs, and PSSs. Such structures, which occupy less sidewalk space than oblong structures, will have a maximum height of 16 feet, but will not be permitted to exceed the maximum widths stated above.

Siting

Sites for street furniture constructed under the Franchise will be selected by the Department in accordance with comprehensive Siting Criteria attached as Exhibit A. These criteria generally mirror the existing or approved criteria for bus stop shelters, newsstands, and APTs. Minor adjustments have been made to provide greater consistency and coordination, but the criteria continue to recognize the unique nature of each type of structure. For example, the existing Newsstand Guidelines and the approved siting criteria for APTs require a 2-foot clearance from cellar doors whereas the bus stop shelter criteria in place for over a decade require a 10-foot clearance. Under the new Siting Criteria, the clearance from cellar doors will be 2 feet for all Franchise Structures, with the proviso that bus stop shelters must provide an unobstructed path wide enough for wheelchair access.

In siting the Franchise Structures, in addition to considering the Siting Criteria, the Department will engage in an extensive consultative process which will include review of proposed sites by elected officials and Community Boards.

- 2 -

NYC005771
NYC005771

Build-Out Schedule

The Franchisee will be required, at a minimum, to adhere to the following build-out schedule:

|            | Shelters | APTs | Newsstands |
|------------|----------|------|------------|
| Year 1     | 550      | 15   | 144        |
| Year 2     | 550      | 15   | 143        |
| Year 3     | 550      | ***  | 143        |
| Year 4     | 550      | ***  | ***        |
| Year 5     | 550      | ***  | ***        |
| Year 6     | 550      | ***  | ***        |
| Years 7-20 | ***      | ***  | ***        |

*** Additional structures as directed by the Department.

Advertising on the Franchise Structures

Each Franchise Structure may have a maximum of 2 advertising panels. The total maximum advertising area shall be 70 square feet on bus shelters; 108 square feet on APTs and newsstands; and 42 square feet on PSSs so long as such advertising does not physically or visually obscure the public service provided by the PSS. The maximum advertising height shall be 7 feet on bus stop shelters; 9 feet on APTs and newsstands, and 7 feet on PSSs so long as such advertising does not physically or visually obscure the public service provided by the PSS. However, the maximum height of advertising on pillar structures shall be increased 1 foot for every reduction of 5 square feet against the total maximum permissible area for a particular Franchise Structure, up to a maximum height of 14 feet.

The Department may increase the maximum advertising dimensions and numbers of panels by up to 35 square feet and by 1 additional panel. This increase shall apply to no more than 10% of the total number of Franchise Structures citywide, and to no more than 20% of the total number of Franchise Structures in any one community district.

The placement of advertising panels shall not obstruct the visibility of adjacent buildings or the interior of the bus stop shelter, nor may it interfere with pedestrian or motorist sight-lines necessary for traffic safety.

Electronic media (such as "zippers") will be permitted only on a case by case basis and, except for backlighting of printed posters, will be subject to applicable zoning regulations for the site. Audio advertising will not be permitted.

- 3 -

NYC005772
NYC005772

The display or placement of tobacco advertising shall be prohibited.

## Effects of the Proposed Action

Neighborhood Character

The goal of this proposal is to provide well-maintained attractive street furniture that offers increased public amenities and to reduce clutter on City sidewalks.

The designs for the different types of structures will be aesthetically pleasing, will be unified in a Citywide coordinated design scheme and will take into account compatibility with special contexts, such as historic districts, including the ability to incorporate site-specific design components.

The siting of the Franchise Structures will be coordinated by the Department in consultation with communities in accordance with the above Siting Criteria, which take into account the existence of other sidewalk furniture and elements thereby reducing sidewalk clutter.

Coordinated maintenance of all the Franchise Structures will enhance the overall appearance of the streetscape.

Transportation

This franchise will continue and enhance the services provided by the City's existing franchise for the installation and maintenance of bus stop shelters, which expires at the end of 1997. Thousands of bus stop shelters have been sited and installed throughout the City since 1985 pursuant to the existing franchise. Bus stop shelters support existing bus routes, making the use of public transportation more convenient and attractive.

The Siting Criteria for the Franchise Structures establish unobstructed clear paths on the sidewalk and preserve open sight-lines necessary for the unimpeded flow of pedestrian and vehicular traffic.

Historic and Archaeological Resources

The vast majority of the Franchise Structures will be installed on the sidewalks with minimal subsurface disturbance. Moreover, the design and placement of the Franchise Structures will be subject to the review and approval of the Landmarks Preservation Commission to the extent required by law.

- 4 -

NYC005773
NYC005773

## Coastal Zone Management

The City's coastal zones are subject to the Local Waterfront Revitalization Program (LWRP). The program consists of 44 State-wide policies for protection and improvement of the waterfront and 12 policies specifically applicable to the City of New York. These policies establish a framework for managing waterfront resources in the public interest. The proposed action was reviewed with respect to its consistency with the LWRP by applying and considering the associated checklist included in the CEQR Technical Manual. Since the proposed action would not result in the construction of any new developments or changes in land use, it would have no effect on State policies 1–44 and City policies A through L. Therefore, the proposed action would not result in any coastal zone impacts.

NYC005774
NYC005774

**EXHIBIT A**
**SITING CRITERIA**

The general provisions contained in the first section of these criteria apply to all Franchise Structures. Additional requirements applying to particular types of structures are stated in the sections that follow. These additional requirements are designed to accommodate differences in the structures' function, appearance and use and to ensure appropriate and consistent locational opportunities.

**A.    General Provisions**

1.  <u>Clear Path</u>. All Franchise Structures shall be installed so as to allow a straight unobstructed path ("clear path") for pedestrian circulation on the sidewalk. The dimensions of the clear path for each type of structure are specified in the subsequent sections. Where the building line does not coincide with the property line, the Department may include in its determination of clear path any portion of the area between those two lines which is immediately adjacent to and level with the public sidewalk, open to the sky, substantially unobstructed along its entire length, and level, paved and accessible so as to provide a usable walking surface. No grates or cellar doors shall be included as a part of the clear path directly in front of or behind a franchise structure.

2.  <u>Sight Lines</u>. The placement of the franchise structures shall not interfere with pedestrian or motorist sight lines necessary for traffic safety.

3.  <u>Minimum Distance Requirements</u>. Unless otherwise stated, distances shall be measured between the nearest points, viewed in plan, of the Franchise Structure and the specified object or element. Where a distance is required to be measured parallel to the curb line, the measurement shall be taken between the two lines perpendicular to the curb line, one touching the Franchise Structure and the other touching the specified object or element, that are closest to each other.

   a)  The following minimum distances shall be required between the Franchise Structure and the specified element or object:

      i)  Fifteen feet from: Bus stop shelters; automatic public toilets; newsstands; enclosed or unenclosed sidewalk cafes; subway entrances or exits.

      ii)  Ten feet from: Fire hydrants; standpipes; Siamese connections; driveways (which distances must also meet the Department's safety and operational requirements); building

lines extended at the intersection of two streets, in accordance with Executive Order No. 22 of 1995 (see Figure 1)

iii)     Five feet from:  The trunk of any tree; canopies; information kiosks

iv)     Three feet from:  Street lights and traffic signal poles.

v)      Two feet from:  Ventilation or other grills; manholes; access plates; street signs; parking meters; fixed litter baskets; tree pits; valve boxes; telephones, cellar doors; mailboxes.

vi)     One and one-half feet from the curb of any street, except for bus stop shelters (see below).

b)      No Franchise Structure may be installed directly in front of a building entrance or exit without written permission from the abutting property owner.  No franchise structure shall be installed within 5 feet (measured parallel to the curb line) of a building entrance except where the Department determines that this requirement cannot be reasonably met.

c)      No Franchise Structure may be installed within 3 feet of the property line of a residential or commercial structure without written permission from the abutting property owner.

d)      No Franchise Structure may be located under a fire escape.

e)      Except for bus stop shelters, no Franchise Structure may be located within a bus stop zone or a taxi stand.

4.     <u>Vaults</u>.  Where a vault is present, the Franchisee shall submit certification from an engineer that the installation of the Franchise structure will in no way damage the vault.

5.     <u>Electrical Sources</u>.  Franchise Structures should be as close as possible, subject to all other distance requirements, to the source of electricity, if required for the operation of the Franchise Structure.  Such Franchise structures may not be sited farther than 150 feet from the nearest available electric power source, unless otherwise directed by the City.  The Franchisee is prohibited from using a traffic signal or Con Edison type #12 post, or any power source across a major or protected roadway, unless authorized to do so by the Department.

6.     <u>Alignment</u>.  In addition to meeting the distance requirements contained in these criteria, all Franchise Structures located on sidewalks shall be aligned with and located between any major sidewalk obstructions.  If there are no other major obstructions on the sidewalk, all Franchise

2

Structures shall be located no farther than 3 and 1/2 feet from the building line or curb line.



**Figure 1. Clear Corner Policy**

**B.     Bus Stop Shelters**

1.     <u>Clear Path</u>. In general, bus stop shelters shall be installed to allow a minimum clear path of 7 feet in width. However, a reduced clear path may be permitted by the Department if necessary to allow the installation of a bus stop shelter. In no case shall such clear path be less than 5 feet in width. Areas of the sidewalk covered by a roof or overhang may be considered as part of the clear path.

2.     <u>Clearance from Curb</u>. Viewed in plan, the roof of a bus stop shelter shall be set back from the curb line a minimum distance of 2 feet.

3.     <u>Pedestrian and Wheelchair Access</u>. All bus stop shelters shall be installed to allow a straight unobstructed path of a minimum of 3 feet in width which allows direct access from the sidewalk to the shelter and from the shelter to a bus.

4.     <u>Relation to the Bus Stop</u>

   a)     All bus stop shelters shall be located as close as possible to the head of the bus stop, but no less than 10 feet from the head of the bus stop at locations where parking is permitted immediately adjacent to the head of the bus stop.

3

NYC005777
NYC005777

b) If a bus stop shelter has only one enclosed end. it should be situated toward the head of the bus stop.

**C.     Automatic Public Toilets, Newsstands, Public Service Structures**

1.     Clear Path

   a)    All newsstands shall be installed to allow a minimum clear path of 9 and 1/2 feet in width. The clear path may include an area up to 2 feet in width covered by the newsstand's roof overhang.
   b)    Other Franchise Structures shall be installed to allow a minimum clear path of 8 feet in width.
   c)    The clear path shall extend 15 feet to each side of the Franchise Structure.

2.     Minimum Distance Requirements. A minimum 15-foot distance, measured parallel to the curb, is required upon installation between the Franchise Structure and:

   a)    Entrances to houses of worship.
   b)    Any entrance to the elevator lobby of a building having non-residential uses above the street-level floor and having 16 floors in height or more with a frontage of at least 100 feet on narrow streets or 140 feet on wide streets (as defined in the Zoning Resolution).
   c)    Any entrance to the lobby of a hotel.
   d)    Any entrance to a bank from the street that serves the public, including ATM entrances.
   e)    Entrances to theaters and box offices.

**D.     Additional Requirements for Automatic Public Toilets**

1.     Permissible Locations. APTs shall be located only:

   a)    On wide streets, as defined in Section 12-10 of the Zoning Resolution. only in commercial, manufacturing or mixed use districts.
   b)    On sidewalks or plazas adjacent to property owned or leased by a government agency or public authority or under the jurisdiction of the Economic Development Corporation.
   c)    On traffic islands or public places bounded on all sides by mapped streets under the jurisdiction of the Department.
   d)    On or adjacent to parks property or playgrounds, subject to the approval of the Department of Parks and Recreation.

4

NYC005778
NYC005778

2.  <u>Utilities</u>  The siting of APTs shall be subject to consideration of the economic feasibility of making necessary utility connections. All APT sites are subject to the additional approval of the Department of Environmental Protection.

## E.    Special Circumstances

The Commissioner may waive or modify the above criteria in specific cases, except where prohibited by law, if, in his or her opinion, such waiver is consistent the public health, safety and general welfare. No such waiver shall be granted without prior consultation with the affected Council Member, Borough President, and Community Board. Similarly, the Department may refrain from siting a franchise structure at a particular location which in the opinion of the Commissioner would result in an over-concentration of franchise structures.

Notwithstanding anything contained herein, the siting of Franchise Structures shall be subject to any applicable requirements of the Administrative Code.

5

NYC005779
NYC005779