UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x
METRO FUEL, LLC,

                                              Plaintiff,

                 -against-

                                      07-CV-8244
CITY OF NEW YORK

                                   Defendant.

---------------------------------------------------------------------- x

### DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1

        Pursuant to Rule 56.1 of the Civil Rules of the Southern District of New York, defendant submits the following in response to plaintiff's statement of material facts as to which they contend there is no genuine factual issue to be tried:

        1.      Defendant does not dispute the assertions in paragraph 1 of Metro Fuel LLC's ("Fuel") statement.[1]

        2.      Defendant does not dispute the assertions in paragraph 2 of Fuel's Statement.

        3.      Defendant does not dispute the assertions in paragraph 3 of Fuel's Statement.

        4.      Defendant does not dispute the assertions in paragraph 4 of Fuel's Statement.

---

[1] While defendant does not dispute the accuracy of many assertions set forth in Fuel's statement, unless similarly referred to in Defendant's Rule 56.1 Statement, defendant does not concede that the assertions set forth in Fuel's Statement are material to the Court rendering a determination as to the constitutionality of the laws and rules challenged by plaintiff in the instant action.

5.    Defendant does not dispute the assertions in paragraph 5 of Fuel's Statement.

6.    Defendant does not dispute the assertions in the first sentence of paragraph 6 of Fuel's Statement. Defendant disputes the assertions in the second sentence of paragraph 6 of Fuel's Statement. This dispute does not result in a genuine factual issue to be tried because Fuel's assertion is directly contradicted by statements on its own website. Fuel Webpage Printout regarding Panel Advertising, Exhibit MM (stating "Metro Lights Panels are illuminated 6'x4' displays that reach drivers and pedestrians alike in a variety of environments"). In any event, this dispute is not material because whether Fuel markets its panel signs to motorists is irrelevant to the resolution of plaintiff's claims.

7.    Defendant disputes the assertions in the first sentence of paragraph 7 of Fuel's Statement to the extent they state that Fuel's panel signs compete directly with street furniture advertising signs and to the extent that Fuel characterizes the City's behavior in permitting advertising on certain street furniture as blanketing the City's sidewalks in recent years. These disputes do not result in a genuine factual issue to be tried because plaintiff's subjective self-interested statements are not supported by admissible evidence, and are akin to legal argument. Defendant disputes the assertions in the second, third and fourth sentences of paragraph 7 of Fuel's Statement. This dispute does not result in a genuine factual issue to be tried because plaintiff's statements are not supported by admissible evidence, and are not factual assertions but legal argument. In any event, these disputes are not material because whether Fuel contracts with advertisers who also contract with the City is irrelevant to the resolution of plaintiff's claims.

8.    Defendant does not dispute the assertions in paragraph 8 of Fuel's Statement.

9.    In response to paragraph 9 of Fuel's Statement, defendant does not dispute that accessory signs are allowed in commercial and manufacturing districts subject to certain restrictions set forth in the Zoning Resolution ("Z.R."), however, defendant disputes Fuel's use of the word "liberally" in characterizing these provisions.  This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion in this regard is not a factual assertion but legal argument, and because the text of the cited sections of the Zoning Resolution speak for themselves.

10.    Defendant disputes the assertions in paragraph 10 of Fuel's Statement to the extent they 1) suggest or imply that the Zoning Resolution is unconstitutional or arbitrary in its treatment of advertising signs; and 2) characterize the regulation of advertising signs as "severe."  These disputes do not result in a genuine factual issue to be tried because plaintiff's assertions in this regard are not factual assertions but legal arguments, and because the text of the cited sections of the Zoning Resolution speaks for themselves.

11.    Defendant does not dispute the assertions in paragraph 11 of Fuel's Statement.

12.    Defendant does not dispute the assertions in paragraph 12 of Fuel's Statement.

13.    Defendant does not dispute the assertions in paragraph 13 of Fuel's Statement.

14.    Defendant does not dispute the assertions in paragraph 14 of Fuel's Statement.

15.     Defendant does not dispute the assertions in paragraph 15 of Fuel's Statement, and avers that if Fuel changed its lighting to indirect lighting its panel signs would be allowed in C8, M1, M2 and M3 districts.  Z.R. 32-645; 42-533;  Fortier Dep., Exhibit OO at p. 47-48, 55-56.

16.     Defendant does not dispute the assertions in paragraph 16 of Fuel's Statement.

17.     Defendant does not dispute the assertions in paragraph 17 of Fuel's Statement.

18.     Defendant does not dispute the assertions in paragraph 18 of Fuel's Statement.

19.     Defendant disputes the assertions in paragraph 19 of Fuel's Statement and avers that title to the existing shelters transferred directly from CBS Outdoor to Cemusa. Franchise Agreement, Exhibit Q, at 2.42, and 4.4.3.  This dispute does not result in a genuine factual issue to be tried because plaintiff's statement is not supported by the cited document, and is directly contradicted by the Franchise Agreement.

20.     Defendant does not dispute the assertions in paragraph 20 of Fuel's Statement.

21.     Defendant does not dispute the assertions in paragraph 21 of Fuel's Statement.

22.     Defendant does not dispute the assertions in paragraph 22 of Fuel's Statement.

23.     Defendant disputes the assertions in paragraph 23 of Fuel's Statement only to the extent they characterize the new bus shelter advertising panels as being "considerably

larger than those on the old shelters." This dispute does not result in a genuine factual issue to be tried because plaintiff's characterization in this regard is not a factual assertion but legal argument, and is belied by the fact that the new bus shelters may only contain a total of 55 square feet of advertising, and thus may display a total of eight more square feet of advertising than that permitted on the old bus shelters. Stipulations of Fact, ¶ 64.[2]

24.     Defendant does not dispute the assertions in paragraph 24 of Fuel's Statement.

25.     Defendant disputes the assertions in the paragraph 25 of Fuel's Statement to the extent they rely upon Wachtel's study.  Mr. Wachtel admits that he did not utilize any scientific equipment or methodology in gauging the brightness of street furniture advertising panels or Fuel signs. Rather, Mr. Wachtel used a photometer which is meant for photography use.  Wachtel Dep. Tr., Exhibit SS at p. 86, ln. 20-25, p. 87, ln. 1-8, and 14-20, p. 89, ln. 16-21. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertions are not supported by credible admissible evidence.  Defendant further avers that Douglas Woodward has stated that, based on his experience, current level of illumination of the City's street furniture advertisements is appropriate.  Woodward Declaration, ¶ 41, fn. 9.  In any event, this dispute is not material as the question of whether street furniture advertisements are brighter than Fuel advertising signs is irrelevant to the resolution of plaintiff's claims.

26.     Defendant does not dispute the assertions in paragraph 26 of Fuel's Statement.

27.     In response to the assertions in paragraph 27 of Fuel's Statement, defendant does not dispute that bus shelters and newsstands may be located in residential zoning

---

[2] The parties' Stipulations of Fact are provided as Exhibit 1 to the July 28, 2008 Declaration of Eric Hecker ("Hecker Dec.").

districts. However, defendant avers that there are restrictions as to the placement of bus shelter and newsstand advertising signs in all zoning districts, including residential zoning districts. Franchise Agreement, Exhibit Q, at Sections 4.31, 4.32, 4.41, 4.42, and Appendix D. See also, 6 RCNY § 2-68, and Admin. Code § 20-231.

28.    Defendant does not dispute the assertions in paragraph 28 of Fuel's Statement.

29.    Defendant disputes the assertions in paragraph 29 of Fuel's Statement. This dispute does not result in a genuine factual issue to be tried because plaintiff's statement is akin to legal argument, and belied by the fact that the Zoning Resolution does not apply to sidewalks, and thus is not applicable to advertising on bus shelters. See Z.R. 11-01. See also Woodward Dec., ¶ 3.

30.    In response to paragraph 30 of Fuel's Statement, defendant does not dispute that, under the Franchise Agreement, Cemusa is permitted to install up to 250 scrollers on bus shelters, however, defendant disputes Fuel's use of the words "so-called" and "dynamic" in characterizing the scrollers. These disputes do not result in a genuine factual issue to be tried because plaintiff's statements are not factual assertions but legal argument.

31.    Defendant does not dispute the assertions in paragraph 31 of Fuel's Statement.

32.    In response to paragraph 32 of Fuel's Statement, defendant does not dispute that, pursuant to the Franchise Agreement, electronic media may be permitted in connection with advertising on a case by case basis, subject to DOT's approval. However, defendant disputes the assertions in paragraph 32 to the extent they presume DOT will permit various forms of electronic media under the Franchise Agreement. This dispute does not result

in a genuine factual issue to be tried because plaintiff's assertion in this regard is speculative, not supported by the cited document, and the text of the cited section of the Franchise Agreement [i.e. Franchise Agreement 4.4.2] speaks for itself.

33.     Defendant does not dispute the assertions in paragraph 33 of Fuel's Statement.

34.     Defendant disputes the assertions in paragraph 34 of Fuel's Statement only to the extent they suggest or imply that all of the bus shelters were in areas with high pedestrian and vehicular traffic.  This dispute does not result in a genuine factual issue to be tried because the cited stipulation [at ¶ 70] states: "[t]he shelters were located in commercial areas, most with high foot traffic and vehicular traffic."

35.     Defendant does not dispute the assertions in paragraph 35 of Fuel's Statement.

36.     Defendant disputes the assertions in paragraph 36 of Fuel's Statement to the extent they suggest or imply that Stanley Shor is an expert in traffic safety.  Defendant avers that 1) the LCD screens are marketed as being visible only to pedestrians, not motorists [Askew Dec, Hecker Dec., Exhibit 16, at ¶ 3] and 2) there is no evidence that LCD screens cause traffic safety issues [Results of DOT's before-and-after study of traffic accidents conducted as part of the electronic media pilot program, Exhibit DD].  This dispute is not material as the question of whether, for safety reasons, LCD screens should be placed only on one-way streets facing away from vehicular traffic is irrelevant to the resolution of plaintiff's claims.  The City does not purport to regulate the placement of plaintiff's panel signs for traffic safety reasons.

37.     In response to paragraph 37 of Fuel's Statement, defendant does not dispute that the City approved a pilot program which permits Cemusa to install mini-panel LCD

"tickers" that display stock quotes, the time and temperature on bus shelters, however, defendant disputes Fuel's use of the word "dynamically" in characterizing the "tickers." This dispute does not result in a genuine factual issue to be tried because plaintiff's assertions in this regard is not a factual assertion but legal argument.

38.     Defendant does not dispute the assertions in paragraph 38 of Fuel's Statement.

39.     Defendant does not dispute the assertions in paragraph 39 of Fuel's Statement.

40.     Defendant does not dispute the assertions in paragraph 40 of Fuel's Statement and avers that, as further set forth in the Stipulation referenced by plaintiff [at ¶ 76], the Bluetooth will only transmit to telephones or other handheld devices which are turned on, and that the use of Bluetooth technology has been discontinued. See Stipulations of Fact, ¶ 76, Askew Dec, Hecker Dec., Exhibit 16, at ¶ 5.

41.     Defendant does not dispute the assertions in the first sentence of paragraph 41 of Fuel's Statement. Defendant disputes the assertions in the second sentence of paragraph 41 of Fuel's Statement insofar as plaintiff alleges that Cemusa believed that the Bluetooth technology installed on the bus shelters had the capacity to transmit content "considerably further" than 15 feet, and avers that Cemusa stated that it understood the technology could transmit up to 20 feet. Askew Dec, Hecker Dec., Exhibit 16, at ¶ 8. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion in this regard is unsupported by the cited documents and is akin to legal argument. In any event, this dispute is not material because 1) the use of Bluetooth technology has been discontinued [Askew Dec, Hecker Dec.,

Exhibit 16, at ¶ 5]; and 2) the Zoning Resolution. does not prohibit plaintiff from using Bluetooth technology.

42.     Defendant does not dispute the assertions in paragraph 42 of Fuel's Statement and avers that the City monitored the pilot program by asking its franchisee to confirm that it was complying with the terms of the pilot program. Stipulations of Fact, ¶ 74.

43.     Defendant disputes the assertions in paragraph 43 of Fuel's Statement to the extent they suggest or imply that Bluetooth technology was installed in well over 100 different bus shelters at one time. See Stipulations of Fact, ¶ 73 (detailing the use of the Bluetooth technology). This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion is contradicted by the parties' Stipulation. Moreover, this dispute is not material because 1) the use of Bluetooth technology has been discontinued [Askew Dec, Hecker Dec., Exhibit 16, at ¶ 5]; and 2) the Zoning Resolution does not prohibit plaintiff from using Bluetooth technology.

44.     Defendant does not dispute the assertions in paragraph 44 of Fuel's Statement and avers that the City monitored the pilot program by asking its franchisee to confirm that it was complying with the terms of the pilot program. Stipulations of Fact, ¶ 74.

45.     Defendant does not dispute the assertions in paragraph 45 of Fuel's Statement.

46.     Defendant disputes the assertions in paragraph 46 of Fuel's Statement only to the extent they suggest or imply that Cemusa may install more than 330 additional newsstands under the Franchise Agreement, and avers that under the Agreement, Cemusa may install a total of 330 newsstands (replacement and new). Stipulations of Fact, ¶ 83.

47.    Defendant does not dispute the assertions in paragraph 47 of Fuel's Statement.

48.    Defendant does not dispute the assertions in paragraph 48 of Fuel's Statement.

49.    Defendant does not dispute the assertions in paragraph 49 of Fuel's Statement.

50.    Defendant disputes the assertions in paragraph 50 of Fuel's Statement. This dispute does not result in a genuine factual issue to be tried because plaintiff's statement is akin to legal argument, and is belied by the fact that the Zoning Resolution does not apply to sidewalks, and thus is not applicable to advertising on newsstands. See Z.R. 11-01. See also Woodward Dec., ¶ 3.

51.    Defendant does not dispute the assertions in paragraph 51 of Fuel's Statement.

52.    Defendant does not dispute the assertions in paragraph 52 of Fuel's Statement.

53.    Defendant only disputes the assertions in paragraph 53 of Fuel's Statement to the extent they suggest or imply that advertising may be installed on building-line PPTs, and avers that as set forth in the Stipulation referenced by plaintiff [at paragraph 96], advertising panels are only permitted on the curb-line PPTs.

54.    Defendant does not dispute the assertions in paragraph 54 of Fuel's Statement.

55.    Defendant disputes the assertions in paragraph 55 of Fuel's Statement to the extent they allege that approximately 12,000 PPTs in New York City bear advertising signs.

This dispute does not result in a factual issue to be tried because the testimony cited by plaintiff does not refer to the number of PPTs in New York City with advertising, and Mr. Shor testified twice at his deposition that he did not know how many PPTs had advertising on them. Shor Dep. Tr., Exhibit UU at p. 65, ln. 5-7, 21-25, p. 66, ln. 1.

56.    Defendant does not dispute the assertions in paragraph 56 of Fuel's Statement.

57.    Defendant only disputes the assertions in paragraph 57 of Fuel's Statement to the extent they suggest or imply that historic districts are the only area in which PPT advertising signs may not be illuminated, and avers that Stipulation referenced by plaintiff [at paragraph 99], states that under the franchise agreements, PPTs may only be illuminated if the illumination does not violate City rules, such as the rules of the Landmarks Preservation Commission which do not allow illumination in historic districts.

58.    Defendant does not dispute the assertions in paragraph 58 of Fuel's Statement.

59.    Defendant disputes the assertions in paragraph 59 of Fuel's Statement to the extent they take Mr. Shor's testimony out of context. The testimony cited by plaintiff concerns Mr. Shor's understanding of LED technology in general, not the LED technology used in the New York Lotto advertisements. This dispute does not result in a factual issue to be tried because plaintiff's assertion is not supported by the cited testimony. Rather, Mr. Shor testified that one of the requirements set by DoITT in permitting LED technology on PPT ads for New York Lotto was that the LED not be brighter than the illumination for the rest of the panel so as not to change the look of the PPT. Shor Dep. Tr., Exhibit UU at p. 163, ln. 6-16. See also, Shor letter granting Van Wanger permission to utilize LED, dated November 15, 2004, Exhibit VV.

In any event, this dispute is not material as the level of illumination of the New York Lotto advertisements is irrelevant to the resolution of plaintiff's claims.

60.    In response to paragraph 60 of Fuel's Statement, defendant does not dispute that there was a growth in the number of PPTs with advertising panels in central Manhattan provided that the phrase "central Manhattan" is understood to be Manhattan Community Boards 1-8, however, defendant disputes Fuel's use of the word "explosive" in characterizing the growth. This dispute does not result in a genuine factual issue to be tried because plaintiff's characterization in this regard is not a factual assertion but legal argument.

61.    Defendant does not dispute the assertions in paragraph 61 of Fuel's Statement.

62.    Defendant does not dispute the assertions in paragraph 62 of Fuel's Statement.

63.    Defendant does not dispute the assertions in paragraph 63 of Fuel's Statement.

64.    Defendant disputes the assertions in paragraph 64 of Fuel's Statement only to the extent that they suggest or imply that advertising is allowed on banners. Defendant avers that pursuant to 34 RCNY § 2-14(b), advertising is not permitted on banners. This dispute does not result in a genuine factual issue to be tried because the text of the cited section of the RCNY speaks for itself.

65.    Defendant disputes the assertions in paragraph 65 of Fuel's Statement only to the extent that they suggest or imply that advertising is allowed on banners. Defendant avers that pursuant to 34 RCNY § 2-14(b), advertising is not permitted on banners. This dispute does

not result in a genuine factual issue to be tried because the text of the cited section of the RCNY speaks for itself.

66.    Defendant disputes the assertions in paragraph 66 of Fuel's Statement only to the extent that they suggest or imply that advertising is allowed on banners.  Defendant avers that pursuant to 34 RCNY § 2-14(b), advertising is not permitted on banners.  This dispute does not result in a genuine factual issue to be tried because the text of the cited section of the RCNY speaks for itself.

67.    Defendant disputes the assertions in paragraph 67 of Fuel's Statement only to the extent that they suggest or imply that advertising is allowed on banners.  Defendant avers that pursuant to 34 RCNY § 2-14(b), advertising is not permitted on banners.  This dispute does not result in a genuine factual issue to be tried because the text of the cited section of the RCNY speaks for itself.

68.    Defendant disputes the assertions in paragraph 68 of Fuel's Statement. These disputes do not result in a genuine factual issue to be tried because plaintiff's assertions are not factual assertions but legal argument.

69.    Defendant does not dispute the assertions in paragraph 69 of Fuel's Statement.

70.    Defendant disputes the assertions in paragraph 70 of Fuel's Statement only to the extent they characterize the advertising on the rooftops of taxicabs as "dynamic."  This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion is not a factual assertion but legal argument.

71.    Defendant does not dispute the assertions paragraph 71 of Fuel's Statement.

72.    Defendant does not dispute the assertions paragraph 72 of Fuel's Statement.

73.    Defendant does not dispute the assertions in paragraph 73 of Fuel's Statement, and avers Jeffrey Sugarman testified as to his personal opinion, which is both immaterial and inadmissible.

74.    Defendant does not dispute the assertions in paragraph 74 of Fuel's Statement.

75.    Defendant disputes the assertions in paragraph 75 of Fuel's Statement to the extent that it mischaracterizes the content of the cited document [i.e., Hecker Dec., Exhibit 27, NYC 014313]. A complete reading of the cited document reveals that Stanley Shor, who is not an attorney, appears not to have examined PAL § 1204(13-a), which clearly allows the transit authority to place advertising on its subway entrances. This dispute does not result in a genuine factual issue to be tried because the assertion is unsupported by the cited document.

76.    Defendant disputes the assertions in paragraph 76 of Fuel's Statement because neither Stanley Shor nor Edward Fortier testified to the alleged statement. Rather, both individuals testified that they were unaware of whether the City explored whether MTA urban panels are exempt from enforcement. Shor Dep. Tr., Exhibit UU at p. 227, ln. 1-7, Fortier Dep., Exhibit OO at p. 102, ln. 16-19. This dispute does not result in a genuine factual issue to be tried because the assertions are not supported by the cited testimony.

77.    Defendant disputes the assertions in paragraph 77 of Fuel's Statement to the extent they characterizes the 1959 recommendation of then New York City mayor Robert F. Wagner as "strongly endorsed," and avers that the cited correspondence demonstrates that the bill was sponsored on the recommendation of the Transit Authority, not the City, and that

nothing in the record that suggests that the City actually had any control over whether the State would ultimately adopt the legislation that had been requested by the Transit Authority, or that the legislation would not have been enacted even if the City objected. See a copy of a letter from Bernard J Ruggieri letter, dated April 15, 1959, Hecker Dec., Exhibit 28.

78.    In response to the assertions in paragraph 78 of Fuel's Statement defendant does not dispute that four Board MTA members are appointed based upon the recommendation of the Mayor of the City of New York.

79.    Defendant disputes the assertions in paragraph 79 of Fuel's Statement to the extent they state that "the MTA relies on the City's continuing willingness to lease" facilities to it and to the to the extent they suggest or imply that the City improperly attempts to assert control over the MTA through the use of leasing facilities. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion in this regard is speculative and unsupported by the cited documents. In any event, this dispute is not material because the City's leasing facilities to the MTA is irrelevant to the resolution of plaintiff's claims.

80.    In response to paragraph 80 of Fuel's Statement, defendant does not dispute that the City provides the MTA with operating and capital subsidies, however, defendant disputes the amounts asserted by Fuel as they are inconsistent with the cited Stipulation. Stipulations of Fact, ¶ 41. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion in this regard is unsupported by the cited stipulation.

81.    In response to paragraph 81 of Fuel's Statement, defendant does not dispute that Commissioner Weinshall testified at her deposition that during her tenure at DOT, DOT did not ask the MTA to consider voluntarily removing any of its urban panels. Further, defendant avers that Commissioner Weinshall testified that she was "told by the head of the

Deputy Commissioner for traffic that he didn't see a problem with [the urban panels], in terms of traffic safety." Weinshall Dep., Hecker Dec., Exhibit 5, at pp. 81, ln. 1-20. In any event, this issue is not material because the City does not purport to regulate the placement of plaintiff's panel signs for traffic safety reasons.

82.    Defendant does not dispute the assertions in paragraph 82 of Fuel's Statement.[3]

83.    Defendant does not dispute the assertions in paragraph 83 of Fuel's Statement.

84.    Defendant does not dispute the assertions in paragraph 84 of Fuel's Statement and avers that as further set forth in the Stipulation referenced by plaintiff [at ¶ 89], the reserved space is also used for public service advertising.

85.    Defendant does not dispute the assertions in paragraph 85 of Fuel's Statement.

86.    Defendant disputes the assertions in paragraph 86 of Fuel's Statement to the extent that the $100 million referenced in the cited document and testimony is an estimated prediction of the amount that it will cost to construct and install all of the new street furniture structures, and does not take into consideration the cost to maintain street furniture. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion is unsupported by the cited document and testimony. In any event, this dispute is not material because the revenue generated under the street furniture franchise is irrelevant to the resolution of plaintiff's claims.

_____

[3] Defendant disputes the assertions in the heading D which proceeds paragraph 82. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertions are not factual assertions but legal argument.

87.    Defendant disputes the assertions in the first sentence of paragraph 87 of Fuel's Statement. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion is unsupported by the cited document and is not a factual assertion but legal argument. In any event, this dispute is not material because the revenue generated under the street furniture franchise is irrelevant to the resolution of plaintiff's claims. Defendant does not dispute the assertions in the second sentence of paragraph 87 of Fuel's Statement.

88.    Defendant disputes the assertions in paragraph 88 of Fuel's Statement only to the extent that $75 million is an incorrect mathematical computation. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion is unsupported by the cited document. In any event, this dispute is not material because the revenue generated under the street furniture franchise is irrelevant to the resolution of plaintiff's claims.

89.    Defendant does not dispute the assertions in paragraph 89 of Fuel's Statement. Further, defendant avers that

> DOT first considered the installation of scrollers during the BAFO phase of the RFP process as all of the BAFO proposers included scrollers in their BAFO proposals. In reviewing scrollers, DOT first considered whether scrollers would have any negative impacts on the City's Streetscape, not whether they would generate additional income. Indeed, while all of the BAFO proposers included scrollers in their proposals, they did not all offer additional monetary compensation if scrollers were permitted. In its review, DOT determined that the scrollers, which it understood to be an industry standard, did not pose any negative impacts, and should be permitted.

Gould-Schmit Reply Dec., Exhibit C, ¶ 29)

90.    Defendant does not dispute the assertions in paragraph 90 of Fuel's Statement.

91.    Defendant disputes the assertions in paragraph 91 of Fuel's Statement because they are unsupported by the cited testimony. This dispute does not result in a genuine

factual issue to be tried because plaintiff's assertion in this regard is speculative, unsupported by the cited documents, and in the nature of legal argument.  Moreover, this dispute is not material because the revenue generated under the street furniture franchise is irrelevant to the resolution of plaintiff's claims.  Further, defendant avers that when asked whether the City could have eliminated advertising on newsstands and still maintained the Coordinated Street Furniture Franchise, Ms. Gould-Schmit testified that she believed permitting advertising on newsstands was necessary to incentivize bidders to build and maintain newsstands because, among other things, newsstands are difficult to build.  Gould-Schmit Dep. (June 10, 2008), Exhibit WW, at pp. 151-56.

92.    Defendant does not dispute the assertions in paragraph 92 of Fuel's Statement.

93.    Defendant does not dispute the assertions in paragraph 93 of Fuel's Statement.

94.    Defendant disputes the assertions in paragraph 94 of Fuel's Statement only to the extent they characterize the revenues DoITT derived from PPTs as having "steadily increased."  This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion is unsupported by the cited testimony, and is not a factual assertion but legal argument.  In any event, this dispute is not material because the revenue generated under the PPT franchises is irrelevant to the resolution of plaintiff's claims.

95.    Defendant disputes the assertions in paragraph 95 of Fuel's Statement, insofar as they are inconsistent with the cited Stipulation [at ¶ 105] which states: "approximately 75% of the revenue generated by DoITT through PPTs come from advertising revenue, and 25%

of the revenue comes from non-advertising revenue such as fees for permits and telephone usage."

96.     Defendant does not dispute the assertions in paragraph 96 of Fuel's Statement.

97.     Defendant disputes the assertions in paragraph 97 of Fuel's Statement. This dispute does not result in a genuine factual issue to be tried as these assertions are supported only by a citation to a Harvard Business School Study, which is inadmissible hearsay.  In any event, this dispute is not material because the role of New York City Marketing is irrelevant to the resolution of plaintiff's claims.

98.     Defendant disputes the assertions in paragraph 98 of Fuel's Statement. This dispute does not result in a genuine factual issue to be tried as these assertions are supported only by a citation to a Harvard Business School Study, which is inadmissible hearsay.  In any event, this dispute is not material because the revenue generated under the street furniture franchises is irrelevant to the resolution of plaintiff's claims.

99.     Defendant disputes the assertions in paragraph 99 of Fuel's Statement to only to the extent that Mr. Perello did not testify that the one-year extension of the City's then-existing bus shelter franchise "increased the City's share of advertising revenue by $13.5 million."  Rather, this statement is supported only by a citation to a Harvard Business School Study, which is inadmissible hearsay.  In any event, this dispute is not material because the revenue generated under the prior bus shelter franchise is irrelevant to the resolution of plaintiff's claims.

100.     Defendant disputes the assertions in paragraph 100 of Fuel's Statement to the extent they are unsupported by the cited testimony.  Rather, Ms. Gould-Schmit testified that

Mr. Perello was involved in negotiating portions of the contract related to advertising. This dispute does not result in a genuine factual issue to be tried as these assertions are not supported by the cited testimony. In any event, this dispute is not material because Mr. Perello's role in the negotiation of the Cemusa agreement is irrelevant to the resolution of plaintiff's claims.

101. In response to the assertions in paragraph 101 of Fuel's Statement, defendant does not dispute that New York City Marketing entered into marketing partnership agreements, including agreements with The History Channel and Snapple; and that those marketing partnerships resulted in cash revenue and/or other benefits for the City and advertising opportunities for The History Channel and Snapple. Defendant disputes the remainder of the assertions in paragraph 101 of Fuel's Statement, but the dispute is not genuine because the statements inaccurately reflect the content of the actual marketing partnership agreements. See The History Channel Agreement and Snapple Agreement, Hecker Dec., Exhibits 36 and 37. In any event, this dispute is not material because the City's marketing partnerships are irrelevant to the resolution of plaintiff's claims.

102. Defendant does not dispute the assertions in paragraph 102 of Fuel's Statement and avers that 1) as provided by Ms. Gould-Schmit there was "no great analysis" done regarding the whether permitting advertisements on sidewalk shelters would adversely impact the revenues of the Coordinated Street Furniture Franchise, and that it was "just sort of what our feelings were about that"; and 2) that other concerns were also expressed, including a concern that by permitting advertisements on sidewalk sheds, people might be encouraged to leave sidewalk sheds up longer than they needed to be. Gould-Schmitt Dep. (March 19, 2008), Exhibit XX, at pp. 252-255.

103.     Defendant does not dispute the assertions in paragraph 103 of Fuel's Statement and avers that for the reasons set forth in the Gould-Schmit Reply Dec., Exhibit C, at ¶¶ 12-17, Fuel's assertion in this regard is of no moment.

104.     Defendant does not dispute the assertions in paragraph 104 of Fuel's Statement.

105.     Defendant does not dispute the assertions in paragraph 105 of Fuel's Statement and avers that 41% of the total score was derived from a review of each proposer's Technical Proposal, which included a review of the design, manufacture, installation, and operation of the street furniture, and 17% of the total score was derived from a review of each proposer's Ability to Provide the Required Services, which consisted of a review of each proposer's business organization, financial fitness and experience with street furniture and the sale and maintenance of outdoor advertising in urban environments.  Stipulations of Fact, ¶ 91.

106.     Defendant disputes the assertions in paragraph 106 of Fuel's Statement to they extent they inaccurately reflect the role of the Design Advisory Committee, and avers that the Evaluation Committee, at its discretion, submitted design proposals to the Design Advisory Committee, and that the Design Advisory Committee's role was to review the design proposals received as part of the RFP submissions and issue a non-binding recommendation to the Evaluation Committee during the initial review of the proposals.  See 2004 RFP, Hecker Dec., Exhibit 12, at p. 23, 1.2.  This dispute does not result in a genuine factual issue to be tried because the 2004 RFP which provides for the Design Advisory Committee speaks for itself.

107.     Defendant does not dispute the assertions in paragraph 107 of Fuel's Statement and avers that the Design Advisory Committee recommendation cited to by Fuel was a

working draft, and not the final recommendation.  Moreover, for the reasons set forth in the Gould-Schmit Reply Dec., Exhibit C, ¶¶ 12-17, Fuel's assertion in this regard is not material.

108.

Filed Under Seal

109.

Filed Under Seal

110.    Defendant disputes the assertions in paragraph 110 of Fuel's Statement. This dispute does not result in a genuine factual issue for trial because it is not supported by the cited testimony.  Defendant avers that the cited testimony concerned a chart created by plaintiff's counsel for the purpose of this litigation which Ms. Gould-Schmit had never seen before and was

not able to independently verify. Gould-Schmit Dep. (June 10, 2008), Hecker Dec., Exhibit 3, at pp. 105-9. In any event, for the reasons set forth in the Gould-Schmit Reply Dec., Exhibit C, ¶¶ 12-17, Fuel's assertion in this regard is not material.

111.    Defendant does not dispute the assertions in the first sentence of paragraph 111 of Fuel's Statement. Defendant disputes the assertions in the second sentence of paragraph 111 of Fuel's Statement to the extent they 1) suggest or imply that Cemusa was invited to submit a proposal during the BAFO solely because of its initial compensation package; and 2) characterize Cemusa's initial compensation package score as "by far the highest of any bidder in the compensation package category." These disputes do not result in a genuine factual issue to be tried because plaintiff's assertions in this regard are unsupported by the cited documents, and are not a factual assertion but legal argument. In any event, for the reasons set forth in the Gould-Schmit Reply Dec., Exhibit C, ¶¶ 12-17, Fuel's assertion in this regard is not material.

112.    Defendant disputes the assertions in paragraph 112 of Fuel's Statement to the extent it characterizes Cemusa's BAFO design score as "by far the lowest design score[]." This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion in this regard is unsupported by the cited evidence, and is not a factual assertion but legal argument.

113.    Defendant disputes the assertions in paragraph 113 of Fuel's Statement to the extent they characterize Cemusa's BAFO compensation package score as "by far the highest." This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion in this regard is unsupported by the cited document, and is not a factual assertion but legal argument.

114.    Defendant disputes the assertions in paragraph 114 Fuel's Statement to the extent they use of the words "nosed" and "razor-thin" in describing the BAFO score differential.

- 23 -

These disputes do not result in a genuine factual issue to be tried because plaintiff's assertions in this regard are unsupported by the cited document, and are not factual assertions but legal arguments.

115.    Defendant disputes the assertions in paragraph 115 of Fuel's Statement to the extent they imply or suggest that the City compromised aesthetic or neighborhood character concerns in awarding Cemusa the Franchise Agreement.  This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion is not a factual assertion but legal argument, and is not supported by the testimony of Thomas Wargo.

116.    Defendant does not dispute the assertions in paragraph 116 of Fuel's Statement.

117.    Defendant does not dispute the assertions in paragraph 117 of Fuel's Statement.

118.    Defendant disputes the assertions in paragraph 118 of Fuel's Statement only to the extent that plaintiff fails to mention that, under the Franchise Agreement, electronic advertising is required to comply with the zoning regulations applicable to zoning lots in the area of the cited street furniture.  See Franchise Agreement, Exhibit Q, at 4.4.2.  Defendant avers that the City's determination not to subject street furniture to the entire Zoning Resolution was proper for the reasons outlined in the Declaration of Douglas Woodward.  Woodward Dec., ¶¶ 48-49.

119.    Defendant disputes the assertions in paragraph 119 of Fuel's Statement and avers that neither Ms. Gould-Schmit or Mr. Wargo testified to Fuel's assertion.  This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion is not supported by the cited testimony.

- 24 -

120.   Defendant disputes the assertions in paragraph 120 of Fuel's Statement only to the extent they suggest or imply that DOT acted improperly in permitting Cemusa to install 10 LCD screens as part of a pilot program.  This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion in this regard is not a factual assertion but legal argument.[4]

121.   In response to the assertions in paragraph 121 of Fuel's Statement, defendant does not dispute that the cited Interrogatory response states, in relevant part:  "[t]he provisions in the Zoning Resolution related to the permissible locations for advertising signs . . . are generally designed to protect neighborhood character, consistent with zoning designations, and to address aesthetic and traffic safety concerns."

122.   In response to the assertions in paragraph 122 of Fuel's Statement that the cited Interrogatory response states that "the provisions of the Zoning Resolution which restrict the permissible locations of panel signs, as well as the size, height, and illumination of such signs, are generally designed to protect neighborhood character, consistent with zoning designations, and to address aesthetic concerns."  Defendant disputes as unsupported, Fuel's assertion that by way of the cited interrogatory response the City "concedes . . . that Fuel's panel signs do not implicate traffic safety concerns."

123.   Defendant does not dispute the assertions in paragraph 123 of Fuel's Statement.

124.   Defendant disputes the assertions in paragraph 124 of Fuel's Statement to the extent that plaintiff has deleted portions of David Karnovsky's statement and, by doing so, has lost the true meaning of his statement.  Specifically, Mr. Karnovsky's statement in the

---

[4]  To the extent footnote 1 repeats the assertions in paragraph 120, defendant reasserts its response to said paragraph.

document referenced by Fuel [Hecker Dec., Exhibit 49], is as follows: "[w]e told Melinda Katz at a budget hearing that we would consider hiring a consultant to study best practices in the area of sign regulation in other jurisdictions provided the Council provide funding. I think that's the last we've heard of it." Thus, this dispute does not result in a genuine factual issue to be tried because Fuel's assertion is unsupported by the cited evidence.

125.    Defendant does not dispute the assertions in paragraph 125 of Fuel's Statement.

126.    Defendant disputes the assertions in paragraph 126 of Fuel's Statement. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertions are based solely upon Wachtel's methodologically flawed study. In any event, this dispute is not material because whether the City's signs have a greater potential to distract drivers than Fuel's signs is irrelevant to the resolution of plaintiff's claims. The City does not purport to regulate the placement of plaintiff's panel signs for traffic safety reasons.

127.    Defendant disputes the assertions in paragraph 127 of Fuel's Statement. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertions are based solely upon Wachtel's methodologically flawed study. In any event, this dispute is not material because whether the City's signs have a greater potential to distract drivers than Fuel's signs is irrelevant to the resolution of plaintiff's claims. The City does not purport to regulate the placement of plaintiff's panel signs for traffic safety reasons.

128.    Defendant disputes the assertions in paragraph 128 of Fuel's Statement only to the extent they suggest or imply that DOT acted improperly in permitting the pilot program. This dispute does not result in a genuine factual issue to be tried because it is not a factual assertion but legal argument. In any event, this dispute is not material because the City

does not purport to regulate the placement of plaintiff's panel signs for traffic safety reasons. Moreover, defendant avers that a before-and-after study of traffic accidents and a public opinion survey was part of the pilot program [Gould-Schmit Dec., Exhibit C, at ¶ 50], and that the before-and-after study of traffic accidents was inconclusive [Exhibit DD].

129.    Defendant disputes the assertions in paragraph 129 of Fuel's Statement only to the extent they suggest or imply that the City acted improperly in not consulting the MTA before permitting Cemusa to commence the pilot program.  This dispute does not result in a genuine factual issue to be tried because it is not a factual assertion but legal argument.

130.    Defendant does not dispute the assertions in paragraph 130 of Fuel's Statement.

131.    Defendant disputes the assertions in paragraph 131 of Fuel's Statement. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertions are based solely upon Wachtel's methodologically flawed study.  In any event, this dispute is not material because the City does not purport to regulate the placement of plaintiff's panel signs for traffic safety reasons.  Defendant avers that the bus shelter siting criteria require that the shelters "not interfere with... motorist sight lines necessary for traffic safety."  2004 RFP, Hecker Dec., Exhibit 12, at Appendices 2 and 3.

132.    Defendant does not dispute the assertions in paragraph 132 of Fuel's Statement.

133.    Defendant does not dispute the assertions in paragraph 133 of Fuel's Statement.

134.    Defendant disputes the assertions in paragraph 134 of Fuel's Statement to the extent that they suggest or imply that the Department of City Planning's determination in

2003 that a new analysis of the Coordinated Street Furniture Franchise under the Uniform Land Use Review Procedure did not need to be performed [Stipulations of Fact, ¶ 92] was in any way improper, and avers that such a claim was specifically reviewed and rejected by the New York State Supreme Court Appellate Division, First Department in Uhlfelder v. Weinshall, 10 Misc. 3d 151, 171-3 (N.Y. Sup. Ct. N.Y.Co. 2005), aff'd 47 A.D.3d 169, 186 (App. Div, 1st Dept. 2007). These disputes do not result in genuine factual issues to be tried because plaintiff's assertions in this regard are refuted legal argument.

135. Defendant disputes the assertions in paragraph 135 of Fuel's Statement only to the extent that Kerry Gould-Schmit testified at her deposition that in addition to the cited documents, DOT also relied upon the 1997 Coordinated Street Furniture Franchise RFP. See Gould-Schmit Dep. (June 10, 2008), Hecker Dec., Exhibit 3, at pp. 163-3.

136. Defendant disputes the assertions in paragraph 136 of Fuel's Statement to the extent that they suggest or imply that the Department of City Planning's determination in 2003 that a new analysis of the Coordinated Street Furniture Franchise under the Uniform Land Use Review Procedure did not need to be performed [Stipulations of Fact, ¶ 92] was in any way improper, and avers that such a claim was specifically reviewed and rejected by the New York State Supreme Court Appellate Division, First Department in Uhlfelder v. Weinshall, 10 Misc. 3d 151, 171-3 (N.Y. Sup. Ct. N.Y.Co. 2005), aff'd 47 A.D.3d 169, 186 (App. Div, 1st Dept. 2007). These disputes do not result in genuine factual issues to be tried because plaintiff's assertions in this regard are refuted legal argument.

137. Defendant disputes the assertions in the first sentence of paragraph 137 of Fuel's Statement to the extent plaintiff characterizes DOT's statements addressing neighborhood character issues as "very brief." This dispute does not result in a genuine factual issue to be tried

because it is not a factual assertion but legal argument. Defendant disputes the assertions in the second sentence of paragraph 137 of Fuel's Statement only to the extent that it does not reflect the entirety of the discussion of neighborhood character issues in DOT's CEQR application. See Hecker Dec., Exhibit 51. Defendant disputes the assertions in the third sentence of paragraph 137 of Fuel's Statement to the extent they suggest or imply that 1) the proposed franchise would result in a widespread proliferation of street furniture advertising signs; and 2) DOT acted improperly. This dispute does not result in a genuine factual issue to be tried because it is not a factual assertion but legal argument. Defendant avers that City Planning Commission considered the impact of street furniture with advertising on aesthetics and neighborhood character. See City Planning Commission Report, dated October 9, 1996, Exhibit S.

138.    Defendant disputes the assertions in paragraph 138 of Fuel's Statement to the extent that plaintiff 1) characterizes the Coordinated Street Furniture Franchise as a "street furniture advertising sign program; and 2) characterizes the City Planning Commission's review as not "meaningfully" addressing the impact of the proposed franchise on aesthetics or neighborhood character. These disputes do not result in a genuine factual issue to be tried because they are not factual assertions but legal arguments. Defendant avers that in its October 9, 1996 report the City Planning Commission considered the impact of the street furniture with advertising as a component and also addressed concerns about the proliferation of advertising. See Exhibit S at p. 6, 24, 28-30.

139.    Defendant disputes the assertions in paragraph 139 of Fuel's Statement. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion is not supported by the cited rule, and because the text of 43 RCNY § 6-06(a)(5) speaks for itself.

140.    Defendant disputes the assertions in paragraph 140 of Fuel's Statement to the extent that they suggest or imply that a neighborhood character assessment beyond that which was included in DOT's Environmental Assessment Statement was required.  This dispute does not result in a genuine factual issue to be tried because it is not supported by any admissible evidence, and is not a factual assertion but legal argument.

141.    Defendant disputes the assertions in the first sentence of paragraph 141 Fuel's Statement to the extent they 1) suggest or imply the City acted improperly in deciding to pursue the CSFF in 2003; 2) characterize the opposition to the 1996 proposal as "significant and vocal"; 3) characterize the approval of the 1996 RFP as "razor-thin"; and 4) mischaracterize the significance of Community Board vote.  These disputes do not result in a genuine factual issue to be tried because plaintiff's assertions in this regard are not factual assertions but legal arguments.  Defendant disputes the assertions in the second sentence of Fuel's Statement to the extent they characterize the opposition of the Manhattan Borough President and Borough Board as being "strong" (and, in fact, in the stipulation referenced by Fuel, the parties did not characterize the opposition).  This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion in this regard is not a factual assertion but legal argument.  Defendant avers that prior to voting to approve DOT's proposed RFP, the City Planning Commission "carefully considered the proposed RFP and evaluated the considerable body of recommendations it has received during the public review process."  City Planning Commission Report, dated October 9, 1996, Exhibit S, at p. 25.  The City Planning Commission concluded "that the Department of Transportation's proposed RFP for a coordinated street furniture franchise is appropriate as modified below."  Id at p. 24.  The modifications to the RFP that were adopted by the City Planning Commission are detailed on pages 25 through 32 and 39 through 43 of Exhibit S.

Additional Commission comments reflecting on the feedback obtained during the public review process are detailed on pages 33 through 38 of Exhibit S (including comments on feedback received from the Manhattan Borough President).

142.    Defendant disputes the assertions in Fuel's Statement of paragraph 142 to the extent they suggest or imply the sole reason for the Manhattan Borough President voted to disapprove the 1996 RFP was due to concerns over advertising and clutter on the streets. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion in this regard is not a factual assertion but legal argument. Defendant avers that the Manhattan Borough President expressed concerns over, among other things, ensuring a fair geographic distribution of bus shelters, and with regard to advertising noted that,

> [i]t is important to regulate the amount of advertising permitted within any given area. This is necessary both to prevent visual inundation by too many advertisements, which has been found to reduce visual impact if too closely sited, and to protect the economic viability of the advertisements. One possible way to achieve this would be to specify a minimum allowable distance between structures containing advertisements, or set a maximum square footage of advertising per block face.

See City Planning Commission Report, dated October 9, 1996, Exhibit S, at p. 16-17. Defendant further avers that the City Planning Commission took into consideration the comments of the Manhattan Borough President. See id. at p. 33-38.

143.    Defendant disputes the assertions in Fuel's Statement of paragraph 143 to the extent that by summarizing the stipulations, rather than the entirety of the stipulations [at ¶¶ 13-31], plaintiff has misrepresented the placement of advertising on City property. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertions are not supported by the cited stipulations. Defendant avers that 1) the signs on the Belt Parkway were removed on or about December 31, 2007; 2) the City moved by Notice of Petition and Petition

dated December 16, 2004 to have the signs on the West Side Highway and 145th Street removed, and pursuant to a Stipulation of Settlement in that case, the signs will be removed on or before September 30, 2008; 3) the signs on the High Line were all removed by September 4, 2007; 4) the sign on the West Shore Expressway in Staten Island was removed in March 2002; and 5) on March 7, 2008, the Department of Small Business Services served CBS with a 30-day Notice of Termination of License requiring CBS to remove the signs located at 149th Street and Exterior Street in the Bronx by April 30, 2008. Stipulations of Fact, ¶¶ 13-31. In any event, this dispute is not material because plaintiff's assertions regarding large-format billboards are irrelevant to the issues before the Court.

144.    Defendant disputes the assertions in paragraph 144 of Fuel's Statement to the extent they characterize the electronic displays as "flash[ing] continually... directly onto the Major Deegan Expressway." This dispute does not result in a genuine factual issue to be tried because it is not supported by the cited stipulation and is in the nature of legal argument. In any event, this dispute is not material because plaintiff's assertions regarding large-format billboards are irrelevant to the issues before the Court.

145.    Defendant disputes the assertions in paragraph 145 to the extent they suggest or imply DOB commenced actions to remove billboards, other than the Yankee Stadium billboard, and then failed to follow up on those actions. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion in this regard is unsupported by the cited stipulation. In any event, this dispute is not material because plaintiff's assertions regarding DOB's enforcement actions are irrelevant to the issues before the Court.

146.    Defendant disputes the assertions in paragraph 146 to the extent they suggest or imply the City negotiated leases for billboards, other than the High Line billboards,

with the full knowledge of the Office of the Deputy Mayor for Economic Development and Rebuilding, the Parks Department, the Law Department, and New York City Marketing. This dispute does not result in a genuine factual issue to be tried because plaintiff's assertion in this regard is unsupported by the cited stipulations. In any event, this dispute is not material because plaintiff's assertions regarding the negotiation of leases are irrelevant to the issues before the Court and the billboards on the High Line have been removed. Stipulations of Fact, ¶¶ 17-18.

147.    Defendant disputes the assertions in paragraph 147 of Fuel's Statement to the extent it characterizes the billboard as illegal and the City's revenue as "significant." These disputes do not result in a genuine factual issue to be tried because plaintiff's assertions in this regard are unsupported by the cited documents, and are in the nature of legal argument. In any event, this dispute is not material because plaintiff's assertions regarding revenue from large format billboards that have now been removed are irrelevant to the issues before the Court.

148.    Defendant does not dispute the assertions in paragraph 148 of Fuel's Statement.

149.    Defendant does not dispute the assertions in paragraph 149 of Fuel's Statement.

150.    Defendant does not dispute the assertions in paragraph 150 of Fuel's Statement.

151.    Defendant does not dispute the assertions in paragraph 151 of Fuel's Statement.

152.    Defendant does not dispute the assertions in paragraph 152 of Fuel's Statement.

153.    Defendant does not dispute the assertions in paragraph 153 of Fuel's

Statement.

Dated:    New York, New York
          August 25, 2008

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the City of New York
                              Attorney for Defendants
                              100 Church Street, Room 5-154
                              New York, New York 10007
                              (212) 788-0461

                              By: _____
                                    Christina L. Hoggan (CH 6877)