Exhibits, C, 2 + QQ
filed under
Seal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
METRO FUEL, LLC,

                                      Plaintiff,

-against-

CITY OF NEW YORK                            07-CV-8244 (PAC)

                                      Defendant.
------------------------------------------------------------- x

## DECLARATION OF SHERYL R. NEUFELD IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**SHERYL R. NEUFELD**, declares pursuant to 28 U.S.C. §1746, under penalty of perjury, as follows:

1. I am an Assistant Corporation Counsel in the office of MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, attorney for the defendant in this action. I make this declaration in support of defendant's motion for summary judgment and in opposition to plaintiff's motion for summary judgment based upon my review of records maintained by the City of New York, discussions with City employees and upon the papers and proceedings heretofore had in this action. Specifically, I submit this declaration to provide an overview of the history of the City's regulation of outdoor advertising signs.

### Zoning Regulations Concerning Outdoor Signs

2. In 1916, the City of New York became the first municipality in the country to undertake comprehensive zoning. In 1940, the newly constituted New York City Planning Commission ("CPC") proposed a series of amendments, including a proposal to regulate outdoor signs. The official CPC Report on the 1940 zoning amendments reveals that problems with outdoor advertising signs had already surfaced. A copy of the Major Report of

City Planning Commission, 1940 ("1940 CPC Report") with relevant 1940 zoning amendments, is provided herewith as Exhibit E.

3. As set forth therein, "[b]illboards and signs not only dominate our business streets . . . but they take advantage of every opportunity to crowd in upon public places, established and maintained by public funds, including civic centers, parks, and especially express highways and bridge approaches." Exhibit E at 90. Moreover, "the outdoor sign or billboard is to be differentiated from any other use controlled by zoning in that it derives its value not from the use of the property on which it is located, as do other uses, but from its exploitation of the view from other more or less distant properties. For this reason signs located in business areas often exert a deteriorating influence over very extensive residential areas." Id.

4. The signage restrictions proposed by the CPC and adopted by the City in 1940 were intended to, among other things, stem a rapid increase in the number of outdoor advertising signs. Advertising signs were to be treated differently from business/accessory signs because each represents a different land use from a zoning perspective.[1] In this regard, the Commission stated "[i]t is also apparent that the sign erected and maintained to identify a business conducted on the premises is wholly different from the sign erected for the purpose of advertising goods or services obtained elsewhere. The one is merely an accessory to another

---

[1] The current Zoning Resolution ("Z.R.") defines "use" as

> (a) any purpose for which a building or other structure or a tract of land may be designed, arranged, intended, maintained, or occupied; or
>
> (b) any activity, occupation, business, or operation carried on, or intended to be carried on, in a building or other structure or on a tract of land.

Z.R. § 12-10.

legitimate use; the other is a distinct business use in itself, but a use which, as already pointed out, is more nearly a use of adjoining and nearby property than of the property upon which it happens to be located." Exhibit E at 90.

5. The 1940 zoning amendments, which placed restrictions on outdoor advertising signs, such that they could not be located, as of right, in business, retail, restricted retail and local retail districts, thus reflected the City's differing interests in business signs, which were accessory to and drew attention to a business conducted on the same zoning lot, and advertising signs, which publicized activities or commodities offered elsewhere and constituted independent and distinctive uses of the land.[2] See Exhibit E at 90-1; and Article II, Section 4, Subsection 49 on NYC006142. The amendments also introduced the prohibition against placement of advertising signs in districts zoned for residence use. See Exhibit E at 90-91; and Article II, Section 3, Subsection 9 on NYC006141. At the same time, and in recognition of diversity of the City's districts, the CPC resolved that large outdoor advertising signs were appropriate uses in certain urban contexts such as Times Square and many of the City's Manufacturing Districts. Exhibit E at 90.

6. Since 1940, the signage provisions of the Zoning Resolution have embodied this balanced view. Thus, when the City adopted a comprehensive new Zoning Resolution in 1961 ("1961 Z.R."), it did not dramatically change the framework for regulating outdoor advertising signs. Relevant sections of the 1961 Z.R. are provided herewith as Exhibit F; and relevant sections of the report prepared by Voorhees Walker Smith & Smith (consultants

---

[2] In the 1940 zoning amendments, a "business sign" was defined as a "sign which directs attention to a business or profession conducted upon the premises" and an "advertising sign" was defined as "a sign which directs attention to a business, commodity, service or entertainment conducted, sold or offered elsewhere than upon the premises." Exhibit E, 1940 Z.R. §1(q).

-3-

hired by the City to compose a proposed zoning resolution for the City) are provided herewith as Exhibit G.

7. As the current Zoning Resolution does today [relevant sections of which are provided as Exhibit H], the 1961 Zoning Resolution 1) prohibited advertising signs in residential districts [Exhibit G at p. 46-8; Exhibit F, 1961 Z.R. 22-32; Exhibit H, Z.R. 22-32] and low-density commercial districts [Exhibit G at p. 110, 125-26; Exhibit F, 1961 Z.R. 32-62 and 32-63; Exhibit H, Z.R. 32-62 and 32-63] and; 2) generally permitted advertising signs in C6-5, C6-7, C7 and C8 commercial districts and M1, M2 and M3 manufacturing districts [Exhibit G at p. 110, 125-26, 179, 196-97; Exhibit F, 1961 Z.R. §§ 32-63, 42-52; Exhibit H, Z.R. § 32-62; 42-52], subject to certain restrictions [Exhibit F, 1961 Z.R §§ 32-64 through 32-68 and 42-53 through 42-542; Exhibit H, Z.R. §§ 32-64 through 32-68 and 42-53 through 52-58].[3]

8. In 1998, following a decision in City of New York v. Allied Outdoor Advertising, 172 Misc.2d 707 (Sup. Ct. Kings Co. 1997), the Department of City Planning ("DCP") proposed amendments to the Zoning Resolution's signage provisions. The 1998 Zoning Resolution amendments adopted by the CPC and enacted by the City Council continue to restrict the placement of advertising signs to high-density commercial and manufacturing zoning districts, but clarify that non-commercial signs are permitted wherever any "signs" are permitted. See Report of the City Planning Commission, dated February 18, 1998, and accompanying amendments, a copy of which is provided herewith as Exhibit I.

---

[3] As it does today, the 1961 Z.R. also continued the business/advertising sign distinction.

9. Due to a proliferation of legal and illegal signs throughout the City, in 2000, the Department of City Planning decided that further revision to the Zoning Resolution's signage provisions was necessary. The amendments proposed by DCP (and subsequently adopted by the CPC) continued to restrict the placement of advertising signs to high-density commercial and manufacturing zoning districts and, among other things, established size, height and projection requirements for all signs in Manufacturing zoning districts. See, generally, CPC Report, dated December 13, 2000 ("2000 CPC Report"), a copy of which is provided herewith as Exhibit J.

10. As reiterated by the CPC in the 2000 CPC Report, "the City of New York, like many jurisdictions elsewhere throughout the nation, has long recognized that outdoor advertising raises aesthetic, public safety and other issues that warrant reasonable restrictions on the size, height, projection and other features of outdoor advertising sign installations." Exhibit J at 2. As a result, "[t]he Zoning Resolution has for many years included comprehensive regulations for outdoor advertising signs, with controls that vary according to the nature and character of the zoning district." Id. at 3. Thus, while recognizing on the one hand that outdoor advertising is "an important vehicle for promoting the sale of goods and services," and that "the outdoor advertising business is an important industry in its own right," the CPC determined that the continued proliferation of both legal and illegal outdoor advertising signs throughout the City necessitated some revision to the zoning controls that had remained largely unchanged since 1961. Id. at 1-3. The CPC's zoning amendments were adopted by the City Council on February 27, 2001. A copy of City Council Resolution Number 1772 is provided herewith as Exhibit K.

**The Instant Lawsuit**

11.     In the instant lawsuit, plaintiff, an outdoor advertising company that entered the New York Market in 2006 [Stipulations of Fact, provided herewith as Exhibit L at ¶ 1], essentially complains that the City's long-established zoning provisions regulating the placement of outdoor signage violate their free speech rights under the Federal and State constitutions because the City has entered into franchise agreements that allow limited advertising on elements of street furniture on the City's sidewalks.

12.     The history of these franchise agreements is detailed in the following declarations, which were filed with the court in support of the City's motion for summary judgment in the Clear Channel Outdoor, Inc. v. City of New York, 06 CV 8193 (PAC) and Atlantic Outdoor Advertising Inc. v. City of New York, 06 CV 8219 (PAC) consolidated actions:[4] the May 12, 2008 Declaration of Christina L. Hoggan ("Hoggan Dec."), a copy of which is provided as Exhibit A; the May 12, 2008 Declaration of Kerry Gould-Schmit ("Gould-Schmit Dec."), a copy of which is provided as Exhibit B; the July 28, 2008 Reply Declaration of Kerry Gould-Schmit ("Gould-Schmit Reply Dec."), a copy of which is provided as Exhibit C;[5] and the May 9, 2008 Declaration of Stanley Shor ("Shor Dec."), a copy of which is provided as

---

[4] While these actions have not been consolidated with the instant action, they also challenge provisions of the City's zoning resolution governing the placement of certain outdoor advertising signs in the City (specifically, the placement of outdoor advertising signs in proximity to arterial highways), and will be argued together with the instant action pursuant to an order issued by the Court in this matter on March 18, 2008 (Docket Entry No. 10).

[5] This entirety of this Declaration is being filed under seal pursuant to the March 27, 2008 Order of the Honorable Paul A. Crotty. A redacted version is being filed electronically.

Exhibit D. These declarations are also relied upon by the City in support of its instant motion for summary judgment.[6]

13. As fully explained in the accompanying Declaration of Douglas Woodward, a city planner and urban designer with over twenty-five years of experience, the street is a distinct planning environment separate and apart from adjoining private property and may be used and regulated differently from the adjoining private property. Thus, as detailed in the accompanying memorandum of law, the zoning provisions at issue herein are an entirely constitutional regulation of commercial speech under the framework established by the Supreme Court in Central Hudson Gas & Electric Corp. v. Public Service Commission, 477 U.S. 557 (1980) and Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 502 (1981) because they advance the City's interests in preserving neighborhood character and an aesthetically pleasing cityscape notwithstanding the fact that controlled amounts of advertising may be placed on items of street furniture on the City's sidewalks. As a result, defendants respectfully request that their motion for summary judgment be granted in its entirety.[7]

14. In addition, the following documents, referenced in the accompanying Declarations; Defendant's Memorandum of Law; Defendant's Statement Pursuant to Local Rule 56.1; and Defendant's Opposition to Plaintiff's Statement Pursuant to Local Rule 56.1 are provided herewith:

---

[6] All exhibits referenced in these Declarations are provided herewith (as detailed below), however, the exhibit references may have changed. As a result, for clarity, we have noted next to the exhibit reference the exhibit letter designation given to the document in the Clear Channel/Atlantic Outdoor motion.

[7] However, if the Court finds any portion of the challenged laws unconstitutional, defendants request the opportunity to be heard as to whether the provisions of law found to be unconstitutional can be severed from the regulatory scheme as a whole, as set forth in the accompany memorandum of law.

- Additional Stipulations of Fact Related to Fuel, are provided as Exhibit L.

- City Planning Commission Report, dated February 4, 1978, is provided as M [This document is referenced as Exhibit EE in the Hoggan Dec.].

- Excerpts from the Franchise and Concession Review Committee hearing, dated December 29, 2005, are provided as Exhibit N [This document is referenced as Exhibit FF in the Hoggan Dec.].

- RFP for CSFF as issued on January 17, 1997, is provided as Exhibit O [This document is referenced as Exhibit GG in the Hoggan Dec.].

- City Council Resolution No. 1004 is provided as Exhibit P [This document is referenced as Exhibit HH in the Gould-Schmit Dec.].

- Excerpts from Cemusa Agreement, dated May 19, 2006, are provided as Exhibit Q [This document is referenced as Exhibit II in the Gould-Schmit Dec.].

- Excerpts from RFP for CSFF as issued on March 26, 2004, are provided as Exhibit R [This document is referenced as Exhibit JJ in the Gould-Schmit Dec.].

- City Planning Commission Report, dated October 9, 1996, is provided as Exhibit S [This document is referenced as Exhibit KK in the Gould-Schmit Dec.].

- City Council Resolution No. 2096 is provided as Exhibit T [This document is referenced as Exhibit LL in the Gould-Schmit Dec.].

- October 3, 2003 Memorandum written by DOT General Counsel Philip Damashek is provided as Exhibit U [This document is referenced as Exhibit MM in the Gould-Schmit Dec.].

- March 19, 2004 Memorandum written by DOT General Counsel Philip Damashek is provided as Exhibit V [This document is referenced as Exhibit NN in the Gould-Schmit Dec.].

- October 8, 2003 and March 19, 2004 letters written by DCP General Counsel David Karnovsky are provided as Exhibit W [These documents are referenced as Exhibit OO in the Gould-Schmit Dec.].

- List of Newsstands existing as of January 2008 is provided as Exhibit X [This document is referenced as Exhibit PP in the Gould-Schmit Dec.].

- A copy of the DOT CSFF FCRC Application - Recommendation for Award of Franchise is annexed hereto as Exhibit Y [This document is referenced as Exhibit VVV in the Gould-Schmit Reply Dec.].

- A copy of the Design Advisory Committee's final recommendation is annexed hereto as Exhibit Z. This document has been marked confidential by the City and is being filed under seal pursuant to the March 27, 2008 Order of the Honorable Paul A. Crotty. [This document is referenced as Exhibit WWW in the Gould-Schmit Reply Dec.].

- A copy of the June 6, 2005 DOT Best and Final Offer letter to Cemusa is annexed hereto as Exhibit AA [This document is referenced as Exhibit XXX in the Gould-Schmit Reply Dec.].

- Copies of the Art Commission Approvals for the street furniture are annexed hereto as Exhibit BB [These documents are referenced as Exhibit YYY in the Gould-Schmit Reply Dec.].

- DOT Memo regarding extension of the electronic media pilot program is provided as Exhibit CC [This document is referenced as Exhibit DDD in the Gould-Schmit Reply Dec.].

- Results of DOT's before-and-after study of traffic accidents conducted as part of the electronic media pilot program are provided as Exhibit DD [This document is referenced as Exhibit CCC in the Gould-Schmit Reply Dec.].

- DoITT Report on Amendments to Department Rules, Title 67 of the Rules of the City of New York, Section 6-06, Section 6-32 and Section 6-38, dated October 5, 2004 is provided as Exhibit EE [This document is referenced as Exhibit QQ in the Shor Dec.].

- Excerpts from EAS and Negative Declaration for CEQR No. 96 DoITT 001Y, dated May 3, 1996, are provided as Exhibit FF [This document is referenced as Exhibit RR in the Shor Dec.].

- Advertising Panel Franchise Agreement, dated March 3, 1988, is provided as Exhibit GG [This document is referenced as Exhibit SS in the Shor Dec.].

- Advertising Panel Franchise Agreement, dated July 1, 1993, is provided as Exhibit HH [This document is referenced as Exhibit TT in the Shor Dec.].

- City Council Resolution No. 439-A is provided as Exhibit II [This document is referenced as Exhibit UU in the Shor Dec.].

- City Council Resolution No. 2248 is provided as Exhibit JJ [This document is referenced as Exhibit VV in the Shor Dec.].

- Local Law 68 of 1995 is provided as Exhibit KK [This document is referenced as Exhibit WW in the Shor Dec.].

- Excerpts from Sample PPT Franchise Agreement are provided as Exhibit LL [This document is referenced as Exhibit XX in the Shor Dec.].

- A printout from Fuel's website is provided as Exhibit MM.

- A copy of a letter agreement between Fuel and the City is provided as Exhibit NN.

- Excerpts from the Transcript of the May 15, 2008 Deposition of Edward Fortier are provided as Exhibit OO.

- Excerpts from the Transcript of the May 9, 2008 Deposition of Thomas Wargo are provided as Exhibit PP.

- Excerpts from Fuel's Responses to the City's Discovery Requests are provided as Exhibit QQ. This document has been marked confidential by Fuel and is being filed under seal pursuant to the March 27, 2008 Order of the Honorable Paul A. Crotty.

- Excerpts from the Transcript of the March 11, 2008 Deposition of former Deputy Mayor Daniel Doctoroff are provided as Exhibit RR.

- Excerpts from the Transcript of the June 26, 2008 Deposition of former Jerry Wachtel are provided as Exhibit SS.

- Excerpts from the Transcript of the January 22, 2008 Deposition of Joseph Perello are provided as Exhibit TT.

- Excerpts from the Transcript of the February 14, 2008 Deposition of Stanley Shor are provided as Exhibit UU.

- A copy of a letter sent by DoITT on January 10, 2005 is provided as Exhibit VV.

- Excerpts from the Transcript of the June 10, 2008 Deposition of Kerry Gould-Schmit are provided as Exhibit WW.

- Excerpts from the Transcript of the March 19, 2008 Deposition of Kerry Gould-Schmit are provided as Exhibit XX.

Dated:   New York, New York
         August 25, 2008

*Sheryl R. Neufeld* (signature)
Sheryl R. Neufeld