

# Community Board No. 2

### 43-22 50th Street
### Woodside, New York 11377
### (718) 533-8773
### Fax (718) 533-8777

**Joseph Conley**
*Chairman*

**Dolores M. Rizzotto**
*District Manager*

OFFICE OF THE
CHAIRPERSON

FEB 12 1998

February 10, 1998

Joseph B. Rose, Director
Department of City Planning
22 Reade Street
New York, New York 10007

RECEIVED
FEB 23 1998
TECHNICAL REVIEW DIVISION
DEPARTMENT OF CITY PLANNING

RE: N 980135 ZRY/SIGN REGULATIONS

Dear Mr. Rose:

Community Board 2 received a copy on the above referenced
zoning text amendment.

At the February 5, 1998 meeting of the full board, a motion
was made and seconded to approve this application with
clarification to the language in the signage codes.

By a roll call vote the motion passed with 21 In Favor, 0
Opposed, 0 Abstentions.

Sincerely yours,

Dolores Rizzotto
District Manager

DR:mm
cc:  Hon. Claire Shulman, President, Borough of Queens
     Joanna Oliver, Queens Borough President's Office
     Stephen Cooper, Chair, CB2/Land Use Committee

doc/b:cpsigns.8
RS/pc

*"Serving the Communities of Long Island City, Sunnyside, Woodside and Maspeth"*

NYC006195

**CAROLYN M. GREENBERG**
Chairperson

**DENISE WOODIN**
District Manager

DEC 2 3 1997
· 11637



300 EAST 94 STREET
MAIN FLOOR
NEW YORK, N.Y. 1012
212-427-4840/41
FAX #
212-410-9738

## THE CITY OF NEW YORK
### MANHATTAN COMMUNITY BOARD 8

December 18, 1997

Joseph B. Rose, Chairman
New York City Planning Commission
22 Reade Street
New York, N.Y. 10007

RE:    N #980135- Zoning text amendment re: signs

Dear Chairman Rose:

At the December 17, 1997 full board meeting of Community Board 8M, the following resolution was adopted by a vote of 22 in favor; 0 opposed; and 7 abstentions.

> WHEREAS, an application has been submitted for a zoning text amendment to modify the definition of signs in the zoning resolution; and,
>
> WHEREAS, Community Board 8 held a public hearing regarding this matter; therefore,
>
> BE IT RESOLVED that Community Board 8 recommends approval of this application.

Please advise this office of any action taken regarding this matter.

Sincerely,

Carolyn M. Greenberg
Chairperson

C:    Council Member Andrew Eristoff
      Council Member Gifford Miller
      Champa Shanda, DCP

NYC006196



*cc: Ferris*
*Michaels*
*Parnes &*
*Dosmacci*
*Weil ✓*



**The City of New York**

**BOROUGH OF QUEENS**
**COMMUNITY BOARD NO. 3**
34-33 JUNCTION BOULEVARD
JACKSON HEIGHTS, NEW YORK 11372

**OFFICE OF THE CHAIRPERSON**

DEC 24 1997
11656

TELEPHONE: (718) 458-2707
Fax:    (718) 458-3316

**THOMAS D. RAFFAELE**
Chairman

**GIOVANNA A. REID**
District Manager

**CLAIRE SHULMAN**
Borough President

**TERRIE MORAN**
Director, Community Boards

December 19, 1997

Honorable Joseph B. Rose
Chairman
Department of City Planning
22 Reade Street
New York, New York 10007-1216

Re: #N980135 ZRY and 98DCP022Y SIGN REGULATIONS ZONING TEXT AMENDMENT

Dear Chairman Rose:

At its December 18, 1997 monthly meeting, Community Board #3, Q. recommended approval of this application for a zoning text change to modify the definition of signs in the Zoning Resolution.

Thank you for the opportunity to comment on this matter.

Sincerely yours,

Thomas D. Raffaele
Thomas D. Raffaele
Chairman, CB#3, Q.

GAR:pp

29 - 1 - 2abs.

NYC006197

*City of New York*

*Community Board No. 1*

*1 Edgewater Plaza • Staten Island, New York 10305*

981-6900                                      *Fax: 718-720-134*



**OFFICE OF THE CHAIRPERSON**

DEC 1 5 1997

*11593*

December 11, 1997

Mr. Joseph B. Rose, Director
Department of City Planning
22 Reade Street
New York, New York 10007-1216

Re:  N980135 Sign Regulations

Dear Mr. Rose:

On December 9, 1997 Community Board #1 voted unanimously to approve the zoning text amendment for sign regulations.

If you need any further information please do not hesitate to call.

Very truly yours,

Joseph Vaszily
Chairman

JV/c

44 - 0 - 0

NYC006198

CITY OF NEW YORK

OFFICE OF THE
CHAIRPERSON

DEC 04 1997
11513

*(handwritten notes top right)* cc: Meyers / Michick / Pangel / Weil / Dobnisk / Kaplan

# PRESIDENT OF THE BOROUGH OF BROOKLYN

BOROUGH HALL  209 JORALEMON STREET, BROOKLYN, N.Y. 11201

1-718/802-3700
FAX: 1-718/802-3778

HOWARD GOLDEN
PRESIDENT

December 4, 1997

Mr. Joseph B. Rose, Chair
City Planning Commission
22 Reade Street
New York, New York 10007

Dear Commissioner Rose:

I am in receipt of your letter dated November 6, 1997 regarding the Sign Regulations Zoning Text Amendment.

I am pleased that the effect of the modification would be to clarify that noncommercial signs and signs relating to businesses conducted on a zoning lot are subject to a uniform set of regulations, while "advertising signs" are subject to additional regulations.

I understand that this proposal would not affect other aspects of regulations for signs, including provisions for size, and illumination of "advertising signs."

For years I have been concerned about the proliferation of billboards adjacent to our major highways. The inability of the city to enforce its current regulations demonstrates that zoning is only as good as the city's ability to enforce it. Given DCP's intentions in regard to the proposed text amendment, I trust that these regulations have been deemed enforceable by the Department of Buildings

One issue that the proposal does not address pertains to business signs in conjunction with medical offices in Residence Districts. I have received numerous complaints regarding oversized and/or illuminated signs for medical offices. The City Planning Commission (CPC) needs to review the existing sign text provisions in this regard to determine whether the text contains adequate restrictions. Based on the outcome of such a review, CPC should consider whether text changes are required and then consult with the Department of Buildings to ensure consistency with what is intended and what is permitted.

♻

*(signature)* Ken

NYC006199



Parks
District
Welly

# BOROUGH OF STATE ISLAND
# COMMUNITY BOARD 3

OFFICE OF THE
CHAIRPERSON

655-218 Rossville Avenue, Staten Island, N.Y. 10309
Telephone: (718) 356-7900, 7903
FAX: (718) 966-9013

DEC 03 1997
11509

November 28, 1997

Mr. Joseph Rose, Chairman
City Planning Commission
22 Reade Street
New York, N.Y. 10007

RE:    N980135 ZRY - Sign Regulations

Dear Mr. Rose:

The Land Use Committee of Community Board #3 held a public
meeting on Wednesday, November 19, 1997 to discuss the
application for a zoning text change to modify the
definition of signs in the Zoning Resolution. Douglas
Brooks, Director of the Staten Island Office of City
Planning, made a presentation to the committee and area
residents.

At the November 25, 1997 General Board meeting the following
motion was passed unanimously by a vote of 31-0-0:
    "that Community Board #3 approve the zoning text change
    to modify the definition of sign regulations".

Very truly yours,

Dennis J. Sarlo,
Chairman of the Board

Paul Kidder,
Land Use Chairman

cc:  Douglas Brooks, S.I. City Planning

DJS:PK:da

→ Ken

Annadale • Arden Heights • Bay Terrace • Charleston • Eltingville • Great Kills • Greenridge • Huguenot
New Dorp • Oakwood • Pleasant Plains • Princes Bay • Richmond Valley • Richmondtown • Rossville • Tottenville • Woodrow

# Queens Borough Board Recommendation

**APPLICATION: NON-ULURP #N980135 ZRY**                    **CITYWIDE APPLICATION**

## DOCKET DESCRIPTION

IN THE MATTER of an application submitted by the Department of City Planning, pursuant to Section 200 of the New York City Charter, for amendments to the Zoning Resolution concerning signs.

## PUBLIC HEARING

A Public Meeting was held in the Borough President's Conference Room at 120-55 Queens Boulevard on December 15, 1997 at 5:30 P.M. pursuant to Section 85b(6) of the New York City Charter and was duly advertised in the manner specified in Section 197-c (i) of the New York City Charter.

## CONSIDERATION

Subsequent to a review of the application and consideration of testimony heard at the public hearing, the following issues and impacts have been identified:

o    This application is for amendments to the Zoning Resolution concerning signs;

o    Currently, there is no separate definition for signs containing solely noncommercial speech. All of the signage regulations contained in the Zoning Resolution for commercial and manufacturing districts apply either to business or advertising signs;

o    In a recent State Supreme Court decision, it was decided that the City's existing sign regulations control noncommercial signs more stringently then commercial business signs, and favor certain kinds of non-commercial speech over other sorts of noncommercial speech. Both are prohibited by the Constitution;

o    The proposed amendments would respond to the concerns raised in the lawsuit by clarifying 1) that noncommercial signs are to be regulated in the same manner as accessory business signs; and 2) the present exemptions to the definition of "signs";

o    At its December 15, 1997 public meeting, the Queens Borough Board voted 10-0-0 to approve this application.

## RECOMMENDATION

Based on the above consideration, the Borough Board recommends approval of this application.

cc
Parvell
Queens ??
Daras office

CITY PLANNING COMMISSION
97 DEC 31 PH 12:06
DEPT OF CITY PLANNING

_Claire Shulman_                    _12/29/97_

**PRESIDENT, BOROUGH OF QUEENS**                    **DATE**

NYC006201

Mr. Joseph B. Rose, Chair
December 4, 1997
Page 2

Thank you for this opportunity to submit comments.

Sincerely,

Howard Golden

cc:  Brooklyn City Council Delegation
     Brooklyn Community Board Chairs
     Mr. Gaston Silva, Commissioner
       Department of Buildings
     Mr. Edward Rogowsky, Commissioner
       City Planning Commission
     Ms. Gail Benjamin, Director
       City Council Land Use Division

NYC006202

# THE COUNCIL OF THE CITY OF NEW YORK
## RESOLUTION NO. 208

Resolution approving the decision of the City Planning Commission on Application No. N 980135 ZRY, amendments to the text of the Zoning Resolution concerning signs (L.U. No. 91).

By Council Members Eisland and McCaffrey

WHEREAS, the City Planning Commission filed with the Council on February 26, 1998 its decision dated February 18, 1998 (the "Decision"), on the application submitted by the Department of City Planning, pursuant to Section 201 of the New York City Charter, for amendments to the text of the Zoning Resolution (Application No. N 980135 ZRY) (the "Application");

WHEREAS, the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

WHEREAS, the Council held a public hearing on the Decision and Application on March 16 and April 1, 1998;

WHEREAS, the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

WHEREAS, the Council has considered the relevant environmental issues and the Negative Declaration, issued on October 20, 1997 (CEQR No. 98DCP022Y);

RESOLVED:

The Council finds that the action described herein will have no significant effect on the environment;

NYC006203

Page 2 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

Matter in Graytone is new, to be added;
Matter in strikeout is old, to be deleted;
Matter within #  # is defined in Section 12-10;
*** indicates where unchanged text appears in the Zoning Resolution
Text not in graytone or strikeout is to be readopted

12-10
DEFINITIONS

***

Advertising sign - see Sign, advertising

***

Business sign - see Sign, business

***

Flashing sign - see Sign, flashing

***

Illuminated sign - see Sign, illuminated

***

Sign

A "sign" is any writing (including letter, word, or numeral), pictorial representation (including illustration or decoration), emblem (including device, symbol, or trademark), flag, (including banner or pennant), or any other figure of similar character, that:

NYC006204

Page 3 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

(a)    is a structure or any part thereof, or is attached to, painted on, or in any other manner represented on a #building or other structure#;

(b)    is used to announce, direct attention to, or advertise; and

(c)    is visible from outside a #building#.  A #sign# shall include writing, representation, or other figures of similar character, within a #building#, only when illuminated and located in a window.

However, non-#illuminated# signs containing solely non-commercial copy with a total #surface area# not exceeding 12 square feet on any #zoning lot#, including memorial tablets or signs displayed for the direction or convenience of the public, ~~The following shall not be subject to the provisions of this Resolution~~:

(1)    ~~Signs of a duly constituted governmental body, including traffic or similar regulatory devices, legal notices, or warnings at railroad crossings;~~

(2)    ~~Flags or emblems of a political, civic, philanthropic, educational or religious organization;~~

(3)    ~~Temporary signs announcing a campaign, drive, or event of the above organizations;~~

(4)    ~~Memorial signs or tablets;~~

(5)    ~~Signs denoting architect, engineer, or contractor when placed on construction sites and not exceeding 25 square feet in area;~~

(6)    ~~Signs required to be maintained by law or governmental order, rule, or regulation, with a total #surface area# not exceeding ten square feet on any #zoning lot#;~~

(7)    ~~Small signs displayed for the direction or convenience of the public, including signs that identify rest rooms, freight entrances, or the like, with a total #surface area# not exceeding five square feet on any #zoning lot#.~~

NYC006205

Sign, advertising

An "advertising sign" is a #sign# that directs attention to a business, profession, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the same #zoning lot# and is not #accessory# to a #use# located on the #zoning lot#.

~~Sign, business (12/15/61)~~

~~A "business sign" is an #accessory sign# that directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered upon the same #zoning lot#.~~

\* \* \*

Sign, flashing (12/15/61)

A "flashing sign" is any #illuminated sign#, whether stationary, revolving or rotating, that exhibits changing light or color effects, provided that revolving or rotating #signs# that exhibit no changing light or color effects other than those produced by revolution or rotation, shall be deemed #flashing signs# only if they exhibit sudden or marked changes in such light or color effects.

#Illuminated signs# that indicate the time, temperature, weather or other similar information shall not be considered #flashing signs#, provided that:

   (a)   the total #surface area# of such #sign# is not greater than 16 square feet;

   (b)   the vertical dimension of any letter or number is not greater than 24 inches; and

   (c)   color or intensity of light is constant except for periodic changes in the information displayed, which occur not more frequently than once every minute.

Sign, illuminated (12/15/61)

An "illuminated sign" is a #sign# designed to give forth any artificial light or reflect such light from an artificial source.

Page 5 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

Sign, surface area of - see Surface area (of a sign)

Sign with indirect illumination (12/15/61)

A "sign with indirect illumination" is any #illuminated# non-#flashing sign# whose illumination is derived entirely from an external artificial source and is so arranged that no direct rays of light are projected from such artificial source into #residences# or #streets#.

*** 

Surface area (of a sign)

The "surface area" of a #sign# shall be the entire area within a single continuous perimeter enclosing the extreme limits of writing, representation, emblem, or any figure of similar character, together with any material or color forming an integral part of the display or used to differentiate such #sign# from the background against which it is placed. In any event, the supports or uprights on which such #sign# is supported shall not be included in determining the #surface area# of a #sign#.

When two #signs# of the same shape and dimensions are mounted or displayed back to back and parallel on a single free-standing structural frame, only one of such #signs# shall be included in computing the total #surface area# of the two #signs#.

When a double-faced #sign# projects from the wall of a #building#, and its two sides are located not more than 28 inches apart at the widest point and not more than 18 inches apart at the narrowest point, and display identical writing or other representation, the #surface area# shall include only one of the sides. Any additional side of a multi-faced #sign# shall be considered as a separate #sign# for purposes of computing the total #surface area# of the #sign#.

***

22-30
SIGN REGULATIONS

***

22-32
Permitted Non-Illuminated Accessory Signs

Page 6 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)


R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, non-#illuminated accessory business signs# are permitted as set forth in this Section, subject to the provisions of Section 22-34 (Additional Regulations).

***

22-33
Signs on Lots Containing Certain Community Facilities

22-331
Permitted Iilluminated Aaccessory Ssigns for Hhospitals and Rrelated Ffacilities

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, for hospitals and related facilities #illuminated# non-#flashing accessory business signs# are permitted in all districts, subject to Section 22-34 (Additional Regulations). Any number of #illuminated# non-#flashing# identification or directional #signs# are permitted, provided that the total #surface area# in square feet of said #illuminated signs# or the combined total #surface area# in square feet of the #illuminated# and non-#illuminated# identification or directional #signs# does not exceed 25 square feet on any one #street# frontage or 15 percent of such #street# frontage in feet, whichever is less, and provided further that the Commissioner of Buildings determines that such #signs# are so located as to cause a minimum amount of light to be projected on to abutting or adjacent #residences#. In addition to #illuminated# or non-#illuminated accessory business signs#, one illuminated non-flashing directory or bulletin board or combination thereof is permitted in lieu of a non-illuminated directory or bulletin board or combination thereof provided that the total #sign# area does not exceed 50 square feet and provided further that the Commissioner of Buildings determines that such #sign# is so located as to minimize the amount of light projected on the abutting or adjacent #residences#.

22-332
Flags, banners or pennants on lots containing certain community facilities

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, flags, banners or pennants other than those that are #advertising signs#, located on any #zoning lot# used primarily for #community facility uses# of a civic, philanthropic, educational or religious nature, are permitted without limitation.

***

22-35
Advertising Signs on Waterways

No moving or stationary "advertising sign" shall be displayed on a vessel plying waterways adjacent to #Residence Districts# and within view from an arterial highway.  For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways," or "toll crossings" and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.

For the purposes of this Section "advertising sign" is a sign which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel, and shall not include signs, symbols or flags identifying the vessel, its owners or operators and is not #accessory# to a #use# on such vessel.

*\*\**

32-421
Limitation on floors occupied by non-residential uses

C1 C2 C3

In the districts indicated, in any #building#, or portion of a #building# occupied on one or more of its upper #stories# by #residential uses# listed in Use Group 1 or 2 or by #community facility uses# listed in Use Group 3 or 4, no non-#residential uses# listed in Use Group 6, 7, 8, 9 or 14 shall be located above the level of the first #story# ceiling, provided, however, that permitted #business# signs, other than #advertising signs#, accessory# to such non-#residential uses# may extend to a maximum height of two feet above the level of the finished floor of the second #story#, but in no event higher than six inches below the lowest window sill of the second #story#. In any other #building#, or portion thereof, not more than two #stories# may be occupied by non-#residential uses# listed in Use Group 6A, 6B, 6C, 6F, 7, 8, 9 or 14. Non-#residential uses# permitted by the applicable district regulations may occupy two #stories# in any new #development# in C1 or C2 Districts mapped within R9 or R10 Districts or in C1-8, C1-9, C2-7 or C2-8 Districts.

32-422
Location of floors occupied by non-residential uses

Page 8 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)


C4 C5 C6

In the districts indicated, in any #building#, or portion of a #building# occupied by #residential uses# listed in Use Group 1 or 2, non-#residential uses# listed in Use Group 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 or 16 may be located only on a #story# below the lowest #story# occupied in whole or in part by such #residential uses#, except that this limitation shall not preclude the location of any such non-#residential use# below the level of the first #story# ceiling, or the extension of a permitted #business sign, other than #advertising sign#, accessory# to such non-#residential use# to a maximum height of two feet above the level of the finished floor of the second #story#, but in no event higher than six inches below the lowest window sill on the second #story#.

*\*\**

32-60
SIGN REGULATIONS

*\*\**

32-62
Permitted ~~Accessory~~ ~~Business~~ Signs

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, #~~accessory~~ ~~business~~ signs# other than #advertising signs# are permitted subject to the provisions of the following Sections:

Section 32-64 (Surface Area and Illumination Provisions)

Section 32-65 (Permitted Projection or Height of Signs)

Section 32-67 (Special Provisions Applying along District Boundaries)

Section 32-68 (Permitted Signs on Residential Buildings) ~~.~~

Section 32-69 (Additional ~~Accessory~~ ~~Business~~ Sign Regulations for Adult Establishments)

However, notwithstanding any provision of this Section, flags, banners or pennants other than those that are #advertising signs#, located on any #zoning lot# used primarily for #community facility uses# of a civic, philanthropic, educational or religious nature, are permitted in all districts, as indicated, without limitation.

\*\*\*

**32-64**
Surface Area and Illumination Provisions

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, all permitted #signs# shall be subject to the restrictions on #surface area# and illumination as set forth in this Section, provided that the following #signs# shall be exempted from such restrictions on #surface area#:

> #Illuminated# non-#flashing business signs# other than #advertising signs# located in a window within a #building#, with a total #surface area# not exceeding eight square feet on any #zoning lot# and limited to not more than three such #signs# in any window.

For the purpose of determining permitted #surface area# of #signs# for #zoning lots# occupied by more than one establishment, any portion of such #zoning lot# occupied by a #building# or part of a #building# accommodating one or more establishments on the ground floor may be considered as a separate #zoning lot#.

\*\*\*

**32-645**
Illuminated or flashing signs in C8 Districts

C8

In the district indicated, #illuminated# or #flashing business signs#, other than #advertising signs#, and or #advertising signs# with indirect illumination , are permitted, provided that the total #surface area# of all such #signs# (in square feet) shall not exceed five times the #street# frontage of the #zoning lot# (in feet) and that the #surface area# of each #sign# shall not exceed 500 square feet.

\*\*\*

NYC006211

32-651
Permitted projection in C6-5, C6-7 or C7 Districts

C6-5 C6-7 C7

In the districts indicated, except as otherwise provided in Section 32-653 (Additional regulations for projecting ~~business~~ signs), no permitted #sign# shall project across a #street line# more than eight feet.

32-652
Permitted projection in all other Commercial Districts

C1 C2 C3 C4 C5 C6-1 C6-2 C6-3 C6-4 C6-6 C6-8 C6-9 C8

In the districts indicated, except as otherwise provided in Section 32-653 (Additional regulations for projecting ~~business~~ signs), no permitted #sign# shall project across a #street line# more than 18 inches for double- or multi-faceted #signs# or 12 inches for all other #signs#.

32-653
Additional regulations for projecting ~~business~~ signs

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, permitted #~~accessory business~~ signs# other than #advertising signs# may be displayed as follows:

(a)    Non-#illuminated signs# may be displayed on awnings or canopies permitted by Section 27-313(b) of the Administrative Code, with a #surface area# not exceeding 12 square feet and with the height of letters not exceeding 12 inches . ~~, provided that~~ Any commercial copy on such #signs# shall be limited to identification ~~of the name or address~~ of the #building# or an establishment contained therein.

(b)    #Signs# may be displayed on marquees permitted by Section 27-313(b) of the Administrative Code, provided that such #signs# conform to the provisions of Section 26-182 of the Administrative Code, and provided further that no such #sign# in a district other than a C6-5, C6-7 or C-7 District shall project more than 48 inches above nor more than 12 inches below such marquee.

***

Page 11 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)


32-661
Advertising signs on waterways

No moving or stationary ;# advertising sign #  shall be displayed on a vessel plying waterways adjacent to #Commercial Districts# and within view from an arterial highway.  For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways," or "toll crossings" and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.

For the purposes of this Section #advertising sign# is a #sign# which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel, and shall not include signs, symbols or flags identifying the vessel, its owner or operators and is not #accessory# to a #use# on such vessel.

32-67
Special Provisions Applying along District Boundaries


C2 C3 C4 C5 C6 C7 C8

.In the districts indicated, and within 100 feet of the #street line# of any #street# or portion thereof in which the boundary of an adjoining #Residence District# is located, or which adjoins a #public park# of one-half acre or more, all #signs# no #advertising sign# which faces at an angle of less than 165 degrees away from such #Residence District# or park boundary shall be permitted and all other #signs# facing at less than such an angle limited to #accessory business signs# and shall conform with all the #sign# regulations applicable in C1 Districts as set forth in Sections 32-61 to 32-68, inclusive, relating to Sign Regulations.

32-68
Permitted Signs on Residential or Mixed Buildings

C1 C2 C3 C4 C5 C6

In the districts indicated, any #use# listed in Use Group 1 or 2 shall conform to the #sign# regulations for #Residence Districts# set forth in Sections 22-31 to 22-34, inclusive.  In #residential# or #mixed buildings#, #residential sign# regulations shall apply to a #building# or part of a #building# used for #residential# purposes.

Page 12 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

Where non-#residential uses# are permitted to occupy two floors of the #building#, all #signs accessory# to non-residential uses# located on the second floor shall be non-#illuminated business signs#, and shall be located below the level of the finished floor of the third #story#.

32-69
Additional ~~Accessory Business~~ Sign Regulations for Adult Establishments

C6-4 C6-5 C6-6 C6-7 C6-8 C6-9 C7 C8

~~#Accessory business signs#~~ #Signs#, other than #advertising signs#, for #adult establishments# are permitted only as set forth in this Section and are limited to locations in the districts indicated.

All permitted ~~#accessory business~~ signs#, other than #advertising signs#, for #adult establishments# shall conform with all the #sign# regulations applicable in C1 Districts as set forth in this Chapter, except that the provisions of Section 32-64 (Surface Area and Illumination Provisions) shall not apply. In lieu thereof, the maximum #surface area# of all ~~#accessory business~~ signs#, other than #advertising signs#, for #adult establishments# shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# non-#flashing signs#.

+++

36-56
Screening

C1 C2 C3 C4 C5 C6 C7 C8

***

(d)    have no #signs# hung or attached thereto other than those permitted in Sections 32-62 (Permitted ~~Accessory Business~~ Signs) or 32-63 (Permitted Advertising Signs).

***

36-685
Screening

Page 13 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

C1 C2 C3 C4 C5 C6 C7 C8

\*\*\*

(d)    shall have no #signs# hung or attached thereto other than those permitted in Sections 32-62 (Permitted ~~Accessory Business~~ Signs) or 32-63 (Permitted Advertising Signs).

\*\*\*

37-011
Applicability of Section 37-01

\*\*\*

An application to the Department of Buildings for a permit respecting any new #development# shall include a plan and an elevation drawn to a scale of at least one sixteenth inch to a foot of the new #building# and #buildings# on #contiguous lots# or #contiguous blocks# showing #accessory business signs#, other than #advertising signs#, #arcades#, #street wall# articulation, curb cuts, #street# trees, sidewalk paving, central refuse storage area and such other necessary information as may be required by the Commissioner of Buildings.

\*\*\*

37-014
Modifications to applicability of Article II, Chapter 6

In C1-8, C1-9, C2-7, C2-8, C4-6, C5-1, C5-2, C5-4, C6-3, C6-4, C6-5 and C6-8 Districts, or C1 or C2 Districts mapped within R9 or R10 Districts, the regulations of Article II, Chapter 6, applicable to #residential developments# or #developments# occupied by a #predominantly residential use# are modified by the provisions of Sections 37-015 (Retail continuity) and 37-016 (~~Accessory business signs~~ Sign regulations) and 37-017 (Street wall articulation).

\*\*\*

37-016
~~Accessory business signs~~ Sign regulations

NYC006215

Page 23 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

109-24
Sign Regulations

In addition to the underlying district #sign# regulations, the following regulations shall apply to
all #signs#:

(a)     #accessory business signs# may not occupy more than 25 percent of the total area of the
        storefront measured from #curb level# to 10 feet above #curb level#;

                                    ***

(c)     #accessory business signs# may not cover columns, cornices or sills.

                                    ***


112-00
GENERAL PURPOSES

                                    ***

(c)     to maintain and protect the environmental quality and "village" character of City Island
        Avenue by imposing special controls on building setbacks and accessory business signs;
        and

                                    ***


112-123
Screening requirements for parking facilities accessory to commercial uses

                                    ***

(c)     shall have no #signs# hung or attached thereto other than those permitted in Section 32-62
        (Permitted Accessory Business Signs), Section 32-63 (Permitted Advertising Signs) or
        Section 42-52 (Permitted Accessory Business Signs or Advertising Signs).

                                    ***


115-046
Permitted projection of signs

NYC006216

In addition to the applicable district regulations in C1-8, C1-9, C2-7, C2-8, C4-6 Districts and C1 or C2 Districts mapped within R9 or R10 Districts, all #accessory business signs#, other than #advertising signs# and other than window #signs#, shall be located in a horizontal band not higher than 3 feet, the base of which is located not higher than 17 feet above #curb level#. Where there is a grade change of at least 1.5 feet in 100 along the portion of the #street# upon which the #development# fronts, such signage band may be staggered along such #street#.

\*\*\*

42-50
SIGN REGULATIONS

\*\*\*

42-52
Permitted ~~Accessory Business Signs or Advertising~~ Signs

M1 M2 M3

In all districts, as indicated, #accessory business signs# ~~or #advertising signs#~~ are permitted with no restriction on size, illumination or otherwise, except as otherwise provided in Section 42-53 (Additional Regulations for Advertising Signs), 42-54 (Special Provisions Applying along District Boundaries) and subject to the provisions of Section 42-55 (Additional ~~Accessory Business~~ Sign Regulations for Adult Establishments).

\*\*\*

42-53
Additional Regulations for Advertising Signs

M1 M2 M3

In all districts, as indicated no #advertising sign# shall be located, nor shall an existing #advertising sign# be structurally altered, relocated, or reconstructed, within 200 feet of an arterial highway or of a #public park# with an area of one-half acre or more, if such #advertising sign# is within view of such arterial highway or #public park#. For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets, as "principal routes," "parkways," or "toll crossings,"

and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.  Beyond 200 feet from such arterial highway or #public park#, an #advertising sign# shall be located at a distance of at least as many linear feet therefrom as there are square feet of #surface area# on the face of such #sign#.  However, in all districts as indicated, the more restrictive of the following shall apply:

(a)   Any #advertising sign# erected, structurally altered, relocated or reconstructed prior to June 1, 1968, within 660 feet of the nearest edge of the right-of-way of an arterial highway, whose message is visible from such arterial highway, shall have legal #non-conforming use# status pursuant to Section 52-83, to the extent of its size existing on May 31, 1968.

(b)   Any #advertising sign# erected, structurally altered, relocated or reconstructed between June 1, 1968 and November 1, 1979, within 660 feet of the nearest edge of the right-of-way of an arterial highway, whose message is visible from such arterial highway, and whose size does not exceed 1200 square feet in #surface area# on its face, 30 feet in height, and 60 feet in length, shall have legal #non-conforming use# status pursuant to Section 52-83, to the extent of its size existing on November 1, 1979.  All #advertising signs# not in conformance with the standards set forth herein shall terminate.

**42-531**
**Advertising signs on waterways**

No moving or stationary #advertising sign# shall be displayed on a vessel plying waterways adjacent to #Manufacturing Districts# and within view from an arterial highway.  For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways," or "toll crossings" and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.

For the purposes of this Section, #advertising sign# is a #sign# which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel, and shall not include signs, symbols or flags identifying the vessel, its owners or operators and is not #accessory# to a #use# on such vessel.

**42-54**
**Special Provisions Applying along District Boundaries**

**42-541**
**Restrictions along district boundary located in a street**

Page 16 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

M1 M2 M3

In all districts, as indicated, and within 100 feet of the #street line# of any #street# or portion thereof in which the boundary of an adjoining #Residence District# is located, or which adjoins a #public park# of one-half acre or more, #advertising signs# which face at an angle of less than 165 degrees away from such #Residence District# or park boundary shall not be permitted and all other #signs# facing at less than such an angle be limited to #accessory business signs# and shall conform with all the #sign# regulations applicable in C1 Districts as set forth in Sections 32-61 to 32-68, inclusive, relating to Sign Regulations.

***

42-55
Additional Accessory Business Sign Regulations for Adult Establishments

M1 M2 M3

In all districts, as indicated, all permitted #accessory business signs#, other than #advertising signs#, for #adult establishments# shall conform with the provisions of this Chapter, except that the maximum #surface area# of all #accessory business signs#, other than #advertising signs#, for #adult establishments# shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# and no portion thereof may be #flashing#.

No #accessory business signs# for #adult establishments# shall be permitted on the roof of any #building#, nor shall such #signs# extend above #curb level# at a height greater than 25 feet.

***

44-45
Screening

M1 M2 M3

***

(d)     shall have no #signs# hung or attached thereto other than those permitted in Section 42-52 (Permitted Accessory Business Signs or Advertising Signs).

***

44-585
Screening

M1 M2 M3

***

(3)     shall have no #signs# hung or attached thereto other than those permitted in Section 42-52 (Permitted ~~Accessory Business Signs or Advertising~~ Signs).

***

52-73
Non-Conforming Signs

***

52-733
Advertising signs on waterways

On all waterways adjacent to #Residence#, #Commercial# or #Manufacturing Districts# and within view from an arterial highway, a #non-conforming advertising sign# may be continued for one year after July 23, 1964 if already in operation on April 15, 1964; provided that after the expiration of this period such #non-conforming advertising sign# shall terminate.

For the purposes of this Section #advertising sign# is a #sign# which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel, ~~and shall not include signs, symbols or flags identifying the vessel, its owners or operators~~ and is not #accessory# to a #use# on such vessel.

52-734
Non-conforming ~~accessory business~~ signs for adult establishments

In all districts, a #non-conforming ~~accessory business~~ sign# for an #adult establishment# shall terminate within one year from October 25, 1995 or from such later date that such #sign# becomes #non-conforming#, except that such #sign# may be continued for a limited period of time by the Board of Standards and Appeals pursuant to Section 72-40 (AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS).

***

NYC006220

Page 18 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

52-80
REGULATIONS APPLYING TO NON-CONFORMING SIGNS

52-81
General Provisions

A #non-conforming sign# shall be subject to all the provisions of this Chapter relating to #non-conforming uses#, except as modified by the provisions of Section 52-82 (Non-Conforming Business Signs) and Section 52-83 (Non-Conforming Advertising Signs).

A change in the subject matter represented on a #sign# shall not be considered a change of #use#.

52-82
Non-Conforming Business Signs other than #Advertising Signs#

Any #non-conforming accessory business sign#, except a #flashing sign# or a #sign# subject to the provisions of Section 52-734 (Non-conforming accessory business signs for adult establishments), and except any #advertising sign# may be structurally altered, reconstructed, or replaced in the same location and position, provided that such structural alteration, reconstruction, or replacement does not result in:

(a)     the creation of a new #non-conformity# or an increase in the degree of #non-conformity# of such #sign#;

(b)     an increase in the #surface area# of such #sign#; or

(c)     an increase in the degree of illumination of such #sign#.

However, any structural alteration, reconstruction or replacement of a #non-conforming sign accessory# to a #non-conforming use# shall be subject to the provisions of Section 52-31 (General Provisions).

To the extent that such structural alteration, reconstruction, or replacement of #non-conforming accessory business signs# is permitted under the provisions of this Section, the provisions of the following Sections are modified:

    Section 52-22 (Structural Alterations)

Page 19 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

Sections 52-51 to 52-55, inclusive, relating to Damage or Destruction.

\*\*\*

72-40

## AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS

The Board of Standards and Appeals may permit any #non-conforming adult establishment# or any #non-conforming accessory business sign#, other than #advertising sign#, for an #adult establishment# to continue for a limited period of time beyond that provided for in Section 52-734 (Non-conforming accessory business signs for adult establishments) or Section 52-77 (Termination of Adult Establishments), provided that:

\*\*\*

73-211
Location in C2, C4, C6 or C7 Districts

\*\*\*

(5)     that #accessory business signs#, other than #advertising signs#, shall be subject to the applicable district #sign# regulations, provided that:

\*\*\*

73-241
In C1-1, C1-2, C1-3, C1-4, C2-1, C2-2, C2-3, C2-4, C3, C5, M1-5A or M1-5B Districts

\*\*\*

The Board may modify the regulations relating to #accessory business signs# in C3 Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminated# or #illuminated# non-#flashing signs#, provided that any #illuminated sign# shall not be less than 150 feet from the boundary of any #Residence District#. The Board shall prescribe appropriate controls to minimize adverse effects on the character of the surrounding area, including, but not limited to, location of entrances and operable windows; provision of sound-lock vestibules; specification of acoustical insulation; maximum size of establishment; kinds of amplification of musical instruments or voices; shielding of floodlights; adequate screening; curb cuts or parking.

**73-242**
**In C3 Districts**

\*\*\*

The Board may modify the regulations relating to #accessory business signs# in C3 Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminated# or #illuminated# non-#flashing signs#, provided that any #illuminated sign# shall not be less than 150 feet from the boundary of any #Residence District#.

\*\*\*

**73-25**
**Boatels**

\*\*\*

The Board may modify the regulations relating to #accessory business signs# in C3 Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminated# or #illuminated# non-#flashing signs# on each of not more than three #street# or water frontages.

\*\*\*

**73-35**
**Amusement Arcades**

\*\*\*

(c)    that the #use# is so located within the shopping center that no entrance and no #accessory business sign# fronts upon or faces a #street#.

\*\*\*

**74-47**
**Amusement Arcades**

(c)    the #use# is so located within the #building# that no entrance nor any #accessory business sign# of the amusement arcade fronts upon or faces a #street#.

\*\*\*

NYC006223

Page 21 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

74-744
Modification of use regulations

\*\*\*

(c)    Modifications of #accessory business sign# regulations

In C6 Districts, the City Planning Commission may modify the regulations of Section 32-65 (Permitted Projection or Height of Signs) for #accessory business signs#, other than #advertising signs#, on a non- #residential building#, provided that such #accessory signs# will not be incompatible with the character of the surrounding area.

\*\*\*

81-141
Special sign regulations                        \*\*\*

(b)    In a C5-3 District within the Fifth Avenue Subdistrict, the Chairperson of the City Planning Commission may, by certification, modify the requirements of Section 32-655 (Height of signs in all other Commercial Districts), to allow a single non-#illuminated business sign#, other than #advertising sign#, per #building# to be located at a height between 25 and 50 feet above #curb level# provided that the permitted #sign# shall:

\*\*\*

82-24
Supplementary Sign Regulations

No permitted #business sign# shall extend above #curb level# at a height greater than 20 feet or obstruct an #arcade#.

\*\*\*

93-34
Accessory Business Signs

All #accessory business signs#, other than #advertising signs# and other than window #signs#, shall be located in a horizontal band not higher than two feet, the base of which is located not less than 13 feet nor more than 16 feet above #curb level#. Where there is a grade change of at least

Page 22 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

1.5 feet in 100 feet along the portion of the #street# upon which the #development# fronts, such signage band may be staggered along such #street#.

***

94-066
Additional sign regulations

Where #illuminated signs# are permitted by the underlying district regulations, such #signs# shall have only indirect illumination. Where #business signs#, other than #advertising signs#, are permitted by the underlying district regulations, such #signs# shall not extend above the roof level of any #building or other structure# in the Special District.

***

97-112
Sign regulations

All #signs# for Use Group M #manufacturing uses# within the R(M) #Special Northside Mixed Use District# shall be limited to #accessory business signs#, other than #advertising signs#, and shall conform to regulations for C1 Districts as set forth in Sections 32-61 to 32-68 (Sign Regulations) inclusive, in this Resolution, except that no #illuminated signs# shall be permitted in the R(M) #Special Northside Mixed Use District#. In addition, no #sign# shall extend above the floor level of the second #story# above ground.

***

108-112
Sign regulations

All #signs# for #manufacturing# or #commercial uses# within the #Special Franklin Street Mixed Use District# shall be limited to #accessory business signs#, other than #advertising signs#, and shall conform to regulations for C1 Districts as set forth in Section 32-61 to 32-68 (Sign Regulations), inclusive, in this Resolution, except that no #illuminated signs# shall be permitted in the #Special Franklin Street Mixed Use District#. In addition, no #sign# shall extend above the floor level of the second #story# above ground.

***

NYC006225

Page 24 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

Except as otherwise permitted in Section 32-653 (Additional regulations for projecting ~~business~~ signs), no permitted #sign# shall project across a #street line# more than 12 inches.  Double or multifaced #signs# are not permitted.

* * *

117-423
~~Accessory business~~ sSign regulations

* * *

118-12
Sign Regulations

* * *

#Signs# on #street walls# fronting on all other #streets# within the Special District shall be subject to the provisions of Section 37-016 (~~Accessory business signs~~Sign regulations).

* * *

121-20
SIGN REGULATIONS

The following provisions apply on #wide streets# within the #Special Garment Center District#:

(a)    no #~~accessory business~~sign# ~~or #advertising sign#~~ shall project across the #street line# of a #wide street# more than 18 inches for double or multi-faced #signs# or 12 inches for other #signs#;

* * *

122-20
SPECIAL SIGN REGULATIONS

In order to enhance the visual quality of the Special District, the applicable #sign# regulations of the underlying districts are modified as follows:

NYC006226

Page 25 of 25 pages
N 980135 ZRY
Reso. No. 208 (L.U. No. 91)

(a)     Within the Limited Commercial Areas, only one #accessory business sign#, other than an
#advertising sign#, with a surface area not exceeding 12 square feet shall be permitted per
#commercial use#. #Accessory business Such signs# shall be located in a #sign band#, on
the flap of a canopy, or as allowed under Section 122-20(d). The height of an #accessory
business such #signs# shall be not more than 24 inches and the letter sizes shall be
restricted to a height of 12 inches. Except as provided in Section 122-20(d), all such
#signs# may not project from the vertical surface of a #building# more than 18 inches.

(b)     Within the Commercial Extension Areas, no #accessory business signs# and no #display
windows# shall be permitted on a #building or other structure# within 50 feet of the Grand
Concourse. #Commercial uses# which are located on a cross-street beyond a distance of
50 feet from the Grand Concourse #street line#, shall comply with the #sign# regulations
applicable to the underlying #Commercial District#.

(c)     On Commercial Infill Sites, the maximum surface area to be occupied by an #accessory
business sign#, other than an #advertising sign#, shall be three square feet for every five
feet of store frontage or 12 square feet, whichever is greater. #Accessory business Such
#signs# shall be located in a #sign band# and/or on the flap of a canopy, or as allowed
under Section 122-20(d). On portions of Commercial Infill Sites more than 50 feet from
the Grand Concourse, the signage regulations of a C1 District shall apply.

(d)     Except in C1 Districts, no #sign# may be located so as to obscure any decorative lintel,
cornice or other architectural detail. In the event that compliance with this requirement
does not provide adequate surface area for the allowable #accessory business sign# as
defined in Section 122-20(a), a projecting #sign# may be permitted by the Commissioner
of Buildings provided that no such #sign# shall project from the vertical surface of a
#building# more than 18 inches.

Adopted.

Office of the City Clerk, }
The City of New York, } ss.:

        I hereby certify that the foregoing is a true copy of a Resolution passed by The
Council of The City of New York on April 8, 1998, on file in this office.

                                        City Clerk, Clerk of Council

NYC006227

Exhibit J

**CITY PLANNING COMMISSION**

December 13, 2000/Calendar No.  33                    N 010065 ZRY

**IN THE MATTER OF** an application submitted by the Department of
City Planning, pursuant to Section 201 of the New York City
Charter, for an amendment of the Zoning Resolution of the City of
New York, relating to signs.

This application for an amendment of the New York City Zoning
Resolution was filed by the Department of City Planning on August
3, 2000, and revised on October 26, 2000.  The proposed amendment
would establish size, height, projection and other zoning
regulations for signs in Manufacturing Districts; limit the size
of accessory business signs in Commercial and Manufacturing
Districts at locations along designated arterial highways while
allowing flexibility for signs within large scale developments or
on large zoning lots in commercial and manufacturing districts;
establish controls for flashing signs along the waterfront;
restrict the replacement of certain types of non-conforming
signs; and, prohibit excessive illumination on illuminated signs.


**BACKGROUND**

<u>Nature and Purpose of Proposed Amendments</u>


Outdoor advertising in the form of billboards and other types of
signs has long been a feature of New York City's landscape.  The
outdoor advertising medium is an important vehicle for promoting
the sale of goods and services, and the outdoor advertising

1

3365   NYC000294

business is an important industry in its own right.  At the same time, the City of New York, like many jurisdictions elsewhere throughout the nation, has long recognized that outdoor advertising raises aesthetic, public safety and other issues that warrant reasonable restrictions on the size, height, projection and other features of outdoor advertising sign installations.

The Zoning Resolution has for many years included comprehensive regulations for outdoor advertising signs, with controls that vary according to the nature and character of the zoning district.  These regulations have remained largely unchanged since 1961, and establish an appropriate set of land use controls in those locations where they govern.  Apart from the issues addressed in these proposed amendments, the primary problems associated with the current regulations are rampant illegality and lack of effective enforcement, not the regulations themselves.

The proposed amendments respond to a changed environment which has highlighted gaps in the current regulations.  Recent years have seen a strong economy with a high demand for outdoor advertising.  The outdoor advertising medium has become an increasingly important vehicle for advertisers to get their message across to consumers.  New technologies have given outdoor advertising companies the ability to produce bigger signs at a lower cost, and have allowed for installation of signs on

N 010065 ZRY

3366

NYC000295

surfaces and at locations never before thought possible.  These factors have contributed to a proliferation of advertising signs throughout the City, both legal and illegal, including locations essentially unregulated under the current zoning.

This burgeoning phenomenon has created a need to revisit aspects of sign regulations which were adopted almost 40 years, in an era when outdoor advertising was less pervasive and the technology less sophisticated.  In particular, the recent proliferation of signs of unlimited size and height in Manufacturing Districts which have no sign controls has highlighted the need for change. Advances in lighting and illumination technologies have also created a need to address flashing or other illuminated signs which have appeared along the waterfront, and at sites in mixed-use districts close to residentially occupied buildings.

The proposed amendments seek to update the City's sign regulations in light of these trends.  They are intended to extend reasonable land use protections in areas where none exist today, while continuing to provide the outdoor advertising industry ample opportunities for growth.

Problem Areas

The need for the text changes relating to signs in manufacturing districts stems from changes in the way manufacturing districts

N 010065 ZRY                                                                    3

3367   NYC000296

are used and the increasing attractiveness of outdoor advertising as a way to reach consumers. Current zoning provides few regulations for signs in manufacturing districts, except to prohibit advertising signs near public parks and designated arterial highways. At the time the current zoning rules were written, there was little incentive to place advertising signs or large accessory business signs in manufacturing districts except at locations in proximity to arterial highways. Today, manufacturing districts are more likely used for commercial and retail activity and several mixed use manufacturing districts allowing limited residential use have been established.

In both manufacturing and commercial districts, the use of vinyl and similar light-weight materials for large signs has led to an increase in highly visible signs which can be seen from great distances. These signs have begun to appear on water tanks, rooftops, and the faces of tall buildings in manufacturing and commercial districts, often located near residential areas and/or major roadways. While current zoning establishes size, height, and projection regulations for signs in commercial districts, the absence of similar controls in the manufacturing districts allows for out-of-scale and overly intrusive signs.

Along arterial highways and public parks, there is a strong economic incentive to thwart existing prohibitions against advertising signs by converting accessory signs to advertising.

N 010065 ZRY

3368  NYC000297

This problem can be addressed by enhancing the City's powers to enforce against illegal sign installations. However, reasonable restrictions on the size of accessory signs in proximity to the arterial highways and public parks can also significantly reduce the incentive for illegal conversion.

At the same time, there is a need to allow for larger accessory signs under specific conditions. A retail shopping center, for example, often has a single sign to identify its tenants for the convenience of the motoring public. For this reason, the proposed amendments would allow for waiver of the limitation on the size of accessory signs near parks and designated arterial highways by certification of the Chairman of the City Planning Commission for a single non-flashing sign located on a zoning lot not less than one and one-half acres, provided all other permitted signs conform with the sign regulations applicable in C1 Districts.

There is also need for flexibility in General Large Scale Developments, where the City Planning Commission's current authority to regulate signs is limited to the modification of the location of signs along frontages adjacent to residence district boundaries, and the projection or height of signs in C6 districts. Greater flexibility would permit better site planning in General Large Scale Developments. The current special permit is proposed to be modified for this purpose.

N 010065 ZRY

5

3369  NYC000298

Flashing signs have appeared along the City's waterfront, creating a need to establish new zoning rules in order to prevent their proliferation and to protect the aesthetic character of these areas.

The intensely competitive nature of the outdoor advertising industry in New York City has presented a situation in which some signs have illumination levels that result in complaints from nearby residents, and sometimes result in litigation. Technical illumination standards can address this problem.

The current rules governing non-conforming signs date from an era in which billboards required a structure to accommodate replaceable copy. Today, some signs are constructed of flexible vinyl or similar fabric, which is stretched along a building wall or other surface, requiring no such structure. When such a sign is replaced, an entirely new fabric is custom manufactured for the location. In the absence of a fixed investment in a sign structure, the replacement of such signs where they exceed current size, height and other regulations, warrants less protection as a non-conforming use.

Current Zoning

Signs are generally allowed in all manufacturing districts without restrictions on surface area, illumination, projection or

N 010065 ZRY

6

3370  NYC000299

height.  Advertising signs are prohibited within 200 feet of and within view of public parks and designated arterial highways, and restricted in size beyond that distance.

Accessory signs - but not advertising signs - are allowed in commercial and manufacturing districts near and within view of arterial highways or public parks.  Accessory signs with a maximum permitted surface area larger than 200 square feet are allowed in C4, C5-4, C6, C7, C8 and in all manufacturing districts.

On waterfront blocks, signs are generally allowed under current zoning in accordance with the applicable district sign regulations.  Flashing signs are allowed in C4, C5-4, C6, C7, C8 and in all manufacturing districts.  In C4, C5-4, C6-1 (except C6-1A), C6-2, C6-3, C6-4, C6-6, C6-8 and C6-9 districts, flashing signs are limited in surface area to five times the street frontage of the zoning lot in feet, but in no event more than 500 square feet for interior or through lots or 500 square feet on each frontage for corner lots.  In C8 districts, flashing signs other than advertising signs are limited to five times the street frontage of the zoning lot in feet and the surface area of each sign may not exceed 500 square feet.  There are no restrictions as to size of flashing signs located in C6-5, C6-7, C7 or in manufacturing districts.  Flashing signs are not permitted on floating structures, but they are allowed on piers and platforms.

N 010065 ZRY

3371  NYC000300

Non-conforming advertising signs other than flashing signs may generally be altered, reconstructed or replaced in the same location and position, pursuant to the provisions of Section 52-83.

In General Large Scale Developments (Section 74-74), the City Planning Commission may vary the location of signs without regard to Sections 32-50 (Special Provisions Applying Along District Boundaries) or 42-40 (Supplementary Use Regulations and Special Provisions Applying Along District Boundaries), which require various minimum distances for signs located along street frontages that adjoin residence districts. It also allows the Commission to modify the projection or height of signs in General Large Scale Developments located within C6 districts.

ZONING TEXT PROPOSAL

The proposal would generally extend to all manufacturing districts the current restrictions on signs located in C8 General Service Districts, which have liberal rules for signs compared with most commercial districts. It would also add restrictions on accessory signs in commercial and manufacturing districts where located in proximity to certain public parks and designated arterial highways.

---

N 010065 ZRY

3372 NYC000301

Size and Illumination

In manufacturing districts, signs would be limited in surface area to six times the street frontage of the zoning lot in feet, but in no event to more than 750 square feet for each sign. This rule currently applies to C8 Districts.

Illuminated or flashing signs, other than advertising signs, would be permitted up to five times the street frontage of the zoning lot in feet, but not more than 500 square feet for each sign. Indirectly illuminated accessory and advertising signs would be permitted up to five times the street frontage of the zoning lot in feet, but not more than 750 square feet for each sign (a requirement more liberal than the current limitation of 500 square feet in C8 Districts). In manufacturing districts that allow residences, joint living-work quarters for artists or loft dwellings, such signs with illumination would be limited to no more than 500 square feet.

In manufacturing districts, up to three illuminated non-flashing signs (other than advertising signs) located in a window and totaling no more than eight square feet would be exempt from the surface area provisions, as currently applicable in all commercial districts.

---

N 010065 ZRY

9

NYC000302

## Illumination

Under current zoning, the degree of illumination of signs is unregulated. A new provision would authorize the Commissioner of Buildings to promulgate rules concerning permissible levels or methods of illumination, and prohibiting illuminated or indirectly illuminated signs from exceeding any standard so established.

## Projection and Height

Signs in most manufacturing districts would not be allowed to project across a street line more than 12 inches, except that double- or multi-faceted signs would be permitted to project up to 18 inches. In M1-5A, M1-5B, M1-5M and M1-6M districts and in the manufacturing districts mapped within the Special Tribeca Mixed Use District, for each establishment located on the ground floor, non-illuminated signs other than advertising signs would be permitted to project no more than 40 inches provided that along each street frontage on which such establishment fronts, the number of such signs for each establishment does not exceed two two-sided signs separated at least 25 feet apart, and further provided that the maximum surface area of any such sign does not exceed 24 by 36 inches and is not located above the level of the first story ceiling.

N 010065 ZRY

10

3374

NYC000303

Non-illuminated signs other than advertising signs would be permitted on awnings or canopies.  Such signs would be limited to 12 square feet of surface area, the height of letters would be limited to 12 inches, and also would be limited to the identification of the name or address of the building or an establishment contained therein.  On marquees, such signs would be permitted provided they did not project more than four feet above or one foot below.

The height of signs in manufacturing districts would be limited to a maximum height of 40 feet for illuminated signs, and 58 feet for non-illuminated signs or signs with indirect illumination.

Section 42-542 (Restriction on height above curb level) would be deleted because the proposal would be more restrictive than the existing text.  The section that would be deleted limits to 50 feet the maximum height of illuminated signs larger than 25 square feet, when such signs are within 500 feet of a residence or C1 or C2 district and face such districts at an angle less than 90 degrees.  This limitation does not apply to indirectly illuminated signs up to 58 feet in height.

In addition, language would be added to Section 42-52 of the zoning text to continue to allow without limitation flags, banners and pennants for most community facilities.  Such rules presently apply in all commercial districts.

---

N 010065 ZRY

3375

NYC000304