Additional Restrictions in Commercial or Manufacturing Districts
For Signs Near Certain Parks and Designated Arterial Highways

In commercial districts that permit advertising signs, C6-5, C6-7, C7, C8, and in all manufacturing districts, advertising signs are prohibited within 200 feet of and within view of public parks and designated arterial highways, and restricted in size beyond that distance.

The proposal would limit the size of accessory signs within 200 feet of and within view of a public park one-half acre or more or a designated arterial highway to a maximum surface area of 200 square feet.  Beyond 200 feet, accessory signs would be permitted 200 square feet plus one additional square foot of surface area per additional foot of distance from the park or highway.  These provisions, to be added to Sections 32-66 and 42-55 (Additional Regulations for Signs Near Certain Parks and Arterial Highways), would apply in C4, C5-4, C6, C7, and C8 districts, which permit accessory signs with a surface area greater than 200 square feet, and in all manufacturing districts where such signs may be of any size under current zoning rules.

However, by application, the limitation on the size of accessory signs near parks and designated arterial highways would be waived by certification of the Chairman of the City Planning Commission for a single non-flashing sign located on a zoning lot not less than one and one-half acres, provided all other permitted signs

---

N 010065 ZRY

3376

NYC000305

located on the zoning lot and subject to the provisions of this
section conform with all the sign regulations applicable in C1
Districts.

The limitations on accessory and advertising signs in Sections
32-66 and 42-55 would also not apply along any designated
arterial highway within one-half mile of any boundary of the City
of New York provided that the designated arterial is also a
"principal route" or "toll crossing" that prohibits direct
vehicular access to abutting land and provides complete
separation of conflicting traffic flows, is a designated through
truck route and crosses a boundary of the City of New York, and
provided further that any advertising sign is located not less
than 500 feet from any other advertising sign.  Signs erected
prior to the date of the City Planning Commission referral of the
proposed regulations, August 7, 2000, would have non-conforming
use status.

Sign Restrictions Affecting Waterfront Zoning

A new Section 62-27 (Special Sign Regulations) would be added to
the waterfront zoning text.  In districts where flashing signs
are allowed under current zoning (C4, C5-4, C6, C7, C8 and all
Manufacturing Districts), the provision would limit flashing
signs to a maximum 50 square feet for each establishment located
on a zoning lot within a waterfront block.  The section would

N 010065 ZRY                                                    13

3377

NYC000306

also prohibit flashing signs located on piers and platforms.

Non-conforming advertising signs

Section 52-83 would be amended to prohibit the replacement of a non-conforming sign which is painted directly on a building or which is a flexible fabric sign affixed or secured to a wall or other surface or other structure, other than a sign structure with a permit, by means of hooks, straps, wires or any other stiffening or fastening device.

Existing signs which exceed illumination standards established by the Commissioner of Buildings would have to comply with such regulation within one year of the date of the establishment of the standard.

General Large Scale Developments

Under the proposal, the existing General Large Scale Development special permit would be amended to allow the City Planning Commission to modify, in all commercial or manufacturing districts, the maximum surface area and illumination, height, and projection of permitted signs, and modify the location restrictions for accessory signs near public parks and designated arterial highways, provided the Commission finds that the modifications result in a better site plan. The modifications

N 010065 ZRY

3378

NYC000307

for signs would be limited to developments or enlargements that obtain bulk modifications under the special permit. The current rule allowing the Commission to vary restrictions on the location of signs along street frontages near residence district boundaries would be reorganized into the amended permit.

Signs shown on site plans of special permits approved prior to the effective date of this text change would continue to be allowed under the terms of those special permits.

## Clarifications and Renumbering of Existing Sections

Various sections of the current sign rules in commercial and manufacturing districts would be renumbered, reorganized or revised with minor language changes, without substantive amendment.  Two cross-references to particular sections of the Administrative Code would be deleted from Section 32-653 (Additional regulations for projecting signs).  Additional cross-references would be amended to ensure conformity with the proposed text.

## ENVIRONMENTAL REVIEW

This application (N 010065 ZRY) was reviewed pursuant to the New York State Environmental Quality Review Act (SEQRA), and the SEQRA regulations set forth in Volume 6 of the New York Code of

3379

NYC000308

Rules and Regulations, Section 617.00 et seq. and the City
Environmental Quality Review (CEQR) Rules of Procedure of 1991
and Executive Order No. 91 of 1977.  The designated CEQR number
is 01DCP002Y.  The lead agency is the City Planning Commission.

After a study of the potential environmental impact of the
proposed action, a negative declaration was issued on August 7,
2000, as subsequently revised on December 13, 2000.

**PUBLIC REVIEW**

On August 7, 2000, this text change was duly referred to the
borough presidents, borough boards and community boards for
information and review in accordance with the procedure for
referring non-ULURP matters.

Community Board Review

All community boards which considered the proposed text change
voted to recommend approval of the application.  The following 21
community boards voted on the application:  The Bronx, Community
Board 7; Brooklyn, Community Boards 2 and 10; Manhattan,
Community Boards 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11; Queens,
Community Boards 1, 2, 3, 5 and 9; and, Staten Island, Community
Boards 2 and 3.

N 010065 ZRY                                                    16

3380

NYC000309

Comments were received from: Brooklyn Board 2; Manhattan Boards 1,2,3,4,5,6,8, and 9; Queens Board 2; and Staten Island Boards 2 and 3.  In general, the recommendations called for greater restrictions than those contained in the proposal.

Community Boards 3 and 4, Manhattan, recommended refining the meaning of "structure" for the purposes of determining the conforming status of large flexible fabric signs.

Brooklyn Community Board 2 recommended a ban on blinking signs. Manhattan Community Board 5 suggested consideration of further restrictions on illumination of signs in mixed manufacturing districts.  Manhattan Community Board 4 requested further restrictions on size and illumination levels near residences located in commercial and manufacturing districts.

Manhattan Community Board 2 recommended amending projection rules for signs to prohibit three-dimensional signs and to treat multi-faced signs similarly to two-sided signs.

Manhattan Community Board 1 called for a prohibition of illuminated accessory signs near parks and arterial highways, and Manhattan Board 4 suggested adding more designated highways. Staten Island Community Boards 2 and 3, and Manhattan Community Board 4 expressed concern about the effect of proposed Section 42-55 (d) on billboards located along certain arterial highways

N 010065 ZRY

3381

NYC000310

near the bridges connecting Staten Island with New Jersey. Manhattan Community Board 8 recommended reducing to 1/4 acre the size of parks to which such sign rules apply.

Community Board 6, Manhattan, recommended prohibiting advertising signs in waterfront manufacturing zones, and Board 2, Manhattan, recommended their prohibition near landmarks.

Community Board 8, Manhattan, called for eliminating unlimited flags/banners for community facilities, and Community Board 2, Manhattan, suggested clarifying that only accessory signs are allowed for community facilities.

Community Board 2, Brooklyn, Boards 2 and 4, Manhattan, and Board 2 Queens, recommended limitations on the legal non-conforming use status of existing lawful signs which would not comply with the new regulations.  Community Board 9, Manhattan, called for removal of all such billboards in that district.

Community Board 2, Brooklyn, recommended making the new zoning rules retroactive to one year.

Community Board 4, Manhattan, suggested that the distinction between accessory and advertising signs requires further clarification.

N 010065 ZRY

3382

NYC000311

Other recommendations from Manhattan community boards included: place a moratorium on new signs (CB 1); allow flexibility for new technology (CB 2); prohibit flexible fabric signs mounted on buildings (CB 6); ban signs over windows in buildings where people reside (CB 2); and, extend sign rules to scaffolding and sheds (CB 4).

Community Board 1, Manhattan, noted a need to commit resources to ensure enforcement of sign regulations, to remove existing illegal advertising signs near highways and that a special study on the safety of animated electric signs be undertaken. Manhattan Community Board 2 recommended that surveillance cameras be banned from billboards. Community Board 2, Queens, called for immediate enforcement with fines against the companies who make use of outdoor advertising to promote their goods or services, as well as property owners.

**Borough Board Review**

The Brooklyn Borough Board voted unanimously in favor of the application.  The Board recommended prohibiting illuminated signs related to adult materials and entertainment, and within 200 feet of arterial highways.  It commented that adequate resources need to be given the Department of Buildings for enforcement, and urged that the Council promptly consider the enforcement legislation set forth in Intro. 809.

N 010065 ZRY

19

3383

NYC000312

The Manhattan Borough Board voted 15-2-1 in support of the proposal. The Board recommended that flashing signs be prohibited, particularly along arterial highways, and that City Planning evaluate advances in technology and address them in prospective zoning amendments. The Board recommended that the Department of Buildings set illumination levels that do not exceed national industry standards, and require compliance within nine months, rather than one year. It recommended that DOB not consider hardware that affixes vinyl signs to building walls or other surfaces to be a supporting structure within the meaning of the non-conforming use provisions of the zoning text proposal. The Manhattan Borough Board urged the City Council to consider Intro. 809 in order to allow for ECB adjudication of sign violations, provide significant penalties for violations, and allow the City to remove illegal signs and sign structures.

On November 20, 2000, the Queens Borough Board voted to recommend approval of the application. The Board recommended against any grandfathering of illegal billboards, that fines be imposed against the property owner and company whose product is advertised on a billboard, and that enforcement commence immediately after adoption of the new zoning text.

**Borough President Review**

This application was considered by the Manhattan Borough

N 010065 ZRY

20

3384

NYC000313

President, who issued a recommendation on October 30, 2000, approving the application with conditions. The Borough President requested an evaluation of protections along historic district boundaries and districts that contain residences; recommended amortization of legal non-conforming signs, and the appropriation of sufficient resources to enforce the zoning text amendment and Intro. 809 through fiscal year 2004.

This application was considered by the Queens Borough President, who issued a recommendation on November 27, 2000, approving the application. The Borough President noted that the proposal would be strengthened by enforcement legislation (Intro. 809) pending in the City Council. In addition, the Borough President stated that the lack of signage regulations in manufacturing districts has led to the proliferation of illegal billboards, the size and number of which clutter the skyscape, impact the areas where located and create potentially hazardous distractions for drivers on the roadways.

The Department did not receive additional Borough President comments.

**CITY PLANNING PUBLIC HEARING**

On November 15, 2000, (Calendar No. 15), the City Planning Commission scheduled November 29, 2000, for a public hearing on

N 010065 ZRY

3385    NYC000314

this application (N 010065 ZRY).  The hearing was duly held on November 29, 2000 (Calendar No.  25).  There were 23 speakers and the hearing was closed.

Many of those speaking in favor of the application noted the proliferation of advertising signs in manufacturing districts and near highways over the last several years .  The Brooklyn Deputy Borough President offered testimony that there are now 140 advertising signs within 200 feet of arterial highways in that borough, increasing from 26 apparently illegal signs at such locations in 1994.  A city councilmember from Queens observed that there has been a proliferation of illegal advertising billboards in his district along the Long Island Expressway near the Midtown Tunnel; he said:  "In one case you can stop your car and touch the sign infrastructure!"  Civic organizations, residents and others noted the proliferation of large advertising signs located in mixed-use neighborhoods.  In several instances speakers stated that new signs have been erected near loft dwellings and artist-in-residence joint living-work quarters. A representative of the Municipal Arts Society labeled the proliferation of advertising signs  in the City "an explosion."

Several speakers argued that outdoor advertising can negatively affect the aesthetics of the City.  A retired advertising executive noted that $200 billion in advertising messages per year include outdoor advertising, which cannot be avoided and "is

N 010065 ZRY

3386    NYC000315

an imposition on all of us." A member of the Fine Arts
Federation of New York commented that the scale of the City's
architecture is "being destroyed by colossal signs."

Many speaking in favor of the application also urged greater
restrictions on outdoor advertising. In particular, a number of
speakers took issue with the provisions of the proposed text
change that would allow currently legal advertising signs that
would not conform to the proposed regulations to continue as non-
conforming uses. Some, such as a representative of The Society
for The Architecture of the City, recommended that recently
installed signs should be subject to a sunset provision. A city
councilmember from Manhattan and several others recommended an
amortization period of one year. A counsel to a civic
organization suggested an amortization period of ten years,
stating that the average sign contract is for 15 years; the
organization represented by the speaker in its written testimony
suggested that the ten year period could, in cases of hardship,
be extended up to 20 years.

Several speakers expressed concerns about sign illumination,
suggesting limitations on lighting. A city councilmember from
Manhattan recommended limiting the hours during which signs may
be illuminated. One speaker suggested a 10PM curfew on
illumination. Another speaker requested that illumination levels
be specified in the Zoning Resolution rather than promulgated by

23

N 010065 ZRY

3387    NYC000316

the Department of Buildings, commenting that presently along Canal Street signs "can be seen half-way across Manhattan."

Some speakers suggested that the proposed sign regulations should be more strict near residences, historic landmarks and landmark districts.  A city councilmember from Manhattan suggested that the Commission should have considered the Lower Manhattan Mixed Use District to be C6 or Residence Districts for signage purposes, thereby prohibiting advertising signs altogether.  A community board representative from Manhattan recommended prohibiting certain signs within 500 feet of landmarks.

Speakers also reiterated comments made as part of the community and borough board and borough president review, such as the need for the City to commit greater resources for enforcement of sign regulations, and the need for passage of Intro.  809, recently introduced in the City Council at the request of the Administration.

Five speakers spoke in opposition to the proposal.  A representative of Local 137 of the Sheetmetal Workers Union stated that the proposal would hurt the industry and made a rough estimate that it would impact negatively approximately 100 highly paid blue collar jobs.

A property owner testified that the proposal does not take into

N 010065 ZRY

24

3388 NYC000317

account the financial impact it would have on properties in manufacturing districts, which he stated benefit from revenues generated from leasing outdoor space to outdoor advertisers. The speaker also stated that there is a need to better distinguish accessory signs from advertising signs. He noted that tenants with approximately 1,000 square feet of indoor space in the company's buildings of 150,000 square feet have installed advertising on the building exteriors, and that, in his view, such signs should be treated as bona fide accessory signs. He recommended that pole signs could be controlled along highways by limiting their distance between one another, while signs on buildings should be encouraged in manufacturing districts, even near highways. In response to a question from the Commission, the speaker noted that signs on his buildings include many 14 by 48 feet installations, and acknowledged that such signs could continue to be installed under the proposed regulations.

A representative of the New York Outdoor Group, an organization of outdoor advertisers whose members claim to control approximately 90 percent of signs along arterial highways and 80 percent of signs in manufacturing districts, testified that the proposal "unfairly makes what is legal, illegal." He stated that investors have relied on Department of Buildings-issued permits for arterial locations, and that wall signs are unfairly targeted for elimination under the non-conforming use provisions. Citing "vagueness" in the regulations relating to the distinction

N 010065 ZRY

25

3389   NYC000318

between advertising and accessory signs, the speaker called for grandfathering of arterial highway signs erected with permits issued prior to December, 1999, a position reiterated in written testimony submitted by the New York Outdoor Group. While acknowledging that many signs along the highways are illegal, the speaker suggested that the Group's membership, which consists chiefly of the larger and older companies, is law abiding and responsible. The Group's written testimony generally called for more liberal rules than proposed in the application. Among other recommendations, the written testimony proposed a 1,200 square feet limit on signs in manufacturing districts, with a 1,000 square feet limit in mixed-manufacturing districts; non-conforming use for replacement of painted wall signs and flexible fabric signs; and, no height limitations on signs in manufacturing districts. The speaker called for increased enforcement, assuming modification of the sign regulations along these proposed lines.

The owner of an advertising sign company, who stated that he is also a member of the New York Outdoor Group, complained that the regulations were being proposed without consultation with the outdoor advertising industry. He stated that the industry is not opposed to all regulation, and not opposed to working with the City to develop rules for signs. The company owner observed that outdoor advertising companies are a part of a broader set of economic transactions that affect thousands of jobs in the City,

3390    NYC000319

and expressed concern about regulatory changes being made without industry input.  In response to a question from the Commission, the sign company owner stated that he has received complaints about sign illumination, and has attempted to make adjustments through use of shields, screens and other devices which redirect the light. He also stated that different areas of the City can accommodate different sign regulations, and that zoning should be more sensitive to these distinctions.  He was invited by the Chairman to discuss these matters with department staff.

In written testimony, the Real Estate Board of New York stated that the proposal "is too extreme a change...[it] should take into account the positive impacts of signs for property owners and the sign industry, the over abundance of land zoned for manufacturing and that the negative land use impacts are primarily the result of illegal signs." REBNY stated  that accessory and advertising signs on buildings in manufacturing districts enhance the value of those buildings as zoned, facilitate their preservation for manufacturing and distribution businesses, and keep buildings viable in areas where the market is less strong. The organization suggested that one way to address what they described as "uncontrolled sign issues in some areas" is to remap those areas.  REBNY also recommended better enforcement of the zoning rules for signs as they currently exist, along with establishing a task force to develop rules for determining when a sign is accessory or advertising, and the

N 010065 ZRY

27

3391    NYC000320

development of illumination standards prior to adopting zoning text changes.

**CONSIDERATION**

The Commission believes the proposed changes to the Zoning Resolution are appropriate and effectively respond to legitimate concerns about the proliferation of out of scale signs in manufacturing districts, often located near and visible to residential areas or major roadways. The Commission received testimony from both those in favor of and in opposition to the proposal recognizing that there has been a proliferation of advertising signs over the last several years. One described the proliferation as an "explosion," while the owner of an outdoor sign company and member of the New York Outdoor Group, an outdoor advertising organization, acknowledged to the Commission that advertisers, who want to put messages "in your face," look for any available high traffic location for advertising signs.

The Commission believes that, apart from the absence of meaningful sign controls in Manufacturing Districts and other discrete problems addressed in the proposal, the system of sign regulation set forth in the Zoning Resolution remains a reasonable response to the potential negative impacts of outdoor advertising which nevertheless allows the outdoor advertising industry ample opportunities for growth. The Commission therefore

N 010065 ZRY

28

3392    NYC000321

notes with concern the considerable testimony and body of evidence that the sign regulations are being widely ignored, particularly along the arterial highways, and that current enforcement efforts are inadequate to address the problem.

The Commission finds unpersuasive the testimony of industry representatives that the problem lies in ambiguities in the current zoning text. The industry itself acknowledges that illegality is widespread, and a trade association that appeared before the Commission recognized that its own members "unquestionably employed" what it euphemistically described as "creative methods" to obtain building permits for arterial signs. The Commission heard testimony from an building owner representative that he considers as "accessory" a large sign placed on the exterior of one of his buildings which advertises products manufactured by a clothing company that occupies as a tenant less than one percent of the floor area in the building. This provides only one illustration that the problem is not with the definitions under the current zoning text, but with outdoor advertising companies and building owners who have stretched the zoning definitions to an almost absurd degree because they have able to do so with impunity.

The Commission believes that the long-term solution to this problem lies in enhancing the City's ability to enforce against violators, and urges swift consideration by the City Council of

N 010065 ZRY

3393    NYC000322

Intro.  809, proposed legislation drafted with the participation of Department staff that would allow for civil enforcement with enhanced penalties, expedited removal of illegal signs, and measures to hold outdoor advertising companies accountable for violations. However, zoning rules can also play a role in deterring illegal activity, and the Commission agrees that the proposal, by limiting the size of accessory signs in proximity to and within view of designated arterial highways and public parks, would be effective in reducing the economic incentive to engage in the illegal conversion of large accessory signs to advertising use, a common practice.

At the same time,  there are instances where installation of accessory signs larger than 200 square feet is warranted and does not pose a risk of illegal conversion to advertising use.  For example, shopping centers located along an arterial highway will typically install a large sign identifying the shopping center and its tenants for the convenience of the motoring public. The Commission believes that the provisions of the proposed text which would allow for waiver of the limitation on the size of accessory signs by Chairman's certification, as well as the proposed amendments to the existing General Large Scale Development Special Permit which would enhance the Commission's ability to modify sign regulations to promote better site planning, are appropriate responses to the need for greater flexibility in some situations involving commercial enterprise

N 010065 ZRY                                                            30

3394  NYC000323

along the designated arterials or near public parks.

The Commission believes that the waterfront should enjoy added protection from large flashing signs that have sometimes been erected under current rules, and that the proposal to limit the size and number of such signs is appropriate.  The Commission notes that the language of proposed Section 62-27, concerning flashing signs within waterfront blocks, has been revised to more clearly reflect the intent to limit flashing signs to a maximum of 50 square feet and permit only a single flashing sign for each establishment.  The proposed prohibition of flashing signs on piers and platform is another important protection for the waterfront.

Establishing illumination standards for directly and indirectly illuminated signs is important to address complaints about the proliferation of excessively bright signs, particularly in mixed-use districts.  Several concerns about this aspect of the proposal were raised by speakers at the public hearing and in written testimony.  Some suggested that the Department of Buildings was not the appropriate agency to establish illumination standards, while others recommended that specific illumination standards be included in the Zoning Resolution.  The Commission believes that devising illumination standards is a complex undertaking involving application of technical and engineering expertise, and is a matter appropriate for rulemaking

N 010065 ZRY

31

3395  NYC000324

by the Department of Buildings.  In response to testimony at the
public hearing from an outdoor sign industry executive, the
Commission has added language which would authorize the
Department of Buildings to prescribe methods for redirecting or
controlling illumination, such as light shields, drapings,
screens or other barriers, in addition to prescribing
illumination levels. The Commission notes that the text has been
revised to clarify that the illumination standards must be
promulgated by the Department of Buildings pursuant to the
rulemaking procedures of the City Administrative Procedure Act,
which makes provision for notice and public hearing.

The Commission is not persuaded by the testimony of speakers who
predict that the proposed changes will adversely impact the
health of the outdoor advertising industry and the economics of
ownership of manufacturing buildings.  The outdoor advertising
industry in New York City is vibrant and healthy under the
current zoning regulations, and there has been no evidence to
suggest that this will end with the addition of supplementary
rules that respond to recent changes in land use patterns and in
the industry.

The signs of unlimited size or height currently allowed in
manufacturing districts are obviously capable of generating more
revenue than signs subject to the size, height and projection
controls under the proposal. However, the record convincingly

N 010065 ZRY

32

3396  NYC000325

demonstrates a need for new land use controls on signs in manufacturing districts.  The Commission has little doubt that, under the new regulations, advertisers will continue to seek to showcase their products and services through outdoor advertising. Ample locations will remain for new installations of signs at the height limits proposed in the application, the standard 14x48 feet advertising bulletin will continue to be allowed, and opportunities for the industry to employ new, creative technologies will remain unaffected.  In addition, pre-existing legal signs will remain in place as legal non-conforming uses, with an appropriate exception for painted wall signs and flexible fabric signs.

Outdoor advertising is a regulated industry that has adapted to regulatory change over time.  It occupies an important and growing place in the advertising world; as stated by one industry executive at the public hearing, "[T]here is no better way of targeting [an audience] than `out of home'."  The Commission believes that the industry will continue to grow and prosper under the proposed changes, and that building owners will coincidentally continue to share in that growth.

Considerable further study would be needed to respond to recommendations by some speakers and written recommendations from community boards, borough boards and borough presidents that existing legal advertising signs that would not conform to the

N 010065 ZRY

33

3397

NYC000326

proposal should be amortized, and that more restrictive location rules should be adopted for signs located near historic landmarks and landmark districts.  These items are outside the scope of the proposal, and may be appropriate for consideration in connection with other actions, such as rezonings, at a later date.

The Commission believes that as originally submitted the application did not fully address the following issues.  These issues include:  the definition of a flexible fabric sign, potential ambiguity concerning the status of certain signs in Manufacturing Districts which pre-exist this action, clarification of the intent limiting flashing signs along the waterfront, and clarification of language concerning illumination and the uses to which illumination standards and methods relate.

The Commission is therefore modifying the application in the following ways:

- Section 52-83: The definition of a flexible fabric sign. A flexible fabric sign is defined for this purpose as a sign "consisting of a fabric display area affixed or secured to a wall or other surface or structure, other than a sign structure with a permit, by means of hooks, straps, wires or other stiffening or fastening devices."  This language is adapted from Department of Buildings OPPN #5/100, dated October 4, 2000, "Safety Standards For The Erection of Flex

N 010065 ZRY

3398

NYC000327

Sign Structures".

- Section 42-58: A new Section 42-58 has been added to eliminate any potential ambiguity concerning the status of signs in Manufacturing Districts which pre-exist this action and do not conform to the size, height or projection requirements of the new regulations.  Simply stated, all such signs which are both allowed under current zoning and have permits from the Department of Buildings will be governed by the non-conforming use provisions of Sections 52-82 and 52-83.

- Section 42-55: This section, formerly Section 42-53, has been reformatted without substantive change.  It sets forth the existing limitations and other rules governing advertising signs within proximity to highways and parks. The proposal adds new provisions governing accessory signs at these locations.  The reformatting achieves a better integration of new and old provisions.

- Section 62-27: This section has been revised to more clearly reflect the intent to limit flashing signs to a maximum of 50 square feet and permit only a single flashing sign for each establishment.

- Sections 32-64 and 42-53: Language in these sections has

N 010065 ZRY

35

3399

NYC000328

been clarified by stating that the degree and method of illumination for illuminated signs shall comply with standards promulgated by rulemaking of the Department of Buildings under the City Administrative Procedure Act, and that those standards relate to residences, loft dwellings or joint living-work quarters for artists.

This important Citywide zoning initiative with the modifications described above will update the City's sign regulations in light of recent trends, by extending reasonable land use protections in areas where none exist today, while continuing to allow the outdoor advertising industry ample opportunities to grow and prosper.

**RESOLUTION**

RESOLVED, that the City Planning Commission finds that the action described herein will have no significant impact on the environment; and be it further

RESOLVED, by the City Planning Commission, pursuant to Section 200 of the New York City Charter, that based on the environmental determination and consideration described in this report, the Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

N 010065 ZRY

3400
NYC000329

Matter in greytone is new, to be added;

Matter within #  # is defined in Section 12-10;

Matter in ~~strikeout~~ is text to be deleted;

*** indicates where unchanged text appears in the Zoning

Resolution


\*\*\*


32-60

SIGN REGULATIONS


\*\*\*


32-62

Permitted Signs


C1 C2 C3 C4 C5 C6 C7 C8


In all districts, as indicated, #signs# other than #advertising
signs# are permitted subject to the provisions of the following
Sections:


    Section 32-64   (Surface Area and Illumination Provisions)


    Section 32-65   (Permitted Projection or Height of Signs)

---

N 010065 ZRY                                                      37


**3401**

NYC000330

Section 32-66    (Additional Regulations for Signs Near
                 Certain Parks and Designated Arterial
                 Highways)


Section 32-67    (Special Provisions Applying along District
                 Boundaries)


Section 32-68    (Permitted Signs on Residential Buildings)


Section 32-69    (Additional Sign Regulations for Adult
                 Establishments)


However, notwithstanding any provision of this Section, flags,
banners or pennants other than those that are #advertising
signs#, located on any #zoning lot# used primarily for #community
facility uses# of a civic, philanthropic, educational or
religious nature, are permitted in all districts, as indicated,
without limitation.


32-63

Permitted Advertising Signs


C6-5 C6-7 C7 C8


In the districts indicated, #advertising signs# are permitted
subject to the applicable provisions of the following Sections:

---

N 010065 ZRY                                                    38


3402

NYC000331

Section 32-64    (Surface Area and Illumination Provisions)

Section 32-65    (Permitted Projection or Height of Signs)

Section 32-66    (Additional Regulations for ~~Advertising~~ Signs
                 Near Certain Parks and Designated Arterial
                 Highways)

Section 32-67    (Special Provisions Applying along District
                 Boundaries)

Section 32-68    (Permitted Signs on Residential Buildings).

                        ***


32-64

Surface Area and Illumination Provisions


C1 C2 C3 C4 C5 C6 C7 C8


In all districts, as indicated, all permitted #signs# shall be
subject to the restrictions on #surface area# and illumination as
set forth in this Section, provided that the following #signs#
shall be exempted from such restrictions on #surface area#:

    #Illuminated# non-#flashing signs# other than #advertising

---

N 010065 ZRY                                                    39


                                                        3403
                                                    NYC000332

signs# located in a window within a #building#, with a total #surface area# not exceeding eight square feet on any #zoning lot# and limited to not more than three such #signs# in any window.

For the purpose of determining permitted #surface area# of #signs# for #zoning lots# occupied by more than one establishment, any portion of such #zoning lot# occupied by a #building# or part of a #building# accommodating one or more establishments on the ground floor may be considered as a separate #zoning lot#.

No #illuminated sign# shall have a degree or method of illumination which exceeds standards established by the Department of Buildings by rule pursuant to the City Administrative Procedure Act. Such standards shall ensure that illumination on any #illuminated sign# does not project or reflect on #residences#, #loft dwellings# or #joint living-work quarters for artists# so as to interfere with the reasonable use and enjoyment thereof. Nothing herein shall be construed to authorize a #sign with indirect illumination# to arrange an external artificial source of illumination so that direct rays of light are projected from such artificial source into #residences#, #loft dwellings# or #joint living-work quarters for artists#.

---

N 010065 ZRY

40

3404

NYC000333

***

32-653

Additional regulations for projecting signs

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, permitted #signs# other than #advertising signs# may be displayed as follows:

(a)  Non-#illuminated signs# may be displayed on awnings or canopies permitted by ~~Section 27-313(b) of~~ the Administrative Code, with a #surface area# not exceeding 12 square feet and with the height of letters not exceeding 12 inches. Any commercial copy on such #signs# shall be limited to identification of the name or address of the #building# or an establishment contained therein.

(b)  #Signs# may be displayed on marquees permitted by ~~Section 27-313(b) of~~ the Administrative Code, provided that ~~such #signs# conform to the provisions of Section 26-182 of the Administrative Code, and provided further that~~ no such #sign# in a district other than a C6-5, C6-7 or C-7 District shall project more than 48 inches above nor more than 12 inches below such marquee.

---

N 010065 ZRY                                                41

3405

NYC000334

\*\*\*

[*Note:  Current Sections 32-66 and 32-661 are renumbered 32-662 and 32-663, respectively*]


32-66

Additional Regulations for ~~Advertising~~ Signs Near Certain Parks and Designated Arterial Highways


C1 C2 C3 C4 C5 C6 C7 C8


In all districts, as indicated, all permitted #signs# are subject to the applicable regulations of this Section.


For the purposes of this Section, arterial highways shall include all highways that are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways" or "toll crossings," and that have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.


32-661

Additional regulations for signs other than advertising signs


C4 C5-4 C6 C7 C8

---

N 010065 ZRY

NYC000335

In the districts indicated, and within 200 feet of an arterial highway or a #public park# with an area of one-half acre or more, no permitted #sign# that is within view of such arterial highway or #public park# shall exceed 200 square feet of #surface area#.

Beyond 200 feet from such arterial highway or #public park#, such #signs# shall be located at a distance of at least as many linear feet from the arterial highway or #public park# as there are square feet of #surface area# on the face of such #sign#.

Upon application, these requirements shall be waived provided that the Chairperson of the City Planning Commission certifies that:

(a)   such waiver is limited to a single non-#flashing sign# that is located on a #zoning lot# not less than one and one-half acres; and

(b)   all other permitted #signs# located on such #zoning lot# that are subject to the provisions of this Section conform with all the #sign# regulations applicable in C1 districts.

~~32-66~~

32-662

Additional regulations for advertising signs

---

N 010065 ZRY

3407
NYC000336

\*\*\*

~~32-661~~

32-663

Advertising signs on waterways

\*\*\*

42-50

SIGN REGULATIONS

\*\*\*

42-52

Permitted Signs

M1 M2 M3

In all districts, as indicated, #signs# are permitted ~~with no restriction on size, illumination or otherwise, except as otherwise provided in Sections 42-53 (Additional Regulations for Advertising Signs) and 42-54 (Special Provisions Applying along District Boundaries) and subject to the provisions of Section 42-55 (Additional Sign Regulations for Adult Establishments).~~ subject to the provisions of the following Sections:

N 010065 ZRY

3408

NYC000337

Section 42-53 (Surface Area and Illumination Provisions)

Section 42-54 (Permitted Projection or Height of Signs)

Section 42-55 (Additional Regulations for Signs Near Certain Parks and Designated Arterial Highways)

Section 42-56 (Special Provisions Applying Along District Boundaries)

Section 42-57 (Additional Sign Regulations for Adult Establishments)

Section 42-58 (Signs Erected Prior to December 13, 2000)

However, notwithstanding any provision of this Section, flags, banners or pennants other than those that are #advertising signs#, located on any #zoning lot# used primarily for #community facility uses# of a civic, philanthropic, educational or religious nature, are permitted in all districts, as indicated, without limitation.

*[Note:  Current Section 42-53 is modified and renumbered Section 42-55]*

42-53
Surface Area and Illumination Provisions

3409  NYC000338

M1 M2 M3

In all districts, as indicated, all permitted #signs# shall be subject to the restrictions on #surface area# and illumination as set forth in this Section, provided that the following #signs# shall be exempted from such restrictions on #surface area#:

> #Illuminated# non-#flashing signs# other than #advertising signs# located in a window within a #building#, with a total #surface area# not exceeding eight square feet on any #zoning lot# and limited to not more than three such #signs# in any window.

For the purpose of determining permitted #surface area# of #signs# for #zoning lots# occupied by more than one establishment, any portion of such #zoning lot# occupied by a #building# or part of a #building# accommodating one or more establishments on the ground floor may be considered as a separate #zoning lot#.

No #illuminated sign# shall have a degree or method of illumination which exceeds standards established by the Department of Buildings by rule pursuant to the City Administrative Procedure Act. Such standards shall ensure that illumination on any #illuminated sign# does not project or reflect on #residences#, #loft dwellings# or #joint living-work

N 010065 ZRY

46

3410   NYC000339

quarters for artists# so as to interfere with the reasonable use and enjoyment thereof. Nothing herein shall be construed to authorize a #sign with indirect illumination# to arrange an external artificial source of illumination so that direct rays of light are projected from such artificial source into #residences#, #loft dwellings# or #joint living-work quarters for artists#.

[Note:  Current Section 42-531 is renumbered 42-551]

42-531

Total surface area of signs

M1 M2 M3

In all districts, as indicated, the total #surface area# of all permitted #signs#, including non-#illuminated# or #illuminated signs#, shall not exceed the limitation established for non-#illuminated signs#, as set forth in Section 42-532 (Non-illuminated signs).

42-532

Non-illuminated signs

M1 M2 M3

In all districts, as indicated, non-#illuminated signs# with

N 010065 ZRY                                                          47

3411    NYC000340

total #surface areas# not exceeding six times the #street# frontage of the #zoning lot# in feet but in no event more than 750 square feet for each #sign#, are permitted.

42-533

Illuminated or flashing signs

M1 M2 M3

In all districts, as indicated, #illuminated# or #flashing advertising signs# are not permitted.

#Illuminated# or #flashing signs#, other than #advertising signs#, and #accessory# or #advertising signs with indirect illumination#, are permitted, provided that the total #surface area# of all such #signs# (in square feet) shall not exceed:

(a)  for #illuminated# or #flashing signs#, other than #advertising signs#, five times the #street# frontage of the #zoning lot# in feet and that the #surface area# of each #sign# shall not exceed 500 square feet; and

(b)  for #accessory# or #advertising signs with indirect illumination#, five times the #street# frontage of the #zoning lot# in feet and that the #surface area# of each #sign# shall not exceed 750 square feet.

N 010065 ZRY

3412   NYC000341

However, in any Manufacturing District in which #residences#, #joint living-work quarters for artists#, or #loft dwellings# are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization, the total #surface area# of all such permitted #signs# shall not exceed five times the #street# frontage of the #zoning lot# in feet and that the #surface area# of each #sign# shall not exceed 500 square feet.

[Note:  Current Section 42-54 is renumbered 42-56]

42-54
Permitted Projection or Height of Signs


M1 M2 M3


In all districts, as indicated, all permitted #signs# are subject to the applicable regulations of this Section.


[Note:  Current Section 42-541 is renumbered 42-561]

42-541
Permitted projection


M1 M2 M3


In all districts, as indicated, except as otherwise provided in Section 42-542 (Additional regulations for projecting signs), no

N 010065 ZRY
49

3413  NYC000342

permitted #sign# shall project across a #street line# more than 18 inches for double- or multi-faceted #signs# or 12 inches for all other #signs#, except that in M1-5A, M1-5B, M1-5M and M1-6M Districts and in manufacturing districts mapped within the #Special Tribeca Mixed Use District#, for each establishment located on the ground floor, #non-illuminated signs# other than #advertising signs# may project no more than forty inches across a #street line#, provided that along each #street# on which such establishment fronts, the number of such #signs# for each establishment shall not exceed two two-sided #signs# separated at least 25 feet apart, and further provided that any such #sign# shall not exceed a #surface area# of twenty-four by thirty-six inches and shall not be located above the level of the first #story# ceiling.

[Note:  Current Section 42-542 is deleted]

42-542

Additional regulations for projecting signs

M1 M2 M3

In all districts, as indicated, permitted #signs# other than #advertising signs# may be displayed as follows:

(a)  Non-#illuminated signs# may be displayed on awnings or
     canopies permitted by the Administrative Code, with a

N 010065 ZRY

50

3414  NYC000343

#surface area# not exceeding.12 square feet and with the height of letters not exceeding 12 inches.  Any commercial copy on such #signs# shall be limited to identification of the name or address of the #building# or an establishment contained therein.

(b)   #Signs# may be displayed on marquees permitted by the Administrative Code, provided that no such #sign# shall project more than 48 inches above nor more than 12 inches below such marquee.


42-543

Height of signs


M1 M2 M3


In all districts, as indicated, permitted #signs# shall not extend to a height greater than 40 feet above #curb level#, provided that non-#illuminated signs# or #signs with indirect illumination# may extend to a maximum height of 58 feet.


[Note:  Current Section 42-55 is renumbered 42-57]


~~42-53~~

~~Additional Regulations for Advertising Signs~~

---

N 010065 ZRY                                              51


3415  NYC000344

42-55

Additional Regulations for Signs Near Certain Parks and
Designated Arterial Highways

M1 M2 M3

In all districts, as indicated, ~~no #advertising sign# shall be
located, nor shall an existing #advertising sign# be structurally
altered, relocated or reconstructed, within 200 feet of an
arterial highway or of a #public park# with an area of one-half
acre or more, if such #advertising sign# is within view of such
arterial highway or #public park#.  For the purposes of this
Section, arterial highways shall include all highways that are
shown on the Master Plan of Arterial Highways and Major Streets,
as "principal routes," "parkways" or "toll crossings," and that
have been designated by the City Planning Commission as arterial
highways to which the provisions of this Section shall apply.
Beyond 200 feet from such arterial highway or #public park#, an
#advertising sign# shall be located at a distance of at least as
many linear feet therefrom as there are square feet of #surface
area# on the face of such #sign#.~~ the provisions of paragraphs
(a),(b) and (c), or paragraph (d) of this Section shall apply for
#signs# near designated arterial highways or certain #public
parks#.

(a)  Within 200 feet of an arterial highway or a #public park#

N 010065 ZRY                                                52

3416  NYC000345

with an area of one-half acre or more, #signs# that are
within view of such arterial highway or #public park# shall
be subject to the following provisions:

(1)   no permitted #sign# shall exceed 200 square feet of
      #surface area#; and

(2)   no #advertising sign# shall be allowed, nor shall an
      existing #advertising sign# be structurally altered,
      relocated or reconstructed; and,

(b)   Beyond 200 feet from such arterial highway or #public park#,
      #signs# that are within view of such arterial highway or
      #public park# shall be located at a distance of at least as
      many linear feet from the arterial highway or #public park#
      as there are square feet of #surface area# on the face of
      such #sign#; and,

(c)   ~~However, in all districts as indicated, the~~ The more
      restrictive of the following shall apply:

      ~~(a)~~(1)   any #advertising sign# erected, structurally
               altered, relocated or reconstructed prior to June
               1, 1968, within 660 feet of the nearest edge of
               the right-of-way of an arterial highway, whose

N 010065 ZRY                                                    53

3417
NYC000346

message is visible from such arterial highway,
shall have legal #non-conforming use# status
pursuant to Section 52-83, to the extent of its
size existing on May 31, 1968.

~~(b)~~ (2)    any #advertising sign# erected, structurally
altered, relocated or reconstructed between June
1, 1968 and November 1, 1979, within 660 feet of
the nearest edge of the right-of-way of an
arterial highway, whose message is visible from
such arterial highway, and whose size does not
exceed 1,200 square feet in #surface area# on its
face, 30 feet in height, and 60 feet in length,
shall have legal #non-conforming use# status
pursuant to Section 52-83, to the extent of its
size existing on November 1, 1979.  All
#advertising signs# not in conformance with the
standards set forth herein shall terminate.

(d)   Within one-half mile of any boundary of the City of New
York, permitted #signs# and #advertising signs# may be
located along any designated arterial highway that is also:

(1)   a "principal route" or "toll crossing" that prohibits
direct vehicular access to abutting land and provides
complete separation of conflicting traffic flows; and,

N 010065 ZRY                                                    54

3418  NYC000347

(2)  a through truck route designated by the New York City
     Department of Transportation; and,

(3)  that crosses a boundary of the City of New York

without regard to the provisions of paragraphs (a), (b) and
(c) of this Section, provided any such permitted or
#advertising sign# otherwise conforms to the regulations of
this Chapter including, with respect to an #advertising
sign#, a location not less than 500 feet from any other
#advertising sign#, except that, in the case of any such
permitted or #advertising sign# erected prior to August 7,
2000, such #sign# shall have #non-conforming use# status
pursuant to Section 52-82 (Non-Conforming Signs other than
Advertising Signs) and Section 52-83 (Non-Conforming
Advertising Signs) with respect to all other regulations of
this Chapter to the extent of the degree of #non-conformity#
of such #sign# as of August 7, 2000, including, with respect
to an #advertising sign#, its location within 500 feet of
any other such #advertising sign#.

Upon application, the requirements of paragraphs (a), (b) and (c)
of this Section (42-55) shall be waived, provided that the
Chairperson of the City Planning Commission certifies that:

---

N 010065 ZRY

55

3419

NYC000348

(1)    such waiver is limited to a single non-#flashing sign#
other than an #advertising sign#, that is located on a
#zoning lot# not less than one and one-half acres; and

(2)    all other permitted #signs# other than #advertising
signs# located on such #zoning lot# that are subject to
the provisions of this Section conform with all the
#sign# regulations applicable in C1 Districts.

For the purposes of this Section, arterial highways shall include
all highways that are shown on the Master Plan of Arterial
Highways and Major Streets, as "principal routes," "parkways" or
"toll crossings," and that have been designated by the City
Planning Commission as arterial highways to which the provisions
of this Section shall apply.

***

42-~~531~~551

Advertising signs on waterways

***

42-~~54~~56

Special Provisions Applying along District Boundaries

---

N 010065 ZRY

3420 NYC000349