emergency access portal, in addition to the user door, must be provided to allow access to the interior by police or other emergency services.

All APTs must be equipped with a timing device that will cause the door to open automatically after a fixed period of time, with an audible and visual warning signal to alert the user one minute prior to the door's opening.

The maximum area of each APT shall be 78 square feet. Except for pillar-style (cylindrical) units, the maximum length shall be 12 and 1/2 feet, the maximum width shall be 8 feet, and the maximum height shall be 12 feet. The maximum diameter of pillar-style units shall be 8 feet and the maximum height shall be 14 feet. Proposers are strongly encouraged to propose designs which utilize the minimum footprint necessary.

## 2.    **Build-out**

The City seeks a Proposal for a minimum of 30 APTs by no later than the end of the second year of the Franchise term with an option to direct the installation of additional APTs to be exercised, based upon the success of the initial installations, at the sole discretion of the City, but in no event later than the fifteenth year of the twenty-year Franchise. The total number of APTs will not exceed 100.

A pilot program during the summer of 1992, during which APTs were installed temporarily at three locations in Manhattan, demonstrated that APTs can be operated successfully in the City of New York.

All APT sites shall be selected by the Department following the consultative process described below. During the term of the Franchise, the Department may direct the Franchisee to remove or relocate APTs in response to security concerns.

## 3.    **Maintenance and Operation**

The APTs must be open to the public at least between the hours of 8:00 A.M. and 8:00 P.M. daily unless longer hours are established for a particular site by the Department.

The Franchisee will be responsible for the complete maintenance of every APT installed. This shall include but not be limited to daily visits to each unit to ensure that all systems are functioning properly, that the units are clean and that all dispensers are fully stocked. In addition, the Franchisee must respond immediately to its self-activating maintenance and operation warning system. Comfortable interior temperature, ventilation, and illumination shall be maintained at all times when the APT is in operation.

NYC-OTR005105

## D.    NEWSSTANDS

### 1.    Design

Newsstands must provide optimum conditions for selling and displaying newspapers, periodicals and convenience items, as well as adequate storage space. Proposers are encouraged to consult with representatives of publishers and newsstand operators regarding Newsstand design.

A Newsstand structure may not occupy more than 72 square feet of sidewalk space when in operation, including all necessary doors, screens, shelves, racks and cases. Each unit must be accessible to persons with disabilities who may operate or patronize the structure. The maximum width shall be 6 and 1/2 feet and the maximum length shall be 14 feet. The maximum diameter of a pillar-style (cylindrical) Newsstand shall be 6 and 1/2 feet. A Newsstand structure may include a roof overhang extending no more than 3 feet from the front of the stand beyond the maximum footprint, at a minimum height of 7 and 1/2 feet above the sidewalk. Such overhang may extend along the sides of the Newsstand roof a distance of 2 feet from the front of the roof. The maximum height of the Newsstand structures shall be 9 feet, except that a pillar-style Newsstand may be up to 14 feet in height. Pillar-style Newsstands shall be prohibited in districts zoned for residential use.

The majority of the Newsstand structures will be constructed on sites that are currently occupied by existing newsstands, and sidewalk conditions will prohibit exceeding the existing footprint. Therefore, Proposers must be prepared to construct Newsstands of a variety of shapes and sizes. In the event that a public pay telephone is incorporated in the design of a Newsstand, such telephone shall not be located so as to obstruct or interfere with the front sales area of the Newsstand.

### 2.    Build-out

The City seeks a Proposal for a minimum of 430 Newsstands by the beginning of the fourth year of the Franchise term with an option to direct the installation of additional Newsstands, to be exercised at the sole discretion of the Department, but in no event later than the eighteenth year of the twenty-year Franchise. The total number of Newsstands will not exceed 500.

This build-out will include the replacement of approximately 330 existing newsstands, which are owned and maintained by individual operators. Most of the replacement Newsstands will be installed at or near existing newsstand sites. Upon notification by the Department, the Franchisee shall also be responsible for dismantling, removing and, if necessary, disposing of any or all of the existing newsstand structures.

NYC-OTR005106

New Newsstand sites will be designated by the Department following the consultation process described below. During the term of the Franchise, the Department may direct the Franchisee to remove or relocate Newsstands whose location proves to be commercially unattractive.

The Franchisee will be responsible for all installation and costs associated with such installation including any necessary electric and telephone hook-ups. The Department may require the Newsstand operator to reimburse the Franchisee for any costs associated with the telephone hook-up.

**3.    Maintenance and Operation**

The Franchisee will be responsible for the maintenance of every Newsstand structure that it has constructed and installed throughout the Franchise term. The Franchisee shall be required to cooperate with the operator of the Newsstand regarding maintenance and repair of the Newsstand structure.

The Franchisee will not be responsible for operating the Newsstands or for cleaning their interiors. The Franchisee will not be responsible for the cost of telephone use by the operator, nor for any other utility cost which is not necessary to the Franchise. The Franchisee will not be permitted to derive revenue from the operation of the Newsstands.

**E.    PUBLIC SERVICE STRUCTURES**

Proposers are invited to submit Proposals for the installation, operation and maintenance of Litter and/or Recycling Bins and Computer Information Terminals that provide access to government or commercial activity. All PSSs shall be installed, maintained and removed in accordance with all laws, rules, regulations and guidelines adopted or established by the City which are applicable to comparable structures. The public service provided shall be immediately apparent to the passerby and shall not be obscured physically or visually by the name or logo of any sponsoring entity.

With the rapid development of information technology, the Department anticipates that opportunities for more advanced types of PSSs will expand after the issuance of this RFP. Additionally, the City's needs in relation to street furniture are likely to change over time. During the Franchise term, the Franchisee may propose to provide additional types of PSSs or may be asked to do so by the Department subject to amending the Franchise Contract. All such changes will also be subject to any applicable public review, including the Uniform Land Use Review Procedure and approval by the Franchise and Concession Review Committee.

14

NYC-OTR005107

The Franchisee will also be responsible for maintaining six existing City-owned pedestrian information kiosks, listed below, in the same manner as the Franchise Structures:

|  | Street | Cross Street(s) | Corner/Side |
|---|---|---|---|
| **Times Square** | W 43rd Street | Broadway | NW |
| **Duffy Square** | Broadway | W 46th & 47th Sts | W |
| **Herald Square** | Ave of the Americas | W 34th & 35th Sts | W |
| **Grand Army Pl** | Central Park South | 5th Ave | NW |
| **City Hall** | Broadway | Murray & Warren Sts | E |
| **City Hall** | Centre St | Chambers St | SW |

All PSSs shall be kept as small as possible consistent with their function.

The maximum area of each Computer Information Terminal shall be 16 square feet. The maximum length shall be 4 feet and the maximum width shall be 4 feet. A Computer Information Terminal may include a roof overhang extending no more than 2 feet beyond the maximum footprint on one side of the structure, at a minimum height of 7.5 feet above the sidewalk. No Computer Information Terminal may exceed 9 feet in height.

The maximum area of each Litter and/or Recycling Bin shall be 6.25 square feet. The maximum length shall be 2.5 feet and the maximum width shall be 2.5 feet. No Litter and/or Recycling Bin may exceed 4 feet in height. In addition, the maximum size and weight of each Litter and/or Recycling Bin shall be subject to the approval of the Department of Sanitation. The Franchisee shall not be responsible for the collection of refuse from free-standing Litter and/or Recycling Bins installed as Public Service Structures.

## F.    REVENUE OPPORTUNITIES

The primary source of revenue to the Franchisee will be the sale of advertising space on the Franchise Structures. Advertising shall be permitted on the exterior of the structures subject to the conditions specified below. The total maximum advertising area shall be 55 square feet on Bus Stop Shelters and 82.5 square feet on APTs and Newsstands. Advertising on PSSs shall be prohibited except to the extent that the name or logo of a sponsoring entity, not to exceed 2 square feet, shall be permitted. The maximum advertising height shall be 7 feet on Bus Stop Shelters and 9 feet on APTs and Newsstands. However, the maximum height of advertising on pillar structures shall be 12 feet. No advertising shall be permitted on the exterior of Computer Information Terminals or Litter and/or Recycling Bins except for the name or logo as set forth above. (For informational purposes a summary chart is provided as Appendix 2.)

NYC-OTR005108

Each Bus Stop Shelter may have a maximum of 2 advertising panels, which shall be located only on Shelter end panels (i.e., panels which are aligned perpendicular to the curb). On Bus Stop Shelters greater than 25 feet in length, the Department may increase the maximum advertising dimensions and number of panels by up to two additional panels of a maximum of 27.5 square feet each, provided these panels are located on Shelter end panels, or one additional panel of a maximum of 27.5 square feet. This increase shall apply to no more than 10% of the total number of Franchise Structures citywide, and to no more than 20% of the total number of Franchise Structures in any one community district.

Electronic media (such as "zippers") will be permitted only on a case by case basis and, except for backlighting of printed posters, will be subject to the applicable zoning regulations for property adjacent to the site. Audio advertising will not be permitted. However, an audio component used in connection with a Computer Information Terminal may be permitted in the sole discretion of the Department.

The display or placement of tobacco advertising shall be prohibited. The advertising of alcoholic beverages shall not be permitted within 250 feet of any school, day care center or house of worship. Any type of advertising which is false or misleading, which promotes unlawful or illegal goods, services or activities, or which is otherwise unlawful or obscene as determined by the Department, including but not limited to advertising that constitutes the public display of offensive sexual material in violation of Penal Law Section 245.11, shall also be prohibited. Any such prohibited material displayed or placed shall be immediately removed by the Franchisee upon notice from the Department.

There shall be a requirement for providing free space for public service advertisements on the Franchise Structures. Said space shall represent a minimum of 2.5% of the total number of advertising panels and a minimum of 2.5% of total advertising square footage. Such public service advertisements shall be equitably distributed among the various types of Franchise Structures.

Proposers should be aware that the City is considering entering into "marketing partnership" agreements designating specific brands as the official products of the City of New York. If this occurs, the Franchisee, working with the City's marketing representative, may be required to give the City's marketing partners priority in the placement and scheduling of advertising. Marketing partners will be required to pay the market rate for any such advertising.

Consistent with State Law, the Franchisee will also be permitted to charge a minimal fee for the use of the APTs. Proposers are invited to submit proposals for other sources of revenue such as access charges or on-line advertising at Computer Information Terminals. Any such charge or other consideration will be subject to the approval of the Department.

16

NYC-OTR005109

## G.    SITE SELECTION AND CONSULTATION

Sites for Franchise Structures will be selected by the Department in accordance with the criteria specified in Appendix 3.

The Department will adhere to the following consultative process in designating new sites:

1.    The Department will request recommendations for new sites from Council Members, Borough Presidents, Community Boards, Business Improvement Districts (BIDs), the MTA New York City Transit (for Bus Stop Shelters only), and newspaper publishers and licensed newsstand operators or operators holding a valid concession for the operation of a newsstand from the City of New York (for Newsstands only).

2.    The Department will review these recommendations and any other suggested sites for compliance with the siting criteria (Appendix 3) and additionally consider the following factors:

>    Bus Stop Shelters:  Ridership figures, transfer points, location of existing shelters, geographic distribution throughout the five boroughs, sidewalk activity, presence of other Franchise Structures on the sidewalk

>    Newsstands:  Economic viability, replacement of existing structures, geographic distribution, sidewalk activity, presence of other Franchise Structures on the sidewalk

>    APTs:  Availability of water and sewer service, public convenience, enhancement of commercial and tourist areas, sites recommended by the Department of Parks and Recreation, geographic distribution, sidewalk activity, presence of other Franchise Structures on the sidewalk

>    Public Service Structures:  Sidewalk activity, geographic distribution, presence of other Franchise Structures on the sidewalk

3.    The Department will distribute lists of proposed sites determined by the Department to be desirable for a 60-day comment period to Council Members, Borough Presidents, Community Boards, other appropriate City agencies, BIDs, the MTA New York City Transit (for Bus Stop Shelters only), newspaper publishers (for Newsstands only), adjacent property owners (for Newsstands and APTs only) and any other interested party, including Proposers, if they so request.

4.    After consideration of the comments and selection of a Franchisee the Department will choose final sites and notify Council Members, Borough

NYC-OTR005110

Presidents, Community Boards, other appropriate City agencies, the Franchisee, and any other person who commented on the proposed sites.

At least once each year, the Department will request from all Community Boards, BIDs, Council Members, Borough Presidents, the Franchisee and (for purposes of siting Newsstand structures) publishers of major daily New York City newspapers a prioritized list of locations for the placement or removal of Franchise Structures.

The Department may direct the Franchisee to replace Bus Stop Shelters, Newsstands and PSSs at existing sites, independent of the above consultative process.

## H.   RESPONSE TO COMPLAINTS

Any complaints the Department receives concerning the siting, installation or requested removal of the Franchise Structures shall be responded to by the Department. All Bus Stop Shelters, Automatic Public Toilets and Newsstands shall contain a conspicuously posted telephone number of the office within the Department to which the public may direct complaints and comments. The Franchisee shall cooperate with the Department in timely responding to any such complaints.

18

NYC-OTR005111

of each of the scale models described in Section 3.3, and only one original and two copies of the "Required City Documents" described in Section 6.

3.    **Length of Proposal**

Proposers are advised that while there is no page limitation for Proposals, discretion should be used.

4.    **Labeling**

The outer envelope enclosing any materials submitted in response to this RFP shall be addressed as follows:     From:          Proposer Name/Address

| | |
|---|---|
| To: | New York City Department of Transportation |
| Contracts Division | 40 Worth Street, Room 1232A |
| | New York, NY  10013 |
| RFP Title: | Request for Proposals for a Franchise to install, operate and maintain Bus Stop Shelters, Self-Cleaning Automatic Public Toilets and Public Service Structures and to install and maintain Newsstands in the boroughs of the Bronx, Brooklyn, Manhattan, Queens and Staten Island |
| PIN: | 84197MB039AD |

Proposal Due Date and Time:     March 21, 1997, 2:00 p.m.

5.    **Delivery Services**

Proposers shall be responsible for informing any commercial delivery service, if used, of all delivery requirements and for ensuring that the information required in item 4, above, appears on the outer envelope used by such service.

6.    **Proposal Package Checklist**

Appendix 8, Proposal Package Checklist, which itemizes each component/document that is to be submitted as part of the Proposal Package, has been attached for the Proposer's convenience.

C.    **PROPOSAL EVALUATION PROCEDURES1.  Evaluation Committee**
    1.1       Proposals shall be evaluated by an Evaluation Committee which shall be comprised of a minimum of three (3) persons qualified to evaluate the components of this solicitation.  Members of the Committee will likely include representatives of the Departments of Transportation, Design and Construction, and City Planning.  The Evaluation Committee also will have technical advisors who may  include representatives of other public entities such as the Art Commission, the Mayor's Office for People with Disabilities, the Landmarks Preservation Commission, the Department of Parks and Recreation, the Department of Environmental Protection, the Department of Buildings, the Department of Information Technology and Telecommunications, the

23

NYC-OTR005116

Department of Homeless Services, the Police Department, the Fire Department and the MTA New York City Transit.

1.2    In addition, the City will present some or all of the design proposals received pursuant to this RFP to a Design Advisory Committee which will include representatives of civic organizations with expertise in architecture and urban design, the real estate industry, the advertising industry, the newspaper publishing and newsstand industries, and the Business Improvement Districts. Any recommendations made by this Design Advisory Committee will be reviewed and may be considered by members of the Evaluation Committee.

1.3    Rating sheets or other written evaluation forms shall be used to evaluate Proposals and shall be signed and dated by all members of the Evaluation Committee reviewing the Proposal.  Initial ratings may be amended, and the amended ratings shall be recorded on amended rating sheets.  Copies of all initial and amended rating sheets or evaluation forms shall be maintained as part of the Department's files.

## 2.    **Evaluation Procedures**

Proposals received in response to this RFP will be reviewed and evaluated in five phases, in accordance with the following procedures.  Phase 3 will be weighted most heavily, followed by Phase 2, followed by Phase 4.  Phase 1 will be conducted on a Pass/Fail basis.  If interviews, presentations and/or demonstrations are conducted in accordance with Section IV, L, of this RFP, the Evaluation Committee may use any information from those interviews, presentations and/or demonstrations in evaluating a Proposal.

### 2.1    **Phase 1:  Responsiveness Determination**

The Department's Auditor General will review each Proposal to ensure that it includes and addresses each item or document required by this RFP.  Failure to provide a complete responsive submission may result in the Proposal receiving no further review.

### 2.2    **Phase 2:  Assessment of Proposer's Ability to Provide Required Services**

Each Proposal that is deemed responsive by the Auditor General will be forwarded to the Evaluation Committee for its review.  The Committee will examine and evaluate each Proposer's business organization, financial fitness and experience with street furniture and the sale and maintenance of outdoor advertising in urban environments.  Each Proposer will receive a numerical score after this Phase.  The Committee will recommend the three Proposers receiving the highest scores, plus any Proposer whose score is within 5% of the lowest of these three scores, for further review and consideration by the Evaluation

NYC-OTR005117

Committee. All Proposals with scores lower than those satisfying the criteria above will receive no further review.

### 2.3   Phase 3: Assessment of the Technical Proposals

The Committee will examine and evaluate the technical proposals of each of the Proposers selected in accordance with Phase 2 of the Evaluation Procedures. The factors to be considered by the Committee in Phase 3 include but are not limited to: the Proposer's plans to fulfill and, if applicable, exceed the terms and conditions of the Franchise as described in Section II of this RFP; any commitments to improve design, technology and/or services during the term of the Franchise Contract; the Proposer's plans pertaining to design, manufacture, installation, maintenance and operation of each of the types of Franchise Structures; the Proposer's plans for administering the Franchise, including the Proposer's computerized inventory and information sharing system; and the Proposer's plans for marketing the Franchise Structures and the advertising thereon.   Each Proposer will receive a numerical score after this Phase.

### 2.4   Phase 4: Assessment of the Compensation Package

The Committee will review and evaluate the compensation to be paid to the City proposed by each Proposer.  Each Proposer will receive a numerical score after this Phase.

### 2.5   Phase 5: Final Selection

The Committee will total all scores derived from Phases 2, 3 and 4, apply any applicable bonus points, and recommend one or more Proposers who may be invited to enter into negotiations with the City for Best and Final Offers for the Franchise.

**3.   Evaluation Criteria** The Evaluation Committee will review and evaluate Proposals according to the following criteria, which are listed in relative weight order for each phase:       **3.1   Phase 1**

Proposers will either pass or fail this Phase, based on whether or not their Proposals are responsive to the RFP.

### 3.2   Phase 2

The following evaluation criteria will be applied:

a)  The Proposer's business integrity and financial soundness, including without limitation adequate access to sources of capital and operating funds and the demonstrated ability to maintain books and records adequately.

NYC-OTR005118

b) The Proposer's experience and demonstrated ability in the design, installation, operation and maintenance of Franchise Structures in an urban environment.

c) The Proposer's experience in the sale and maintenance of outdoor advertisements in an urban environment.

d) The skill and capabilities of the Proposer's management, technical staff and field personnel.

### 3.3    Phase 3

The following evaluation criteria will be applied:

a) The designs of the Franchise Structures, including functional efficiency, aesthetics, security, durability, adaptability for various built environments around the City and accommodation for people with disabilities.

b) The Proposer's plans for installing, maintaining and operating the Franchise Structures.

c) The Proposer's plan for marketing the Franchise Structures and the advertising thereon, including without limitation attention to borough and neighborhood needs and the consideration of both local and national advertisers.

d) The Proposer's plans for administering the Franchise, including the allocation of resources (i.e., staff, materials, equipment, administrative overhead, etc.) for providing each element of the Scope of Services described in Section II of the RFP.

e) The quality and practicality of any proposed Public Service Structures.

f) The Proposer's operational plan to meet or exceed the build-out schedule specified in the RFP.

g) The adequacy of the Proposer's computerized information sharing system.

h) The Proposer's ability to maintain the property of the City in good condition throughout the term of the Franchise.

i) The Proposer's commitments to improve design, technology, and/or services during the term of the Franchise Contract.

In addition, a preference shall be granted to any Proposal which commits to manufacture and assemble the Franchise Structures in the City of New York in accordance with Section III, A, 3.1 of this RFP; to any Proposal which commits to manufacture and assemble the Franchise Structures in the United States of America in accordance with Section III, A, 3.1 of this RFP; and to any Proposal which commits to using an independent power source which provides a viable alternative to connecting to the local utility by underground conduit. These preferences will be granted in the form of bonus points to be applied to each qualifying Proposer's numerical score from this Phase.

### 3.4    Phase 4

26

NYC-OTR005119

The following evaluation criterion will be applied:

The adequacy of the proposed compensation to be paid to the City.**4.**
**Prototype Structures**

Proposers should be aware that prior to awarding the Franchise Contract, the Department will require the selected Proposer to provide and install prototypes of each Franchise Structure proposed at a location within the City of New York which will be designated by the Department.  Failure to provide prototype structures which meet with the approval of the Department shall be grounds for the Department to select another Proposer.

27

NYC-OTR005120

**APPENDIX 2**
**Summary Chart: Dimensions and Clearances**
**(For Informational Purposes Only)**

| | Clear Path | Curb setback | Maximum Size | | | | Maximum Advertising | |
| | | | Area | Length | Width | Height | Area | Height |
|---|---|---|---|---|---|---|---|---|
| Shelter | 7 ft | 3 ft | 150 sq ft | 30 ft | 5 ft | 9 ft | 55 sq ft | 7 ft |
| APT | 8 ft | 1.5 ft | 78 sq ft | 12.5 ft | 8 ft | 12 ft | 82.5 sq ft | 9 ft |
| Pillar | 8 ft | 1.5 ft | | 8 ft | 8 ft | 14 ft | 82.5 sq ft | 12 ft |
| Newsstand | 9.5 ft | 1.5 ft | 72 sq ft | 14 ft | 6.5 ft | 9 ft | 82.5 sq ft | 9 ft |
| Pillar | 9.5 ft | 1.5 ft | | 6.5 ft | 6.5 ft | 14 ft | 82.5 sq ft | 12 ft |
| Computer Terminal | 9.5 ft | 1.5 ft | 16 sq ft | 4 ft | 4 ft | 9 ft | None* | None* |
| Litter/Recycling Bin | 9.5 ft | 1.5 ft | 6.25 sq ft | 2.5 ft | 2.5 ft | 4 ft | None* | None* |

* The name or logo of a sponsoring entity, covering an area not to exceed 2 square feet, shall be permitted.

43

NYC-OTR005136

**APPENDIX 3**
**Siting Criteria**

The general provisions contained in the first section of these criteria apply to all Franchise Structures. Additional requirements applying to particular types of structures are stated in the sections that follow. These additional requirements are designed to accommodate differences in the structures' function, appearance and use and to ensure appropriate and consistent locational opportunities.

**A.    General Provisions**

1.    Clear Path. All Franchise Structures shall be installed so as to allow a straight unobstructed path ("clear path") for pedestrian circulation on the sidewalk. The dimensions of the clear path for each type of structure are specified in the subsequent sections. No grates or cellar doors shall be included as a part of the clear path directly in front of or behind a Franchise Structure.

2.    Sight Lines. The placement of the Franchise Structures shall not interfere with pedestrian or motorist sight lines necessary for traffic safety.

3.    Minimum Distance Requirements. Unless otherwise stated, distances shall be measured between the nearest points, viewed in plan, of the Franchise Structure and the specified object or element. Where a distance is required to be measured parallel to the curb line, the measurement shall be taken between the two lines perpendicular to the curb line, one touching the Franchise Structure and the other touching the specified object or element, that are closest to each other.

    a)    The following minimum distances shall be required between the Franchise Structure and the specified element or object:

        i)    Fifteen feet, measured parallel to the curb line, from: bus stop shelters; automatic public toilets; newsstands; computer information kiosks; enclosed or unenclosed sidewalk cafes; subway entrances or exits.

        ii)    Ten feet from: Fire hydrants; standpipes; Siamese connections; driveways (which distances must also meet the Department's safety and operational requirements); building lines extended at the intersection of two streets, in accordance with Executive Order No. 22 of 1995 (see Figure 1).

        iii)    Five feet from: The trunk of any tree; canopies; information kiosks.

NYC-OTR005138

iv)    Three feet from: Street lights and traffic signal poles.

v)    Two feet from: Ventilation or other grills; manholes; access plates; street signs; parking meters; fixed litter baskets; tree pits; valve boxes; telephones; cellar doors; mailboxes.

vi)    One and one-half feet from the curb of any street, except for Bus Stop Shelters (see below).

b)    In addition to the above distance requirements, for any Franchise Structure where access for the public is provided from a side of the structure other than that adjacent to the clear path, the following minimum distances shall be required between each such side of the Franchise Structure and the specified element or object:

i)    Five feet from any above-ground structure (e.g., street lights, traffic signal poles, street signs, parking meters, fixed litter baskets, telephones, mail boxes)

ii)    Three feet from any element or object that is flush with the sidewalk (e.g., ventilation or other grills, manholes, access plates, tree pits, valve boxes)

c)    No Franchise Structure may be installed directly in front of a building entrance or exit without written permission from the abutting property owner. No Franchise Structure shall be installed within 5 feet (measured parallel to the curb line) of a building entrance except where the Department determines that this requirement cannot be reasonably met.

d)    No Franchise Structure may be installed within 3 feet of the property line of a residential or commercial structure without written permission from the abutting property owner.

e)    No Franchise Structure may be located under a fire escape.

f)    Except for Bus Stop Shelters, no Franchise Structure may be located within a bus stop zone or a taxi stand.

4.    <u>Vaults</u>. Where a vault is present, the Franchisee shall submit certification from an engineer that the installation of the Franchise Structure will in no way damage the vault.

5.    <u>Electrical Sources</u>. Franchise Structures should be as close as possible, subject to all other distance requirements, to the source of electricity, if required for the operation of the Franchise Structure. Such Franchise structures may not be sited farther than 150 feet from the nearest available electric power source, unless otherwise directed by the City. The Franchisee is prohibited from using a traffic signal or Con Edison type

NYC-OTR005139

#12 post, or any power source across a major or protected roadway, unless authorized to do so by the Department.

6.   <u>Landmarks and Historic Districts</u>.  The placement of the Franchise Structures will be subject to the review and approval of the Landmarks Preservation Commission to the extent required by law.



**Figure 1.  Clear Corner Policy (Executive Order No. 22 of 1995)**

**B.   Bus Stop Shelters**

1.   <u>Clear Path</u>.  In general, Bus Stop Shelters shall be installed to allow a minimum clear path of 7 feet in width.  However, a reduced clear path may be permitted by the Department if necessary to allow the installation of a Bus Stop Shelter.  In no case shall such clear path be less than 5 feet in width.  The clear path for a Bus Stop Shelter may include the area covered by the Bus Stop Shelter's roof overhang, provided such overhang is a minimum of 7 and 1/2 feet high.

2.   <u>Clearance from Curb</u>.  All Bus Stop Shelters shall be installed to allow a straight unobstructed path a minimum of 3 feet in width between the Shelter and the curb.  Viewed in plan, the roof of a Bus Stop Shelter including any overhang shall be set back from the curb line a minimum distance of 2 feet.

3.   <u>Relation to the Bus Stop</u>

a)    All Bus Stop Shelters shall be located as close as possible to the head of the bus stop, but no less than 10 feet from the head of the

47

NYC-OTR005140

bus stop at locations where parking is permitted immediately adjacent to the head of the bus stop.

b) If a Bus Stop Shelter has only one enclosed end, it should be situated toward the head of the bus stop.

## C. Automatic Public Toilets, Newsstands, Public Service Structures

1. Clear Path

a) All APTs shall be installed to allow a minimum clear path of 8 feet in width.

b) All Newsstands and PSSs shall be installed to allow a minimum clear path of 9 and 1/2 feet in width.

c) The clear path for a Newsstand or a Computer Information Terminal may include an area up to 3 feet in width covered by the structure's roof overhang, provided such overhang is at a minimum height of 7.5 feet above the sidewalk.

d) The clear path shall extend 15 feet to each side of the Franchise Structure.

e) Franchise Structures on sidewalks shall be located either within 2 and 1/2 feet of the curb line or within 1 foot of the building line.

2. Minimum Distance Requirements. A minimum 15-foot distance, measured parallel to the curb, is required upon installation between the Franchise Structure and:

a) Entrances to houses of worship.

b) Any entrance to the elevator lobby of a building having non-residential uses above the street-level floor and having 16 floors in height or more with a frontage of at least 100 feet on narrow streets or 140 feet on wide streets (as defined in Section 12-10 of the New York City Zoning Resolution).

c) Any entrance to the lobby of a hotel.

d) Any entrance to a bank from the street that serves the public, including ATM entrances.

e) Entrances to theaters and box offices.

## D. Additional Requirements for Automatic Public Toilets

1. Permissible Locations. APTs shall be located only:

48

NYC-OTR005141

a) On wide streets, as defined in Section 12-10 of the New York City Zoning Resolution, only in commercial, manufacturing or mixed use districts.

b) On sidewalks or plazas adjacent to property owned or leased by a government agency or public authority or under the jurisdiction of the Economic Development Corporation.

c) On traffic islands or public places bounded on all sides by mapped streets under the jurisdiction of the Department.

d) On or adjacent to parks property or playgrounds, subject to the approval of the Department of Parks and Recreation.

2. Utilities. The siting of APTs shall be subject to consideration of the economic feasibility of making necessary utility connections. All APT sites are subject to the additional approval of the Department of Environmental Protection.

## E.    Special Circumstances

The Commissioner may waive or modify the above criteria in specific cases, except where prohibited by law, if, in his or her opinion, such waiver or modification is consistent with the public health, safety and general welfare. No such waiver or modification shall be granted without prior consultation with the affected Council Member, Borough President, and Community Board. Similarly, the Department may refrain from siting a Franchise Structure at a particular location which in the opinion of the Commissioner would result in an over-concentration of Franchise Structures.

Notwithstanding anything contained herein, the siting of Franchise Structures shall be subject to any applicable requirements of the New York City Administrative Code. Notwithstanding anything contained herein, litter bins may be replaced at their existing locations in accordance with the Department of Sanitation's Operation Order for the placement of litter baskets and the Mayor's Clear Corner Policy (Exec. Order No. 22 of 1995).

NYC-OTR005142

A LOCAL LAW

To amend the administrative code of the city of
New York, in relation to newsstands and to
repeal the first paragraph of subdivision h of
section 20-231 of such code

## Be it enacted by the Council as follows:

Section 1.    Declaration of legislative findings and
intent.  The council hereby finds and declares that the present
procedures for the licensing of newsstands are inefficient and do
not operate well in conjunction with procedures for the placement
of other structures and objects on the City's sidewalks.   In
addition, the current method of regulating newsstands does not
provide sufficient controls to address all of the concerns they
present, including public safety and pedestrian traffic.  A new
approach needs to be formulated so that newsstands can adequately
serve the public without, among other things, overcrowding the
City's sidewalks and threatening pedestrian safety.  An interagency
Streetscape Task Force chaired by the former Deputy Mayor for
Planning and Community Relations, who is currently the Deputy Mayor
for Economic Development and Planning, has examined the issue of
structures and objects on the City's sidewalks and has developed a
comprehensive plan to improve their crowded and often unsightly
appearance.  One of the key provisions of this plan is for the
Department of Transportation to offer a single franchise for the
design, construction, installation, and maintenance of a variety of
structures and objects on the City's sidewalks, including
newsstands, at no cost to the City (the "coordinated street
furniture franchise").  The Department of Transportation would

determine, pursuant to siting criteria and a consultative process with elected officials and community boards, and in consultation with the franchisee, the order in which and location where such newsstands would be built by such franchisee. The franchisee would be able to sell advertising space on such newsstands, and the City would receive a share of the gross revenue generated by such advertising or a fixed, guaranteed minimum annual amount, whichever is greater.

As for the operation of new newsstand sites built by such franchisee, a competitive system would be used to select the operator thereof. In this competitive system, preferences will be granted for any site to all persons who are newsstand licensees as of the effective date of this local law and all persons who currently receive legislative preferences for the grant of newsstand licenses pursuant to New York City Administrative Code § 20-230(a): disabled veterans; persons with disabilities as currently defined by the department of consumer affairs; veterans who are not disabled; and persons over the age of sixty-two. Although persons who fall into categories receiving preferences pursuant to New York City Administrative Code § 20-230(a) will continue to receive preferences, preferences will be granted to current newsstand licensees only until the date five years from the date on which a competitive system is used to select an operator for the first newsstand built by the selected franchisee or until the date on which such licensee successfully bids for operation of a newsstand built by such selected franchisee, whichever occurs first.

-2-

Exhibit P

THE CITY COUNCIL OF THE CITY OF NEW YORK
RESOLUTION NO. 1004
L.U. NO. 226-A

**CITYWIDE**

**20035026 GFY**

**Resolution authorizing the Department of Transportation to grant nonexclusive franchises for the installation, operation, and maintenance of coordinated franchise structures.**

**By City Council Member(s) Katz and Avella (by request of the Mayor):**

Material to be added is <u>underlined</u>; material to be deleted is in [brackets].

**WHEREAS,** by Executive Order No. 25, dated August 23, 1995, the Mayor has designated the Department of Transportation ("DOT") as the responsible agency for the granting of franchises for bus stop shelters ("BSSs"), self-cleaning automatic public toilets ("APTs"), newsstand structures ("NSs"), and any combination thereof; and

**WHEREAS,** the Executive Order further provides that franchises authorized may include additional public service structures ("PSSs") <u>that shall include and be limited to trash receptacles, multi-rack news racks and information/computer kiosks</u>; and

**WHEREAS,** pursuant to Section 363 of Chapter 14 of the Charter of the City of New York ("Charter"), the Commissioner of Transportation ("Commissioner") has made the initial determination of the need for a nonexclusive combined franchise for BSSs, APTs, NSs, and PSSs in the City of New York ("City") and for allowing the placement of advertising thereon. Such BSSs, APTs, NSs, and PSSs shall hereinafter be known collectively as the "franchise structures;" and

NYC-OTR007020

**WHEREAS**, the City Council of the City of New York ("City Council") has determined that the granting of such franchises will be in the public interest by enhancing the health, welfare, convenience, and safety of the public;

**NOW THEREFORE, BE IT RESOLVED,**

**FIRST**, that the City Council hereby authorizes DOT to grant nonexclusive franchises that utilize the inalienable property of the City for installing, operating, and maintaining franchise structures in the five Boroughs of the City and that allow the placement of advertising thereon. All franchises granted pursuant to this resolution shall be subject to the approval of the Franchise and Concession Review Committee ("FCRC") and the separate and additional approval of the Mayor. For purposes of this resolution, "inalienable property of the City" shall mean the property designated in Section 383 of the Charter. The authorization to grant franchises pursuant to this resolution shall expire on the fifth anniversary of the date on which this resolution is adopted by the City Council ("Expiration Date"). No franchise shall be granted pursuant to this resolution by DOT, nor approved by the FCRC or the Mayor, after the Expiration Date.

**SECOND**, that prior to the granting of any such franchise, one or more Request(s) for Proposals ("RFP") or other solicitation shall be issued by DOT for the franchise structures. Prior to issuing any such RFP or other solicitation, all necessary environmental and land use review shall be conducted in accordance with the New York State Environmental Quality Review Act ("SEQRA"), the regulations set forth in Volume 6 of the New York Code of Rules and Regulations, Section 617.00 *et seq.*, the City Environmental Quality Review ("CEQR") Rules of Procedure of 1991, Executive Order No. 91 of 1977, as amended, and Sections 197-c and 197-d of the Charter.

**THIRD**, that DOT shall develop siting criteria for the franchise structures be included in any RFP or other solicitation that shall address, but not be limited to, the following matters:

NYC-OTR007021

1.    adequate sidewalk clearance to assure reasonable pedestrian flow;

2.    proximity to other street furniture, sidewalk obstructions, and franchise structures;

3.    permitted uses on adjacent zoning lots;

4.    visual impact on vehicular traffic;

5.    impact on designated landmarks and historic districts;

6.    proximity to required water, sewer, and electrical connections; and

7.    relative location of curb cuts.

**FOURTH,** that DOT shall develop design criteria for the franchise structures to be included in any RFP or other solicitation that shall address, but not be limited to, the following matters:

1.    a requirement that all new franchise structures reflect a citywide coordinated design scheme;

2.    a requirement that the design scheme take into account compatibility with special contexts, such as historic districts, including the ability to incorporate site specific design components;

3.    the maximum envelope of the franchise structures;

4.    the maximum number and area of the advertising panels on each type of franchise structure;

NYC-OTR007022

5.     the number and placement of side enclosures for the BSSs so as to provide meaningful protection from the elements;

6.     possible variation of footprints of the franchise structures as related to service needs; [and]

7.     7.     seating for the BSSs[.] ; and

8.     interior design criteria for newsstands.

**FIFTH**, that DOT shall develop a process to be included in any RFP or other solicitation for consultation with City Council members and Community Boards regarding the selecting of sites for the installation of franchise structures and for responding to complaints[.] and requests for removal,  provided, however, that a site for installation of an APT shall be subject to the approval of the Mayor and the Speaker of the Council.

**SIXTH**, that in reviewing and evaluating responses to any such RFP or other solicitation, DOT shall apply the evaluation criteria listed below uniformly to all such responses and shall review and evaluate all such responses within the same time period.  The evaluation criteria to be used in evaluating the responses to such an RFP or other solicitation shall include, but not be limited to, the following:

1.     the design of the franchise structures, including security, aesthetic and functional aspects, accommodation of persons with disabilities, and design flexibility so as to enable the franchise structures to relate to various built environments around the city;

2.     an assessment of the fitness of the respondent with regard to:

NYC-OTR007023

a.      experience and demonstrated ability in the design, installation, operation, and maintenance of franchise structures in an urban environment;

b.      experience in the sale and maintenance of outdoor advertisements in an urban environment;

c.      skill and capabilities of management, technical staff, and field personnel; and

d.      business integrity and financial soundness, including, without limitation, adequate access to sources of capital and operating funds, and the demonstrated ability to maintain books and records adequately;

3.      the adequacy of the proposed compensation to be paid to the City; provided, however, that a preference shall be granted to proposals that provide a greater compensation to the City in the initial period of the agreement provided that the total proposed compensation over the term of the franchise is determined to be in the best financial interest of the City;

4.      the ability of the applicant to maintain the property of the City in good condition throughout the term of the franchise;

5.      whether the place of manufacture and assembly for such franchise structures is in the City of New York, in which case a preference shall be granted to said applicant; and

6.      whether the place of manufacture and assembly for such franchise structures is in the United States of America, but not in the City of New York, in which case a preference shall be granted to said applicant.

NYC-OTR007024

The failure of an applicant to qualify for [either] any of the preferences set forth in evaluation criteria designated three (3), five (5) and six (6) above shall not preclude further review and evaluation of such applicant or the award of a franchise to such applicant.

**SEVENTH,** that DOT shall apply the MacBride principles when granting franchises pursuant to this resolution.

**EIGHTH,** that any franchise granted pursuant to this authorizing resolution shall include the entire City.

**NINTH,** that in the event that any of the franchise structures include newspaper or periodical dispensers, boxes, or racks, such dispensers, boxes, or racks shall be installed, maintained, and removed in accordance with all laws, rules, and regulations adopted by the City of New York.

**TENTH,** that in the event that any of the franchise structures include public pay telephones, such public pay telephones shall be installed, maintained, and removed in accordance with all laws, rules, and regulations adopted by the City of New York. Public pay telephone service in the franchise structures shall be provided only by a person or entity franchised by the City of New York to provide such service.

**ELEVENTH,** that any franchise granted pursuant to this authorizing resolution shall be by written agreement that shall, without limitation, provide that:

    1.    the term of such franchise, including any option(s) to renew, shall not exceed twenty (20) years;

    2.    no direct public subsidy shall be made available to any franchisee;

NYC-OTR007025

3.    the compensation to be paid to the City shall be a percentage of any gross revenues derived by the franchisee as a result of the installation of the franchise structures and the display of advertising thereon, or a guaranteed minimum annual amount, whichever is greater.  Such compensation shall not be considered in any manner in the nature of a tax, but such payments shall be made in addition to any and all taxes of whatever kind or description that are now or at any time hereafter may be required to be paid pursuant to any local law of the City or any law of the State of New York;

4.    a franchise may be terminated or canceled by the Commissioner in the event of the franchisee's failure to comply with the material terms and conditions of the agreement;

5.    there shall be a requirement for providing free space for public service advertisements on the franchise structures.  Said space shall represent a minimum of 2.5% of the total number of advertising panels on the franchise structures. Such public service advertisements shall be equitably distributed among the various types of franchise structures.  DOT shall be responsible for informing all agencies of City government of such free advertising space for public service announcements.  In order to ensure wide and fair distribution of such free advertising space, DOT shall develop a plan for coordinating requests by said agencies for the use of such space[;].  At the request of the City, additional advertising space shall be set aside for other City purposes;

6.    advertising for tobacco products shall be prohibited;

7.    the design and placement of franchise structures shall be subject to the review and approval of the Landmarks Preservation Commission and the Art Commission, to the extent required by law;

NYC-OTR007026

8.    the design and placement of the franchise structures shall not result in an installation that causes the destruction or damage of any part of a [distinctive] sidewalk or historic pavement.  Nothing herein shall preclude the franchisee from installing franchise structures, including utility connections appurtenant thereto, on a [distinctive] sidewalk or historic pavement by any means necessary; provided, however, that prior to such installation, the franchisee shall:

    a.    post a performance bond adequate to protect the adjacent property owner against any loss related to the condition of the [distinctive] sidewalk or historic pavement that may be occasioned by the installation, operation, maintenance, or removal of a franchise structure;

    b.    make a good faith effort to procure sufficient quantities of those materials of which the [distinctive] sidewalk or historic pavement is comprised to repair, replace, or restore it to its original condition;

In the event that the placement of any franchise structure results in damage to a [distinctive] sidewalk or historic pavement, such sidewalk or pavement shall be restored to its original condition at the sole expense of the franchisee using in-kind materials.

9.    the franchisee shall be required to maintain complete and accurate books of account and records in compliance with any and all specific requirements for record keeping, as shall be established by DOT.  Such books and records shall be made available to the City for inspection on demand;

10.    the franchisee shall be required to maintain an office in the City where the above books and records shall be maintained and where the franchisee's accounting, billing, and clerical functions pertaining to the franchise operation shall be performed;

NYC-OTR007027

11.    there shall be provisions containing the agreements required pursuant to paragraph 6 of subdivision (h) of Section 363 of the Charter, relating to collective bargaining and other matters;

12.    there shall be provisions requiring the franchisee to comply with all applicable City laws, regulations, and policies related, but not limited, to employment, purchasing, and investigations;

13.    there shall be provisions to require the franchisee to comply with the applicable provisions of the Americans with Disabilities Act and any additional applicable federal, state, and local laws relating to accessibility for persons with disabilities;

14.    there shall be provisions to restrict the assignment or other transfer of the franchise or portions thereof without the prior written consent of the City and provisions to restrict changes in control of the franchisee without the prior written consent of the City;

15.    the franchisee shall submit to the City's Vendor Information Exchange System ("VENDEX");

16.    the franchisee shall obtain all required permits and comply with all applicable rules of government agencies having jurisdiction over the franchise structures;

17.    the franchisee shall at all times maintain on file with DOT a complete and accurate listing of sites, by borough and community district, at which franchise structures are located;

18.    the franchisee shall establish and maintain prompt and efficient consumer complaint handling procedures including, but not limited to, the posting of a

NYC-OTR007028

complaint phone number and instructions for filing a complaint on all franchise structures;

19.    there shall be one or more security funds established to ensure the performance of the franchisee's obligations under the agreement;

20.    there shall be adequate insurance and indemnification requirements to protect the interests of the public and the City;

21.    there shall be other remedies, including liquidated damages, to protect the City's interests in the event of a franchisee's failure to comply with the terms and conditions of the agreement;

22.    there shall be provisions to ensure quality workmanship and construction methods, and to encourage state-of-the-art building materials to be integrated into the franchise structures as they become available;

23.    there shall be provisions for preventive maintenance, prompt repairs, and the removal of snow and ice, and provisions for the assessment of monetary damages if the franchisee fails to so maintain, repair, or remove;

24.    there shall be provisions for inspecting and cleaning of the franchise structures and for the prompt removal of graffiti; such inspecting, cleaning, and graffiti removal shall be done not less than twice a week;

25.    there shall be provisions preserving the right of the City to perform public works or improvements in and around those areas occupied by the franchise structures;

NYC-OTR007029

26.    the City shall have the right to inspect the franchise structures and to order compliance with installation, maintenance, operational, and repair requirements set forth in the agreement;

27.    there shall be provisions to minimize the extent to which the [public] use of the streets of the City is disrupted in connection with the construction, installation, operation, maintenance, repair, removal, or deactivation of the franchise structures;

28.    all franchisees shall comply with all applicable sections of the building, plumbing, and electrical codes of the City of New York, and where the work to be done in connection with the installation, operation, maintenance, repair, removal, or deactivation of the franchise structures requires that such work be performed by a plumber or electrician, the franchisee shall employ and utilize only licensed plumbers and/or electricians;

29.    the franchisee, at the request of the City, shall be required to remove franchise structures that interfere with the construction, maintenance, or repairs of public utilities, public works, or public improvements, or that the City otherwise deems to be inappropriate at a particular location.  At the request of the City, franchise structures so removed shall be reinstalled when construction, maintenance, or repairs are completed, or shall be relocated to sites approved by the City[;].  All such removals, reinstallations, and/or relocations shall be at the sole expense of the franchisee.

30.    the franchisee shall have the following specific obligations regarding the BSSs:

a.    the design of the BSSs must include some form of passenger seating, such as a bench that may or may not be installed in every BSS, but which the City may require to be installed;

NYC-OTR007030

b.      the franchisee shall be required to provide an area or areas on the BSSs for bus route maps, street maps, bus stop name identification, Guide-a-Ride canisters and other information, and shall be required to produce and install such signage as the City requests;

[c.      the franchisee, at the request of the City, shall be required to remove, replace, and relocate BSSs;]

31.    the franchisee shall have the following specific obligations regarding the APTs:

a.      the maximum charge to the public for use of the APTs shall be a material term of the agreement to be approved by the FCRC;

b.      the APTs must be open to the public at least between 8:00 A.M. and 8:00 P.M. daily;

32.    the franchisee shall have the following specific obligations regarding the NSs:

a.      the franchisee shall be required to cooperate with the operator of the newsstand regarding maintenance and repair of the newsstand structures[;] while the operation of the newsstand shall be solely the responsibility of the newsstand operator who shall be subject to all applicable laws, rules, and regulations governing newsstands;

b.      the franchisee shall be responsible for all installation and costs associated with any necessary electric and telephone hook-ups to the newsstand structures;

c.      the franchisee shall be responsible for arranging and paying for the installation of any infrastructure required by the appropriate utility to establish a separate account for the newsstand operator's usage of electricity at the newsstand structure;

33.     the franchisee shall not be responsible for cleaning the interiors of newsstands, for the cost of any telephone or electricity use by a newsstand operator or for any other utility cost which is not necessary to the franchise;

[33.]34.      the franchisee shall have the following specific obligation regarding the PSSs:  the public service provided shall be immediately apparent to the passerby and shall not be obscured physically or visually by advertising.

**TWELFTH**, that DOT shall file with the City Council the following documents:

1.      within fifteen (15) days of issuance, a copy of each RFP or other solicitation issued pursuant to this resolution;

2.      within fifteen (15) days of approval by the Mayor, a copy of the agreement for each franchise granted pursuant to this resolution and any subsequent modification thereof;

3.      on or before July 1 of each year, for the preceding calendar year, a report detailing the revenues received by the City from each franchise granted pursuant to this resolution; and

4.      on or before July 1 of each year, a report detailing the location of each franchise structure installed or removed during the preceding calendar year.

*Adopted.*

NYC-OTR007032

Office of the City Clerk, }
The City of New York,  } ss.:

      I hereby certify that the foregoing is a true copy of a Resolution passed by The Council of The City of New York on August 19, 2003, on file in this office.

City Clerk, Clerk of the Council

NYC-OTR007033

# EXHIBIT Q

# FRANCHISE AGREEMENT

between

## THE CITY OF NEW YORK

and

## CEMUSA, INC.

**Coordinated Street Furniture Franchise**

**Dated: 05/19/06**

2006 - 001096

NYC-OTR006898

# TABLE OF CONTENTS

Page #

SECTION 1        DEFINED TERMS ....................................................................................... 2

SECTION 2        GRANT OF AUTHORITY .......................................................................... 8
2.1.             Term. ........................................................................................................ 8
2.2.             Submissions By Company. ....................................................................... 8
2.3.             Certain Actions by the Company after the Effective Date. .................... 9
2.4.             Nature of Franchise; Effect of Termination. .......................................... 9
                 2.4.1.   Nature of Franchise. ................................................................ 9
                 2.4.2.   Ownership. ............................................................................... 9
                 2.4.3.   Warranties of Title. ............................................................... 12
                 2.4.4.   Permits, Authorizations, Approvals, Consents and Licenses. ... 12
                 2.4.5.   Design of Coordinated Franchise Structures. ...................... 12
                 2.4.6.   Build out and Costs. .............................................................. 14
                 2.4.7.   Effect of Expiration or Termination. .................................... 18
2.5.             Conditions and Limitations on Franchise. ............................................ 18
                 2.5.1.   Not Exclusive. ....................................................................... 18
                 2.5.2.   Sidewalk and Historic Pavement. ........................................ 19
                 2.5.3.   Location of Coordinated Franchise Structures. .................... 19
                 2.5.4.   Removal, Replacement, Relocation, Reinstallation. ............ 20
                 2.5.5.   No Waiver. ............................................................................. 21
                 2.5.6.   No Release. ............................................................................ 21
2.6.             Other Structures. .................................................................................... 21

SECTION 3        SERVICE ................................................................................................. 23
3.1.             Operations. ............................................................................................. 23
                 3.1.1.   Bus Shelters. ......................................................................... 23
                 3.1.2.   APTs. ..................................................................................... 23
                 3.1.3.   PSSs. ...................................................................................... 24
                 3.1.4.   Newsstands. ........................................................................... 24
                 3.1.5.   Other. ..................................................................................... 25
3.2.             Automatic Vehicle Location and Control System. ................................ 26
3.3.             Electronic Inventory and Management Information System and
                 Recordkeeping. ...................................................................................... 27
3.4.             Performance Standards and Corrective Actions. ................................... 28
3.5.             Complaint Handling Procedures. ........................................................... 29
3.6.             Complaint Record Keeping. ................................................................... 30
3.7.             Americans with Disabilities Act. ........................................................... 30
3.8.             No Discrimination. ................................................................................. 30
3.9.             Continuity of Service. ............................................................................ 30

SECTION 4        ADVERTISING ....................................................................................... 30
4.1.             Introduction. ........................................................................................... 30
4.2.             Defined Terms. ....................................................................................... 31
4.3.             Advertising Specifications. .................................................................... 32
                 4.3.1.   Generally. .............................................................................. 32
                 4.3.2.   Dimensions/Specifications. ................................................... 32

NYC-OTR006899

Page #

4.4.        Restrictions. ......................................................................................... 32
    4.4.1.    Prohibitions. ................................................................................ 32
    4.4.2.    Other Media. ............................................................................... 32
    4.4.3.    Viacom Outdoor Agreement. ....................................................... 33
    4.4.4.    Public Service Advertising. ......................................................... 33
    4.4.5.    NYCMDC Advertising. ................................................................ 33
    4.4.6.    New Structures, Return, Other. ................................................... 33
    4.4.7.    Alternative Compensation. ......................................................... 35
    4.4.8.    Olympics. .................................................................................... 35
    4.4.9.    Removal. ..................................................................................... 35
4.5.        Maintenance of Advertising. .................................................................. 35
4.6.        Future Compliance. ............................................................................... 36
4.7.        Change in Local Law. ............................................................................ 36

SECTION 5     CONSTRUCTION AND TECHNICAL REQUIREMENTS ...................37
5.1.        General Requirements. ........................................................................... 37
5.2.        Identification of Coordinated Franchise Structure. .................................. 37
5.3.        Quality. .................................................................................................. 37
5.4.        Structures. .............................................................................................. 37
5.5.        No Obstruction. ...................................................................................... 38
5.6.        Safety Precautions. ................................................................................ 38
5.7.        Power Outages. ...................................................................................... 38

SECTION 6     SECURITY FUND ......................................................................................38
6.1.        General Requirement. ............................................................................. 38
6.2.        Scope of Security Fund. .......................................................................... 39
6.3.        Security Fund Purposes. ......................................................................... 39
6.4.        Withdrawals From or Claims Under the Security Fund. .......................... 39
6.5.        Use. ........................................................................................................ 39
6.6.        Notice of Withdrawals. ........................................................................... 39
6.7.        Replenishment. ....................................................................................... 40
6.8.        Not a Limit on Liability. .......................................................................... 40

SECTION 7 PERFORMANCE BOND AND LETTER OF CREDIT ...........................40
7.1.        General Requirement. ............................................................................. 40
7.2.        Form. ...................................................................................................... 41
7.3.        Scope. ..................................................................................................... 42
7.4.        Letter of Credit Reduction. ..................................................................... 42
7.5.        Drawdown Against the Letter of Credit. .................................................. 42
7.6.        Use. ........................................................................................................ 43
7.7.        Notice of Drawdown. .............................................................................. 43
7.8.        Replenishment. ....................................................................................... 43
7.9.        Not a Limit on Liability. .......................................................................... 44
7.10.       Cancellation Upon Replacement. ............................................................ 44

SECTION 8     EMPLOYMENT AND PURCHASING. ...................................................44
8.1.        Right to Bargain Collectively. ................................................................. 44

- ii -

NYC-OTR006900

Page #

8.2.        Local Opportunities. ................................................................ 45
8.3.        Obligation to Use Domestic and Local Contractors and
            Subcontractors. ..................................................................... 45
8.4.        No Discrimination. ................................................................. 45

SECTION 9    COMPENSATION AND OTHER PAYMENTS ...........................45
9.1.        Defined Terms. ...................................................................... 45
9.2.        Compensation. ....................................................................... 47
9.3.        Advance Payment. .................................................................. 47
9.4.        Alternative Compensation Planning. ........................................ 48
            9.4.1.    Valuation of Alternative Compensation. ..................... 49
            9.4.2.    Exchanging Markets; Less Than 100% Penetration. .......... 50
            9.4.3.    Alternative Compensation Content. ........................... 50
            9.4.4.    No Carryover; No Cash Conversion. .......................... 51
            9.4.5.    Adjustments to Alternative Compensation Under Section 9.2. . 51
9.5.        Payments. .............................................................................. 51
9.6.        Revisions to Franchise Fee. ..................................................... 53
            9.6.1.    PSS. ...................................................................... 53
            9.6.2.    NYCMDC Advertising/Public Service Advertising. ........ 53
            9.6.3.    Scrollers. ............................................................... 53
            9.6.4.    Olympics. ............................................................... 53
9.7.        Credits. .................................................................................. 53
            9.7.1.    Bus Shelters. .......................................................... 53
            9.7.2.    New Bus Shelters. ................................................... 54
            9.7.3.    Newsstands. ........................................................... 54
            9.7.4.    Cash Option. .......................................................... 54
            9.7.5.    Cash or Alternative Compensation Set-Off. ................. 55
            9.7.6.    Inability to Mutually Designate Coordinated Franchise
                      Structures For Reversion. ......................................... 55
            9.7.7.    Absence of Identified Locations. ................................ 55
            9.7.8.    No Default. ............................................................ 55
            9.7.9.    Performance at the Cost of the City. ........................... 55
9.8.        Reports and Records. .............................................................. 56
            9.8.1.    Monthly. ................................................................ 56
            9.8.2.    Quarterly. .............................................................. 56
            9.8.3.    Yearly. .................................................................. 56
            9.8.4.    Third Party Agreements. ........................................... 56
            9.8.5.    Access to Third Party Agreements. ............................. 56
9.9.        Reservation of Rights. ............................................................ 56
9.10.       Other Payments. .................................................................... 56
            9.10.1.   City Incurred Cost. ................................................. 56
            9.10.2.   Future Costs. ......................................................... 57
9.11.       Limitations on Credits or Deductions. ....................................... 57
9.12.       Interest on Late Payments. ...................................................... 58
9.13.       Method of Payment. ............................................................... 58
9.14.       Report Certification. .............................................................. 58
9.15.       Continuing Obligation and Holdover. ........................................ 58

- iii -

NYC-OTR006901

Page #

9.16.     Energy Costs. ................................................................................ 59
9.17.     Amenities. ..................................................................................... 59

SECTION 10     OVERSIGHT AND REGULATION ...................................... 59
10.1.     Confidentiality. ............................................................................. 59
10.2.     Oversight. ...................................................................................... 59
10.3.     State-of-the-Art. ........................................................................... 60
10.4.     Regulation by City. ....................................................................... 60
10.5.     Office in New York City ............................................................... 60
10.6.     Reports. .......................................................................................... 60
          10.6.1.   Financial Reports. ........................................................... 60
          10.6.2.   Other Reports. ................................................................. 60
          10.6.3.   Guarantor Financials Statements. .................................. 61
10.7.     Books and Reports/Audits. ............................................................ 61
          10.7.1.   Books and Records. ......................................................... 61
          10.7.2.   Right of Inspection. ......................................................... 61
10.8.     Compliance with "Investigations Clause". .................................... 61

SECTION 11     RESTRICTION AGAINST ASSIGNMENT AND OTHER
               TRANSFERS ........................................................................ 62
11.1.     Transfer of Interest. ....................................................................... 62
11.2.     Transfer of Control or Ownership. ................................................. 62
11.3.     Petition. .......................................................................................... 62
11.4.     Consideration of the Petition. ........................................................ 63
11.5.     Permitted Encumbrances. .............................................................. 63
11.6.     Subcontracts. .................................................................................. 63
11.7.     Consent Not a Waiver. .................................................................... 64

SECTION 12     LIABILITY AND INSURANCE .............................................. 64
12.1.     Liability and Indemnity. ................................................................. 64
          12.1.1.   Company. .......................................................................... 64
          12.1.2.   City. ................................................................................... 64
          12.1.3.   No Liability for Public Work, Etc. .................................. 64
          12.1.4.   No Liability for Damages. ............................................... 65
          12.1.5.   Defense of Claim, Etc. ..................................................... 65
          12.1.6.   Intellectual Property Indemnification. ............................ 65
          12.1.7.   No Claims Against Officers, Employees, or Agents. ...... 66
12.2.     Insurance. ....................................................................................... 66
          12.2.1.   Types of Insurance. .......................................................... 66
          12.2.2.   General Requirements for Insurance Policies. ................ 68
          12.2.3.   Proof of Insurance. ........................................................... 69
          12.2.4.   Operations of the Company. ............................................ 69
          12.2.5.   Subcontractor Insurance. ................................................. 70
          12.2.6.   Insurance Notices, Filings, Submissions. ....................... 70
          12.2.7.   Disposal. ............................................................................ 70
          12.2.8.   Adjusted Insurance Coverage. ......................................... 71
          12.2.9.   Other Remedies. ............................................................... 71

NYC-OTR006902

Page #

SECTION 13     DEFAULTS AND REMEDIES; TERMINATION....................................71
13.1.     Defaults. .................................................................................. 71
13.2.     Termination Defaults. ............................................................ 73
13.2.1.   Definition of Termination Default. ...................... 73
13.3.     Expiration and Termination for Reasons Other Than Termination
Default............................................................................................ 76
13.4.     Disposition of System. ........................................................... 77
13.4.1.   Expiration.................................................................. 77
13.4.2.   After Termination Upon Termination Default.......................... 77
13.4.3.   After Termination For Reason Other Than A Termination
Default.......................................................................... 77
13.5.     Effect of Expiration or Termination. ................................... 77
13.6.     Procedures for Transfer After Expiration or Termination. ................... 78
13.7.     Removal Upon Expiration or Termination. ......................... 78
13.7.1.   Removal Procedures. .............................................. 78
13.7.2.   Failure to Commence or Complete Removal............................ 79
13.7.3.   No Condemnation. .................................................. 79
13.7.4.   Other Provisions...................................................... 79

SECTION 14     MISCELLANEOUS ..................................................................79
14.1.     Appendices, Exhibits, Schedules. ........................................ 79
14.2.     Order of Governance.............................................................. 80
14.3.     Coordination. .......................................................................... 80
14.4.     Publicity. .................................................................................. 80
14.5.     Notices. .................................................................................... 80
14.6.     General Representations, Warranties and Covenants of the Company. ... 81
14.6.1.   Organization, Standing and Power. ..................... 81
14.6.2.   Authorization: Non-Contravention. ..................... 81
14.6.3.   Fees. ........................................................................... 82
14.6.4.   Criminal Acts Representation. .............................. 82
14.6.5.   Criminal Acts Covenant......................................... 82
14.6.6.   Relationship with the City. ................................... 83
14.6.7.   Misrepresentation................................................... 83
14.7.     Binding Effect......................................................................... 83
14.8.     Comptroller Rights.................................................................. 83
14.9.     Remedies. ................................................................................ 83
14.10.    No Waiver: Cumulative Remedies. ...................................... 83
14.11.    Partial Invalidity..................................................................... 84
14.12.    Survival. ................................................................................... 84
14.13.    Headings and Construction. .................................................. 84
14.14.    No Subsidy................................................................................ 85
14.15.    No Agency................................................................................. 85
14.16.    Governing Law. ...................................................................... 85
14.17.    Survival of Representations and Warranties........................ 85
14.18.    Claims Under Agreement. ..................................................... 85
14.19.    Modification............................................................................. 86
14.20.    Service of Process................................................................... 86

- v -

NYC-OTR006903

Page #

14.21.      Compliance With Certain City Requirements. ......................................... 86
14.22.      Compliance With Law, Licenses. ............................................................. 86
14.23.      Mitigation. ............................................................................................... 86
14.24.      Force Majeure and Other Excused Failure to Perform. ........................... 86
14.25.      Counterparts. ........................................................................................... 87


APPENDIX A      LIQUIDATED DAMAGES
APPENDIX B      NEW NEWSSTAND COSTS
APPENDIX C      MAINTENANCE, INSPECTION AND REPAIR SCHEDULE
APPENDIX D      ADVERTISING DIMENSIONS/SPECIFICATIONS
APPENDIX E      CERTAIN COMPANY INFORMATION
APPENDIX F      MACBRIDE PRINCIPLES
APPENDIX G      INSTALLATION, REPLACEMENT AND REMOVAL


EXHIBIT A       CITY COUNCIL AUTHORIZING RESOLUTION NP.1004
EXHIBIT B       RFP
EXHIBIT C       PROPOSAL
EXHIBIT D       BAFO
EXHIBIT E       16-123 NYC ADMINISTRATIVE CODE
EXHIBIT F       PERFORMANCE BOND FORM
EXHIBIT G       INVESTIGATIONS CLAUSE
EXHIBIT H       PUBLIC SERVICE ADVERTISING/NYCMDC ADVERTISING
EXHIBIT IA      PRE-BUILDOUT LETTER OF CREDIT
EXHIBIT IB      POST-BUILDOUT LETTER OF CREDIT
EXHIBIT J       GRIMSHAW AGREEMENT
EXHIBIT K       THE SIROKY GROUP INC LICENSE
EXHIBIT L       ESCROW AGREEMENT


SCHEDULE A      EXISTING BUS SHELTERS
SCHEDULE B      EXISTING NEWSSTANDS
SCHEDULE C      GUARANTEED MINIMUM; ALTERNATIVE COMPENSATION
SCHEDULE D      FRANCHISE FEE REVISIONS
SCHEDULE E      INSURANCE
SCHEDULE F      EXCEPTIONS SCHEDULE
SCHEDULE 4.7    CHANGE IN LOCAL LAW
SCHEDULE 7.4    LETTER OF CREDIT REDUCTION
SCHEDULE 9.2    COMPENSATION

NYC-OTR006904

## AGREEMENT

THIS AGREEMENT, executed as of the ___19ᵗʰ___ day of ___May___, 2006 by and between **THE CITY OF NEW YORK** (as defined in Section 1 hereof, the "City") acting by and through its **DEPARTMENT OF TRANSPORTATION** (as defined in Section 1 hereof, "DOT"), having an address at 40 Worth Street, New York, New York 10013, and **CEMUSA, INC.**, having a place of business at 420 Lexington Avenue, Suite 2533, New York, New York 10170 (as defined in Section 1 hereof, the "Company").

## W I T N E S S E T H :

WHEREAS, pursuant to City Council Authorizing Resolution No. 1004 (passed by the New York City Council on August 19, 2003), attached as Exhibit A hereto, the DOT, on behalf of the City, has the authority to grant non-exclusive franchises for the occupation or use of the Inalienable Property of the City (as defined in Section 1 hereof, the "Inalienable Property of the City") for the installation, operation, and maintenance of Bus Shelters, APTs, and PSSs (as each is hereinafter defined) and for the installation and maintenance of Newsstands (as hereinafter defined) (Bus Shelters, APTs, PSSs and Newsstands are collectively referred to herein as "Coordinated Franchise Structures"), including renewals thereof; and

WHEREAS, DOT issued a Request for Proposals dated March 26, 2004, as modified by Addendum I, dated June 11, 2004, Addendum II, dated July 15, 2004, and Addendum III, dated August 18, 2004, (as defined in Section 1 hereof, the "RFP") inviting qualified entities to submit proposals for the design, construction, installation, operation and maintenance of Coordinated Franchise Structures on City streets to serve with a coordinated design the needs of residents of, and visitors to, the City; and

WHEREAS, the Company submitted to DOT its Proposal in response to the RFP; and

WHEREAS, DOT recommended the Company's Proposal based on its assessment that it was the most beneficial proposal in the interest of the City; and

WHEREAS, on May 11, 2006 the New York City Franchise and Concession Review Committee (as defined in Section 1 hereof, the "FCRC") held a public hearing on the proposed grant of a franchise to the Company for the installation, operation, and maintenance of Bus Shelters, APTs, and PSSs and for the installation and maintenance of Newsstands, and associated equipment on, over, and under the Inalienable Property of the City, which was a full public proceeding affording due process in compliance with the requirements of Chapter, 14 of the New York City Charter (the "Charter"); and

WHEREAS, the FCRC, at its duly constituted meeting held on May 15, 2006, and acting in accordance with its customary procedures, voted on and approved the grant to the Company of a franchise as contemplated by the RFP; and

WHEREAS, the potential environmental impacts of the action to be taken hereunder have been considered by the City and have been determined by the City to be fully consistent with those resulting from the Council's approval of the authorization of DOT to grant a nonexclusive

1444359- 5/5/06

NYC-OTR006905

franchise for the installation, operation and maintenance of coordinated franchise structures, which include bus stop shelters, automatic public toilets, newsstands and other public service structures and Local Law 64 of 2003 (the newsstand legislation) which were reviewed and for which a negative declaration was issued finding that such actions will not result in any significant adverse environmental impacts, all in accordance with the New York State Environmental Quality Review Act ("SEQRA"), the regulations set forth in Title 6 of the New York Code of Rules and Regulations, Section 617 *et seq.*, the Rules of Procedure for City Environmental Quality Review ("CEQR") (Chapter 5 of Title 62 and Chapter 6 of Title 43 of the Rules of The City of New York).

NOW, THEREFORE, in consideration of the foregoing clauses, which clauses are hereby made a part of this Agreement, the mutual covenants and agreements herein contained, and other good and valuable consideration, the parties hereby covenant and agree as follows:

## SECTION 1

## DEFINED TERMS

For purposes of this Agreement, the following terms, phrases, words, and their derivatives shall have the meanings set forth in this Section, unless the context clearly indicates that another meaning is intended. In addition, all references to "install, operate and maintain," "installation, operation and maintenance," "install and maintain," "installation and maintenance," or any other variance therein, shall be deemed to include any construction, installation, operation, maintenance, repair, upgrading, renovation, removal, relocation, alteration, replacement or deactivation as appropriate, except that with respect to Newsstands, it shall not include operation.

1.1     "ADA" shall have the meaning given in Section 3.7 hereof.

1.2     "Affiliate" or "Affiliated Person" means each Person who falls into one or more of the following categories: (i) each Person having, directly or indirectly, a Controlling Interest in the Company; (ii) each Person in which the Company has directly or indirectly, a Controlling Interest; (iii) each executive officer, director or general partner or limited partner holding an interest of 10% or more in the Company; and (iv) each Person directly or indirectly, controlling, controlled by or under common Control with the Company; provided that "Affiliate" or "Affiliated Person" shall in no event mean the City, any limited partner holding an interest of less than 10% of the Company or any creditor of the Company solely by virtue of its status as a creditor and which is not otherwise an Affiliate or Affiliated Person.

1.3     "Agreement" means this agreement, together with the Appendices, Exhibits and Schedules attached hereto and all amendments or modifications thereof.

1.4     "APT(s)" means automatic public toilets installed or to be installed by the Company pursuant to this Agreement.

1.5     "Arbitrated Value" shall have the meaning given in Section 9.4.1(d) hereof.

- 2 -

NYC-OTR006906