of issues, many of which parallel those of the Manhattan Borough President.  Additional concerns were cited as follows:

In regards to siting restrictions:
o    Clear paths should be widened using accepted methods of calculated pedestrian levels of service.
o    More specific rules and mechanisms should be developed for improperly sited Franchise Structures which require removal.
o    Business Improvement Districts' streetscape plans should meet the same siting and design requirements as the Coordinated Street Furniture Franchise.

In regards to the franchise contract:
o    A performance bond should be posted.
o    An initial trial period should be established for each type of Franchise Structure prior to establishing the final design.
o    Telephone and identification numbers should be placed on each Franchise Structure for maintenance purposes.

In regards to bus stop shelters:
o    Unbreakable material should be mandated as the appropriate material for the walls of all bus stop shelters.
o    Only one wall panel, with advertising on both sides, should be allowed on each bus stop shelter.

In regards to newsstands:
o    Special controls should be set to limit the number of newsstands at each intersection and per block face.
o    Adequate clear paths should be maintained based on pedestrian levels of service, and improperly sited newsstands should be removed in a timely fashion.
o    Circular footprints should be avoided for all newsstands.

The Borough Board strongly recommends that the following be included in the final Request For Proposals:
o    The siting criteria be further modified to prohibit the replacing of existing structures, especially newsstands, at sites that cannot accommodate the structure due to heavy pedestrian traffic or existing conflict with a transit stop.

Additionally, the Borough Board recommends that each Community Board should approve any Franchise Structure within its boundaries in order to ensure that the above concerns are satisfactorily addressed.

18                                                    C960543(A)  GFY

NYC019068

The Manhattan Borough Board recommendation is attached

City Planning Commission Public Hearing

On August 21, 1996 (Calendar Nos. 13 & 14) the City Planning
Commission scheduled September 11, 1996 for a public hearing on the
original application (C960543GFY) and the modified application
(C960543(A)GFY). The hearing was duly held on September 11, 1996
(Calendar Nos. 30 and 31).

Ten speakers testified, six in favor and 4 opposed to the
application. Written testimony in favor of the application and
correspondence in opposition to it were also submitted.

Those speaking in favor of the proposal were the Deputy Mayor for
Economic Development and Planning, the Executive Director of the
Division of Franchises, Concessions and Consents at the Department
of Transportation, the General Counsel of the Alliance for Downtown
New York, a representative of the Grand Central and Thirty-Fourth
Street Partnerships, the President of the Municipal Art Society and
a representative of a company which installs and operates transit
shelters.

Written testimony in support was received from the Time Square
Business Improvement District.

19                                            C960543(A) GFY

NYC019069

Those speaking in opposition were a representative of the Manhattan
Borough President, a representative of Local/Expression and two
individuals.

Written correspondence in opposition was received from Community
Board 10 in Manhattan.

Several speakers supporting the application and two opponents
acknowledged the importance of improving the quality of the city's
streets and applauded the concept of a coordinated street furniture
initiative.   The Deputy Mayor stated:   "Our streetscape is the
first, last, and constant impression made on anyone living,
working, or visiting New York.   Our streetscape is a very real
statement of who we are and how we are perceived.   It is no longer
enough to focus simply upon what goes on beyond the property line".
The Manhattan Borough President's representative said:   "the
Borough President commends the Department of Transportation's
efforts to improve the visual appearance of city streets."  All of
those speaking in favor concurred that the proposed RFP does
constitute a unified, coordinated and comprehensive proposal,
although some saw aspects which could be enhanced or were of
concern.  The Deputy Mayor and the general counsel of the Alliance
for Downtown New York asserted that the proposal will reduce
sidewalk clutter.  The Deputy Mayor and the representative of the
Grand Central and Thirty Fourth Street Partnerships also noted that
the street furniture program will provide new public amenities such

20                                                  C960543(A)  GFY

NYC019070

no automatic toilets

The Deputy Mayor and the general counsel for the Downtown Alliance noted that the proposal ensures community input into the siting of the street furniture items within its scope.  The Deputy Mayor pointed out that "particularly when it comes to newsstands, the City will, for the first time, have the ability to use discretion and say "no" to locations which meet placement guidelines but are otherwise deemed inappropriate".  The Times Square Business Improvement District's written testimony calls for "substantive consultations, with community planning boards, business organizations, newsstand operators and publishers" on siting issues.

Two speakers supporting the proposal called for flexibility in the design of structures to ensure variety and a good contextual fit. The Deputy Mayor stated that designs will be diverse and will complement the character of the neighborhood in which they are sited.  The Manhattan Borough President's representative called for the participation of Community Boards, civic groups and elected officials in the design selection process.  The President of the Municipal Art Society sought an assurance that the proposed designs would be submitted to the Art Commission and Landmarks Preservation Commission "for their consideration".

On the matter of advertising, the Deputy Mayor stated that this was

C960543(A)  GFY

NYC019071

necessary in order for the franchisee to recoup his capital
investment and cover on-going operational costs. The President of
the Municipal Art Society and a speaker in opposition argued that
the proposal allows too much advertising, with both larger and more
numerous panels than currently exist on city sidewalks. The MAS
President also claimed that allowing advertising on Public Service
Structures would result in their proliferation, rather than
consolidation. Two speakers opposing the proposal expressed
concern about potential advertising for alcohol products.

Two speakers in opposition argued that the proposed 20 year length
of the franchise was too long. In response to a related
Commissioner's question, the Deputy Mayor said that 20 years was
necessary because of the substantial capital investment required of
the Franchisee.

Two supporters of the proposal raised questions about the
management of newsstands and the relationship between the
franchisee and individual operators. They were concerned that the
performance of individual operators would not be properly monitored
or held to adequate standards. The Times Square BID sought to have
the number of newsstands in Midtown capped at current levels.

The President of the Municipal Art Society objected to the lack of
a cap on the number of Public Service structures. In her testimony
and in response to Commissioner's questions, the Deputy Mayor

C960543(A) GFY

NYC019072

stated that the Administration had already decided that this type of street furniture would now be limited to computer information terminals and litter and recycling bins.

The representative of Local/Expression argued that the proposal was "not fully thought out" and that the City should take more time to explore other approaches. He suggested that Bus Stop Shelters be combined with Newsstands so that they are manned and that small businesses be financially compensated by the City for making their toilets available to the public.

Another speaker in opposition said that he thought there may be legal problems associated with having a single franchise and that the RFP and franchise processes should include a role for the Commission and the City Council. He argued that the manufacture of street furniture items should be done in New York City. In response to questions from the Commission, the Deputy Mayor stated that financial issues made a single franchisee necessary. This approach ensured economies of scale and allowed costs and revenues to be spread city-wide. Asked about the possibility of the franchisee sub-contracting work under the street furniture program to local businesses, the Department of Transportation's representative said that DOT was already "actively meeting with many different sized companies who are interested in all aspects of this proposal".

C960543(A)  GFY

NYC019073

In addition to the issues cited above, the Manhattan Borough President's representative repeated many of her concerns described earlier in this report.

There were no other speakers and the hearing was closed.

## CONSIDERATION

The Commission believes that the Department of Transportation's proposed RFP for a coordinated street furniture franchise is appropriate as modified below. With the inclusion of its changes, the Commission believes that implementation of the program will result in a significant improvement in the appearance and useability of the City's streets and will enhance the range and quality of public facilities thereon. The functional efficiency and appearance of existing street furniture items will improve as the current aging stock is replaced. The introduction of new amenities, most notably automatic public toilets, will bring to New Yorkers and visitors alike a much needed augmentation of the range of public amenities available to them. Grouping several major types of street furniture together in one program with a single franchisee under the direction of a single City agency offers the potential for a more coordinated and rational distribution of these facilities, both across the City as a whole and within a district or neighborhood.

C960543(A) GFY

NYC019074

Modifications

While the Commission agrees that the Coordinated Street Furniture Franchise will significantly enhance the City's streets, it believes that a number of changes can be made which will result in the program's goals being more fully realized.  The Commission has carefully considered the proposed RFP and evaluated the considerable body of recommendations and testimony it has received during the public review process.  Based on this review, the Commission believes that the proposal's objectives of providing a more aesthetically pleasing and functional streetscape will be better achieved with the following modifications.


A.   Design

The Commission shares the concern expressed in many of the submissions it received that there must be sufficient flexibility in the designs of the various types of Franchise Structures to allow a good contextual "fit" in the diversity of districts and neighborhoods in which the structures will be located.   The Commission also acknowledges that increasing the number of alternative designs increases the cost of the program and that increasing the range of designs must be considered in relation to other objectives such as limiting the amount of advertising on the structures.


A feasible and balanced approach to this problem is to require, for each type of structure, two fundamentally different designs and to

NYC019075

that we require that each of these basic designs be capable of
variation.   The Commission also agrees that high quality in the
design of the structures is essential to the success of the
program.   Accordingly, the Commission believes that the first
paragraph of Section II A 1. of the RFP should be replaced with the
following new language:

> The Coordinated Street Furniture Franchise is an important new
> initiative for the City of New York.  Its primary goals are to
> augment and significantly improve the appearance and quality
> of the largest items of furniture in our streets.
>
> Designs must achieve aesthetic excellence.  They must be
> compatible with a wide variety of built contexts and must
> conform to a citywide coordinated design scheme.  Designs for
> the different types of Franchise Structures must be
> coordinated so that within any one area there is a harmonious
> relationship between the various items of street furniture.
>
> Designs will be evaluated on the basis of functional
> efficiency, aesthetics, security, durability, adaptability for
> various built environments around the City and accommodation
> of people with disabilities.  All designs are subject to the
> approval of the Department.
>
> For each type of standard Franchise Structure (Bus Stop
> Shelter, Newsstand, Automatic Public Toilet and Public Service
> Structure meeting non-pillar dimensional criteria), Proposers
> must submit two basic designs.  The **first design** shall be
> suitable for deployment, in the case of Bus Stop Shelters,
> throughout the City and, in the case of other Franchise
> Structures, in medium and high density mixed-use environments.
> Proposers are required to show how each of these basic designs
> can be varied to suit specific contexts.  This might be
> achieved, for example, through alternative shapes or forms for
> component parts, alternate materials and/or varying the color
> of applied finishes.  The **second design** for each type of
> standard Franchise Structure shall be appropriate for use
> within districts or in front of individual buildings which are
> designated New York City Landmarks.  These designs may also be
> deployed on a limited basis in other locations.  Some degree
> of variation in these basic designs is also required.  Any
> designs for pillar structures shall be additional to the basic
> designs specified above.

26

C960543(A)  GFY

NYC019076

Bus Stop Shelters and Newsstands must be available in several
sizes and configurations to meet the constraints imposed by
various street conditions and users' needs as specified below.
The maximum dimensions of each of the Franchise Structures is
described below and summarized in Appendix I.

The Commission believes that this change will have the added
benefits of giving respondents to the RFP a clearer sense of what
is expected in terms of design and ensuring greater comparability
between submissions.


Several recommendations have been made to the Commission concerning
the integration of smaller items such as pay telephones, newsboxes
and litter bins into the larger Franchise Structures.    The
Commission notes that the RFP already requires respondents to allow
for the inclusion of public pay telephones in or on larger
structures.    Although the concept of integrating smaller items
into the larger structures appears beneficial in principle, after
examining the issue the Commission believes that in practice there
would be adverse consequences which would outweigh potential
benefits.    Items such as newsboxes or litter bins on a bus stop
shelter, for example, would either reduce the adjacent clear path
or restrict access into the shelter and would compromise its
transparency.  The Commission therefore believes that the sentence
in Section 1 of the RFP encouraging proposers to incorporate
smaller items (referred to as "PSSs") within or on Franchise
Structures should be deleted.

27

C960543(A)  GFY

NYC019077

... ......... ..

. ........ ....... was expressed during the public review process
.... ... .... allows too much advertising on Franchise Structures.
... .......... shares this concern. Based on advice from the
Department of City Planning about the likely configuration of
Franchise Structures and appropriate locations for advertising
panels thereon, the Commission believes the maximum amount of
advertising permitted on a Bus Stop Shelter should be reduced from
70 square feet to 55 square feet, on a Newsstand from 108 square
feet to 70 square feet and on an Automatic Public Toilet from 108
square feet to 70 square feet. Consistent with the Deputy Mayor's
commitment in her testimony before it, the Commission believes that
it is appropriate to limit advertising on Public Service Structures
to litter or recycling bins only and sets the maximum permitted
amount at 8 square feet for each bin and the maximum permitted
height at 3 feet above sidewalk level.


The Commission has also examined the question of the number and
location of advertising panels permitted on Franchise Structures.
Most new Bus Stop Shelters will be about the size of the current
standard unit.    The Commission believes that its basic
configuration, an opaque end panel and a transparent long panel
parallel to the curb, is optimal because it maximizes visibility
into and through the shelter and minimizes the visual impact of the
shelter on adjacent ground floor uses and building facades.
Accordingly, the Commission proposes to modify the RFP to permit

C960543 (A) GFY

NYC019078

a maximum of two panels and a maximum of 35 square feet
of advertising to be located only on shelter end panels (i.e.
panels which are aligned perpendicularly to the curb).  For
Newsstands and Automatic Public Toilets, the Commission sees no
reason to limit the number of advertising panels, given the total
maximum area limit per structure.    Indeed, it believes this
limitation  unnecessarily  constrains  design  flexibility.    It
therefore  believes  the  RFP  should  be  modified  to  remove  the
restriction of two panels per Newsstand or Automatic Public Toilet.

The Commission heard concerns about the allowance in the RFP of a
third advertising panel of up to 35 square feet in area on any
Franchise Structure, limited to a maximum of 10% of the total
number of structures city-wide and 20% in any one Community
District.  It believes that additional advertising should only be
permitted on large Bus Stop Shelters.

To preserve design flexibility, the location of one additional
advertising panel should remain unrestricted.   Two additional
panels would be acceptable if their location is limited to shelter
end panels.  The Commission therefore proposes to modify the RFP to
permit, on bus stop shelters greater than 25 feet in length only,
two additional advertising panels each up to 27.5 square feet in
area if both are located on shelter end panels; or one additional
advertising panel of up to 27.5 square feet in area.

29

C960543(A)  GFY

NYC019079

The Commission is concerned about the potential visual impact, particularly at night, of advertising affixed to litter or recycling bins. Accordingly it proposes to prohibit backlit advertising on litter or recycling bins.

C.    Public Service Structures

In her testimony before the Commission, the Deputy Mayor stated that in response to concerns about the possible proliferation of Public Service Structures, the Administration proposed to limit the scope of these Structures to computer information terminals and litter and recycling bins. The Commission agrees with this limitation and believes the RFP should be modified to reflect it.

With this tighter definition of Public Service Structure types, the Commission also believes it is appropriate to reduce the maximum allowable sizes of these Structures to the following dimensional limits:

|  | Area | Length | Width | Height |
|---|---|---|---|---|
| Computer Terminals | 16 s.f. | 4' | 4' | 9' |
| Litter/Recycling bins | 6.25 s.f. | 2'6" | 2'6" | 4' |

A roof overhang of up to 2 feet should be permitted on one side of a computer terminal if a clear height of 7 and 1/2 feet is maintained beneath it.

30

C960543(A) GFY

NYC019080

Pillar-type Structures

A number of Community Board and Borough President recommendations
and speakers at the public hearing stated that the maximum height
limit of 16 feet for pillar-type structures was excessive.

The Commission notes that this height limit is intended to allow
for conical or tapered roof configurations and that pillar-type
structures of this kind have been successfully installed in many
cities and could provide a positive addition to certain New York
City streetscapes.  It agrees, however, that some decrease in the
overall height limit is approporiate.  A corresponding reduction in
the height limit for advertising should also be made.   The
Commission therefore proposes to reduce the maximum permitted
height of pillar structures to 14 feet and the maximum permitted
height of advertising thereon to 12 feet.

The Commission notes that submission of pillar-type designs is
optional, not required, and that the new language relating to
design which it is adding to the RFP clearly places emphasis on
non-pillar designs.  It is also assured that the installation of
pillar-type structures will be at the City's discretion and in
consultation with Community Boards and other interested parties.

The Commission does believe, however, that some additional
restrictions on pillar-type Structures are required.   In
particular, the Commission proposes to modify the RFP to eliminate

31                                          C960543(A)  GFY

NYC019081

......... type structures ..... which are no more limited in height and have a reduced footprint. The Commission also proposes to modify the RFP to prohibit pillar-type newsstands in districts which are zoned for residential use. (The RFP already excludes Automatic Public Toilets from residential districts ...

With these changes, the Commission believes that the retention of the pillar option for Newsstands and Toilets is useful. Their smaller footprint takes less sidewalk space than regular structures, which may be beneficial in some situations. Their vertical orientation may be more appropriate for structures located in front of buildings with facades of heroic proportions.

E.    Clarifications

The Department of Transportation wishes to make some minor revisions, deletions and additions to the language of the RFP to clarify certain aspects of it and to ensure that respondents are aware of existing applicable city regulations and policies. In particular DOT proposes to modify the "Special Circumstances" section of the Siting Criteria by adding the following language:

> Notwithstanding anything contained herein, litter bins may be replaced at their existing locations in accordance with the Department of Sanitation's Operation Order for the placement of litter baskets and the Mayor's Clear Corner Policy (Exec. Order No. 22 of 1995).

This will ensure that the receptacles are sited in a manner that is

C960543(A) GFY

NYC019082

consistent with DOS policies and operating procedures. The
Commission supports these proposed modifications.

Additional Comments

A number of additional issues were raised and modifications to the
RFP suggested in the recommendations and testimony received during
the public review process.  These include issues related to siting,
design, advertising, the franchise term, maintenance and aspects of
individual types of structures.

Some recommendations called for a survey of existing street
furniture, particularly in Midtown Manhattan, as a precursor to
this program.  The Commission notes that in developing the
Coordinated Street Furniture RFP, the City agencies involved gave
careful consideration to existing patterns of sidewalk use.  The
Department of City Planning, as part of another study, has a
detailed inventory in map form showing the location of all of the
street items for much of Midtown and expects to complete this
analysis in the near future.  This work will be made available to
the Department of Transportation and its Franchisee for street
furniture siting purposes.

The Commission is satisfied that a wide geographic distribution of
street furniture items will be achieved under this program.  The
Deputy Mayor, in response to questions from the Commission, assured
it that the Administration is committed to a city-wide approach to

33                                                    C960543(A) GFY

NYC019083

The problem was pointed out that one of the basic rationales for including all of the major items of street furniture in a single program across all five Boroughs was to spread the costs and revenues city-wide. The Commission believes that this approach should help ensure an equitable distribution of street furniture items. In relation to the suggestion that the number of items be specified by individual Community Districts in the RFP, the Commission believes that the consultative site selection process which will occur after the Franchisee has been selected is the appropriate time for allocation decisions to be made, given the complex variety of issues which must be addressed in arriving at an optimal distribution pattern.

The Manhattan Borough President has suggested that limits be put on the number of street furniture elements per block face and per intersection. The Commission understands the Borough President's concern, but does not believe that such restrictions in the RFP are necessary. The minimum spacing of Bus Stop Shelters is dictated by the intervals between stops and on streets with multiple bus routes shelters are generally shared. The limited number of Automatic Public Toilets included in the RFP will necessitate their dispersion. While most existing Newsstands will be replaced at or in the immediate vicinity of their current locations, the City will for the first time have discretion over the placement of additional Newsstands. In addition, the comprehensive nature of the Siting Criteria will help ensure that excessive concentrations of street

---

34                                              C960543(A) GFY

NYC019084

furniture items will not occur.

Several submissions received by the Commission during the public review process sought to give Community Boards elected officials and/or Business Improvement Districts final siting approval. The Commission notes that the RFP includes a multi-stage site selection process including extensive community involvement. A similar process currently used for the siting of Bus Stop Shelters has worked well. The Commission believes that coherent coordination of siting is essential to the success of the program, that this requires overall control by a single entity and that the RFP correctly gives this responsibility to the Department of Transportation.

The Commission believes that concerns about the adequacy of clear paths adjoining Franchise Structures are adequately addressed when all of the provisions of the RFP including the Siting Criteria in the Appendix are taken into account. Maximum widths of structures have been kept as small as possible consistent with functional and ADA requirements and structures are required to be located in close proximity to sidewalk edges.

The Commission received several comments proposing that Community Boards, elected officials and/or Business Improvement Districts be involved in the review and/or approval of street furniture designs. It believes that the new language relating to design will result in

NYC019085

build in flexibility in the design of the structures to ensure
appropriate design response to particular streetscapes

The Commission shares the concern expressed in some testimony that
other elements of street furniture such as honor boxes and company-
owned coin-operated telephones, also need to be dealt with if the
City's streetscape is to be managed comprehensively.  It believes,
however, that the street furniture program embodied in this RFP as
proposed to be modified herein will result in a significant
improvement in the City's streets.  It notes that in response to
Commissioners' questions at its Public Hearing, the Deputy Mayor
stated that the Administration is pursuing related actions in
regard to these other elements of street furniture.

In response to calls for an increase in the percentage of
advertising space allocated to public service information, the
Commission notes that it has significantly reduced the total amount
of advertising permitted on Franchise Structures.  It does not
believe that it is prudent to make a further reduction in the
amount of revenue-generating advertising.

In relation to the type of advertising, the Commission notes that
the RFP does include provisions dealing with this question,
including a prohibition on tobacco advertising.

A number of submissions received during the Public Review process

36                                                   C960543(A) GFY

NYC019086

recommended that the 15 year franchise term be reduced or divided into two or more renewal periods. The Commission notes that the City Council resolution authorizing the franchise permits a 20 year term. It also acknowledges the Deputy Mayor's position that the franchise requires a substantial capital investment necessitating a sufficiently long term to ensure an adequate financial return to the Franchisee. This is particularly the case if the franchise is to yield durable street furniture of high design quality. The Commission believes that adequate Franchise performance can best be guaranteed by a well-crafted contract.

The Commission notes that questions concerning the performance of the Franchisee are contractual in nature, generally fall outside of its purview and will come under the scrutiny of the Franchise and Concessions Review Committee.

In relation to concerns about the siting of Newsstands, the Commission references its comments above concerning the avoidance of excessive concentrations of any type of Franchise Structure and also notes the Deputy Mayor's statement cited in the public hearing section of this report. While questions about the performance of individual operators lie outside the scope of the proposed RFP, the Commission believes that bringing the design, installation and maintenance of all newsstands under a single Franchisee will result in a significant improvement in appearance over the current newsstand inventory.

NYC019087

recommendations received by the Commission from two Manhattan
Community Boards sought additional numbers of Automatic Public
Toilets and longer operating hours. The Commission notes that the
proposed RFP gives the City an option to require additional toilets
beyond the minimum specified number and allows it to require the
Franchisee to extend the minimum operating hours of 8:00 a.m. to
8:00 p.m. at particular sites.

38

C960543(A)  GFY

RESOLUTION

RESOLVED, that the City Planning Commission finds that the action described herein will have no significant impact on the environment; and be it further

**RESOLVED**, by the City Planning Commission, pursuant to section 197-c and 363-e(2) of the City Charter, that based on the environmental determination and the consideration described in this report the application of the Department of Transportation for a franchise for installing, operating and maintaining bus stop shelters, automatic public toilets, newsstands and public service structures to be located in all five boroughs and proposed for modification on August 19, 1996 pursuant to Section 7.030 of the Uniform Land Use Review Procedure is hereby approved with the following modifications:

1.    Replace the first paragraph of Section II A 1. with the following new language:

   The Coordinated Street Furniture Franchise is an important new initiative for the City of New York. Its primary goals are to augment and significantly improve the appearance and quality of the largest items of furniture in our streets.

   Designs must achieve aesthetic excellence. They must be compatible with a wide variety of built contexts and must conform to a citywide coordinated design scheme. Designs for the different types of Franchise Structures must be coordinated so that within any one area there is a harmonious relationship between the various items of street furniture.

   Designs will be evaluated on the basis of functional

---

39                                                  C960543(A) GFY

NYC019089

efficiency, aesthetics, security, durability, adaptability for various built environments around the City and accommodation of people with disabilities.  All designs are subject to the approval of the Department

For each type of standard Franchise Structure—Bus Stop Shelter, Newsstand, Automatic Public Toilet and Public Service Structure meeting non-pillar dimensional criteria , Proposers must submit two basic designs.  The **first design** shall be suitable for deployment, in the case of Bus Stop Shelters, throughout the City and, in the case of other Franchise Structures, in medium and high density mixed-use environments. Proposers are required to show how each of these basic designs can be varied to suit specific contexts.  This might be achieved, for example, through alternative shapes or forms for component parts, alternate materials and/or varying the color of applied finishes. The **second design** for each type of standard Franchise Structure shall be appropriate for use within districts or in front of individual buildings which are designated New York City Landmarks.  These designs may also be deployed on a limited basis in other locations.  Some degree of variation in these basic designs is also required.  Any designs for pillar structures shall be additional to the basic designs specified above.

Bus Stop Shelters and Newsstands must be available in several sizes and configurations to meet the constraints imposed by various street conditions and users' needs as specified below. The maximum dimensions of each of the Franchise Structures is described below and summarized in Appendix 2.

2.    Delete the sentence in Section 1 of the RFP encouraging proposers to incorporate smaller items (referred to as "PSSs") within or on Franchise Structures.

3.    Reduce the maximum amount of advertising permitted on a Bus Stop Shelter from 70 square feet to 55 square feet, on a Newsstand from 108 square feet to 70 square feet and on an Automatic Public Toilet from 108 square feet to 70 feet. Limit advertising on Public Service Structures to litter or

40                                                    C960543(A) GFY

NYC019090

recycling bins only and set the maximum permitted amount at
square feet for each bin and the maximum permitted height at
5 feet above sidewalk level.

4.   Permit the basic allowance of two panels and a maximum of 55
     square feet of advertising on Bus Stop Shelters to be located
     only on shelter end panels (i.e. panels which are aligned
     perpendicular to the curb).

5.   Remove the restriction of two panels per Newsstand or
     Automatic Public Toilet.

6.   On bus stop shelters greater than 25 feet in length only,
     permit two additional advertising panels each up to 27.5
     square feet in area if both are located on shelter end panels;
     or one additional advertising panel of up to 27.5 square feet
     in area.

7.   Prohibit backlit advertising on litter or recycling bins.

8.   Limit Public Service Structures to computer information
     terminals and litter and recycling bins only.

     Reduce the maximum allowable sizes of Public Service
     Structures to the following dimensional limits:

41                                              C960543(A)  GFY

NYC019091

| | Area | Length | Width | Height |
|---|---|---|---|---|
| Computer Terminal | | 4' | 5' | 9' |
| Litter Recycling bins | | 2'6" | 2'6" | 4' |

Permit a roof overhang of up to 2 feet on one side of a computer terminal if a clear height of 7 and 1/2 feet is maintained beneath it.

9. Reduce the maximum permitted height of pillar structures to 14 feet and the maximum permitted height of advertising thereon to 12 feet.

10. Eliminate pillar-type Public Service Structures. Prohibit pillar-type newsstands in districts which are zoned for residential use.

11. Add the following language to the "Special Circumstances" section of the Siting Criteria:

Notwithstanding anything contained herein, litter bins may be replaced at their existing locations in accordance with the Department of Sanitation's Operation Order for the placement of litter baskets and the Mayor's Clear Corner Policy (Exec. Order No. 22 of 1995).

12. Make minor deletions and additions as indicated in the attached modified version of the RFP.

The resolution (C960543(A)GFY), duly adopted by the City Planning

42   C960543(A) GFY

NYC019092

Commission on October 5, 1994. Calendar No.    or filed with the
Office of the Speaker, City Council, and the Borough Presidents, in
accordance with the requirements of Section 197-d of the New York
City Charter.

JOSEPH B. ROSE, Chairman
VICTOR G. ALICEA, Vice-Chairman
ALBERT ABNEY
ANGELA M. BATTAGLIA
AMANDA M. BURDEN, A.I.C.P.
IRWIN G. CANTOR, P.E.
KATHY HIRATA CHIN, Esq.
ALEXANDER GARVIN
ANTHONY I. GIACOBBE, Esq.
WILLIAM J. GRINKER
BRENDA LEVIN
EDWARD T. ROGOWSKY
JACOB B. WARD, Esq.,   Commissioners

43

C960543(A)  GFY

NYC019093

# EXHIBIT T

THE COUNCIL OF THE CITY OF NEW YORK
RESOLUTION NO. 2096

Resolution approving with modifications the decision of the City Planning Commission on ULURP No. C 960543(A) GFY, a modified application submitted by the Department of Transportation pursuant to Sections 197-a and 363e(2) of the New York City Charter for a Request for Proposals for the franchise to install, operate and maintain bus stop shelters, self-cleaning automatic public toilets and public service structures and to install and maintain newsstands in the Boroughs of the Bronx, Brooklyn, Manhattan, Queens and Staten Island (L.U. No. 1151).

By Council Members Eisland and McCaffrey

    WHEREAS, the City Planning Commission filed with the Council on October 18, 1996 its decision dated October 9, 1996 (the "Decision") on the application submitted by the Department of Transportation, pursuant to Sections 197-c and 363e(2) of the New York City Charter, for a Request for Proposals for a franchise to install, operate and maintain bus stop shelters, self-cleaning automatic public toilets and public service structures and to install and maintain newsstands in the Boroughs of the Bronx, Brooklyn, Manhattan, Queens and Staten Island, (ULURP No. C 960543(A) GFY) (the "Application");

    WHEREAS, the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(3) of the City Charter;

    WHEREAS, the Council held a public hearing on the Decision and Application on November 12, 1996;

    WHEREAS, the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

    WHEREAS, the Council has considered the relevant environmental issues and the negative declaration, dated May 3, 1996 (CEQR No. 96DOT010Y);

NYC019014

Page 2
C 960543(A) GFY
Reso. No. 2096 (L.U. No. 1151)

RESOLVED:

The Council finds that the action described herein will have no significant effect on the environment.

Pursuant to Section 197-d of the City Charter and on the basis of the Application and the Decision, the Council approves the Decision, subject to the modifications in the attached document in *__underlined bold italic text.__*

Adopted.

Office of the City Clerk, }
The City of New York,  } ss.:

I hereby certify that the foregoing is a true copy of a Resolution passed by The Council of The City of New York on December 19, 1996, on file in this office.

City Clerk, Clerk of Council

NYC019015

THE CITY OF NEW YORK
DEPARTMENT OF TRANSPORTATION
DIVISION OF FRANCHISES, CONCESSIONS AND CONSENTS

REQUEST FOR PROPOSALS FOR THE FRANCHISE TO INSTALL,
OPERATE AND MAINTAIN BUS STOP SHELTERS, SELF-CLEANING
AUTOMATIC PUBLIC TOILETS AND PUBLIC SERVICE STRUCTURES AND
TO INSTALL AND MAINTAIN NEWSSTANDS IN THE BOROUGHS OF THE
BRONX, BROOKLYN, MANHATTAN, QUEENS AND STATEN ISLAND

DATE OF ISSUE: _____

PIN # _____

## SECTION I -- SUMMARY

The City of New York, acting through its Department of Transportation
("Department"), invites all qualified firms to submit proposals for a twenty (20)
year Franchise Contract for the construction, maintenance and operation of bus
stop shelters, self-cleaning automatic public toilets ("APTs") and public service
structures ("PSSs") and to install and maintain newsstands (collectively
"Franchise Structures") and the display of advertising thereon. The City seeks
proposals to construct, maintain and operate Franchise Structures that are
clean, safe and attractive, in convenient locations to serve the needs of
residents and visitors

This Request for Proposals is made pursuant to a City Council Authorizing
Resolution (Appendix 1) authorizing the grant of non-exclusive franchises to
install, operate and maintain bus stop shelters, newsstands, APTs and PSSs.
Pursuant to this authority, the Department is seeking proposals for a franchise
that will provide for the following

- The installation and maintenance of a minimum of 3,300 bus stop shelters
  with amenities for the public in the form of street identification signage,
  seating and public service information. This will require the creation of new

Underlined text is to be added. Text in square brackets [ ... ] is to be deleted. Text in curly
brackets { ... } indicates business terms that will be described in detail in the final Request for
Proposals. Text in **bold underlined italic** is the City Council modifications

- 1 -

NYC019016

designs, and preferably will include the replacement of the existing shelter inventory.

• The installation, operation and maintenance of a minimum of 30 APTs. The Franchisee will be permitted to collect a minimal fee from the public for the use of the APTs.

• The installation and maintenance of a minimum of 430 newsstands. The Franchisee will be required to cooperate with the operator of the newsstand regarding maintenance and repair of the newsstand structure.

In addition, Proposers are encouraged to provide for the installation, operation and maintenance of PSSs, [such as newspaper and periodical dispensers,] specifically _limited to_ recycling _and/_or litter bins[,] and computer terminals that provide access to government or commercial activity[, bicycle racks and public pay telephones]. The public service provided shall be immediately apparent to the passerby and shall not be obscured physically or visually by *the name or logo of any sponsoring entity.* [advertising.]

The Franchisee will also be responsible for maintaining six existing City-owned pedestrian information kiosks.

The design and placement of the Franchise Structures shall reflect the following goals:

• In order to minimize impacts on pedestrian circulation and the visual character of the streetscape, the footprint and height of the Franchise Structures shall be kept as small as possible consistent with their function and other requirements.

• [[ ]In order to reduce physical and visual clutter on sidewalks, proposers are encouraged to incorporate _elements_ [PSSs] such as telephones, *computer information terminals,* recycling _and/or litter_ bins and newsracks within or on the Franchise Structures. [ ]]

• In order to maximize pedestrian circulation and clear paths, Franchise Structures shall be aligned with adjacent existing elements on the sidewalks to the extent possible.

Underlined text is to be added. Text in square brackets [   ] is to be deleted. Text in curly brackets {   } indicates business terms that will be described in detail in the final Request for Proposals. Text in *bold underlined italic* is the City Council modifications.

- 2 -

NYC019017

The Franchisee will be permitted to display advertising on the Franchise Structures subject to specific criteria and limitations as more fully described below.

{Compensation}

{Preproposal Conference}

{Site visits}

{Acceptance of terms and conditions of Authorizing Resolution}

## SECTION II -- SCOPE OF SERVICES

A.  GENERAL INFORMATION

1.  Design

[The Department encourages innovation and flexibility in the design of the Franchise Structures. The designs for the different types of structures must be aesthetically pleasing, must be unified in a citywide coordinated design scheme and must take into account compatibility with special contexts, such as historic districts, including the ability to incorporate site-specific design components. Each type of structure must be available in several sizes and configurations to accommodate the constraints posed by various street conditions and users' needs, as specified below. The maximum dimensions of each of the Franchise Structures is described below and summarized in Appendix 2. The designs will be evaluated based on functional efficacy, aesthetics, security, accommodation for people with disabilities and flexibility to relate to various built environments around the City. All designs are subject to the approval of the Department.]

The Coordinated Street Furniture Franchise is an important new initiative for the City of New York. Its primary goals are to augment and significantly improve the appearance and quality of the largest items of furniture in our streets.

Underlined text is to be added. Text in square brackets [ . . . ] is to be deleted. Text in curly brackets { . . . } indicates business terms that will be described in detail in the final Request for Proposals. Text in *bold underlined italic* is the City Council modifications.

- 3 -

NYC019018

Designs must achieve aesthetic excellence. They must be compatible with a wide variety of built contexts and must conform to a citywide coordinated design scheme. Designs for the different types of Franchise Structures must be coordinated so that within any one area there is a harmonious relationship between the various items of street furniture.

Designs will be evaluated on the basis of functional efficiency, aesthetics security, durability, adaptability for various built environments around the City and accommodation of people with disabilities. All designs are subject to the approval of the Department.

For each type of standard Franchise Structure (Bus Stop Shelter, Newsstand, Automatic Public Toilet and Public Service Structure meeting non-pillar dimensional criteria), Proposers must submit two basic designs. The first design shall be suitable for deployment, in the case of Bus Stop Shelters, throughout the City and, in the case of other Franchise Structures, in medium and high density mixed-use environments. Proposers are required to show how each of these basic designs can be varied to suit specific contexts. This might be achieved, for example, through alternative shapes or forms for component parts, alternate materials and/or varying the color of applied finishes. The second design for each type of standard Franchise Structure shall be appropriate for use within districts *which are designated historic districts* or in front of individual buildings which are designated New York City Landmarks. These designs may also be deployed on a limited basis in other locations. Some degree of variation in these basic designs is also required. Any designs for pillar structures shall be additional to the basic designs specified above.

Bus Stop Shelters and Newsstands must be available in several sizes and configurations to meet the constraints imposed by various street conditions and users' needs as specified below. The maximum dimensions of each of the Franchise Structures is described below and summarized in Appendix 2.

All components of the Franchise Structures must be fabricated of high quality, durable and vandal-resistant materials. *To the maximum extent feasible, [A]* all surfaces of the Franchise Structures that are accessible to the public must be graffiti-resistant. Adequate illumination of the Franchise Structures and adjacent

Underlined text is to be added. Text in square brackets [ . . . ] is to be deleted. Text in curly brackets { } indicates business terms that will be described in detail in the final Request for Proposals. Text in *bold underlined italic* is the City Council modifications.

- 4 -

NYC019019

sidewalks must be provided. Proposers are encouraged to consider solar or other independent power sources.

Plans must also allow for the possibility of inclusion of public pay telephones in or on the Franchise Structures. (Additional franchise authority from the Department of Information Technology and Telecommunications will be required to provide public pay telephone service at such telephones.)

The design and placement of the Franchise Structures will be subject to the review and approval of the Landmarks Preservation Commission and the Art Commission, to the extent required by law. All Franchise Structures must be accessible to people with disabilities, and the Franchisee will be required to comply with the Americans with Disabilities Act and any additional federal, state and local laws relating to accessibility for people with disabilities as applicable. The Franchisee will be required to comply with all New York City laws, rules and codes related to materials and construction.

2.      **Build-out**

The Franchise Structures shall be installed in such locations as directed by the Department in accordance with the consultative process and the siting criteria specified below in Section G and in Appendix 3, respectively.

The Franchisee shall comply with all applicable sections of the building, plumbing and electrical codes of the City of New York, obtain any required permits from the appropriate City agency {responsibility for expenses}. Where the work to be done in connection with the installation, operation, maintenance, repair, removal or deactivation of the Franchise Structures requires that such work be performed by a plumber or electrician, the Franchisee shall employ and utilize only licensed plumbers and/or electricians. Quality workmanship shall be employed at all times. State-of-the-art construction methods and building materials must be integrated into the Franchise Structures as they become available.

The design and placement of the Franchise Structures shall not result in an installation which causes the destruction or damage of any part of a distinctive sidewalk or historic pavement. This shall not preclude the Franchisee from

Underlined text is to be added. Text in square brackets [   ] is to be deleted. Text in curly brackets { .. } indicates business terms that will be described in detail in the final Request for Proposals. Text in **_bold underlined italic_** is the City Council modifications.

- 5 -

NYC019020

installing a Franchise Structure including appurtenant utility connections on a distinctive sidewalk or historic pavement by any means necessary. Prior to any such installation the Franchisee shall make a good faith effort to procure sufficient quantities of those materials of which the distinctive sidewalk or historic pavement is comprised to repair, replace or restore it to its original condition.

{Performance bond}

In the event that the placement of any Franchise Structure results in damage to the distinctive sidewalk or historic pavement, such sidewalk or pavement shall be restored to its original condition.

{Responsibility for expenses}

The Franchisee will be required, at a minimum, to adhere to the following build-out schedule.

| | Shelters | APTs | Newsstands |
|---|---|---|---|
| Year 1 | 550 | 15 | 144 |
| Year 2 | 550 | 15 | 143 |
| Year 3 | 550 | *** | 143 |
| Year 4 | 550 | *** | *** |
| Year 5 | 550 | *** | *** |
| Year 6 | 550 | *** | *** |
| Years 7-20 | *** | *** | *** |

*** Additional structures as directed by the Department.

Proposals must at a minimum reflect the above build-out schedule. Proposers are encouraged to provide a more ambitious schedule for any or all aspects of the build-out.

Underlined text is to be added. Text in square brackets [ . . . ] is to be deleted. Text in curly brackets { } indicates business terms that will be described in detail in the final Request for Proposals. Text in **bold underlined italic** is the City Council modifications

- 6 -

NYC019021

During the term of the Franchise the Department may direct the Franchisee to remove, replace, and relocate structures as necessary to accommodate changing needs or to address security concerns.  {Responsibility for expenses}

Failure to adhere to the build-out schedule as directed by the Department will be grounds for cancellation of all or any portion of the Franchise Contract.

3.    Maintenance and Operation

Maintenance of the Franchise Structures by the Franchisee shall include inspecting, cleaning and removing graffiti from the structures on at least two nonconsecutive days each week (or more frequently, as specified below), timely removal of debris, snow and ice in and around the structures, preventive maintenance and prompt repairs.  Snow and ice removal shall include clearing a three-foot access path for wheelchairs.  Repairs that are necessary to ensure public safety, as determined by the Department, shall be performed within 24 hours of notification by the Department.

{Liquidated damages and default}

{Computerized system for information sharing}

{4.    Ownership of the Structures}


B.    BUS STOP SHELTERS

1.    Design

Bus stop shelters must first and foremost provide meaningful protection from precipitation, wind and sun, and the number and placement of side enclosures shall be sufficient to accomplish this purpose.  At the same time, ease of access for both functional and security reasons must be maintained.

The Department strongly encourages innovation and flexibility in bus stop shelter design.  The Franchisee will be required to construct shelters in a variety of shapes and sizes to accommodate different street conditions and service

---

Underlined text is to be added.  Text in square brackets [    ] is to be deleted.  Text in curly brackets {    } indicates business terms that will be described in detail in the final Request for Proposals.  Text in *bold underlined italic* is the City Council modifications.

- 7 -

NYC019022

needs, including extra-large shelters for heavily used bus stops and shelters with shorter and narrower footprints for sidewalks where space is limited in length or in width.

All designs must provide at least the following amenities.

- Adequate illumination of the interior and the adjacent sidewalk.

- Passenger seating which by design precludes reclining and may or may not be installed in every shelter, but which the City may at any time require to be installed or removed.

- An area or areas on the structure for bus route maps, street maps, bus stop name and street identification, Guide-A-Ride canisters and other information. *__Bus stop name and street identification shall be back-lit or otherwise illuminated and shall be designed in such a manner to maximize the ability of bus passengers to see such name and identification from the bus as the bus approaches the bus stop.__*

Proposers are encouraged to propose additional public amenities.

Materials used for the walls of the shelters must be transparent. The dimensions of structural frames and supports shall be kept at a minimum. In the event that glass is the material proposed for the shelter walls, an alternative unbreakable, *__and to the maximum extent feasible,__* scratch-resistant material must also be proposed for shelters at locations where there is a high incidence of vandalism.

Advertising panels, maps and signs shall be located so as to minimize their impact on the visibility of adjacent buildings and the interior of the bus stop shelter. They shall not interfere with pedestrian or motorist sight-lines necessary for traffic safety.

The maximum area of the largest bus stop shelter shall be 150 square feet. The maximum length shall be 30 feet; the maximum width, excluding the roof, shall be 5 feet; and the maximum height shall be 9 feet.

2.     Build-out

Underlined text is to be added. Text in square brackets [ . . . ] is to be deleted. Text in curly brackets { . . . } indicates business terms that will be described in detail in the final Request for Proposals. Text in *__bold underlined italic__* is the City Council modifications.

- 8 -

NYC019023

The City seeks a proposal for a minimum of 3300 bus stop shelters by the end of the sixth year of the Franchise term with an option to direct the installation of additional bus stop shelters to be exercised if at all at the sole discretion of the City, but in no event later than the eighteenth year of the twenty-year Franchise. The total number of bus stop shelters will not exceed 3500.

{Transfer of existing inventory}

By no later than the end of the sixth year, the entire inventory must conform to the new designs and amenities, preferably through the construction of new shelters, although proposals to accomplish this through retrofitting of existing shelters of the current design will also be considered. The Franchisee will be required to construct or retrofit at least 550 shelters per year as directed by the Department, during the first six years of the term. _Said construction and/or retrofitting shall be done in accordance with an annual schedule to be furnished by the Department to the Franchisee. Said schedule shall be designed to afford a fair distribution of new and/or retrofitted shelters throughout the five boroughs of the City and shall be based upon ridership and boarding data from the New York City Transit Authority and from authorized private carriers._

{Responsibility for expenses}

The shelters will be located at bus stops where demand for their use is greatest, as determined by the Department following the consultation process described below.

During the term of the Franchise, the Department may direct the Franchisee to remove, replace and/or relocate shelters as necessary to accommodate changing needs and concerns. {Responsibility for expenses}

3.    Maintenance and Operation

Immediately on the commencement of the Franchise and throughout the Franchise term, the Franchisee will be responsible for the complete maintenance

Underlined text is to be added. Text in square brackets [ . . . ] is to be deleted. Text in curly brackets { . . . } indicates business terms that will be described in detail in the final Request for Proposals. Text in _bold underlined italic_ is the City Council modifications

- 9 -

NYC019024

of the entire inventory of bus stop shelters. The maintenance shall include but shall not be limited to cleaning, inspecting and removing graffiti from the shelters on at least two nonconsecutive days each week; promptly clearing and removing debris, snow and ice from the ground in and around the shelters; repairing or replacing damaged parts within 24 hours of notification by the Department; and preventive maintenance. Snow and ice removal shall include clearing a three-foot access path for wheelchairs.

{Information about current franchise}

## 4.    Intelligent Transportation Systems

The successful proposer will be required to cooperate with the New York City Transit Authority or other agencies to make the structures available for the installation of wiring and equipment and the ongoing maintenance of Intelligent Transportation Systems (ITS), as such systems are developed. {Responsibility for expenses}

## C.    AUTOMATIC PUBLIC TOILETS

## 1.    Design

Each unit must be accessible to persons with disabilities and must contain a commode; a hand-washing station that provides warm soapy water followed by warm rinse water; toilet tissue and seat cover dispensers; and a paper-towel dispenser or air-drier. Heating, ventilation and lighting systems, including emergency lighting, must be provided. The unit must be designed with the ability to fully and automatically self-clean and disinfect the floor, seat and bowl after every use. All APT units must contain a self-activating warning system that communicates contemporaneously all significant maintenance and operations problems to an operations center. All APT units must provide external indicators informing potential users of whether the unit is available for use.

In addition, every APT unit must provide an emergency alarm system that allows for two-way communication for activation by the user and transmission to an

Underlined text is to be added.  Text in square brackets [ . . . ] is to be deleted.  Text in curly brackets { . . . } indicates business terms that will be described in detail in the final Request for Proposals.  Text in *bold underlined italic* is the City Council modifications.

- 10 -

NYC019025

operations center and the Police or Fire Department. A smoke and fire alarm system with an automatic door-opening device must be provided. An emergency access portal in addition to the user door must be provided to allow access to the interior by police or other emergency services.

All APTs must be equipped with a timing device that will cause the door to open automatically after a fixed period of time, with an audible and visual warning signal to alert the user one minute prior to the door's opening.

The maximum area of each APT shall be 78 square feet. Except for pillar-style (cylindrical) units, the maximum length shall be 12 and 1/2 feet, the maximum width shall be 8 feet, and the maximum height shall be 12 feet. The maximum diameter of pillar-style units shall be 8 feet and the maximum height shall be [16] 14 feet. Proposers are strongly encouraged to propose designs which utilize the minimum footprint necessary.

2.     **Build-out**

The City seeks a proposal for a minimum of 30 APTs by no later than the end of the second year of the Franchise term with an option to direct the installation of additional APTs to be exercised, based upon the success of the initial installations, at the sole discretion of the City, but in no event later than the fifteenth year of the twenty-year Franchise. The total number of APTs will not exceed 100.

A pilot program during the summer of 1992, during which APTs were installed temporarily at three locations in Manhattan, demonstrated that APTs can be operated successfully in the City of New York.

All APT sites shall be selected by the Department following the consultative process described below. During the term of the Franchise, the Department may direct the Franchisee to remove or relocate APTs in response to security concerns

3.     **Maintenance and Operation**

Underlined text is to be added. Text in square brackets [     ] is to be deleted. Text in curly brackets ( . . . ) indicates business terms that will be described in detail in the final Request for Proposals. Text in **_bold underlined italic_** is the City Council modifications

NYC019026

The APTs must be open to the public at least between the hours of 8:00 A.M. and 8:00 P.M. daily unless longer hours are established for a particular site by the Department.

The Franchisee will be responsible for the complete maintenance of every APT installed. This shall include but not be limited to daily visits to each unit to ensure that all systems are functioning properly, that the units are clean and that all dispensers are fully stocked. In addition, the Franchisee must respond immediately to its self-activating maintenance and operation warning system. Comfortable interior temperature, ventilation, and illumination shall be maintained at all times when the APT is in operation.

**D.   NEWSSTANDS**

**1.   Design**

Newsstands must provide optimum conditions for selling and displaying newspapers, periodicals and convenience items, as well as adequate storage space. Proposers are encouraged to consult with representatives of publishers and newsstand operators regarding newsstand design. {Information about industry representatives}

A newsstand structure may not occupy more than 72 square feet of sidewalk space when in operation, including all necessary doors, screens, shelves, racks and cases. Each unit must be accessible to persons with disabilities who may operate or patronize the structure. The maximum width shall be 6 and 1/2 feet and the maximum length shall be 14 feet. The maximum diameter of a pillar-style (cylindrical) newsstand shall be 6 and 1/2 feet. A newsstand structure may include a roof overhang extending no more than [2] 3 feet from the front of the stand beyond the maximum footprint, at a minimum height of 7 and 1/2 feet above the sidewalk. *Such overhang may extend along the sides of the newsstand roof a distance of 2 feet from the front of the roof.* The maximum height of the newsstand structures shall be 9 feet, except that a pillar-style newsstand may be up to [16] 14 feet in height. Pillar-style newsstands shall be prohibited in districts zoned for residential use.

Underlined text is to be added. Text in square brackets [ ] is to be deleted. Text in curly brackets ( ..) indicates business terms that will be described in detail in the final Request for Proposals. Text in ***bold underlined italic*** is the City Council modifications.

- 12 -

*(handwritten notes:)* pillar — 6½ diameter — 14 ft high — cannot be in residential districts

NYC019027

The majority of the newsstand structures will be constructed on sites that are currently occupied by existing newsstands, and sidewalk conditions will prohibit exceeding the existing footprint  Therefore, Proposers must be prepared to construct newsstands of a variety of shapes and sizes  *In the event that a public pay telephone is incorporated in the design of a newsstand, such telephone shall not be located so as to obstruct or interfere with the front sales area of the newsstand.*

2.    Build-out

The City seeks a proposal for a minimum of 430 newsstands by the beginning of the fourth year of the Franchise term with an option to direct the installation of additional newsstands, to be exercised at the sole discretion of the Department, but in no event later than the eighteenth year of the twenty-year Franchise  The total number of newsstands will not exceed 500.

This build-out will include the replacement of approximately 330 existing newsstands, which are owned and maintained by individual operators  Most of the replacement newsstands will be installed at or near existing newsstand sites. {Removal of existing structures}

New newsstands sites will be designated by the Department following the consultation process described below.  During the term of the Franchise, the Department may direct the Franchisee to remove or relocate newsstands whose location proves to be commercially unattractive.

{Responsibility for expenses}

3.    Maintenance and Operation

The Franchisee will be responsible for the maintenance of every newsstand structure that it has constructed and installed throughout the Franchise term  The Franchisee shall be required to cooperate with the operator of the newsstand regarding maintenance and repair of the newsstand structure

Underlined text is to be added.  Text in square brackets [ . . . ] is to be deleted  Text in curly brackets { . . . } indicates business terms that will be described in detail in the final Request for Proposals  Text in *bold underlined italic* is the City Council modifications

- 13 -

NYC019028

The Franchisee will not be responsible for operating the new stands or for cleaning their interiors. {Responsibility for expenses}

E.    PUBLIC SERVICE STRUCTURES

Proposers are invited to submit proposals for the installation, operation and maintenance of [additional public service structures such as newspaper and periodical dispensers,] recycling _and_/or litter bins[,] _and computer terminals that provide access to government or commercial activity, bicycle racks, and public pay telephones._ _Additional franchise authority from the Department of Information Technology and Telecommunications will be required to provide public pay telephone service at such telephones._ All PSSs shall be installed, maintained and removed in accordance with all laws, rules, regulations and guidelines adopted or established by the City which are applicable to comparable structures.  The public service provided shall be immediately apparent to the passerby and shall not be obscured physically or visually by _the_ **_name or logo of any sponsoring entity._** [advertising.]

With the rapid development of information technology, the Department anticipates that opportunities for more advanced types of PSSs will expand after the issuance of this RFP.  _Additionally, the City's needs in relation to street furniture are likely to change over time._  During the Franchise term, the Franchisee may propose to provide [such] additional _types of_ PSSs or may be asked to do so by the Department subject to amending the Franchise Contract. **_All such changes will also be subject to any applicable public review, including the Uniform Land Use Review Procedure and approval by the Franchise and Concession Review Committee._**

The Franchisee will also be responsible for maintaining six existing City-owned pedestrian information kiosks, listed below, in the same manner as the Franchise Structures:

|  | Street | Cross Street(s) | Corner/Side |
|---|---|---|---|
| Times Square | W 43rd Street | Broadway | NW |
| Duffy Square | Broadway | W 46th & 47th Sts | W |

Underlined text is to be added.  Text in square brackets [ ... ] is to be deleted.  Text in curly brackets { ... } indicates business terms that will be described in detail in the final Request for Proposals.  Text in **_bold underlined italic_** is the City Council modifications.

- 14 -

NYC019029

| Herald Square | Ave. of the Americas | W. 35th & 35th Sts | W |
| Grand Army Pl | Central Park South | 5th Ave | NW |
| City Hall | Broadway | Murray & Warren Sts | E |
| City Hall | Centre St | Chambers St | SW |

All PSSs shall be kept as small as possible consistent with their function

[The maximum area of each public service structure shall be 36 square feet
The maximum length shall be 6 feet and the maximum width shall be 3 feet. The
maximum diameter of a pillar-style (cylindrical) structure shall be 6 feet. No
public service structure may exceed 9 feet in height, except that a pillar-style unit
may be up to 16 feet high. The above dimensions shall not apply to the existing
pedestrian information kiosks.]

The maximum area of each computer information terminal shall be 16 square
feet. The maximum length shall be 4 feet and the maximum width shall be 4
feet. A computer information terminal may include a roof overhang extending no
more than 2 feet beyond the maximum footprint on one side of the structure at a
minimum height of 7.5 feet above the sidewalk. No computer information
terminal may exceed 9 feet in height.

The maximum area of each litter and/or recycling bin shall be 6.25 square feet.
The maximum length shall be 2.5 feet and the maximum width shall be 2.5 feet.
No litter and/or recycling bin may exceed 4 feet in height. In addition, the
maximum size and weight of each litter and/or recycling bin shall be subject to
the approval of the Department of Sanitation. {Responsibility for refuse
collection}

F.  REVENUE OPPORTUNITIES

{Sources of revenue to the franchisee}

Advertising shall be permitted on the exterior of the structures subject to the
conditions specified below. [Each Franchise Structure may have a maximum of
2 advertising panels.] The total maximum advertising area shall be [70] 55

Underlined text is to be added. Text in square brackets [  ] is to be deleted. Text in curly
brackets {  } indicates business terms that will be described in detail in the final Request for
Proposals. Text in **_bold underlined italic_** is the City Council modifications

- 15 -

NYC019030

square feet on bus stop shelters*[ ] and* [108] *[0] 82.5* square feet on APTs and newsstands, *[ ] and* [42] *5* square feet on [PSSs] *litter or recycling bins* so long as such advertising does not physically or visually obscure the public service provided [by the PSS] *] Advertising on PSSs shall be prohibited except to the extent that the name or logo of a sponsoring entity, not to exceed 2 square feet, shall be permitted.* The maximum advertising height shall be 7 feet on bus stop shelters 9 feet on APTs and newsstands *[and 7]* 3 feet on [PSSs] *litter or recycling bins* so long as such advertising does not physically or visually obscure the public service provided [by the PSS] *]* However, the maximum height of advertising on pillar structures shall be [14] *12 feet. No advertising shall be permitted on the exterior of computer information terminals or litter and/or recycling bins except for the name or logo as set forth above* (For informational purposes a summary chart is provided as Appendix 2.)

*Each bus stop shelter may have a maximum of 2 advertising panels, which shall be located only on shelter end panels (i.e. panels which are aligned perpendicular to the curb).* On bus stop shelters greater than 25 feet in length, the Department may increase the maximum advertising dimensions and number[s] of panels by up to [35 square feet and by 1] *two additional panels of a maximum of 27.5 square feet each, provided these panels are located on shelter end panels, or one additional panel of a maximum of 27.5 square feet.* This increase shall apply to no more than 10% of the total number of Franchise Structures citywide, and to no more than 20% of the total number of Franchise Structures in any one community district.

Electronic media (such as "zippers") will be permitted only on a case by case basis and, except for backlighting of printed posters, will be subject to the applicable zoning regulations *property adjacent to* the site. [Backlit advertising will not be permitted on litter or recycling bins.] Audio advertising will not be permitted. *However, an audio component used in connection with a computer information terminal may be permitted in the sole discretion of the Department.*

The display or placement of tobacco advertising shall be prohibited. *The advertising of alcoholic beverages shall not be permitted within 250 feet of any school, day care center or house of worship.* Any type of advertising

Underlined text is to be added. Text in square brackets [ ] is to be deleted. Text in curly brackets { } indicates business terms that will be described in detail in the final Request for Proposals. Text in *bold underlined italic* is the City Council modifications.

- 16 -

NYC019031