Request for Proposals for a Coordinated Street Furniture Franchise

- In order to maximize pedestrian circulation and clear paths, Franchise Structures shall be aligned with adjacent existing elements on the sidewalks to the extent possible.

The Franchisee will be permitted to display advertising on the Franchise Structures subject to specific criteria and limitations as more fully described below.

Compensation to be paid to the City will be the greater of (a) a percentage of gross revenues derived by the Franchisee as a result of the installation of the Shelters, APTs and Newsstands and the display of advertising thereon or (b) a guaranteed minimum annual amount. Compensation will be increased or reduced by a fixed amount for each PSS installed at the direction of the Department. Proposals shall include a proposed percentage of gross revenues, a proposed guaranteed minimum annual amount, and a proposed amount by which compensation will be increased or reduced for a single unit of each type of PSS. The suggested minimum for the proposed guaranteed minimum annual amount of compensation for each year is fifteen million dollars ($15,000,000).

The Franchise will be required to submit monthly reports of gross revenues, in a format approved by the Department, broken down into categories of income. At the end of each operating year, the Franchisee will be required to submit a detailed income and expense statement for the past year's operation.

By submitting a Proposal, Proposers understand and accept that at a minimum the terms and conditions in Resolution No. 1004 adopted by the New York City Council on August 19, 2003, will become part of any Franchise granted.

During the week of **ADD DATE**, the Department will conduct a Preproposal Conference to provide an opportunity for interested parties to ask questions regarding the RFP. Proposers are advised to request scheduling details from the Department Contact.

Proposals are due on **ADD DATE**, at **ADD TIME**, and must be submitted in accordance with the Proposal Package Submission Requirements contained herein.

NYC-OTR005297

Request for Proposals for a Coordinated Street Furniture Franchise

## SECTION II -- SCOPE OF SERVICES

### A.    GENERAL INFORMATION

1.    **Design**

The Coordinated Street Furniture Franchise is an important new initiative for the City of New York. Its primary goals are to augment and significantly improve the appearance and quality of the largest items of furniture in our streets.

Designs must achieve aesthetic excellence. They must be compatible with a wide variety of built contexts and must conform to a citywide coordinated design scheme. Designs for the different types of Franchise Structures must be coordinated so that within any one area there is a harmonious relationship between the various items of street furniture.

Designs will be evaluated on the basis of functional efficiency, aesthetics, security, durability, adaptability for various built environments around the City, including historic districts and individual landmarks, and accommodation of people with disabilities. All designs are subject to the approval of the Department.

For each type of standard Franchise Structure (Bus Stop Shelter, Newsstand, Automatic Public Toilet and Public Service Structure meeting non-pillar dimensional criteria), Proposers must submit two basic designs. The first design shall be suitable for deployment, in the case of Bus Stop Shelters, throughout the City and, in the case of other Franchise Structures, in medium and high-density mixed-use environments. Proposers are required to show how each of these basic designs can be varied to suit specific contexts. This might be achieved, for example, through alternative shapes or forms for component parts, alternate materials, and/or varying the color of applied finishes. The second design for each type of standard Franchise Structure shall be appropriate for use within districts that are designated historic districts or in front of individual buildings that are designated New York City Landmarks. These designs may also be deployed on a limited basis in other locations. Some degree of variation in these basic designs is also required. Any designs for pillar structures shall be additional to the basic designs specified above.

Bus Stop Shelters and Newsstands must be available in several sizes and configurations to meet the constraints imposed by various street conditions and users' needs as specified below. The maximum dimensions of each of the Franchise Structures is described below and summarized in Appendix 2. A list of current locations is available upon request from the authorized Department contact.

All components of the Franchise Structures must be fabricated of high quality, durable, maintainable and vandal-resistant materials. To the maximum extent feasible, all surfaces of the Franchise Structures that are accessible to the public must be graffiti-resistant. Adequate illumination of the Franchise Structures and adjacent sidewalks must be provided. Proposers are encouraged to include the use of independent power sources, such as solar energy, as an alternative to connecting by underground conduit to the local utility.

- 3 -

NYC-OTR005298

Request for Proposals for a Coordinated Street Furniture Franchise

Plans may also allow for the possibility of inclusion of public pay telephones in or on all the Franchise Structures except PSSs. (Additional franchise authority from the Department of Information Technology and Telecommunications will be required to provide public pay telephone service at such telephones.)

The design and placement of the Franchise Structures will be subject to the review and approval of the Art Commission and the Landmarks Preservation Commission, to the extent required by law. All Franchise Structures must be accessible to people with disabilities, and the Franchisee will be required to comply with the Americans with Disabilities Act and any additional federal, state, and local laws relating to accessibility for people with disabilities as applicable. The Franchisee will be required to comply with all New York City laws, rules and codes related to materials and construction.

2.    **Build-out**

The Franchise Structures shall be installed in such locations as directed by the Department in accordance with the consultative process and the siting criteria specified below in Section G and in Appendix 3, respectively.

The Franchisee shall comply with all applicable sections of the building, plumbing and electrical codes of the City of New York, obtain any required permits from the appropriate City agency, and pay any required fees. Where the work to be done in connection with the installation, operation, maintenance, repair, removal or deactivation of the Franchise Structures requires that such work be performed by a plumber or electrician, the Franchisee shall employ and utilize only licensed plumbers and/or electricians. Quality workmanship shall be employed at all times. State-of-the-art construction methods and building materials must be integrated into the Franchise Structures as they become available. After the installation or removal of any Franchise Structure, the sidewalk immediately under or adjacent thereto shall be restored to its proper condition by the Franchisee at the Franchisee's sole expense.

The design and placement of the Franchise Structures shall not result in an installation that causes the destruction or damage of any part of a Sidewalk or Historic Pavement. This shall not preclude the Franchisee from installing a Franchise Structure, including appurtenant utility connections, on a Sidewalk or Historic Pavement by any means necessary. Prior to any such installation, the Franchisee shall be required to:

a) post a performance bond adequate to protect the adjacent property owner against any loss related to the condition of the Sidewalk or Historic Pavement that may be occasioned by the installation, operation, maintenance or removal of a Franchise Structure; and

b) make a good faith effort to procure sufficient quantities of those materials of which the Sidewalk or Historic Pavement is comprised to repair, replace, or restore it to its original condition.

- 4 -

NYC-OTR005299

Request for Proposals for a Coordinated Street Furniture Franchise

In the event that the placement of any Franchise Structure results in damage to the Sidewalk or Historic Pavement, such sidewalk or pavement shall be restored to its original condition at the sole expense of the Franchisee, using in-kind materials.

The Franchisee will be required, at a minimum, to adhere to the following build-out schedule:

|  | Shelters | APTs | Newsstands | PSSs |
|---|---|---|---|---|
| Year 1 | 550 | 10 | 110 | *** |
| Year 2 | 550 | 10 | 110 | *** |
| Year 3 | 550 | -- | 110 | *** |
| Year 4 | 550 | -- | *** | *** |
| Year 5 | 550 | -- | *** | *** |
| Year 6 | 550 | -- | *** | *** |
| Years 7-20 | *** | -- | *** | *** |

*** Additional structures as directed by the Department.

Proposals at a minimum must reflect the above build-out schedule. Proposers are encouraged to provide a more ambitious schedule for any or all aspects of the build-out.

During the term of the Franchise, the Department may direct the Franchisee to remove, replace, and relocate structures as necessary to accommodate changing conditions or to address security concerns. The Franchisee, at the request of the City, shall be required to remove Franchise Structures which interfere with the construction, maintenance or repairs of public utilities, public works or public improvements, or which the City otherwise deems to be inappropriate at a particular location. At the request of the City, Franchise Structures so removed shall be reinstalled when construction, maintenance, or repairs are completed or relocated to sites approved by the City. Notwithstanding the foregoing, sites for relocation of APTs shall be subject to the approval of the Mayor and the Speaker of the Council. All such removals, reinstallations, and/or relocations shall be accomplished at the sole expense of the Franchisee.

Failure to adhere to the build-out schedule as directed by the Department will be grounds for cancellation of all or any portion of the Franchise Contract.

3.    **Maintenance and Operation**

Maintenance of the Franchise Structures by the Franchisee shall include inspecting, cleaning and removing graffiti from the structures on at least two nonconsecutive days each week (or more frequently, as specified below), timely removal of debris, snow and ice in and around the structures, preventive maintenance and prompt repairs. Snow and ice removal shall include clearing a three-foot access path for wheelchairs and spreading salt, or preferably, a noncorrosive de-icer. The sidewalk immediately under or adjacent to the Franchise Structures shall be maintained in its proper condition or, if necessary, restored thereto at the Franchisee's sole expense. Repairs that are necessary to ensure public safety, as determined by the Department, shall be performed within 24 hours of notification by the Department. The Franchisee shall be responsible for collecting refuse or recyclables from any trash receptacles incorporated within or

NYC-OTR005300

on Franchise Structures each time the structures are cleaned, or more often as needed. However, the Franchisee shall not be responsible for the collection of refuse or recyclables from freestanding trash receptacles installed as PSSs.

The Franchise Contract will provide for liquidated damages related to the Franchisee's failure to perform such maintenance to the satisfaction of the Department. A schedule of liquidated damages will appear in the Franchise Contract; liquidated damages will vary, based on the severity of the breach. Repeated failure to perform such maintenance to the satisfaction of the Department may be deemed a default in performance by the Franchisee and grounds for cancellation of all or any portion of the Franchise Contract. The City will have the right to inspect the Franchise Structures and to order compliance with installation, maintenance, operational and repair requirements.

The Franchisee shall also be responsible for acquiring and installing, at its sole expense, hardware and software for a computerized inventory system of the Franchise Structures and sites. This system shall have database, mapping, and graphic capabilities for recording the location, type, design, and features of all installed Franchise Structures and the location, features, and status of proposed sites for Franchise Structures, including sites that have been rejected. The system shall also have the capacity for contemporaneous two-way information sharing between the Department and the Franchisee regarding the installation, operation, and maintenance of the Franchise Structures. The Franchisee shall be responsible for maintaining said system and incorporating state-of-the-art technologies throughout the term of the Franchise. Proposers are encouraged to develop PC-based systems that use or are compatible with standard, commercially available programs. Such system shall be installed and operational at the commencement of the Franchise. On the expiration or sooner termination of the Franchise Contract, the computer system and data shall become the property of the City without compensation to the Franchisee.

4.   **Ownership of the Structures**

The Franchise Structures will remain the property of the Franchisee during the term of the Franchise Contract. On expiration of the Franchise Contract, the Franchise Structures shall become the property of the City without compensation to the Franchisee. Alternatively, the City may elect to have the Franchisee remove any or all of the Franchise Structures and restore their sites to their proper condition, which removal and restoration shall be at the Franchisee's sole expense.

In the event the Franchise Contract is canceled by the Department in whole or in part prior to the expiration date for any reason other than by reason of default of the Franchisee, the City shall have the option to purchase from the Franchisee the then-existing Franchise Structures. The purchase price shall be determined by calculating 100% of the cost of fabricating and installing the structures, less depreciation on a straight line basis using an annual depreciation rate of 10%. The cost of fabricating and installing the structures and the process for determining the installation dates of the Franchise Structures shall be determined during negotiation of the Franchise Contract and shall be included in such contract. Alternatively, the Department may direct the Franchisee to remove any or all of the Franchise Structures and restore their sites to their proper condition, which removal and restoration shall be at the Franchisee's sole expense.

NYC-OTR005301

In the event of termination in whole or in part due to the default of the Franchisee, the Franchise Structures shall become the property of the City without any compensation to the Franchisee. Alternatively, the City may direct the Franchisee to remove any or all of the Franchise Structures and restore their sites to their proper condition, which removal and restoration shall be at the Franchisee's sole expense.

5.    **Security Fund**

Prior to the execution of the Franchise Contract, the Franchisee will be required to deposit with the New York City Comptroller an amount to be determined by the City, which will be not less than five million dollars ($5,000,000), sufficient to ensure the faithful performance by the Franchisee of all conditions, provisions, and requirements of the Franchise Contract.  The Department will be authorized to make withdrawals from the Security Fund should the Franchisee fail to pay the required compensation or taxes.  The Department also will be authorized, in the event the Franchisee fails to cure a breach of the Franchise Contract after notice from the Department, to cause the necessary work to be done and collect the cost thereof from the Security Fund.  The Department also will be authorized to assess and collect liquidated damages from the Security Fund.

6.    **Performance Bond**

Prior to the execution of the Franchise Contract, the Franchisee will be required to deposit with the New York City Comptroller a surety performance bond in an amount to be determined by the City sufficient to ensure the installation of the Franchise Structures and the faithful performance of all of the terms and conditions of the Franchise Contract, including, but not limited to, the build out obligations set forth in Section II.A.2.  This performance bond shall also expressly provide for the in-kind replacement and repair of Sidewalks and Historic Pavement.

A portion of this performance bond may be in the form of cash, and the remainder shall be in the form of a bond, legally executed by a surety company or companies approved by the City of New York and authorized to do business in the State of New York.  A portion of the performance bond will be reduced or returned, as the case may be, to the Franchisee upon the successful installation of the Franchise Structures, in accordance with a schedule to be determined in the Franchise Contract.  The remaining portion will remain on deposit throughout the term of the Franchise.

7.    **Liability and Insurance**

The Franchisee will be liable for, and shall indemnify, defend and hold the City, its officers, agents, and employees harmless from, any and all claims or damages to persons or property by reason of the installation, operation or maintenance of the Franchise Structures.  The Franchisee will be required to procure and maintain, at its sole cost and expense, the following types of insurance from an insurance company acceptable to the City:

NYC-OTR005302

Request for Proposals for a Coordinated Street Furniture Franchise

a)   Commercial General Liability Insurance in the amount of ten million dollars ($10,000,000) aggregate and two million dollars ($2,000,000 per occurrence) in the Company's name, and naming the City, its officers, agents and employees as an additional insured thereunder, and endorsed to cover the liability assumed by the Company.
b)   Workers' Compensation Insurance in accordance with applicable New York State law.
c)   Employers' Liability Insurance in accordance with applicable New York State law.
d)   Automobile Liability Insurance in the amount of two million dollars ($2,000,000) aggregate and one million dollars ($1,000,000 per occurrence) and naming the City, its officers, agents, and employees as an additional insured.

## B.    BUS STOP SHELTERS

### 1.    Design

The City seeks excellence in the design, installation and maintenance of Bus Stop Shelters.

Bus Stop Shelters must first and foremost provide meaningful protection from precipitation, wind, and sun, and the number and placement of side enclosures shall be sufficient to accomplish this purpose. At the same time, ease of access for both functional and security reasons must be maintained.

The Department strongly encourages innovation and flexibility in Bus Stop Shelter design. The Franchisee will be required to construct shelters in a variety of shapes and sizes to accommodate different street conditions and service needs, including extra-large Shelters for heavily used bus stops and Shelters with shorter and narrower footprints for sidewalks where space is limited in length or in width.

All designs must provide at least the following amenities:

- Adequate illumination of the interior and the adjacent sidewalk.
- Passenger seating which by design precludes reclining and may or may not be installed in every Shelter, but which the City may require to be installed or removed at any time.
- An area or areas on the structure for bus route maps, street maps, bus stop name and street identification, Guide-A-Ride canisters and other information. (Specifications for current bus stop signs and Guide-A-Ride canisters are available upon request from the authorized Department contact.) Bus stop name and street identification shall be back-lit or otherwise illuminated and shall be designed in such a manner to maximize the ability of bus passengers to see such name and identification from the bus as the bus approaches the bus stop.

Proposers are encouraged to propose additional public amenities.

NYC-OTR005303

Request for Proposals for a Coordinated Street Furniture Franchise

Materials used for the walls of the Shelters must be transparent. The dimensions of structural frames and supports shall be kept at a minimum. In the event that glass is the material proposed for the Shelter walls, an alternative unbreakable and, to the maximum extent feasible, scratch-resistant material must also be proposed for Shelters at locations where there is a high incidence of vandalism.

Advertising panels, maps, and signs shall be located so as to minimize their impact on the visibility of adjacent buildings and the interior of the Bus Stop Shelter. They shall not interfere with pedestrian or motorist sight lines necessary for traffic safety.

The maximum area of the largest Bus Stop Shelter shall be 150 square feet. The maximum length shall be 30 feet; the maximum width, excluding the roof, shall be 5 feet; and the maximum height shall be 9 feet.

## 2.    Build-out

The City seeks a Proposal for a minimum of 3300 Bus Stop Shelters by the end of the sixth year of the Franchise term with options to direct the installation of additional Bus Stop Shelters, to be exercised, if at all, at the sole discretion of the City, but in no event later than the eighteenth year of the twenty-year Franchise. The total number of Bus Stop Shelters will not exceed 3500.

At the commencement of the franchise term, the Franchisee shall take ownership of all existing shelters from the Department. By no later than the end of the sixth year, the entire inventory must conform to the new designs and amenities, preferably through the construction of new Shelters, although proposals to accomplish this through retrofitting of existing shelters of the current design will also be considered. The Franchisee will be required to construct or retrofit at least 550 Shelters per year, as directed by the Department, during the first six years of the term. Said construction and/or retrofitting shall be done in accordance with an annual schedule to be furnished by the Department to the Franchisee. Said schedule shall be designed to afford a fair distribution of new and/or retrofitted Shelters throughout the five boroughs of the City and shall be based upon ridership and boarding data from the MTA New York City Transit and from authorized private carriers.

Shelters will be purchased, retrofitted, or constructed by the Franchisee at its sole expense. The Franchisee will be responsible for all installation costs, including providing the Shelters with electric power.

The Shelters will be located at bus stops where demand for their use is greatest, as determined by the Department following the consultation process described below.

During the term of the Franchise, the Department may direct the Franchisee to remove, replace, and/or relocate Shelters as necessary to accommodate changing needs and concerns. Such removals, replacements, and relocations shall be accomplished at the sole expense of the Franchisee.

## 3.    Maintenance and Operation

NYC-OTR005304

Immediately on the commencement of the Franchise and throughout the Franchise term, the Franchisee will be responsible for the complete maintenance of the entire inventory of Bus Stop Shelters. The maintenance shall include, but shall not be limited to, cleaning, inspecting, and removing graffiti and refuse from the Shelters on at least two nonconsecutive days each week, promptly clearing and removing debris, snow, and ice from the ground in and around the Shelters, repairing or replacing damaged parts within 24 hours of notification by the Department, and preventive maintenance. Snow and ice removal shall include clearing a three-foot access path for wheelchairs and spreading salt or ice remover.

## 4.    Intelligent Transportation Systems

The successful Proposer will be required to cooperate with the Department, MTA New York City Transit, or other agencies to make the structures available for the installation of wiring and equipment and the ongoing maintenance of Automatic Vehicle Location and Control (AVLC) systems as such systems are developed.

The Franchisee will not be responsible for the acquisition, installation, or maintenance of AVLC equipment or for associated costs. However, the Franchisee, as owner and maintainer of the Bus Stop Shelters, will be required to cooperate in its design, installation, and maintenance. This cooperation will include providing access to the Bus stop Shelters to permit AVLC installation and maintenance, and ensuring that routine maintenance of the shelters does not interfere with the equipment.

The expected dimensions of the video monitors and message signs for the operational test that will involve thirty Bus Stop Shelters are a length of 20.5 inches, a height of 9 inches and a depth of 7.25 inches.

## C.    AUTOMATIC PUBLIC TOILETS

## 1.    Design

The City seeks excellence in the design, installation and maintenance of APTs.

Each unit must be accessible to persons with disabilities and must contain a commode; a hand-washing station that provides warm soapy water followed by warm rinse water; toilet tissue and seat cover dispensers; and a paper-towel dispenser or air-drier. Heating, ventilation and lighting systems, including emergency lighting, must be provided. The unit must be designed with the ability to fully and automatically self-clean, deodorize and disinfect the floor, seat, and bowl after every use. All APT units must contain a self-activating warning system that communicates contemporaneously all significant maintenance and operations problems to an operations center. All APT units must provide external indicators informing potential users of whether the unit is available for use.

In addition, every APT unit must provide an emergency alarm system that allows for two-way communication for activation by the user and transmission to an operations center and the Police

NYC-OTR005305

and/or Fire Department. A smoke and fire alarm system with an automatic door-opening device must be provided. An emergency access portal, in addition to the user door, must be provided to allow access to the interior by police or other emergency services.

All APTs must be equipped with a timing device that will cause the door to open automatically after a fixed period of time, with an audible and visual warning signal to alert the user one minute prior to the door's opening.

The maximum area of each APT shall be 78 square feet. Except for pillar-style (cylindrical) units, the maximum length shall be 12 and 1/2 feet, the maximum width shall be 8 feet, and the maximum height shall be 12 feet. The maximum diameter of pillar-style units shall be 8 feet and the maximum height shall be 14 feet. Proposers are strongly encouraged to propose designs that utilize the minimum footprint necessary.

2.      **Build-out**

The City seeks a Proposal for a <u>maximum of 20</u> APTs by no later than the end of the second year of the Franchise term.

All APT sites shall be selected by the Department following the consultative process described below, and shall be subject to the final approval of the Mayor and the Speaker of the City Council. During the term of the Franchise, the Department may direct the Franchisee to remove or relocate APTs. Sites for relocation of APTs shall be subject to the approval of the Mayor and the Speaker of the Council.

3.      **Maintenance and Operation**

The APTs must be open to the public at least between the hours of 8:00 A.M. and 8:00 P.M. daily unless longer hours are established for a particular site by the Department.

The Franchisee will be responsible for the complete maintenance of every APT installed. This shall include but not be limited to daily visits to each unit to ensure that all systems are functioning properly, that the units are clean, and that all dispensers are fully stocked. In addition, the Franchisee must respond immediately to its self-activating maintenance and operation warning system. Comfortable interior temperature, ventilation, and illumination shall be maintained at all times when the APT is in operation.

D.      **NEWSSTANDS**

1.      **Design**

The City seeks excellence in the design, installation and maintenance of Newsstands.

Newsstands must provide optimum conditions for selling and displaying newspapers, periodicals and convenience items, as well as adequate storage space.

NYC-OTR005306

Request for Proposals for a Coordinated Street Furniture Franchise

A Newsstand structure may not occupy more than 72 square feet of sidewalk space when in operation, including all necessary doors, screens, shelves, racks and cases. Each unit must be accessible to persons with disabilities who may operate or patronize the structure. The maximum width shall be 6 and 1/2 feet and the maximum length shall be 14 feet. A Newsstand structure may include a roof overhang extending no more than 3 feet from the front of the stand beyond the maximum footprint, at a minimum height of 7 and 1/2 feet above the sidewalk. Such overhang may extend along the sides of the Newsstand roof a distance of 2 feet from the front of the roof. The maximum height of the Newsstand structures shall be 9 feet. All Newsstands must be designed and built in compliance with the Americans with Disabilities Act. The interior design of Newsstands must reflect the criteria in Appendix 12.

The majority of the Newsstand structures will be constructed on sites that are currently occupied by existing Newsstands, and in some such instances, sidewalk conditions will prohibit exceeding the existing footprint. Therefore, Proposers must be prepared to construct Newsstands of a variety of shapes and sizes. In the event that a public pay telephone is incorporated in the design of a Newsstand, such telephone shall not be located so as to obstruct or interfere with the front sales area of the Newsstand.

## 2.    **Build-out**

The City seeks a Proposal for a minimum of 330 Newsstands by the beginning of the fourth year of the Franchise term with an option to direct the installation of additional Newsstands to be exercised at the sole discretion of the Department.

This build-out will include the replacement of approximately 330 existing Newsstands, which are owned and maintained by individual operators. Most of the replacement Newsstands will be installed at or near existing Newsstand sites, except as otherwise provided in section 20-231 of the New York City Administrative Code. Upon notification by the Department, the Franchisee shall also be responsible for dismantling, removing, and, if necessary, disposing of any or all of the existing Newsstand structures.

New Newsstand sites will be determined by the issuance of a license by the Department of Consumer Affairs pursuant to section 20-231 of the New York City Administrative Code.

The Department shall, in its sole discretion, determine the schedule for the construction, replacement and relocation of individual Newsstands, in accordance with the build-out schedule set forth in Section II.A.2 of this RFP. The Franchise Contract shall contain specific time limits for the construction, replacement and relocation of individual Newsstands. The Franchisee shall make every effort to minimize the time a Newsstand is out of operation due to construction, replacement or relocation. Failure to complete the construction, replacement or relocation of any Newsstand within the time specified shall result in the assessment of liquidated damages pursuant to the Franchise Contract.

The Franchisee will be responsible for all installation and costs associated with such installation, except as otherwise provided in section 20-231 of the New York City Administrative Code, including any necessary electric and telephone hook-ups.   The franchisee shall be responsible

- 12 -

NYC-OTR005307

for arranging and paying for the installation of any infrastructure required by the appropriate utility to establish a separate account for the Newsstand operator's usage of electricity at the Newsstand structure.

**3.     Maintenance and Operation**

The Franchisee will be responsible for the maintenance of the exterior of every Newsstand structure that it has constructed and installed throughout the Franchise term. The Franchisee shall be required to cooperate with the operator of the Newsstand regarding maintenance and repair of the Newsstand structure.

The Franchisee will not be responsible for operating the Newsstands or for cleaning their interiors. The Franchisee will not be responsible for the cost of any telephone or electricity use by the Newsstand operator, nor for any other utility cost that is not necessary to the Franchise. The Franchisee will not be permitted to derive revenue from the operation of the Newsstands.

**E.     PUBLIC SERVICE STRUCTURES**

Proposals shall include plans for the installation, operation, and maintenance of trash receptacles, multi-rack newsracks and information/computer kiosks that provide access to government or commercial activity. All PSSs shall be installed, maintained, and removed in accordance with all applicable laws, rules, regulations, and guidelines adopted or established by the City. The public service provided shall be immediately apparent to the passerby and shall not be obscured physically or visually by the name or logo of any sponsoring entity.

With the rapid development of information technology, the Department anticipates that opportunities for more advanced types of PSSs will expand after the issuance of this RFP. Additionally, the City's needs in relation to street furniture are likely to change over time. During the Franchise term, the Franchisee may propose to provide additional types of PSSs or may be asked to do so by the Department subject to amending the Franchise Contract. All such changes will also be subject to any applicable public review, including the Uniform Land Use Review Procedure and approval by the Franchise and Concession Review Committee.

The Franchisee will also be responsible for maintaining one existing City-owned pedestrian information kiosk, listed below, in the same manner as the Franchise Structures.

|  | Street | Cross Street(s) | Corner/Side |
|---|---|---|---|
| **Times Square** | W 43rd Street | Broadway | NW |

All PSSs shall be kept as small as possible consistent with their function.

The maximum area of each Information/computer Kiosk shall be 16 square feet. The maximum length shall be 4 feet and the maximum width shall be 4 feet. An Information/computer Kiosk may include a roof overhang extending no more than 2 feet beyond the maximum footprint on one side of the structure, at a minimum height of 7.5 feet above the sidewalk. No Information/computer Kiosk may exceed 9 feet in height.

- 13 -

NYC-OTR005308

The maximum area of each trash receptacle shall be 6.25 square feet. The maximum length shall be 2.5 feet and the maximum width shall be 2.5 feet. No trash receptacle may exceed 4 feet in height. In addition, the maximum size and weight of each trash receptacle shall be subject to the approval of the Department of Sanitation. The Franchisee shall not be responsible for the collection of refuse from freestanding trash receptacle installed as Public Service Structures.

The criteria that regulate multi-rack newsracks are found in section 19-128.1 of the New York City Administrative Code and in section 2-08 of Chapter 2 of Title 34 of the Rules of the City of New York, which are attached as Appendix 13. No multi-rack newsrack shall be higher than sixty (60) inches, wider than ninety (90) inches or deeper than thirty-six (36) inches.

## F.    REVENUE OPPORTUNITIES

The primary source of revenue to the Franchisee will be the sale of advertising space on the Franchise Structures. Advertising shall be permitted on the exterior of the structures subject to the conditions specified below. The total maximum advertising area shall be 55 square feet on Bus Stop Shelters and 82.5 square feet on APTs and Newsstands. Advertising on PSSs shall be prohibited except to the extent that the name or logo of a sponsoring entity, not to exceed 2 square feet, shall be permitted on Trash receptacles and Information/Computer Kiosks. The maximum advertising height shall be 7 feet on Bus Stop Shelters and 9 feet on APTs and Newsstands. However, the maximum height of advertising on pillar style APTs shall be 12 feet. No advertising shall be permitted on the exterior of Information/computer Kiosks or Trash receptacles except for the name or logo as set forth above. No advertising, including the name or logo of a sponsoring entity, shall be permitted on the exterior of a multi-rack newsrack. No advertising shall be permitted on APTs in parks; however, advertising may be placed on sidewalks adjacent to parks. (For informational purposes, a summary chart is provided as Appendix 2.)

Each Bus Stop Shelter may have a maximum of two advertising panels, which shall be located only on Shelter end panels (*i.e.*, panels that are aligned perpendicular to the curb). On Bus Stop Shelters greater than 25 feet in length, the Department may increase the maximum advertising dimensions and number of panels by up to two additional panels of a maximum of 27.5 square feet each, provided these panels are located on Shelter end panels, or one additional panel of a maximum of 27.5 square feet. This increase shall apply to no more than 10% of the total number of Franchise Structures citywide, and to no more than 20% of the total number of Franchise Structures in any one community district.

The Franchisee shall comply with the terms of the Bus Stop Shelter contract in effect at the time with respect to the transition from the existing Bus Stop Shelter Franchise to the Franchise to be awarded pursuant to this RFP. The current Bus Stop Shelter contract provides that in the event the current franchisee has entered into contracts for advertising that is to be displayed after the current franchisee has ceased to operate the shelters, the current franchisee shall retain 16% of the gross revenue from any such advertising that is displayed 90 days or less after it ceases to operate the shelters, but shall not retain any revenue from advertising that is displayed

- 14 -

NYC-OTR005309

more than 90 days after it ceases to operate the shelters. The revenue to be retained by the current franchisee shall not in any way diminish the revenue to be paid by the Franchisee as compensation to the City. A copy of the Bus Stop Shelter franchise contract may be obtained by calling the Department Contact.

Electronic media (such as "zippers") will be permitted only on a case-by-case basis and, except for backlighting of printed posters, will be subject to the applicable zoning regulations for property adjacent to the site. Audio advertising will not be permitted. However, an audio component used in connection with an Information/computer Kiosk may be permitted in the sole discretion of the Department.

The display or placement of tobacco advertising shall be prohibited. The advertising of alcoholic beverages shall not be permitted within 250 feet of any school, day care center, or house of worship. Any type of advertising which is false or misleading, which promotes unlawful or illegal goods, services or activities, or which is otherwise unlawful or obscene as determined by the Department, including but not limited to advertising that constitutes the public display of offensive sexual material in violation of Penal Law Section 245.11, shall also be prohibited. Any such prohibited material displayed or placed shall be immediately removed by the Franchisee upon notice from the Department.

Consistent with State Law, the Franchisee will also be permitted to charge a minimal fee for the use of the APTs. Proposers are invited to submit proposals for other sources of revenue such as access charges or on-line advertising at Information/computer Kiosks. Any such charge or other consideration will be subject to the approval of the Department.

## Public Service Advertisement Space

The Franchisee shall be required to provide space for public service advertisements on the Franchise Structures at no cost to the City. The space provided shall represent a minimum of 2.5% of the total number of advertising panels on the Franchise Structures, which shall be equitably distributed among the various types of Franchise Structures. The installation, maintenance and removal of all public service advertisements shall be performed by the Franchisee in accordance with the same standards and utilize the same materials and methods as are used by the Franchisee for commercial displays.

## Marketing Partnership Agreements

Proposers are hereby advised that the City, through its official marketing agency, New York City Marketing Development Corporation (herein "NYC Marketing"), may enter into "Marketing Partnership" agreements. In addition to the 2.5% set aside above, the City reserves 20% of the advertising space on all Franchise Structures for use by the City and its marketing partners at no cost to the City or its marketing partners. Such space shall be distributed fairly throughout the City and shall represent a corresponding percentage of the value of the advertising space citywide. The installation, maintenance and removal of the advertising in this reserved space shall be performed by the Franchisee at no cost to the City or its marketing partners in accordance with the same standards and utilize the same materials and methods as are used by

NYC-OTR005310

Request for Proposals for a Coordinated Street Furniture Franchise

the Franchisee for other commercial displays. The Franchisee shall provide a monthly inventory of the advertising locations set aside for and used by the City for the purpose of certifying compliance with the Franchise Agreement.

*The language of the following paragraph is still being worked out by the Law Dept.*
The City will also have the yearly option to return some of the 20% in subsequent years. In the event the City exercises its option in any given year, the compensation for the next year will be increased on a cost per panel basis. Proposers must provide a cost per panel. Each October the City will notify the Franchisee whether it intends to exercise this option and how much space will be returned. The new percentage will take effect the following January.

Olympics

Proposers should consider that, if the 2012 Olympics or any other Olympics are awarded to New York City:
(1)     The City may require that the Franchisee cease to sell and place advertising on all or some of the Franchise Structures during the Olympic period.
(2)     The City, at its sole discretion, may impose restrictions on the parties who may advertise on the Franchise Structures and/or the nature of advertising that will be allowed during the Olympic period.
(3)     The City or its designated representative for advertising that may be displayed may assume control of advertising sales and placement during the Olympic Period.
(4)     The Franchisee will continue to be responsible to install, maintain and service the Franchise Structures, and the Franchisee will be required to comply with all other terms of the Franchise Agreement except those that are changed by the written directive of the City as reflected in this section of the RFP and the Franchise Agreement.

The Olympic period shall be defined as the period starting four weeks prior to the commencement of the Olympic Games and ending two weeks after the events are terminated.

Proposers should indicate the method by which they wish to be compensated for foregone revenue if the City were to exercise some or all of the provisions described above and in the event that the Franchisee loses advertising revenue as a result of any such actions taken by the City during the Olympic period. An example of such method of compensation would be a pro rata reduction of the minimum payment or percentage of gross revenue payment made to the City based on the reduction in gross advertising revenue realized by the Franchisee when gross revenue to the Franchisee for the Olympic period is compared to a similar historical time period.

## G.    SITE SELECTION AND CONSULTATION

Sites for Franchise Structures will be selected by the Department in accordance with the criteria specified in Appendix 3.

The Department will adhere to the following consultative process in designating new sites for Bus Stop Shelters, APTs and PSSs:

NYC-OTR005311

Request for Proposals for a Coordinated Street Furniture Franchise

1.    The Department will request recommendations for new sites for Bus Stop Shelters, APTs and PSSs from Council Members, Borough Presidents, Community Boards, Business Improvement Districts (BIDs), and the MTA New York City Transit (for Bus Stop Shelters only.)

2.    The Department will review these recommendations and any other suggested sites for compliance with the siting criteria (Appendix 3) and additionally consider the following factors:

> Bus Stop Shelters:  Ridership figures, transfer points, location of existing shelters, geographic distribution throughout the five boroughs, sidewalk activity, presence of other Franchise Structures on the sidewalk

> APTs:  Availability of water and sewer service, public convenience, enhancement of commercial and tourist areas, sites recommended by the Department of Parks and Recreation, geographic distribution, sidewalk activity, presence of other Franchise Structures on the sidewalk.

> Public Service Structures:  Sidewalk activity, geographic distribution, presence of other Franchise Structures on the sidewalk

3.    The Department will distribute lists of proposed sites determined by the Department to be desirable for a 60-day comment period to Council Members, Borough Presidents, Community Boards, other appropriate City agencies, BIDs, the MTA New York City Transit (for Bus Stop Shelters only), adjacent property owners (for APTs only) and any other interested party, including Proposers, if they so request.

4.    After consideration of the comments and selection of a Franchisee the Department will choose final sites and notify Council Members, Borough Presidents, Community Boards, other appropriate City agencies, the Franchisee, and any other person who commented on the proposed sites.  The sites for installation of APTs shall be subject to the approval of the Mayor and the Speaker of the Council.

5.    Newsstands:  Newsstands remain a licensed operation so new locations shall be sited in accordance with the provisions of section 20-231 of the New York City Administrative Code and any rules promulgated pursuant thereto.

At least once each year, the Department will request from all Community Boards, BIDs, Council Members, Borough Presidents, and the Franchisee a prioritized list of locations for the placement or removal of Franchise Structures.

The Department may direct the Franchisee to replace Bus Stop Shelters, Newsstands, and PSSs at existing sites, independent of the above consultative process.

## H.    RESPONSE TO COMPLAINTS AND REQUESTS FOR REMOVAL

NYC-OTR005312

Request for Proposals for a Coordinated Street Furniture Franchise

Any complaints the Department receives concerning the siting, installation or requested removal of the Franchise Structures shall be responded to by the Department. All Franchise Structures shall contain a conspicuously posted telephone number of a City government office to which the public may direct complaints and comments and instructions for filing a complaint. The Franchisee shall cooperate with the Department in timely responding to any such complaints.

NYC-OTR005313

Request for Proposals for a Coordinated Street Furniture Franchise

**APPENDIX 2**
**Summary Chart: Dimensions and Clearances**
**(For Informational Purposes Only)**

| | Clear Path | Curb setback | Maximum Size | | | | Maximum Advertising | |
|---|---|---|---|---|---|---|---|---|
| | | | Area | Length | Width | Height | Area | Height |
| Shelter | 7 ft | 3 ft | 150 sq ft | 30 ft | 5 ft | 9 ft | 55 sq ft | 7 ft |
| APT | 8 ft | 1.5 ft | 78 sq ft | 12.5 ft | 8 ft | 12 ft | 82.5 sq ft | 9 ft |
| Pillar | 8 ft | 1.5 ft | | 8 ft | 8 ft | 14 ft | 82.5 sq ft | 12 ft |
| Newsstand | 9.5 ft | 1.5 ft | 72 sq ft | 14 ft | 6.5 ft | 9 ft | 82.5 sq ft | 9 ft |
| Information/computer kiosks | 9.5 ft | 1.5 ft | 16 sq ft | 4 ft | 4 ft | 9 ft | None* | None* |
| Trash receptacle | 9.5 ft | 1.5 ft | 6.25 sq ft | 2.5 ft | 2.5 ft | 4 ft | None* | None* |
| Multi-rack Newsrack | 8 ft | 1.5 ft to 2 ft | 22.5 sq ft | 3 ft | 7.5 ft | 5 ft | None** | None** |

* The name or logo of a sponsoring entity, covering an area not to exceed 2 square feet, shall be permitted.
** The name or logo of a sponsoring entity shall not be permitted.

NYC-OTR005314

Request for Proposals for a Coordinated Street Furniture Franchise

**APPENDIX 3**
**Siting Criteria**

The general provisions contained in the first section of these criteria apply to all Franchise Structures, except Newsstands, trash receptacles, and multi-rack newsracks. Newsstands shall be sited in accordance with the criteria in section 20-231 of the Administrative Code and any rules promulgated by the Department of Consumer Affairs pursuant thereto. Trash receptacles shall be sited in accordance with relevant Department of Sanitation regulations and guidelines. Copies of the referenced documents may be requested from the Department contact. Multi-rack newsracks shall be sited in accordance with section 19-128.1 of the New York City Administrative Code and section 2-08 of Chapter 2 of Title 34 of the Rules of the City of New York, attached as Appendix 13. Additional requirements applying to particular types of structures are stated in the sections that follow. These additional requirements are designed to accommodate differences in the structures' function, appearance, and use and to ensure appropriate and consistent locational opportunities.

**A.    General Provisions**

1.    Clear Path. All Franchise Structures shall be installed so as to allow a straight unobstructed path ("clear path") for pedestrian circulation on the sidewalk. The dimensions of the clear path for each type of structure are specified in the subsequent sections. No grates or cellar doors shall be included as a part of the clear path directly in front of or behind a Franchise Structure.

2.    Sight Lines. The placement of the Franchise Structures shall not interfere with pedestrian or motorist sight lines necessary for traffic safety.

3.    Minimum Distance Requirements. Unless otherwise stated, distances shall be measured between the nearest points, viewed in plan, of the Franchise Structure and the specified object or element. Where a distance is required to be measured parallel to the curb line, the measurement shall be taken between the two lines perpendicular to the curb line, one touching the Franchise Structure and the other touching the specified object or element, that are closest to each other.

    a)    The following minimum distances shall be required between the Franchise Structure and the specified element or object:

        i)    Fifteen feet, measured parallel to the curb line, from Bus Stop Shelters; Automatic Public Toilets; Newsstands; information/computer kiosks; enclosed or unenclosed sidewalk cafes; subway entrances or exits.

        ii)    Ten feet from: Fire hydrants; standpipes; Siamese connections; driveways (which distances must also meet the Department's safety and operational requirements); building lines extended at the intersection of two streets, in accordance with Executive Order No. 22 of 1995 (see Figure 1).

        iii)    Five feet from: The trunk of any tree; canopies; information kiosks.

        iv)    Three feet from: Streetlights and traffic signal poles.

- 42 -

NYC-OTR005315

v)    Two feet from: Ventilation or other grills; manholes; access plates; street signs; parking meters; fixed litter baskets; tree pits; valve boxes; telephones; cellar doors; mailboxes.

vi)    One and one-half feet from the curb of any street, except for Bus Stop Shelters (see below).

b)    In addition to the above distance requirements, for any Franchise Structure where access for the public is provided from a side of the structure other than that adjacent to the clear path, the following minimum distances shall be required between each such side of the Franchise Structure and the specified element or object:

i)    Five feet from any above-ground structure (*e.g.*, street lights, traffic signal poles, street signs, parking meters, fixed litter baskets, telephones, mail boxes)

ii)    Three feet from any element or object that is flush with the sidewalk (*e.g.*, ventilation or other grills, manholes, access plates, tree pits, valve boxes)

c)    No Franchise Structure may be installed directly in front of a building entrance or exit without written permission from the abutting property owner. No Franchise Structure shall be installed within 5 feet (measured parallel to the curb line) of a building entrance except where the Department determines that this requirement cannot be reasonably met.

d)    No Franchise Structure may be installed within 3 feet of the property line of a residential or commercial structure without written permission from the abutting property owner.

e)    No Franchise Structure may be located under a fire escape.

f)    Except for Bus Stop Shelters, no Franchise Structure may be located within a bus stop zone or a taxi stand.

4.    <u>Vaults</u>. Where a vault is present, the Franchisee shall submit certification from an engineer that the installation of the Franchise Structure will in no way damage the vault.

5.    <u>Electrical Sources</u>. Franchise Structures should be as close as possible, subject to all other distance requirements, to the source of electricity, if required for the operation of the Franchise Structure. Such Franchise structures may not be sited farther than 150 feet from the nearest available electric power source, unless otherwise directed by the City. The Franchisee is prohibited from using a traffic signal or Con Edison type #12 post, or any power source across a major or protected roadway, unless authorized to do so by the Department.

6.    <u>Landmarks and Historic Districts</u>. The placement of the Franchise Structures will be subject to the review and approval of the Landmarks Preservation Commission to the extent required by law.

NYC-OTR005316

Request for Proposals for a Coordinated Street Furniture Franchise



Figure 1. Clear Corner Policy (Executive Order No. 22 of 1995)

**B.    Bus Stop Shelters**

1.    <u>Clear Path</u>.  In general, Bus Stop Shelters shall be installed to allow a minimum clear path of 7 feet in width.  However, a reduced clear path may be permitted by the Department if necessary to allow the installation of a Bus Stop Shelter.  In no case shall such clear path be less than 5 feet in width.  The clear path for a Bus Stop Shelter may include the area covered by the Bus Stop Shelter's roof overhang, provided such overhang is a minimum of 7 and 1/2 feet high.

2.    <u>Clearance from Curb</u>.  All Bus Stop Shelters shall be installed to allow a straight unobstructed path a minimum of 3 feet in width between the Shelter and the curb. Viewed in plan, the roof of a Bus Stop Shelter including any overhang shall be set back from the curb line a minimum distance of 2 feet.

3.    <u>Relation to the Bus Stop</u>

    a)    All Bus Stop Shelters shall be located as close as possible to the head of the bus stop, but no less than 10 feet from the head of the bus stop at locations where parking is permitted immediately adjacent to the head of the bus stop.

    b)    If a Bus Stop Shelter has only one enclosed end, it should be situated toward the head of the bus stop.

**C.    Automatic Public Toilets, Public Service Structures**

1.    <u>Clear Path</u>

    a)    All APTs shall be installed to allow a minimum clear path of 8 feet in width.

- 44 -

NYC-OTR005317

Request for Proposals for a Coordinated Street Furniture Franchise

   b)  All information/computer kiosks shall be installed to allow a minimum clear path of 9 and 1/2 feet in width.

   c)  The clear path for an information/computer kiosk may include an area up to 3 feet in width covered by the structure's roof overhang, provided such overhang is at a minimum height of 7.5 feet above the sidewalk.

   d)  The clear path shall extend 15 feet to each side of the Franchise Structure.

   e)  Franchise Structures on sidewalks shall be located either within 2 and 1/2 feet of the curb line or within 1 foot of the building line.

2.  <u>Minimum Distance Requirements</u>.  A minimum 15-foot distance, measured parallel to the curb, is required upon installation between the Franchise Structure and:

   a)  Entrances to houses of worship.

   b)  Any entrance to the elevator lobby of a building having non-residential uses above the street-level floor and having 16 floors in height or more with a frontage of at least 100 feet on narrow streets or 140 feet on wide streets (as defined in Section 12-10 of the New York City Zoning Resolution).

   c)  Any entrance to the lobby of a hotel.

   d)  Any entrance to a bank from the street that serves the public, including ATM entrances.

   e)  Entrances to theaters and box offices.

**D.**  **Additional Requirements for Automatic Public Toilets**

1.  <u>Permissible Locations</u>.  APTs shall be located only:

   a)  On wide streets, as defined in Section 12-10 of the New York City Zoning Resolution, only in commercial, manufacturing or mixed use districts.

   b)  On sidewalks or plazas adjacent to property owned or leased by a government agency or public authority or under the jurisdiction of the Economic Development Corporation.

   c)  On traffic islands or public places bounded on all sides by mapped streets under the jurisdiction of the Department.

   d)  On or adjacent to parks property or playgrounds, subject to the approval of the Department of Parks and Recreation.

2.  <u>Utilities</u>.  The siting of APTs shall be subject to consideration of the economic feasibility of making necessary utility connections.  All APT sites are subject to the additional approval of the Department of Environmental Protection.

**E.**  **Special Circumstances**

The Commissioner may waive or modify the above criteria in specific cases, except where prohibited by law, if, in his or her opinion, such waiver or modification is consistent with the public health, safety and general welfare.  No such waiver or modification shall be granted without prior consultation with the affected Council Member, Borough President, and Community Board.  Similarly, the Department may refrain from siting a Franchise Structure at a

NYC-OTR005318

particular location that in the opinion of the Commissioner would result in an over-concentration of Franchise Structures.

Notwithstanding anything contained herein, the siting of Franchise Structures shall be subject to any applicable requirements of the New York City Administrative Code. Notwithstanding anything contained herein, trash receptacles may be replaced at their existing locations in accordance with the Department of Sanitation's Operation Order for the placement of litter baskets and the Mayor's Clear Corner Policy (Exec. Order No. 22 of 1995).

A newsstand required by the provisions of paragraph five of subdivision k of section 20-231 of the New York City Administrative Code to be relocated at any time shall be eligible to be relocated to a site within a radius of five hundred feet from its licensed location, the "catchment area", provided such site is identified by the licensee and meets the siting criteria applicable to the renewal of licenses in subparagraph a of paragraph two of subdivision d of section 20-231.

If the department of transportation determines that there is no site within such catchment area to which a newsstand may be relocated in accordance with subparagraph (a) of paragraph five of subdivision k of section 20-231, the licensee of such newsstand may apply for a license for a new newsstand in accordance with the applicable provisions of law.

A newsstand shall not be eligible for a renewal if the area of the sidewalk occupied by it exceeds seventy-two square feet or such newsstand exceeds nine feet in height or the department of transportation determines that the newsstand poses an obstruction to the free use of sidewalks by pedestrians at the time of review.

(a) A newsstand that was first licensed on or after the first day of August, nineteen hundred ninety-one shall not pose an obstruction to the free use of the sidewalks by pedestrians if the location of such newsstand does not

(i) reduce the area maintained on the sidewalk for pedestrian movement below a width of nine and one-half feet.
(ii) place the proposed newsstand within five feet of a fire hydrant.
(iii) create a level of service at the proposed location for the peak fifteen minutes of the peak hour of a pedestrian flow rate equal to or greater than eleven people per minute per linear foot of clear path, as determined by the department of transportation.
(iv) place the proposed newsstand within fifteen feet of an entrance to or exit from a subway.
(v) extend into the area encompassed by the extension of the property lines from the buildings to the curb at the intersection of two streets and the area ten feet on either side of such lines.
(vi) extend into a bus stop.
(vii) otherwise create a hazardous condition. For purposes of this subparagraph, a hazardous condition shall include, but not be limited to, the location of a newsstand less than one foot, six inches from the curb, under a fire escape, within ten feet of a driveway or parking lot or within two feet from underground access points, such as utility access openings, ventilation grills, or cellar doors.

NYC-OTR005319

Request for Proposals for a Coordinated Street Furniture Franchise

(b) A newsstand that was first licensed prior to the first day of August, nineteen hundred ninety-one shall not pose an obstruction to the free use of the sidewalks by pedestrians if the location of such newsstand does not

(i) reduce the area maintained on the sidewalk for pedestrian movement below a width of nine and one-half feet.

(ii) place the proposed newsstand within five feet of a fire hydrant.

(iii) create a level of service at the proposed location for the peak fifteen minutes of the peak hour of a pedestrian flow rate equal to or greater than eleven people per minute per linear foot of clear path, as determined by the department of transportation.

(iv) violate the restrictions on the location of newsstands in subdivision f of this section, if such newsstand is located at the rear or side of a subway entrance or exit kiosk.

(v) extend into the area encompassed by the extension of the property lines from the buildings to the curb at the intersection of two streets.

(vi) otherwise create a hazardous condition. For purposes of this subparagraph, a hazardous condition shall include, but not be limited to, the location of a newsstand less than one foot, six inches from the curb, under a fire escape, within ten feet of a driveway or parking lot or within two feet from underground access points, such as utility access openings, ventilation grills, or cellar doors.

NYC-OTR005320

# EXHIBIT W



RECEIVED
DEPT. OF TRANSPORTATION
DIVISION OF FRANCHISES
CONCESSIONS & CONSENTS

2003 OCT -8 P 3: 33

**DEPARTMENT OF CITY PLANNING**
**CITY OF NEW YORK**

OFFICE OF THE COUNSEL

Amanda M. Burden, AICP, *Director*
Department of City Planning

WRITER'S DIRECT DIAL
(212) 720-

DAVID KARNOVSKY, Counsel

BARBARA J. ROSEN, Deputy Counsel
EDWARD FORTIER
GLENN E. FRIEDMAN

October 8, 2003

**BY FAX AND BY HAND**

Philip Damashek, Esq.
General Counsel
Department of Transportation
40 Worth Street, Room 1015
New York, New York 10013

Anne Koenig
Executive Director
Division of Franchises, Concessions and
Consents
Department of Transportation
40 Worth Street, Room 1015
New York, New York 10013

DEPT OF TRANSPORTATION
OFFICE OF LEGAL AFFAIRS
03 OCT 17 AM 10: 29

Re:    **Coordinated Street Furniture RFP**

Dear Mr. Damashek and Ms. Koenig:

We write in response to your request for our determination whether the proposed solicitation for
a Coordinated Street Furniture Franchise, described in your October 3, 2003 Memorandum to
this office and attached thereto, would be subject to review pursuant to the Uniform Land Use
Review Procedure("ULURP"). A similar Request for Proposals for a Coordinated Street
Furniture Franchise was the subject of ULURP review in 1996 ( CPC C960543(A) GFY) .

Based on our review of the 1996 ULURP determinations by the City Planning Commission and

22 Reade Street, New York, NY 10007

NYC-OTR005263

the City Council, we have determined that the Coordinated Street Furniture Franchise described in the proposed solicitation would not present any new land use impacts or implications which would require review pursuant to the Uniform Land Use Review Procedure.

Sincerely,

David Karnovsky

c:    R. Barth
      J. Sugarman

NYC-OTR005264



**DEPARTMENT OF CITY PLANNING**
**CITY OF NEW YORK**

OFFICE OF THE COUNSEL

Amanda M. Burden, AICP, *Director*
Department of City Planning

DAVID KARNOVSKY, *Counsel*

BARBARA J. ROSEN, *Deputy Counsel*
EDWARD FORTIER
GLENN E. FRIEDMAN

WRITER'S DIRECT DIAL
(212) 720-

March 19, 2004

**BY FAX AND BY HAND**

Philip Damashek, Esq.
General Counsel
Department of Transportation
40 Worth Street, Room 1015
New York, New York 10013

Re: Coordinated Street Furniture RFP

Dear Mr. Damashek:

We have reviewed the revised proposed solicitation for a Coordinated Street Furniture Franchise, PIN #84104MBAAD689, enclosed in your letter, dated March 19, 2004. Based on such review, this is to confirm that our determination, dated October 8, 2003, that the new Coordinated Street Furniture Franchise would not present any new land use impacts or implications which would require review pursuant to the Uniform Land Use Review Procedure remains in effect.

Sincerely,

David Karnovsky

22 Reade Street, New York, N.Y. 10007-1216 Room 2N
FAX (212)720-3219
nyc.gov/planning

NYC-OTR005291



RECEIVED
DEPT. OF TRANSPORTATION
DIVISION OF FRANCHISES
CONCESSIONS & CONSENTS

2003 OCT -8  P 3: 33

**DEPARTMENT OF CITY PLANNING**
CITY OF NEW YORK

OFFICE OF THE COUNSEL

Amanda M. Burden, AICP, *Director*
Department of City Planning

DAVID KARNOVSKY, Counsel

BARBARA J. ROSEN, Deputy Counsel
EDWARD FORTIER
GLENN E. FRIEDMAN

WRITER'S DIRECT DIAL
(212) 720-

October 8, 2003

DEPT OF TRANSPORTATION
OFFICE OF LEGAL AFFAIRS
03 OCT 17  AM 10: 29

**BY FAX AND BY HAND**

 Philip Damashek, Esq.
General Counsel
Department of Transportation
40 Worth Street, Room 1015
New York, New York 10013

Anne Koenig
Executive Director
Division of Franchises, Concessions and
Consents
Department of Transportation
40 Worth Street, Room 1015
New York, New York 10013

Re:    **Coordinated Street Furniture RFP**

Dear Mr. Damashek and Ms. Koenig:

We write in response to your request for our determination whether the  proposed solicitation for a Coordinated Street Furniture Franchise, described in your October 3, 2003  Memorandum to this office and attached thereto, would be subject to review pursuant to the Uniform Land Use Review Procedure("ULURP").   A similar Request for Proposals for a Coordinated Street Furniture Franchise was the subject of ULURP review in 1996 ( CPC C960543(A) GFY) .

Based  on our review of the 1996 ULURP determinations by the City Planning Commission and

22 Reade Street, New York, NY 10007

NYC-OTR005263

the City Council,  we have determined that the Coordinated Street Furniture Franchise described in the proposed solicitation would not present any new land use impacts or implications which would require review pursuant to the Uniform Land Use Review Procedure.

Sincerely,

David Karnovsky

c:     R. Barth
       J. Sugarman

NYC-OTR005264

# EXHIBIT X

| Lic No | Premise Address |
|--------|-----------------|
| 0885719 | N/W/C EAST 67 STREET 2 AVENUE 10021 |
| 0837666 | 53 EAST 167 STREET BETWEEN RIVER AVE & GERARD AVE 10452 |
| 0836783 | N/E/C RIVER AVENUE EAST 161 STREET 10452 |
| 0011543 | N/W/C EAST 42 STREET 3 AVENUE 10017 |
| 0831112 | N/W/C 63 ROAD QUEENS BOULEVARD 11374 |
| 0880548 | S/E/C WEST 115 STREET BROADWAY 10025 |
| 0024530 | N/E/C WEST 34 STREET 7 AVENUE 10001 |
| 0819668 | N/S/C QUEENS BOULEVARD 71ST ROAD 11101 |
| 1126760 | S/W/C 137 ST BROADWAY 10031 |
| 1182534 | N/W/C CENTRE STREET WHITE STREET NEW YORK NY 10013 |
| 0787210 | N/W/C 6 AVENUE WEST 40 STREET 10018 |
| 0808256 | N/E/C WEST 23 STREET 8 AVENUE 10011 |
| 0814372 | N/E/C WEST 23 STREET 6 AVENUE 10010 |
| 1173079 | N/W/C BROADWAY WEST  38 STREET NEW YORK NY 10018 |
| 0216861 | S/W/C 6 AVENUE WEST 3 STREET 10014 |
| 0216458 | N/E/C WEST 57 STREET 8 AVENUE 10019 |
| 0765797 | N/E/C 59 AVENUE QUEENS BOULEVARD 11373 |
| 0733774 | 76 BROAD STREET  10004 |
| 907108 | S/W/C WEST   47 STREET SIXTH AVENUE NEW YORK NY 10036 |
| 1076159 | S/E/C EAST 23 STREET PARK AVENUE SOUTH 10010 |
| 0102728 | 51 WHITEHALL STREET OPP 51 WHITEHALL ST 10004 |
| 0737541 | N/W/C EAST 23 STREET 1 AVENUE 10010 |
| 1260533 | N/E/C 23RD STREET & 3RD AVENUE NEW YORK, NY 10025 |
| 1229530 | N/E/C UNIVERSITY PLACE EAST 8 STREET 10003 |
| 0254186 | 164 DELANCEY STREET  10002 |
| 0800888 | N/E/C BOSTON ROAD EAST TREMONT AVENUE 10460 |
| 0815761 | N/W/C BOSTON ROAD EAST 178 STREET 10460 |
| 0268106 | 26 COURT STREET  11201 |
| 0767038 | S/W/C BROADWAY 44TH STREET 10036 |
| 0768129 | S/E/C BROADWAY MAIDEN LANE 10006 |
| 1124413 | S/W/C GRAND STREET CHRYSTIE STREET 10002 |
| 1180924 | N/E/C WEST  125 STREET LENOX AVENUE NEW YORK NY 10027 |
| 0808232 | N/W/C 30 AVENUE STEINWAY STREET 11103 |
| 1180113 | N/W/C  PARK PL. & BROADWAY |
| 1004588 | N/E/C WEST 57 STREET 6 AVENUE 10019 |
| 0216434 | N/E/C CHURCH STREET PARK PLACE NEW YORK NY 10007 |
| 0831172 | N/W/C THIRD AVENUE EAST 50 STREET 10022 |
| 0011671 | N/W/C WEST 66 STREET BROADWAY 10023 |
| 0131347 | S/W/C EAST 42 STREET 3 AVENUE 10017 |
| 0800621 | N/W/C HANOVER SQUARE WATER STREET 10005 |
| 0885765 | S/E/C COURT STREET JORALEMON STREET 11201 |
| 832577 | S/E/C WEST   96 STREET AMSTERDAM AVENUE NEW YORK NY 10025 |
| 0253283 | S/E/C WALL STREET BROAD STREET 10005 |
| 0808498 | S/W/C WEST 181 STREET BROADWAY 10033 |
| 1129028 | 259 WEST 55 STREET  10019 |
| 0807781 | S/E/C BROADWAY WEST 90 STREET 10024 |
| 1178805 | N/W/C PARK PLACE CHURCH STREET NEW YORK NY 10007 |
| 0832747 | N/E/C BROADWAY WEST 60 STREET 10023 |
| 0522344 | S/E/C SHERIDAN SQUARE SOUTH 7 AVE 10014 |
| 1230676 | N/W/C KINGSBRIDGE ROAD EAST JEROME AVENUE 10468 |
| 0108786 | S\W\C 168TH STREET BROADWAY 10032 |


NYC019469

| 0024528 | S/W/C West 34th St  8th Ave |
| 0335918 | N/E/C 55 STREET 6 AVENUE 10018 |
| 0786627 | N/E/C ROCKAWAY PARKWAY GLENWOOD ROAD 11236 |
| 0253579 | N/E/C EAST 42 STREET 5 AVENUE 10017 |
| 0257802 | S/E/C EAST 57 STREET LEXINGTON AVENUE 10022 |
| 0803360 | 59 MAIDEN LANE |
| 0802664 | N/W/C WHITEHALL STREET PEARL STREET 10004 |
| 0333205 | S/E/C WEST 47 STREET 6 AVENUE 10036 |
| 0021103 | N/W/C WALL STREET WILLIAM STREET 10005 |
| 903827 | S/E/C CHURCH STREET DUANE STREET MANHATTAN NY 10013 |
| 1253605 | N/W/C 3 AVENUE EAST 53 STREET 10022 |
| 0903820 | S/E/C STATE STREET COURT STREET 11201 |
| 1245315 | N/W/C EAST 42 STREET VANDERBILT AVENUE 10017 |
| 0216105 | S/E/C 6 AVENUE WEST 34 STREET 10001 |
| 0258757 | N/E/C 7 AVENUE WEST 33 STREET 10001 |
| 0769727 | S/W/C WEST 165 STREET FT WASHINGTON AVENUE 10032 |
| 0253271 | N/W/C BROADWAY WEST 46 STREET 10036 |
| 1097236 | S/W/C NEVINS STREET FLATBUSH AVENUE 11217 |
| 1129459 | N/W/C 157TH ST 8TH AVE 10033 |
| 0808846 | S/W/C WEST 45 STREET 8 AVENUE 10036 |
| 0832546 | S/W/C TRINITY PLACE LIBERTY STREET 10048 |
| 0815894 | N/W/C BROADWAY WEST 82 STREET 10024 |
| 0699443 | S/W/C EAST 23 STREET PARK AVENUE SOUTH 10010 |
| 1107859 | N/W/C WEST 46 STREET 6 AVENUE 10036 |
| 0237944 | S/E/C 71 AVENUE QUEENS BOULEVARD 11375 |
| 0131687 | N/E/C EAST 42 STREET 3 AVENUE 10017 |
| 0254903 | S/W/C EAST 32 STREET 5 AVENUE 10016 |
| 0818523 | S/W/C WEST 57 STREET 8 AVENUE 10019 |
| 0892010 | N/E/C BROADWAY WEST 48 STREET 10036 |
| 0010699 | S/E/C WEST 181 STREET ST NICHOLAS AVENUE 10033 |
| 0085257 | 705 BRIGHTON BEACH AVENUE  11235 |
| 0785889 | N/E/C WEST 86 STREET COLUMBUS AVENUE 10024 |
| 0781308 | S/E/C BROADWAY JOHN STREET 10007 |
| 780213 | 41 WEST 34 STREET 41-43 10001 |
| 1167030 | N/W/C WEST  34 STREET   7 AVENUE NEW YORK NY 10001 |
| 10971 | N/W/C WEST 79 STREET BROADWAY |
| 0880070 | S/W/C WEST 125 STREET LENOX AVENUE 10027 |
| 859288 | S/W/C WEST 125 STREET 7 AVENUE 10027 |
| 0784582 | N/E/C 49 STREET 13 AVENUE 11219 |
| 1097505 | S/E/C WOODHAVEN BOULEVARD QUEENS BOULEVARD 11373 |
| 0068562 | S/W/C 7 AVENUE WEST 55 STREET 10019 |
| 0333236 | N/W/C WEST 14 STREET 6 AVENUE 10011 |
| 1221979 | N/W/C CLARKSON AVENUE NEW YORK AVENUE 11226 |
| 0830449 | S/W/C 3 AVENUE EAST 77 STREET 10021 |
| 0132715 | S/E/C CANAL STREET CENTRE STREET 10013 |
| 1222558 | S/W/C 6 AVENUE WEST 34 STREET 10001 |
| 1136967 | S/W/C CANAL STREET BAXTER STREET NEW YORK NY 10013 |
| 0832664 | N/W/C BROADWAY WEST 49 STREET 10019 |
| 0738113 | S/W/C BOWERY & PELL STREET 10013 |
| 0809183 | N/W/C WESTCHESTER AVENUE MORRISON AVENUE 10472 |
| 1245394 | S/E/C TRINITY PLACE RECTOR STREET 10006 |
| 0837057 | S/E/C ARCHER AVENUE PARSONS BOULEVARD 11433 |

NYC019470

| | |
|---|---|
| 0271895 | S/E/C QUEENS BOULEVARD 80 ROAD 11375 |
| 1109538 | N/W/C BROADWAY WEST 29 STREET 10001 |
| 0785986 | S/W/C WEST 36 STREET 6 AVENUE 10018 |
| 0819840 | N/E/C EAST 58 STREET 3 AVENUE 10022 |
| 0767103 | N/W/C BROADWAY WEST 44 STREET 10036 |
| 333208 | S/W/C WEST 42 STREET 6 AVENUE 10036 |
| 0789471 | N/W/C 3 AVENUE EAST 60 STREET 10022 |
| 0333685 | N/W/C BROADWAY WEST 35 STREET 10001 |
| 0785340 | N/W/C WEST 38 STREET 7 AVENUE 10018 |
| 1272654 | S/W/C WEST 94 STREET BROADWAY 10025 |
| 0819841 | N/E/C 7 AVENUE WEST 35 STREET 10001 |
| 0216428 | S/E/C WEST 34 STREET 8 AVENUE 10001 |
| 1258645 | S/E/C 3 AVENUE EAST 46 STREET 10017 |
| 0819971 | S/E/C WEST 39 STREET 7 AVENUE 10018 |
| 1258644 | N/W/C 3 AVENUE EAST 44 STREET 10017 |
| 0833277 | S/W/C 3 AVENUE EAST 69 STREET 10021 |
| 0216455 | N/W/C 8 AVENUE WEST 14 STREET 10014 |
| 0892079 | N/W/C MADISON AVENUE EAST  41 STREET MANHATTAN NY 10017 |
| 1222585 | S/E/C WATER STREET WHITEHALL STREET 10005 |
| 0807944 | N/E/C JEROME AVENUE KINGSBRIDGE ROAD EAST 10468 |
| 0784331 | N/W/C 63 DRIVE SAUNDERS STREET 11374 |
| 1244695 | S/E/C WEST 57 STREET 8 AVENUE |
| 1154028 | 208 JORALEMON STREET BROOKLYN NY 11201 |
| 1105428 | S/E/C AMSTERDAM AVENUE WEST 72 STREET 10023 |
| 1211531 | 129 MONTAGUE STREET BKLYN NY 11201 |
| 0815278 | N/W/C FULTON STREET MALCOLM X BOULEVARD BROOKLYN NY 11233 |
| 1127682 | 401 EAST 79 STREET 1ST AVENUE 10021 |
| 0830620 | S/W/C 34 ST & MADISON AVE  10037 |
| 0830967 | N/E/C EAST 68 STREET 3 AVENUE 10021 |
| 0218723 | 170 EAST 68 STREET  10021 |
| 0830974 | S/W/C WESTCHESTER AVENUE ELDER AVENUE 10472 |
| 0830975 | S/E/C JACKSON AVENUE EAST 152 STREET 10455 |
| 1141590 | S/E/C BROADWAY & WEST 58TH STREET 10019 |
| 0818466 | S/W/C WEST 177 STREET BROADWAY 10033 |
| 1005416 | N/E/C 46 TH STREET BETWEEN FIFTH & MADISON AVENUE 10001 |
| 0011544 | S/W/C BROADWAY WEST 40 STREET 10018 |
| 0012609 | N/W/C 3 AVENUE EAST 149 STREET 10455 |
| 0764622 | S/W/C AMSTERDAM AVENUE WEST 71 STREET 10023 |
| 819842 | S/W/C EAST  42 STREET MADISON AVENUE NEW YORK NY 10017 |
| 0892030 | N/E/C EAST 33 STREET PARK AVENUE 10016 |
| 0892032 | E/S/C WEST 51 STREET BROADWAY 10019 |
| 0837645 | N/W/C BROADWAY MURRAY STREET 10007 |
| 0253576 | S/E/C BROADWAY WEST 39 STREET 10018 |
| 0253285 | N/E/C EAST 86 STREET LEXINGTON AVENUE 10028 |
| 1009973 | S/E/C 37TH AVENUE 74TH STREET 11373 |
| 0811947 | N/W/C BROADWAY WEST 83 STREET 10024 |
| 0833841 | N/W/C BROADWAY WAVERLY PLACE 10003 |
| 1117742 | S/W/C WEST 116 STREET BROADWAY 10025 |
| 1272833 | N/E/C BROADWAY WEST 41 STREET 10018 |
| 0253612 | N/E/C EAST 42 STREET MADISON AVENUE 10017 |
| 1170364 | 20 WEST 34 STREET  10001 |
| 0804102 | S/S/C 34 ST 9 AVE & 10 AVE 10001 |

NYC019471

| | |
|---|---|
| 0800811 | S/E/C 9 AVENUE WEST 34 STREET 10001 |
| 0020885 | 200 EAST 23 STREET 5 AVE 10010 |
| 0802800 | S/E/C WEST 56 STREET BROADWAY 10019 |
| 0803385 | N/E/C BROADWAY WEST 55 STREET 10019 |
| 0830027 | N/W/C BROADWAY EAST 17 STREET 10003 |
| 0853796 | N/E/C BROADWAY WEST 31 STREET 10001 |
| 885776 | S/W/C   3 AVENUE EAST   59 STREET MANHATTAN NY 10022 |
| 0885795 | N/W/C PINE STREET WILLIAM STREET 10005 |
| 0857077 | S/E/C BROADWAY WEST 32 STREET 10001 |
| 0816261 | S/E/C PARK PLACE BROADWAY 10007 |
| 853351 | S/E/C PARK PLACE CHURCH STREET 10007 |
| 1188001 | S/W/C   71 AVENUE QUEENS BOULEVARD FOREST HILLS NY 11375 |
| 1072163 | E/S/C 7TH AVENUE WEST 22 STREET 10011 |
| 1243900 | N/E/C LEXINGTON AVENUE EAST 53 STREET 10022 |
| 0767832 | N/E/C 6 AVENUE WEST 46 STREET 10036 |
| 0786247 | N/W/C WEST  36 STREET BROADWAY NEW YORK NY 10018 |
| 0892065 | N/W/C CHAMBERS STREET BROADWAY 10007 |
| 0808192 | 520 8 AVENUE  10018 |
| 0805725 | S/E/C WEST 35 STREET 8 AVENUE 10001 |
| 1193701 | 180 WATER STREET JOHN STREET NEW YORK NY 10038 |
| 0807910 | S/E/C 6 AVENUE WAVERLY PLACE 10014 |
| 1163340 | N/E/C 27 STREET 7TH AVENUE NEW YORK NY 10001 |
| 0892083 | N/E/C WATER STREET GOVERNEUR LANE 10005 |
| 0784957 | N/W/C WEST 75 STREET BROADWAY 10023 |
| 0885774 | 45 EAST 14 STREET  10003 |
| 1167806 | N/W/C   6 AVENUE WEST   39 STREET NEW YORK NY 10018 |
| 1003423 | S/W/C WATER_STREET FULTON 10001 |
| 0011333 | N/W/C BROADWAY WEST 145 STREET 10031 |
| 1232353 | N/E/C BROADWAY WEST 145 STREET 10031 |
| 1231663 | N/W/C WEST 125TH ST. & ST. NICHOLAS AVE |
| 0333225 | N/W/C 6 AVENUE WEST 23 STREET 10010 |
| 1243156 | N/W/C CANAL STREET BOWERY 10013 |
| 0804149 | N/E/C FULTON & GOLD STREET  10007 |
| 68565 | N/E/C   7 AVENUE WEST   57 STREET NEW YORK NY 10019 |
| 0024405 | N/W/C LEXINGTON AVENUE EAST 51 STREET 10022 |
| 1022889 | S/E/C BROADWAY WEST 57 STREET 10019 |
| 0253573 | N/W/C EAST 42 STREET MADISON AVENUE 10017 |
| 0830636 | N/E/C BROADWAY WEST 43 STREET 10036 |
| 0809489 | S/W/C EAST 138 STREET ALEXANDER AVENUE 10454 |
| 0737408 | N/W/C PROSPECT AVENUE EAST 149 STREET 10455 |
| 1123557 | S/E/C JEROME AVENUE BAINBRIDGE AVENUE 10467 |
| 0808698 | 3073 BRIGHTON 3 STREET  11235 |
| 0809102 | 211 MONTAGUE STREET  11201 |
| 0856677 | N/W/C 3 AVENUE EAST 56 STREET 10022 |
| 0768966 | N/W/C WEST 25 STREET 8 AVENUE 10001 |
| 1139432 | S/E/C SEVENTH AVENUE WEST   49 STREET NEW YORK NY 10019 |
| 0010669 | S/E/C 86TH STREET WEST BROADWAY 10024 |
| 0066402 | S/W/C 7 AVENUE WEST 42 STREET 10036 |
| 0768526 | N/E/C 2 AVENUE EAST 79 STREET 10021 |
| 0831484 | S/W/C WEST 91 STREET BROADWAY 10024 |
| 0257950 | N/W/C 5 AVENUE WEST 42 STREET 10017 |
| 1170142 | N/E/C BROADWAY WEST   67 STREET NEW YORK NY 10023 |

NYC019472

| | |
|---|---|
| 0815544 | N/E/C COLUMBUS AVENUE WEST 66 STREET 10023 |
| 1015739 | N/W/C WEST 50 STREET BROADWAY 10019 |
| 0216473 | N/E/C West 34th St 8th Ave |
| 892017 | N/E/C EAST  23 STREET    2 AVENUE NEW YORK NY 10010 |
| 0885777 | N/E/C EAST 51 STREET 3 AVENUE 10022 |
| 0885718 | N/E/C WEST 51 STREET 7 AVENUE 10019 |
| 0814854 | S/W/C WEST 34 STREET 8 AVENUE 10001 |
| 0789699 | N/W/C WATER STREET WALL STREET 10005 |
| 0835403 | S/E/C STEINWAY STREET BROADWAY 11103 |
| 0789278 | S/W/C 3 AVENUE EAST 53 STREET 10022 |
| 0811226 | N/E/C ROOSEVELT AVENUE 61 STREET 11377 |
| 1180362 | N/E/C QUEENS BOULEVARD   90 STREET ELMHURST NY 11373 |
| 0808497 | S/E/C WEST 74 STREET COLUMBUS AVENUE 10023 |
| 0783078 | S/E/C BROADWAY WEST 111 STREET 10025 |
| 0808453 | E/S/C BROADWAY WAVERLY PL 10003 |
| 0805249 | S/E/C EAST 22 STREET BROADWAY 10010 |
| 0831453 | N/E/C BROADWAY WEST 83 STREET 10024 |
| 0373539 | N/W/C BROADWAY WEST 74 STREET 10023 |
| 0692197 | S/E/C EAST 68 STREET 1 AVENUE 10021 |
| 0808539 | S/E/C BROADWAY WEST 69 STREET 10023 |
| 1186326 | N/W/C WEST   86 STREET BROADWAY NEW YORK NY 10024 |
| 0903809 | N/E/C BROADWAY WEST 49 STREET 10019 |
| 0903803 | S/E/C BROADWAY WEST 80 STREET 10024 |
| 0804581 | N/E/C GRAND STREET BOWERY 10013 |
| 1003222 | S/E/C 6TH AVENUE 8TH STREET 1001 |
| 0011341 | N/E/C EAST 23 STREET PARK AVENUE SOUTH 10010 |
| 813420 | N/S QUEENS BOULEVARD BROADWAY ELMHURST NY 11373 |
| 0816117 | S/E/C 9TH AVENUE WEST 58TH STREET |
| 0010711 | S/W/C EAST   28 STREET PARK AVENUE SOUTH NEW YORK NY 10016 |
| 0767727 | N/E/C CANAL STREET LAFAYETTE STREET 10013 |
| 0010985 | S/E/C CANAL STREET LAFAYETTE STREET 10013 |
| 0814757 | N/E/C EAST 161 STREET SHERIDAN AVENUE 10451 |
| 1270742 | N/E/C STONE STREET WHITEHALL ST |
| 0253409 | N/W/C EAST 86 STREET 3 AVENUE 10028 |
| 0881140 | S/W/C EAST 86 STREET LEXINGTON AVENUE 10028 |
| 0769818 | S/W/C CENTRE STREET CANAL STREET 10013 |
| 0021329 | S/E/C EAST 86 STREET LEXINGTON AVENUE 10028 |
| 0253337 | S/W/C EAST 86 STREET 3 AVENUE 10028 |
| 1126071 | S/E/C EAST  14 STREET    4 AVENUE NEW YORK NY 10003 |
| 0803152 | N/E/C WEST 81 STREET COLUMBUS AVENUE 10024 |
| 0833922 | N/E/C UNION SQUARE SOUTH EAST 14 STREET 10003 |
| 0906977 | S/E/C 54TH STREET BROADWAY 10003 |
| 0784047 | S/E/C EAST 40 STREET 3 AVENUE 10016 |
| 1009055 | N/E/C 7 AVENUE WEST 28 STREET 10001 |
| 0334659 | S/W/C AVENUE OF AMERICAS WEST 57 STREET 10019 |
| 0815449 | N/E/C EAST 208 STREET JEROME AVENUE 10467 |
| 0892022 | 650 WEST 168 STREET  10032 |
| 800537 | 352 EAST 86 STREET  10028 |
| 0253319 | S/W/C 7 AVENUE WEST 39 STREET 10018 |
| 0892044 | S/E/C WEST 40 STREET BROADWAY 10018 |
| 0131386 | S/W/C WILLIAM STREET WALL STREET 10005 |
| 0024529 | S/E/C WEST 34TH ST 7TH AVENUE |

NYC019473

| 0024541 | S/E/C WALL STREET WILLIAM STREET 10005 |
| 1222489 | N/W/C BROADWAY WEST 57 STREET 10019 |
| 0133900 | S/E/C EAST 233 STREET WHITE PLAINS ROAD 10466 |
| 0802570 | N/W/C GRAND STREET CHRYSTIE STREET 10002 |
| 0803527 | N/W/C BOWERY BAYARD STREET 10013 |
| 0831299 | S/E/C WEST 60 STREET COLUMBUS AVENUE 10023 |
| 0816094 | S/W/C AMSTERDAM AVENUE WEST 79 STREET 10024 |
| 1266882 | S/W/C BROADWAY WEST  93 STREET NEW YORK NY 10025 |
| 0788118 | N/W/C 3 AVENUE EAST 49 STREET 10017 |
| 0885764 | 55 WATER STREET  10004 |
| 0804670 | S/E/C EXCHANGE PLACE BROADWAY 10006 |
|  |  |

NYC019474

# EXHIBIT Y

NYCDOT Coordinated Street Furniture Franchise
FCRC Application
Basis for Award Attachment

FCRC Application
Recommendation for Award of Franchise

Basis for Award Narrative

**RFP Point Allocation**
The Coordinated Street Furniture Franchise Request for Proposals (RFP) was released on March 26, 2004. The RFP document included four phases of evaluation with accompanying evaluation criteria and point allocations for each phase.

Table 1: RFP Point Breakdown

| Phase I | Pass/Fail |
|---|---|
| Phase II | 25 points |
| Phase III | 60 points |
| Phase IV | 55 points |
| Preferences | 5 points |

The first two phases of the evaluation reviewed the submission documents and the proposing companies themselves. Phase 1 was a pass/fail responsiveness determination made by the Department's Auditor General. This review ensured that each proposal contained all required materials. Phase II assessed each Proposer's Ability to Provide Required Services and was allotted 25 points. In this review, Selection Committee members examined each proposing company's business organization, financial fitness and experience with street furniture and outdoor advertising sales. The street furniture contract has a lengthy term and an ambitious build out, so the Department wanted to ensure the company had ample experience and resources and the phase was weighted accordingly. Each proposal that received an average score of 15 or more points moved on in the evaluation process.

The later phases of the evaluation focused on the terms of the proposal from a technical and business perspective. Phase III, the evaluation of the Technical Proposal, had the highest point allocation, 60, because it included all of the operational aspects of the franchise. In Phase III, Selection Committee members evaluated street furniture design, installation methods, build out schedules, maintenance plans, staffing allocations, and computerized inventory systems, as well as marketing and sales plans for advertising. Although the franchise is ultimately a revenue contract; quality design, installation, and maintenance of the street furniture are integral to the program's success, so Phase III had a slightly higher point allocation than the compensation phase. Phase IV, the compensation package, was assigned 55 points. The main evaluative component of this phase was the guaranteed minimum payment to the City. In addition to the allocated 140 points there were five preference points in total available for manufacturing in the United States, manufacturing in New York City and committing to an upfront payment provided the overall terms of the compensation package were determined to be in the best financial interest of the City.

**Evaluation Process**
Before the Department received the RFP responses on September 14, 2004, an interagency Selection Committee was already appointed. The Committee was comprised of seven members, coming from the Departments of City Planning, Consumer Affairs, Design and Construction, Parks, Transportation (2) and the City's Economic Development Corporation.

NYCDOT Coordinated Street Furniture Franchise
FCRC Application
Basis for Award Attachment

All committee members were required to sign a confidentiality agreement which prohibited them from discussing any aspect of the proposals.

Once the proposals were reviewed by DOT's Chief Contracting Officer and the Auditor General's office, a determination was made that all proposals passed the Phase I Responsiveness review and could be distributed to the Selection Committee Members. The Committee received all portions of the proposals except the compensation package, which was under separate seal, along with detailed guidelines for scoring on October, 13, 2004. While Committee members were reviewing the extensive materials, DOT staff members conducted reference checks. The Department developed a standard questionnaire that was used for all reference calls. Answers were entered into a standard form and distributed to Committee members as a package. Several Committee meetings were held during November and December of 2004 and Committee members submitted scores for Phase II on January 6, 2005. As stated above, the RFP required that proposers achieve an average score of 15 or better to move onto Phase III evaluation. All proposals achieved better than a 15 point average.

Table 2: Phase II Point Totals

| Company | Total Points Received | Average Score |
|---|---|---|
| Cemusa | 154.25 | 22 |
| Clear Channel / Adshel | 162.75 | 23 |
| NBCDeCaux | 168 | 24 |
| VanWagner | 129 | 18 |
| Viacom | 156.5 | 22 |

During the month of December the Department identified individuals to serve as Technical Advisors to the Selection Committee. A Design Advisory Committee, as outlined in the RFP, was formed as well as a Compensation Advisory Committee. The Design Advisory Committee was made up of four architects and one landscape architect from outside city service, an industrial designer representing the Business Improvement Districts and representatives from the Art Commission, Landmarks Preservation Commission and Municipal Arts Society, all who have an expertise in urban design issues. The Compensation Advisors were five individuals drawn from the Economic Development Corporation, NYC Marketing and DOT's auditing staff. The Technical Advisors were invited to sit in on proposer interviews and review materials relevant to their area of expertise. Each Technical Advisory Committee wrote a single, nonbinding recommendation to be distributed to Selection Committee Members. These recommendations were written independent of the Selection Committee. All Technical Advisors signed confidentiality agreements.

On January 10, 2005, the Committee moved into Phase III and IV evaluation. At this time compensation packages were distributed and Committee members were allowed to view the scale models for the first time. The Selection Committee requested proposer interviews; a two-day format per proposer, broken down into four separate sections was agreed to. Interviews were scheduled throughout the month of February and into March and interview slots were assigned by random selection.

After the interview sessions were completed the Committee compiled follow-up questions, some specific to a particular proposal while others were general to all teams. Follow-up letters were sent to all proposing teams on March 22, 2005, and requested materials were

NYCDOT Coordinated Street Furniture Franchise
FCRC Application
Basis for Award Attachment

submitted by April 11, 2005. During the follow-up period it was articulated to all proposers that this was not a request for a "Best and Final" offer but proposers were free to adjust their compensation packages as they saw fit. The updated materials were submitted to Selection Committee members and discussion about the proposals continued.

At this time the Technical Advisory groups met separately to draft their recommendations. When completed each subcommittee delivered their recommendation memo to the Selection Committee and they were available for any follow-up questions from Committee members. Each recommendation outlined exactly what criteria or methodology the Technical Advisory Committees used in developing their recommendations. The Design Advisory Committee recommendation was narrative and ranked each design but did not assign specific point values. The Compensation Advisory Committee used a formula to assign points based on values articulated in the proposal and parameters set in the RFP, so specific point recommendations were made for each proposal. As mentioned earlier, the recommendations were nonbinding on the Selection Committee.

The Selection Committee members submitted final scores for Phases III and IV on May 25, 2005. At this point the Committee agreed to request a Best and Final Offer (BAFO) from the top three ranked proposals. On June 6, 2005, letters were sent to the top three proposers inviting them to make "Best and Final" offers. Each letter was specific to the proposal and outlined weaknesses or issues to address in the final offer.

Table 3: Overall Point Totals

| Company | Phase II (175 pts.) | Phase III (420 pts.) | Phase IV (385 pts.) | Preference (35 pts.) | Overall Total (II, III & IV & preference - 1,015 pts. ) |
|---|---|---|---|---|---|
| Cemusa | 154.25 | 274.5 | 384 | 35 | 847.75 |
| NBC DeCaux | 168 | 372.5 | 223 | 35 | 798.5 |
| Van Wagner | 129 | 363.5 | 287.75 | 14 | 794.25 |
| Clear Channel / Adshel | 162.75 | 292 | 222.25 | 35 | 712 |
| Viacom | 156.5 | 250 | 179.75 | 28 | 614.25 |

Proposing teams returned BAFO materials on June 27, 2005. The Selection Committee reviewed the final submissions and reconsidered each proposer's Phase III and Phase IV scores in light of the updated materials. The Compensation Advisory Committee's formula was applied to the revised compensation proposals and point allocations were reassigned and distributed to Selection Committee members. In July of 2005 the Selection Committee members issued their final scores for the BAFO proposals.

Table 4: Best and Final Point Totals

| Company | Phase II | BAFO Phase III | BAFO Phase IV | Preference points | BAFO Overall |
|---|---|---|---|---|---|
| Cemusa | 154.25 | 336.5 | 384 | 35 | 909.75 |
| NBCDeCaux | 168 | 384 | 302.5 | 35 | 889.5 |
| Van Wagner | 129 | 379 | 258.5 | 28 | 794.5 |

NYCDOT Coordinated Street Furniture Franchise
FCRC Application
Basis for Award Attachment

On September 20, 2005, Howard Altschuler, as chairman of the Selection Committee, made a recommendation on their behalf to NYCDOT to enter into contract negotiations with the highest ranked proposer who also had the highest revenue package. Based on that recommendation NYCDOT then entered into negotiations with Cemusa, which culminated in the proposed franchise agreement.

During the course of the contract negotiations with Cemusa Inc. a minor error was discovered in the value of the cash compensation. As part of its BAFO, Cemusa offered additional compensation contingent on the placement of additional scroller ad boxes in the amount of $91,532,000 over the 20 year period with payment beginning after year two of the agreement. The committee asked Cemusa if it would increase the cash guarantee amount by this contingent compensation if the additional scrollers were allowed. The response from Cemusa was yes, but at 95% of the contingent value or $86,955,000. The BAFO scores for Phase IV indicated in Table 4 above are based on the inclusion of this value. The negotiation process indicated that Cemusa's letter agreeing to the additional guarantee commitment also included a provision that the additional cash guarantee would not begin until the 6th year of the agreement. As a result, the cash portion was overstated by approximately $12,000,000. On March 31, 2006 members of the Selection Committee were advised of the error by memo (attached) and were asked to review the information provided and their score for phase IV of the evaluation process and either confirm or modify their original score. The Selection Committee members returned the document and the revised scores are provided below and on the revised Coordinated Street Furniture Franchise Summary RFP Sheet.

Table 5: Corrected Best and Final Point Totals

| Company | Phase II | BAFO Phase III | BAFO Phase IV | Preference points | BAFO Overall |
|---|---|---|---|---|---|
| Cemusa | 154.25 | 336.5 | 384 | 35 | 909.75 |
| NBCDeCaux | 168 | 384 | 303.5 | 35 | 890.5 |
| Van Wagner | 129 | 379 | 259.5 | 28 | 795.5 |