CONFIDENTIAL

said one hundred and twenty (120) days or unless

(1) such receivers or trustees shall have within one hundred and twenty (120) days, after their election or appointment, fully complied with all the terms and provisions of the franchise herein granted, and the receivers or trustees within said one hundred and twenty (120) days shall have remedied all defaults under this contract, and

(2) such receivers or trustees shall within said one hundred and twenty (120) days, execute an agreement duly approved by the Court having jurisdiction in the premises, whereby such receivers or trustees assume and agree to be bound by each and every term, provision and limitation of the franchise herein granted.

SECTION 11.2  In the case of a foreclosure or other judicial sale of the plant, property and equipment of the Company including or excluding this contract, DTE may serve notice of termination upon the Company and the successful bidder at such sale, in which event the consent of the City to the exercise of the franchise herein granted all rights and privileges of the Company hereunder shall cease and determine thirty (30) days after service of such notice, unless (a) DTE shall have consented to the transfer of the franchise, as and in the manner in this contract provided and (b) unless such successful bidder shall have covenanted and agreed with the City to assume and be bound by all the terms and conditions of this contract.

ARTICLE XII

Termination and Cancellation

SECTION 12.1. In the event the Company shall fail to comply with any provision herein contained, such non-compliance shall be deemed a default hereunder and DTE, in addition to any other rights reserved to itself under

18

NYC019304

CONFIDENTIAL

this contract by law, and not in substitution thereof, shall have the right to terminate and cancel this contract. Such termination and cancellation shall be by determination of DTE, after not less than thirty (30) days written notice to the Company. In the event such termination or cancellation depends upon a finding of fact, such finding of fact by DTE shall be conclusive.

SECTION 12.2  The Company shall not be deemed nor declared to be in default under any of the conditions, provisions, requirements or limitations of this contract in any case in which the performance of any such condition, provision, requirement or limitation is prevented by reason of strikes, injunctions or other causes beyond the control of the Company provided that the Company shall not have intentionally caused such strike, or shall not have filed suits or requests for injunctions or intentionally caused any delay.

ARTICLE XIII

Sundry Provisions

SECTION 13.1  If at any time the powers of the City, DTE, or any other board, body, authority, official or officer herein mentioned or intended to be mentioned shall be transferred by law to any other board, body, authority, official or officer, then and in such cases such other board, body, authority official or officer shall have all the powers, rights and duties reserved to or prescribed for the City, DTE, or other board, body, authority, official herein mentioned or intended to be mentioned.

SECTION 13.2  The City hereby reserves to itself and the Company hereby grants to the City, the right to intervene in any suit, action or proceeding by any person or persons, firm or corporation seeking to enjoin, restrain or in any manner interfere with the Company in the performance or observance by it of any of the terms or conditions of this contract, or of any notice or

19

NYC019305



CONFIDENTIAL

direction of DTE in such connection, or which involves or might involve the
constitutionality, validity or enforcement of any section, subdivision, clause
or sentence of this contract, and the City may move for dissolution of any
such injunction or restraining order or take any other appropriate step, in
any such suit, action or proceeding which it may deem necessary or advisable
to protect its interests.

SECTION 13.3  The Company promises, covenants and agrees to conform to
and abide by and perform all the conditions, provisions, requirements and
limitations in this contract fixed and contained, and the Company will not at
any future time assert as against the City or DTE the claim that the
provisions of this contract reserving to the City the right to cancel this
contract and terminate the franchise hereby granted are unreasonable and void
nor will the Company assert or maintain as against the City, DTE, the
Comptroller or any other official or officer of the City, the claim that any
other provisions of this contract are unreasonable or void.

SECTION 13.4  All the conditions, provisions, requirements and
limitations of this contract shall be binding upon the Company, its successors
or assigns.

SECTION 13.5  The rights, powers, privileges and remedies reserved to
the City by this contract are cumulative and shall be in addition to and not
in derogation of any other rights or remedies which the City may have at law
or in equity with respect to the subject matter of this contract, and a waiver
thereof at any time or in any instance shall not affect any other time or
instance.

SECTION 13.6  The provisions of this contract are severable, and if any
clause or provision shall be held invalid or unenforceable in whole or in part
in any jurisdiction, then such invalidity or unenforceability shall affect

20

CONFIDENTIAL

only such clause or provision, or part thereof, in such jurisdiction and shall not in any manner affect such clause or provision in any other jurisdiction, or any other clause or provision in this contract in any jurisdiction.

SECTION 13.7  Neither the Mayor, DTE, or the Commissioner, nor any officer, employee, agent or representative of City shall be personally liable to the Company under or by reason of this contract or any of its covenants, articles, or provisions.

SECTION 13.8  No action shall lie or be maintained against the City by the Company upon any claims based upon this contract unless such action shall be commenced against the City (a) within nine (9) months after the termination, cancellation or conclusion of this contract or (b) within nine (9) months after the accrual of the cause of action, whichever is earliest. If the provisions of the Civil Practice Laws and Rules shall provide for a shorter period of time to commence an action against the City than the foregoing, said shorter period of time shall be deemed applicable.

SECTION 13.9  (a)  The Company agrees to cooperate fully and faithfully with any investigation, audit or inquiry conducted by a State of New York (State) or City of New York (City) governmental agency or authority that is empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath, or conducted by the Inspector General of a governmental agency that is a party in interest to the transaction, submitted bid, submitted proposal, contract, lease, permit, or license that is the subject of the investigation, audit or inquiry.

(b)(i)  If any person who has been advised that his or her statement, and any information from such statement, will not be used against him or her in any subsequent criminal proceeding refuses to testify before a grand jury or other governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath

21

NYC019307

CONFIDENTIAL

concerning the award of or performance under any transaction, agreement, lease, permit, contract, or license entered into with the City, the State, or any political sub-division or public authority thereof, or the Port Authority of New York and New Jersey, or any local development corporation within the City, or any public benefit corporation organized under the laws of the State of New York, or;

(b)(ii)  If any person refuses to testify for a reason other than the assertion of his or her privilege against self-incrimination in an investigation, audit or inquiry conducted by a City or State governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to take testimony under oath, or by the Inspector General of the governmental agency that is a party in interest in, and is seeking testimony concerning the award of, or performance under, any transaction, agreement, lease, permit, contract, or license entered into with the City, the State or any political subdivision thereof or any local development corporation within the City, then;

(c)(i)  The commissioner or agency head whose agency is a party in interest to the transaction, submitted bid, submitted proposal, contract, lease, permit or license shall convene a hearing upon not less than five (5) days written notice to the parties involved to determine if any penalties should attach for the failure of a person to testify.

(c)(ii)  If any non-governmental party to the hearing requests an adjournment, the commissioner or agency head who convened the hearing may, upon granting the adjournment, suspend any contract, lease, permit or license pending the final determination pursuant to subsection (e) below without the City incurring any penalty or damages for delay or otherwise.

(d)  The penalties which may attach after a final determination by the commissioner or agency head may include but shall not exceed:

(i) The disqualification for a period not to exceed five (5) years from the date of an adverse determination for any person, or any entity of which such person was a member at the time the testimony was sought, from

22

NYC019308

CONFIDENTIAL

submitting bids for, or transacting business with, or entering into or obtaining any contract, lease, permit or license with or from the City; and/or

(ii)  The cancellation or termination of any and all such existing city contracts, leases, permits, or licenses that the refusal to testify concerns and that have not been assigned as permitted under this contract, nor the proceeds of which pledged, to an unaffiliated and unrelated institutional lender for fair value prior to the issuance of the notice scheduling the hearing, without the City incurring any penalty or damages on account of such cancellation or termination; monies lawfully due for goods delivered, work done, rentals, or fees accrued prior to the cancellation or termination shall be paid by the City.

(e)  The commissioner or agency head shall consider and address in reaching his or her determination and in assessing an appropriate penalty the factors in subdivision (i) and (ii) below.  He or she may also consider, if relevant and appropriate, the criteria established in subdivisions (iii) and (iv) below in addition to any other information which may be relevant and appropriate:

(i)  The party's good faith endeavors or lack thereof to cooperate fully and faithfully with any governmental investigation or audit, including but not limited to the discipline, discharge, or disassociation of any person failing to testify, the production of accurate and complete books and records, and the forthcoming testimony of all other members, agents, assignees or fiduciaries whose testimony is sought.

(ii)  The relationship of the person who refused to testify to any entity that is a party to the hearing, including, but not limited to, whether the person whose testimony is sought has an ownership interest in the entity and/or the degree of authority and responsibility the person has within the entity.

23

CONFIDENTIAL

(iii)  The nexus of the testimony sought to the subject entity and its contracts, leases, permits or licenses with the City.

(iv)  The effect a penalty may have on an unaffiliated and unrelated party or entity that has a significant interest in an entity subject to penalties under (d) above, provided that the party or entity has given actual notice to the commissioner or agency head upon the acquisition of the interest, or at the hearing called for in (c)(i) above gives notice and proves that such interest was previously acquired.  Under either circumstances the party or entity must present evidence at the hearing demonstrating the potential adverse impact a penalty will have on such person or entity.

(f) In addition to and notwithstanding any other provision of this contract the City may in its sole discretion terminate this contract upon not less than seven (7) days written notice in the event the Company fails to promptly report in writing to the Commissioner of Investigation of the City of New York any solicitation of monies, goods, requests for future employment or other benefit or thing of value, by or on behalf of any employee of the City or other person, firm, corporation or entity for any purpose which may be related to the procurement or obtaining of this franchise by the Company, or affecting the performance of this contract.

SECTION 13.10 I.A. In accordance with §6-115 of the Administrative Code of the City of New York, the Company hereby covenants and represents:

(1) That the Company and its substantially owned subsidiaries shall not during the term of this contract sell or agree to sell goods or service, other than food or medical supplies, directly to the following agencies of the South African government or directly to a corporation owned or controlled by such government and established expressly for the purposes of procuring such goods and services for such specific agencies:

24

CONFIDENTIAL

(a)   the police,

(b)   the military,

(c)   the prison system,

(d)   the ministry of home affairs and national education,

(e)   the ministry of education and development aid, including the
      development boards and the rural development boards,

(f)   the ministry of justice,

(g)   the ministry of constitutional development and planning,

(h)   the ministry of law and order,

(i)   the bureau for information,

(j)   the ministry of manpower,

(k)   the Armaments Development and Production Corporation
      (ARMSCOR), and its subsidiaries Nimrod, Atlas Aircraft
      Corporation, Eloptro (Pty) Ltd., Kentson (Pty) Ltd.,
      Infoplan Ltd., Lyttleton Engineering Works (Pty) Ltd.,
      Naschem (Pty) Ltd., Pretoria Metal Pressing (Pty) Ltd.,
      Somchem (Pty) Ltd., Swartklip Products (Pty) Ltd., Telecast
      (Pty) Ltd., and Musgrave Manufactures and Distributors,

(l)   the national intelligence services,

(m)   the council for scientific and industrial research,

(n)   the electricity supply commission (ESCOM),

(o)   the South African Coal, Oil and Gas Corporation (Sasol
      Limited or Sasol 1,2 or 3),

(p)   the Atomic Energy Corporation (Ltd.), or

(q)   the Southern Oil Exploration Corporation (Soekor).

(2)  In the case of a contract to supply goods, that none of the goods
to be supplied to the City originated in the Republic of South Africa.

(3)  This stipulation does not apply to the sale of goods or services to
an agency of the South African government covered in subsections a through c

25

NYC019311

CONFIDENTIAL

of section one when such sale is provided for by the terms of a contract entered into prior to July 13, 1985 (the effective date of Local Law 19), but it does apply to any increase in the amount of goods or services supplied to such a covered agency pursuant to any amendment, modification or extension of such a contract if the amendment, modification or extension was agreed to on or after July 13, 1985.

(4) This stipulation does not apply to the sale of goods or services to any agency of the South African government covered in subsections d through q of section one when such sale is provided for by the terms of a contract entered into prior to February 28, 1987 (the effective date of Local Law 81, which amends Local Law 19), but it does apply to any increase in the amount of goods or services supplied to such a covered agency pursuant to any amendment, modification or extension of such a contract if the amendment, modification or extension was agreed to on or after February 28, 1987.

B. The Company agrees that the covenants and representations in sub-section A, above, are material conditions of this contract. In the event the City receives information that the Company is in violation of sub-section A, the City shall review such information and give the Company an opportunity to respond. If the City finds that a violation has occurred, the City shall have the right to terminate this contract and procure the supplies, services or work from another source in any manner the City deems proper. In the event of such termination, the Company shall pay to the City, or the City in its sole discretion may withhold from any amounts otherwise payable to the Company, the difference between the contract price for the uncompleted portion of this contract and the cost to the City of completing performance of this contract either itself or by engaging another contractor or contractors. In case of a requirements contract, the Company shall be liable for such difference in price for the entire amount of supplies required by the City for the term of this contract. In the case of a construction contract, the City shall also

26

CONFIDENTIAL

have the right to hold the Company in partial or total default in accordance with the default provisions of this contract. The rights and remedies of the City hereunder shall be in addition to and not in lieu of, any rights and remedies the City has pursuant to this contract or by operation of law.

II. The Company hereby covenants and represents that it and its substantially owned subsidiaries have not within the twelve months prior to the award of such contract violated, and shall not during the period of this contract violate, the provisions of the Comprehensive Anti-Apartheid Act of 1986, the Export Administrative Act of 1979 as amended (50 U.S.C. §2401, et seq.) or the Arms Export Control Act of 1976 as amended (22 U.S.C. §2778) respecting business activity in the Republic of South Africa. Upon a final determination by the United States Department of Commerce or any other agency of the United States or a court that the Company or its substantially owned subsidiary has violated any provision of the Comprehensive Anti-Apartheid Act, the Export Administrative Act or the Arms Export Control Act respecting business activity in the Republic of South Africa, the City shall have the right to terminate this contract and procure the supplies, services or work from another source in any manner the City deems proper. In the event of such termination, the Company shall pay to the City, or the City in its sole discretion may withhold from any amounts otherwise payable to the Company, the difference between the contract price for the uncompleted portion of this contract and the cost to the City of completing performance of this contract either itself or by engaging another contractor or contractors. In the case of a requirements contract, the Company shall be liable for the difference in price for the entire amount of supplies required by the City for the uncompleted term of this contract. In the case of a construction contract, the City shall also have the right to hold the Company in partial or total default in accordance with the default provisions of this contract. The rights and remedies of the City hereunder shall be in addition to, and not in lieu of any rights and remedies the City has pursuant to this contract or by

27

NYC019313

**CONFIDENTIAL**

operation of law.

SECTION 13.11   This written agreement contains all the terms and conditions agreed upon by the parties hereto, and no other agreement, oral or otherwise, regarding the subject matter of this agreement shall be deemed to exist or to bind any of the parties hereto, or to vary any of the terms contained herein.

SECTION 13.12   This contract shall be deemed to be executed in the City of New York, State of New York, regardless of the domicile of the Company, and shall be governed by and constructed in accordance with the laws of the State of New York.

SECTION 13.13   The Company and the City agree that any and all claims asserted by or against the City arising under this contract or related thereto shall be heard and determined either in a court of the United States located in New York City ("Federal Court") or in a court of the State of New York located in the City and County of New York ("New York State Court").   To effect this agreement and intent, the Company agrees that:

(a) If the City initiates any action against the Company in Federal Court or in New York State Court, service of process may be made on the Company either in person or by registered mail addressed to the Company at its office located at 1095 Avenue of the Americas, New York, NY 10036, Attention: Legal Department, or to such other address as the Company may provide to the City in writing;

(b) With respect to any action between the City and the Company in New York State Court, the Company hereby expressly waives and relinquishes any rights it might otherwise have (i) to move or dismiss on grounds of forum non conveniens and (ii) to move for a change of venue to a New York State Court

28

CONFIDENTIAL

outside New York County;

(c) With respect to any action between the City and the Company in Federal Court, the Company expressly waives and relinquishes any right it might otherwise have to move to transfer the action to a United States Court outside the City of New York; and

(d) If the Company commences any action against the City in a court located other than in the City and State of New York, upon request of the City, the Company shall either consent to a transfer of the action to a court of competent jurisdiction located in the City and State of New York or, if the court where the action is initially brought will not or cannot transfer the action, the Company shall consent to dismiss such action without prejudice and may thereafter reinstitute the action in a state or federal court of competent jurisdiction in New York City.

29

NYC019315

CONFIDENTIAL

In Witness Whereof, the parties hereunder have caused this contract to be executed.

NEW YORK CITY DEPARTMENT OF TELECOMMUNICATIONS AND ENERGY

By: _____
                    William F. Squadron
                    Commissioner

NEW YORK TELEPHONE COMPANY:

By: _____
                    (Signature)

            _____
                    Douglas J. Mello
                    (Print Name of Signatory)

Title: _____
                    Group Vice President

The foregoing contract is hereby approved.

            DAVID N. DINKINS, MAYOR

By: _____
                    Michael C. Rogers
                    Director, Mayor's Office of Contracts

Dated: New York, N.Y. _____, 1993

Approved as to form
Certified as to legal authority

By: _____
                    Acting Corporation Counsel
                    JUN 0 1 1993

30

NYC019316

CONFIDENTIAL

State, City and County of New York, ss.:

On this __14__ day of __June__, 1993, before me personally came William F. Squadron, to me known and known to me to be the Commissioner of the Department of Telecommunications and Energy of the City of New York, the person described as such in and who as such executed the foregoing instrument and he acknowledged to me that he executed the same as Commissioner for the purposes therein mentioned.

_____
Notary Public or Commissioner of Deeds

LORRAINE SPINA
Notary Public, State of New York
No. 24-01SP4725351
Qualified in Kings County
Term Expires March 30, 19__

31

**CONFIDENTIAL**

State, City and County of New York, ss.:

On this _11_ day of _June_ , 1993, before me personally came
_Douglas J. Mello_ , who, being by me duly sworn, did
depose and say that he/she is the _Group Vice President_ of New York
Telephone Company, the corporation described in and which executed the
foregoing instrument; that he/she knows the seal of said corporation; that the
seal affixed to the said instrument is such corporate seal; that it was so
affixed as appropriate according to the rules of said corporation; and that
he/she signed his/her name thereto as appropriate according to the rules of
such corporation.

_Geraldine A Hackett_
Notary Public or Commissioner of Deeds

GERALDINE A. HACKETT
Notary Public, State of New York
No. 4347721l3
Qualified in Richmond County
Certified in New York County
Commission Expires January 31, _1995_

32

# Exhibit II

Res. No. 439-A

Proposed amended authorizing resolution submitted by the Mayor pursuant to Section 363 of the Charter for the granting of franchises for the installation of public pay telephones and associated equipment on, over, and under the inalienable property of the City.

By Council Members Eisland and McCaffrey (at the request of the Mayor), also Council Members Dear, Fields and Ruiz;

New matter is <u>underlined</u>. Matter to be deleted is [bracketed].

WHEREAS, by Executive Order 44, dated December 3, 1992, the Mayor has designated the Department of Telecommunications and Energy as the responsible agency for the granting of telecommunications franchises; and

WHEREAS, pursuant to Section 363 of the Charter (the "Charter") of the City of New York (the "City"), the Commissioner of the Department of the Department of Telecommunications and Energy <u>(the "Commissioner")</u> has made the initial determination of the need for franchises for public pay telephone service in the City of New York; [and]

<u>WHEREAS, pursuant to Local Law 24 of 1994 the Department of Information Technology and Telecommunications (the "Department") has succeeded the Department of Telecommunications and Energy; and</u>

<u>WHEREAS, pursuant to Section 1072 of the Charter, the Department has proposed an authorizing resolution for franchises for public pay phones in the City of New York;</u>

<u>WHEREAS, there is the need to promote competition in the public pay telephone industry in the City; and</u>

WHEREAS, the Council has determined that the granting of such franchises will promote the public interest, enhance the health, welfare and safety of the public and will stimulate commerce by assuring the widespread availability of reliable public pay telephone service;            \

The Council hereby resolves that:

The Council authorizes the Department [of Telecommunications and Energy], or any successor thereto, to grant non-exclusive franchises for the installation of public pay telephones and associated equipment on, over and under the inalienable property of the City.

1

NYC019393

"Public pay telephone" shall be defined by Section 23-401(e) of the Administrative Code of the City of New York (the"Code").

For purposes of this resolution, "inalienable property of the City" shall mean property designated as inalienable in Section 383 of the Charter.

"Street" shall be defined by subdivision 13 of Section 1-112 of the Code.

The public service to be provided pursuant to this resolution shall be public pay telephone service.

All franchises granted pursuant to this resolution shall require the approval of the Franchise and Concession Review Committee and the separate and additional approval of the Mayor.

The authorization to grant franchises pursuant to this resolution shall expire on the fifth anniversary of the date on which this resolution is adopted by the Council (the "Expiration Date"). No franchise shall be granted pursuant to this resolution by the Department, nor approved by the Franchise and Concession Review Committee, or the Mayor after the Expiration Date.

Prior to the grant of such a franchise, a Request For Proposals ("RFP") or other solicitation shall be issued by the Department [of Telecommunications and Energy] or any successor thereto. Prior to issuing any such RFP or other solicitation, all necessary environmental and land use review shall be conducted in accordance with [City Environmental Quality Review and Section 197c of the Charter] the New York State Environmental Quality Review Act ("SEQRA"), the regulations set forth in Volume 6 of the New York Code of Rules and Regulations, Section 617.00 et. seq., the City Environmental Quality Review ("CEQR") Rules of Procedure of 1991, Executive Order No. 91 of 1977, as amended, and Section 197c of the Charter.

The RFP or other solicitation shall contain siting and clearance criteria (the "criteria") which shall be utilized by the Department in approving the placement of public pay telephones and associated equipment on, over and under the inalienable property of the City. Said criteria shall address, but shall not be limited to, the following factors:

  (1) proximity to water, sewer, electrical or other pipes, conduits or other structures;

2

NYC019394

(2)  visual impacts, if any, on vehicular traffic;

(3)  proximity to other existing structures including but not limited to traffic lights, traffic and other signs, newsstands, fire hydrants, underground vaults, bus stop shelters, public pay toilets, enclosed and unenclosed sidewalk cafes, building entrances and exits, and curb cuts; additionally, a pedestal or other structure which holds a public pay telephone(s) shall be located at least fifty (50) feet from any other such pedestal or structure on any one blockfront.  For purposes of this section, a "blockfront" shall be defined as that portion of a sidewalk on one side of a street which is between the lot line and an imaginary line measured six feet from and running parallel to the lot line and which is between two points each of which is ten (10) feet from the corner of said street and its intersecting street;

(4)  adequate  sidewalk  clearance  to  assure  reasonable pedestrian flow;

(5)  whether the proposed location is adjacent to a curb or adjacent to a building or other structure; and

(6)  impacts, if any, on designated historic landmarks or designated historic districts.

The  criteria  to  be  used  by  the  Department  [of Telecommunications and Energy] to evaluate responses to such RFPs or other solicitation shall include, but not be limited to, the following:

(1)  the financial, legal, technical and managerial experience and capabilities of the applicant(s);

(2)  the adequacy and nature of the proposed compensation to be paid to the City;

(3)  the ability of the applicant(s) to maintain the property of the City in good condition throughout the term of the franchise; [and]

(4)  the efficiency of the public service to be provided[.]; and

(5)  the willingness of an applicant to provide public pay telephone service to (a) residential areas of the City underserved in terms of household telephone penetration or public pay telephone service and (b) locations with significant emergency demands such as along arterial highways and at entrances to bridges and tunnels.

3

The Department [of Telecommunications and Energy] shall apply the City's McBride Principles when granting a franchise pursuant to this resolution.

The Department shall not grant a franchise for less than twenty-five (25) public pay telephones and associated equipment on, over and under the inalienable property of the City.

Any franchise granted pursuant to this resolution shall be by written agreement and shall include, but not be limited to, the following terms and conditions:

(1) the term of the franchise, including option(s) to renew, if any, shall not exceed fifteen (15) years;

(2) the compensation paid to the City shall be adequate and shall include the payment of fees [or] and the provision of [facilities and] services, [or both] which shall include the provision of public pay telephone service in (a) residential areas of the City underserved in terms of household telephone penetration or public pay telephone service and (b) locations with significant emergency demands such as along arterial highways and at entrances to bridges and tunnels.  Such compensation shall not be considered in any manner to be in the nature of a tax, but such payments shall be made in addition to any and all taxes of whatsoever kind and description which are now or may at any time hereafter be required to be paid pursuant to any local law of the City, law of the State of New York, or law of the federal government;

(3) the franchise may be terminated or canceled by the Department [of Telecommunications and Energy] in the event of a franchisee's failure to comply with the terms and conditions of the agreement;

(4) a security fund shall be established to ensure the performance of the franchisee's obligations under the agreement; the Department is hereby expressly authorized to permit said security fund to be established by a trade association, duly organized under the Not-For-Profit Corporation law of the State of New York which represents two or more franchisees;

(5) the City shall have the right to inspect the facilities of the franchisee which are located on the city's inalienable property and which house the franchisee's operating systems and associated equipment and to order the relocation of such facilities at the direction of the Department [of Telecommunications and Energy];

4

NYC019396

(6) there shall be <u>requirements for</u> adequate insurance and indemnification [requirements] to protect the interests of the public and the City;

(7) all franchisees shall be required to maintain complete and accurate records and books of account which shall be made available on demand to the City for inspection <u>at a location to be determined by the City in its sole discretion;</u>

[(9)] <u>(8) there shall be provisions to allow franchisees to sell or lease advertising space on its public pay telephones which are located in commercial and/or manufacturing zoning districts and zoning districts where commercial and/or manufacturing uses are permitted. To the maximum extent feasible, the Department shall ensure that such provisions for the sale or lease of advertising space on public pay telephones be consistent with the provisions of the franchise agreement entered into by and between the City of New York and New York Telephone on July 1, 1993. Such provisions shall also provide that the compensation paid to the City shall include a percentage of gross revenues derived by the franchisee from the display of advertising. In the event that a franchisee seeks to sell or lease advertising space on its public pay telephones pursuant to this paragraph (8) and prior to the installation of any such advertising, the franchisee shall submit to the Commissioner a list of each such location where advertising is sought to be sold or leased, shall indicate the zoning designation for each such location, and shall certify, in writing, that each location complies with the requirements of this paragraph [(9)] (8);</u>

[(10)] <u>(9) in the event that a franchisee does sell or lease advertising space on its public pay telephones, advertising for tobacco products shall be prohibited. There shall be a requirement for the provision of free advertising space for public service announcements. Said space shall represent at least 2 (two) percent of total advertising space. The Department shall be responsible for informing all agencies of City government of such free advertising space for public service announcements. In order to ensure wide and fair distribution of such free advertising space, the Department shall develop a plan for coordinating requests by said agencies for the use of such space;</u>

[(8)] <u>(10)</u> there shall be provisions [to ensure quality workmanship and construction methods] <u>requiring that all work involved in the installation, construction, operation, maintenance, repair, upgrade, removal or deactivation of the equipment and facilities of the franchisee shall be performed in a safe, thorough and reliable manner using materials of good and durable quality and that such work will be done in accordance with any rules promulgated under Section 23-403 of the Code in relation thereto; additionally, the</u>

5

NYC019397

installation of public pay telephones on distinctive sidewalks shall be prohibited;

(11) all franchisees shall comply with all applicable sections of the buildings and electrical codes of the City of New York and, where the nature of any work to be done in connection with the installation, construction, operation, maintenance, repair, upgrade, removal or deactivation of such public pay telephones and associated equipment on, over and under the inalienable property of the City requires that such work be done by an electrician, the franchisees shall employ and utilize only licensed electricians;

[(9)] (12) there shall be provisions containing the agreements required pursuant to paragraph 6 of subdivision (h) of Section 363 of the Charter relating to collective bargaining and other matters;

[(10)] (13) there shall be provisions requiring all franchisees to comply with all applicable City, state and federal laws, regulations and policies;

[(11)] (14) there shall be provisions to ensure the adequate oversight and regulation of all franchisees by the City;

[(12)] (15) there shall be provisions to restrict the assignment or other transfer of the franchise without the prior written consent of the City and provisions to restrict changes in control of the franchisee without the prior written consent of the City. Such consent shall not be withheld unreasonably;

(16) there shall be provisions to require the franchisees to comply with the applicable provisions of the Americans with Disabilities Act and any additional applicable federal, state and local laws relating to accessibility for persons with disabilities, and at least 25 (twenty five) percent of each franchisee's telephones shall be equipped with volume control equipment to enable hearing impaired persons to access and utilize telecommunications services. The franchisee shall make a good faith effort to distribute the volume control telephones evenly;

[(13)] (17) there shall be remedies to protect the City's interests in the event of a franchisee's failure to comply with the terms and conditions of the agreement;

(18) there shall be provisions to protect the City's interests in the event of the subsequent invalidity of any portion of the agreement and in the event of any change in applicable law;

6

NYC019398

[(14)] (19) all franchisees shall submit to the City's Vendor Information Exchange System ("VENDEX") and the Integrated Comprehensive Contract Information System ("ICCIS");

[(15)] (20) all franchisees shall obtain all necessary licenses and permits from and comply with all Rules and Regulations of the New York State Public Service Commission, the Federal Communications Commission and any other governmental body having jurisdiction over the franchisee;

(21) all franchisees shall obtain the permit(s) required by Section 23-402 of the Code. The fees paid to obtain said permits shall not be considered in any manner to be compensation or in the nature of a tax;

[(16)] (22) all franchisees shall establish and maintain adequate security systems to protect the franchisee's revenues;

[(17)] (23) all franchisees shall establish and maintain prompt and efficient complaint handling procedures;

(24) there shall be provisions for inspecting and cleaning the public pay telephones and for the prompt removal of graffiti. Such inspection, cleaning and graffiti removal shall be a minimum of twice per month;

[(18)] (25) all franchisees shall establish and maintain a program, accessible by the City, to monitor the operability of its equipment at all times at all locations;

[(19)] (26) in the event of an outage, the source of which is under the direct control of the franchisee(s), [all] the franchisee[s] shall be required to restore service within twenty-four (24) hours at all locations so affected [in the event of an outage within twenty-four (24) hours]. If the source of the outage is not under the direct control of the franchisee(s), the franchisee(s) shall notify the responsible party and the Commissioner within twenty-four (24) hours;

[(20)] (27) all franchisees shall ensure that not more than [five percent (5%)] ten percent (10%) of its telephones are out of service at any given time;

[(21)] (28) there shall be provisions preserving the right of the City to perform public works or public improvements in and around those areas subject to the franchise;

7

NYC019399

[(22)] (29) there shall be provisions requiring the franchisee(s) to protect the property of the City and the delivery of other public services from damage or interruption of operation resulting from the installation, construction, operation, maintenance, repair, upgrade, removal or deactivation of the equipment or facilities related to the franchise;

[(23)] (30) there shall be provisions designed to minimize the extent to which the public use of the streets of the City is disrupted in connection with the installation, construction, operation, maintenance, repair, upgrade, removal or deactivation of the equipment and facilities related to the franchise; [and]

[(24)] (31) there shall be provisions requiring that[: (i)] emergency calling to the 911 emergency number, [and] to the [operator] certified operator service provider and to any other appropriately authorized emergency access number be in accordance with the rules and regulations promulgated by the Public Service Commission [shall be available without use of a coin and (ii) the franchisee must dial the digits "911" and "0" directly into the local network with no delay for 911.]; and

(32) there shall be a provision, consistent with such regulations as may be promulgated by the New York State Public Service Commission, requiring that each public pay telephone clearly and legibly (i) identify the owner and/or operator of such public pay telephone, (ii) indicate that the owner and/or operator has been franchised by the City of New York and (iii) provide such telephone numbers as may be required by the Department where complaints regarding the telephone may be directed;

The Department shall develop a process for consultation with Council Members and Community Boards with respect to the siting of public pay telephones and complaints regarding same including requests for removal or relocation. This process shall include, but not be limited to:

(1) allowing Council Members and Community Boards to submit to the Department a prioritized list of areas requiring additional service, reduced service, or a change in service;

(2) requiring the Department to make the applications received under Section 23-403 of the Code available for public review; and

(3) requiring the Commissioner to respond in writing to complaints and requests received from Council Members and Community Boards regarding installation, change of service, removal or relocation of public pay telephones pursuant to the Commissioner's

8

NYC019400

authority under the Code.

The Department [of Telecommunications and Energy] shall file the lfollowing documents with the Council:

(1) within fifteen (15) days of filing or receipt, a copy of all documents, including but not limited to forms, applications, reports and correspondence regarding SEQRA, CEQR and ULURP;

[(1)] (2) within fifteen (15) days of issuance, a copy of each RFP or other solicitation issued pursuant to this resolution;

[(2)] (3) within fifteen (15) days of approval by the Mayor, a copy of the agreement for each franchise granted pursuant to this resolution, and any subsequent modification thereof; and

[(3)] (4) on or before July 1 of each year, for the preceding calendar year, a report detailing the revenues received by the City from each franchise granted pursuant to this resolution.

Adopted.

    Office of the City Clerk }
    The City of New York     } ss.:

        I hereby certify that the foregoing is a true copy of a Resolution passed by The Council of The City of New York on August 17, 1995, on file in this office.

                                    City Clerk, Clerk of Council

9

NYC019401

# Exhibit JJ



### THE COUNCIL OF THE CITY OF NEW YORK
### RESOLUTION NO. 2248

Authorizing Resolution for the granting of franchises for the installation of public pay telephones and associated equipment on, over, and under the inalienable property of the City which amends Resolution no. 439-A of 1995 (L.U. 1255).

By Council Members Eisland and McCaffrey

New matter is underlined. Matter to be deleted is [bracketed].

WHEREAS, by Executive Order 44, dated December 3, 1992, the Mayor has designated the Department of Telecommunications and Energy as the responsible agency for the granting of telecommunications franchises; and

WHEREAS, pursuant to Section 363 of the Charter (the "Charter") of the City of New York (the "City"), the Commissioner of the Department of the Department of Telecommunications and Energy (the "Commissioner") has made the initial determination of the need for franchises for public pay telephone service in the City of New York;

WHEREAS, pursuant to Local Law 24 of 1994 the Department of Information Technology and Telecommunications (the "Department") has succeeded the Department of Telecommunications and Energy; and

WHEREAS, pursuant to Section 1072 of the Charter, the Department has proposed an authorizing resolution for franchises for public pay phones in the City of New York;

WHEREAS, there is the need to promote competition in the public pay telephone industry in the City; and

WHEREAS, the Council has determined that the granting of such franchises will promote the public interest, enhance the health, welfare and safety of the public and will stimulate commerce by assuring the widespread availability of reliable public pay telephone service;

The Council hereby resolves that:

The Council authorizes the Department, or any successor thereto, to grant non-exclusive franchises for the installation of public pay telephones and associated equipment on, over and under the inalienable property of the City.

Page 2 of 9 pages
180097 GFY
Reso. No. 2248 (L.U. No. 1255)

"Public pay telephone" shall be defined by Section 23-401(e) of the Administrative Code of the City of New York (the "Code").

For purposes of this resolution, "inalienable property of the City" shall mean property designated as inalienable in Section 383 of the Charter.

"Street" shall be defined by subdivision 13 of Section 1-112 of the Code.

The public service to be provided pursuant to this resolution shall be public pay telephone service.

All franchises granted pursuant to this resolution shall require the approval of the Franchise and Concession Review Committee and the separate and additional approval of the Mayor.

The authorization to grant franchises pursuant to this resolution shall expire on the fifth anniversary of the date on which this resolution is adopted by the Council (the "Expiration Date"). No franchise shall be granted pursuant to this resolution by the Department, nor approved by the Franchise and Concession Review Committee, or the Mayor after the Expiration Date.

Prior to the grant of such a franchise, a Request For Proposals ("RFP") or other solicitation shall be issued by the Department or any successor thereto. Prior to issuing any such RFP or other solicitation, all necessary environmental and land use review shall be conducted in accordance with the New York State Environmental Quality Review Act ("SEQRA"), the regulations set forth in Volume 6 of the New York Code of Rules and Regulations, Section 617.00 et. seq., the City Environmental Quality Review ("CEQR") Rules of Procedure of 1991, Executive Order No. 91 of 1977, as amended, and Section 197c of the Charter.

The RFP or other solicitation shall contain siting and clearance criteria (the "criteria") which shall be utilized by the Department in approving the placement of public pay telephones and associated equipment on, over and under the inalienable property of the City. Said criteria shall address, but shall not be limited to, the following factors:

    (1)    proximity to water, sewer, electrical or other pipes, conduits or other structures;

    (2)    visual impacts, if any, on vehicular traffic;

Page 3 of 9 pages
50097 GFY
Reso. No. 2248 (L.U. No. 1255)

(3)     proximity to other existing structures including but not limited to traffic lights, traffic and other signs, newsstands, fire hydrants, underground vaults, bus stop shelters, public pay toilets, enclosed and unenclosed sidewalk cafes, building entrances and exits, and curb cuts; additionally, a pedestal or other structure which holds a public pay telephone(s) shall be located at least fifty (50) feet from any other such pedestal or structure on any one blockfront. For purposes of this section, a "blockfront" shall be defined as that portion of a sidewalk on one side of a street which is between the lot line and an imaginary line, measured six feet from and running parallel to the lot line and which is between two points each of which is ten (10) feet from the corner of said street and its intersecting street;

(4)     adequate sidewalk clearance to assure reasonable pedestrian flow;

(5)     whether the proposed location is adjacent to a curb or adjacent to a building or other structure; and

(6)     impacts, if any, on designated historic landmarks or designated historic districts.

The criteria to be used by the Department [of Telecommunications and Energy] to evaluate responses to such RFPs or other solicitation shall include, but not be limited to, the following:

(1)     the financial, legal, technical and managerial experience and capabilities of the applicant(s);

(2)     the adequacy and nature of the proposed compensation to be paid to the City;

(3)     the ability of the applicant(s) to maintain the property of the City in good condition throughout the term of the franchise;

(4)     the efficiency of the public service to be provided; and

(5)     the willingness of an applicant to provide public pay telephone service to (a) residential areas of the City underserved in terms of household telephone penetration or public pay telephone service and (b) locations with significant emergency demands such as along arterial highways and at entrances to bridges and tunnels.

The Department shall apply the City's McBride Principles when granting a franchise pursuant to this resolution.

Page 4 of 9 pages
180097 GFY
Reso. No. 2248 (L.U. No. 1255)

The Department shall not grant a franchise for less than twenty-five (25) public pay telephones and associated equipment on, over and under the inalienable property of the City.

Any franchise granted pursuant to this resolution shall be by written agreement and shall include, but not be limited to, the following terms and conditions:

(1)     the term of the franchise[, including option(s) to renew, if any,] shall not exceed fifteen (15) years which shall include an initial term of eleven (11) years and an option to renew for four (4) years;

(2)     the compensation paid to the City shall be adequate and shall include the payment of fees and the provision of services, which shall include the provision of public pay telephone service and in (a) residential areas of the City underserved in terms of household telephone penetration or public pay telephone service and (b) locations with significant emergency demands such as along arterial highways and at entrances to bridges and tunnels. Such compensation shall not be considered in any manner to be in the nature of a tax, but such payments shall be made in addition to any and all taxes of whatsoever kind and description which are now or may at any time hereafter be required to be paid pursuant to any local law of the City, law of the State of New York, or law of the federal government;

(3)     the franchise may be terminated or canceled by the Department in the event of a franchisee's failure to comply with the terms and conditions of the agreement;

(4)     a security fund shall be established to ensure the performance of the franchisee's obligations under the agreement; the Department is hereby expressly authorized to permit said security fund to be established by a trade association, duly organized under the Not-For-Profit Corporation law of the State of New York which represents two or more franchisees;

(5)     the City shall have the right to inspect the facilities of the franchisee which are located on the city's inalienable property and which house the franchisee's operating systems and associated equipment and to order the relocation of such facilities at the direction of the Department;

(6)     there shall be requirements for adequate insurance and indemnification to protect the interests of the public and the City;



Page 5 of 9 pages
180097 GFY
Reso. No. 2248 (L.U. No. 1255)

(7)    all franchisees shall be required to maintain complete and accurate records and books of account which shall be made available on demand to the City for inspection at a location to be determined by the City in its sole discretion;

(8)    there shall be provisions to allow franchisees to sell or lease advertising space on its public pay telephones which are located in commercial and/or manufacturing zoning districts and zoning districts where commercial and/or manufacturing uses are permitted.  To the maximum extent feasible, the Department shall ensure that such provisions for the sale or lease of advertising space on public pay telephones be consistent with the provisions of the franchise agreement entered into by and between the City of New York and New York Telephone on July 1, 1993.  Such provisions shall also provide that the compensation paid to the City shall include a percentage of gross revenues derived by the franchisee from the display of advertising.  In the event that a franchisee seeks to sell or lease advertising space on its public pay telephones pursuant to this paragraph (8) and prior to the installation of any such advertising, the franchisee shall submit to the Commissioner a list of each such location where advertising is sought to be sold or leased, shall indicate the zoning designation for each such location, and shall certify, in writing, that each location complies with the requirements of this paragraph (8);

(9)    in the event that a franchisee does sell or lease advertising space on its public pay telephones, advertising for tobacco products shall be prohibited.  There shall be a requirement for the provision of free advertising space for public service announcements.  Said space shall represent at least 2 (two) percent of total advertising space.  The Department shall be responsible for informing all agencies of City government of such free advertising space for public service announcements.  In order to ensure wide and fair distribution of such free advertising space, the Department shall develop a plan for coordinating requests by said agencies for the use of such space;

(10)    there shall be provisions requiring that all work involved in the installation, construction, operation, maintenance, repair, upgrade, removal or deactivation of the equipment and facilities of the franchisee shall be performed in a safe, thorough and reliable manner using materials of good and durable quality and that such work will be done in accordance with any rules promulgated under Section 23-403 of the Code in relation thereto; additionally, the installation of public pay telephones on distinctive sidewalks shall be prohibited;



Page 6 of 9 pages
180097 GFY
Reso. No. 2248 (I..U. No. 1255)

(11)  all franchisees shall comply with all applicable sections of the buildings and electrical codes of the City of New York and, where the nature of any work to be done in connection with the installation, construction, operation, maintenance, repair, upgrade, removal or deactivation of such public pay telephones and associated equipment on, over and under the inalienable property of the City requires that such work be done by an electrician, the franchisees shall employ and utilize only licensed electricians;

(12)  there shall be provisions containing the agreements required pursuant to paragraph 6 of subdivision (h) of Section 363 of the Charter relating to collective bargaining and other matters;

(13)  there shall be provisions requiring all franchisees to comply with all applicable City, state and federal laws, regulations and policies;

(14)  there shall be provisions to ensure the adequate oversight and regulation of all franchisees by the City;

(15)  there shall be provisions to restrict the assignment or other transfer of the franchise without the prior written consent of the City and provisions to restrict changes in control of the franchisee without the prior written consent of the City. Such consent shall not be withheld unreasonably;

(16)  there shall be provisions to require the franchisees to comply with the applicable provisions of the Americans with Disabilities Act and any additional applicable federal, state and local laws relating to accessibility for persons with disabilities, and at least 25 (twenty five) percent of each franchisee's telephones shall be equipped with volume control equipment to enable hearing impaired persons to access and utilize telecommunications services. The franchisee shall make a good faith effort to distribute the volume control telephones evenly;

(17)  there shall be remedies to protect the City's interests in the event of a franchisee's failure to comply with the terms and conditions of the agreement;

(18)  there shall be provisions to protect the City's interests in the event of the subsequent invalidity of any portion of the agreement and in the event of any change in applicable law;

(19)  all franchisees shall submit to the City's Vendor Information Exchange System ("VENDEX") and the Integrated Comprehensive Contract Information System ("ICCIS");



Page 7 of 9 pages
180097 GFY
Reso. No. 2248 (L.U. No. 1755)

(20)    all franchisees shall obtain all necessary licenses and permits from and comply with all Rules and Regulations of the New York State Public Service Commission, the Federal Communications Commission and any other governmental body having jurisdiction over the franchisee;

(21)    all franchisees shall obtain the permit(s) required by Section 23-402 of the Code. The fees paid to obtain said permits shall not be considered in any manner to be compensation or in the nature of a tax;

(22)    all franchisees shall establish and maintain adequate security systems to protect the franchisee's revenues;·

(23)    all franchisees shall establish and maintain prompt and efficient complaint handling procedures;

(24)    there shall be provisions for inspecting and cleaning the public pay telephones and for the prompt removal of graffiti. Such inspection, cleaning and graffiti removal shall be a minimum of twice per month;

(25)    all franchisees shall establish and maintain a program, accessible by the City, to monitor the operability of its equipment at all times at all locations;

(26)    in the event of an outage, the source of which is under the direct control of the franchisee(s), the franchisee(s) shall be required to restore service within twenty-four (24) hours at all locations so affected. If the source of the outage is not under the direct control of the franchisee(s), the franchisee(s) shall notify the responsible party and the Commissioner within twenty-four (24) hours;

(27)    all franchisees shall ensure that not more than ten percent (10%) of its telephones are out of service at any given time;

(28)    there shall be provisions preserving the right of the City to perform public works or public improvements in and around those areas subject to the franchise;

(29)    there shall be provisions requiring the franchisee(s) to protect the property of the City and the delivery of other public services from damage or interruption of operation resulting from the installation, construction, operation, maintenance, repair, upgrade, removal or deactivation of the equipment or facilities related to the franchise;



Page 8 of 9 pages
180097 GFY
Reso. No. 2248 (L.U. No. 1255)

(30)  there shall be provisions designed to minimize the extent to which the public use of the streets of the City is disrupted in connection with the installation, construction, operation, maintenance, repair, upgrade, removal or deactivation of the equipment and facilities related to the franchise;

(31)  there shall be provisions requiring that emergency calling to the 911 emergency number, to the certified operator service provider and to any other appropriately authorized emergency access number be in accordance with the rules and regulations promulgated by the Public Service Commission; and

(32)  there shall be a provision, consistent with such regulations as may be promulgated by the New York State Public Service Commission, requiring that each public pay telephone clearly and legibly (i) identify the owner and/or operator of such public pay telephone, (ii) indicate that the owner and/or operator has been franchised by the City of New York and (iii) provide such telephone numbers as may required by the Department where complaints regarding the telephone may be directed;

The Department shall develop a process for consultation with Council Members and Community Boards with respect to the siting of public pay telephones and complaints regarding same including requests for removal or relocation.  This process shall include, but not be limited to:

(1)    allowing Council Members and Community Boards to submit to the Department a prioritized list of areas requiring additional service, reduced service, or a change in service;

(2)    requiring the Department to make the applications received under Section 23-403 of the Code available for public review; and

(3)    requiring the Commissioner to respond in writing to complaints and requests received from Council Members and Community Boards regarding installation, change of service, removal or relocation of public pay telephones pursuant to the Commissioner's authority under the Code.

The Department  shall file the following documents with the Council:

(1)    within fifteen (15) days of filing or receipt, a copy of all documents, including but not limited to forms, applications, reports and correspondence regarding SEQRA, CEQR and ULURP;



Page 9 of 9 pages
180097 GFY
Reso. No. 2248 (L.U. No. 1255)

(2)    within fifteen (15) days of issuance, a copy of each RFP or other solicitation issued pursuant to this resolution;

(3)    within fifteen (15) days of approval by the Mayor, a copy of the agreement for each franchise granted pursuant to this resolution. and any subsequent modification thereof; and

(4)    on or before July 1 of each year, for the preceding calendar year, a report detailing the revenues received by the City from each franchise granted pursuant to this resolution.

Adopted.

    Office of the City Clerk, }
    The City of New York,    }ss.:

        I hereby certify that the foregoing is a true copy of a Resolution passed by The Council of The City of New York on March 25, 1997, on file in this office.

                                    City Clerk, Clerk of Council

# Exhibit KK

# LOCAL LAWS
## OF
# THE CITY OF NEW YORK
### FOR THE YEAR 1995

---

## No. 68

---

Introduced by Council Members Pinkett, Duane, Linares, McCaffrey, Ruiz, Harrison, Rivera, Robinson, Watkins and Eristoff; also Council Members Cruz and Michels.

# A LOCAL LAW

**To amend the New York city charter and the administrative code of the city of New York, in relation to the issuance of permits for the installation, operation and maintenance of public pay telephones upon the streets and other inalienable property of the city, and in relation to protecting such public pay telephones against graffiti and illegal postings and to repeal section 19-128 of such administrative code.**

*Be it enacted by the Council as follows:*

Section 1. Section 19-128 of the administrative code of the city of New York is hereby REPEALED.

§2. Title 23 of the administrative code of the city of New York is amended by adding a new chapter 4 to read as follows:

*§23-401. Definitions. Whenever used in this chapter:*

*a. "Commissioner" shall mean the commissioner of the department of information technology and telecommunications, or of any successor agency.*

*b. "Department" shall mean the department of information technology and telecommunications, or any successor agency.*

*c. "Owner" shall mean a natural person or business entity which owns, leases, or is otherwise responsible for the installation, operation and maintenance of a public pay telephone.*

*d. "Permit" shall mean an authorization by the department to install, operate and maintain one or more public pay telephones at a location on, over or under a street or other inalienable property of the city.*

*e. "Public nuisance" shall mean the use of a public pay telephone on a regular basis which the commissioner has reasonable cause to believe is in furtherance of unlawful activity.*

*f. "Public pay telephone" shall mean a telephone and associated equipment, from which calls can be paid for at the time they are made by a coin, credit card, prepaid debit card or in any other manner, which is available for use by the public and provides access to the switched telephone network for the purpose of voice or data communications. The*

NYC019403

2

term "*public pay telephone*" shall include any pedestal or telephone bank supporting one or more such telephones, associated enclosures, signage and other associated equipment.

g. "*Street*" shall have the meaning ascribed thereto in subdivision thirteen of section 1-112 of this code.

§23-402 *Permit required.* No public pay telephone shall be installed, operated or maintained on, over or under any street or other inalienable property of the city without a permit therefor, and unless such installation, operation and maintenance is in accordance with the provisions of this chapter, the rules of the commissioner promulgated pursuant thereto, and the terms and conditions of such permit.

§23-403 *Powers of commissioner.* a. The commissioner may issue and renew permits under this chapter based upon a determination, at his or her discretion, that issuance or renewal of a permit would be in the best interests of the city, provided that:

1. no permit shall be issued or renewed unless the applicant holds a franchise granted by the city to install, operate and maintain public pay telephones on, over and under the streets and other inalienable property of the city;

2. (i) in the event that the installation of a public pay telephone requires the opening, drilling or other physical alteration of a building facade or other private property, no permit shall be issued or renewed without the written consent of the building owner.

(ii) in the event that the installation of a public pay telephone requires affixing the phone to a building facade or other private property, no permit shall be issued or renewed without the written consent of the building owner.

(iii) in the event the installation of a public pay telephone is to be accomplished in a manner other than as set forth in subsection (i) and (ii) of this section, but requires access through an existing conduit or other opening on a building facade or other private property, or such installation is to be made within six feet of a building line, no permit shall be issued or renewed without the written consent of the building owner or the commercial lessee who shall certify (aa) that the building owner has authorized the lessee to grant such consents; and (bb) that the lessee has provided the building owner or its authorized agent with written notification by certified mail, of the granting of such consent, the name and address of the owner of the public pay telephone and the location of such public pay telephone in relation to the building. Proof of mailing of such notification to the building owner or its authorized agent shall be included in the permit application. It shall be a violation of this chapter where a permittee, without providing justification therefor, fails within a time period specified by the Commissioner to remove a public pay telephone following receipt of a notice from the building owner or its authorized agent by certified mail that he or she objects to the installation, where such notice and copy to the Commissioner are sent within thirty days of receipt of the commercial lessee's consent. Nothing herein shall be construed to limit a building owner or its authorized agent from pursuing such remedies as he or she may have under law with respect to the unauthorized installation of a public pay telephone; and

3. no permit shall be issued or renewed for the installation, operation and maintenance of a public pay telephone at any location where it will unreasonably interfere with the use of a street by the public, or where it will unreasonably interfere with the use of the abutting property.

b. The commissioner shall promulgate rules to implement the provisions of this chapter. Such rules shall include, without limitation: (i) a procedure and timetable for review by the department, and other appropriate agencies, including the department of

NYC019404

3

transportation, of applications for the issuance and renewal of permits to install, operate and maintain public pay telephones at specified locations; (ii) standards governing the location of public pay telephones designed so as to ensure that such telephones will not unreasonably interfere with the use of the street by the public and with use of the abutting property; and (iii) standards and procedures governing the installation, removal, operation, cleaning and maintenance of public pay telephones, including procedures for the expedited removal of any public pay telephone determined to constitute a public nuisance.

c. Permits may contain such other terms and conditions not specifically provided for in this chapter as the commissioner deems necessary to protect the public safety and to safeguard the interests of the city.

§23-404 Term; Termination.

a. A permit for a public pay telephone shall continue in effect for the term of the franchise held by the owner of such public pay telephone, unless the commissioner, after giving the permittee notice and an opportunity to be heard, determines: (i) that as a result of changed conditions, the public pay telephone unreasonably interferes or will unreasonably interfere with the use of a street by the public, or constitutes a public nuisance; or (ii) that removal of the public pay telephone is required in connection with a street widening or other capital project or for other purposes as may be specified by rule of the commissioner. Upon making such determination, the commissioner shall order the removal of the public pay telephone within a reasonable time period. In the event the permittee fails to remove the public pay telephone within the time period specified in such order, the commissioner may remove or cause the removal of the public pay telephone and have repair and restoration work performed at the expense of the permittee, who shall be liable in a civil action for the amount expended by the city.

b. Notwithstanding the provisions of subdivision a of this section, in the event that a public pay telephone is removed in connection with a street widening or other capital project or other improvement specified by rule of the commissioner, the permittee may apply to the commissioner for permission to reinstall the public pay telephone at another location or, following the completion of such street widening, capital project, or other improvement, at or near its original location. Where such permission is granted, the permittee shall not be required to obtain a new permit for the public pay telephone, and the permit previously issued for such public pay telephone shall continue in effect. If such public pay telephone is reinstalled at another location, the permittee may apply to the commissioner for a new permit to install another public pay telephone following the completion of such street widening, capital project or other improvement at or near the original location of the public pay telephone previously removed in connection therewith, provided that the permittee has paid the required fee for such permit.

§23-405 Advertising. A permit issued under this chapter shall not constitute an authorization to place advertising upon a public pay telephone.

§23-406 Fees. The commissioner shall by rule establish fees for the issuance and renewal of permits pursuant to this chapter in amounts sufficient to compensate the city for the administrative expense of issuing or renewing a permit and the expense of inspections and other activities related thereto.

§23-407 Transfers. No permit issued under this chapter shall be transferred except as may be authorized by rule of the commissioner.

§23-408 Violations; Penalties and Other Enforcement.

NYC019405

4

a. Any owner who installs, operates or maintains a public pay telephone on, over or under any street or other inalienable property of the city without a permit therefor shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than ten thousand dollars and imprisonment of not more than thirty days, or both such fine and imprisonment. Such owner shall, in addition, be liable for civil penalties pursuant to subdivisions c and d of this section.

b. An owner who repeatedly fails to provide phone services from a public pay telephone for any sustained period of time or who fails to provide coinless twenty-four hour 911 service from such public pay telephone shall be in violation of this chapter and shall be liable for a civil penalty of not more than two thousand five hundred dollars for each violation which may be recovered in a civil action or in a proceeding before the environmental control board. In the case of a continuing violation, each day's continuance shall be a separate and distinct offense.

c. An owner who violates any provision of this chapter, or any term or condition of a permit issued pursuant thereto, or any rule promulgated by the commissioner pursuant thereto shall be liable for a civil penalty of not more than one thousand dollars for each violation which may be recovered in a civil action or in a proceeding before the environmental control board. In the case of a continuing violation, each day's continuance shall be a separate and distinct offense.

d. An owner who is liable for a civil penalty for a violation pursuant to subdivision c of this section shall also be liable in a civil action for an additional civil penalty in the amount of the expense, if any, incurred by the city in the removal of the public pay telephone and the performance of related repair and restoration work.

e. In addition to authorized officers and employees of the department, officers and employees of the department of transportation who are designated by the commissioner shall have the power to issue summonses and appearance tickets returnable in the criminal court and notices of violation returnable before the environmental control board for violations of the provisions of this chapter.

f. An owner of a public pay telephone shall be liable for a violation by his or her employee, agent or independent contractor of the provisions of this chapter, or any term or condition of a permit issued pursuant thereto, or any rule promulgated by the commissioner pursuant thereto, made in the course of performing his or her duties.

g. An owner who submits an application for a public pay telephone permit containing a certification made by a commercial lessee pursuant to subparagraph (iii) of paragraph 2 of subdivision a of section 23-403 of this chapter, knowing that such certification contains a false statement or false information, shall be guilty of a misdemeanor.

h. The commissioner may request the corporation counsel to institute any action or proceeding that may be appropriate or necessary to restrain, correct or abate a violation of the provisions of this chapter.

i. 1. If the commissioner has reasonable cause to believe that an owner, or any employee, agent or independent contractor of such owner, has violated the provisions of this chapter, or any term or condition of a permit issued pursuant thereto, or any rule promulgated by the commissioner pursuant thereto, the commissioner may (i) notify the owner of the condition identified by the commissioner as a violation and specify the action that must be taken to correct the condition in such manner and within such period of time as shall be set forth in such notice, and (ii) shall afford the owner an opportunity

NYC019406

5

to contest the commissioner's notice in a manner to be set forth in rules of the commissioner. Upon final determination by the commissioner and failure of such owner to correct the condition in the manner and within the period of time specified by the commissioner, the commissioner shall be authorized, at his or her discretion:

aa. to remove or cause the removal of any public pay telephone which is installed, operated or maintained on, over or under any street or other unalienable property of the city without a permit therefor. Notwithstanding the foregoing, notice shall be provided pursuant to this subdivision prior to removal only where the name and address of the owner is shown on the public pay telephone or can be readily identified by the commissioner by virtue of a trademark prominently displayed on the public pay telephone.

bb. to revoke a permit and, upon revocation, to further order the removal of the public pay telephone. In the event the permittee fails to remove the public pay telephone and to perform related repair and restoration work within the time period specified by such order, the commissioner may remove or cause the removal of the public pay telephone and have repair and restoration work performed at the expense of the permittee, who shall be liable for the amount expended by the city;

cc. to render a public pay telephone inoperable except for the purpose of emergency telephone service through the 911 system or an operator. Such action may continue until the violation has been corrected to the satisfaction of the commissioner and payment has been made of all civil penalties imposed for the violation and any fees for any administrative expense or expense of additional inspections incurred by the city as a result of such violation. The commissioner shall affix to any public pay phone rendered inoperable pursuant to this paragraph a notice advising the public that the phone may be used only for emergency telephone service through the 911 system or an operator and setting forth the provisions of subdivision h of this section. Any device utilized by the commissioner for the purpose of rendering a public pay telephone inoperable shall be designed so as to permit the unimpaired use of the public pay telephone upon the removal of the device;

dd. to suspend review of all applications for the issuance or renewal of permits filed by such owner pursuant to this chapter. Such suspension may continue until the violation has been corrected to the satisfaction of the commissioner and payment has been made of all fines or civil penalties imposed for the violation, any costs incurred by the city for removal and related repair or restoration work, and any fees for any administrative expense or expense of additional inspections incurred by the city as a result of such violation;

2. Notwithstanding the provisions of paragraph one of this subdivision, if the commissioner determines that an imminent threat to life or property exists, the commissioner may remove or cause the removal of a public pay telephone, and have repair and restoration work performed at the expense of the owner, without affording the owner an opportunity to be heard prior to such removal. An owner who is a permittee or whose name and address is shown on the public pay telephone shall be provided notice and an opportunity to be heard five days after such removal in accordance with rules of the commissioner.

3. The procedures set forth in this subdivision shall be employed by the commissioner in addition to or in lieu of the other remedies set forth in this section and shall not be construed to limit the power of the commissioner to commence a civil action

NYC019407

6

or proceeding before the environmental control board, or the require that the commissioner resort to any procedure set forth in this subdivision as a prerequisite to the commencement of any such action or proceeding.

j. It shall be a misdemeanor for any person: (i) to remove any device installed by the commissioner pursuant to subparagraph aa of paragraph one of subdivision g of this section or to otherwise make operable a public pay telephone upon which such a device has been installed; or (ii) to remove or deface any notice affixed to a public pay telephone pursuant to such paragraph of such subdivision. Such misdemeanor shall be punishable upon conviction by a fine of not more than ten thousand dollars or imprisonment for not more than thirty days or both such fine and imprisonment.

k. Any public pay telephone removed pursuant to this section which is not claimed by the owner within thirty days of removal shall be deemed to be abandoned. All abandoned public pay telephones may be sold at public auction after having been advertised in the City Record and the proceeds paid into the general fund or such abandoned telephones may be used or converted for use by the department or by another city agency. A public pay telephone shall be released to the owner upon payment of the costs of removal, repair and restoration work, and of storage, any fees for any administrative expense or expense of additional inspections incurred by the department as a result of the violation, or, if an action or proceeding for the violation is pending in a court or before the environmental control board, upon the posting of a bond or other form of security acceptable to the commissioner in an amount which will secure the payment of such costs and any fines or civil penalties which may be imposed for the violation.

§3. Subparagraph k of paragraph 1 of subdivision c of section 1404 of the New York city charter, as added by chapter 720 of the laws of 1991, is amended to read as follows:

(k) the construction, maintenance and repair and obstruction or closure of public roads, streets, highways, parkways, bridges and tunnels which are within the jurisdiction of the department of transportation *and the department of information technology and telecommunications;* and

§4. Clause (i) of subparagraph a of paragraph 2 of subdivision d of section 1404 of the charter of the city of New York, as amended by chapter 720 of the laws of 1991, is amended to read as follows:

(i) service of a notice of violation of any provisions of the charter or administrative code the enforcement of which is the responsibility of the fire commissioner, the commissioner of buildings, the commissioner of environmental protection, the commissioner of transportation [or], commissioner of ports and trade *or the commissioner of the department of information technology and telecommunications* and over which the environmental control board has jurisdiction, may be made by delivering such notice to a person employed by the respondent on the premises the occupancy of which caused such violation; and

§5. a. Notwithstanding any provisions to the contrary of section 23-402 of the administrative code of the city of New York, as added by section 2 of this local law, all licenses previously issued to the telephone company pursuant to former sections 19-131 or 19-128 of the administrative code of the city of New York shall remain in full force and effect for a period of three years following the effective date of this local law or until ninety days following such date as the telephone company may be granted a franchise to install, operate and maintain public pay telephones, whichever is the earlier; provided, however, that a public pay telephone licensed pursuant to former sections 19-131 or 19-

7

128 of the administrative code of the city of New York may be subject to removal pursuant to the provisions of subdivision a of section 23-404 of the administrative code of the city of New York as added by section 2 of this local law. Notwithstanding any provisions to the contrary of paragraph 1 of subdivision a of section 23-403 of the administrative code of the city of New York, as added by section 2 of this local law, and subject to compliance with the provisions of section 6 of this local law, during the period in which such existing licenses remain in full force and effect, the commissioner of the department of information technology and telecommunications may issue permits pursuant to chapter 4 of title 23 of the administrative code of the city of New York, as added by section 2 of this local law, for the installation, operation and maintenance of new public pay telephones by the telephone company. Such permits shall expire three years following the effective date of this local law, unless the telephone company is granted a franchise to install, operate and maintain public pay telephones, in which case they shall continue in effect for the term of the franchise.

b. In the event the telephone company is granted a franchise to install, operate and maintain public pay telephones, it may request the issuance of permits pursuant to this local law with respect to any or all of its existing public pay telephones for which a license previously issued pursuant to former sections 19-131 or 19-128 of the administrative code is in effect in accordance with subdivision a of this section no later than thirty days following the date such franchise is granted. Such application shall consist of a letter identifying the location and license number of each existing public pay telephone for which the telephone company seeks a permit. Any existing public pay telephone for which the telephone company does not seek issuance of a permit shall be removed by the telephone company within sixty days following the date the franchise is granted and, if not so removed, shall be subject to removal pursuant to section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law. Failure to remove such a public pay telephone shall also be deemed a violation for purposes of subdivisions b and c of section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law. Notwithstanding any other provisions to the contrary of section 23-403 of the administrative code of the city of new York, as added by section 2 of this local law, the commissioner shall, no later than ninety days following the date the franchise is granted, issue permits pursuant to this local law for the existing public pay telephones for which the telephone company has requested a permit pursuant to this subdivision, unless: (aa) within sixty days following the date the franchise is granted the commissioner has objected to the continued maintenance and operation of an existing public pay telephone upon the basis that such continued maintenance and operation would be inconsistent with this local law, or would not be in compliance with the rules of the commissioner, or of any federal or state regulatory authority having jurisdiction over the provision of public pay telephone service; and (bb) such condition has not been cured within the time frame specified by the Commissioner. The telephone company shall remove all existing public pay telephones for which a permit has not been granted pursuant to this paragraph on or before the one hundred twentieth day following the date the franchise is granted and, if not so removed, such telephones shall be subject to removal pursuant to section 23-408 of the administrative code of the city of New York, as added by section 2 of the local law. Failure to remove such a public pay telephone shall also be deemed a violation for purposes of subdivisions b and c of section 23-408 of the administrative code of the city of New York, as added by

NYC019409

8

section 2 of this local law. No fees shall be required for permits requested under this subdivision.

c. For a period of three years following the effective date of this local law or until such date as the telephone company may be granted a franchise to install, operate and maintain public pay telephones and the terms of the franchise agreement governing compensation to the city thereby take effect, whichever is the earlier, the telephone company shall pay to the city such commissions on revenues derived directly or indirectly from any public pay telephones maintained under license or permit as have been established by agreement between the telephone company and the city, provided, that such city standard public pay telephone commissions shall be paid at not less than the rate in effect as of June 1, 1995. In the event the telephone company fails to pay any such commissions, the commissioner of the department of information technology and telecommunications may suspend the issuance of permits to the telephone company pursuant to subdivision a of this section until such commissions are paid.

§6. a. Notwithstanding any provisions to the contrary of section 23-402 of the administrative code of the city of New York, as added by section 2 of this local law, and subject to compliance with the provisions of subdivision b of this section, an owner of a public pay telephone for which a license has not been issued pursuant to former sections 19-128 and 19-131 of the administrative code of the city of new york shall not be deemed in violation of the provisions of such section for failure to have obtained a permit for such public pay telephone, where such telephone was installed prior to the effective date of this local law, unless and until one of the following has occurred: (i) the owner has declined to respond to the request for proposals or other solicitation of proposals issued by the commissioner of the department of information technology and telecommunications for the purpose of entering into franchise agreements for the installation, operation and maintenance of public pay telephones within the time period specified in such request for proposals or other solicitation of proposals and thirty days have elapsed following such failure to respond; (ii) the commissioner has determined not to propose the award of a franchise to such owner to the franchise and concession review committee and thirty days have elapsed following notification to such owner of the commissioner's determination; or (iii) the franchise and concession review committee has determined not to approve a proposed franchise agreement for such owner and thirty days have elapsed following notification to such owner of the committee's determination; provided, further, that such public pay telephone shall not be deemed in violation of the provisions of section 23-402 of the administrative code of the city of New York, as added by section 2 of this local law if, within any such thirty day period, the owner enters into an agreement for the sale of such public pay telephone to another person who, at the time such agreement is concluded, is either a potential franchisee or has been awarded a franchise, and ownership of such public pay telephone is transferred within thirty days after such agreement is concluded.

b. The provisions of subdivision a of this section shall apply only where: (i) such owner has submitted to the department a registry identifying the location of each telephone installed and activated prior to the effective date of this local law and the date of activation for each such telephone; (ii) the owner has certified, upon a form specified by the commissioner, that all telephones identified in the registry have been installed and are maintained and operated in accordance with all applicable safety standards and requirements; (iii) the owner has paid to the city an annual interim occupancy fee for each

NYC019410

9

telephone identified in the registry in the amount of $75.00; and (iv) the commissioner has not objected to the continued maintenance and operation of such telephone as identified and certified in such registry upon the basis that such continued maintenance and operation: (aa) poses a danger to life or property; (bb) unreasonably interferes with the use of a street by the public; (cc) unreasonably interferes with the use of the abutting property; (dd) is a public nuisance within the meaning of subdivision e of section 23-401 of the administrative code of the city of New York, as added by section 2 of this local law; or (ee) interferes with a street widening or other capital project, or, if the commissioner has so objected, the condition which gave rise to such objection has been timely cured. A public pay telephone for which an objection has been made and not timely cured shall be removed immediately by the owner, and if not removed, shall be subject to removal pursuant to section 23-408 of the administrative code of the city of New York. Failure to remove such a public pay telephone shall also be deemed a violation for purposes of subdivisions b and c of section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law. The commissioner shall promulgate rules governing the format and contents of such registries, the documentation of the information set forth therein, the certification to be provided in connection therewith, a timetable for submission of registries, and a procedure for payment of interim occupancy fees. Such rules shall allow for the payment of the interim occupancy fee in quarterly installments and shall include a mechanism for the prorated application of an interim fee towards payment of a permit fee in the event the owner is awarded a franchise prior to expiration of the annual interim period.

c. Any owner who does not submit a registry and pay to the city interim occupancy fees in the manner provided in the rules promulgated pursuant to subdivision b of this section and in accordance with the timetable established thereunder shall immediately remove all public pay telephones installed prior to the effective date of this local law other than telephones licensed pursuant to former sections 19-128 and 19-131 of the administrative code of the city of New York. Upon failure to remove such telephones such telephones shall be subject to removal pursuant to section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law. The failure to submit a registry in accordance with the timetable established pursuant to the rules promulgated pursuant to subdivision b of this section shall also be deemed a violation of section 23-402 of the administrative code of the city, as added by section 2 of this local law, for which an owner shall be guilty of a misdemeanor pursuant to subdivision a of section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law.

d. Notwithstanding any provisions to the contrary of paragraph 1 of subdivision a of section 23-403 of the administrative code of the city of new York, as added by section 2 of this local law, the commissioner of the department of information technology and telecommunications may issue permits pursuant to chapter 4 of title 23 of the administrative code of the city of New York, as added by section 2 of this local law, for the installation, operation and maintenance of new public pay telephones to an owner of a public pay telephone other than the telephone company who has not been awarded a franchise to install and maintain public pay telephones, provided, that: (i) such owner has submitted a registry and paid to the city interim occupancy fees in the manner provided in the rules promulgated pursuant to subdivision b of this section; and (ii) none of the following has occurred: (aa) the owner has declined to respond to the request for proposals

NYC019411