15 feet of a public pay toilet unless the public pay telephone is attached to such public pay toilet or is installed at the building line and does not obstruct pedestrian passage on the sidewalk.

5 feet of a bench located at the curbline;

10 feet of a driveway unless the public pay telephone is attached to or immediately adjacent to a building immediately adjacent to such driveway;

located in such a manner that a cellar door can be opened to the fullest extent;

5 feet of a canopy as defined in section 19-124 of the Code ;

4 feet of a mailbox located at the curbline;

4 feet of a street light;

4 feet of a parking meter;

3 feet of a fire box unless otherwise approved in writing by the Commissioner;

3 feet of a news rack or newsbox located at the curbline;

3 feet of a grating if the public pay telephone is installed at the building line and does not cover the grating or in any way impede the opening of the grating;

3 feet of signpole;

3 feet of edge of tree pit or planter located at the curb line;

*f. Required Distance from Other Public Pay Telephone.* A pedestal or other structure that holds a public pay telephone shall be located at least fifty (50) feet from any other such pedestal or structure on any one blockfront. For purposes of this subdivision, "blockfront" shall mean that portion of a sidewalk on one side of a street which is between the lot line and an imaginary line measured six (6) feet from and running parallel to the lot line and which is

-3-

NYC019457

between two points, each of which is ten (10) feet from the corner of such street and its intersecting street, in conformity with the definition of corner quadrant found in Executive Order No. 22 of 1995. Nothing in this section shall be construed to prohibit the placement of a public pay telephone at the building line of such corner and corner quadrant, provided, however, that the placement of such public pay telephone on such building line leaves an adequate unobstructed passage for pedestrians.

*g. Distance from Corner and Curb.* A public pay telephone installed after April 13, 1995 at the curbline shall not be located within 10 feet of the extended building line at the corner of the intersecting streets and the edge of such installation closest to the curb shall be at least 18 inches, but no more than 24 inches, from the curb.

*h. Measurements from Enclosures.* If a public pay telephone is mounted in an enclosure, the distances set forth in subdivision e of this section shall be measured from the side of the enclosure nearest the object in question.

*i. Number of Public Pay Telephones at Any Location.* (i) There shall be no more than three (3) public pay telephones installed: (i) on a single pedestal installed along a blockfront, as such term is defined in subdivision f of this section; or (ii) along the curb line in an in-line configuration or a single pedestal configuration. There shall be a distance of fifty feet between any three-telephone configurations along the curb-line. An in-line configuration shall not exceed a footprint of 35" x 120" in conformity with the requirements of the Americans with Disabilities Act (ADA).

*j. Dimensions of Telephones with Enclosures.* If mounted in an enclosure, such enclosure should, in the case of a telephone installed and activated prior to March 1, 1996, be no greater than 35" x 44", and, for a public pay telephone installed and activated after March

-4-

NYC019458

1, 1996, no greater than 35" x 120" for in-line installations of three (3) telephones as required by the Americans with Disabilities Act (ADA). Such enclosure shall not exceed 90" in height excluding a mast which shall not exceed 90" in height. ( The total height of the combined public pay telephone and service mast shall not exceed 180").

**k. *Distinctive Sidewalks*.** A public pay telephone shall not be installed on, or result in the destruction, damage or removal of any part of, a distinctive sidewalk. For purposes of this subdivision, "distinctive sidewalk" shall mean a pavement of granite, slate, bluestone or brick and shall include, but not be limited to, a sidewalk constructed and approved pursuant to section 2-02(f) of Title 34 of the Rules of the City of New York.

**l. *Waiver by Commissioner*.** If the Commissioner determines that a public pay telephone is necessary in a location in order to provide for the public health and safety, and the standards set forth in this section cannot be satisfied, he or she may waive such provisions of this section as may be necessary to permit the installation of a public pay telephone. In no case, however, shall a public pay telephone be placed within eighteen (18) inches of a curb or within ten (10) feet from a corner or constitute an impediment to pedestrian traffic or interfere with the function of fire escapes or the unimpeded passage of building inhabitants.

**§6-42 *Sign Required*.** Each public pay telephone location, single or multiple, shall have a sign in a form prescribed by the Commissioner installed so that it is visible within the enclosure for such telephone. Such sign shall: (i) be of dimensions no less than 2" by 5" nor more than 3" by 6"; (ii) be of white lettering and symbols on a dark blue background; (iii) where applicable, include ADA symbols indicating that the telephone is equipped to assist hearing impaired persons; (iv) be in compliance with requirements of the Americans with Disabilities Act; (v)

NYC019459

clearly and legibly identify the owner or operator of such telephone; and (vi) contain the following statement: "This telephone is franchised by the City of New York. Complaints regarding this telephone may be directed to 718-243-2500."

**6-43 Installation and Maintenance.**

          **a. Workmanship.** (i) Materials and workmanship shall comply with all applicable provisions of the Building Code (Chapter 1, Title 27 of the Code).

          (ii) Where the nature of any work to be done in connection with the installation, construction, operation, maintenance, repair, upgrade, removal or deactivation requires that such work be done by an electrician, only a licensed electrician shall perform such work.

          **b. Materials.** Materials shall be of good and durable quality, in accord with all applicable codes, and all work shall be performed without unreasonable disruption of public streets.

          **c. Maintenance and Repairs.** (i) A permittee shall be responsible for maintaining a public pay telephone and for the completion of any repairs required to such telephone.

          (ii) A permittee shall be responsible for all repairs to streets damaged due to the placement, installation or removal of a public pay telephone.

          (iii) A permittee shall inspect and clean each public pay telephone no fewer than two times each month (or more frequently if so provided in the terms of a franchise agreement governing the permit for such telephone) and shall promptly perform all necessary repairs, clean and remove graffiti from such telephone.

          **d. Advertisements.** A public pay telephone shall not display advertising material, unless in accordance with the provisions of a franchise.

NYC019460

*e. Graffiti.* A public pay telephone must be maintained free of graffiti in accordance with the provisions of subdivision c of this section.

**§ 6-44 *Compliance with Americans with Disabilities Act.*** A franchisee shall comply, as set forth in the conditions of the franchise, with the provisions of the Americans with Disabilities Act and the regulations promulgated thereunder, contained in Appendix A to 28 CFR Part 36, and any additional applicable Federal, State and local laws relating to accessibility for persons with disabilities and any rules or regulations promulgated thereunder, as such laws, rules or regulations may from time to time be amended.

**§6-45 *Compliance with Other Authority.*** a. As provided in subdivision d of section 6-30 of this subchapter, notwithstanding any other provision of this chapter, a permit shall not be issued for a public pay telephone pursuant to this chapter unless the owner of such telephone demonstrates that he or she has obtained all permissions required by applicable provisions of Federal, State and local law, as well as rules and regulations promulgated and agreements entered into pursuant thereto.

b. A public pay telephone shall be sited, installed, operated and maintained in compliance with all applicable provisions of Federal, State and local law, as well as rules and regulations promulgated and agreements entered into pursuant thereto.

-7-

NYC019461

**APPENDIX D (1)**

# CONSENT FORM  (Owner)

I, _____ am the owner of the building (other property) located at _____ (name and _____ ( address) and do hereby consent to permit _____ (specify the permission given: adress of company) to _____ (specify the permission given; open; drill; affix a telephone; access via conduit or other opening; other) at the position described below on the property identified herein and to enter onto such property for such purpose and for such inspection and maintenance of said telephone as shall thereafter be necessary, provided that: _____ (list any conditions, such as time period,  etc.) .

Describe each position on the building facade or other property of the conduit or other access for which access is granted.

<u>Position on Property</u>                                    <u>Nature of Alteration</u>

1.
2.
3.
4.
5.

Signature _____
Address:_____
_____

Sworn before me this_____day of _____, 19

_____ ,

Notary

NYC019462

## Appendix C

**APPLICATION TO INSTALL AND
MAINTAIN A PUBLIC PAY
TELEPHONE (PPT)**

**The City of New York**
Department of Information Technology and
Telecommunications
11 MetroTech Center, Third Floor
Brooklyn, N.Y. 11201

Application #_____

Date _____

---

The applicant agrees that any permit issued hereunder is subject to all laws and regulations of the
City of New York that may apply. This permit shall be subject to revocation as provided in the rules.
Commissioner of The Department of Information Technology and Telecommunications.

_____ hereby requests a permit to install and maintain
(enter full name and address, including zip code, of Company)    a Public Pay Telephone and related equipment
on the sidewalk at:

_____
Company Telephone Number

Describe the location of proposed installation. e.g. 123-45 Queens Blvd. Queens or SE Corner of Broadway and 44 St.
Man. or 42 St between 8 Ave and 7 Ave North Side. Man. Include the borough. Use only one method of providing PPT
location per unit.

_____      _____      _____      _____

**Public Pay Telephone Number***      **Mounting Type,**      **Housing Type,**      **Curbside Installation**
This information must be provided to      e.g. pedestal, wall,      e.g. none, small      Enter 'Yes' or 'No'
DoITT upon completion of the PPT      if other, describe.      3/4 Booth.
activation or prior if available.            If other, describe.

_____      _____      _____

**Installation Date ***      **Activation Date ***      **Operator Service Provider**
The date the PPT is      The date the PPT is activated,      Name of OSP for this PPT.
physically installed must be      i.e. is able to provide phone
provided to DoITT upon      service to the public switch
completion of the installation.      network, must be provided
      upon its availability.

_____

**Franchise Number**
If Franchise has not yet been
granted, leave section blank

Applicants are advised that a Public Pay Telephone shall be installed, operated and maintained in compliance with
all provisions of Federal, State, and local law, rules and regulations.
Applicant must complete the locational diagram on page 3 (of 3) of this form indicating the proposed PPT
installation area using the icons provided in the legend. Applicant must indicate distances, in feet, from all street
furniture on the blockfront of the proposed Public Pay Telephone.
The applicant shall maintain all required clearance of street furniture as set forth in SUBCHAPTER 4 of CHAPTER
6 of the Rules of the Commissioner of the Department of Information Technology and Telecommunications and
clearance of water mains and their appurtenances required by the Bureau of Water Supply Standards, and shall
comply with all applicable law, rules and regulations. The applicant also agrees to asssume cost for removal of his
facilities which would interfere with the repair, maintenance and/or replacement of underground facilities.

* This information may not be available at the time of application submission.

*Page 1 of 3*
**(Over Please)**

3/6/96

NYC019463

## Appendix C

Is the PPT located in a Historic District or on a sidewalk adjacent to a Landmark?

Yes ___ No ___

If the PPT is in an __Historic District,__ please attach written permission from the Landmarks Preservation Commission.

Is the PPT site located in a Business Improvement District (BID) or a Special Assessment District (SAD) with Public Pay Telephone user rights?

Yes ___ No ___

If Yes, please attach written authority from the BID / SAD.

### Attention: A Street Opening Permit may be required from the City of New York, Department of Transportation

Applicant must complete diagram on page 3 (of 3) indicating the proposed PPT installation area using the icons provided in the legend below. Applicant must indicate distances from all street furniture on the blockfront to the proposed Public Pay Telephone including distance from curb for curbline installations.

Applicants for PPTs that are interim registered pursuant to Chapter 6 of Title 67 of the rules of The City of New York must complete this application using only those street furniture icons double asterisked ( ** ) below. All other applications must complete using all relevant street furniture icons.

### LEGEND

................. > = Building Corner line    – – – – → = 10 feet from Building Corner line    ← – – · – – · – → = Blockfront line

** ☐ Proposed Telephone

** ◼ Existing Telephone

○ Street Light

** △ Fire Hydrant

** △ Fire Box

⊞ Mail Box

⧓ Bus Stop Zone

☐ Bus Stop Shelter

N Newstand

🌲 Tree Pit or Planter

ES Elevated Subway Entrance

IS Interior Subway Entrance

OS Outdoor Subway Entrance

🅟 Parking Meter

⬙ Telephone Co. Manhole

E Con Ed. Manhole

S Sewer

→ Telephone circuit path

SC Sidewalk Cafe

h Bench

⊓ Cellar door

⎵ Canopy

P Signpole

PT Public Pay Toilet

NR News Rack

** ⅄ Standpipe, Sprinkler or Wall Hydrant

▨ Grating

SG▨ Subway Grating

** ▯ Building Entrance

** ▦ Fire Escape Egress

⤬ Driveway

DoITT Authorized Personnel – Name and Title Printed

_____

DoITT Authorized Personnel – Signature

Date: _____

This Box for Agency Use Only

Applicant Authorized Personnel – Name and Title Printed

_____

Applicant Authorized Personnel – Signature

*Page 2 of 3*

3/6/96

NYC019464



**Appendix C**
**Diagram of Public Pay Telephone location**

**LINE DEFINITIONS**

Show telephone circuit path from originating location to proposed Public Pay Telephone.

· · · · · · · · ·▶ = Building Corner line

– – – – –▶ = 10 feet from Building Corner line

◀ – – – – – ▶ = Blockfront line

Not drawn to scale

*Page 3 of 3*

3/6/98

(enter full name and address, including zip code, of Company)

APPENDIX D (2)

# *CONSENT FORM AND CERTIFICATION*
## *(Commercial Lessee)*

I, _____ am a commercial lessee of the building (other property) located at _____ (name and _____ (address) and do hereby consent to permit _____ (name and adress of company) to gain access via conduit or other opening (specify) at the position described below on the property identified herein and to enter onto such property for such purpose and for such inspection and maintenance of said telephone as shall thereafter be necessary, provided that: _____ (list any conditions, such as time period, etc.) I hereby certify that I am authorized by the owner or agent of such building or other property to grant permission for access via a conduit or other opening described herein. I further certify that on _____ (date), I notified said owner _____ (name of owner)[or notified the agent of said owner _____ name of agent) at _____ (address of owner or agent) of said consent via certified mail (receipt _____ attached).

Describe each position on the building facade or other property of the conduit or other access for which access is granted.

### Position on Property

1.
2.
3.
4.
5.

_____

Signature
Address: _____

_____

Sworn before me this _____ day of _____, 19

_____,

Notary

NYC019466

Statement of Basis and Purpose: Local Law Number 68 for the Year 1995 takes effect on March 1, 1996 and provides for the permitting of public pay telephones in New York City and authorizes the Commissioner of the Department of Information and Technology and Telecommunications to promulgate rules for the implementation of the permitting requirements and other requirements governing the installation, operation and maintenance of public pay telephones.

NYC019467

NYC019468

# Exhibit LL

# TABLE OF CONTENTS

Page

**SECTION 1 — DEFINED TERMS**.................................................................2


**SECTION 2 — GRANT OF AUTHORITY** ......................................................5

2.1     Term ........................................................................................................5

2.2     Renewal ..................................................................................................5

2.3     Certain Actions by the Company Before Execution .................................5

2.4     Security Fund Evidence ..........................................................................6

2.5     Nature of Franchise, Effect of Termination and Renewal .......................6

      2.5.1     Nature of Franchise .................................................................6

      2.5.2     Permits, Authorizations, Approvals, Consents and Licenses .........6

      2.5.3     Minimum Number of PPTs .......................................................7

      2.5.4     Effect of Termination ..............................................................7

2.6     Conditions and Limitations on Franchise ...............................................8

      2.6.1     Not Exclusive ...........................................................................8

      2.6.2     Sidewalks of a Distinctive Design ............................................8

      2.6.3     Excluded Outdoor Locations ....................................................8

      2.6.4     Additional Information ............................................................8

      2.6.5     Billable Party Dialtone Service ................................................9

      2.6.6     Removal and Relocation ..........................................................9

            2.6.6.1 Public Works and Improvements.....................................9

            2.6.6.2 Public Use, Public Nuisance, Other ...............................9

            2.6.6.3 Notification ....................................................................9

            2.6.6.4 Emergency .....................................................................9

NYC-OTR006793

2.6.7   No Waiver ..................................................................................................10

2.6.8   No Release .................................................................................................10


**SECTION 3 -- SERVICE** ..........................................................................................10

3.1     Maintenance and Inspection ...................................................................10

        3.1.1   General Requirements ...............................................................10

        3.1.2   Minimum Service Operating Procedures ...................................10

        3.1.3   Recordkeeping ..........................................................................12

        3.1.4   Performance Standards and Corrective Actions ......................12

3.2     Complaint Handling Procedures ...........................................................13

        3.2.1   Complaint Record Keeping .......................................................15

3.3     Americans with Disabilities Act ..........................................................15

3.4     Design and Appearance of PPT(s) .......................................................15

3.5     No Interference ...................................................................................16

3.6     No Monopoly .......................................................................................16

3.7     No Discrimination ...............................................................................16

3.8     Service ................................................................................................16

3.9     Tariffs .................................................................................................16

3.10    Removal ..............................................................................................17


**SECTION 4 -- ADVERTISING** ..................................................................................18

4.1     Introduction ........................................................................................18

4.2     Defined Terms ....................................................................................19

4.3     Notification of Advertisement .............................................................19

        4.3.1   Advertising Notice ....................................................................19

NYC-OTR006794

4.4     Advertising Siting and Clearance ........................................................20

     4.4.1   Advertising Display Panels................................................20

     4.4.2   Removal of Advertising Displays.......................................21

     4.4.3   Additional Restrictions.....................................................21

4.5     Maintenance of Advertising Displays....................................................21

4.6     Visibility to Outside ............................................................................22

4.7     Termination or Suspension of Media Representative Agreements............22

4.8     Compensation to the City for Advertising ............................................22

     4.8.1   Compensation Fee............................................................22

     4.8.2   Timing and Method of Payment .......................................22

     4.8.3   Taxes..............................................................................23

     4.8.4   Continuing Obligation and Holdover.................................23

4.9     Public Service Advertising ..................................................................23

4.10    Standards for Advertising ..................................................................23

4.11    Additional Advertising Provisions.......................................................24

4.12    Future Compliance............................................................................24


**SECTION 5 – CONSTRUCTION AND TECHNICAL REQUIREMENTS** ............25

5.1     General Requirements........................................................................25

5.2     Identification of PPT..........................................................................25

     5.2.1   Signage..........................................................................25

     5.2.2   Identification Medallion And Accompanying Raised Number Strip25

5.3     Blocking of Additional Dialing ............................................................26

5.4     Quality.............................................................................................26

5.5     Protect Structures .............................................................................26

NYC-OTR006795

5.6     No Obstruction ................................................................................27

5.7     Safety Precautions ...........................................................................27

5.8     Security Systems .............................................................................27

5.9     Power Outages ................................................................................27


**SECTION 6 -- SECURITY FUND** ..............................................................27

6.1     General Requirement .......................................................................27

        6.1.1     Security Fund Form ..........................................................28

        (a)  Cash ..................................................................................28

        (b)  Irrevocable Letter of Credit ...............................................28

        (c)  Performance Bond ............................................................28

        6.1.2     Comptroller Approval .......................................................29

6.2     Security Fund Established By A Qualified Trade Association ...........29

        6.2.1     Additional Requirements ..................................................29

6.3     Security Fund Established By Franchisee Aggregation ...................30

        6.3.1     Additional Requirements ..................................................30

6.4     Reduction or Termination of Fund ...................................................30

6.5     Scope of Security Fund ....................................................................30

6.6     Security Fund Purposes ...................................................................31

6.7     Withdrawals from or Claims Under the Security Fund .....................31

6.8     Notice of Withdrawals .....................................................................32

6.9     Replenishment ................................................................................32

6.10    Not a Limit on Liability ....................................................................32

6.11    Additional Performance Bond Provision ..........................................32

6.12    Notice of Trade Association/Franchisee Aggregation Changes ........32

NYC-OTR006796

**SECTION 7 -- EMPLOYMENT AND PURCHASING** ...............................................33

    7.1    Right to Bargain Collectively ...................................................33

    7.2    Local Opportunities ....................................................................33

    7.3    No Discrimination .......................................................................34

**SECTION 8 -- COMPENSATION AND OTHER PAYMENTS** ..................................34

    8.1    Defined Terms .............................................................................34

    8.2    Compensation ..............................................................................35

        8.2.1    Compensation ...............................................................35

        (a)  Franchise Fee...............................................................35

        (b)  Fixed Rate Review ......................................................35

        (c)  Services to City............................................................35

        8.2.2    Timing ............................................................................38

        8.2.3    Records and Audits ......................................................38

        8.2.4    Reservation of Rights...................................................38

        8.2.5    Ordinary Business Expense .........................................38

        8.2.6    Long Distance Presubscription ....................................39

    8.3    Other Payments ...........................................................................39

        8.3.1    Future Costs ..................................................................39

        8.3.2    Other Amounts .............................................................39

    8.4    Limitations on Credits or Deductions ........................................39

    8.5    Interest on Late Payments ...........................................................40

    8.6    Method of Payment .....................................................................41

    8.7    Compensation Reports ................................................................41

NYC-OTR006797

    8.7.1   Report Certification ...............................................................41

8.8   Continuing Obligation and Holdover .......................................................41

8.9   Energy Costs ...........................................................................................42

8.10   Accrual of Compensation ........................................................................42


**SECTION 9 -- OVERSIGHT AND REGULATION** ...............................................42

9.1   Confidentiality .........................................................................................42

9.2   Oversight ................................................................................................43

9.3   Company Required to Upgrade System ...................................................43

9.4   Regulation by City ..................................................................................43

9.5   Reports ...................................................................................................44

    9.5.1   Financial Reports .....................................................................44

    9.5.2   Other Reports ..........................................................................44

9.6   Books and Reports/Audits .......................................................................44

    9.6.1   Books and Records ...................................................................44

    9.6.2   Right of Inspection ...................................................................45

9.7   Compliance with "Investigations Clause" ................................................45

9.8   Rate Change Notification ........................................................................45


**SECTION 10 -- RESTRICTION AGAINST ASSIGNMENT AND OTHER
TRANSFERS** ...............................................................................................46

10.1   Transfer of Interest ................................................................................46

10.2   Transfer of Control or Ownership ............................................................46

10.3   Petition ..................................................................................................46

    10.3.1   PPT Transfers ..........................................................................47

10.4   Consideration of the Petition ..................................................................47

NYC-OTR006798

10.5    Permitted Encumbrances ....................................................................47

10.6    Consent Not a Waiver .......................................................................47


SECTION 11 -- LIABILITY AND INSURANCE ......................................................47

11.1    Liability and Indemnity....................................................................48

        11.1.1  Company .............................................................................48

        11.1.2  No Liability for Public Work, etc. .........................................48

        11.1.3  No Liability for Damages .....................................................48

        11.1.4  Defense of Claim, etc. .........................................................49

11.2    Insurance ........................................................................................49

        11.2.1  Specifications ......................................................................49

        11.2.2  Maintenance ........................................................................49

        11.2.3  Adjusted Insurance Coverage .............................................50

        11.2.4  Liability Not Limited ..........................................................50

        11.2.5  Alternative Procedure .........................................................50


SECTION 12 -- SPECIFIC RIGHTS AND REMEDIES.............................................50

12.1    Not Exclusive .................................................................................50

12.2    Default ............................................................................................50

        12.2.1  Events of Default .................................................................51

        12.2.2  Remedies of the City ...........................................................52

12.3    Termination .....................................................................................53

12.4    Disposition of System Upon Termination ......................................54

        12.4.1  Standard Disposition of PPTs Upon Termination .................54

        12.4.2  Disposition of Underground Connection and Other ("UCO")
                Equipment ...........................................................................55

NYC-OTR006799

12.4.3  Special Disposition of PPTs ........................................................55

12.5    Price ...................................................................................................56

12.6    Procedures for Transfer After Termination ...............................56

12.7    Removal Upon Termination ...........................................................57

      12.7.1  Removal Procedures ..........................................................57

      12.7.2  Failure to Commence or Complete Removal...................58

      12.7.3  No Condemnation ...............................................................58

      12.7.4  Other Provisions .................................................................58


**SECTION 13 -- SUBSEQUENT ACTION** ...............................................59

13.1    Procedure for Subsequent Invalidity ...........................................59

13.2    Continued Compliance ....................................................................59


**SECTION 14 -- MISCELLANEOUS** ........................................................59

14.1    Appendices .........................................................................................59

14.2    Notices ................................................................................................59

14.3    General Representations, Warranties and Covenants of the Company .....60

      14.3.1  Organization, Standing and Power ...............................60

      14.3.2  Authorization: Non-Contravention ..................................60

      14.3.3  Fees .......................................................................................60

      14.3.4  (a)  Criminal Acts Representation ..................................61

      14.3.4  (b)  Criminal Acts Covenant .........................................61

      14.3.5  Misrepresentation ...............................................................61

14.4    Binding Effect ...................................................................................61

14.5    No Waiver; Cumulative Remedies ................................................62

NYC-OTR006800

14.6    Partial Invalidity ................................................................................................62

14.7    Headings and Construction ...............................................................................62

14.8    No Agency ..........................................................................................................62

14.9    Governing Law ...................................................................................................62

14.10   Survival of Representations and Warranties ....................................................62

14.11   Claims Under Agreement ..................................................................................62

14.12   Modification .......................................................................................................63

14.13   Service of Process ..............................................................................................63

14.14   Compliance With Certain City Requirements ...................................................64

14.15   Compliance With Law, Licenses .......................................................................64

NYC-OTR006801

# APPENDICES

Appendix A . . . . . . . . . . . .    Executive Order No. 22

Appendix B . . . . . . . . . . .    The Council of the City of New York Authorizing Resolution No. 2248

Appendix C . . . . . . . . . . .    Local Law Number 68 for the Year 1995

Appendix D . . . . . . . . . . .    Gross Revenue Example

Appendix E . . . . . . . . . . .    Ownership Structure and Governing Documents

Appendix F . . . . . . . . . . .    Public Interest PPTs

    Schedule 1 to Appendix F    Low-Penetration Area Classification / US Census Report Data

    Schedule 2 to Appendix F    Examples

Appendix G . . . . . . . . . . .    [Intentionally Omitted]

Appendix H . . . . . . . . . . .    Investigations Clause

Appendix I . . . . . . . . . . . .    Designated Agent for Service of Process

Appendix J . . . . . . . . . . . .    MacBride Principles

NYC-OTR006802

# *AGREEMENT*

·    THIS AGREEMENT, executed as of the _____ day of ____, 1999 (as defined in Section 1 hereof, the "Effective Date"), by and between **THE CITY OF NEW YORK** (as defined in Section 1 hereof, the "City") and **(fill in payphone company name)**, having its principal place of business at **(fill in company address here)** (as defined in Section 1 hereof, the "Company").

## *W I T N E S S E T H*:

WHEREAS, the New York City Department of Information Technology and Telecommunications (as defined in Section 1 hereof, "DoITT"), on behalf of the City, has the authority to grant non-exclusive franchises for the occupation or use of the Inalienable Property of the City (as defined in this Section 1, the "Inalienable Property of the City") in connection with the provision of Public Pay Telephone Service (as defined in Section 1 hereof, "Service"), including renewals thereof; and

WHEREAS, the Company has submitted to DoITT its proposal in response to a Revised Request for Proposals issued by DoITT pursuant to Authorizing Resolution No. 2248 (passed by the New York City Council on March 25, 1997), a copy of which is attached as Appendix B hereto; and

WHEREAS, on August 9, 1999, the New York City Franchise and Concession Review Committee (as defined in Section 1 hereof, the "FCRC") held a public hearing on the Company's proposal for a franchise to install, operate, and maintain Public Pay Telephones, and associated equipment (as defined in Section 1 hereof, "PPTs") on, over, and under the Inalienable Property of the City to be used in providing PPT Service, which was a full public proceeding affording due process in compliance with the requirements of Chapter 14 of the New York City Charter (the "Charter"); and

WHEREAS the FCRC, at its duly constituted meeting held on August 11, 1999, and acting in accordance with its customary procedures, voted on and approved the grant to the Company of a franchise as contemplated by the Revised RFP; and

WHEREAS, the action to be taken hereunder has been reviewed for its potential environmental impacts and a negative declaration has been issued finding that such proposed action will not result in any significant adverse environmental impacts, all in accordance with the New York State Environmental Quality Act ("SEQRA") (Section 8-0101 *et seq.* of the New York State Environmental Conservation Law), the SEQRA regulations set forth at Part 617 of Title 6 of the New York Code of Rules and Regulations, and the City Environmental Quality Review Process (Chapter 5 of Title 62 and Chapter 6 of Title 43 of the Rules of the City of New York); and

WHEREAS, The New York City Department of City Planning determined, as evidenced in its letter dated October 17, 1996, that the proposed franchise would have no land use impacts and that review pursuant to Section 197-c of the Charter would not be necessary; and

NYC-OTR006803

as to such other matters as the City may request; (iii) a letter from the Company to DoITT, signed by a senior officer of the Company, certifying that a listing supplied to the Company by DoITT from its records of PPTs owned and operated by the Company is accurate and complete, or if not accurate and complete then the Company shall set forth, in a format prescribed by DoITT, all changes necessary to make such listing accurate and complete. Inconsistencies between the Company's records and DoITT's listing shall be reconciled to the satisfaction of DoITT prior to the City's execution of this Agreement; and (iv) a list, certified by a senior officer of the Company, setting forth the location, including street address or corner location, for each PPT operated by the Company within the City at an outdoor location that the Company believes is not located on, over or under the Inalienable Property of the City. The Company must demonstrate, in a manner and form acceptable to the Commissioner, that each such PPT is not located on, over or under the Inalienable Property of the City and that a user of such PPT could not stand on the Inalienable Property of the City when using that PPT.

2.4    Security Fund Evidence. The Company shall deliver to DoITT, within thirty (30) calendar days of the Effective Date, evidence that the Security Fund required pursuant to Section 6 hereof has been created. If the Security Fund is being provided by a cash deposit, such evidence shall consist of documents showing that the required cash amount has been deposited with the Comptroller. If the Security Fund is being provided in the form of a letter of credit, such evidence shall consist of a copy of the executed letter of credit, in the required amount and approved form, deposited with the Comptroller. If the Security Fund is being provided in the form of a performance bond, such evidence shall consist of an original executed performance bond in the required amount and approved form. Failure to submit such evidence as stated in this paragraph shall constitute an Event of Default and shall be grounds for termination of this Agreement.

2.5    Nature of Franchise, Effect of Termination and Renewal.

2.5.1    Nature of Franchise. The City hereby grants the Company, subject to the terms and conditions of this Agreement, a non-exclusive franchise providing the right and consent to install, operate, repair, maintain, upgrade, remove and replace PPTs on, over and under the Inalienable Property of the City in order to provide Services, the exercise of such franchise being subject to all applicable requirements of Local Law Number 68 for the Year 1995 and any rules promulgated pursuant thereto and all other applicable laws, rules and regulations of the City. The Inalienable Property of the City does not include premises controlled by the Port Authority of the City of New York, the New York City Board of Education, the Health and Hospitals Corporation, the Metropolitan Transit Authority, the New York City Housing Authority, the New York City Off Track Betting Corporation, or the interior of any buildings owned, leased, or operated by the City of New York, or any other City property not expressly included in Section 1.18 hereof.

2.5.2    Permits, Authorizations, Approvals, Consents and Licenses. (a) Before installing any PPT, the Company shall obtain, at its own cost and expense, and comply with, any necessary permits, authorizations, approvals, consents, licenses, and certifications required for each PPT, including, but not limited to: (i) a separate permit from DoITT for each PPT as set forth in Local Law Number 68 for the Year 1995 and the PPT Rules; (ii) all permits, authorizations, approvals, consents, licenses and certifications required by DOT, the Landmarks

6

NYC-OTR006808

Preservation Commission and any other agency of the City with jurisdiction over the property on which the PPT is to be located (including, with respect to PPTs on Parkland, the Department of Parks and Recreation); (iii) any necessary permits, authorizations, approvals, consents, licenses, and certifications required pursuant to any applicable state and federal laws, regulations and policies, writs, decrees and judgments, including, but not limited to, all rules and regulations of the PSC regarding 911 service, operator service and all other requirements, the FCC and any other applicable governmental body having jurisdiction over the services being provided and/or the locations of which such services are provided pursuant to this franchise; and (iv) any necessary permits, authorizations, approvals, consents, licenses and certifications from Persons to use a building or other private property, easements, poles, and conduits as required by Section 23-403 of the New York City Administrative Code. Permits for PPTs shall only be issued by the Commissioner, upon a determination at his or her discretion, that issuance of a permit will be in the best interest of the City as provided by the PPT Rules.

(b)    The Commissioner shall issue permits in accordance with the provisions of the PPT Rules.

(c)    The Company agrees that fees paid to obtain any permits, consents, licenses, or any other forms of approval or authorization shall not be considered in any manner to be in the nature of a tax, or to be compensation for this franchise in lieu of the compensation described in Section 8 of this Agreement.

2.5.3    <u>Minimum Number of PPTs</u>.    The Company agrees to operate and maintain a minimum of twenty-five (25) PPTs under this Agreement throughout the Term. If the Company is not operating and maintaining at least twenty-five (25) PPTs on the Effective Date, it shall diligently take all actions within its control to assure that it is operating and maintaining at least twenty-five (25) PPTs, in accordance with all the terms and conditions of this Agreement, as soon as feasible and in any event no later than twelve (12) months after the Effective Date, subject to the timely issuance of necessary permits, which will be diligently pursued by the Company.

Except where the Company demonstrates to the satisfaction of DoITT that the Company's failure to operate and maintain a minimum of twenty-five (25) PPTs pursuant to this Section 2.5.3 is due to circumstances beyond its control, such failure shall constitute an Event of Default and shall be grounds for termination of this Agreement.

2.5.4    <u>Effect of Termination</u>.    Upon termination of this Agreement (and provided no new franchise of similar effect has been granted to the Company pursuant to the Charter, any authorizing resolution, and any other applicable laws and rules in effect at the time) the franchise shall expire; all rights of the Company in the franchise shall cease, with no value allocable to the franchise itself; and the rights of the City and the Company to the System, or any part thereof, shall be determined as provided in Section 12.3 through 12.7 hereof. The termination of this Agreement and the franchise granted hereunder shall not, for any reason, operate as a waiver or release of any obligation of the Company or any other Person, as applicable, for any liability: (i) pursuant to Section 11.1 hereof, which arose or arises out of any act or failure to act required hereunder prior to the termination; (ii) which exists pursuant to or as a consequence or a breach of Section 8, "Compensation"; Section 9.6.2, "Right of Inspection";

7

NYC-OTR006809

Section 12.3 through 12.7, "Termination"; Section 14.9, "Governing Law"; and Section 14.11, "Claims Under Agreement" hereof; and (iii) to maintain in full force and effect the Security Fund and coverage under the liability insurance policies required under and in accordance with Section 6 and 11.2 hereof.

2.6      Conditions and Limitations on Franchise.

2.6.1    Not Exclusive.    Nothing in this Agreement shall affect the right of the City to grant to any Person other than the Company a franchise, consent or right to occupy and use the Inalienable Property of the City, or any part thereof, for the construction, operation and/or maintenance of a System to provide PPT Services in the City.

2.6.2    Sidewalks of a Distinctive Design.    PPTs may not be installed on, or result in the destruction, damage, or removal of any part of, a sidewalk of a distinctive design as defined in the PPT Rules.

2.6.3    Excluded Outdoor Locations.    At least seventy-two (72) hours prior to the Company's installation of a PPT within the City at an outdoor location that the Company believes is not located on, over or under the Inalienable Property of the City, the Company shall notify the City of its intention to install such PPT. Such notification shall identify the location of the PPT, and provide a brief description why the Company believes that the location is not on, over or under the Inalienable Property of the City. If the City does not agree and believes that the PPT may be on, over or under the Inalienable Property of the City and so notifies the Company in writing, the Company will not install the PPT until such time as it demonstrates, in a manner and form acceptable to the Commissioner, that such PPT is not located on, over or under the Inalienable Property of the City and that a user could not stand on Inalienable Property of the City when using such PPT. If the City notifies the Company after the PPT is already installed, the Company will remove said PPT within thirty (30) days of such notification unless, during that time period, it demonstrates, in a manner and form acceptable to the Commissioner, that such PPT is not located on, over or under the Inalienable Property of the City and that such user could not stand on Inalienable Property of the City when using such PPT.

2.6.4    Additional Information.    In connection with the City's oversight, review and enforcement of the Company's compliance with the terms and conditions of this Agreement, and with the requirements of applicable local laws and the PPT Rules, the Company hereby authorizes access by the City to and agrees to waive any objection to the receipt by the City of any information or documentation regarding the Company's provision of Services in the possession of a provider of dialtone service or an affiliate of a provider of dialtone service, including, but not limited to, work orders or other records that identify the time and demarcation point of a PPT installation and the billable party for dialtone service to such installation, the placement of orders for lines for the provision of PPT Service, the assigning of an automatic number identification ("ANI"), and any correspondence or communications related thereto. The Company hereby waives any objection, under applicable tariff(s), if any, or agreement(s), if any, to the release of such information to the Commissioner as provided herein. At the Commissioner's request, any Company that is also a provider of dialtone service or is affiliated with a provider of dialtone service, shall also promptly submit any documentation or information it may have regarding the provision of such Services by another party that is a Franchisee and

8

NYC-OTR006810

that is relevant to said oversight, review and enforcement, including copies of agreements for dialtone service between a Franchisee and a provider of dialtone service (unless the release of such documentation or information is prohibited by federal or state law, rule or regulation or order, or unless the applicable Franchisee, in violation of Section 2.6.4 of its version of this Agreement, objects to the City's receipt of such submission).

    2.6.5  <u>Billable Party Dialtone Service</u>.  The Company shall be throughout the term of this Agreement, the billable party for dialtone service and the entity to whom the dialtone is being directly provided at each permitted PPT that is subject to this Agreement. In the event a transfer of this Franchise is approved by the City as required under this Agreement, then the transferee shall thereafter be the billable party, as required under this Section.

    2.6.6  <u>Removal and Relocation</u>.

      2.6.6.1 <u>Public Works and Improvements.</u>    Nothing in this Agreement shall abrogate the right of the City to change the grades or lines of any Inalienable Property of the City within the District, or perform any public works, or public improvements, or any street widening project, or any other capital project of any description. In the event the grades or lines of any Inalienable Property of the City within the District are changed at any time during the Term in a manner affecting the System, or it is determined that the System interferes with the construction, operation, maintenance, repair or removal of any public works, or public improvements, or the conduct of any street widening project, or any other capital project of any description, the Company shall, at its own cost and expense and as directed by the City, promptly protect or remove or alter or relocate the affected portion of the System. In the event that the Company refuses or neglects to so protect, remove, alter, or relocate such portion of the System as directed by the City, the City shall have the right to protect, remove, alter, or relocate such portion of the System without any liability to the Company, and the Company shall pay to the City the costs incurred in connection with such protection, removal, alteration, or relocation. To the extent practicable under the circumstances, the City will provide thirty (30) days prior notice of any change to the grades or lines of any Inalienable Property of the City within the District, or of any public works, public improvements, street widening project, or any other capital project of any description that will require protection, removal, alteration or relocation of any part of the System, and if such thirty (30) day prior notice is not practicable, the City will provide such notice as is practicable.

      2.6.6.2 <u>Public Use, Public Nuisance, Other</u>.  The City shall have the right at any time to inspect the Company's System that is located on the Inalienable Property of the City and order the removal or relocation of a PPT upon a determination that: (i) the PPT unreasonably interferes or will unreasonably interfere with the use of a street by the public or constitutes a public nuisance; or (ii) for any other reason that a PPT may be removed or a permit terminated or revoked as specified in the PPT Rules.

      2.6.6.3 <u>Notification</u>.  (a) In the event the Commissioner determines that a PPT should be relocated or removed pursuant to Section 2.6.6.2 herein, the Commissioner shall notify the Company, as set forth in Section 14.2 herein, in accordance with the PPT Rules.

      (b)  In the event that the Company fails to relocate or remove the PPT by the date specified by the Commissioner, the Commissioner may remove or cause the

9

removal of the PPT and have repair and restoration work performed at the expense of the Company, who shall be liable for the amount expended by the City and for any other costs or damages incurred by the City arising out of the performance of such work.

        2.6.6.4 <u>Emergency</u>.   Notwithstanding the foregoing and in accordance with the PPT Rules, if the Commissioner determines that an imminent threat to life or property exists, the Commissioner may remove or cause the removal of a PPT and have repair and restoration work performed at the expense of the Company, without affording the Company an opportunity to be heard prior to such removal.  The Commissioner may, if he or she determines that such PPT can be safely reinstalled and maintained, permit the owner to reinstall such PPT.

        2.6.7  <u>No Waiver</u>.  Nothing in this Agreement shall be construed as a waiver of any  local law or rule of the City or of the City's right to require the Company to secure the appropriate permits or authorizations for PPT installation.

        2.6.8  <u>No Release</u>.  Nothing in this Agreement shall be construed as a waiver or release of the rights of the City in and to the Inalienable Property of the City.  In the event that all or part of the Inalienable Property of the City within the District is eliminated, discontinued, closed or demapped, all rights and privileges granted pursuant to this Agreement with respect to said Inalienable Property of the City, or any part thereof so eliminated, discontinued, closed or demapped, shall cease upon the effective date of such elimination, discontinuance, closing or demapping.  If said elimination, discontinuance, closing or demapping is undertaken for the benefit of any private Person, the City shall make reasonable efforts to condition its consent to said elimination, discontinuance, closing or demapping on the agreement of said private Person to: (i) grant the Company the right to continue to occupy and use said Inalienable Property of the City; or (ii) reimburse the Company for the reasonable costs of relocating the affected part of the System.

## SECTION 3 -- SERVICE

3.1    <u>Maintenance and Inspection</u>.

        3.1.1  <u>General Requirements</u>.  Commencing on the Effective Date and thereafter throughout the Term of this Agreement, the Company shall at all times comply with the provisions of this Section 3.1 to ensure that, to the maximum extent possible:

        (a)  The Company's PPTs provide coinless access on a continuous, round-the-clock basis to 911 service and operator service consistent with the rules and regulations promulgated by the PSC and as described in the PPT Rules;

        (b)  The Company's PPTs are in an operable condition as described in the PPT Rules; and

        (c)  The Company's PPTs are in a clean condition as described in the PPT Rules.

10

NYC-OTR006812

3.1.2  <u>Minimum Service Operating Procedures.</u>  The Company shall, at a minimum, comply with the following service operating procedures:

(a)  911 Access and Operability

(i)  PPTs shall be electronically tested and/or physically inspected for compliance with the PPT Rules on a daily basis.  In the case of a Company that utilizes electronic testing: (x) one-hundred percent (100%) of PPTs shall be polled daily and (y) during each calendar quarter, successful contact must be made, on average, with at least ninety percent (90%) of such PPTs each day (that is, during each quarterly period, the Company must maintain an average daily rate for PPTs successfully contacted of ninety percent (90%)).  In the case of a Company that utilizes on-site physical inspection methods, during each quarterly period, at least ninety percent (90%) of PPTs must be inspected, on average, each day (that is, during each quarterly period, the Company must inspect an average of at least ninety percent (90%) of the Company's PPTs per day).  In the case of a Company that utilizes a combination of electronic testing and on-site physical inspecting methods, during each quarterly period: (x) successful contact must be made, on average, with at least ninety percent (90%) of those PPTs that are electronically polled and (y) at least ninety percent (90%) on average, of those PPTs that are inspected by on-site methods must be inspected each day (that is, during each quarterly period, the Company must maintain an average daily rate of successful contact with ninety percent (90%) of the Company's PPTs that are electronically polled and during that same period the Company must inspect an average of at least ninety percent (90%) of the Company's PPTs that are physically inspected by on-site methods).

(ii)  No fewer than seventy percent (70%) of PPTs identified as inoperable by each daily electronic testing and/or physical inspection shall be fully repaired within forty-eight (48) hours of such identification, and one-hundred percent (100%) of PPTs identified as inoperable shall be repaired within seventy-two (72) hours of such identification; provided, that with respect to a service condition that renders 911 emergency service inoperable, such service shall be restored within twenty-four (24) hours of identification unless service restoration is dependent on the actions of a third party.  If service restoration is dependent on the actions of a third party, such as a supplier of dialtone or electricity (not an entity such as a contractor specifically hired by the Company to perform maintenance or repair services, which for purposes of this clause shall be treated as an instrument of the Company, not a "third party"), the Company shall notify DoITT of the circumstances within twelve (12) hours following such identification, shall use its best efforts to have service restored as soon as possible, and shall notify DoITT in the same manner promptly following service restoration.  Notification to DoITT under this subparagraph shall be made to the DoITT Director of Public Pay Telephone Operations, by facsimile at 718-403-8504, or by such other method(s) as the Commissioner shall determine from time to time.

(b)  Cleanings

(i)  The Company shall, at a minimum, clean all PPTs two (2) times each month, on non-consecutive days, with at least two (2) such cleanings occurring no fewer than fourteen (14) days apart ("Minimum Cleaning Cycle").  In the case of any PPT that is cleaned by

NYC-OTR006813

(iv)    the Company's permit allowing the Company to maintain a PPT at the site shall be automatically terminated upon such removal and a permit for such site may be granted to another franchisee in accordance with DoITT permitting procedures; and

(v)    the Company shall restore the Inalienable Property of the City and other affected property to its original condition and comply in full with Section 5.5. hereof.

[continued on next page]

## SECTION 4 – ADVERTISING

4.1    <u>Introduction</u>.  (a) The City hereby grants the Company, subject to and consistent with the terms and conditions of this Agreement, Local Law Number 68 for the Year 1995, and the PPT Rules, the right and consent to place advertising, through a Media Representative as described below, on the exterior rear and side panels of its Curb Line PPTs in commercial and/or manufacturing zoning districts and any other zoning districts where commercial and/or manufacturing uses are permitted as of right.

(b)    The City shall qualify entities (hereinafter, "Media Representative(s) as defined in Section 4.2, below") as eligible to be selected by the Company to represent, organize and manage the advertising space on its PPTs. Media Representative representation, organization and management responsibilities shall include, without limitation: the sale and lease of advertising space, the maintenance and service of advertising displays, the billing and collection of all advertising revenues, the periodic payment of compensation due to the City, and the payment to the Company of the net revenues generated by advertising displayed on the Company's PPTs after payment of compensation due to the City and after deduction of a reasonable amount due to the Media Representative as set forth in the Company's agreement with the Media Representative.

(c)    The Company shall be permitted to select and engage the services of one or more Media Representative(s). Except as otherwise provided by subsection (d) below, in the event the Company sells or leases advertising space, or otherwise places advertising on its PPTs without utilizing one or more Media Representative(s), such action shall constitute an Event of Default and the Company's right and consent to place advertising on its PPTs subject to this Agreement shall terminate upon notice from the City in accordance with Section 14.2 herein.

(d)    If: (i) the Company seeks to place advertising on PPTs as described in this Section 4.1, and (ii) the Company has used its best efforts to engage the services of the Media Representatives qualified by the City on commercially reasonable terms, and (iii) none of such Media Representatives is willing to provide to the Company, on commercially reasonable terms, the services required for advertising to be placed on the Company's PPTs as described above, and (iv) the Company has taken all reasonable steps, but been unable to identify another entity that could qualify as a Media Representative and would provide the required services to the

18

NYC-OTR006820

Company on commercially reasonable terms, then the Company may petition the Commissioner for a hardship designation pursuant to which the Commissioner may order a City-qualified Media Representative to provide the required services to the Company on commercially reasonable terms. Such petition shall include: (1) evidence that the Company has used its best efforts to engage the services of each Media Representative qualified by the City on commercially reasonable terms, (2) evidence that each such Media Representative has declined to provide the required services on commercially reasonable terms, and (3) a showing that the Company has taken all reasonable steps, but has been unable, to find another entity that could qualify as a City-qualified Media Representative and would provide the required services to the Company on commercially reasonable terms. If the Commissioner determines that the petition meets in full the requirements of clauses (1), (2) and (3) of the preceding sentence, then the Commissioner may grant the Company a hardship designation pursuant to which the Commissioner may direct, as determined by the Commissioner, at his or her sole discretion, a City-qualified Media Representative to provide the required services to the Company on commercially reasonable terms.

(e)    The City reserves the right in the future to waive the requirement that Franchisees must retain a Media Representative to represent, organize and manage the advertising space on PPTs as set forth in this Section 4. If the City waives such requirement, the City may adopt additional requirements that shall be binding on the Company with respect to advertising on PPTs to ensure that activities otherwise to be performed by a Media Representative are appropriately performed by or on behalf of the Company.

4.2    Defined Terms.    For the purposes of this Section, the following terms, phrases, words and their derivations shall have the meaning set forth herein, unless the context clearly indicates that another meaning is intended. When not inconsistent with the context, words used in the present tense include the future tense, words used in the plural number include the singular number, and words used in the singular number include the plural number. All capitalized terms used in the definition of any other term shall have their meaning as otherwise defined in Section 1.1.

(a)    "advertising" shall mean any printed matter including, but not limited to, words, pictures, photographs, symbols, graphics or visual images of any kind, or any combination thereof,  in connection to the promotion or solicitation of sale or the use of a product or service, but in no event shall include the textual information that is required to be posted on a PPT by federal, state and local law, rule or regulation, or this Agreement.

(b)    "bus stop shelter" shall mean a structure installed pursuant to a franchise or other agreement granted by the City to construct, install, maintain, operate, and sell advertising on shelters at bus stops within the City.

(c)    "Media Representative(s)" shall mean an entity(ies) qualified by the City and selected by a PPT Franchisee to represent, organize and manage the advertising space available on all PPTs subject to this Agreement.

19

NYC-OTR006821

(d)  "newsstand" shall mean a freestanding structure which is operated for the purpose of providing newspapers and periodicals for purchase by the public pursuant to a license from the Department of Consumer Affairs or a concession agreement with DOT.

(e)  "tobacco advertisement" shall mean words, pictures, photographs, symbols, graphics or visual images of any kind, or any combination thereof, which bear a health warning required by federal statute, the purpose or effect of which is to identify a brand of a tobacco product, a trademark of a tobacco product or a trade name associated exclusively with a tobacco product, or to promote the use or sale of a tobacco product.

(f)  "tobacco product" as used herein shall be defined as any substance which contains tobacco, including, but not limited to, cigarettes, cigars, pipe tobacco and chewing tobacco.

4.3    Notification of Advertisement.

4.3.1    Advertising Notice.   In the event that a Company, acting through its Media Representative(s), intends to display advertising on a PPT, prior to the installation of any such advertising, the Company or its Media Representative shall submit written notice to the Commissioner of each such advertising location. Such notice shall indicate the exact location, including street address and cross streets, where advertising is proposed to be displayed, shall indicate the zoning district for each such location, shall state the name of the Media Representative representing each such location, and shall certify, in writing, that each location complies with all the requirements of this Section 4 and with all siting and locational requirements of the PPT Rules.

4.4    Advertising Siting and Clearance.   Advertising on PPTs is not permitted:

(a)  on Non-Curb Line PPTs;

(b)  within Historic Districts unless such placement of advertising complies with the rules and other requirements of the Landmarks Preservation Commission;

(c)  on the interior of any PPT, or on any portion of a PPT Enclosure other than the rear and side panels;

(d)  (i)  in the borough of Manhattan, on the same side of an avenue block on which advertising on a bus stop shelter, newsstand or computer terminal which provides access to government or commercial activity, or public pay toilet, is located, except that as to newsstands, computer terminals and public pay toilets, such advertising shall be permitted on PPTs that are installed prior to any grant by the City of a street furniture franchise or similar franchise(s) that encompass(es) newsstands, computer terminals or public pay toilets, and grants the right to advertise on newsstands, computer terminals or public pay toilets;

(ii)  in all other areas, at locations which are within one-hundred-fifty (150) feet of a bus stop shelter, newsstand, or public pay toilet on any of which advertising is displayed, except that advertising is permitted within one-hundred-fifty (150) feet of a bus stop

20

NYC-OTR006822

shelter, newsstand, or public pay toilet if such advertising is on a PPT located around the corner or across the street from such bus stop shelter, newsstand, computer terminal which provides access to government or commercial activity, or public pay toilet, except that as to newsstands, computer terminals and public pay toilets, such advertising shall be permitted on PPTs that are installed prior to the grant by the City of a street furniture franchise or similar franchise(s) that encompass(es) newsstands, computer terminals or public pay toilets, and grants the right to advertise on newsstands, computer terminals or public pay toilets; or

 (e)  on Parkland.

  4.4.1 <u>Advertising Display Panels</u>. (a)  All advertising display panels must be flush against or part of the PPT Enclosure; and

   (b)  advertising on side display panels will only be permitted if such panels are no greater in size than 27" x 57"; and

   (c)  advertising on rear panels shall be flush with the rear mounting portion of a PPT or shall have dimensions smaller in length and width than the rear mounting portion of such PPT and shall be no greater in size than:
    (i)  27" x 57" in a vertical format for a single PPT pedestal rear panel;

    (ii)  57" x 27" in a horizontal format for a two PPT pedestal rear panel;

    (iii)  54" x 57" in a vertical format for a two PPT pedestal rear panel; and,

    (iv)  36" x 81" in a horizontal format on a two or three PPT pedestal rear panel; and

   (d)  no advertising shall be permitted on PPT Enclosures with panels that are smaller than 27" x 57" without the express, prior permission from the Commissioner.

  4.4.2 <u>Removal of Advertising Displays</u>. (a)  In the event advertising has been placed on a PPT, and such advertising is not permitted under Section 4.4 above or fails to comply with any other term, condition or requirement of this Section 4, the Company, acting through its Media Representative, shall remove said advertising or cure said failure at no cost to the City within thirty (30) days after written notice as set forth in Section 14.2 herein.  If the Company refuses or neglects to do so, the City shall have the right to do so without any liability to the Company and the Company shall pay to the City immediately, but in no event later than thirty (30) days, the costs incurred in connection with such removal.  In addition, the Commissioner may, at his or her sole discretion, suspend or terminate the right to advertise with respect to each such PPT for such period as he or she deems appropriate.  In the event the failure is with respect to a significant portion of PPTs in the System, the Commissioner may, at his or her sole discretion and upon thirty (30) days written notice to the Company, as set forth in

NYC-OTR006823

Section 14.2 herein, suspend or terminate the right to advertise on all PPTs within the System for such period as he or she deems appropriate.

(b) Any action by the Commissioner pursuant to Section 4.4.2(a) above shall be in addition to and cumulative of all rights and remedies set forth in Section 12 herein and any and all other rights or remedies, existing or implied, now or hereafter available to the City at law or in equity.

4.4.3   Additional Restrictions.   The City retains the right, in the future, to impose additional restrictions on advertising after giving the Company reasonable notice and a reasonable period to comply with such additional restrictions.

4.5   Maintenance of Advertising Displays.   (a) The Company, acting through its Media Representative(s), shall maintain the advertising display panels on PPTs in a clean and attractive condition at all times and be responsible for the cost of any power consumption used, electrical or otherwise.

(b) All advertising display panels must be safe, secure and sturdy, and shall be maintained as such throughout the Term.   In the event the Commissioner deems a display panel or any part thereof to be unsafe, insecure or unsturdy, or to otherwise pose a threat to public safety, the Company shall remove such panel immediately upon notification.   A replacement may be installed   only with the express, prior approval of the Commissioner.

4.6   Visibility to Outside.   The Company, acting through its Media Representative(s), shall make certain that the display panels affixed thereto provide the caller with optimum visibility to the outside of the booth.

4.7   Termination or Suspension of Media Representative Agreements.   All agreements entered into by the Company and Media Representative(s) with respect to the display of advertising material on any one or more PPTs shall provide: (i) that such agreement shall terminate or be suspended upon the termination or suspension, by the Commissioner pursuant to this Section 4, of the right under this Agreement to advertise on all PPTs in the System; (ii) that any right granted by the Company in connection with the display of advertising material on any individual PPT shall terminate or be suspended, with respect to that individual PPT, upon: (a) the termination or suspension by the Commissioner pursuant to this Section 4, of the right under this Agreement to advertise on such individual PPT, or (b) the revocation by the Commissioner of the permit for the installation or maintenance of such individual PPT; and (iii) that such agreement shall terminate upon the termination of this franchise.

4.8   Compensation to the City for Advertising.

4.8.1   Compensation Fee.   The Company or its agent or designee shall pay to the City as compensation for the right and consent to advertise pursuant to the franchise hereby granted (in addition to and not in lieu of any other amounts payable to the City under Section 8 hereof or any other provisions of this Agreement), twenty-six percent (26%) of its "net commission advertising revenues." "Net commission advertising revenues" shall mean the total revenues (i.e., total receipts without reduction for any costs or expenses except as expressly set forth in this definition) derived by the Company, or any subsidiary, affiliate, agent, assignee,

22

NYC-OTR006824

contractor, licensee, transferee or lessee of the Company (including the Media Representative(s) with which the Company has contracted), from the display of advertising material on PPTs pursuant to this Agreement (whether such revenues are received in the form of cash or in the form of materials, services, or other benefits, tangible or intangible, in which event such revenues shall be deemed to include the fair market value of such materials, services or other benefits, whether actually received by the Company, an account receivable or otherwise) less any advertising agency commission paid or deducted from such amount, but in no event shall such deduction for advertising agency commissions exceed fifteen percent (15%). In no event shall net commission advertising revenues include any imputed value from the provision of public service advertising under Section 4.9 below. All agreements made by the Company's Media Representative(s), the Company, or its agent or designee in connection with the display of advertising material on PPTs shall provide that the Comptroller and/or the City shall have access to the books of account and records of all parties to such agreements for the purpose of ascertaining the correctness of the amount of net commission advertising revenues represented to the City.

4.8.2    <u>Timing and Method of Payment</u>.    Compensation shall be paid by the Company, acting through its Media Representative, to the Department of Finance of the City on a quarterly basis, with a copy of such payment mailed to DoITT, within thirty (30) days after the expiration of each calendar quarter, except in the case of the last payment when the compensation shall be paid within thirty (30) days after the termination, cancellation or expiration of this contract. Each payment shall be based on the calendar quarter immediately preceding the date of payment and shall be accompanied by a statement showing, in a manner reasonably satisfactory to the City, net commission advertising revenues and the components thereof for the applicable quarter. In the event any payment by the Company, acting through its Media Representative, is not actually received by the City on or before the applicable date fixed in this Agreement, interest thereon shall accrue from such date until received at a rate equal to the rate of interest then in effect charged by the City for late payments of real estate taxes.

4.8.3    <u>Taxes</u>.    Payments of such compensation to the City pursuant to the provisions of this franchise shall not be considered in any manner to be in the nature of a tax, but such payments shall be made in addition to any and all taxes of any kind and description which are now or may at any time hereafter be required to be paid by any ordinance or local law of the City, or any law of the State of New York or any law of the federal government of the United States.

4.8.4    <u>Continuing Obligation and Holdover</u>.    In the event the Company's Media Representative, the Company or its designee continues advertising displays on PPTs after and despite the termination, cancellation or expiration of the franchise or its right to advertise or the revocation of a permit for the installation of a PPT under the franchise, the Company agrees to pay to the City, in addition to all other remedies available to it under this Agreement or by law, the compensation at the rate and in the manner set forth herein, together with all taxes the Company would have been required to pay had its continuation been duly authorized and to comply with all other obligations under this franchise, provided that such payments and compliance shall not constitute an extension of this franchise or the Company's right to advertise or a permit for the installation of a PPT under this franchise.

NYC-OTR006825

4.9   Public Service Advertising.   If advertising pursuant to this franchise, the Company shall, acting through its Media Representative(s), provide free advertising space for public service announcements. Public service announcements are words, pictures, photographs, symbols, graphics or visual images of any kind, or any combination thereof, the primary purpose of which is to communicate information pertaining to the public health, safety and welfare of the citizens of the City. Such public service advertising space obligation may be satisfied by either: (i) the Company's provision of at least two percent (2%) of its total advertising space or two (2) advertising display panels (whichever is greater) for public service advertising purposes; or (ii) provisions of the Company's agreement with a Media Representative pursuant to which such Media Representative pools together not less than two percent (2%) of the total advertising space of all its franchisee clients for public service advertising purposes. In the event the Company, pursuant to this Section 4.9.1, is only required to provide two (2) display panels for public service announcements, such panels may not be located on the same PPT Enclosure. In the event the Company satisfies its public service advertising obligations through provisions of its agreement with Media Representative, copies of relevant portions thereof shall be provided to DoITT no later than seven (7) days following the effective date thereof. The installation, maintenance and removal of all public service announcements shall be performed in accordance with the same standards and utilize the same materials and methods as are used by the Company for commercial displays. The Company shall be permitted to determine the location of public service announcements required hereunder, subject to the reasonable approval of the Commissioner.

4.10   Standards for Advertising.   The display or placement of tobacco advertising shall be prohibited. Any type of advertising which the City or DoITT determines is false or misleading, which promotes unlawful or illegal goods, services or activities, or which is otherwise unlawful or obscene, including, but not limited to, advertising that constitutes the public display of offensive sexual material in violation of Penal Law Section 245.11 shall also be prohibited. Any such prohibited material displayed or placed shall be immediately removed by the Company, acting through its Media Representative, upon written notice from DoITT in accordance with Section 14.2, herein. If the Company fails to do so, the City shall have the right to do so without any liability to the Company and the Company shall pay to the City immediately, but in no event later than thirty (30) days, the costs incurred in connection with such removal.

4.11   Additional Advertising Provisions.   (a) The Company shall be permitted to use backlighting of advertising on PPT Enclosures except where prohibited by rules or regulations of the Landmarks Preservation Commission or where the Commissioner otherwise specifies.

(b) Any other multimedia, electronic or illuminated advertising or other non-traditional form or type of advertising, including Light Emitting Diode ("LED") advertising, shall be permitted only on a case by case basis, as determined by the Commissioner, at his or her sole discretion, and shall be subject to all applicable approvals by City agencies.

4.12   Future Compliance.   The Company and its designee shall comply with all applicable laws, rules and regulations in force, or which may hereafter be adopted with respect to advertising.

24

NYC-OTR006826